**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Proposed Attorneys for the Debtors

| | |
|---|---|
| In re: : | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| SHAPES/ARCH HOLDINGS L.L.C., : et al., | CHAPTER 11 |
| : Debtors. : | CASE NO. 08- |

**DEBTORS' VERIFIED MOTION FOR AN ORDER ESTABLISHING A BAR DATE PURSUANT TO FED. R. BANKR. P. 2002(a)(7) AND 3003(c)(3)**

Shapes/Arch Holdings L.L.C. and its related debtor entities (collectively the "Debtors"),[1] the debtors and debtors-in-possession, hereby move (the "Motion") for an Order pursuant to Fed. R. Bankr. P. 2002(a)(7) and 3003(c)(3) establishing a bar date for filing proofs of claim and interest in the Debtors' cases and approving form and manner of notice thereof, and in support thereof submit as follows:

**Background**

1. On March 16, 2008 (the "Petition Date"), the Debtors filed their respective petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

---

[1] In addition to Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), the following entities, all of which are wholly owned subsidiaries of Shapes/Arch, also filed petitions on the Petition Date (defined below): Shapes L.L.C. ("Shapes"); Delair L.L.C. ("Delair"); Accu-Weld L.L.C. ("Accu-Weld"); and Ultra L.L.C. ("Ultra").

2. On the Petition Date, the Debtors filed various "first day" motions, including a motion seeking to have their cases jointly administered under the lead debtor, "<u>Shapes/Arch Holdings L.L.C.</u>"

3. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4. No trustee or examiner has been appointed in these cases. No official committee of unsecured creditors has been appointed in these cases.

5. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Description of Debtors and Their Businesses

6. *Shapes/Arch* is a holding company that owns each of the four operating companies - Shapes, Delair, Accu-Weld and Ultra. The Debtors' predecessor was established in New Jersey in 1952 to produce aluminum windows. By 1959, the business had expanded and began focusing on producing aluminum extrusions. The Debtors have consistently expanded their businesses over the years by investing in new facilities and technology and by establishing new product lines. On a consolidated basis, the Debtors' net revenue in 2007 was $273.8 million, with Shapes generating approximately 65% of that revenue. The Debtors have over 1000 employees, approximately 70% of whom are members of either the International Brotherhood of Teamsters Local 837, or the United Independent Union.

7. *Shapes* is the largest operating Debtor with 2007 revenue over $179 million and over 600 employees. Shapes is a leading producer of custom aluminum extrusions for a variety of industries, including road and rail transportation and commercial and residential construction. Aluminum extrusion is a process by which a heated aluminum billet is rammed through a die to

create the intended shape. The extruded aluminum exits the press, is cooled and then cut to the necessary lengths. Shapes distinguishes itself in the industry because of its extensive large press capacity and because all of its casting, extruding, fabricating and finishing is completed in one facility. Shapes' 525,000 square foot facility, which is located in Delair, New Jersey, operates twenty-four hours per day, seven days a week, with its casthouse (to produce the billets to be pushed through the presses), eight presses of varying sizes, a paint line, an anodizing line and a variety of other fabrication equipment. Shapes can produce and ship over 400,000 pounds of extruded aluminum per day. Shapes has been recognized in the "Guinness Book of World Records" for the largest free standing aluminum structure ever created in connection with the restoration of the Statue of Liberty. Shapes also provided the aluminum scaffolding used in connection with the restoration of the Washington Monument.

8. In 2007 Shapes' revenues decreased by approximately $35 million compared to 2006. This decrease is, at least in part, attributable to the fact that 65% of Shapes' sales are to the trailer, truck body and railcar sectors, all of which have been experiencing an economic downturn.

9. *Delair* manufactures maintenance free aluminum fence systems for residential and commercial use, and manufactures America's most recognized brand of above-ground pools. Both product lines are sold through dealers, distributors and major retailers throughout the United States.

10. Delair operates from a 350,000 square foot facility adjacent to Shapes in Delair, New Jersey. Delair's proximity to Shapes provides a competitive advantage because Delair purchases approximately 70% of its product line from Shapes.

11. Because Delair's sales are largely tied to consumer spending and the housing market, Delair has suffered with that sector of the economy and its 2007 revenues were $5.5 million less than in 2006.

12. *Accu-Weld* is a vertically integrated manufacturer of made-to-order vinyl replacement windows and steel doors. Accu-Weld's products are sold to installers, dealers and home improvement retailers throughout the Northeastern, Mid-Atlantic and Midwestern United States. Accu-Weld operates out of a 100,000 square foot facility in Bensalem, Pennsylvania. Unlike many of its competitors, Accu-Weld extrudes its own vinyl profiles, which results in faster production and delivery to the customer.

13. Accu-Weld's net revenues in 2007 were $24.9 million, down from $37 million in 2006. The loss of revenue is due principally to Accu-Weld ceasing to do business with certain customers that were not profitable or which presented significant, unjustifiable credit risk and the general decline of the housing market.

14. *Ultra* is one of the leading suppliers of value branded hardware products in the United States, including locksets, door and window hardware and other decorative hardware. Ultra has over 8,000 products sourced primarily from China. Ultra's products are sold to home improvement and hardware retailers, hardware cooperatives and distributors, home builders and window and door manufacturers.

15. Ultra operates from a 75,000 square foot distribution facility in Pennsauken, New Jersey, with two million cubic feet of storage space.

16. Ultra's EBITDA decreased by $2.2 million due primarily to sales of hardware to lower margin accounts and the rapid escalation of product costs from China that could not be passed on to Ultra's customers.

The Bank Debt

17. Prior to the Petition Date, Shapes, Delair, Accu-Weld and Ultra (as co-borrowers and co-guarantors) became indebted to a lender group consisting of The CIT Group/Business Credit, Inc. ("CIT"), as agent, and Bank One, National Association ("Bank One") pursuant to a financing agreement, dated December 30, 2003 (as amended from time to time, the "Financing Agreement"). The current members of the lender group are CIT, as agent, JPMorgan Chase Bank N.A. (successor to Bank One) ("JP Morgan") and Textron Corporation (the "Lender Group").

18. Pursuant to the Financing Agreement, the Lender Group provided financing in the form of revolving loans (based upon a percentage of eligible inventory and accounts receivable), term loan, and letters of credit. The Financing Agreement has been amended on fifteen occasions, most recently on or about March 6, 2008, principally to address the needs of the Debtors to borrow funds in excess of what was available based upon their eligible inventory and accounts in light of the cyclical nature of the Debtors' businesses. The fifteenth amendment enables the Debtors to borrow up to $4.4 million beyond its available borrowing base (the "PP&E Equity Borrowing Base Component"), and requires that the Debtors re-pay the PP&E Equity Borrowing Base Component on or before March 14, 2008.

19. The Financing Agreement currently provides for a maximum total credit facility of $75.7 million, and a maximum line of credit of $67 million. Shapes/Arch and its parent, Ben LLC, are guarantors of the debt to the Lender Group. The Lender Group has a first priority lien on and security interest in substantially all of the Debtors' assets, including, without limitation, all accounts receivable, inventory, machinery and equipment and real property, and the proceeds thereof.

5

20. As of the Petition Date, the outstanding borrowings from the Lender Group are as follows: (i) revolving loans totaling approximately $47.72 million (inclusive of the PP&E Equity Borrowing Base Component); (ii) term loans totaling approximately $8.35 million; and (iii) letters of credit totaling approximately $3.55 million for an aggregate indebtedness to the Lender Group in the amount of $59.62 million (the "Bank Debt").

## Reasons for Filing

21. The Debtors' Chapter 11 filings were precipitated by a number of factors. The principal factor leading to the Debtors' filings is that the economic sectors in which the Debtors operate have experienced a downturn, which decline has affected the Debtors' revenues and EBITDA beginning in late 2006 and continuing through the first quarter of 2008. The Debtors' revenue decreased by about fifteen percent (15%) from $322 million in 2006 to $274 million in 2007, with projected revenue in 2008 of $262 million. The Debtors' EBITDA plummeted from about $21 million in 2006 to about $3.7 million in 2007. The Debtors have been unable to remain current with creditors, in particular, utilities and major suppliers, because of this downturn.

22. With the contraction in purchases by the Debtors' customer base and the Debtors' overhead remaining largely static, the Debtors have been struggling to fund their operations under their existing lending arrangement and find themselves in a situation in which they can not repay the PP&E Borrowing Base Component or pay past due obligations to venders in excess of $15 million.

23. Over the course of the past four months, the Lender Group has worked with the Debtors to attempt to find a solution. In late 2007, CIT Capital Securities LLC, an affiliate of the agent for the Lender Group, was engaged to attempt to obtain additional financing for the

business.  Despite their efforts, they were unable to identify any lender willing to provide additional, subordinated, financing to the Debtors or to refinance the Bank Debt.

24.     More recently, the Debtors have explored a possible sale/leaseback transaction with certain third parties.  The Debtors, however, were not successful in negotiating a transaction that would adequately address the Debtors' needs going forward.

25.     The Debtors also explored potential sale opportunities with existing management and third parties, but elected not to pursue these potential opportunities in favor of the Versa transaction (described hereinbelow) because the Versa transaction presents a better opportunity to preserve the going concern and maximize a recovery for all creditor constituencies.

### The White Knight

26.     With the Debtors' need for borrowings in excess of the borrowing base provided for in the Financing Agreement projected to increase to over $7.4 million over the next few weeks, without factoring in any payment to restructuring professionals or to venders on the past due trade debt, and the Lender Group's inability and unwillingness to fund any additional overadvance, the Debtors' continued ability to operate was in substantial doubt without a quick and efficient transaction.

27.     In January, 2008, the Debtors began a dialogue with Versa Capital Management, Inc. ("Versa"), a Philadelphia based private equity firm, to discuss Versa's interest in a possible transaction.  Versa expressed interest and conducted extensive due diligence with respect to the Debtors' businesses in late January.

28.     Also during this time frame, the Debtors retained Phoenix Management Services, Inc. ("Phoenix"), a turnaround and crisis management firm, to (i) assist the Debtors in working with the Lender Group; (ii) develop cash flow models to determine how severe the Debtors'

liquidity issues were and would become over the following weeks and months; and (iii) explore the Debtors' alternatives.

29.    In February, Versa, the Debtors and representatives of the owners of Ben LLC engaged in arms length negotiations which culminated in an agreement whereby Arcus ASI Funding, LLC and Arcus ASI, Inc. (affiliates of Versa, hereinafter "Arcus"), would, among other things, commit to lend up to $25 million to the Debtors during the Chapter 11 proceedings (and provide additional funding and an equity infusion to help the Debtors reorganize).  As part of that agreement, Arcus became a manager of (but not a member of) Shapes/Arch (with 79.9% of the voting rights) and Ben LLC retained 100% of the ownership rights and 20.1% of the voting rights.  This transaction was made subject to many terms and conditions, including Versa's ability to reach an agreement with the Lender Group with respect to the terms and conditions of Versa's investment in the Debtors' businesses as part of a plan of reorganization, as well as obtaining the Lender Group's commitment to provide debtor-in-possession and exit financing for the companies.  The Debtors, Versa and the Lender Group ultimately reached an agreement on the terms and conditions upon which Arcus would provide additional financing to the Debtors (and the PP&E Equity Borrowing Base Component would be eliminated) during any Chapter 11 process, as well as provide an exit facility for the Debtors.

30.    In light of the available financing from the Lender Group and Versa, and the current state of the Debtors' businesses, the Debtors, their management, representatives of the owners of Ben LLC, and Versa agreed that the Debtors would need to seek bankruptcy protection in order to effectuate the transaction.

31.    Contemporaneously with the filing of the petitions, the Debtors have filed a debtor-in-possession financing motion and a plan and disclosure statement that provide, among other things, for the financing of the Debtors' operations during the Chapter 11 process, exit

8

financing for the Debtors upon confirmation of the Debtors' plan of reorganization, payment of all administrative and priority unsecured claims in full, and a dividend to holders of general unsecured claims.

32. The plan reflects a commitment by (i) the Lender Group to provide the Debtors with revolving loans throughout the Chapter 11 proceedings and upon exiting bankruptcy in the amount of up to $60 million all on terms and conditions more fully set forth in the applicable documents to be executed in favor of the Revolving DIP Lenders, and (ii) Arcus to pay off the Lender Group's term loans, to fund the PP&E Equity Borrowing Base Component, to provide additional working capital for the Debtors, and to fund a dividend to creditors, requiring a total commitment by Versa of approximately $25 million.

33. The Debtors have worked diligently over the past several weeks in a difficult setting toward a solution that will maximize a return for all creditor constituencies and at the same time maximize the likelihood that the Debtors' businesses will remain viable so that the Debtors can continue to be one of South Jersey's largest employers for the foreseeable future. The Debtors believe that the plan will achieve these objectives.

## Relief Requested

34. By this Motion, the Debtors seeks an Order pursuant to Fed. R. Bankr. P. 3002(a)(7) and 3003(c)(3) establishing the bar date for filing of Proofs of Claim and interest ("Proofs of Claim") in the Debtors' cases and approving form and manner of notice thereof.

## Basis for Relief

35. Bankruptcy Rule 3003(c)(3) provides that this Court may set a deadline for filing Proofs of Claim, against a debtor's estate.

36. Bankruptcy Rule 2002(a)(7) provides that at least twenty (20) days notice must be given to a debtor, the United States Trustee and all creditors of a debtor of the bar date fixed by the court within which Proofs of Claim shall be filed.

37. The Debtors respectfully request that the Court establish **May 12, 2008** (the "Bar Date") as the Bar Date for the filing of claims (whether secured, priority or unsecured) that arose prior to the Petition Date (the "Pre-Petition Claims"). The proposed notice of Bar Date (the "Notice of Bar Date") is attached hereto as Exhibit "A".

38. The Debtors submit that it is appropriate to establish May 12, 2008 as the Bar Date because the Debtor filed their joint plan and disclosure statement on the Petition Date and intend to move quickly towards confirmation of the plan. The amount of unsecured claims could effect the feasibility of the plan, and the maximum total amount of unsecured claims should be determined prior to a confirmation hearing. Therefore, it is appropriate for the Debtors to know the total amount of claims against their estates, and to establish the Bar Date prior to the confirmation hearing.

39. The Bar Date would apply to all persons or entities holding claims against the Debtors (whether secured, priority or unsecured) that arose prior to the Petition Date, including the following:

    (a)    Any person or entity whose claim is listed as "disputed", "contingent" or "unliquidated" and that desires to participate in these cases or share in any distribution in these cases;

    (b)    Any person or entity who believes that its claim is improperly classified in the Debtors' schedules of liabilities (the "Schedules") or is listed in an incorrect amount that desires to have its claim allowed in a classification or amount other than what is set forth in the Schedules;

    (c)    Any person or entity whose claim against the Debtors is not listed in the Schedules; and

    (d)    Claims asserted by governmental units (as defined in 11 U.S.C. § 101(27)).

40. The Debtors respectfully request that, Pursuant to Rule 3003(c)(3) and 5005(a) of the Federal Rules of Bankruptcy Procedure, except as set forth herein, all persons and entities (each as defined in §§ 101(41) and 101(15) respectively, of the Bankruptcy Code), including, without limitation, individuals, partnerships, corporations, estates, trusts, unions and governmental units (individually, a "Creditor", and collectively, the "Creditors") holding or wishing to assert claims (as such term is defined in § 101(5) of the Bankruptcy Code) against the Debtors (individually, a "Claim", and collectively, the "Claims") are required to file a separate, completed and executed Proof of Claim form substantially conforming to Official Bankruptcy Form No. 10, together with accompanying documentation on account of any Claims such Creditor (including claims of governmental units (as defined in 11 U.S.C. § 101(27)) holds or wishes to assert against the Debtors so that the Proof of Claim is actually received by the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC ("Epiq") on or before the Bar Date at the following address:

|  |  |
|---|---|
| Shapes/Arch Holdings L.L.C. | Shapes/Arch Holdings L.L.C. |
| c/o Epiq Bankruptcy Solutions, LLC | c/o Epiq Bankruptcy Solutions, LLC |
| Grand Central Station | 757 Third Avenue |
| P.O. Box 4601 | Third Floor |
| New York, NY  10163-4601 | New York, NY  10017 |
| (for regular mail) | (for overnight delivery) |

41. Facsimile submissions will not be accepted. A Proof of Claim shall be deemed filed only when actually received.

42. The Debtors propose the following persons or entities would not need to file Proofs of Claim:

> (a) any Creditor (i) that agrees with the nature, classification and amount of such claim set forth in the Schedules and (ii) whose Claim against the Debtors is not listed as "disputed," "contingent," or "unliquidated" in the Schedules;

11

(b) any Creditor that has already properly filed a Proof of Claim against the Debtors;

(c) any Creditor whose Claim against the Debtors previously has been allowed by, or paid pursuant to, an order of this Court;

(d) any Creditor asserting a Claim allowable under §§ 503(b) and 507(a)(1) of the Bankruptcy Code as an administrative expense of the Debtors' Chapter 11 cases (except as provided herein); or

(e) any holder of equity securities of the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities.

43. The Debtors shall retain the right to: (a) dispute or assert offsets or defenses against any filed Proofs of Claim or any Claim listed or reflected in the Schedules as to nature, amount, liability, classification, or otherwise; or (b) subsequently designate any Claim as disputed, contingent, or unliquidated.

44. However, if the Debtors amend their Schedules to reduce the undisputed, non-contingent or liquidated amounts or to change the nature or classification of a Claim against the Debtors reflected therein, then the affected claimant shall have until the Amended Schedule Bar Date (as defined below) to file a Proof of Claim or to amend any previously filed Proof of Claim in respect of such amended scheduled claim. The "Amended Schedule Bar Date" shall be the later of the Bar Date or thirty (30) days after a claimant is served with the notice that the Debtors have amended their Schedules to reduce the amount of, delete, or change the status of a scheduled Claim of such claimant. The Debtors request that notwithstanding the foregoing, nothing set forth herein will preclude the Debtors from objecting to any Claim, whether scheduled or filed, on any grounds.

45. The Debtors request that notwithstanding the foregoing, the holder of any Claim arising from the rejection of any executory contract or unexpired lease shall be required to file a Proof of Claim on account of such Claim against the Debtors on or before the later of (a) the Bar Date, or (b) thirty (30) days after the effective date of such rejection, as ordered by the Court.

46. The Debtors further request that any Creditor that is required to a file a Proof of Claim in these Chapter 11 cases but fails to do so in a timely manner, shall be forever barred, estopped and enjoined from: (a) asserting any claims against the Debtors that such Creditor has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules, or (ii) is of a different nature or in a different classification (any such claim referred to as an "Unscheduled Claim"); and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these Chapter 11 cases in respect of an Unscheduled Claim (if the Plan is not confirmed); and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

47. Pursuant to Rule 2002(a)(7), the Debtors intend to serve the Notice of Bar Date upon all known Creditors and parties in interest and request that the attached Notice of Bar Date be approved as the form of notice provided to all Creditors and parties in interest.

48. The Debtors also intend to provide publication notice of the Bar Date in The Philadelphia Inquirer, The Courier Post, and The Wall Street Journal and request that the Court approve the form of publication notice proposed in Exhibit "B", hereto and determine that such publication notice constitutes good and sufficient publication notice of the Bar Date.

49. Notice of this Motion has been provided to: (1) counsel for the Lender Group, (2) counsel for Versa, (3) the Office of the United States Trustee, (4) the Internal Revenue Service, (5) the New Jersey Attorney General, (6) the Commonwealth of Pennsylvania Department of Revenue, and (7) the Debtors' consolidated list of top 30 unsecured creditors (but no less than the five largest unsecured creditors from each case). In light of the nature of the relief requested herein, the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court enter an Order in the form attached setting a Bar Date for the holders of Claims and interests, approving the attached

form of Notice, and requiring Debtors to mail the Notice, and that the Court grant to the Debtors such other and further relief as is just and proper.

Dated: March 16, 2008                        COZEN O'CONNOR

                                                   By:  */s/ Jerrold N. Poslusny, Jr.*
                                                       Mark E. Felger
                                                       Jerrold N. Poslusny, Jr.

                                                       Proposed Attorneys for the Debtors

## VERIFICATION

Steven Grabell of full age, certifies and states as follows:

1. I am the Chief Executive Officer of Shapes/Arch Holdings L.L.C. and Shapes L.L.C.[1], and I am fully authorized to make this Verification on all of the Debtors' behalf.

2. I have read the foregoing Motion and I hereby certify and verify that all of the statements contained therein are true.

3. I hereby verify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me is willfully false, I am subject to punishment.

_____
Steven Grabell

Dated: March 16 2008

---

[1] Unless otherwise defined capitalized terms shall have the same meaning ascribed to them in the Motion.

CHERRY_HILL\430673\3

**EXHIBIT "A"**

| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| **MARK E. FELGER (MF9985)**<br>**JERROLD N. POSLUSNY (JP7140)**<br>**COZEN O'CONNOR**<br>LibertyView, Suite 300<br>457 Haddonfield Road<br>Cherry Hill, NJ 08002<br>(856) 910-5000<br>Proposed Attorneys for the Debtors |

| | |
|---|---|
| In re: | Case No. 08- |
| SHAPES/ARCH HOLDINGS L.L.C., <u>et al.</u>, | Judge: |
| Debtors. | Chapter: 11 |

**NOTICE OF DEADLINE TO FILE PROOFS OF CLAIM**

TO:  ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST THE DEBTORS

Please take notice that the Bankruptcy Court for the District of New Jersey has entered an Order in the above-captioned cases (the "<u>Bar Date Order</u>") establishing **May 12, 2008**, as the claims bar date (the "<u>Bar Date</u>").  Except as described below, the Bar Date Order requires that any claims against the Debtors be filed by submitting a proof of claim with the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC ("Epiq"), Grand Central Station, P.O. Box 4601, New York, NY 10163-4601 (for regular mail) or 757 Third Avenue, Third Floor, New York, NY 10017 (for overnight mail), so that such proof of claim is actually received on or before the Bar Date.

Proofs of claim are deemed filed only when they are actually received by Epiq and facsimile submissions will not be accepted.  Form proofs of claim are available from Epiq at the same address.  A copy of the Proof of Claim or Interest must also be served upon the Debtors' counsel at the following address: Cozen O'Connor, LibertyView, Suite 300, 457 Haddonfield Road, Cherry Hill, NJ, 08002, Attn: Jerrold N. Poslusny, Jr., Esq.

Pursuant to the Bar Date Order, all persons or entities including, without limitations, individuals, partnerships, corporations, estates, trusts, unions and governmental units (individually, a "<u>Creditor</u>", and collectively, the "<u>Creditors</u>") possessing claims against the Debtors (whether secured, priority or unsecured) that arose prior to March 16, 2008 (the "<u>Petition Date</u>") are required to file a proof of claim by the Bar Date.

The following Creditors must file a proof of claim on or before the Bar Date, unless otherwise provided herein: (a) any Creditor whose claim is listed in the Debtors' schedules of

assets and liabilities (the "Schedules") as "disputed", "contingent" or "unliquidated" and who desires to participate in these Chapter 11 cases or share in any distribution; (b) any Creditor whose Claim is improperly classified in the Schedules or is listed in an incorrect amount and who desires to have its Claim allowed in a classification or amount other than what is set forth in the Schedules; (c) any Creditor asserting a Claim that is not listed in the Schedules; or (d) Claims asserted by governmental units (as defined in 11 U.S.C. § 101(27)).

The following Creditors do not need to file a proof of claim on or before the Bar Date: (a) any Creditor that (i) agrees with the nature, classification and amount of such Claim set forth in the Schedules and (ii) whose Claim against the Debtors is not listed as "disputed," "contingent," or "unliquidated" in the Schedules; (b) any Creditor that has already properly filed a proof of claim against the Debtors; (c) any Creditor whose Claim against the Debtors previously has been allowed by, or paid pursuant to, an order of this Court; (d) any Creditor asserting a Claim allowable under §§ 503(b) and 507(a)(1) of the Bankruptcy Code as an administrative expense of the Debtors' Chapter 11 cases (except as provided herein); or (e) any holder of equity securities of the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities.

**Any Creditor that is required to a file a Proof of Claim in these Chapter 11 cases but that fails to do so in a timely manner, shall be forever barred, estopped and enjoined from: (a) asserting any Claim against the Debtors that such Creditor has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules, or (ii) is of a different nature or in a different classification (any such Claim referred to as an "Unscheduled Claim"); and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these Chapter 11 cases in respect of an Unscheduled Claim; and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.**

Dated: March ___, 2008              COZEN O'CONNOR

                                    By:   /s/ Jerrold N. Poslusny, Jr.
                                          Mark E. Felger
                                          Jerrold N. Poslusny, Jr.

                                          Proposed Attorneys for the Debtors

2

CHERRY_HILL\430741\1  077771.000

**EXHIBIT "B"**

**<u>NOTICE OF DEADLINE TO FILE PROOFS OF CLAIM</u>**

Please take notice that the Bankruptcy Court for the District of New Jersey has entered an Order (the "Bar Date Order") in the Chapter 11 bankruptcy cases of Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C. and Ultra L.L.C. (collectively, the "Debtors") Case Nos. 08-_____ (Jointly Administered) establishing May 12, 2008, as the claims bar date (the "Bar Date").  The Bar Date Order requires that any claims against the Debtors be filed by submitting a proof of claim with the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, Grand Central Station, P.O. Box 4601, New York, NY 10163-4601 (by regular mail) or 757 Third Avenue, Third Floor, New York, NY 10017 (by overnight mail), so that such proof of claim is actually received on or before the Bar Date.  A copy of the Proof of Claim must also be served upon the Debtors' counsel at the following address: Cozen O'Connor, LibertyView, Suite 300, 457 Haddonfield Road, Cherry Hill, NJ, 08002, Attn: Jerrold N. Poslusny, Jr., Esq.  If you believe that you have a potential claim against the Debtors (whether secured, priority or unsecured), that arose prior to the Petition Date and you have not received a Notice from the Debtors regarding same, please contact the Debtors' attorney at the address above or at (856) 910-5000 to request a copy of the Bar Date Order.  The Bar Date Order provides important information, including, but not limited to: (a) which persons or entities are required to file proofs of claim by the Bar Date; (b) which persons or entities are not required to file proofs of claim by the Bar Date; and (c) the form to be utilized by any persons or entities wishing to submit claims. Any person or entity that is required to a file a proof of claim in these cases but fails to do so in a timely manner, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the Debtors that such creditor has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Debtors' schedules of liabilities, or (ii) is of a different nature or in a different classification (any such claim referred to as an "Unscheduled Claim"); and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these cases in respect of an Unscheduled Claim; and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.