Order Filed on
**3/18/2008**
by Clerk U.S. Bankruptcy
Court District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY (JP7140)**
**COZEN O'CONNOR**
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ  08002
(856) 910-5000
Proposed Attorneys for the Debtors

In re:                                            Case No. 08-14631

SHAPES/ARCH HOLDINGS L.L.C., et al.,             Judge: Gloria M. Burns

        Debtors.                                  Chapter:  11

**INTERIM ORDER PURSUANT TO SECTION 364(c) OF THE BANKRUPTCY CODE
AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
AUTHORIZING DEBTORS (1) TO OBTAIN INTERIM POST-PETITION FINANCING,
(2) GRANTING SENIOR LIENS AND PRIORITY ADMINISTRATIVE EXPENSE
STATUS, (3) MODIFYING THE AUTOMATIC STAY, (4) AUTHORIZING DEBTORS
TO ENTER INTO AGREEMENTS WITH THE CIT GROUP/ BUSINESS CREDIT, INC.,
FOR ITSELF AND AS AGENT FOR CERTAIN LENDERS AND (5) PRESCRIBING
FORM AND MANNER OF NOTICE AND TIME FOR FINAL HEARING UNDER
FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(c)**

        The relief set forth on the following pages numbered 2 through 31 is hereby ORDERED

AND GRANTED.

**DATED: 3/18/2008**

_____
Honorable Gloria M Burns
United States Bankruptcy Court Judge

THIS MATTER came before the Court on March 18, 2008, upon the Motion ("Motion"), filed on March 17, 2008, of Shapes/Arch Holdings L.L.C., Shapes, L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C., Debtors and Debtors-in-Possession (jointly and severally, the "Debtors") seeking, inter alia:

1.      authority, pursuant to Sections 364(c)(1), 364(c)(2) and 364(c)(3) and 364 (d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), for the Debtors to obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including April 3 , 2008, from The CIT Group/ Business Credit, Inc., for itself and as agent for the lenders pursuant to the Debtor in Possession Revolving Credit Financing Agreement attached to this order (the "DIP Revolving Credit Agreement"), with the defined terms "Agent," "Lender" and "Lenders" having the meaning given to them in the DIP Revolving Credit Agreement, inclusive of the amount of all pre-petition indebtedness owed by the Debtors to the Agent and the Lenders as pre-petition lenders, and in accordance with the lending formulas, the sublimits and the terms and conditions set forth in the DIP Revolving Credit Agreement, secured by security interests in and liens upon all of the Collateral (as hereinafter defined) pursuant to Sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Code;

2.      authority for Debtors to enter into the DIP Revolving Credit Agreement, dated of even date herewith, by and between the Debtors, the Agent and the Lenders (capitalized terms not otherwise defined in this Order shall have the respective meanings given to them in the DIP Credit Agreement);

3.      the modification of the automatic stay to the extent hereinafter set forth;

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

4.      the grant to the Agent and the Lenders of super-priority administrative claim status pursuant to Section 364(c)(1) of the Code; and

5.      the setting of a final hearing on the Motion.

IT APPEARING THAT, at or prior to the hearing on the Motion, each of the parties set forth below received actual notice of the Motion, whether by telephone, telecopy, e-mail (if agreed to by the recipient), overnight courier or by hand delivery to: (i) the Office of the United States Trustee for the District of New Jersey, (ii), the attorneys for the Agent, (iii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis (but no less than the five largest unsecured creditors from each case), (iv) Arcus ASI Funding, LLC ("Arcus"), proposed post petition term loan lender to the Debtors, (v) the Internal Revenue Service, (vi) the New Jersey Attorney General, (vii) the Commonwealth of Pennsylvania Department of Revenue, and (viii) any other parties identified in this certificate of service filed with this court; and it further

APPEARING, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on March 16, 2008 (the "Petition Date"), and are continuing in the management and possession of their businesses and properties as a debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code; and it further

APPEARING, that the Agent (on behalf of the Lenders) and the Debtors have represented to this Court that, prior to the commencement of Debtors' Chapter 11 cases, the Agent and the Lenders made loans and advances, and provided other credit accommodations to and for the benefit of each of the Debtors, pursuant to the terms and conditions of that certain Financing Agreement dated December 30, 2003 (as amended, modified and supplemented, the "Existing Loan Agreement"), and certain other security agreements, mortgages, guarantees and

B # 759458 v.4

*Approved by Judge Gloria M. Burns March 18, 2008*

other related agreements, documents and instruments executed and/or delivered by the Debtors

with, to or in favor of the Agent and the Lenders (all of such loan and security agreements,

mortgages, guarantees, financing statements and all other related agreements, documents and

instruments executed in connection therewith or related thereto being referred to collectively as

the "Existing Financing Agreements");

APPEARING, that the Debtors and the Agent (on behalf of the Lenders) have

represented to the Court that (1) the principal amount of all loans, advances and other

indebtedness owed by the Debtors to the Agent and the Lenders pursuant to the Existing Loan

Agreement and the other Existing Financing Agreements, and existing as of March 14, 2008,

consists of Revolving Loans (as defined in the Existing Loan Agreement) in the aggregate

principal amount of not less than $46,742,475, Letters of Credit (as defined in the Existing Loan

Agreement) in the aggregate principal amount of not less than $3,555,000, and Term Loans (as

defined in the Existing Loan Agreement) of $8,353,374.89, together with interest accrued and

accruing thereon and fees, costs, expenses and other charges accrued and accruing with respect

thereto (collectively, the "Pre-Petition Debt"), and (2) as of the Petition Date, the Pre-Petition

Debt is fully secured pursuant to the Existing Financing Agreements by perfected and valid first

priority security interests and liens granted by the Debtors to or for the benefit of the Agent and

the Lenders upon all of the Collateral (as defined in the Existing Loan Agreement) existing as of

the time immediately prior to the filing of the petitions for relief herein, and the post-petition

proceeds and products thereof (collectively, together with any other property of the Debtors'

estates in which a security interest or lien has been granted to or for the benefit of the Agent

and/or the Lenders, as applicable, prior to the filing of the petition for relief herein, the "Pre-

Petition Collateral"); and it further

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

APPEARING, that the Debtors have acknowledged and agreed that: (a) the Existing Loan Agreement and the other Existing Financing Agreements executed and/or delivered with, to or in favor of the Agent and the Lenders are valid, binding and enforceable agreements and obligations of the Debtors, (b) the security interests and liens granted to or for the benefit of the Agent and the Lenders upon the Pre-Petition Collateral are valid, perfected, senior to all other security interests and liens upon the Pre-Petition Collateral (except for senior liens, if any, constituting "Permitted Encumbrances," as defined in the Existing Loan Agreement) and are valid, enforceable and non-voidable, (c) all of the Pre-Petition Debt constitutes allowable claims against the Debtors and is valid, enforceable and non-voidable in the amount of the Pre-Petition Debt, and (d) the Debtors do not possess and shall not assert any claim, counterclaim, setoff or defense of any kind or nature, which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Debt and the Agent and the Lenders' security interests in and liens upon the Pre-Petition Collateral, or which would in any way reduce or affect the absolute and unconditional obligation of the Debtors to pay in full, in cash all of the Pre-Petition Debt; and it further

APPEARING, that the Debtors are unable to obtain unsecured credit for working capital purposes as an administrative expense of their estates; and it further

APPEARING, that the Agent and the Debtors have represented to the Court that, at the time of the filing of the petition for relief herein, the Pre-Petition Debt is fully secured by the Pre-Petition Collateral; and it further

APPEARING, that without the financing proposed by the Motion, the Debtors will not have the funds necessary to pay their payroll, payroll taxes, inventory suppliers, overhead and

B # 759458 v.4

*Approved by Judge Gloria M. Burns March 18, 2008*

other expenses necessary for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and properties; and it further

APPEARING, that the Debtors have requested that the Lenders make or cause to be made available loans and advances, and provide other financial and credit accommodations to the Debtors in order to provide funds to be used by Debtors for their general operating, working capital and other business purposes in the ordinary course of their businesses; and it further

APPEARING, that all such additional loans, advances and other financial accommodations by or on behalf of the Lenders will benefit the Debtors, their estates and creditors; and it further

APPEARING, that the Lenders are willing to make such loans and advances and provide such other financial and credit accommodations on a secured basis as more particularly described herein and subject to the terms and conditions contained herein; and it further

APPEARING, that the ability of the Debtors to continue their businesses and remain an operating entity depends upon the Debtors' obtaining such financing from the Lenders; and it further

APPEARING, that the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and properties and is in the best interests of the Debtors, their estates and creditors; and it further

APPEARING, that this Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b)(2)(A), (D) and (M) and 1334;

B # 759458 v.4

*Approved by Judge Gloria M. Burns March 18, 2008*

NOW, THEREFORE, upon the record set forth by the Debtors, including the Motion, the filings and pleadings in this case, the record of the proceedings held before this Court with respect to the Motion, and upon completion of the interim hearing and sufficient cause appearing therefor, the Court finds:

A.    The Debtors are unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, or pursuant to Sections 364(a) and (b) of the Bankruptcy Code.

B.    Under the circumstances, no other source of financing exists on terms more favorable than those offered by the Lenders.

C.    The Motion was filed on March 16, 2008, and the Debtors have provided notice of the Motion and the relief requested thereunder, the interim hearing in respect of the Motion and the terms of this Order, whether by telephone, telecopy, e-mail (if agreed to by the recipient), overnight courier, or by-hand delivery to (1) the Office of the United States Trustee for the District of New Jersey, (2) the attorneys for the Agent, (3) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis (but no less than the five largest unsecured creditors from each case), (4) Arcus, (5) the Internal Revenue Service, (6) the New Jersey Attorney General, (7) the Commonwealth of Pennsylvania Department of Revenue, (8) and any other parties identified in this certificate of service filed with this court; and it further

D.    Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

E.      Based on the record before the Court, the Agent and the Lenders are extending financing to the Debtors in good faith and, therefore, each of the Agent and the Lenders are entitled to the benefits of the provisions of Section 364(e) of the Bankruptcy Code. Based on the record before the Court, the terms of the Financing Agreements (as defined below) by and between the Debtors, the Agent and the Lenders, as applicable, pursuant to which the post-petition loans, advances or other financial and credit accommodations will be made or provided to the Debtors by the Lenders have been negotiated at arm's length and in good faith, as that term is defined in Section 364(e) of the Bankruptcy Code, and are in the best interest of the Debtors, their estates and their creditors, and provide each of the Debtors with reasonably equivalent value and fair consideration for all purposes under the Bankruptcy Code and other applicable law.

F.      Adequate notice of the hearing requesting the entry of this Order and the hearing thereon has been provided.

G.      The relief granted by this Court pursuant to this Order is necessary to avoid immediate and irreparable harm and injury to the Debtors' estate.

H.      Adequate and sufficient cause has been shown to justify the granting of the interim relief requested herein, and the immediate entry of this Order.

I.      A committee has not yet been appointed in this case pursuant to Section 1102 of the Bankruptcy Code.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

1.      The Motion is granted and approved to the extent provided below.  This Order shall hereinafter be referred to as the "Interim Order."

2.      The Debtors are hereby authorized and empowered to immediately borrow and obtain, on a joint and several basis, Revolving Loans and/or Letters of Credit from the Agent and/or the Lenders, as applicable, on a revolving basis pursuant to the terms of this Interim Order and the terms and conditions set forth in the DIP Revolving Credit Agreement (a copy of which is attached as Exhibit "A" to this Interim Order), such amount or amounts as may be made available to the Debtors by the Agent and/or the Lenders pursuant to the lending formulas and the terms and conditions set forth in the DIP Revolving Credit Agreement and this Interim Order, for the period commencing on the date hereof and terminating on April 3 _, 2008.  Without limiting the general nature of the foregoing approval, the Court specifically approves the provisions of the DIP Revolving Credit Agreement allowing advances to be made to any one or more of the Debtors based upon the combined assets of all of the Debtors and, additionally, in no event shall the Agent and/or the Lenders, as applicable, be obligated to fund any requested advance where there has occurred an Event of Default (as defined below) or if an Event of Default (as defined below) would be caused by any requested advance including, without limitation, exceeding the available Borrowing Base or other borrowing limitations set forth in the DIP Revolving Credit Agreement.

3.      The Debtors shall use the proceeds of the Revolving Loans and Letters of Credit provided to the Debtors pursuant to this Interim Order and the DIP Revolving Credit Agreement for, inter alia, the payment of employee salaries, payroll, taxes, the purchase of inventory and other general operating and working capital purposes in the ordinary course of the Debtors' businesses, including amounts paid for such purposes which may constitute

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

administrative expense claims under the Bankruptcy Code attributable to the operation of

Debtors' businesses, expenditures authorized by order of the Court and the fees of the U.S.

Trustee and the Clerk of this Court.  In no event, however, shall proceeds of loans or other

extension of credit under the DIP Revolving Credit Agreement (or any Collateral) be used to

propose or support a plan of reorganization that does not provide for the indefeasible payment in

full, in cash and satisfaction of all of the Revolving Credit Obligations (as defined below) on the

Effective Date of any such Plan, or to seek relief under any provision of the Bankruptcy Code to

the extent that such relief would in any way restrict or impair the rights or remedies of the Agent

or the Lenders, as applicable, as provided for in this Interim Order (or any Order subsequently

entered with respect to the matters provided for in this Interim Order), or the Financing

Agreements, or the Agents or Lenders, as applicable, exercise of such rights or remedies.

   4. The Debtors are authorized to execute, deliver, perform and comply with

the terms and covenants of the DIP Revolving Credit Agreement, pursuant to which, <u>inter alia</u>,

(a) the Debtors shall ratify, extend, assume, adopt and/or amend, as applicable, the Existing

Financing Agreements in a manner deemed necessary or advisable by the Agent as a result of the

credit to be provided under the DIP Revolving Credit Agreement, and (b) the Debtors shall

ratify, extend, assume, adopt and/or amend the other agreements, documents and instruments by

and among the Debtors, the Agent and the Lenders, as applicable, and certain third parties,

including, without limitation, four separate multi-party blocked account agreements each dated

as of February 10, 2004, executed and delivered by each of the Debtors (other than Shapes/Arch

Holdings, L.L.C.) in favor of Bank One, National Association, predecessor in interest to

JPMorgan Chase Bank, N.A., one of the Lenders pursuant to the Existing Financing Agreement,

and a Lender under the DIP Revolving Credit Agreement (the "Blocked Account Agreement"

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

and, together with the DIP Revolving Credit Agreement, the Existing Financing Agreements, as applicable, and all other agreements, documents and instruments now or in the future executed and/or delivered in connection with, or related to, the financing arrangements between the Debtors and the Agent and/or the Lenders, collectively, the "Financing Agreements").

5.      The Debtors are authorized to comply with the terms, conditions and covenants of the DIP Revolving Credit Agreement and the other Financing Agreements.  Such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors and the Agent and the Lenders, as applicable, and of the Debtors' assumption and adoption of the terms, conditions and covenants of the DIP Revolving Credit Agreement and the other Financing Agreements for all purposes, including, without limitation, to the extent applicable, the payment of all principal, interest, commissions, fees, servicing fees, unused line fees, early termination fees, and other fees and expenses, including attorneys' fees and legal expenses, as more fully set forth in the Financing Agreements.

6.      The extent, legality, validity, perfection,  enforceability and other matters noted in this paragraph with respect to the Existing Financing Agreements, as well as the Pre-Petition Debt and the Agents and the Lender's pre-petition liens upon and security interests in the Pre-Petition Collateral, are for all purposes subject only to the rights of the Official Committee of Unsecured Creditors appointed pursuant to Section 1102 of the Bankruptcy Code (the "Committee") for a period, commencing on the date of the appointment of counsel for the Committee, of forty-five(45) days (or, if no Committee is appointed, any party in interest for a period ending sixty (60) days after the Petition Date), which in any way seeks to (a) challenge in any manner the Pre-Petition Debt, and/or assert claims or causes of action of any nature in any way arising out of or relating to the Pre-Petition Debt or the Existing Financing Agreements, or

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

(b)  assert or allege any other any matters in any way arising out of or relating to the Pre-Petition

Debt or the Existing Financing Agreements, or (c)  challenge the extent, legality, validity,

perfection and/or enforceability of Agents and/or any Lenders pre-petition liens upon and

security interests in the Pre-Petition Collateral pursuant to the Bankruptcy Code.  If such

proceeding is not timely filed within such forty-five (45) day period set forth above (or, if no

Committee is appointed, by a party in interest within the sixty (60) day period set forth above),

(a) the Pre-Petition Debt and the Agents and the Lenders' security interests in and liens upon the

Pre-Petition Collateral shall be recognized and allowable as valid, binding, in full force and

effect, not subject to any claims, counterclaims, setoff or defenses, perfected and senior to all

other liens upon and claims against the Pre-Petition Collateral with respect to all parties in this

case, except for senior liens expressly permitted in the Financing Agreements (to the extent such

permitted liens are valid, perfected, enforceable and non-avoidable, or as otherwise provided in

the "Intercreditor Agreement," as defined below), or to the extent entitled to priority as provided

in paragraph 8 below, and (b) the Agent, the Lenders and their respective agents, officers,

directors and employees shall be deemed released and discharged from all claims and causes of

action arising out of or in any way relating to the Existing Financing Agreements entered into

with the Debtors prior to the entry of this Interim Order.  Nothing in this Interim Order shall be

deemed to confer or deny standing to commence any action or proceeding on either the

Committee, or any other party-in-interest.

7.    To secure the prompt payment and performance of any and all obligations,

liabilities and indebtedness of the Debtors to the Agent and the Lenders of whatever kind or

nature or description, absolute or contingent, now existing or hereafter arising, including, without

limitation, to the fullest extent applicable, all Pre-Petition Debt and all post-petition obligations,

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

liabilities and indebtedness of any Debtors to the Agent and/or the Lenders arising under the

Financing Agreements (collectively, the "Revolving Credit Obligations"), the Agent, for itself

and on behalf of each Lender, shall have and is hereby granted, effective on and after the date of

this Interim Order, valid and perfected first priority security interests and liens, superior to all

other creditors of Debtors' estates, <u>except</u> for Permitted Liens (as defined below) to the extent

entitled to priority as provided in paragraph 8 below, in and upon all of the existing and future

assets and properties of the Debtors, whether acquired prior to, concurrently with or after the

filing of the petition commencing Debtors' Chapter 11 cases (collectively, the "Collateral"),

including, without limitation, and by way of general description (with terms below having, as

applicable, the meaning given to them in the Uniform Commercial Code):

(a)     All of the Collateral (as defined in the DIP Revolving Credit
        Agreement);

(b)     all present and future accounts and accounts receivable;

(c)     all other present and future general intangibles (including
        intellectual property and existing and future leasehold interests in
        equipment, real estate and fixtures), chattel paper, documents,
        instruments, investment property (including securities, whether
        certificated or uncertificated, securities accounts, security
        entitlements, commodity contracts or commodity accounts), letters
        of credit, bankers' acceptances and guaranties;

(d)     all present and future monies, securities and other investment
        property, credit balances, deposits, deposit accounts and other

B # 759458 v.4

property of the Debtors now or hereafter held or received by or in transit to the Agent or any Lender or their affiliates or at any other depository or other institution from or for the account of the Debtors, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of accounts, accounts receivable and other Collateral, including, without limitation, (A) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (B) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (C) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing accounts, accounts receivable or other Collateral, including, without limitation, returned, repossessed and reclaimed goods, and (D) deposits by and property of account debtors or other persons securing the obligations of account debtors;

(e)     all inventory;

(f)     all equipment;

(g)     all real property;

(h)     all leasehold interests;

B # 759458 v.4

*Approved by Judge Gloria M. Burns March 18, 2008*

(i)    As subject to approval by this Court at a final hearing with respect

to this Initial Order, all claims, rights, interests, assets and

properties (recovered by or on behalf of any Debtor or any trustee

of any Debtor (whether in the Chapter 11 Case or any subsequent

case to which the Chapter 11 Case is converted), including,

without limitation, all property recovered as a result of transfers or

obligations avoided or actions maintained or taken pursuant to

Sections 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code

and including, without limitation, Avoidance Actions and

Avoidance Action Recoveries (as defined in the DIP Revolving

Credit Agreement);

(j)    all books and records; and

(k)    all products and proceeds of the foregoing, in any form, including,

without limitation, insurance proceeds and all claims against third

parties for loss or damage to or destruction of any or all of the

foregoing.

8.    Notwithstanding anything to the contrary set forth in this Interim Order,

including paragraph 7 of this Interim Order, the Agents and the Lenders' security interests in and

liens upon the Collateral shall not have priority over (a) Permitted Encumbrances with respect to

the Arcus Term Loan (as defined in the DIP Revolving Credit Agreement), subject to all of the

terms and conditions of the DIP Revolving Credit Agreement and that certain intercreditor

agreement to be dated on or about the date of this order between the Agent, on behalf of the

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

Lenders, and Arcus, and as acknowledged by the Debtors ( the "Intercreditor Agreement")

("Permitted Liens"), (b) the fees of the Clerk of the Bankruptcy Court for the District of New

Jersey and the Office of the United States Trustee and the Professional Fee Carve-Out (as

defined below), as specifically provided for and only to the extent specifically set forth or

referred to in paragraph 19 of this Interim Order.

9.      Notwithstanding anything to the contrary set forth herein, each of the

Debtors, the Agent, the Lenders and Arcus acknowledge and agree that the terms, conditions and

covenants of the Intercreditor Agreement are approved, and that the terms, conditions and

covenants of such agreement shall apply to and govern the respective rights, obligations and

priorities of the Agent, the Lenders and Arcus (for itself an as agent for others), respectively,

with respect to the Collateral and these Debtors' bankruptcy cases.

10.     The Agent is authorized to apply in full all amounts initially advanced

under the DIP Revolving Credit Agreement (together with the amounts to be advanced under the

Arcus Term Loan, as defined in the DIP Revolving Credit Agreement) to repay in full all Pre-

Petition Debt and other obligations of any nature or type owing to the Agent and/or the Lenders,

as applicable.

11.     In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the

value, if any, in any of the Collateral, in excess of the amount of the Revolving Credit secured by

such Collateral, after satisfaction of the post-petition obligations, liabilities and indebtedness of

the Debtors to the Agent or any Lender, as applicable, shall constitute additional security for the

repayment of the Pre-Petition Debt and adequate protection for the use by the Debtors and the

diminution in the value of the Collateral existing on the Petition Date.

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

12.     This Interim Order shall be sufficient and conclusive evidence of the

priority, perfection and validity of all of the post-petition security interests in and liens upon the

property of Debtors' estates granted to the Agent and the Lenders as set forth herein and in the

Financing Agreements, without the necessity of filing, recording or serving any financing

statements, mortgages or other documents which may otherwise be required under federal or

state law in any jurisdiction, or the taking of any other action to validate, reaffirm or perfect the

post-petition security interests and liens granted in this Interim Order and the Financing

Agreements.  If the Agent shall, in its discretion, elect for any reason to file any such financing

statements, mortgages or other documents with respect to such security interests and liens, the

Debtors are authorized and directed to execute, or cause to be executed, all such financing

statements, mortgages or other documents upon Agent's request, and the filing, recording or

service thereof (as the case may be) of such financing statements, mortgages or similar

documents shall be deemed to have been made at the time of and on the Petition Date.  The

Agent may, in its discretion, file a certified copy of this Interim Order in any filing or recording

office in any county or other jurisdiction in which any Debtor has an interest in real or personal

property and, in such event, the subject filing or recording office is authorized to file or record

such certified copy of this Interim Order in accordance with applicable law.

13.     The Debtors and the Agent and the Lenders, as applicable, are authorized

to implement after the entry of this Interim Order, in accordance with the terms of the Financing

Agreements, any amendments to and modifications of any of the Financing Agreements without

further order of the Court on the following conditions: (1) the amendment or modification does

not constitute a material change to the terms of the Financing Agreements (and, for purposes of

this Order, a "material change" shall mean a change that operates to (i) increase the rate of

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

interest other than as currently provided in the Financing Agreements, (ii) add specific additional events of default, (iii) increases the aggregate amount of the commitments or (iv) enlarges the nature and extent of default remedies available to the Agent following an event of default), and (2) copies of the amendment or modification must be served upon counsel for the Committee, if any, counsel for Arcus and the U.S. Trustee.  Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.

14.     The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements, in addition to the above Financing Agreements, as the Agent or the Lenders, as applicable, may reasonably require as evidence of and for the protection of the Revolving Credit, the Collateral, or which may be otherwise deemed necessary by the Agent or any Lenders, as applicable, to effectuate the terms and conditions of this Interim Order and the Financing Agreements, each of such documents, instruments, and agreements executed and delivered to Lender being included in the definition of "Financing Agreements" contained herein.

15.     The Debtors are authorized to (a) continue the existing Blocked Account Agreements and arrangements in favor of the Agent, and to enter into similar arrangements with such other banks as are designated for such purposes pursuant to the DIP Revolving Credit Agreement (the "Blocked Accounts"); (b) deposit or caused to be deposited, or to remit, in kind, immediately to the Agent, all monies, checks, credit card sales drafts, credit card sales or charge slips or receipts, or other forms of store receipts, drafts and any other payments or proceeds of Collateral received from account debtors and other parties, now or hereafter obligated to pay for inventory or other property of any Debtors' estates into the Blocked Accounts established by the Agent for the benefit of the Lenders; (c) instruct all parties now or hereafter in possession of

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

monies, claims or other payments for the account of any Debtors or other property of any

Debtors' estate in which the Agent or any Lender has a security interest or lien to remit such

payments to the Blocked Accounts; and (d) to enter into such agreements as may be necessary to

effectuate the foregoing.

16.     The Debtors are authorized, without further order of this Court, to pay or

reimburse the Agent and the Lenders for all present and future reasonable costs and expenses,

including reasonable professional fees and legal expenses paid or incurred by the Agent or any

Lender to effectuate the financing transactions as provided in this Interim Order and the

Financing Agreements, all of which are and shall be included as part of the principal amount of

the Revolving Credit Obligations, and shall be secured by the Collateral.

17.     Except as it relates to the Agent or any Lender's rights under paragraph 23

below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and

modified to the extent necessary to permit the Agent and any Lender, as applicable, to implement

the terms and conditions of the Financing Agreements and this Interim Order.

18.     As additional security for all of the Revolving Credit Obligations of the

Debtors to the Agent and the Lenders, now existing or hereafter arising pursuant to this Interim

Order, the Financing Agreements or otherwise, and in addition to the foregoing, the Agent is

granted an allowed super-priority administrative claim in accordance with Section 364(c)(1) of

the Bankruptcy Code having priority in right of payment over any and all other obligations,

liabilities and indebtedness of the Debtors (except as provided in the Intercreditor Agreement),

now in existence or hereafter incurred by any Debtors and over any and all administrative

expenses or priority claims of the kind specified in, or ordered pursuant to, Sections 105, 326,

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

328, 330, 331, 503(b), 506(c), 507(a) and 507(b) of the Bankruptcy Code, subject only to the

fees of the Clerk of the Bankruptcy Court of New Jersey and the Office of the United States

Trustee.

19.     The existence of "Carve Out Expenses" for "Allowed Professional Fees"

and a "Professional Fee Carve Out" for "Professionals," and the terms and conditions under

which such a carve out is available, as well as certain other matters, are governed by and more

fully set forth and provided for in Sections 2.3 and 2.5 of that certain Interim Order dated of even

date with this Order, approving a $25,000,000 post-petition debtor-in-possession term loan

facility to the Debtors to be provided by Arcus.  As more fully set forth in that Order, the

Professional Fee Carve-Out is not available and does not apply with respect to assets in which

the Agent and the Lenders have or obtain a first priority lien and security interest, as more fully

described and set forth in the Intercreditor Agreement.  Other than with respect to the

Professional Fee Carve-Out as aforesaid, neither the Agent nor any Lender or the Collateral shall

be responsible for the payment or reimbursement of any fees or disbursements of any

Professionals incurred in connection with the Chapter 11 case or any succeeding case under the

Bankruptcy Code, and nothing in this paragraph shall be construed to obligate the Agent or any

Lender in any way, to pay compensation or expense reimbursement to Professionals or to assure

that the Debtors have sufficient funds on hand to pay such compensation or expense

reimbursement.  Except as provided for herein or in the Intercreditor Agreement, no other claim

shall be granted or allowed priority superior to or pari passu with the priority of the claims of the

Agent and the Lenders granted by this Interim Order in favor of them while any Obligation of

the Debtors to the Agent and/or the Lenders remains outstanding or, if there are no Revolving

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

Credit Obligations outstanding, loans or other extensions of credit remain available under the

DIP Revolving Credit Agreement.

20.    Except as expressly permitted under the DIP Revolving Credit Agreement,

the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the

Collateral without the prior written consent of the Agent (and no such consent shall be implied,

from any other action, inaction or acquiescence by the Agent or any Lender) except for sales of

Debtors' Inventory in the ordinary course of its business.

21.    Except with respect to the Professional Fee Carve-Out and fees and

expenses of the Clerk of the Court and the Office of the United States Trustee, upon entry of a

final order approving the DIP Revolving Credit Agreement and other Financing Agreements

provided for by this Interim Order, no costs or expenses of administration which have or may be

incurred in any Debtor's Chapter 11 case, any conversion of any Debtor's Chapter 11 case

pursuant to Section 1112 of the Bankruptcy Code, pursuant to Sections 105, 506(c) or Section

552(b) of the Bankruptcy Code, or otherwise, or in any future proceedings or cases related

thereto, shall be charged against the Agent or any Lender, their claims, or the Collateral, without

the prior written consent of the Agent and the affected Lender, and no such consent shall be

implied from any other action, inaction or acquiescence by the Agent and/or the Lenders, as

applicable, and no obligations incurred or payments or other transfers made by or on behalf of

any Debtor on account of the financing arrangements with the Agent and the Lenders shall be

avoidable or recoverable from the Agent or any Lender under Sections 547, 548, 550, 553, or

any other provision of the Bankruptcy Code.

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

22.    In the event of the occurrence of any of the following:  (a) the failure of

any Debtor to perform in any material respect any of its obligations pursuant to this Interim

Order, or (b) the occurrence of any "Event of Default" under the Financing Agreements,

including the failure to comply with or perform any of the terms and conditions of the DIP

Revolving Credit Agreement or the other Financing Agreements (the foregoing being referred to

in this Interim Order, individually, as an "Event of Default" and collectively, as "Events of

Default") then (unless such Event of Default is specifically waived in writing by the Agent/and

or other Lenders, as required by the DIP Revolving Credit Agreement, and which waiver shall

not be implied from any other action, inaction or acquiescence by any Agent or Lender ) and

upon or after the occurrence of any of the foregoing, and at all times thereafter, after giving three

(3) business days notice in writing, served by overnight delivery service or telecopy, to the

Debtors, the Debtors' counsel, counsel to the Committee, counsel to Arcus, the United States

Trustee and the Court: (i) all of the Revolving Credit Obligations shall become immediately due

and payable, (ii) the automatic stay provided for pursuant to Section 362 of the Bankruptcy Code

and any other restrictions on the enforcement by the Agent and the Lenders of their liens upon

and security interests in the Collateral (or any other rights under the Financing Agreements

granted to or for the benefit of the Agent and the Lenders or pursuant to this Interim Order) shall

be automatically vacated and modified without any further action being required, and (iii) the

Agent and/or the Lenders, as applicable, without further notice, hearing or approval of this Court,

shall be, and are hereby authorized, in their discretion, to take any and all actions or remedies

which they may deem appropriate to proceed against and realize upon the Collateral and any

other property of any or all of the Debtors' estates upon which the Agent or any Lender has been

or may hereafter be granted liens and security interests to obtain repayment of the Revolving

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

Credit Obligations.  The Agent and the Lenders shall have no obligation to lend or advance any additional funds to any Debtor, or provide other financial accommodations to any Debtor, upon or after the occurrence of an Event of Default.

23.     Upon the expiration of the Debtors' authority to borrow and obtain other credit accommodations from the Agent and the Lenders, as applicable, pursuant to the terms of the Interim Order, and after giving three (3) business days notice in writing sent by overnight delivery service or telecopy, to the Debtors, the Debtors' counsel, counsel to the Committee, counsel to Arcus, the United States Trustee and the Court, unless an Event of Default set forth in Paragraph 22 above occurs sooner and the automatic stay has been lifted or modified, all of the Revolving Credit Obligations shall immediately become due and payable, and the Agent and the Lenders shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code or any other restriction on the enforcement of their liens upon and security interests in the Collateral or any other rights granted to the Agent and the Lenders pursuant to the terms and conditions of the Financing Agreements and this Interim Order, and the Agent and the Lenders, as applicable, shall be and are hereby authorized, in their discretion, to take any and all actions and remedies which they may deem appropriate and to proceed against and realize upon the Collateral and any other property of the Debtors' estates.

24.     The Debtors shall not, without the consent of the Agent, enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under Section 546(h) of the Bankruptcy Code, or consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code, or otherwise.

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

25.     In consideration of the Agent and the Lenders making post-petition loans, advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Financing Agreements and this Interim Order, the Debtors, on behalf of themselves and their successors and assigns, (collectively, the "Releasors"), but without prejudice to the rights of the Committee and other parties in interest to assert claims on behalf of the Debtors' estate as provided in paragraph 6, above, shall and do forever release, discharge and acquit the Agent and each Lender, and each of their respective officers, directors, agents, attorneys and predecessors-in-interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to any Debtor, the Pre-Petition Debt, the Financing Agreements and any Revolving Loans, Letters of Credit or other financial accommodations made by the Agent or any Lender to any Debtors pursuant to the Financing Agreements. In addition, upon the payment in full, in cash of all Revolving Credit Obligations owed to Agent and the Lenders by the Debtors, and termination of the rights and obligations arising under the Financing Agreements and this Interim Order, the Agent and each Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Financing Agreements and/or this Interim Order on terms and conditions acceptable to the Agent and each Lender.

26.     Until all of the Revolving Credit Obligations shall have been indefeasibly paid in full, in cash and satisfied, and without further order of the Court: (a) except as provided

*Approved by Judge Gloria M. Burns March 18, 2008*

in the Intercreditor Agreement, no other party shall foreclose or otherwise seek to enforce any

lien or other right such other party may have in and to any property of any Debtors' estate upon

which the Agent or any Lender, as applicable, holds or asserts a lien or security interest; (b) upon

and after the occurrence of an Event of Default, and subject to the Agent being granted relief

from the automatic stay, the Agent, in its discretion, in connection with a liquidation of any of

the Collateral may (i) enter upon, occupy and use any real property, equipment, leasehold

interests, warehouse arrangements, trademarks, tradenames, copyrights, licenses, patents or any

other assets of any Debtor, which are owned by or subject to a lien of any third party and which

are used by any Debtor in its business, all without interference from the respective lessors,

licensors or other third parties for the purpose of conducting liquidation sales of any Debtors'

assets and properties, provided, that, except as otherwise provided in the Intercreditor Agreement

or as otherwise provided in any agreement which the Agent or any Lender maintains with any of

the following named type of third parties, the Lenders shall be responsible for the payment of the

monthly rent and/or other charges (taxes, insurance, common area charges and utilities), rentals

or royalties due such lessor or licensor solely for the period of time that the Agent actually

occupies or uses the leased premises, the leased equipment or the intellectual property.

27.    All post-petition Revolving Loans and Letters of Credit under the DIP

Revolving Credit Agreement are made in reliance on this Interim Order, and there shall not at

any time be entered in any Debtor's Chapter 11 case any order which (a) authorizes the use of

cash collateral of any Debtor in which the Agent or any Lender has an interest, or the sale, lease,

or other disposition of property of any Debtor's estate in which the Agent or any Lender has a

lien or security interest, or (b) authorizes the obtaining of credit or the incurring of indebtedness

under Section 364 of the Bankruptcy Code secured by a lien or security interest which is equal or

B # 759458 v.4

*Approved by Judge Gloria M. Burns March 18, 2008*

senior to a lien or security interest in property in which the Agent or any Lender, as applicable, holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the Agent and the Lenders herein, unless, in each instance (i) the Agent or the Lenders, as applicable, shall have given its or their express prior written consent thereto[1], no such consent being implied from any other action, inaction or acquiescence by the Agent or any Lender, or (ii) such other order requires that the Revolving Credit Obligations, without limitation, shall first be indefeasibly paid in full, in cash, including all debts and obligations of the Debtors to the Agent and the Lenders which arise or result from the obligations, loans, security interests and liens authorized herein.  The security interests and liens granted to or for the benefit of the Agent and the Lenders hereunder and the rights of the Agent and the Lenders pursuant to this Interim Order with respect to the Revolving Credit Obligations and the Collateral are cumulative, and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of any Debtor and, in the event the Agent and each Lender, as applicable, shall, in their sole discretion, expressly consent in writing that the Revolving Credit Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

28.    To the fullest extent permitted by applicable law, the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting any Debtor's Chapter 11 case to a Chapter 7 case, (b) confirming or consummating any plan of reorganization of any Debtor or (c) dismissing any Debtor's Chapter

---

[1]  Matters pertaining to the consent, agreement or other similar matters as referred to in this Interim Order are, as between the Agent and the Lenders, governed by the provisions of the DIP Revolving Credit Agreement as to matters which require the consent or agreement, as applicable, of the Agent, all of the Lenders or "Required Lenders," and the provisions of the DIP Revolving Credit Agreement as among the Lenders and the Debtors shall govern in that regard.

*Approved by Judge Gloria M. Burns March  18, 2008*

11 case or any subsequent Chapter 7 case pursuant to Sections 303, 305 or 1112 of the

Bankruptcy Code, and the terms and provisions of this Interim Order, as well as the priorities in

payment, liens, and security interests granted pursuant to this Interim Order and the Financing

Agreements shall continue in this or any superseding case under the Bankruptcy Code, and such

priorities in payment, liens and security interests shall maintain their priority as provided by this

Interim Order until all Revolving Credit Obligations are indefeasibly paid in full, in cash and

satisfied; provided, that, all obligations and duties of the Agent and the Lenders hereunder, under

the Financing Agreements or otherwise with respect to any future loans and advances or

otherwise shall terminate immediately upon the earlier of the date of any termination date

provided in the DIP Revolving Credit Agreement, the occurrence of any Event of Default or the

date that a plan of reorganization of any Debtors becomes effective, unless the Agent and the

Lenders have given their express prior written consent thereto, no such consent being implied

from any other action, inaction or acquiescence by the Agent and the Lenders.  Any Order

dismissing any one or more of the Debtors' cases shall be deemed to provide (in accordance with

Sections 105 and 349 of the Bankruptcy Code) that (a) the superpriority claim provided for in

this Order, as well as the Agent's and the Lenders', as applicable, liens on and security interest in

the Collateral shall continue in full force and effect notwithstanding such dismissal until the

Obligations are indefeasibly paid in full, in cash and satisfied, and (b) this Court shall retain

jurisdiction, notwithstanding such dismissal, for purposes of enforcing the superpriority claim

and such liens and security interest in the Collateral.

      29.     The provisions of this Interim Order shall inure to the benefit of the

Debtors, the Agent and each Lender, shall be binding upon the Debtors, the Agent and each

Lender and their respective successors and assigns, including any trustee, examiner or other

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

fiduciary hereafter appointed as a legal representative of any Debtor or with respect to property

of the estate of any Debtor, whether under Chapter 11 of the Bankruptcy Code or any subsequent

Chapter 7 case, and shall also be binding upon all creditors of the Debtors and other parties in

interest.

30.    The provisions of this Interim Order shall be effective immediately upon

entry of this Interim Order pursuant to Bankruptcy Rules 6004(h) and 7062 by the Court, and

any actions taken pursuant thereto shall survive entry of, and shall govern with respect to any

conflict with, any Order which may entered confirming any plan of reorganization, dismissing

the Chapter 11 Case pursuant to Sections 303, 305 or 1112 of the Bankruptcy Code, or

converting the Chapter 11 Case from Chapter 11 to Chapter 7, and the terms and provisions of

this Interim Order as well as the priorities in payment, liens, and security interests granted

pursuant to this Interim Order and the Financing Agreements shall continue in this or any

superseding case under the Bankruptcy Code, and such priorities in payment, liens and security

interests shall maintain their priority as provided by this Interim Order until all Revolving Credit

Obligations are indefeasibly paid in full, in cash and satisfied; provided, that, all obligations and

duties of the Agent and the Lenders hereunder, under the Financing Agreements or otherwise

with respect to any future loans and advances or otherwise shall terminate immediately upon the

earlier of the date of any termination date provided in the DIP Revolving Credit Agreement, the

occurrence of any Event of Default, or the date that a plan of reorganization of any Debtors

becomes effective unless the Agent and each Lender, as applicable, has given its express prior

written consent thereto, no such consent being implied from any other action, inaction or

acquiescence by the Agent or any Lender.

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

31.      The Debtors irrevocably waive any right to seek any modifications or extensions of this Interim Order without the prior written consent of the Agent and the Lenders, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence by the Agent or any Lender.

32.      To the extent the terms and conditions of the Financing Agreements are in direct conflict with the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

33.      The terms of the financing arrangements between the Debtors, the Agent and each Lender have been negotiated in good faith and at arms' length between Debtors, the Agent and each Lender, and any loans, advances or other financial and credit accommodations which are made or caused to be made to any Debtors pursuant to the Financing Agreements are deemed to have been extended in good faith, as the term "good faith" is used in Sections 363(m) and 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

34.      This matter is set for a final hearing at 10:00 a.m.        on April 3      , 2008 ("Final Hearing"), at ___Camden, NJ_____, at which time any party-in-interest may appear and state its objections, if any, to the financing arrangements between the Agent, the Lenders and the Debtors in accordance with the Financing Agreements and this Interim Order.  The following parties shall immediately, but in no event later than March 19 , 2008, be mailed copies of this Interim Order or such written summary of this Interim Order as the Court may approve:  (a) the Office of the United States Trustee, (b) the Agent and its

B # 759458 v.4

Approved by Judge Gloria M. Burns March  18, 2008

attorneys, (c) all creditors known to the Debtors who may have liens against any of the Debtors'

assets, (d) the Debtors' twenty (20) largest unsecured creditors, (e) Arcus and its attorneys, (f)

the United States Internal Revenue Service, (g) all landlords, owners, operators and/or

mortgagors of the premises at which any Debtors' inventory or equipment is located, (h) all

equipment lessors of the Debtors, (i) all licensors of any intellectual property to any Debtor, (j)

the state taxing authorities, (k) all utilities providing services to any Debtors and (l) all parties in

interest that have filed notices of appearance in this Chapter 11 case.  Objections shall be in

writing and shall be filed with the Clerk of the Bankruptcy Court, with a copy served upon;

Cozen O'Conner, Chase Manhattan Centre, 1201 North Market Street, Suite 1400, Wilmington,

DE 19801, Attention: Mark E. Felger, Esquire and Stradley, Ronon, Stevens and Young, LLP,

2600 One Commerce Square, Philadelphia, PA  19103, Attention: Paul A. Patterson, Esquire, so

that such objections are received on or before the close of business __March 31__, 2008.

Except as otherwise provided in this paragraph, the terms of this Interim Order shall be valid and

binding upon the Debtors, all creditors of the Debtors and all other parties-in-interest from and

after the date of the entry of this Interim Order by this Court.  In the event this Court modifies

any of the provisions of this Interim Order and the Financing Agreements following such further

hearing, such modifications shall not affect the rights and priorities of the Agent and the Lenders

pursuant to this Interim Order with respect to the Collateral, and any portion of the Revolving

Credit Obligations which arises or is incurred or is advanced prior to such modifications (or

otherwise arising prior to such modifications), and this Interim Order shall remain in full force

and effect except as specifically amended or modified at such Final Hearing.

       35.     Notwithstanding anything to the contrary contained in this Interim Order,

the rights and obligations of Arcus (for itself and its agent for other lenders) and the Agent (for

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*

itself and the other Lenders) to one another, and with respect to the Collateral (as defined in the Intercreditor Agreement), are subject to the terms of the Intercreditor Agreement among each of the foregoing agents and lenders.  With respect to such rights and obligations, and with respect to the Collateral (as defined in the Intercreditor Agreement), in the event of a conflict between the terms and provisions of the Intercreditor Agreement and this Interim Order, the terms and provisions of the Intercreditor Agreement shall govern and control.  Pursuant to the Intercreditor Agreement, each of The CIT Group/Business Credit, Inc. and Arcus, as agent for itself and lenders for which it acts as agent, has consented to the liens on its security interest in the Collateral of the other agent, for the benefit of itself and the lenders for which it acts as agent, and the priority of such liens and security interests, all as more fully defined, described and set forth in the Intercreditor Agreement.

B # 759458 v.4

*Approved by Judge Gloria M. Burns March  18, 2008*