SUZANNE M. KLAR, ESQ. (SK 4388)
80 Park Plaza, T5D
Newark, New Jersey 07102-0570
(973) 430-6483
Attorney for Creditor
Public Service Electric and Gas Company
File No.: D2008-00328

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In re: | ) |
| --- | --- |
| | ) Chapter 11 |
| SHAPES/ARCH HOLDINGS, L.L.C., et al., | ) |
| | ) Case No. 08-14631 (GMB) |
| Debtors. | ) |

**OBJECTION OF PUBLIC SERVICE ELECTRIC & GAS COMPANY TO THE DEBTORS' MOTION FOR ENTRY OF A FINAL ORDER: (I) PROHIBITING UTILITY COMPANIES FROM DISCONTINUING, ALTERING OR REFUSING SERVICES; (II) DEEMING UTILITY COMPANIES TO HAVE ADEQUATE ASSURANCE OF PAYMENT; AND (III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE PURSUANT TO 11 U.S.C. § 366**

Public Service Electric and Gas Company ("PSE&G"), by counsel, for its Objection to the Debtors' motion for an order (i) prohibiting utility companies from discontinuing, altering or effusing services; (ii) deeming utility companies to have adequate assurance of payment; and (iii) establishing procedures for determining requests

for additional assurance pursuant to 11 U.S.C. § 366 ("Utility Motion"), states the following:

## Introduction

Despite the fact that Congress amended Section 366 of the Bankruptcy Code to reverse the prior practice of many bankruptcy courts making an initial determination of adequate assurance of payment on motions heard on an ex parte basis at the commencement of the bankruptcy proceeding, this and other debtors, have been filing motions at the outset of their bankruptcy proceedings seeking to specifically avoid the provisions and requirements set forth in the amended Section 366. Specifically, amended Section 366 requires the Debtor to provide the Utilities with adequate assurance of payment in one of the forms set forth in Section 366(c) within 30 days of the Petition Date. If the Debtor believes the Utilities' requests are unreasonable or need to be modified, they can file a Motion with the Court seeking to modify the Utilities' requests (a "Modification Motion").

The Debtors essentially acknowledge the changes in Section 366 in the Utility Motion. The Debtors, however, claim that the Court should ignore the plain language and requirements of Section 366. Specifically, instead of contacting their utility companies and/or waiting to receive their deposit requests and follow the requirements and procedures set forth in Section 366, the Debtors request this Court to establish a two weeks' average utility consumption as adequate assurance of payment and require utilities to file objections and come to Court if they object to the Debtors' unilateral determination of adequate assurance of payment.

Instead of completely ignoring the requirements of the statute for a Debtor that

has failed to contact its utility companies regarding their requests for adequate assurance of payment, the Court should require the Debtors to comply with the requirements of Section 366(c). If the Debtors believe the Utilities' requests should be modified, the Debtors should file a Modification Motion demonstrating why the Court should find that the Utility's request should be modified and have the Modification Motion scheduled on or before the 30th day of the case.

## Procedural Facts

1.  On March 16, 2008 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Title 11, Chapter 11 of the United States Bankruptcy Code with this Court.

2.  On March 16, 2008, the Debtors filed the Utility Motion.

3.  The Court has scheduled a hearing for April 3, 2008 at 10:00 a.m. to consider entry of a final order pursuant to 11 U.S.C. §366.

## The Proposed Procedures in the Utility Motion

4.  In the Utility Motion, the Debtors seek the entry of a final order that provides, (a) within ten (10) business days after the date of entry of the Order, the Debtors shall pay a cash deposit equivalent to two weeks' average utility consumption based upon the Debtors' consumption during the previous year to PSE&G which shall constitute "adequate assurance" of payment under 11 U.S.C. § 366.

### Facts Concerning Debtors and Other Pleadings Filed in the Case

5. The Debtors offer no reasonable assurances that their financial situation will improve post-petition, leaving substantial doubts about their ability to pay its post-petition payables, including post-petition amounts that will be owed to PSE&G.

### Facts Concerning PSE&G

6. PSE&G provided the Debtors with pre-petition utility service and continues to provide the Debtors with post-petition utility service.

7. Unlike the Debtors' other post-petition creditors, PSE&G's billing cycle is regulated by applicable state laws, tariffs and/or regulations. Specifically, under PSE&G's billing cycles, the Debtors receive approximately one month of utility service before PSE&G issues a bill for such service. Once a bill is issued, although it is on 15 day terms, the Debtors have approximately 30 days to pay the applicable bill. If the Debtors fail to timely pay the bill, a past due notice is issued on the account. If the Debtors fail to cure the arrearage by the applicable cure period set forth in the notice, its service is subject to disconnection. Therefore, under PSE&G's state mandated billing cycles, PSE&G could provide the Debtors with over two months of unpaid service before PSE&G could begin to terminate service to the Debtors for non-payment of post-petition bills.

8. The Debtors' third-party supplier notified PSE&G in January that as of February 1, 2008 it would no longer supply the Debtors with utility services. By state law, PSE&G was required to supply utility services. PSE&G did so and the Debtors filed

before the bills for February usage even issued. PSE&G's pre-petition loss totals $1,565,265.41.

9. PSE&G's Tariffs provide that it is entitled to a two month security deposit. Two months average bills based on the Debtors' prior usage total of $2,040,345.00. PSE&G will only have adequate assurance of payment if this amount is paid as a deposit. Attached hereto as **Exhibit "A"** is a spreadsheet setting forth the calculation of the two month deposit demand for the Debtors' PSE&G accounts.

10. This estimate is based on the Debtors' past usage and rates.

### Discussion

**I. THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT PROCEDURES VIOLATE THE EXPRESS PROVISIONS OF SECTION 366 AND SHOULD BE REJECTED BY THE COURT.**

Sections 366(b) and (c) of the Bankruptcy Code, in pertinent part, provide:

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. . . .

(c)(1)(A) For purposes of this subsection, the term "assurance of payment' means

☐ (i) a cash deposit;
☐ (ii) a letter of credit;

(iii) a certificate of deposit;

☐ (iv) a surety bond;
☐ (v) a prepayment of utility consumption; or

☐ (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.
☐ (B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment,
☐ (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility

service that is satisfactory to the utility;
- (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
- (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider
- (i) the absence of security before the date of the filing of the petition;
- (ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
- (iii) the availability of an administrative expense priority.
- (4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

As set forth above, within 30 days of the Petition Date the Debtor is required to provide the Utilities with adequate assurance of payment requested by the Utilities in one of the forms specified in Section 366(c). Instead of complying with those procedures, the Debtors, without even bothering to contact their utility companies, seeks to reverse the process by having its proposed two week deposit and promise to timely pay post-petition bills[1] be deemed to constitute adequate assurance of payment and require the Utilities to file objections to the Debtors' proposed adequate assurance of payment.

## II. THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE PSE&G WITH ADEQUATE ASSURANCE OF PAYMENT AS REQUIRED BY SECTION 366(C) AS REQUESTED IN THIS OBJECTION.

Section 366(c) was amended to overturn decisions such as <u>Virginia Electric And Power Company v. Caldor, Inc.</u>, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate

---

[1] Furthermore, the Utilities' requests for adequate assurance of payment that are set forth in this Objection, are based on their state law tariffs and/or regulations (collectively, "Tariffs"). If the Debtor believes that the deposit amounts, which are established by an independent third-party, need to be modified, they can file a Modification Motion under Section 366(c)(3)(A). Therefore, this Court should deny the Utility Motion and require the Debtor to comply with the requirements and procedures set forth in Section 366(c).

assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

A determination of adequate assurance is within the court's discretion, and is made on a case-by-case basis, subject to the new requirements of Section 366(c). See In re Utica Floor Maintenance, Inc., 25 B.R. 1010, 1016 (Bankr. N.D.N.Y. 1982); In re Cunha, 1 B.R. 330, 332-33 (Bankr. E.D. Va. 1979). Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. See In re Hanratty, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." In re Coastal Dry Dock & Repair Corp., 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." In re Begley, 760 F.2d 46, 49 (3d Cir. 1985). Based on the Debtor's anticipated utility consumption, the minimum period of time the Debtor could receive service from the Utilities before termination of service for non-payment of bills is approximately two (2) months. Accordingly, the security deposits requested by

the Utilities are reasonable. See In re Stagecoach, 1 B.R. 732, 735-36 (Bankr. M.D. Fla. 1979) (two month deposit is appropriate where the debtor could receive 60 days of service before termination of services because of the utilities' billing cycle.); see also In the Matter of Robmac, Inc., 8 B.R. 1, 3-4 (Bankr. N.D. Ga. 1979).

As set forth above, PSE&G's deposit request is based on: (1) its billing exposure created by state law tariffs and/or regulations; and the amount that the New Jersey Board of Public Utilities, which is a neutral third-party, permits PSE&G to request. Although PSE&G recognizes that this Court is not bound by the regulations/tariffs of the applicable state governmental entities that establish the deposit amounts that PSE&G can request from its customers, it is extremely relevant information of a determination made by an independent entity on the appropriate amount of security that should be paid to the utility.

In contrast, the Debtors do not provide an objective basis for a two week deposit proposal. Therefore, this Court should award PSE&G the deposit it has requested herein.

### III. THE COURT SHOULD ALLOW PSE&G TO TERMINATE UTILITY SERVICES IF ADEQUATE ASSURANCE OF PAYMENT OR POST-PETITION UTILITY CHARGES ARE NOT PAID.

The Utility Motion seeks entry of an Order that would require a utility to seek further order of the court before terminating utility services for non-payment. Once the issue of adequate assurance of payment has been addressed, the terms and conditions of utility service should be governed by the Tariffs of the utility. Debtors cite no support for this injunctive relief and the request should be denied.

**WHEREFORE**, PSE&G respectfully request that this Court enter an order:

(I)  Deny the Utility Motion as to PSE&G;

(II) Award PSE&G a post-petition adequate assurance of payment in the amount of $2,040,345.00; and award such other and further relief as the Court deems just and appropriate.

**WHEREFORE**, PSE&G respectfully request this Court to: (1) Deny the Utility Motion and grant PSE&G the adequate assurance of payment it seeks herein; (2) grant PSE&G a two month security deposit as adequate assurance of payment in the amount of $2,040,345.00.

Dated: April 2, 2008

/s/Suzanne M. Klar
SUZANNE M. KLAR (SK 4388)
Attorney for Creditor
Public Service Electric and Gas Company

# EXHIBIT "A"

| ACCOUNT NAME | ADDRESS | ESTIMATED BALANCE | DEPOSIT CHARGED | ESTIMATED DPST REQ AMT |
|---|---|---|---|---|
| Aluminum Shapes | 9000 River Rd,Pennsauken,LVG HTS | $ 492,553.70 | $ - | $ 800,000.00 |
| Aluminum Smelters | 9000 River Rd,Pennsauken,TSGNF | $ 1,022,898.64 | $ - | $ 1,200,000.00 |
| Aluminum Shapes | 9000 River Rd,Pennsauken,PSAL | $ 1,163.19 | $ - | $ 1,225.00 |
| Aluminum Shapes | 8600 River Rd,Pennsauken,LVG C2 MD | $ 32,135.65 | $ - | $ 22,000.00 |
| Ultra Hardware Products | 1777 Hylton Rd,Pennsauken,LPLS | $ 14,061.36 | $ - | $ 16,060.00 |
| Ultra Hardware Products | 1777 Hylton Rd,Pennsauken,MPLV PSAL | $ 2,452.87 | $ - | $ 1,060.00 |
| | | $ 1,565,265.41 | $ - | $ 2,040,345.00 |