| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |

**HALPERIN BATTAGLIA RAICHT, LLP**
555 Madison Avenue – 9th Floor
New York, New York 10022
(212) 765-9100
(212) 765-0964 Facsimile
Alan D. Halperin, Esq.
Walter Benzija, Esq.

**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
Ilana Volkov, Esq.
Warren A. Usatine, Esq.

Proposed Co-Counsel to the Official
Committee of Unsecured Creditors of
Shapes/Arch Holdings L.L.C., et al.

| | |
|---|---|
| In re:<br><br>**SHAPES/ARCH HOLDINGS L.L.C., et al.,**<br><br>Debtors. | Chapter 11<br><br>Case No. 08-14631<br>(Jointly Administered)<br><br>Judge: Hon. Gloria M. Burns, USBJ |

**AFFIDAVIT OF BERNARD A. KATZ IN SUPPORT OF APPLICATION FOR AN
ORDER APPROVING THE EMPLOYMENT AND RETENTION OF J.H. COHN
LLP AS FINANCIAL ADVISOR AND FORENSIC ACCOUNTANT TO THE
OFFICIAL COMMITTE OF UNSECURED CREDITORS
PURSUANT TO 11 U.S.C. §§ 328(a) AND 1103(b)**

STATE OF NEW JERSEY    )
                                            ) SS.:
COUNTY OF MIDDLESEX    )

      BERNARD A. KATZ, being duly sworn, declares as follows:

{00061606.1 / 0631-001}

1.I am a partner in the firm of J.H. Cohn LLP ("JHC"), an accounting and financial consulting firm having expertise in turnaround and bankruptcy issues. JHC maintains offices at 333 Thornall Street, Edison, New Jersey 08837. I submit this Affidavit in support of the application of the Official Committee of Unsecured Creditors (the "Committee") of Shapes/Arch Holdings, L.L.C., et al. (the "Debtors") for an Order authorizing the employment and retention of JHC as financial advisor and forensic accountant to the Committee. I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

2.Founded in 1919, JHC is an accounting and consulting firm with expertise in financial restructuring. One of JHC's specialties is providing financial advisory services and forensic accounting services in bankruptcy and insolvency matters.

3.JHC provides a broad range of corporate advisory services including, but not limited to, a specialty in the manufacturing and distribution industry.

4.JHC's professionals have extensive experience working with financially troubled companies in complex financial restructurings both in and out of Chapter 11. JHC's professionals have advised debtors, creditors and equity holders in many restructurings.

5.Insofar as I have been able to ascertain through diligent inquiry, except as set forth below, neither I, JHC, nor any principal or professional employee of JHC has any connection with the Debtors, their creditors, any other party-in-interest, their current respective attorneys or professionals, the United States Trustee or any person employed in the office of the United States Trustee, nor do we hold or represent any entity having an adverse interest in connection with the Debtors' Chapter 11 case, except as follows:

a.JHC performs accounting services for Marubeni America Corporation ("Mauribeni") in connection with the audit of two of its employee benefit plans. Marubeni is a creditor in the *Shapes/Arch Holdings, et al. L.L.C.* matter. Fees paid to JHC in connection with

these services were considerably less than 1% of JHC's total fee income for the fiscal year ending January 31, 2008. JHC does not provide professional services to Mauribeni in any matter related to the Debtors or theses cases.

      b.      From time to time, JHC performs consulting services for CIT Group (NJ) LLC ("CIT NJ") in matters unrelated to the *Shapes/Arch Holdings L.L.C.* et al. matter or these cases. The CIT Group/Business Credit, Inc. is a secured lender in these cases. Fees paid to JHC in connection with services rendered to CIT NJ were considerably less than 1% of JHC's total fee income for the fiscal year ending January 31, 2008. No fees are owed to JHC in connection with these services.

      6.      Neither I, JHC nor any professional employee of JHC is related professionally to the Debtors, their creditors or any other party in interest herein or their respective attorneys in the matters for which JHC is proposed to be retained.

      7.      JHC has in the past worked with, continues to work with, and has mutual clients with certain law firms who may represent parties-in-interest in these cases. None of these engagements or relationships relate to these cases.

      8.      JHC has had, may currently have, and may in the future have commercial or professional relationships directly or indirectly with customers, competitors, and creditors of the Debtors. As described below, however, JHC has undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for the twenty largest unsecured creditors, equity security holders, or insiders in matters related to these cases.

      9.      To this end, JHC researched its client database to determine whether it had any relationships with the following entities (collectively, the "Interested Parties"): (a) the Debtors and their affiliates, if any, (b) the Debtors' directors and officers, and (c) the Debtors' twenty

largest unsecured creditors. This research did not reveal any fact or situation that would represent a conflict of interest for JHC with regard to the Debtors.

10. Despite the efforts described above to identify and disclose JHC's connections with parties-in-interest in these cases, because the Debtors have numerous creditors and other relationships, JHC is unable to state with certainty that every client representation or other connection has been disclosed. If JHC discovers additional information that requires disclosure, JHC will file supplemental disclosures with the Court as promptly as possible.

11. To the best of my knowledge, JHC has not been retained to assist any entity or person other than the Committee on matters relating to, or in connection with, these cases. If this Court approves the proposed employment of JHC as financial advisor to the Committee, JHC will not accept any engagement or perform any services in these cases for any entity or person other than the Committee. JHC may, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtors or parties-in-interest in these cases; <u>provided</u>, <u>however</u>, that such services do not and will not relate to, or have any direct connection with, these cases.

12. I am not related or connected to and, to the best of my knowledge, no other professional of JHC is related or connected to any United States Bankruptcy Judge or District Judge for the District of New Jersey, the United States Trustee, or any employee in the office thereof.

13. To the best of my knowledge, information and belief, JHC does not have or represent any interest materially adverse to the interest of the Debtors, or of any class of creditors or equity security holders of the Debtors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors. To the extent that any information disclosed herein

{00061606.1 / 0631-001}                            4

requires amendment or modification upon JHC's completion of further analysis, or as additional information becomes available to it, a supplemental affidavit will be submitted to the Court.

## SERVICES TO BE PROVIDED

14. The Committee has advised JHC that it desires to retain JHC to provide such professional services as JHC and the Committee find mutually agreeable and which may include:

a) Review reasonableness of the DIP facilities as to their cost to the Debtors and the likelihood that Debtors will be able to comply with the terms thereof.

b) Review the DIP facilities as to whether they provides sufficient liquidity.

c) Analyze and review key motions as to financial issues.

d) Gain an understanding of Debtors' corporate structure, including non-debtor entities.

e) Perform a preliminary assessment of the Debtors' 13-week budget.

f) Establish reporting procedures that will allow for the monitoring of the Debtors' post-petition operations.

g) Develop and evaluate alternative sale and restructuring strategies.

h) Gain an understanding of Debtors' accounting systems.

i) Scrutinize proposed transactions, including the assumption and/or rejection of executory contracts.

j) Review the reasonableness and necessity of any proposed key employee retention plan.

k) Identify, analyze and investigate transactions with non-debtor entities and other related parties.

l) Monitor Debtors' weekly operating results, availability and borrowing base certificates, if applicable.

m) Participate in the establishment and monitoring of any proposed sales process and supplement list of potential buyers.

n) Communicate findings to the Committee.

o) Identify and quantify any recoverable assets which are not in the Debtors' estates.

p) Assist the Committee in negotiating the key terms of a Plan of Reorganization.

q) Review the nature and origin of other significant claims asserted against the Debtors.

r) Prepare dividend analysis.

s) Validate the Debtors' business plan projections and liquidation analysis.

t) Render such other assistance as the Committee and its counsel may deem necessary.

## COMPENSATION OF PROFESSIONALS

15.     JHC's billing rates for the accounting and financial advisory services of the nature to be rendered to the Committee are as follows:

| | |
|---|---|
| Senior Partner/Partners | $515 - 650/hr. |
| Director/Senior Manager | $430 - 500/hr. |
| Other Professional Staff | $170 - 425/hr. |
| Paraprofessional | $115 - 155/hr. |

In the normal course of business, the JHC revises its hourly rates on February 1 of each year. In addition, JHC will seek reimbursement for expenses incurred in connection with its services in these cases.

16.     JHC will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services and will file all appropriate applications for allowances of compensation and expenses with this Court in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and orders of the Court.

17.     JHC has not shared or agreed to share any of its compensation with any other person, other than a principal, professional or employee of JHC, as permitted by Section 504 of

the Bankruptcy Code. The proposed engagement of JHC is not prohibited by Bankruptcy Rule 5002.

                /s/ Bernard A. Katz
                BERNARD A. KATZ

Sworn and subscribed to
before me this 3rd day
of April, 2008.

/s/ Rosellen Martoken

A Notary Public of the State of New Jersey
My Commission Expires October 21, 2008