**HALPERIN BATTAGLIA RAICHT, LLP**
555 Madison Avenue – 9th Floor
New York, New York 10022
(212) 765-9100
(212) 765-0964 Facsimile
Alan D. Halperin, Esq.
Walter Benzija, Esq.

**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
Ilana Volkov, Esq.
Warren A. Usatine, Esq.

Proposed Co-Counsel to the Official
Committee of Unsecured Creditors of
Shapes/Arch Holdings L.L.C., et al.

| | |
|---|---|
| In re:<br><br>SHAPES/ARCH HOLDINGS L.L.C., et al.,<br><br>Debtors. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HON. GLORIA M. BURNS<br>CASE NO. 08-14631(GMB)<br><br>Chapter 11<br>(Jointly Administered)<br><br>HEARING DATE: May 5, 2008, at 10:00 a.m.<br><br>ORAL ARGUMENT WAIVED UNLESS<br>OBJECTIONS TIMELY FILED |

**APPLICATION IN SUPPORT OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO SECTIONS 105(a), 107(b) AND 1102(b)(3)(A) OF THE BANKRUPTCY CODE, FOR AN ORDER CONFIRMING THAT THE COMMITTEE IS NOT REQUIRED TO PROVIDE GENERAL ACCESS OR OTHERWISE GENERALLY DISCLOSE (A) CONFIDENTIAL INFORMATION OF THE DEBTORS OR (B) INFORMATION SUBJECT TO ANY PRIVILEGE**

TO:    HONORABLE GLORIA M. BURNS,
         United States Bankruptcy Judge

45765/0001-1516720v2

The Official Committee of Unsecured Creditors (the "Committee") of Shapes/Arch Holdings, L.L.C., *et al*., the above-captioned debtors and debtors-in-possession (each a "Debtor" and, together, the "Debtors"), by its proposed co-counsel Halperin Battaglia Raicht, LLP ("HBR") and Cole, Schotz, Meisel, Forman & Leonard, P.A. ("Cole Schotz"), moves pursuant to 11 U.S.C. §§ 105, 107(b) and 1102(b)(3)(A) for entry of an Order confirming that the Committee is not required to provide general access or otherwise generally disclose (A) confidential information of the Debtors or (B) information subject to any privilege. In support of its motion (the "Motion"), the Committee respectfully represents as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this application pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

**Background**

2. The Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on March 16, 2008 (the "Filing Date"). The Debtors have since continued in the management of their affairs as debtors-in possession pursuant to 11 U.S.C. §§ 1108 and 1109 of the Bankruptcy Code. No trustee has been appointed in the Debtors' cases.

3. On March 31, 2008, the United States Trustee for Region 3 appointed a creditors' committee consisting of the following nine (9) members: Alcan, Inc..; Rusal America Corp.; United Parcel Service; Perfect Trade; Coil Plus; Acme Corrugated Box; Glencore Ltd.; Colorworks Graphics, Inc.; and PSE&G. At its initial meeting on March 31, 2008, the

45765/0001-1516720v2

2

Committee selected HBR as its counsel to represent the Committee in all matters involving the Debtors' chapter 11 cases and Cole Schotz as its conflicts and local counsel.

4. As disclosed in its public filings with the Court, Shapes/Arch Holdings L.L.C. ("Shapes/Arch") is the parent company that owns each of the four operating Debtors, as follows: Shapes L.L.C. ("Shapes"), Delair L.L.C. ("Delair"), Accu-Weld L.L.C. ("Accu-Weld"), and Ultra L.L.C. ("Ultra"). Shapes is the largest operating Debtor and the leading producer of custom aluminum extrusions for a variety of industries. Delair manufactures maintenance-free aluminum fence systems for residential and commercial use and above-ground pools. Accu-Weld manufactures made-to-order vinyl replacement windows and steel doors. Ultra is one of the leading suppliers of value branded hardware products, including locksets, door and window hardware, and other decorative hardware, in the United States.

5. The Debtors have proposed a plan of reorganization whereby in exchange for a $25,000,000 in "exit financing" and a minimal equity infusion, a group of investors led by Arcus ASI Funding, L.L.C. and Arcus ASI, Inc. (together, "Arcus") will become 100% owners of Shapes/Arch. The Committee is concerned about the proposed plan and transaction, and significant investigation and due diligence will be undertaken to evaluate it and its propriety, as well as in connection with other aspects of the cases.

**Relief Requested**

6. Pursuant to sections 105(a), 107(b) and 1102(b)(3)(A) of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Committee seeks entry of an order confirming that the Committee is not required, pursuant to section 1102(b)(3)(A) of the Bankruptcy Code, to provide access or otherwise disclose the Debtors' confidential information and other non-public proprietary information, or any privileged

information, to any creditors who are not Committee members.

### Section 1102(b)(3) of the Bankruptcy Code

7.      As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress enacted section 1102(b)(3) of the Bankruptcy Code. In relevant part, section 1102(b)(3) states that a creditors' committee appointed under section 1102(a) of the Bankruptcy Code shall "provide access to information for creditors who (i) hold claims of the kind represented by that committee; and (ii) are not appointed to the committee." 11 U.S.C. § 1102(b)(3)(A). Congress failed to make clear how a creditors' committee is to provide access to "information" and, more critically, the scope or extent of the "information" the committee must provide. The legislative history also appears to be silent on these issues and thus does not provide any guidance.

8.      The lack of specificity in Section 1102(b)(3) of the Bankruptcy Code puts creditors' committees in a particularly difficult position of trying to comply with its provisions while at the same time protecting the propriety of significant and non-public proprietary information (the "<u>Confidential Information</u>") that debtors typically provide the Committee to assist it in fulfilling its fiduciary duties to the estate and its creditors. As used in this Motion, Confidential Information shall have the following meaning:

> Any nonpublic information of the Debtors, including, without limitation, information concerning the Debtors' assets, liabilities, business operations, business practices, business plans, intellectual property and trade secrets, financial projections, financial and business analyses and compilations and studies regarding the foregoing, and other documents prepared by the Debtors or their advisors or other agents, which are furnished, disclosed or made known to the Committee, whether intentionally or unintentionally and in any manner, including in written form, orally or through any electronic, facsimile, or computer related means of communications. Confidential Information shall include, without limitation: (a) any notes, summaries, compilations, presentations, memoranda or similar written materials disclosing or discussing the Confidential Information; (b) any written memoranda or similar written materials disclosing or discussing the Confidential Information; and (c) any Confidential Information conveyed to the Committee orally that the Debtors or their advisors or other agents advise the Committee should be treated as Confidential Information.

45765/0001-1516720v2

4

Notwithstanding the foregoing, Confidential Information shall not include any information that (a) is or becomes generally available to the public or is or becomes available to a Committee member on a non-confidential basis, in each case to the extent such information became so available other than by a violation of a contractual, legal or fiduciary obligation to the Debtors; or (b) was in the possession of the Committee prior to its disclosure by the Debtors and is not subject to any other duty or obligation to maintain confidentiality.

9. Committees use such information to assess, among other things, a debtor's capital structure, prospects for reorganization in chapter 11, the overall prospects of a debtor in chapter 11, and the prospects of a sale of the debtor's business in chapter 11. Creditors' committees will often execute confidentiality agreements with debtors so that all parties can be assured that sensitive and often times proprietary information about the debtor's business and business prospects will be kept confidential and away from parties who could potentially use such information to the financial detriment of the debtor.

10. Because section 1102(b)(3)(A) of the Bankruptcy Code is silent as to the treatment of Confidential Information, it leaves open the issue of whether the Committee could be required as part of its new information sharing obligations to share the Debtors' Confidential Information among the whole of its constituency. While nothing in the text of section 1102(b)(3)(A) mandates such a result, and the legislative history is silent on the issue, the issue is of such importance that out of an abundance of caution, the Committee seeks an order of the Court confirming that section 1102(b)(3)(A) of the Bankruptcy Code does not require the Committee to provide creditors who are not Committee members with access to Confidential Information.

11. In addition, section 1102(b)(3)(A) raises the related issue of whether the Committee is compelled to share information with any creditor where the information is subject to the attorney-

client privilege or similar state or federal regulatory privilege, whether such privilege is solely controlled by the Committee or whether it is a joint privilege with the Debtors or some other party (the "<u>Privileged Information</u>").  Here again, nothing in the statute or its legislative history suggests that the Committee is compelled to share Privileged Information with every creditor.  Nevertheless, given the importance of the Committee's function in these cases, the Committee seeks similar clarification that the Committee is not required to provide creditors who are not committee members with access to Privileged Information.  The Committee submits that it would be permitted, but not required, to share such Privileged Information with any party provided that (a) such Privileged Information is not Confidential Information; and (b) the relevant privilege is held and controlled solely by the Committee.

### **Grounds for Relief**

12.     The Debtors operate in competitive industries and rely on confidential and proprietary information in the conduct of their businesses.  As such, the dissemination of Confidential Information to parties not bound by a confidentiality agreement could negatively impact the Debtors, their reorganization efforts in these chapter 11 cases, and also negatively impact the functionality of the Committee.

13.     There can be little doubt that public dissemination of the Debtors' Confidential Information would cause serious harm to the Debtors' estates.  Among other things, if the Debtors' respective business strategies and initiatives became public, the Debtors' respective competitors would be given an unfair competitive advantage in pursuing the same business opportunities.  Further, if negotiations with Arcus or other potential suitors and/or funders were to become known to all, including the Debtors' respective competitors and other potential purchasers, there is a significant risk that any sales process would be chilled to the determinant of all creditors.

14. Moreover, if there were a risk that Confidential Information provided by the Debtors to the Committee could be disclosed to any creditor, the Debtors may be strongly discouraged from providing such Confidential Information to the Committee in the first place. A significant risk exists that the Debtors would in fact conclude that it could not give any such information to the Committee for fear of the substantial adverse impact that would result from such disclosure. The inability of the Committee to gain access to Confidential Information, in turn, would severely limit the ability of the Committee to fulfill its statutory obligations under the Bankruptcy Code.

15. Thus, the Committee respectfully submits that the relief requested in this Motion is necessary and appropriate in these cases for it to be able to discharge fully its obligations under the Bankruptcy Code. The requested relief will permit the Committee and its advisors to enter into confidentiality agreements with the Debtors without the fear that individual creditors could force the Committee to breach such agreements. The Committee should not be put in the position of not knowing whether section 1102(b)(3)(A) of the Bankruptcy Code creates the untenable choice of either violating the statute or breaching confidentiality, thereby subjecting itself to possible legal action.

16. Finally, the Debtors and the Committee face similar risks if the Committee could be required to provide creditors who are not members of the Committee with access to Privileged Information. If there is a risk that Privileged Information would be turned over to creditors generally, with the possible loss of privilege at that time, the entire purpose of the privilege would be eviscerated, and the Committee may be unable to obtain the independent and unfettered advice and consultation that such privileges are meant to foster. Again, the Committee could be severely hampered in its ability to fulfill its statutory role in these cases.

**Authority for the Relief Requested**

17.     For all of the foregoing reasons, the Committee seeks the entry of an order confirming that the Committee is not required, pursuant to section 1102(b)(3)(A) of the Bankruptcy Code, to provide access to the Debtors' Confidential Information or to Privileged Information to any creditor that the Committee represents who is not a member of the Committee.  Such relief will not only assist in preserving and maximizing the value of the Debtors' estates but will also protect the Committee by allowing it to review and appropriately utilize Confidential Information and obtain privileged advice of counsel without the risk of violating the Bankruptcy Code by refusing to provide such information for creditors generally.

18.     In any event, the rights and obligations of the Committee to provide non-confidential information to its constituency will not be affected by this Motion.  The proposed order, provides that "Nothing in this Order shall expand, restrict, affirm or deny the right or obligation, if any, of the Committee to provide access, or not to provide access, to any information to any party except as explicitly provided herein."  Consequently, the relief sought in this Motion is limited to defining the potential impact of section 1102(b)(3)(A) of the Bankruptcy Code as it concerns Confidential Information and Privileged Information and does not attempt to adjudicate the rights or obligations of the Committee or the members of its constituency that may otherwise exist under section 1102(b)(3)(A) or otherwise with respect to any other information.

19.     As discussed above, nothing in section 1102(b)(3)(A) of the Bankruptcy Code itself, or in the legislative history thereto, indicates that the Committee is required to provide Confidential Information or Privileged Information to all of the creditors it represents.  Moreover, section 107(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, the bankruptcy court <u>shall</u> . . . protect an entity with respect to a trade secret or confidential research, development,

or commercial information." (emphasis added).[1]  As noted, section 107(b)(1) is a mandatory provision.  *Video Software Dealers Ass'n v. Orion Pictures, Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (providing that the protections of section 107(b)(1) are mandatory upon request).  The Court, therefore, is empowered under section 107(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9018 to protect the Confidential Information and Privileged Information from general disclosure to creditors who are not members of the Committee.

20.    Further, nothing in the relief requested herein shall inhibit the Committee's ability from sharing information with its constituency that is not Confidential Information or Privileged Information.  The Committee will continue to share a variety of public information with its constituency, upon request, including all pleadings filed with the Court, orders entered by the Court, the Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs, and the Debtors' monthly operating reports.  Furthermore, the Committee anticipates seeking and receiving comments from its constituents pursuant to section 1102(b)(3)(B) of the Bankruptcy Code.  In addition, when and if a disclosure statement is approved by the Court, the plan proponent will provide creditors with additional material information in such disclosure statement that satisfies the requirements of section 1125(b) of the Bankruptcy Code.  Therefore, it is submitted that the creditors will have more than sufficient access to information to satisfy the reasonable purposes of section 1102(b)(3)(A).

21.    Accordingly, pursuant to sections 105(a), 107(b)(1) and 1102(b)(3)(A) of the Bankruptcy Code, the Committee respectfully requests that the relief requested be granted to best preserve and maximize the value of the estates and to assist the Committee to fulfill its vital statutory role in the Debtors' reorganization cases.

---

[1] Section 107(b)(1) is further buttressed by Bankruptcy Rule 9018 which provides in relevant part that "on motion or its own initiative, with or without notice, the court my make any order which justice requires to protect the estate or any entity in respect of a trade secret or other

22.     Relief similar to that requested in this Motion has been granted in other chapter 11 cases.  *See, e.g., In re Dana Corporation,* 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006); *In Re G+G Retail, Inc.*, 06-10152 (RDD) (Bankr. S.D.N.Y. Mar. 9, 2006); *accord In re FLYi, Inc.*, No. 05-20011 (MFW) (Bankr. D. Del. Nov. 17, 2005).[2]

---

confidential research, development, or commercial information . . ."
[2] Copies of these unreported orders are attached hereto collectively as Exhibit A.

**Notice**

23.     Notice of this Motion has been provided to counsel for the Debtors, counsel to the DIP lenders, the Office of the United States Trustee, and all parties having filed a notice of appearance in these cases. The Committee submits that such notice is sufficient and that no further notice need be provided.

**Memorandum of Law**

24.     The Committee respectfully requests that because this Motion raises no novel issues of law and the authorities relied upon are set forth herein, this Court find that the requirements of Local Bankruptcy Rule 9013-2 that the Committee submit a separate memorandum of law herewith is satisfied by the Motion itself.

25.     No previous application for the relief sought herein has been made to this or any other Court.

[Remainder of page intentionally left blank.]

WHEREFORE, the Committee respectfully requests that the Court enter an order granting the Motion and such other relief as the Court deems just and appropriate under the circumstances.

Dated: New York, New York
April 4, 2008

**HALPERIN BATTAGLIA RAICHT, LLP**
Proposed Counsel to the Official Committee of Unsecured Creditors of Shapes/Arch Holdings L.L.C.

By: */s/ Alan D. Halperin*
Alan D. Halperin, Esq.
Walter Benzija, Esq.

**COLE, SCHOTZ, MEISEL, FORMAN &LEONARD, P.A.**
Proposed Co-Counsel to the Official Committee of Unsecured Creditors of Shapes/Arch Holdings L.L.C., et al.

By: */s/ Michael D. Sirota*

Michael D. Sirota, Esq.
Ilana Volkov, Esq.
Warren A. Usatine, Esq.