| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY | |
| Robyn F. Pollack (RP 8974)<br>SAUL EWING LLP<br>A Delaware Limited Liability Partnership<br>750 College Road East, Suite 100<br>Princeton, NJ 08540-6617<br>(609) 452-3100 (phone)<br>(609) 452-3122 (fax)<br>Attorneys for SL Industries, Inc. | Case No. 08-14631 (GMB)<br><br>Judge: Gloria M. Burns |
| In re:<br><br>SHAPES/ARCH HOLDINGS L.L.C., et al.,<br><br>Debtors. | Chapter: 11<br><br>Hearing Date: April 17, 2008 at 10:00 a.m. |

**OBJECTION OF SL INDUSTRIES, INC. TO JOINT DISCLOSURE STATEMENT FOR THE DEBTORS' JOINT PLAN OF REORGANIZATION**

SL Industries, Inc. ("SL Industries"), by and through its undersigned attorneys, hereby files this objection to the adequacy of the Joint Disclosure Statement for the Debtors' Joint Plan of Reorganization (the "Disclosure Statement"). In support thereof, SL Industries respectfully represents as follows:

**Background**

1. On March 16, 2008 (the "Petition Date"), Shapes/Arch Holdings, L.L.C. and its subsidiaries, Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C. and Ultra L.L.C. (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., (the "Bankruptcy Code"). Since filing their petitions for relief, the Debtors have continued to operate their businesses and have maintained

possession of their assets as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for administrative purposes only.

2. Concurrent with the filing of their bankruptcy petitions, the Debtors filed their Joint Plan of Reorganization (the "Plan") and the Disclosure Statement. For the reasons set forth below, SL Industries objects to Court approval of the Disclosure Statement, which is inadequate and cannot be approved as a matter of law.

## Preliminary Statement

3. In addition to filing their Plan and Disclosure Statement on the Petition Date, the Debtors also filed their Statements of Financial Affairs (the "Statements") and Summary of Schedules (the "Schedules"). The Schedules list SL Industries as holding an unsecured, non-priority, unliquidated, contingent and disputed claim by virtue of "environmental lawsuits." Schedules, Exhibit F.3. SL Industries expressly reserves all rights regarding the factual and legal accuracy of such characterization and whether some or all of its present and future rights against the Debtors are "claims" under the Bankruptcy Code. Nothing contained herein shall be construed as a waiver of such rights.

## Objection

A. **Legal Standards**

4. Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain "adequate information," which the Bankruptcy Code defines as:

> Information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need

not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; . . .

11 U.S.C. § 1125(a)(1). Typically, adequate information includes:

    (a)    the circumstances that gave rise to the filing of the petition;

    (b)    a complete description of the available assets and their value;

    (c)    the anticipated future of the debtor;

    (d)    the source of the information provided in the disclosure statement;

    (e)    a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

    (f)    the condition and performance of the debtor while in Chapter 11;

    (g)    information regarding claims against the estate;

    (h)    a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

    (i)    the accounting and valuation methods used to produce the financial information in the disclosure statement;

    (j)    information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

    (k)    a summary of the plan of reorganization;

    (l)    an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

    (m)    the collectability of any accounts receivable;

    (n)    any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

    (o)    information relevant to the risks being taken by the creditors and interest holders;

  (p)  the actual or projected value that can be obtained from avoidable transfers;

  (q)  the existence, likelihood and possible success of non-bankruptcy litigation;

  (r)  the tax consequences of the plan; and

  (s)  the relationship of the debtor with affiliates.

15 Collier on Bankruptcy ¶ 1125.02[2].

  5.  The Disclosure Statement does not satisfy these requirements and cannot be approved as a matter of law.

**B.  Specific Objections**

  6.  <u>Treatment of EPA/NJDEP Claims</u>.  The Disclosure Statement fails to provide adequate information with respect to the Plan's proposed treatment of the environmental claims against the Debtors of the Environmental Protection Agency ("EPA") and the New Jersey Department of Environmental Protection ("NJDEP"), as well as certain related matters.

  7.  The Plan provides for the treatment, as Class 8 Claims, of certain claims of the EPA and the NJDEP.  Specifically the Plan states that:

> [the] EPA shall receive the sum of $300,000 in full and complete satisfaction of its claims set forth in Section I of Schedule 4.5 attached hereto and the sum of $25,000 in full and complete satisfaction of its claims set forth in Section II of Schedule 4.5 attached hereto.  The NJDEP shall receive the sum of $25,000 in full and complete satisfaction of its claims set forth in Section II, III and IV of Schedule 4.5 attached hereto.  Funding for the distributions to this class will be made solely from proceeds of applicable insurance policies.  <u>Plan</u> at Section 4.5.

The Disclosure Statement does not disclose even the most fundamental information about this proposed treatment – whether it is the result of one or more negotiated settlements with the EPA and/or the NJDEP or, alternatively, has been proposed by the Debtors unilaterally. Obviously,

this is a critical distinction. If the proposed treatment is the result of one or more settlements, the Disclosure Statement should disclose (a) the circumstances in which the settlements were reached, (b) the basis for the proposed settlement amounts, and (c) the manner in which the amounts were calculated.

8. Separately, the Disclosure Statement does not contain sufficient information regarding the environmental liabilities referenced in Schedule 4.5 of the Plan. Specifically, the Disclosure Statement should provide (a) meaningful information regarding the procedural status and posture of the environmental matters listed on Schedule 4.5 of the Plan and (b) the Debtors' anticipated liabilities with respect to each site listed on Schedule 4.5, including, without limitation, whether such liabilities have been determined or apportioned (and, if so, the amount of such liabilities). The Disclosure Statement also should explain how the funds proposed to be paid to the EPA and the NJDEP under Section 8 of the Plan are allocated to each of the sites listed on Schedule 4.5 of the Plan and the basis for that allocation.

9. In addition, while referenced in Schedule 4.5 of the Plan, the Disclosure Statement does not adequately address the Debtors' current and future obligations to remedy the environmental contamination at its 9000 River Road site (the "River Road Site"), which is located in Pennsauken, New Jersey. Information concerning whether and to what extent the Debtors intend to address their contractual and regulatory obligations to remediate the River Road site should be disclosed, as well as disclosure of the funding available to meet those obligations.

10. <u>Environmental Insurance</u>. As noted above, the Plan provides for the use of insurance proceeds to fund the proposed distributions to the EPA and the NJDEP. The Disclosure Statement provides no information about the policies that will generate such

proceeds. Most particularly, the Disclosure Statement does not disclose whether the applicable insurers have agreed to make such payments, or the consequences under the Plan if such insurers fail or refuse to provide coverage. Additionally, the Disclosure Statement fails to provide adequate information with respect to: (i) the policies the Debtors are relying upon to fund the Class 8 distributions; (ii) the scope of coverage of such policies; (iii) the effective dates of such policies; (iv) the policies' payout limits and whether and to what extent the policies' coverage has been drawn down or exhausted; (iv) the availability of such policies for other environmental claimants; and (v) the existence and terms of other insurance policies in addition to those serving as a source of funding for Class 8 distributions. SL Industries notes that the Debtors' Schedules and Statements contain no reference or description of any interest in insurance.

      11.     Puchack Site. As noted above, Schedule 4.5 of the Plan contains a list of various environmental claims and sites. Among these sites is the Puchack Wellfield site, which is located in Pennsauken, New Jersey (the "Puchak Site"). Because the Puchack Site is listed on Schedule 4.5, the Debtors presumably believe they have potential liability with respect to its environmental condition. Such presumption is inconsistent with the Debtors' Statements, which do not list the EPA as holding a claim with respect to the Puchack Site. SL Industries raises this discrepancy for reasons that are more than academic -- it has reason to believe that the Debtors have not as of yet been identified by the EPA as a potentially responsible party for this site or for the EPA's proposed ground water remediation. The Disclosure Statement should disclose whether the EPA has filed suit, made demand or otherwise asserted a claim against the Debtors with respect to the Puchack Site. If the EPA has asserted a claim against the Debtors, the Disclosure Statement should describe such claim, and provide the asserted basis of such claim,

the asserted amount of such claim and should explain the applicability, if any, of insurance coverage and proceeds.

12. <u>Sale Efforts</u>. The Disclosure Statement states that, prior to the filing of the Debtors' cases, the Debtors had marketed themselves and/or their assets for sale, with the assistance of TM Capital. According to the Debtors, such efforts were not successful. No further description or explanation is provided regarding this sale process. The Disclosure Statement should contain a more meaningful description of the steps were taken to sell the Debtors and the parties, if any, that expressed a potential interest in purchasing the Debtors and their proposed purchase prices. The Disclosure Statement should also disclose the reasons why, in the Debtors' judgment, the Debtors' sale efforts were unsuccessful, and whether (as SL Industries expects) the Debtors' environmental liabilities played a role in the Debtors' inability to effectuate a sale.

13. <u>Confirmation Issues</u>. The Disclosure Statement fails to provide material information about at least three legal infirmities of the Plan which, if not modified, will prevent confirmation of the Plan as a matter of law:

(a) The Disclosure Statement fails to disclose that Sections 11.8 (Discharge) and 11.9 (Confirmation Injunction) of the Plan, as currently written, seemingly do not permit the assertion of claims solely for the purpose of collecting on any available insurance, contrary to the law of this Circuit. <u>See</u> <u>First Fidelity Bank v. McAteer</u>, 985 F.2d 114, 118 (3d Cir. 1993) ("the protection from liability afforded under the Code does not affect the liability of the debtor's insurers."). Applicable law permits suits to be brought post-discharge against debtors to recover from the debtors' insurers, because the suits do not create a personal liability of the debtor. <u>In re Hendrix</u>, 986 F.2d 195, 197 (7th Cir. 1993).

(b) The Disclosure Statement fails to disclose that the language of sections 11.8 and 11.9 of the Plan purport to discharge future contribution claims, in violation of the law of the Third Circuit. See In re M. Frenville Co., Inc., 744 F.2d 332, 337 (3d Cir. 1984) ("a claim for contribution or indemnification does not accrue at the time of the commission of the underlying act, but rather at the time of the payment of the judgment flowing from the act."). See also In re Penn Central Transportation Co., 71 F.3d 1113 (3d Cir. 1995); In re Remington Rand Corp., 836 F.2d 825 (3d Cir. 1988); In re Reading Co., 404 F. Supp. 1249 (D.C. Pa 1975). SL Industries, as well as other parties-in-interest, may hold future contribution or other claims against the Debtors that cannot as a matter of law be discharged by the Plan. See Conway v. Mister Softee, Inc., 91 N.J.Super. 179, 219 A.2d 536 (Co.1966) (under New Jersey contribution law, there is prerequisite of payment of judgment before contribution can be sought); see also United States v. Atlantic Research Corp., 127 S.Ct. 2331, 2334, 2337-38, 168 L. Ed.2d 28, 40 (2007) (a private party may not obtain contribution under section 113(f)(1) unless and until it has been sued under section 106 or 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)).

(c) The Disclosure Statement fails to disclose that the language of the Plan seeks to preserve the equity interests of Shapes/Arch Holdings, L.L.C. in debtor subsidiaries, Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C. and Ultra L.L.C., without paying the creditors of such debtor subsidiaries in full, in violation of the absolute priority rule.. SL Industries expressly reserves its rights with respect to this issue.

14. Reservation of Rights. SL Industries reserves its rights to raise and be heard with respect to other and further objections to the Disclosure Statement, whether at the scheduled hearing on the Disclosure Statement or otherwise.

**Conclusion**

WHEREFORE, for the foregoing reasons, SL Industries respectfully requests that the Court: (i) deny approval of the Disclosure Statement; and (ii) grant such other and further relief as the Court deems necessary and appropriate.

Respectfully submitted,

SAUL EWING LLP

Dated: April 14, 2008        By:     /s/
Robyn Forman Pollack, Esquire
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7537

*Counsel for SL Industries, Inc.*