UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
KELLY BEAUDIN STAPLETON
UNITED STATES TRUSTEE, REGION 3
Peter J. D'Auria, Esq. (PD 3709)
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SHAPES / | : | Case No. 08-14631(GMB) |
| ARCH HOLDINGS L.L.C., et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Hearing Date: April 17, 2008 @ 10:00 a.m. |

**OBJECTION TO DEBTORS' MOTION SEEKING ENTRY OF FINAL ORDERS
AUTHORIZING POST-PETITION FINANCING WITH
ARCUS ASI FUNDING, LLC AND THE CIT GROUP / BUSINESS CREDIT INC.**

The United States Trustee ("UST"), by and through her counsel, and in furtherance of her duties pursuant to 28 U.S.C. §586(a)(3) and (5), respectfully submits this objection (the "Objection") to the above-captioned debtors' (the "Debtors") motion (the "DIP Motion") for entry of an Final Orders authorizing the Debtor to enter into post-petition financing arrangements with Arcus ASI Funding, LLC ("Arcus") and The CIT Group / Business Credit Inc. ("CIT"), and respectfully states as follows:

**BACKGROUND**

1. On March 16, 2008, the Debtors each filed a voluntary petition for relief under Chapter 11 of title 11, United States Code, and the Debtors have remained in possession of their

property and management of their affairs subject to Arcus obtaining control of management in conjunction with the commencement of these cases. On that same date, the Debtors filed the DIP Motion (Docket Entry 18), a Plan of Reorganization (Docket Entry 15) and a Disclosure Statement (Docket Entry 16), as well as numerous other first day matters.

2. An Unsecured Creditors' Committee (the "Committee") has been appointed by the United States Trustee.

3. On March 18, 2008, the Court entered an Interim Order approving certain post-petition financing, on an interim basis, between the Debtors and Arcus (the "Arcus Interim Order")(Docket Entry 38). On that same date, the Court also entered an Interim Order approving certain post-petition financing, on an interim basis, between the Debtors and CIT (the "CIT Interim Order")(Docket Entry 39).

**OBJECTION**

4. We note at the outset that both the Arcus Interim Order and the CIT Interim Order incorporate voluminous loan and security documents. Additionally, the Arcus Interim Order and the CIT Interim Order often reference each other, and in further confusion, both orders define themselves as the "Interim Order", and both orders use the phrase "Interim Order" to refer to itself as well as the other order. It can not be overstated that, to the extent the Court grants the objections asserted herein, clarifying paragraphs must be added to the end of the appropriate final order clearly stating that, notwithstanding any provisions in that order or any accompanying loan/security document, the Court's determination on any particular issue will govern.

*Avoidance Actions:*

5. Both the Arcus Interim Order and the CIT Interim Order give the lenders liens on

avoidance actions under Chapter 5 of the Bankruptcy Code.  Such avoidance actions must be preserved for the benefit of the estates and the estates' creditors.  Any final order entered must expressly preserve such avoidance actions.  Additionally, it must be clearly stated in any final order that neither lender will have any interest in avoidance actions via any super-priority claim.

*Releases:*

6.  Both the Arcus Interim Order and the CIT Interim Order grant very broad, open-ended, releases waiving any and all claims of any kind against all lenders.  The only issue preserved is the Committee's right to review the extent and validity of CIT's claims and liens.  The basis for such releases is not made clear, and the quid pro quo for each estate with respect to each lender is not established.  Additionally, given that Arcus has obtained a controlling vote over management in conjunction with the commencement of these cases, such a release is conspicuously inappropriate.  Any and all such releases must be stricken from any final order.

*506(c) Waivers:*

7.  Both the Arcus Interim Order and the CIT Interim Order grant the lenders waivers from any claims asserted pursuant to Section 506(c) of the Bankruptcy Code.  As argued at the first day hearing, both the Arcus Interim Order and the CIT Interim Order are highly aggressive financing orders presented in the context of one secured creditor having contemporaneously obtained control over the Debtors' management.  Both the Arcus Interim Order and the CIT Interim Order provide every protection to the respective lenders.  Moreover, the time-line outlined for this case is a relevant consideration here, and given Arcus' control over management, Arcus is effectively in control of such time-line.  It is respectfully asserted that, given the circumstances, the 506(c) waivers should be stricken from any final order entered.

*Roll-ups:*

8.  Both the Arcus Interim Order and the CIT Interim Order authorize the Debtors to utilize the proceeds of postpetition financing to pay, in whole or in part, prepetition debt. Any such roll-up must reserve the right of the Court to unwind the paydown of prepetition debt in the event there is a successful challenge to the validity, enforceablility, extent, perfection, and (where appropriate) priority of the lenders' claims or liens, or a determination that the prepetition debt was undersecured as of the petition date.

*Superpriority Claim in Arcus Order Not Subject to Statutory Fees:*

9.  The Superpriority Claim granted to Arcus in paragraph 2.2 of the Arcus Interim Order is subject only to certain defined Carve Out Expenses. Any such claim must be expressly subject to statutory fees payable to the United States Trustee Program.

*Evergreen Retainer in Arcus Interim Order:*

10. Pursuant to section 2.5.1 of the Arcus Interim Order, *any* professional of the Debtors holding a retainer is *not* required to apply any portion of their retainer to unpaid compensation and expenses, but can first seek payment out of the Debtors' budget. This provision effectively allows any professional of the Debtors to seek payment from the Debtors' available cash, and hold their retainer for application against their final fee application at the end of the case, which in the circumstances of these cases effects an objectionable "evergreen retainer" that should not be permitted.

11. All three professionals retained by the Debtors, Cozen O'Connor ("Cozen"), Phoenix Management Services, Inc. ("Phoenix"), and Stevens & Lee, P.C. ("S&L") received retainers. With regard to Phoenix and S&L, section 2.5.1 of the Arcus Interim Order is wholly and entirely

inappropriate because their respective retention papers fail to expressly disclose any request for any such evergreen retainer.  See, In re Insilco Tecnologies, Inc., et al., 291 B.R. 628, 636 (Bankr. D. Del. 2003).  With respect to Cozen, no such evergreen retainer should be approved given the facts and circumstances of these cases.  The Debtors assert that these cases will be confirmed and effectively conclude within a few months.  In that very short time frame, the Debtors' professionals have significant protection afforded by (1) the ability to be paid on a monthly basis pursuant to an Interim Compensation Procedures Order already entered in these cases, and (2) a carve-out in the amount of $1,125,000.00 as established in both the Arcus Interim Order and the CIT Interim Order.  Given these collective circumstances, no such evergreen retainer should be approved in these cases.

*Debtors' Consideration of Other Lenders:*

12.  It may be that the proposed loan from Arcus is not the only deal-in-town for these Debtors, and more importantly, not the best deal.  It appears from its filing that Arch Acquisition I, LLC ("Arch Acquisition") seeks an opportunity to be considered in an open and competitive fashion.

13.  It can not be overstated that, in conjunction with the filing of these cases, a filing which inherently included the Debtors' DIP Motion, Arcus obtained control of the Debtors' management.  The UST supports an open and competitive process, not only through a competitive plan or a sale under Section 363 of the Bankruptcy Code, but also in connection with the Debtors efforts to secure post-petition financing.  The Debtors must demonstrate at the final hearing that all possible alternatives were considered, including any proposal from Arch Acquisition.

WHEREFORE, based on the foregoing, it is respectfully submitted that the DIP Motion, as presented, should be denied.

Dated: Newark, New Jersey  
      April 14, 2008

Respectfully submitted,

KELLY BEAUDIN STAPLETON  
UNITED STATES TRUSTEE  
REGION 3

By:  */s/ Peter J. D'Auria*  
Peter J. D'Auria  
Trial Attorney