# EXHIBIT G

Shapes/Arch Holdings, LLC
Projected Profit & Loss Statement

| | | Jul-08 | | Aug-08 | | Sep-08 | | Oct-08 | | Nov-08 | | Dec-08 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Net Sales | $ | 21,969,809 | $ | 21,206,640 | $ | 18,437,429 | $ | 20,583,204 | $ | 17,159,993 | $ | 12,002,945 | $ | 111,360,021 |
| COGS | | | | | | | | | | | | | | |
| Material Costs | | 12,564,332 | | 11,644,784 | | 10,303,222 | | 11,396,144 | | 9,429,016 | | 6,756,151 | | 62,093,648 |
| Mfg Expenses | | 5,740,721 | | 5,803,760 | | 5,422,246 | | 5,868,998 | | 5,444,510 | | 4,256,832 | | 32,537,057 |
| | | 18,305,053 | | 17,448,544 | | 15,725,468 | | 17,265,132 | | 14,873,526 | | 11,012,982 | | 94,630,705 |
| Gross Profit | $ | 3,664,756 | $ | 3,758,096 | $ | 2,711,961 | $ | 3,318,073 | $ | 2,286,467 | $ | 989,963 | $ | 16,729,315 |
| Operating Expenses | | | | | | | | | | | | | | |
| Delivery | | 1,073,065 | | 1,038,784 | | 930,640 | | 1,018,750 | | 886,073 | | 661,167 | | 5,608,479 |
| Selling | | 841,006 | | 833,078 | | 765,398 | | 805,738 | | 792,006 | | 652,098 | | 4,689,324 |
| General & Admin | | 1,497,221 | | 1,463,166 | | 1,443,845 | | 1,494,021 | | 1,414,940 | | 1,455,561 | | 8,768,755 |
| | | 3,411,292 | | 3,335,028 | | 3,139,884 | | 3,318,509 | | 3,093,019 | | 2,768,827 | | 19,066,559 |
| Operating Income | $ | 253,464 | $ | 423,068 | $ | (427,923) | $ | (436) | $ | (806,552) | $ | (1,778,864) | $ | (2,337,243) |
| Interest Expense | | 478,637 | | 454,760 | | 459,079 | | 431,233 | | 428,926 | | 425,821 | | 2,678,457 |
| Other Income | | 27,000 | | 27,000 | | 27,000 | | 27,000 | | 27,000 | | 27,000 | | 162,000 |
| Net Income | $ | (198,173) | $ | (4,692) | $ | (860,002) | $ | (404,670) | $ | (1,208,478) | $ | (2,177,686) | $ | (4,853,701) |
| EBITDA | $ | 1,046,458 | $ | 1,216,061 | $ | 365,069 | $ | 792,555 | $ | (13,562) | $ | (987,875) | $ | 2,418,706 |

Shapes/Arch Holdings, LLC
Projected Monthly Balance Sheet

| | Opening 7/1/08 | 7/31/08 | 8/31/08 | 9/30/08 | 10/31/08 | 11/30/08 | 12/31/08 |
|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | |
| Cash | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Accounts Receivable | 37,686,000 | 33,118,663 | 32,562,682 | 30,758,883 | 30,366,639 | 29,132,476 | 23,247,344 |
| Inventory | 43,222,000 | 41,162,342 | 42,679,042 | 42,265,792 | 42,043,122 | 43,511,533 | 45,078,511 |
| Prepaids | 1,604,000 | 1,301,000 | 1,532,000 | 1,304,000 | 1,231,000 | 1,357,000 | 998,000 |
| Current Assets | $ 82,512,000 | $ 75,582,005 | $ 76,773,723 | $ 74,328,675 | $ 73,640,760 | $ 74,001,010 | $ 69,323,855 |
| Net PPE | 66,205,000 | 65,995,000 | 65,785,000 | 65,575,000 | 65,365,000 | 65,155,000 | 64,945,000 |
| Other Asset | - | - | - | - | - | - | - |
| **Total Assets** | $ 148,717,000 | $ 141,577,005 | $ 142,558,723 | $ 139,903,675 | $ 139,005,760 | $ 139,156,010 | $ 134,268,855 |
| **Liabilities** | | | | | | | |
| Accounts Payable | $ 336,000 | $ 1,603,643 | $ 2,469,463 | $ 3,113,021 | $ 4,150,309 | $ 4,519,893 | $ 3,774,863 |
| Accrued Expenses | 6,241,000 | 5,848,000 | 5,121,000 | 5,326,000 | 7,069,000 | 5,882,000 | 5,317,000 |
| Current Liabilities | $ 6,577,000 | $ 7,451,643 | $ 7,590,463 | $ 8,439,021 | $ 11,219,309 | $ 10,401,893 | $ 9,091,863 |
| Revolver | 47,057,000 | 39,240,536 | 40,088,125 | 37,444,521 | 34,170,988 | 36,347,132 | 34,947,893 |
| Term Loan | 25,000,000 | 25,000,000 | 25,000,000 | 25,000,000 | 25,000,000 | 25,000,000 | 25,000,000 |
| Members Equity | 70,083,000 | 69,884,827 | 69,880,135 | 69,020,133 | 68,615,463 | 67,406,985 | 65,229,299 |
| **Total Liabilities & Equity** | $ 148,717,000 | $ 141,577,005 | $ 142,558,723 | $ 139,903,675 | $ 139,005,760 | $ 139,156,010 | $ 134,268,855 |
| Memo: Revolver Availability | | 2,393,851 | 1,820,169 | 2,898,037 | 5,684,478 | 3,048,319 | 360,451 |

Shapes/Arch Holdings, LLC
Projected Monthly Cash Flow Statement

| | 7/31/08 | 8/31/08 | 9/30/08 | 10/31/08 | 11/30/08 | 12/31/08 | Total |
|---|---|---|---|---|---|---|---|
| Net Income/(Loss) | $ (198,173) | $ (4,692) | $ (860,002) | $ (404,670) | $ (1,208,478) | $ (2,177,686) | $ (4,853,701) |
| Depreciation/Amortization | 765,994 | 765,994 | 765,992 | 765,991 | 765,990 | 763,989 | 4,593,950 |
| A/R Reserve | - | | - | - | | | - |
| Accounts Receivable | 4,567,337 | 555,982 | 1,803,799 | 392,244 | 1,234,162 | 5,885,132 | 14,438,656 |
| Inventory | 2,059,658 | (1,516,700) | 413,250 | 222,670 | (1,468,412) | (1,566,978) | (1,856,511) |
| Prepaids | 303,000 | (231,000) | 228,000 | 73,000 | (126,000) | 359,000 | 606,000 |
| Accounts Payable | 1,267,643 | 865,820 | 643,558 | 1,037,288 | 369,583 | (745,030) | 3,438,863 |
| Accrued Expenses | (393,000) | (727,000) | 205,000 | 1,743,000 | (1,187,000) | (565,000) | (924,000) |
| **Cash from Operations** | 8,372,458 | (291,596) | 3,199,596 | 3,829,524 | (1,620,154) | 1,953,427 | 1,953,427 |
| Capital Expenditures | (555,994) | (555,994) | (555,992) | (555,991) | (555,990) | (553,989) | (3,333,950) |
| Revolver Borrowing | (7,816,464) | 847,590 | (2,643,604) | (3,273,533) | 2,176,144 | (1,399,438) | (12,109,307) |
| Amortization Term Loan | - | | | | | | - |
| Net Cash Available | (0) | 0 | 0 | (0) | 0 | 0 | 0 |
| Beginning Cash | - | (0) | (0) | 0 | (0) | 0 | - |
| **Ending Cash** | (0) | (0) | 0 | (0) | 0 | 0 | 0 |

# EXHIBIT H

## SHAPES/ARCH HOLDINGS L.L.C.
## PLAN ADMINISTRATION AGREEMENT

This Plan Administration Agreement (the "Plan Administration Agreement" or the "Agreement") is made this ____ day of_____, 2008, by and among Shapes/Arch Holdings, LLC, Shapes, LLC, Delair, LLC, Accu-Weld, LLC and Ultra, LLC, as debtors and debtors-in-possession (prior to the Effective Date and after the Effective Date, the "Debtor" or the "Reorganized Debtor", respectively) and on behalf of itself and its Chapter 11 estate, Versa Capital Management, Inc. (the "Plan Funders"), as settlors, and _____, as trustee (in such capacity, the "Plan Administrator").[1]

## RECITALS

WHEREAS, on March 16, 2008, (the "Petition Date"), Debtor filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case")in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, on March 16, 2008, the Debtor filed their Joint Plan of Reorganization and a Joint Disclosure Statement to accompany the Plan with the Bankruptcy Court;

WHEREAS, on [_____], 2008, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. sections 1129(a) and (b), and Fed. R. Bankr. P. 3020, confirming the Plan;

WHEREAS, the Plan, as confirmed by the Confirmation Order, provides for the Debtor, the Plan Funders and the Plan Administrator to enter into this Agreement governing, among other things, the distributions to holders of Allowed Claims required by the Plan; and

NOW THEREFORE, pursuant to the Plan and the Confirmation Order, and in consideration of the premises and the covenants and agreements set forth herein, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Debtors' Joint Plan of Reorganization filed March 16, 2008, as amended, and as confirmed and as the same may from time to time be amended (the "Plan"). Terms defined in the Bankruptcy Code and not otherwise specifically defined in the Plan or herein shall, when used herein, have the meanings attributed to them in the Bankruptcy Code.

## ARTICLE I
## DECLARATION OF TRUST

1.1     Establishment of Liquidation Trust.  Pursuant to the Plan, the Debtor and the Plan Funders hereby establish the Liquidation Trust on behalf of the Holders of Allowed Claims (whether allowed before or on or after the Effective Date).

1.2     Transfer of Property to the Liquidation Trust.

(a)     By Debtor.  As of the Effective Date, the Debtor and Reorganized Debtor hereby transfer, assign and deliver to the Liquidation Trust: (a) all of their rights, title, and interest in the Liquidation Trust Assets, as defined below, free and clear of any and all liens, claims or encumbrances except for the Plan Funders' Lien; and (b) all of their rights and interests with respect to the Liquidation Trust Assets, including, without limitation, the right to assert confidentiality, attorney-client privilege, attorney work-product privilege, business strategy privilege, joint defense, common interest, joint prosecution or any other applicable privileges, protections or immunities that would otherwise be applicable to the Liquidation Trust Assets (the "Privileges"), provided however, notwithstanding anything contained herein to the contrary, the Debtor and Reorganized Debtor reserve the right to assert any of the Privileges to the extent such Privileges do not reasonably relate to the Liquidation Trust Assets.

(b)     By Plan Funders.  As of the Effective Date, the Plan Funders hereby transfer, assign and deliver to the Liquidation Trust:  Cash in an amount equal to the sum of the Class 5 Pool Escrow; the Plan Expense Reserve; and the Plan Funders Release Escrow.

(c)     Acceptance of Liquidation Trust Assets.  The Plan Administrator agrees to accept and hold the Liquidation Trust Assets in trust for the holders of Allowed Claims (whether Allowed before, on or after the Effective Date) entitled to benefit therefrom under the Plan and Confirmation Order, subject to the terms of this Agreement.  At any time and from time to time after the Effective Date, the Debtor (including the Reorganized Debtor) and the Plan Funders agree, at the reasonable request of the Plan Administrator, to execute and deliver any instruments or documents and to take or cause to be taken, all such further action as the Plan Administrator may reasonably request in order to evidence or effectuate the transfer of the Liquidation Trust

Assets to the Liquidation Trust and consummation of the transactions contemplated hereby and by the Plan and otherwise carry out the intent of the parties hereunder and under the Plan

(d)    For purposes of this Agreement, "Liquidation Trust Assets" means the following assets and property: the Class 5 Pool Escrow; the Plan Expense Reserve; and the Plan Funders Release Escrow.

1.3    Title to the Liquidation Trust Assets.  The transfer of the Liquidation Trust Assets to the Plan Administration Trust shall be made by the Reorganized Debtor and the Plan Funders for the benefit and on behalf of the Holders of Allowed post-Effective Date professional fees to be paid from the Plan Expense Reserve; Allowed Claims treated in Class 5; and Allowed Claims treated in Class 5 the Holders of which grant the Optional Release (whether Allowed before, on or after the Effective Date) as provided for in the Plan and herein.  Upon transfer of the Liquidation Trust Assets, the Plan Administrator shall succeed to all of the Debtor's, Reorganized Debtor's and the Plan Funders' rights, title and interests in the Liquidation Trust Assets and the Debtor, Reorganized Debtor, and the Plan Funders will have no further interest in or with respect to the Liquidation Trust Assets or this Liquidation Trust, except as expressly reserved.

1.4    Acceptance of Reserves.    Pursuant to section 5.2 of the Plan, the Plan Administrator and the Liquidation Trust shall accept, hold, administer and distribute the following Reserves in accordance with the Plan and this Agreement: (i) Class 5 Pool Escrow; (ii) Plan Expense Reserve; and (iii) Plan Funders Release Escrow.

1.5    Purpose of the Liquidation Trust.  This Liquidation Trust is created and organized for the sole purposes of collecting, holding, liquidating, and distributing Liquidation Trust Assets in accordance with the terms of the Plan and Confirmation Order, administering the Class 5 Pool Escrow, Plan Expense Reserve, and Plan Funders Release Escrow in accordance with the terms of the Plan and objecting to the Claims under the Plan, with no objective to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.  In accordance with such express and limited purposes, as of the Effective Date, the Liquidation Trust is hereby authorized and directed: (i) to take any and all steps necessary to maintain the Liquidation Trust as a liquidating trust for

federal income tax purposes in accordance with Treasury Regulations section 301.7701-4(d); (ii) to take all reasonable and necessary actions to conserve and protect the Liquidation Trust Assets; (iii) to the extent necessary and appropriate, object to Disputed Claims asserted against the Debtor's Estate and the Liquidation Trust; and (iv) to maintain, the Liquidation Trust Assets, and to distribute the Net Proceeds of such to the holders of Allowed Claims in accordance with the Plan, in as prompt, efficient and orderly a fashion as possible in accordance with the provisions of the Plan, Confirmation Order and this Agreement.

      1.6    <u>Name of the Liquidation Trust</u>.  The Liquidation Trust established hereby shall be known as the "SAH Liquidation Trust." In connection with the exercise of his/her powers, the Plan Administrator may use such name or such variation thereof as the Plan Administrator sees fit, and may transact the affairs of the Liquidation Trust in such name.

      1.7    <u>Acceptance by Plan Administrator</u>.  The Plan Administrator hereby accepts the appointment to serve as Plan Administrator and agrees to accept the duties of the Plan Administrator upon such terms and conditions as are set forth herein and under the Plan.

## ARTICLE II
## PLAN ADMINISTRATOR - GENERALLY

      2.1    <u>Term of Service</u>.  The initial Plan Administrator, and each successor Plan Administrator, shall serve until the earlier to occur of: (a) the termination of the Liquidation Trust in accordance with Article 8 of this Agreement, or (b) such Plan Administrator's resignation, death, or removal in accordance with the terms hereof.

      2.2    <u>Services</u>.  The Liquidation Trust shall be governed and managed by the Plan Administrator, subject to and in accordance with the Plan, the Confirmation Order and this Agreement.  The Plan Administrator shall be entitled to engage in such activities as the Plan Administrator deems appropriate that are not in conflict with this Agreement or the Plan.  The Plan Administrator shall devote such time as is necessary to fulfill all of his/her duties as the Plan Administrator.

      2.3    <u>Resignation</u>.  The Plan Administrator may resign by giving not less than thirty (30) days prior written notice thereof to the Trust Advisory Committee (as defined below),

provided, however, notwithstanding anything to the contrary in this section 2.3, no such resignation shall become effective until a permanent or interim successor Plan Administrator has been appointed by the Trust Advisory Committee. Such resignation may become effective prior to the expiration of the thirty (30) day notice period upon the appointment of a permanent or interim successor Plan Administrator.

2.4    Removal. The Plan Administrator may be removed for cause. For purposes of this section 2.4, "cause" shall mean (a) an act of fraud, embezzlement or theft in connection with the Plan Administrator's duties or in the course of his employment in such capacity, (b) the intentional wrongful damage to property of the Liquidation Trust, (c) the intentional wrongful disclosure of confidential information resulting in material harm to the Liquidation Trust, (d) gross negligence, bad faith or willful misconduct by the Plan Administrator in connection with the performance of his duties under this Agreement, or (e) intentional and material breach by the Plan Administrator of the provisions of this Agreement, the Plan, the Confirmation Order, or any order of the Bankruptcy Court.

2.5    Appointment of Successor Plan Administrator. In the event of a vacancy by reason of the death, resignation or removal of the Plan Administrator, the Trust Advisory Committee shall have the right to select a successor to the Plan Administrator, who shall be appointed as the Plan Administrator of the Liquidation Trust and shall serve in such capacity until termination of the Liquidation Trust in accordance with Article 8 of this Agreement unless replaced in accordance with this section. Every successor Plan Administrator appointed hereunder shall execute, acknowledge, and deliver to the Trust Advisory Committee an instrument accepting such appointment subject to the terms and provisions hereof. The successor Plan Administrator, without any further act, shall become vested with all the rights, powers, and duties of his or her predecessors; provided, however, that no Plan Administrator hereunder shall be liable for the acts or omissions of any prior or later Plan Administrator.

2.6    Trust Continuance. The death, resignation, or removal of the Plan Administrator shall not operate to terminate the Liquidation Trust or revoke any existing agency (other than any agency of such Plan Administrator as the Plan Administrator) created by this Agreement, or invalidate any action theretofore taken by the Plan Administrator. In the event of the resignation

or removal of the Plan Administrator, such Plan Administrator shall: (a) execute and deliver by the effective date of the resignation or removal such documents, instruments, and other writings as may be reasonably required to effect the termination of the Plan Administrator's capacity under this Agreement, and (b) assist and cooperate in effecting the assumption of such Plan Administrator's obligations and functions by the successor Plan Administrator. If for any reason the Plan Administrator fails to execute the documents described in section (a) of the preceding sentence, the Trust Advisory Committee may seek such orders from the Bankruptcy Court as are necessary to effect termination of such Plan Administrator's capacity under this Agreement. The successor Plan Administrator agrees that the provisions of this Agreement and the Plan shall be binding upon and inure to the benefit of the successor Plan Administrator and all his, her, or its heirs and legal and personal representatives, and authorized successors or assigns.

2.7   Compensation.  The Plan Administrator shall be compensated on an hourly basis at a rate not to exceed [$__] per hour plus reimbursement of reasonable expenses.  The Plan Administrator shall be compensated solely from the Plan Expense Reserve and Liquidation Trust Assets.  The payment of the fees and expenses of the Plan Administrator shall be made in the ordinary course of business of the Liquidation Trust and shall not be subject to the approval of the Bankruptcy Court, except as otherwise specifically provided in the Plan or this Agreement. The fees and expenses of the Plan Administrator shall be paid from the Plan Expense Reserve or the Liquidation Trust Assets within twenty (20) Business Days after submission of a detailed invoice therefore to the Trust Advisory Committee and the United States Trustee.  If the Trust Advisory Committee or the United States Trustee objects to any invoice prior to the expiration of the twenty (20) Business Day periods, the disputed portion of such invoice shall not be paid until the dispute is resolved.  All objections to invoices of the Plan Administrator must set forth the precise amount objected to.  Any objection that fails to set forth the precise amount objected to shall be disregarded and the full amount of the invoice shall be paid.  The Plan Administrator, the Trust Advisory Committee, or the United States Trustee may submit those disputes respecting the specific amount of an invoice to the Bankruptcy Court for a determination.

2.8   Retention of Persons or Professionals.   The Plan Administrator, without Bankruptcy Court approval, may retain and compensate such Persons and Professionals as the Plan Administrator determines in his/her sole discretion, to be necessary to carry out the duties or

responsibilities of the Plan Administrator or to otherwise effect the purposes of the Plan, the Confirmation Order and this Agreement, on terms as the Plan Administrator deems appropriate. Professionals that may be retained by the Plan Administrator may include, without limitation, any Persons and Professionals who represented parties in interest in the Chapter 11 Case. The reasonable fees and expenses of the Professionals retained by the Liquidation Trust and/or the Plan Administrator shall be paid by the Plan Administrator from the Plan Expense Reserve or the Liquidation Trust Assets and Reorganized Debtors shall have no further liability for same.

## ARTICLE III
## RIGHTS AND POWERS OF THE PLAN ADMINISTRATOR

3.1     <u>Powers and Authority of the Plan Administrator</u>.  In furtherance of and consistent with the purposes of the Liquidation Trust and the Plan, the Plan Administrator shall have the right, power and authority to: (i) hold, protect, preserve, liquidate and distribute the proceeds of Liquidation Trust Assets in accordance with the terms of the Plan, Confirmation Order and this Agreement; (ii) hold, administer and distribute the Class 5 Pool Escrow, Plan Expense Reserve, and Plan Funders Release Escrow in accordance with the Plan, Confirmation Order and this Agreement; and (iii) investigate, litigate, settle, compromise or otherwise dispose of objections to Claims.  In connection with the administration of the Liquidation Trust, except as set forth in this Agreement, the Plan Administrator is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Liquidation Trust and the Plan.  Without limiting the foregoing, the Plan Administrator shall be expressly authorized, but shall not be required, to:

(a)     Hold legal title to and assert all rights arising from the Liquidation Trust Assets, including, without limitation, collecting, and receiving any and all money and other property belonging to the Liquidation Trust;

(b)     To the extent applicable to perform the duties and responsibilities under this Agreement, perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling causes of action, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(c)     Protect and enforce rights with respect to the Liquidation Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)     Prosecute and resolve objections to Claims (disputed or otherwise) and to make or direct that distributions be made to holders of Allowed Claims; provided, however, as set forth in the Plan, the Plan Administrator shall not be the exclusive party to prosecute and resolve objections to Claims;

(e)     Make distributions from the Net Proceeds of Liquidation Trust Assets to the Holders of Allowed Claims in accordance with this Agreement and the Plan;

(f)     Make or direct distributions to holders of Allowed Claims from the Reserves and to otherwise implement the Reserves and the Plan;

(g)     File, if necessary, any and all tax information returns with respect to the Liquidation Trust and pay taxes, if any, properly payable by the Liquidation Trust;

(h)     File quarterly reports pursuant to 28 U.S.C. section 1930(a)(6) with the Office of the United States Trustee;

(i)     Assert or waive any privilege or defense on behalf of the Liquidation Trust or with respect to the Liquidation Trust Assets;

(j)     Pay all expenses and make all other payments relating to the Liquidation Trust Assets, including but not limited to, U.S. Trustee fees and the reasonable fees incurred by the Plan Administrator and his Professionals;

(k)     Obtain insurance coverage with respect to property that may become Liquidation Trust Assets, if any, and obtain reasonable insurance coverage with respect to liabilities and obligations as Plan Administrator under this Agreement (in the form of an errors and omissions policy or otherwise);

(l)     Retain and compensate such counsel and other Professionals as the Plan Administrator, in his/her sole discretion, may select to aid in the prosecution of any claims, Claims or causes of action that constitute the Liquidation Trust Assets, to perform such other functions as may be appropriate in the Plan Administrator's sole discretion, and to otherwise assist the Plan Administrator in his/her duties, on such terms as the Plan Administrator deems appropriate, without Bankruptcy Court approval.  The Plan Administrator may commit the Liquidation Trust to and shall pay such counsel and other Professionals reasonable compensation for services rendered and expenses incurred.  A law firm or Professional shall not be disqualified from serving the Liquidation Trust solely because of its current or prior retention as counsel or a Professional to the parties in interest in the Chapter 11 Case, including without limitation, the Debtor, Arcus or the Plan Funders;

(m)     Retain and compensate an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Liquidation Trust as may be appropriate in the Plan Administrator's sole discretion and to prepare and file any tax returns or informational returns for the Liquidation Trust as may be required.  The Plan Administrator may commit the Liquidation Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred;

(n)     Retain and compensate such other third parties, including consultants, expert witnesses, agents, employees and other professional persons, as the Plan Administrator in his/her sole discretion, may deem necessary or appropriate to assist the Plan Administrator in carrying out his/her powers and duties under this Agreement.  The Plan Administrator may commit the Liquidation Trust to and shall pay all such Persons or entities reasonable compensation for services rendered and expenses incurred, as well as commit the Liquidation Trust to indemnify any such parties in connection with the performance of services;

(o)     Invest any moneys held as part of the Liquidation Trust in accordance with the terms of section 5.5 of the Plan and section 5.11 hereof, limited, however, to such investments that are consistent with the Liquidation Trust's status as a liquidating trust within the meaning of Treasury Regulations section 301.7701(d);

(p)     Request any appropriate tax determination with respect to the Liquidation Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(q)     Examine and copy the Debtor's Pre-Effective Date books and records; and

(r)     File with the Bankruptcy Court the reports and other documents necessary to pay any and all fees required by the Plan or otherwise required to Close the Chapter 11 Case, including the preparation and filing of a motion for final decree (without prejudice to the rights of Reorganized Debtors to accomplish the same).

(s)     Set off amounts owed to the Debtor against any and all amounts otherwise due to be distributed to the holder of an Allowed Claim under the Plan; and

(t)     Take or refrain from taking any and all actions the Plan Administrator reasonably deems necessary or desirable for the continuation, protection and maximization of the Liquidation Trust Assets or to carry out the purposes hereof.

3.2     <u>Successors of the Debtor</u>.  The Plan Administrator and the Liquidation Trust shall be "representative[s] of the estate" under section 1123(b)(3) of the Bankruptcy Code.

3.3     <u>Plan Administrator Conflicts of Interest</u>.  If the Plan Administrator determines, in the exercise of the Plan Administrator's discretion, that it has a material conflict of interest with respect to the settlement of a Claim, or any other matter, the Trust Advisory Committee shall exercise the Plan Administrator's rights and authorities with respect to such matter.  If neither the Plan Administrator nor the Trust Advisory Committee is able to act on behalf of the Liquidation Trust with respect to the settlement or Claim or any other matter, the Trust Advisory Committee may request the Bankruptcy Court to approve the Trust Advisory Committee's choice of a designee to act on behalf of the Liquidation Trust solely with respect to such matter, with such designee's authority to act on behalf of the Liquidation Trust to terminate upon the matter's conclusion.

3.4     <u>Fiduciary Capacity</u>.  Every act done, power exercised or obligations assumed by the Plan Administrator pursuant to the provisions of this Agreement and/or the Plan shall be held

to be done, exercised or assumed, as the case may be, by the Plan Administrator acting in a fiduciary capacity and not otherwise, and every Person contracting or otherwise dealing with the Plan Administrator shall look only to the Liquidation Trust Assets for payment under such contract or payment of any money that may become due or payable under any obligation arising under this Agreement and/or the Plan, in whole or in part, and the Plan Administrator shall not be individually liable therefor even though the Plan Administrator did not exempt himself, herself, or itself from individual liability when entering into any contract, obligation or transaction in connection with or growing out of the Liquidation Trust.

3.5     Indemnification.  The Plan Administrator and the Plan Administrator's agents and Professionals, shall not be liable for actions taken or omitted in such capacity, or on behalf of, the Liquidation Trust or the Plan Administrator, except those acts arising out of their own willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or ultra vires acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of their actions or inactions in such capacities, or on behalf of, the Plan Administrator, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or ultra vires acts.    Any indemnification claim of the Plan Administrator shall be satisfied first from available proceeds of errors and omissions insurance, and then from the Liquidation Trust Assets, and exclusively from those sources.  The Plan Administrator shall be entitled to rely, in good faith, on the advice of Professionals.

3.6     No Liability for Acts of Successor/Predecessor Plan Administrator.  A successor Plan Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator unless a successor Plan Administrator expressly assumes such responsibility.

3.7     Insurance.  The Plan Administrator shall be authorized to obtain and pay for out of the Plan Expense Reserve and/or Liquidation Trust Assets all reasonably necessary insurance coverage for the Liquidation Trust or the Plan Administrator, as the case may be, which insurance coverage shall include, but not limited to, coverage with respect to: (i) any property

that is or may in the future become the property of the Liquidation Trust and (ii) the liabilities, duties and obligations of the Plan Administrator, in the form of an errors and omissions policy or otherwise, the latter of which insurance coverage may remain in effect for a reasonable period after the termination of this Agreement.

3.8     Reliance by Plan Administrator.  Except as otherwise provided in the Plan or this Agreement, the Plan Administrator may rely, and shall be fully protected from liability for acting or refraining from acting, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies, facsimiles and e-mails to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Plan Administrator shall not be liable if the Plan Administrator acts based on a mistake of fact before having actual knowledge of such fact.   The Plan Administrator may consult with counsel and other Professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator.  The Plan Administrator shall be entitled to rely upon the advice of such Professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

## ARTICLE IV
## TRUST ADVISORY COMMITTEE

4.1     Formation and Number.  A Trust Advisory Committee (the "Trust Advisory Committee") shall be formed as of the Effective Date.  The Trust Advisory Committee shall be composed of three (3) persons, consisting of three (3) members of the Official Committee of Unsecured Creditors.  The Trust Advisory Committee shall have a chairperson who shall act as the Trust Advisory Committee's liaison with the Plan Administrator, coordinate and schedule

meetings of the Trust Advisory Committee, and handle all administrative matters that come before the Trust Advisory Committee.

4.2     Duties. The Trust Advisory Committee and its members shall serve in a fiduciary capacity representing all Holders of Allowed Claims (whether Allowed before, on or after the Effective Date) entitled to distributions from the Liquidating Trust. Where provided in this Agreement, certain provisions of this Liquidation Trust are subject to the actions of the Trust Advisory Committee. Meetings of the Trust Advisory Committee may take place in person or by telephone.

4.3     Term of Office.

(a)     Each member of the Trust Advisory Committee shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to section 4.3(b), (iii) his or her removal pursuant to section 4.3(c) or (iv) upon the termination of the Liquidation Trust pursuant to sections 8.1 or 8.2 hereof.

(b)     Any member of the Trust Advisory Committee may resign at any time by written notice to each of the remaining Trust Advisory Committee members. Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)     Any member of the Trust Advisory Committee may be removed in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause. Good cause shall be deemed to include, without limitation, a consistent pattern of neglect and failure to perform or to participate in performing duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall be made by the majority vote of the Plan Administrator and other members of the Trust Advisory Committee, and shall take effect at such time as the Plan Administrator and the other members of the Trust Advisory Committee jointly determine.

4.4     Appointment of Successors. A vacancy in the Trust Advisory Committee, caused by resignation, death, or removal, shall be filled by an individual appointed by the remaining members of the Trust Advisory Committee.

4.5     Liability of the Trust Advisory Committee, Officers and Employees.  No member of the Trust Advisory Committee shall be liable to the Liquidation Trust, to any person holding Allowed Claims, or to any other Person except to the extent of such individual's (i) own breach of trust committed in bad faith or (ii) willful misappropriation.  Such protection may, in the discretion of the Plan Administrator, be extended to the agents, Professionals, advisors, or consultants of the Trust Advisory Committee.

## ARTICLE V
## DISTRIBUTIONS FROM THE PLAN EXPENSE RESERVE AND THE PROCEEDS OF LIQUIDATION TRUST ASSETS

5.1     Establishment of the Plan Expense Reserve, Class 5 Pool Escrow and Plan Funders Release Escrow.  The Plan Administrator shall establish on the Liquidation Trust's books and records accounts representing segregated accounts for each of the Plan Expense Reserve, Class 5 Pool Escrow, and Plan Funders Release Escrow.  It is expressly understood that the establishment of such accounts by the Plan Administrator or his/her agents, is solely for administrative convenience, and that amounts allocable to such accounts need not and will not be segregated from, and may be commingled with the Liquidation Trust Assets, including, without limitation, all Cash held by the Liquidation Trust; provided, however, that each such account shall be limited to the funding amount provided from Reorganized Debtors under the Plan and Confirmation Order and any interest or other earnings thereon and that no such account shall be available to pay or be distributed to the Holders of Allowed Claims entitled to payment or distribution from any other such account, except as otherwise provided for in the Plan or Confirmation Order.

5.2     The Plan Expense Reserve.  On or before the Effective Date, the Plan Funders shall deposit $100,000 with the Plan Administrator to be used to pay Plan Expenses (as defined below) in accordance with the Plan and this Agreement.  For purposes of this Agreement, "Plan Expenses" shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) the Debtor's, the Reorganized Debtors, and the Plan Administrator's costs, expenses, and legal fees incurred related to filing and prosecuting objections to Claims; (ii) all fees, costs, or expenses of the Plan Administrator incurred pursuant to this Plan Administration Agreement, including, but

not limited to any Professionals retained by the Plan Administrator and (iii) all fees, payable pursuant to section 1930 of Title 28 of the United States Code.  Upon the closing of the Chapter 11 Case, any balance remaining in the Plan Expense Reserve after payment, in full, of all Plan Expenses will be a Reserves Balance and distributed in accordance with the Plan and Confirmation Order.

5.3    Payment of Plan Expenses.  The Plan Administrator shall pay from the Plan Expense Reserve, and if such Reserve is insufficient, from the proceeds of the Liquidation Trust Assets, all Plan Expenses, including, without limitation, U.S. Trustee Fees, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges and expenses incurred in connection with or arising out of the execution or administration of the Liquidation Trust and the Liquidation Trust Assets, and such other payments and disbursements as are provided for in this Agreement or which may be reasonably determined by the Plan Administrator to be proper charges against the Liquidation Trust and the Liquidation Trust Assets, and the Plan Administrator, in his/her reasonable discretion and business judgment, may determine to be necessary or advisable to meet or satisfy unascertained, unliquidated or contingent liabilities of the Liquidation Trust.  The Plan Administrator shall make all such payments without application or order of the Bankruptcy Court.

5.4    Class 5 Pool Escrow.  The Plan Administrator shall establish and maintain the Class 5 Pool Escrow for Disputed Class 5 Claims.  On and after the Effective Date, the Plan Funders shall deposit with the Plan Administrator $500,000 to fund fully the Class 5 Pool Escrow and $100,000.00 to fully fund the Plan Fundees Release Escrow.   The Plan Administrator shall hold in such escrows Cash in an aggregate amount sufficient to pay each holder of a Disputed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such Disputed Claim had been an Allowed Claim on the Effective Date, or such other amount as may be approved by the Bankruptcy Court.  With respect to such Disputed Claims, if, when and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant potion of the Cash held in reserve thereto shall be distributed by the Plan Administrator to the Claimant in a manner consistent with distributions on account of other Allowed Claims in such Classes.  The balance of such Cash, if any, remaining after all such

Disputed Claims have been resolved and distributions made in accordance with the Plan, shall be a Reserves Balance and distributed in accordance with the Plan and Confirmation Order.

5.5     No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, Confirmation Order or this Agreement, no Cash or other property shall be distributed under the Plan on account of any Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim by a Final Order.  Any allowance of Claims pursuant to the provisions of the Plan or an order of the Bankruptcy Court shall not prejudice the rights of the Reorganized Debtors to pursue the Avoidance Actions, or objections to Claims pursuant to section 502(d) of the Bankruptcy Code, against the holders of such Allowed Claims.

5.6     Resolution of Disputed Claims.  On and after the Effective Date, the Liquidation Trust shall be vested with the non-exclusive authority to bring, prosecute and dispose of any objections to Disputed Claims, including, but not limited to, Disputed Class 5 Claims, for the benefit of the Estate and the Liquidation Trust.  The Liquidation Trust shall have the right to file and prosecute objections to Disputed Claims and shall serve a copy of each objection upon the Trust Advisory Committee and the holder of the Claim to which the objection is made as soon as practicable but in no event later than ninety (90) days after the Effective Date; provided, however, pursuant to section 7.6 of the Plan that this deadline may be extended by the Bankruptcy Court upon the motion of the Plan Administrator or the Reorganized Debtor, with or without notice or hearing.  Notwithstanding the foregoing, (i) the Plan Administrator shall not be required to file an objection to any Claims listed in the Schedules as disputed, contingent, unliquidated or undetermined and for which no Proofs of Claim were timely Filed and such Claims shall be barred and disallowed in their entirety; and (ii) unless an order of the Bankruptcy Court specifically provides for a later date, any proof of, or other assertion of, a Claim filed after the Confirmation Date shall be automatically disallowed as a later filed Claim, without any action by the Plan Administrator, unless and until the party filing such Claim obtains the written consent of the Plan Administrator or obtains an order of the Bankruptcy Court upon notice to the Plan Administrator and Reorganized Debtor that permits the late filing of the Claim, otherwise the holder of such disallowed claim shall be forever barred from asserting such Claim against the Liquidation Trust and the Liquidation Trust Assets.  In the event any proof of claim is permitted to be filed after the Confirmation Date pursuant to an order of the Bankruptcy Court, the Plan

Administrator shall have sixty (60) days from the filing of such proof of claim or entry of such order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Plan Administrator with or without notice or a hearing.

5.7     Settlement of Disputed Claims. Objections to Disputed Claims filed by the Plan Administrator or to which the Plan Administrator is a party shall be litigated to Final Order except to the extent that the Plan Administrator elects to withdraw any such objection or elects to compromise, settle or resolve any such objection in accordance with section 7.6 of the Plan and this section of Agreement. After the Effective Date, the Plan Administrator may settle any Disputed Claim without obtaining prior Bankruptcy Court approval when the result of the settlement or compromise is an Allowed Claim for an amount not in excess of $100,000. A proposed settlement of a Disputed Claim where the settlement or compromise results in an Allowed Claim in an amount in excess of $100,000 must be approved by the Bankruptcy Court after notice and a hearing in accordance with Fed. R. Bankr. P. 9019.

5.8     Distributions to Holders of Allowed Claims.

(a)     Distributions to Holders of Allowed Claims. Subject to the reserve requirements set forth in this Agreement and the Plan, (i) on the Effective Date, or as soon as practicable thereafter, the Plan Administrator shall distribute to each holder of an Allowed Claim its Pro Rata share of the particular escrow benefiting such class; and (ii) from time to time after the Effective Date, in the Plan Administrator's sole discretion, the Plan Administrator shall distribute to each holder of an Allowed Claim its Pro Rata share of the Reserves Balances. In addition, in accordance with section 4.2 and Article VI of the Plan, on the Effective Date or as soon as practicable thereafter, the Plan Administrator shall distribute to those holders of Allowed Class 5 Claims that elect to grant an Optional Release their Pro Rata share of the Class 5 Plan Funder Individual Release Consideration from the Plan Funders Release Escrow.

(b)     Intentionally Omitted.

(c)     Payments Limited to Liquidation Trust Assets. All payments to be made to the holders of Allowed Class 5 Claims on account of their Allowed Claims, but not any Optional Releases granted, shall be made exclusively from the proceeds of Liquidation Trust

Assets and only to the extent that the Plan Administrator has sufficient funds and reserves to make such payments in accordance with the Plan and this Agreement. Holders of Allowed Class 5 Claims shall have recourse only to Liquidation Trust Assets. Payments by the Plan Administrator and the Liquidation Trust on account of Optional Releases by the holders of Allowed Class 5 Claims shall be made exclusively from the Class 5 Plan Funder Individual Release Consideration, respectively.

(d)     Time Bar to Cash Payments. All uncashed distributions shall be handled in accordance with this Article. Checks issued by the Liquidation Trust shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. The holder of the Allowed Claim to whom such check originally was issued shall make a written request for re-issuance of any check to the Liquidation Trust. Any request for reissuance shall be made on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check. After such date, all funds held on account of such voided check shall revest in the Liquidation Trust and shall be held in reserve by the Plan Administrator to be distributed to the other Holders of Allowed Claims in such Class Pro Rata by modifying the ratio by eliminating the Allowed Claim of the Holder of such Allowed Claim that timely failed to negotiate the check or timely request that the check be reissued.

5.9     Withholding and Reporting Requirements. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator shall, to the extent required under applicable laws, comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority in connection with any distributions made for or on behalf of former employees and employees of the Debtor, and all distributions under the Plan for such employee Claims shall be subject to any such withholding or reporting requirements. All Persons holding such employee Claims shall be required to provide any information necessary to effect the withholding of such taxes.

5.10     Management of Liquidation Trust Assets. The Plan Administrator shall take all steps necessary to liquidate all of the Liquidation Trust Assets and distribute the proceeds in accordance with this Agreement and the Plan. Except as otherwise expressly provided in the Plan, Confirmation Order or this Agreement, the Plan Administrator shall be empowered to

liquidate and reduce to Cash, or abandon, the Liquidation Trust Assets on such terms and for such consideration as the Plan Administrator deems reasonable and in the best interest of the holders of Allowed Class 5 Claims, without further application to or order of the Bankruptcy Court under any provision of the Bankruptcy Code (including, without limitation, section 363 thereof) or otherwise.

5.11    Investment of Cash.   The Plan Administrator may invest Cash (including any earnings thereon or proceeds therefrom) in U.S. Government backed securities or mutual funds investing in such securities or certificates of deposit or money market accounts; provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service Guidelines, rulings or other controlling authorities.

5.12    No Bond.   The Plan Administrator may serve without a bond.

5.13    Transactions with Related Persons.   Notwithstanding any other provisions of this Agreement, the Plan Administrator shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of the Liquidation Trust Assets to, or contract with, (a) any relative, employee, or agent (acting in their individual capacities) of the Plan Administrator, or (b) any Person of which any employee or agent of the Plan Administrator is an affiliate by reason of being a trustee, director, officer, partner, or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares, or other equity interest of such persons unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Bankruptcy Court and the Bankruptcy Court determines that the terms of such transaction are fair and reasonable to the Liquidation Trust and no less favorable to the Liquidation Trust than terms available for a comparable transaction with unrelated persons.

5.14    Books and Records.   The Plan Administrator shall maintain, in respect of the Liquidation Trust, books and records relating to the Liquidation Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidation Trust in accordance with generally accepted accounting principles and for such period of time as may be necessary to enable the Plan Administrator to make full and proper reports in respect thereof.  Except as expressly provided in the Plan and this Agreement, nothing

in the Plan or this Agreement is intended to require the Plan Administrator to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets.

5.15    Quarterly Reports.  Until the entry of a Final Decree closing the Chapter 11 Case, the Plan Administrator shall provide quarterly reports to the Trust Advisory Committee, the Reorganized Debtor, the Plan Funders and the United States Trustee setting forth in reasonable detail the prior quarters' expenses paid, Liquidation Trust Assets received and distributions made out of the Liquidation Trust and any distribution made out of the Reserves.

5.16    Closing of the Chapter 11 Case.  Without prejudice to the rights of Reorganized Debtors, The Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules when (i) all Disputed Claims have been resolved, (ii) all Liquidation Trust Assets have been liquidated, (iii) all distributions required to be made by the Plan Administrator under the Plan and all distributions required to be made under this Agreement have been made and (iv) all duties and obligations of the Plan Administrator under the Plan and this Agreement have been fulfilled.

## ARTICLE VI
[intentionally omitted.]

## ARTICLE VII
## FEDERAL INCOME TAX TREATMENT OF LIQUIDATION TRUST

7.1    Liquidation Trust Assets Treated as Owned by Beneficiaries of the Liquidation Trust.  For all federal income tax purposes, all parties (including without limitation the Debtor, the Plan Administrator and the holders of Claims who are beneficiaries under the Liquidation Trust) shall treat the transfer of the Liquidation Trust Assets to the Liquidation Trust for the benefit of the holders of such Allowed Claims, whether Allowed on or after the Effective Date, as (A) a transfer of the Liquidation Trust Assets directly to the holders of such Claims in satisfaction of such Claims (other than to the extent allocable to Disputed Claims) followed by (B) the transfer by such holders to the Liquidation Trust of the Liquidation Trust Assets in exchange for beneficial interests in the Liquidation Trust.  Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and the owners of their respective shares of the Liquidation Trust Assets.

7.2    Tax Reporting.

(a)    The Plan Administrator shall file returns for the Liquidation Trust as a grantor trustee pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this section 7.2. The Plan Administrator shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of the items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated (subject to section 7.2(c) hereof, related to Disputed General Unsecured Claims) to the Holders of Allowed Claims in accordance with their relative beneficial interests in the Liquidation Trust.

(b)    As soon as possible after the Effective Date, but in no event later than one hundred twenty (120) days after the Effective Date, the Plan Administrator shall make a good faith valuation of the Liquidation Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including, without limitation, the Plan Administrator and the holders of Allowed Claims) for all federal income tax purposes. The Plan Administrator shall also file (or cause to be filed) any other statements, returns or disclosures regarding the Liquidation Trust that are required by any governmental unit.

(c)    Subject to definitive guidance from the Internal Revenue Service, or a court of competent jurisdiction to the contrary (including the receipt by the Plan Administrator of a private letter ruling if the Plan Administrator so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Plan Administrator), the Plan Administrator shall (i) treat any Liquidation Trust Assets allocable to, or retained on account of Disputed General Unsecured Claims as held by one or more discrete trusts for federal income tax purposes (the "Liquidation Trust Claims Reserve"), consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the Tax Code (section 641 et seq.), (ii) treat as taxable income or loss of the Liquidation Trust Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidation Trust that would have been allocated to the holders of

Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Liquidation Trust Claims Reserve any increased amounts distributed by the Liquidation Trust as a result of any Claim resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Liquidation Trust Claims Reserve determined in accordance with the provisions hereof and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes.

(d)    The Plan Administrator shall be responsible for payments, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust or the Liquidation Trust Assets, including the Liquidation Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidation Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Plan Administrator as a result of the resolution of such Disputed Claims.

## ARTICLE VIII
## TERMINATION OF TRUST

8.1    Termination of Liquidation Trust. The Plan Administrator shall be discharged and the Liquidation Trust shall be terminated, at such time as: (a) all Disputed Claims have been resolved; (b) all Liquidation Trust Assets have been liquidated; (c) all distributions required to be made by the Plan Administrator under the Plan and Confirmation Order and all distributions required to be made under this Agreement have been made; (d) all duties and obligations of the Plan Administrator under the Plan and the Plan Administration Agreement have been fulfilled; and (e) entry of the Final Decree closing the Chapter 11 Case.

8.2    Maximum Terms. The term of the Liquidation Trust shall, in no event, be terminated later than the third (3rd) anniversary of the Effective Date (the "Initial Liquidation Trust Term") if not otherwise terminated pursuant to section 8.1 hereof; provided, however, that the Plan Administrator may extend the term of the Liquidation Trust for additional one (1) year

periods by filing a notice of the Plan Administrator's intent to extend the term of the Liquidation Trust with the Bankruptcy Court and obtaining the approval of the Bankruptcy Court (upon a determination that such extension is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets) within six (6) months of the beginning of the applicable term extension; provided, however, that the total period of all extensions of the Initial Liquidation Trust Term shall not exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extensions would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes.

8.3     Discharge of the Plan Administrator.   Upon the termination of the Liquidation Trust pursuant to sections 8.1 or 8.2 hereof, the Plan Administrator shall have no further duties or obligations hereunder, or under the Plan, except as required by this Agreement or applicable concerning the termination of a trust.  Upon a motion by the Plan Administrator, the Bankruptcy Court may enter an order relieving the Plan Administrator of any further duties, discharging and releasing the Plan Administrator.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.1     Amendments.   This Agreement may not be modified supplemented or amended without the consent of the Debtor and the Plan Funders or respecting material modifications only without an order of the Bankruptcy Court.

9.2     Waiver.  No failure by the Plan Administrator to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder shall preclude any further exercise thereof or of any other right, power or privilege.

9.3     Cumulative Rights and Remedies.   The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

9.4     Relationship to the Plan.  In the event that any provision of this Agreement is found to be inconsistent with provisions of the Plan or the Confirmation Order, the provisions of the Plan and the Confirmation Order shall control.

9.5     Governing Law.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law thereof.

9.6     Retention of Jurisdiction.     Notwithstanding any other provision of this Agreement, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over this Liquidation Trust after the Effective Date to resolve any and all controversies, suits and issues that may arise in connection with the Liquidation Trust, including without limitation, this Agreement, or any Person's obligations incurred in connection herewith, including without limitation, acts against the Plan Administrator or any Professional retained by the Plan Administrator or Liquidation Trust.

9.7     Waiver of Jury Trial.  Each party to this Agreement hereby irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or the transactions contemplated hereby.

9.8     Severability.  In the event that any provisions of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

9.9     Notices.   All notices, requests, demands consents and other communication hereunder shall be deemed to have been duly given to a person, if delivered to the following addresses:

If to the Debtor or Reorganized Debtor:

Steven Grabell CEO
Shapes/Arch Holdings, L.L.C.
9000 River Road
Delair, NJ  08110

with a copy to:

Cozen O'Connor
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ  08002

If to the Plan Funders after to the Effective Date:

Versa Capital Management, Inc.
Cira Centre
2929 Arch Street
Philadelphia, PA  19104

with a copy to:

Blank Rome LLP
Joel C. Shapiro, Esquire
Woodland Falls Corporate Park
200 Lake Drive East, Suite 200
Cherry Hill, NJ  08002

If to the Liquidation Trust:

with a copy to:

9.10   Entire Agreement.   This Agreement, the Plan, and the Confirmation Order constitute the entire agreement of the parties and there are no representations, warranties, covenants or obligations except as set forth herein or therein.  This Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, nothing in this

Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

9.11    Counterparts.    This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers, all as of the date first above written.

DATED:

Shapes/Arch Holdings L.L.C.

By: _____
Name:
Title:

Shapes L.L.C.

By: _____
Name:
Title:

Delair L.L.C.

By: _____
Name:
Title:

Accu-Weld L.L.C.

By: _____
Name:
Title:

Ultra L.L.C.

By: _____
Name:
Title:

Versa Capital Management, Inc.

By: _____
Name:
Title:

Plan Administrator

By:
Name:
Title:

123285.01601/21679445v.2