```
GIANSANTE & COBB, LLC
By:  Carol R. Cobb, Esq. (3574)
     Louis Giansante, Esq. (9585)
23 East Main Street
Moorestown, NJ  08057-3309
(856) 273-8866
giansantecobb@verizon.net
Attorneys for the Creditor,
Ward Sand & Materials, Inc.
```

U.S. BANKRUPTCY COURT
FILED
CAMDEN, NJ

08 APR 14 PM 3:49

JAMES J. WALDRON

BY:_____
       DEPUTY CLERK

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| SHAPES/ARCH HOLDINGS, L.L.C., et al., | CASE NO. 08-14631(GMB) |
| | Jointly Administered |
| | Hearing Date: 04/17/08 |
| Debtors. | Oral Argument Requested |

**BRIEF IN SUPPORT OF
WARD SAND AND MATERIALS COMPANY, INC.'S OBJECTIONS TO
THE DEBTORS' JOINT DISCLOSURE STATEMENT FOR ITS
JOINT PLAN OF REORGANIZATION**

Creditor, Ward Sand and Materials Company, Inc. (hereinafter known as Ward Sand) hereby files its objection to approval of the Joint Disclosure Statement for the Debtors' Joint Plan of Reorganization proposed by the debtors.

**I.    PRELIMINARY STATEMENT**

Ward Sand as well as the Debtors are defendants in litigation captioned "The Pennsauken Solid Waste Management Authority, et al. v. Ward Sand & Materials, Inc., et al., Docket Number Camden, New Jersey L-13345-91" (Landfill Litigation).  In this landfill litigation the claims against the defendants are jointly and severally liable pursuant to the New Jersey Spill Act.  The landfill litigation involves the remediation of the Pennsauken Landfill located next to the Debtors' facilities.  Ward Sand is the former owner/operator of the site in which the New

Jersey Department of Environmental Protection alleges that the landfill is contaminated, and that the same chrome, used in the manufacturing processes of the Debtors, is a significant portion of this contamination. There have been several estimations for the cost of the remediation. The highest estimation known to Ward Sand is $120,000,00.00, and it is Ward Sand's and several other parties position that a significant portion of the remediation should be allocated to the Debtors.

This matter is scheduled for trial in September 2008, and the Superior Court of New Jersey is determined to keep to this date. Expert reports will be propounded by the Defendants in May 2008, and will reflect that a significant portion of the alleged groundwater contamination is attributable to the debtors. Adequate disclosure is essential in order to discern the proper liable entities and insurance coverage available to remediate the debtors' responsibilities to the public to remediate that which they contaminated.

## II.     OBJECTIONS TO DISCLOSURE STATEMENT

The Disclosure Statement should not be approved because (a) it fails to provide adequate information in accordance with the standards set forth in Section 1125 of the Bankruptcy Code.

### A.     A Disclosure Statement must contain "Adequate Information."

Section 1125 of the Bankruptcy Code, which governs the requirements for disclosure statements in Chapter 11 cases, provides, in relevant part:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless at the time of or

before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing by the court as containing *adequate information.*

11 U.S.C. §1125(b) (emphasis added). "Adequate information" is defined in Section 1125 as:

[I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgement about the plan, but adequate information need not include such information about any other possible proposed plan.

11 U.S.C. §1125(a)(1); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 2337 (3d Cir. 2003) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the ... obligation to provide sufficient data to satisfy the Code standard of adequate information.")

There is no precise standard for determining adequate information as set forth in Bankruptcy Code section 1125. Disclosure statements are reviewed on a case-by-case basis. The Bankruptcy Code's disclosure requirements, according to the legislative history, are intended to be flexible:

Precisely what constitutes adequate information in any particular instance will develop on a case by case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the costs of preparation of the statements, the need for relative speed and solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.r. Rep. No. 595, 95th Cong. 1st Sess. 409, reprinted in 1978 U.S. Code Cong. & Ad. News. 5963, 6365. This legislative history was specifically adopted by the U.S. District Court Third Circuit in *Oneida Motor Freight v. United Jersey Bank* 848 F.2d 414 (3d. Cir. 1988).

In order to meet the "adequate information" standard, a disclosure statement must provide, at a bare minimum, a description of the debtor's business, a summary of the debtor's pre-petition history, financial information about the debtor's operations, a description of the proposed plan and how it will be implemented, a liquidation analysis, identification of any management to be retained by the debtor and a description of such management's compensation, tax consequences of reorganization, and projected operations which should include pending litigation and transactions with insiders.

In the present case the information provided by the Disclosure Statement is either missing or incomplete. As a result, the Disclosure Statement does not contain "adequate information" to comply with the standards mandated by Section 1125 of the Bankruptcy Code. If this Court determines that the Disclosure Statement does not contain "adequate information" for proper evaluation of the reorganization plan, it must refuse to approve.

**B.     The Debtors' Disclosure Statement Does Not Provide "Adequate Information."**

The description of the Debtors' business is incomplete. Ward Sand has been in litigation with an entity known as "Aluminum Shapes, Inc." for 17 years. And for the past 17 years, Aluminum Shapes, Inc. had a discovery obligation to

notify all parties of any changes in its corporate status. No information has been provided in the landfill litigation with regards to the status of Aluminum Shapes, Inc. It is unclear what happened to Aluminum Shapes, Inc. and its assets. This information is an essential fact Ward Sand in order to determine 1) the proper entities to which it has claims 2) the appropriate insurance coverage 3) whether its claim is actually against non-debtors such as Ben, L.L.C.

Even if Ward Sand could discern the proper entities, the disclosures concerning the Debtors' insurance that may be available to satisfy Claims of Creditors in accordance with Section 11.10 of the Plan is inadequate. At a minimum, the Disclosure Statement should include the following information pertaining to each of the Debtors' insurance policies: insured, policy number, policy type, applicable limits, available and remaining coverage.

The Disclosure Statement is also unclear whether Sections 11.8 and 11.9 of the Plan permit the assertion of Claims against the Reorganized Debtors after the Effective Date solely for the purpose of collecting on any available insurance, as permitted by applicable law. See First Fidelity Bank v. McAteer, 985 F.2d 114, 118 (3d Cir. 1993) ("the protection from liability afforded under the Code does not affect the liability of the debtor's insurers."). Suits post-discharge are permitted to be brought against the debtors to recover from the debtors' insurers because the suits do not create a personal liability of the debtor. In re Hendrix, 986 F.2d 195, 197 (7th Cir. 1993) ("The discharge had by virtue of 11 U.S.C. § 524(a)(2) the force of an injunction against a suit by any holders of listed debts... to collect those debts .... But as to whether such an injunction extends to a suit only

nominally against the debtor because the only relief sought is against his insurer, the cases are pretty nearly unanimous that it does not .... The reasoning is that a suit to collect merely the insurance proceeds and not the plaintiff's full damages. ... would not create a 'personal liability of the debtor,' because only the insurance company would be asked to pay anything, and hence such a suit would not infringe the discharge."). The plaintiff in such a subsequent suit need not file a proof of claim in the bankruptcy proceeding to secure its right to file the suit to recover from the debtors' insurers. *In re Edgeworth*, 993 F.2d 51, (5th Cir. 1993).

The Disclosure Statement improperly suggests that future contribution claims against the Debtors are being discharged. This is contrary to controlling law. See *In re M. Frenville Co., Inc.*, 744 F.2d 332, 335, 337 (3d Cir. 1984) ("Only proceedings that could have been commenced or claims that arose before the filing of the bankruptcy petitions are automatically stayed."); *see also United States v. Atlantic Research Corp.*, __ U.S. __., 127 S. Ct. 2331, 2334, 2337-38, 168 L. Ed. 2d 28, 40 (2007) (explaining contribution under common law:

> "[c]ontribution is defined as the 'tortfeasor's right to collect from others responsible for the same tort *after* the tortfeasor has paid more than his or her proportionate share... '" and explaining contribution under section 113(f)(3)(B) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.:* "Section 113(f)(3)(B) permits private parties to seek contribution *after* they have settled their liability with the Government."); *see also Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 161, 125 S. Ct. 577, 160 L. Ed. 2d 548 (2004) (explaining contribution under section I13(f)(1) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"): a private party may not obtain contribution under section 113(t)(1) unless and until it has been sued under section 106 or 107(a) of CERCLA.)

The landfill litigation is not specifically mentioned by the debtors in the Disclosure Statements. Ward Sand and many other parties to the landfill litigation will be filing claims against the Debtors in the amounts of hundreds of millions of dollars. There will be requests for a hearing pursuant to Rule 2004. The disclosure statement is inadequate for any party to the landfill litigation to make a determination and possibly avoid such a hearing.

### III.   CONCLUSION

For the above and foregoing reasons, Ward Sand requests that the Court deny approval of the Disclosure Statement because it is inadequate. The Disclosure Statement fails to provide Ward Sand with sufficient information to make an informed decision about the Plan. Ward Sand further requests that this Court grant such other relief as it deems just and equitable under the circumstances.

Dated: April 14, 2008

GIANSANTE & COBB, LLC

*Carol R Cobb*

Carol Rogers Cobb (#3574)
on the brief
23 E. Main Street
Moorestown, NJ 08057-3309
(856) 273-8866