# EXHIBIT

# A

# Greenberg Traurig

Nancy A. Mitchell
Tel. 212.801.3085
Fax 212.801.6400
mitchelln@gtlaw.com

April 1, 2008

<u>*Via Telecopier and First Class Mail*</u>

Mark E. Felger, Esq.
Cozen O'Connor
Suite 1400, Chase Manhattan Centre
1201 North Market Street
Wilmington, DE 19801

Jerrold N. Poslusny, Jr., Esq.
Cozen O'Connor
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, New Jersey 08002

Alan D. Halperin, Esq.
Halperin Battaglia Raicht, LLP
555 Madison Avenue, 9th Floor
New York, New York 10022

Michael D. Sirota, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601

Re:   In re Shapes/Arch Holdings L.L.C., *et al.*
      **Bankruptcy Case No. 08-14631 (GMB)**

Dear Messrs. Felger, Poslusny, Halperin and Sirota:

This firm represents Arch Acquisition I, LLC ("Arch Acquisition"), a creditor of the above-referenced debtors ("Debtors"). Arch Acquisition is an affiliate of Signature Aluminum ("Signature"), which is a leading North American aluminum extrusion company with approximately $400 million in revenue. Signature is a portfolio Company of H.I.G. Capital, a leading private equity investment firm which actively invests in the debt and equity of middle market companies that can benefit from operational enhancements, improved access to capital or balance sheet realignments. H.I.G. Capital has in excess of $3.5 billion of committed equity capital available to support its investment activities and currently manages a portfolio of more than fifty companies.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

Greenberg Traurig, LLP | Attorneys at Law | 200 Park Avenue | P.O. Box 677 | Florham Park, NJ 07932-0677
Tel 973.360.7900 | Fax 973.301.8410

www.gtlaw.com

Mark E. Felger, Esq.
Jerrold N. Poslusny, Jr., Esq.
Alan D. Halperin, Esq.
Michael D. Sirota, Esq.
April 1, 2008
Page 2

---

Arch Acquisition is prepared to fund up to $25,000,000 to refinance the DIP facility provided by Arcus ASI Funding LLC ("Arcus"), on significantly more favorable terms reflected in the enclosed Commitment Letter and Term Sheet (the "Alternative DIP Facility"). Arch anticipates that no changes will be made to the proposed status or treatment of CIT Group/Business Credit, Inc.'s DIP Revolving Credit Agreement under the Alternative DIP Facility.

The Alternative DIP Facility, among other things, allows for a competitive process through either a competitive plan or a sale under 11 U.S.C. §363, thereby maximizing the value of the Debtors' assets or business. Through such competitive process, Arch Acquisition is prepared to offer substantially more consideration to the Debtors' estates than the value currently provided in the Debtors' proposed Joint Chapter 11 Plan of Reorganization.

Consistent with your fiduciary duties, we hereby request that you consider the Alternative DIP Facility and provide us with your earliest response.

Sincerely,

Nancy A. Mitchell

NAM/mrv
Enclosures

cc:  John P. Bolduc
     Arch Acquisition I, LLC    (*via telecopier*)
     Gary P. Scharmett, Esq.
     Counsel to CIT Group/Business Credit, Inc.    (*via telecopier*)

NJ 226,381,649v1

March 31, 2008

Shapes/Arch Holdings LLC, DIP
9000 River Road
Delair, New Jersey 08110
Attention: Steven S. Grabell, Chief Executive Officer

Dear Mr. Grabell:

This will confirm the commitment of Arch Acquisition I, LLC (the "Lender") to provide up to $25,000,000 in debtor-in-possession financing to Shapes/Arch Holdings LLC, Shapes LLC, Delair LLC, Accu-Weld LLC and Ultra LLC (Debtors in Possession) (the "Borrowers") in their Chapter 11 Cases Nos. 08-14631 (GMB), 08-14632 (GMB), 08-14633 (GMB), 08-14634 (GMB) and 08-14635 (GMB), pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), in the amount and under the terms and conditions outlined in the term sheet (the "Term Sheet") annexed hereto as **Exhibit A**.

This approval is based upon our evaluation of facts currently presented and known to us. Any material change in the facts as presented and known to us could result in a revision to all or part of the terms contained herein, including complete withdrawal of our approval and this commitment.

**THE ATTACHED TERM SHEET IS PROVIDED TO SET FORTH AN OVERVIEW OF THE APPROVED LOAN TERMS, AND SHOULD NOT BE CONSTRUED AS A COMPLETE STATEMENT OF ALL OF THE TERMS AND CONDITIONS OF THE FINANCING DESCRIBED HEREIN. ALL OF SUCH TERMS AND CONDITIONS OF THE FINANCING DESCRIBED HEREIN SHALL BE SET FORTH IN THE DEFINITIVE DOCUMENTATION RELATED TO THE LOAN.**

This commitment and the agreement to provide the Facilities (as such term is defined in the Term Sheet) are subject to the following: (i) the execution and delivery (or assignment) of the loan documentation described in the Term Sheet, and (ii) entry of an order of the Bankruptcy Court approving the Facilities (or confirming that the Lender is the lender under the Facilities) in form acceptable to the Lender (the "Approval Order").

If you are in agreement with the proposed terms, please sign this letter where indicated and return it to the Lender.

By executing this letter below, the undersigned agrees to cooperate with, support and assist the Lender in its efforts to seek entry of the Approval Order and furnish all relevant materials which may be requested by the Lender. This commitment will expire if not accepted prior to April 3, 2008. If the Lender does not receive the signed letter from you by such date, the conditions and commitment described in this letter shall be null and void.

We appreciate the opportunity to make this proposal and look forward to a mutually beneficial relationship.

Sincerely,

**ARCH ACQUISITION, LLC**

By: _____
Name: John P. Bolduc
Title:

Accepted and agreed to this 31 day of March, 2008.

**BORROWERS:**
**SHAPES/ARCH HOLDINGS LLC, SHAPES LLC,**
**DELAIR LLC, ACCU-WELD LLC and ULTRA LLC**

By: _____
Name: Steven S. Grabell
Title: Chief Executive Officer

**Exhibit A to Commitment Letter**

$25,000,000 Secured DIP Term Loan
Summary of Terms
March 31, 2008

**AGGREGATE CREDIT LIMIT:**          $25,000,000 Debtor-in Possession (DIP) financing.

**FACILITY**

Borrowers:          Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C. and Ultra L.L.C.

Lender:          Arch Acquisition I, LLC or its designee

Facility:          $25,000,000 committed, secured DIP term loan facility (the "Facility"). The Facility shall be available to the Borrowers upon (a) either (i) assignment of the Arcus DIP Agreement (as defined herein) and related Loan Documents (as defined therein) to the Lender (which documents may be subsequently amended to provided for the Permitted Amendments) or (ii) execution and delivery by the Borrowers of new loan documents in substantially the same form as the Arcus DIP Agreement and related Loan Documents with such Permitted Amendments (as defined below) as are agreed to by the Borrowers and the Lender (in either case, the "New Loan Documents") and (b) (1) the entry of an Order of the Bankruptcy Court approving the Facility (or, if the Facility has already been approved, confirming that the Lender is the lender under the order approving such Facility and subject to all protections provided for therein), and (2) the receipt, review and approval by Lender of those documents reasonably requested by Lender, including but not limited to the Intercreditor Agreement and the Arcus Commitment Agreement. (Arch expects that any such review can be completed before the scheduled hearing on April 3, 2008 assuming the documents are provided to Arch by Tuesday, April 1, 2008). Any capitalized terms contained in this term sheet which are not otherwise defined shall have the meaning ascribed in the Arcus DIP Agreement.

Permitted Amendments:          The Arcus DIP Agreement shall be amended to provide the amendments or modifications to the Arcus DIP Documents which are provided for herein (the "Permitted Amendments").

Use of Proceeds:          The Facility shall be used (i) to refinance the outstanding balance of the term loan and any other obligations due under the Debtor-in-Possession Term Loan Financing Agreement by and between Arcus ASI Funding, LLC and the Borrowers, a copy of which is annexed hereto as Exhibit A (the "Arcus DIP Agreement") and (ii) to provide for the payment of ordinary course working capital support for Borrowers' operations and bankruptcy costs, and Bankruptcy Court approved expenses.

Interest Rate:          Equal to the prime rate (but in no event less than 6%) plus the Applicable Margin of 4%. Default Rate of Interest is an additional 2%.

| | |
|---|---|
| Collateral: | All loans and advances shall be secured by a perfected first priority security interest and lien in all of the Borrowers' assets, and, as to priority, the Carve-Out and Permitted Encumbrances pursuant to section 364(c) and Section 364(d) of the Bankruptcy Code. Moreover, all loans and advances shall at all times constitute a superpriority claim, having priority, pursuant to Section 364(c)(1) of the Bankruptcy Code, over any claims of any person (other than CIT Group/Business Credit, Inc. ("CIT"), as agent, and JPMorgan Chase Bank, N.A. and Textron Financial Corporation (together with CIT, the "Revolving Credit Lenders"), which superpriority claims shall be *pari passu*), subject, as to priority, only to the Carve-Out. |
| Revolving Credit Facility: | Subject to review of the Intercreditor Agreement, Arch anticipates that no changes will be made to the proposed status or treatment of the Revolving Credit Lenders under its facility. |
| Permitted Amendments: | The Arcus DIP Agreement shall be amended following assignment to the Lender as follows: |

(i) The term "Versa" shall be replaced with "Lender and its subsidiaries, affiliates and designee".
(ii) "Collateral" shall not include Avoidance Actions (as such term is defined in the Arcus DIP Agreement) or the proceeds thereof.
(iii) The term "Agent" shall be replaced with "Lender".
(iv) The Final Order shall be entered no later than April 4, 2008.
(v) 1.5% nonrefundable Arrangement Fee set forth in Paragraph 9.4 of the Arcus DIP Agreement shall be waived as to any portion previously paid to Arcus.
(vi) Reimbursement of Lender's out-of-pocket expenses set forth in Paragraph 9.5 of the Arcus DIP Agreement shall be waived for expenses incurred before execution and Court approval of the Facility, but not for those incurred following approval of the Facility.
(vii) The Fee for Lender's personnel reviewing the Debtors' books and records set forth in Paragraph 9.9 of the Arcus DIP Agreement shall be waived for expenses incurred before execution and Court approval of the Facility, but not for those incurred following approval of the Facility.
(viii) The interest rates shall be modified as provided above.
(ix) The Monthly Commitment Fee shall be reduced from 2% (per annum) to 1.5% (per annum).
(x) The Termination Fee of 2% of the Term Loan Facility Amount shall be reduced to 1.5%.
(xi) The Agent/facility fee of $40,000 per month and a collateral monitoring and service fee (¶9.8) of $40,000 per month shall each be deleted.
(xii) ¶8.21 shall be amended to delete the provision that states that the Debtors may not extend the exclusivity period except "upon the consent of the Lender."
(xiii) ¶11.2 shall be amended to provide that upon 5 business days written notice, without application to or order of the Court, the Lenders may take any action they deem appropriate to realize upon the Collateral.
(xiv) Addition of the covenants described in "Conditions" set forth below.
(xv) Any and all other provisions of the Arcus DIP Agreement or the Interim Order approving same on an interim basis that restrict or may be construed so as to restrict competitive bidding for the assets of or equity in the Debtors (as determined by the Lender) shall be deleted,

|  |  |
|---|---|
|  | including but not necessarily limited to ¶4.2 of the Interim Order approving the Arcus DIP Agreement on an interim basis. |
| Conditions: | The Facility shall be subject to (a) the terms and conditions contained in the Arcus DIP Agreement (subject to the Permitted Amendments), (b) review of and approval by the Lender of the other Loan Documents (including, without limitation, the Intercreditor Agreement) as provided herein and prior to the April 3, 2008 hearing (assuming such documents are timely provided by the Debtors), and (c) the agreement by the Debtors (which shall be covenants in the Facility) to (i) establish a sale process pursuant to 11 U.S.C. Section 363 and acceptable to the Lender with the Lender as a stalking horse bidder for all or substantially all of the Debtors' assets or (ii) establish a competitive plan process acceptable to the Lender. The Lender believes that the establishment of such process can be done quickly so as to avoid delay in the cases. |
| Other Terms: | As provided in the Arcus DIP Agreement. |

NJ 226,381,641v1