UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
Liberty View, Suite 300
457 Haddonfield Road
Cherry Hill, NJ  08002
(856) 910-5000
Attorneys for the Debtors

| In re: | Case No. 08-14631 |
|---|---|
| Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C. | Judge: Gloria M. Burns<br><br>Chapter: 11 |

## **DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

COZEN O'CONNOR
Mark E. Felger Esquire
Jerrold N. Poslusny, Jr., Esquire
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill NJ 08002
(856) 910-5000


Attorneys for Debtors and Debtors in Possession

Dated: April 24, 2008

# TABLE OF CONTENTS

**PAGE**

ARTICLE I  DEFINITIONS ........................................................................................1

ARTICLE II  METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND
GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND INTERESTS ...........11
  2.1    General Rules of Classification .......................................................................11
  2.2    Administrative Claims, Priority Tax Claims, DIP Claims, and Fee Claims.................11
  2.3    Bar Date for Administrative Claims ................................................................11
  2.4    Bar Date for Fee Claims ................................................................................12
  2.5    Intercompany Claims .....................................................................................12
  2.6    Classification of Claims and Interests...............................................................12

ARTICLE III  TREATMENT OF UNIMPAIRED CLASSES .......................................13
  3.1    Administrative Consolidation .........................................................................13
  3.2    Administrative Claims ...................................................................................13
  3.3    Priority Tax Claims .......................................................................................13
  3.4    Arcus Holders DIP Claims.............................................................................13
  3.5    Fee Claims ...................................................................................................14
  3.6    Class 1 Other Priority Claims .........................................................................14
  3.7    Class 2 Miscellaneous Secured Claims.............................................................14
  3.8    Class 7 Interests ...........................................................................................15
  3.9    Reservation of Rights.....................................................................................15

ARTICLE IV  TREATMENT OF IMPAIRED CLASSES.............................................15
  4.1    Class 3 CIT-DIP Claims ................................................................................15
  4.2    Class 4 Collateralized Insurance Program Claims...............................................16
  4.3    Class 5 General Unsecured Claims...................................................................16
  4.4    Class 6 Ben Interests.....................................................................................16
  4.5    Class 8 Claims..............................................................................................16
  4.6    Class 9 Secured Real Estate Claims..................................................................17
  4.7    Class 10 Claims............................................................................................17
  4.8    Class 11 Claims............................................................................................17

ARTICLE V  MEANS FOR IMPLEMENTATION OF THE PLAN .........................17
  5.1    Corporate Action...........................................................................................17
  5.2    Liquidation Trust ..........................................................................................18
  5.3    Plan Administrator ........................................................................................18
  5.4    Exit Financing and Equity Commitments..........................................................19
  5.5    Alternative Transaction and Break-Up Fee ........................................................19
  5.6    Revesting.....................................................................................................20
  5.7    Transfer of Real Estate...................................................................................20
  5.8    Permitted Investments....................................................................................20

ARTICLE VI  RELEASES...........................................................................................20
  6.1    Application for Approval of Settlement .............................................................20
  6.2    General Release ............................................................................................20

i

6.3    Debtors Injunction ................................................................................21
6.4    Release Consideration.............................................................................21
6.5    No Admissions .......................................................................................22

ARTICLE VII  DISTRIBUTIONS UNDER THE PLAN. .............................................22
7.1    Distributions for Claims Allowed as of the Effective Date ...........................22
7.2    Delivery of Distributions ........................................................................22
7.3    Reserve Accounts ..................................................................................22
7.4    Reserves for Disputed Administrative, Fee, Priority Tax and Other Priority Claims ...23
7.5    Reserves for Disputed General Unsecured Claims ......................................23
7.6    Claims Objection Deadline ......................................................................24
7.7    Settlement of Disputed Claims ...............................................................24
7.8    Unclaimed Property ...............................................................................24
7.9    Release and Preservation of Certain Liens ...............................................24
7.10   Withholding Taxes .................................................................................25
7.11   Fractional Cents ...................................................................................25
7.12   Payments of Less than Twenty-Five Dollars .............................................25

ARTICLE VIII  UNEXPIRED LEASES AND EXECUTORY CONTRACTS..........................25
8.1    Rejection of All Agreements ...................................................................25
8.2    Claims for Damages...............................................................................26

ARTICLE IX  CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ...................26
9.1    Conditions to Confirmation of the Plan ....................................................26
9.2    Conditions to Effectiveness of the Plan ...................................................27
9.3    Waiver of Conditions to Confirmation or Effective Date...............................27

ARTICLE X  RETENTION OF JURISDICTION ........................................................27

ARTICLE XI  MISCELLANEOUS PROVISIONS........................................................29
11.1   Pre-Confirmation Modification ................................................................29
11.2   Post-Confirmation Immaterial Modification ...............................................29
11.3   Post-Confirmation Material Modification ...................................................30
11.4   Withdrawal or Revocation of the Plan ......................................................30
11.5   Payment of Statutory Fees .....................................................................30
11.6   Successors and Assigns..........................................................................30
11.7   Exculpation ..........................................................................................30
11.8   Discharge .............................................................................................31
11.9   Confirmation Injunction .........................................................................31
11.10  Preservation of Insurance ......................................................................32
11.11  Cramdown............................................................................................32
11.12  Governing Law .....................................................................................32
11.13  Notices ...............................................................................................32
11.14  Saturday, Sunday or Legal Holiday ..........................................................33
11.15  Section 1146 Exemption ........................................................................33
11.16  Severability .........................................................................................33
11.17  Headings .............................................................................................33
11.18  Committee Survival ...............................................................................34

## INTRODUCTION

Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C., the above-captioned Debtors and Debtors in possession (collectively "Shapes" or the "Debtors"), hereby propose this First Amended Chapter 11 Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code. Reference is made to the Disclosure Statement[1] for risk factors and a summary and analysis of the Plan and certain related matters. The Debtors are the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XI of this Plan, the Debtors expressly reserve the right to alter, amend or modify this Plan, one or more times, before its substantial consummation.

## ARTICLE I

## DEFINITIONS

1.1    **Scope of Definitions**. As used in this Plan, the following terms shall have the respective meanings specified below. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2    "**Accrued**" shall mean an expense incurred but not yet billed for nor paid.

1.3    "**Accu-Weld Real Estate**" shall mean the real estate and fixtures located at 1211 Ford Road, Bensalem, PA which is owned by Accu-Weld L.L.C.

1.4    "**Accu-Weld Realty Pennsylvania, L.L.C.**" shall mean the Pennsylvania limited liability company whose sole member shall be Accu-Weld L.L.C. as set forth in the Operating Agreement contained in the Plan Supplement.

1.5    "**Additional Environmental Claims**" shall have the meaning set forth in Section 4.5 of the Plan.

1.6    "**Administrative Claim**" shall mean a Claim under sections 503(b) and 1114(e)(2) of the Bankruptcy Code or determined to be an Allowed Administrative Claim by a Final Order that is entitled to priority under sections 507(a)(1) or 507(b) of the Bankruptcy Code including any allowed Reclamation Claims or Claims allowed under Section 503(b)(9), for costs or expenses of administration of the Chapter 11 Case including, without limitation, any actual and necessary expenses of operating the businesses of the Debtors or preserving the estate incurred after the Petition Date, and any and all fees and expenses of Professionals Filed under sections 330, 331 or 503 of the Bankruptcy Code.

---

[1] All capitalized terms not defined in this introduction shall have the meanings set forth in Article I of this Plan.

1.7    "**Administrative Claims Bar Date**" shall have the meaning set forth in section 2.3 of the Plan.

1.8    "**Administrative Claims Reserve**" shall have the meaning set forth in section 7.4 of the Plan.

1.9    "**Allowed Claim**" shall mean: (a) any Claim, proof of which is/was Filed with the Bankruptcy Court or the Debtors' court-appointed claims agent on or before the date designated by the Bankruptcy Court as of the last date(s) for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been Filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court (allowing such Claim in whole or in part); (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order or (iii) pursuant to the terms of the Plan; or (c) a request for payment of an Administrative Claim, which is made before the Administrative Claims Bar Date, or otherwise has been deemed timely asserted under applicable law, and is an Administrative Claim as to which no objection to allowance thereof has been Filed within the applicable deadline pursuant to sections 2.3 of the Plan. Except as otherwise provided herein, in accordance with section 502(d) of the Bankruptcy Code, a Claim held by any party that is subject to an Avoidance Action shall not be an Allowed Claim until such time as a Final Order is entered by the Bankruptcy Court on the Avoidance Action.

1.10    "**Alternative Transaction**" shall mean upon the occurrence of the Alternative Transaction Trigger (and at the election of the Plan Funder), a process by which the New LLC Interests being transferred to the Plan Funders hereunder are exposed to a market process as more fully set forth in Schedule 1.10 attached hereto.

1.11    "**Alternative Transaction Trigger**" shall mean the date on which the Bankruptcy Court enters an order denying confirmation of this Plan and conditioned upon reasons that include a finding that (i) Class 5 has voted to reject the Plan as determined under 11 U.S.C. §1126(c) and (ii) an Alternative Transaction is necessary and sufficient to permit confirmation of the Plan.

1.12    "**Arcus Funding**" shall mean Arcus ASI Funding, LLC, a Delaware Limited Liability Company.

1.13    "**Arcus Holders**" shall mean collectively Arcus ASI, Inc. or its affiliates.

1.14    "**Arcus Holders DIP Claims**" shall mean the Allowed Secured Claims of Arcus Funding arising under the DIP Arcus Facility. For purposes of the Plan the Arcus DIP Claims shall be deemed Allowed Secured Claims.

1.15    "**Avoidance Actions**" shall mean any and all claims and causes of action of the Debtors, arising under the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549 and 550 thereof, but not including any claim or cause of action against the Professionals or any claims or causes of action released under the terms of this Plan.

1.16    "**Ballot**" shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Allowed Claims in classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

1.17    "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 et. seq., as in effect on the Petition Date, and as amended effective as of the Petition Date.

1.18    "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of New Jersey (Camden Vicinage) or such other court as may hereafter be granted jurisdiction over the Chapter 11 Case.

1.19    "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure effective August 1, 1996 in accordance with the provisions of 28 U.S.C. § 2075, and the local rules of the Bankruptcy Court, as in effect on the Petition Date, and is amended effective as of the Petition Date.

1.20    "**Bar Date**" shall mean [May 15,] 2008, the date set by the Bankruptcy Court as the last day to file proofs of Claim.

1.21    "**Ben Interests**" shall mean 100% of the limited liability company interests (including all options or warrants) of Shapes/Arch Holdings L.L.C. which are owned by Ben LLC or any other Person or entity (and not including the Arcus Holders).

1.22    "**Break Up Fee**" shall mean the sum of $2,500,000.00 payable to Plan Funders in the event an Alternative Transaction occurs and Plan Funders are not the successful bidder.

1.23    "**Business Day**" shall mean any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.24    "**Cash**" shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.25    "**Chapter 11 Case**" shall mean the above-captioned chapter 11 cases pending for the Debtors.

1.26    "**CIT**" shall mean The CIT Group/Business Credit, Inc., in its individual capacity and as agent for the CIT-DIP Lenders.

1.27    "**CIT-DIP Claims**" shall mean the Allowed Secured Claims of CIT-DIP Lenders arising under the CIT-DIP Loan Facilities and including, without limitation, the Revolving Credit Obligations, as defined in the Interim and Final DIP Orders entered with respect to the CIT-DIP Lenders and The CIT-DIP Loan Facilities." For purposes of the Plan, the CIT-DIP Claims shall be deemed Allowed Secured Claims.

1.28    "**CIT-DIP Lenders**" shall mean CIT, JPMorgan Chase Bank, N.A. and Textron Financial Corporation and any other Lender under The CIT Revolving Loan DIP Agreements.

3

1.29    **"CIT Loan"** shall mean the pre-petition date term loan, revolving loan and letters of credit from CIT-DIP Lenders in accordance with the terms of certain loan agreements dated December 30, 2003, as amended in the aggregate approximate amount of $75.7 Million dollars.

1.30    **"CIT-DIP Loan Facilities"** shall mean the post-petition revolving credit loan facility provided by CIT-DIP Lenders to the Debtors in the amount of $60 Million dollars, as evidenced by the CIT Revolving Loan DIP Agreements dated March 18, 2008.

1.31    **"CIT Revolving Credit Obligations**" shall have the same meaning as set forth in the CIT-Revolving Loan DIP Agreements.

1.32    **"CIT Revolving Lenders Exit Commitment"** shall mean the commitment by the CIT-DIP Lenders to provide the Reorganized Debtors with a sixty million dollar revolving credit facility as of the Effective Date (hereinafter "CIT Revolving Lenders Exit Facility") as set forth in that certain commitment letter dated March 18, 2008, a copy of which is attached to the Plan Supplement.

1.33    **"CIT Revolving Loan DIP Agreements"** shall mean those certain loan agreements dated March 18, 2008 between the CIT-DIP Lenders and the Debtors which provide for the CIT-DIP Loan Facilities, as amended, and related agreements, documents, instruments including, without limitation, the "Financing Agreements", as amended, and as defined in the Interim and Final DIP Orders entered with respect to CIT, the CIT-DIP Lenders and the CIT-DIP Loan Facilities.

1.34    **"Claim**" shall mean a claim against any or all the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.35    **"Claims Agent**" shall mean Epiq Bankruptcy Solutions, LLC (formerly known as Bankruptcy Services, LLC ("Epiq") appointed by the Bankruptcy Court.

1.36    **"Class**" shall mean a category of holders of Claims or Interests, as classified pursuant to Article II of the Plan.

1.37    **"Class 5 Pool**" shall mean the sum of $500,000.00 in the event Class 5 votes to reject the Plan as determined by 11 U.S.C. §1126(c) or $2,000,000.00 in the event Class 5 votes to accept the Plan as determined by 11 U.S.C. §1126(c) to be used to satisfy Allowed Class 5 General Unsecured Claims.

1.38    **"Class 5 Pool Escrow**" shall mean the escrow established by the Plan Funders in the amount of the Class 5 Pool for the purpose of making distributions to and satisfying the Allowed Claims of holders of Allowed Class 5 General Unsecured Claims.

1.39    **"Class 7 Interests**" shall mean 100% of the Limited Liability Company Interests of the Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C. which are owned by Shapes/Arch Holdings L.L.C.

1.40    **"CBA" or "Collective Bargaining Agreement"** shall mean any collective bargaining agreement between any Debtor and any of its employees' representative labor organizations as defined by the National Labor Relations Act.

1.41    **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee and as reconstituted from time to time and existing as of the Confirmation Date.

1.42    **"Confirmation"** shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.43    **"Confirmation Date"** shall mean the date of entry of an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.44    **"Confirmation Hearing"** shall mean the hearing to confirm the Plan.

1.45    **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.46    **"Creditor"** shall mean any person or entity having a Claim against any or all of the Debtors, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.47    **"Debtors"** shall mean Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C.

1.48    **"Debtors-in-Possession"** shall mean the Debtors in the capacity, and with the status and rights, conferred by sections 1107 and 1108 of the Bankruptcy Code.

1.49    **"Debtors Claimants"** shall have the meaning set forth in section 6.2 of the Plan.

1.50    **"Deficiency Claim"** shall mean, with respect to a Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the value of the property owned or held by the Debtors that collateralizes the Claim.

1.51    **"Delair Real Estate"** shall mean the real property and fixtures located at 8600 River Road, Delair, New Jersey which is owned by Shapes L.L.C.

1.52    **"Delair Realty New Jersey L.L.C."** shall mean the New Jersey limited liability company whose sole member shall be Delair L.L.C. as set forth in the Operating Agreement contained in the Plan Supplement.

1.53    **"DIP Agreement"** shall mean that certain Debtor-in-Possession Term Loan Financing Agreement by and among Debtors, as borrower and Arcus Funding, as lenders dated March 18, 2008, as amended.

1.54    "**DIP Arcus Facility**" shall mean that certain Debtors in Possession loan facility in the original principal amount of $25,000,000.00 made available by Arcus Funding and evidenced by, among other things, the DIP Agreement.

1.55    "**Disclosure Statement**" shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.56    "**Disputed Claim**" or "**Disputed [    ] Claim**" shall mean any Claim, including any Administrative Claim, which has not become an Allowed Claim pursuant to the Plan or a Final Order.

1.57    "**Effective Date**" shall mean the first business day following the date on which each of the conditions set forth in sections 9.1 and 9.2 of the Plan have been satisfied or waived (by the Plan Funders in their discretion).

1.58    "**EPA/NJDEP Claim**" shall mean all claims of Environmental Protection Agency ("EPA") under any 106 orders or otherwise or any claims of the New Jersey Department of Environmental Protection ("NJDEP") as may have been or could have been asserted against any of the Debtors including the Claims set forth on Sections I and II of Schedule 4.5.

1.59    "**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.60    "**Estate**" or "**Estates**" shall mean the estate of each or the estates of all of the Debtors.

1.61    "**Exit Facility**" shall mean the secured loan facility provided by Arcus Funding or assigned by Arcus Funding to the Plan Funders pursuant to the Plan, together with the loans funded by the Plan Funders pursuant to the Plan Funding Debt Commitments, as evidenced by and pursuant to the terms and conditions of the DIP Agreement, as amended and restated effective as of the Effective Date, which amendment and restatement shall be included in the Plan Supplement.

1.62    "**Exit Facility Letter**" shall mean the letter from Arcus Funding to Debtors which contains the terms and conditions for the Exit Facility a copy of which is attached to the Plan Supplement.

1.63    "**Fee Claim**" shall mean a claim under sections 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or reimbursement of expenses incurred in the Chapter 11 Case on or prior to the Effective Date which has been approved by a Final Order (including expenses of the members of the Committee).

1.64    "**Fee Claim Bar Date**" shall have the meaning set forth in section 2.4 of the Plan.

1.65    "**File**", "**Filed**", or "**Filing**" shall mean file, filed or filing with the United States Bankruptcy Court for the District of New Jersey, or with respect to proofs of claim, proofs timely and properly transmitted to Debtors' Claim Agent.

1.66    "**Final DIP Orders**" shall mean the Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and Grant Security Interests and Super priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c) and (d); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (C) Authorizing Debtors to Enter into Credit Agreements with the Arcus Holders and CIT-DIP Lenders, entered on April ___, 2008.

1.67    "**Final Order**" shall mean an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding or other review reconsideration or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review reconsideration or rehearing has expired.

1.68    "**Financing Agreements**" shall have the meaning ascribed to such term in the Final DIP Order.

1.69    "**General Unsecured Claim**" shall mean any unsecured, non-priority Claim, including, without limitation, any Indemnification Claim, that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Fee Claim, DIP Claim or Secured Claim.

1.70    "**Impaired**" shall have the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

1.71    "**Indemnification Claims**" means Claims for indemnification or advancement.

1.72    "**Intercompany Claims**" shall mean any Claim held by any Debtors against another Debtor or Ben LLC or any Claims of Ben LLC against any Debtor.

1.73    "**Interim Orders"** shall mean the interim orders dated March 18, 2008, April 3, 2008, April 9, 2008 and all interim orders entered thereafter which approve, on an interim basis, the CIT-DIP Loan Facilities and the DIP Arcus Facility.

1.74    "**Interest**" shall mean, with respect to the Debtors, any equity security or any other security or agreement granting rights to convert to, purchase, hold or own any equity security in Debtors as defined in section 101(16) of the Bankruptcy Code.

1.75    "**Liens**" shall mean valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

1.76    "**Liquidation Trust**" shall mean the trust created pursuant to the Plan Administration Agreement.

1.77    "**Management Equity Incentive Plan**" shall mean the Management Equity Incentive Plan contemplating performance-based options to purchase or distributions of New LLC Interests, which plan may be effectuated at the option of the Plan Funders.

1.78    "**Miscellaneous Secured Claims**" shall mean any and all Secured Claims, but excluding the Secured Claims of CIT, the CIT-DIP Lenders and Arcus Holders.

1.79    "**Net Proceeds**" shall mean the cash received from the sale, transfer, or collection or the conversion of such Property to cash in some other manner as contemplated in this Plan, less the reasonable, necessary and customary expenses attributable to such sale, transfer, collection or conversion, recordation and filing fees, property taxes, brokerage fees and commissions, collection costs and attorneys' and other professional fees and expenses. In determining Net Proceeds, only costs or expenses related to the Property in question shall be charged against the Proceeds of such Property.

1.80    "**New LLC Interests**" shall mean the newly authorized membership interests of Shapes/Arch Holdings L.L.C., issued and distributed to the Plan Funders pursuant to the Plan and subject to options granted pursuant to the Management Equity Incentive Plan.

1.81    "**Obligations**" shall have the same meaning as set forth in the DIP Agreement.

1.82    "**Other Priority Claim**" shall mean any Claim against the Debtors other than an Administrative Claim, Fee Claim or Priority Tax Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.83    "**Operating Agreement**" shall mean the amended and restated Limited Liability Company Operating Agreement for each Debtor that will be set forth in the Plan Supplement.

1.84    "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

1.85    "**Petition Date**" shall mean March 16, 2008, the date upon which the Debtors filed their petitions under Chapter 11 of the Bankruptcy Code.

1.86    "**Plan**" shall mean this Debtors' Chapter 11 Plan of Reorganization, all exhibits hereto and any permitted amendments or modifications hereof.

1.87    "**Plan Administrator**" shall mean the Person designated pursuant to the Plan Administration Agreement to act in accordance with the terms and the authority granted in the Plan Administration Agreement and the Confirmation Order.

1.88    "**Plan Administration Agreement**" shall mean the agreement governing, among other things, the distributions to holders of Allowed Claims required by the Plan, which shall be in the form and substance reasonably satisfactory to the Debtors and the Plan Funders and substantially in the form contained in the Plan Supplement.

1.89    "**Plan Expenses**" shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) the Debtors', Reorganized Debtors' and the Plan Administrator's costs, expenses and legal fees incurred related to filing and prosecuting objections to Claims, (ii) all fees, costs or expenses of the Plan Administrator incurred pursuant to the Plan Administration Agreement,

8

including, but not limited to any professionals retained by the Plan Administrator and (iii) all fees payable pursuant to section 1930 of Title 28 of the United States Code.

1.90    "**Plan Expense Reserve**" shall mean the sum of $100,000.00 to be utilized by the Plan Administrator as permitted under the Liquidation Trust.

1.91    "**Plan Funders**" shall mean collectively Arcus ASI, LLC, a Delaware Limited Liability Company, or its parents or affiliates or related funds that are parties to the Plan Funding Equity Commitments.

1.92    "**Plan Funders Cash Contribution**" shall have the meaning ascribed to such term in section 6.4. under the Plan.

1.93    "**Plan Funders Consideration**" shall have the meaning ascribed to such term in section 6.4 under the Plan.

1.94    "**Plan Funding Debt Commitment**" shall mean the debt commitments executed by Arcus Funding in the aggregate committed amount of up to $25 million, the terms and conditions of which shall be more fully set forth in the Plan Supplement.

1.95    "**Plan Funding Equity Commitments**" shall mean the equity commitments executed by the Plan Funders in the aggregate committed amount of not less than one million five hundred thousand dollars ($1,500,000.00) and such additional amounts as are necessary to provide adequate availability on the Effective Date to assure the continued and uninterrupted operations of the Reorganized Debtors, not to exceed the additional sum of $4,000,000.00, (and in no event shall the Plan Funding Equity Commitments exceed the sum of $5,500,000.00) the terms and conditions of which shall be more fully set forth in the in the Plan Supplement and at the election of the Plan Funders, the Plan Funding Equity Commitment may be satisfied by way of a cash payment or a conversion of the Arcus Holders DIP Claims that were assigned to them by Arcus Funding.

1.96    "**Plan Supplement**" shall mean the supplemental appendix filed with the Bankruptcy Court prior to the Disclosure Statement hearing that will contain, among other things, Plan Funding Debt Commitments, Plan Funding Equity Commitments, Operating Agreement respecting the Interest holders in the Reorganized Debtors, Management Equity Incentive Plan, Plan Administration Agreement and notice of the selection of the Plan Administrator.

1.97    "**Priority Tax Claim**" shall mean any Claim for taxes against the Debtors entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.98    "**Proceeds**" shall mean the cash received from the sale, transfer, or collection of Property or the conversion of such Property to cash in some other manner as contemplated in this Plan, whether received before or after the Effective Date.

1.99    "**Professionals**" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered to the Debtors prior to the Effective Date, pursuant to sections

327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.100    "**Property**" means all property of the Debtors' Estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtors, or acquired by the Debtors' Estates, as defined in section 541 of the Bankruptcy Code.

1.101    "**Pro Rata**" means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Allowed Claims and Disputed Claims, without duplication, in such Class.

1.102    "**Protected Parties**" shall have the meaning ascribed to such term in section 11.9 of the Plan.

1.103    "**Released Parties**" shall have the meaning set forth in section 6.2 of the Plan.

1.104    "**Releasors**" shall have the meaning set forth in section 6.2 of the Plan.

1.105    "**Remaining Assets**" shall mean all assets of the Debtors of any nature whatsoever, including, without limitation, property of the estate pursuant to section 541 of the Bankruptcy Code, claims of right, interests and property, real and personal, tangible, and intangible, including but not limited to accounts receivable or other rights to receive Proceeds and Avoidance Actions but excluding the Claims released pursuant to this Plan and/or the Confirmation Order.

1.106    "**Reorganized Debtors**" shall mean Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C. from and after the Effective Date, pursuant to the amended and restated Limited Liability Company Operating Agreements and other governance documents included in the Plan Supplement.

1.107    "**Reserves**" shall mean collectively the Class 5 Pool Escrow, Plan Expense Reserve, together with any other escrow, or reserve established and funded on or before the Effective Date.

1.108    "**Reserves Balances**" shall mean the balance of any Reserve after payment of all Allowed Claims with respect to which such Reserve as specifically established.

1.109    "**Schedules**" shall mean the Debtors' Schedules of Assets and Liabilities Filed pursuant to Bankruptcy Rule 1007 as they may be amended from time to time.

1.110    "**Secured Claim**" shall mean all or a portion of a Claim existing on the Petition Date, as finally allowed and approved by the Bankruptcy Court, to the extent that such debt is not greater than the value of the Property securing such Claim.

1.111    "**Shapes Real Estate**" shall mean the real property and fixtures located at 9000 River Road, Delair, New Jersey which is owned by Shapes L.L.C.

1.112  **"Shapes Realty New Jersey L.L.C."** shall mean the New Jersey limited liability company whose sole member shall be Shapes L.L.C. as set forth in the Operating Agreement contained in the Plan Supplement.

1.113  "**Third Party Claimants**" shall have the meaning ascribed to such term in section 6.2 of the Plan.

1.114  **"Ultra Realty New Jersey"** shall mean the New Jersey limited liability company whose sole member shall be Ultra L.L.C. as set forth in the Operating Agreement contained in the Plan Supplement.

1.115  **"Ultra Real Estate"** shall mean the real estate and fixtures located at 1777 Hylton Road, Pennsauken, New Jersey which is owned by Shapes L.L.C.

All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.

Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND INTERESTS

2.1  <u>General Rules of Classification</u>.  Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally-defined Class, it shall be included in the more specifically defined Class.

2.2  <u>Administrative Claims, Priority Tax Claims, DIP Claims, and Fee Claims</u>. Administrative Claims, Priority Tax Claims, Arcus Holders DIP Claims, and Fee Claims have not been classified and are excluded from the Classes set forth in Article III of the Plan in accordance with section 1123(a)(l) of the Bankruptcy Code.

2.3  <u>Bar Date for Administrative Claims</u>. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Reorganized Debtors and Plan Administrator, and their respective counsel, no later than thirty (30) days after the Effective Date (the "<u>Administrative Claim Bar Date</u>"). Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to

timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Reorganized Debtors and Plan Administrator, and their respective counsel, and the party requesting payment of an Administrative Claim within twenty (20) days after the filing of such request for payment.

2.4    Bar Date for Fee Claims. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims incurred through the Effective Date, must be filed and served on the Plan Administrator and its counsel no later than thirty (30) days after the Effective Date (the "Fee Claim Bar Date"). Any Professional that is required to file and serve a request for payment of a Fee Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Fee Claim or participating in distributions under the Plan on account thereof. Objections to Fee Claims must be filed and served on the Plan Administrator, its counsel, and the requesting party by twenty (20) days after the filing of the applicable request for payment of the Fee Claim.

2.5    Intercompany Claims. As of the Effective Date, Intercompany Claims shall be extinguished. No distributions on account of Intercompany Claims will be made, however, Shapes/Arch Holdings L.L.C. shall retain the right and entitlement to receive final liquidating dividends from its subsidiaries.

2.6    Classification of Claims and Interests. The following is the designation of the Classes of Claims and Interests under the Plan:

    (a)    Class 1 Claims shall consist of all Other Priority Claims.

    (b)    Class 2 Claims shall consist of all Miscellaneous Secured Claims.

    (c)    Class 3 Claims shall consist of the CIT-DIP Claims.

    (d)    Class 4 Claims shall consist of all Claims held by entities on account of Collateralized Insurance Programs.

    (e)    Class 5 Claims shall consist of all General Unsecured Claims.

    (f)    Class 6 Interests shall consist of the Ben Interests.

    (g)    Class 7 Interests shall consist of all Limited Liability Membership Interests in Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C.

    (h)    Class 8 Claims shall consist of the EPA/NJDEP claims.

    (i)    Class 9 Claims shall consist of all Secured Real Estate Claims.

    (j)    Class 10 Claims shall consist of all Purchase Money Security Interests in equipment.

12

(k)     Class 11 Claims shall consist of the Secured Claims of Warehousemen and Shippers

## ARTICLE III

## TREATMENT OF UNIMPAIRED CLASSES

3.1     Administrative Consolidation.  For purposes of this joint plan and for the administrative convenience of the parties, holders of Claims in each Debtor case shall receive the identical treatment referenced below and each unimpaired class and impaired class shall be deemed to automatically apply in each case as if there were separate plans of reorganization filed in each case (provided that all Class 5 Claimants of all Debtors shall receive their Pro-Rata Share of the Class 5 Pool Escrow).  Holders of Interests in each case shall be treated as more fully set forth below.  THIS PLAN DOES NOT PROVIDE FOR THE SUBSTANTIVE CONSOLIDATION OF THE DEBTORS ON THE EFFECTIVE DATE but the holders of Claims in Class 5 shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against or obligations of the consolidated Debtors and shall receive one distribution in accordance with Section 4.3 hereunder.

3.2     Administrative Claims. Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon such other terms as may be agreed upon by the holder of such Allowed Claim, or (b) such lesser amount as the holder of such Allowed Administrative Claim and the Debtors prior to the Effective Date and the Reorganized Debtors following the Effective Date might otherwise agree. The total amount of unpaid Allowed Administrative Claims shall be subject to approval by the Bankruptcy Court.

3.3     Priority Tax Claims. Except as provided herein, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Claim and the Debtors prior to the Effective Date and the Reorganized Debtors following the Effective Date might otherwise agree, or (at the election of the Debtors or the Reorganized Debtors) (b) over a period of five (5) years from the Petition Date in equal monthly installments of principal plus interest at the rate of six percent per annum.

3.4     Arcus Holders DIP Claims. To the extent not otherwise paid prior to Confirmation and conditioned upon the New LLC Interests being received by the Plan Funders, on the Effective Date, all Obligations then due and owing under the DIP Agreement shall be satisfied pursuant to the terms of new Exit Facility being provided by Arcus  Funding as set forth in the Exit Facility Letter attached to the Plan Supplement.  At any time on or before the Effective Date, the Arcus Holders DIP Claims and Liens may be assigned (in whole or in part at election of Arcus Funding) to the Plan Funders.  If such an assignment is made, then the Plan Funding Equity Commitments shall be adjusted to an amount equal to the amount of the Arcus

13

Holders DIP Claims assigned to Plan Funders.  Subject to the terms and conditions of the Plan Funding Debt Commitments, on or before the Effective Date, Arcus Funding shall fund their Plan Funding Debt Commitments (or assign such commitment to Plan Funders), or a portion thereof, and such amount shall be sufficient to satisfy in full the Obligations remaining due under the DIP Agreement as of the Effective Date, including, without limitation, all accrued and unpaid interest, costs and fees (including, without limitation, all costs, expenses and fees, including attorneys' fees incurred in connection with the administration of the Chapter 11 Case and the Plan) shall be capitalized and added to the restated principal balance of the Exit Facility as of the Effective Date. The terms of the Exit Facility shall be set forth in the Plan Supplement. The Exit Facility shall be secured by an assignment of the Liens securing the DIP Facility and a first priority lien on all Property of the Reorganized Debtors (but subject to the liens and priorities in favor of CIT and the CIT-DIP Lenders that are acceptable to the Plan Funders as more fully set forth in the CIT Revolving Lenders Exit Commitment).  Arcus Funding's Lien shall attach to the Reserves, and Reserves Balances. The Liens and property interests of Arcus Funding shall remain perfected from and after the date of the Confirmation Order without the need of Arcus Funding to take any or further action or file or record any notes with respect thereto. The Confirmation Order shall be sufficient and conclusive notice and evidence of the grant, validity, perfection, and priority of Arcus Funding's Liens without the necessity of filing or recording the Confirmation Order (other than as docketed in the Chapter 11 Case) or any financing statement, mortgage or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Arcus Funding's Liens, or to entitle Arcus Funding to the priorities granted under the DIP Facility or herein (including, in respect of cash or deposits or investment property, any requirement that Arcus Funding have possession of or dominion and control over, any such cash in order to perfect an interest therein); provided that the Debtors or Reorganized Debtors shall execute and deliver to Arcus Funding and they may file or record financing statements or other instruments further to evidence or further to perfect the Arcus Funding's Liens authorized, granted and perfected under the DIP Facility and hereby; and *provided further* that no such fling or recordation shall be necessary or required in order to create or perfect any such Lien.

> 3.5  <u>Fee Claims</u>. Each holder of an Allowed Fee Claim shall receive 100% of the unpaid amount of such Allowed Fee Claim in Cash on the Effective Date or as soon as practicable after such Fee Claim becomes and Allowed Claim.

> 3.6  <u>Class 1 Other Priority Claims</u>. Each holder of an Allowed Other Priority Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon such other terms as may be agreed upon by the holder of such Allowed Claim, or (b) such lesser amount as the holder of such Allowed Other Priority Claim and the Debtors prior to the Effective Date and the Reorganized Debtors following the Effective Date might otherwise agree.  Any Allowed Claims in this Class 1 for paid time off shall be satisfied in the ordinary course of business consistent with Debtors' employment policies and practices.  The holder of a Claim in this Class is not impaired and, therefore, not entitled to vote.

> 3.7  <u>Class 2 Miscellaneous Secured Claims</u>.  To the extent there are any Allowed Secured Claims in this Class (and excluding any Secured Claims that are subject of a different treatment as provided in a separate Secured Class), each such Claim shall be deemed to be a

14

separate subclass. At the option of the Debtors or the Reorganized Debtors, holders of Class 2 Claims shall receive (a) the return of the collateral securing such Allowed Secured Claim, or (b) the Net Proceeds realized by the Debtors or Reorganized Debtors from the disposition of the collateral securing such Allowed Secured Claim up to the amount of their Secured Claim.

3.8     Class 7 Interests.  On the Effective Date, all Class 7 Interests shall remain unaffected, valid and binding such that 100% of the membership interests of Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C. and Ultra L.L.C. shall continue to be owned by Shapes/Arch Holdings L.L.C.

3.9     Reservation of Rights. Nothing contained herein shall be deemed to limit the right of any party-in-interest to object to any Administrative Claims (including Fee Claims), Priority Claims, Other Priority Claims and Miscellaneous Secured Claims filed in this Chapter 11 Case.

## ARTICLE IV

## TREATMENT OF IMPAIRED CLASSES

4.1     Class 3 CIT-DIP Claims.  CIT (and, as applicable, the CIT-DIP Lenders) shall retain their liens on Property of the Estate of each Debtor and the terms and conditions of the CIT Revolving Loan DIP Agreements, the Interim Orders, and Final DIP Orders shall remain in full force and effect except that with the consent of the CIT-DIP Lenders, the same shall be modified as set forth in the CIT Revolving Lenders Exit Commitment attached to the Plan Supplement.  In the alternative at the election of the Plan Funders, to the extent not already paid in full, in cash (by wire transfer of immediately available funds), prior to Confirmation, on the Effective Date, the CIT-DIP Claims shall be paid in full in Cash (by wire transfer of immediately available funds), with interest at the contract rate set forth in the CIT Revolving Loan DIP Agreements.  Reorganized Debtors shall also post cash collateral with CIT in the amount of 105% on or before the Effective Date as described in the preceding sentence of the amounts outstanding under any undrawn letters of credit in the event Debtors elect to satisfy the CIT-DIP Claims.  CIT and the CIT-DIP Lenders are impaired and, therefore, are entitled to vote.  The Liens and property interests of The CIT-DIP Lenders shall remain perfected from and after the date of the Confirmation Order without the need of the CIT-DIP Lenders to take any or further action or file or record any noted with respect thereto.  The Confirmation Order shall be sufficient and conclusive notice and evidence of the grant, validity, perfection, and priority of CIT-DIP Lenders' Liens without the necessity of filing or recording the Confirmation Order (other than as docketed in the Chapter 11 Case) or any financing statement, mortgage or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the CIT-DIP Lenders' Liens, or to entitle CIT-DIP Lenders to the priorities granted under the CIT Revolving Loan DIP Agreements (as amended by the CIT Revolving Lenders Exit commitment) including, in respect of cash or deposits or investment property, any requirement that CIT or the CIT-DIP Lenders have possession of or dominion and control over, any such cash in order to perfect an interest therein); provided that the Debtors or Reorganized Debtors shall execute and deliver to CIT-DIP Lenders and they may file or record financing statements or other instruments further to evidence or further to perfect the CIT-DIP Lenders' Liens authorized, granted and perfected under the CIT

15

Revolving Loan DIP Agreements and hereby; and *provided further* that no such filing or recordation shall be necessary or required in order to create or perfect any such Lien.

4.2    <u>Class 4 Collateralized Insurance Program Claims</u>.  This Class shall consist of the Allowed Secured Claims of those entities holding cash deposits or letters of credit which are acting as collateral security for the workers compensation insurance policies of the Debtors, each such Claim shall be deemed a separate subclass.  Each holder of a Class 4 Claim shall retain on account of their Allowed Secured Claim the cash deposit or Letter of Credit securing the same; provided, however, that such entities shall, on the Effective Date, return to the Reorganized Debtors all collateral being held in excess of their Allowed Secured Claims (as determined by agreement of the parties or further Order of the Bankruptcy Court in the event Debtors or holders request an estimation of any holders' claims under section 502(c) of the Bankruptcy Code).  The holders of Claims in this Class are Impaired and therefore entitled to vote.

4.3    <u>Class 5 General Unsecured Claims</u>.  This Class shall consist of General Unsecured Claims. Unless otherwise agreed to by the holder of an Allowed General Unsecured Claim and the Plan Administrator, each holder of a General Unsecured Claim shall receive their Pro Rata share of the Class 5 Pool as follows: (i) on the Effective Date or as soon as practicable thereafter, each such holder shall receive its Pro Rata share of the Class 5 Pool on account of the amount of such Allowed Claim from the Class 5 Pool Escrow; (ii) from time to time each such holder shall receive its Pro Rata share of the Reserves Balances; and (iii) from time to time, each holder shall receive its Pro Rata Share of recoveries on account of the Avoidance Actions.  In the event of the occurrence of an Alternative Transaction then, the additional consideration received upon the sale of the New LLC Interests in accordance with the parameters set forth in the Bid Procedures attached to the Disclosure Statement as Exhibit "E" shall be added to the Class 5 Pool.  On the Effective Date, all Class 5 Claims shall be transferred to and assumed by the Liquidation Trust and the Debtors and their Property, and the Reorganized Debtors and their property shall be free and clear of all Class 5 Claims, and be deemed released and discharged from all Class 5 Claims. All environmental claims set forth in Sections III and IV of Schedule 4.5 shall be treated as Class 5 general unsecured claims.  The holders of Claims in this Class are impaired and therefore entitled to vote.

4.4    <u>Class 6 Ben Interests</u>.  This Class shall consist of the Ben Interests. On the Effective Date, all Class 6 Interests shall be deemed cancelled, null and void and of no force and effect.  Accordingly, Class 6 Interests are deemed to reject the Plan and, therefore, are not entitled to vote.

4.5    <u>Class 8 Claims</u>.  On the Effective Date, the EPA shall receive the sum of $300,000.00 in full and complete satisfaction of their claims set forth in Section I of Schedule 4.5 attached hereto and the sum of $25,000.00 in full and complete satisfaction of their claims set forth in Section II of Schedule 4.5 attached hereto.  The NJDEP shall receive the sum of $25,000.00 in full and complete satisfaction of their claims set forth in Section II, III and IV of Schedule 4.5 attached hereto.  Funding for the distributions to this class will be made solely from proceeds of applicable insurance policies.  Any other environmental claims set forth in Sections III and IV of Schedule 4.5 (or as may be otherwise asserted by any Person, hereinafter, "Additional Environmental Claims") shall be treated as General Unsecured Class 5 Claims. Accordingly, Class 8 is impaired and is entitled to vote.

16

4.6     Class 9 Secured Real Estate Claims.  This Class shall consist of the holders of Allowed Secured Real Estate tax claims relating to the Delair Real Estate, Accu-Weld Real Estate, Shapes Real Estate and Ultra Real Estate.  Each holder shall be deemed to be a separate subclass.  Each member of the subclass shall have an allowed secured claim in the amount of Real Estate taxes due and owing as of the Petition Date (including any interest due and owing but excluding any late charges or penalties in the amount as set forth in the Debtors' Schedules and Statement of Financial Affairs) and such claims shall be paid (at the election of the Debtors) (i) in full, in cash on the Effective Date or (ii) in equal monthly installments of principal commencing on the first day of the first month following the Effective Date and continuing until the date which is sixty months from the Petition Date, with interest at the rate of six percent per annum.  Reorganized Debtors shall have the right to prepay one or more of the Class 9 holders at any time without penalty.  Class 9 claims are impaired and entitled to vote.

4.7     Class 10 Claims.  This Class shall consist of the Allowed Secured Claims of the holders of purchase money security interests (which shall include lease agreements for equipment which contains a nominal or $1.00 purchase option) in the Debtors' equipment which is being retained by the Reorganized Debtors and each such Claim shall be treated as a separate subclass.  Each holder of a Claim in this Class shall continue to receive the monthly amortized payments set forth in the pre-petition agreements (at the non-default interest rate and without the allowance of any late payments or penalties) with any pre-petition arrearages to be added at the end of the contract and paid in one-lump payment on the thirtieth day following the natural un-accelerated due date under the applicable contract.  Any holder of a purchase money security interest in equipment or a lessor of equipment (whose contract contains a nominal or $1.00 purchase option) who has not properly perfected their interest under the Uniform Commercial Code shall be treated as a Class 5 unsecured creditor.  The holders of a Claim in this Class are impaired and, therefore, are entitled to vote.

4.8     Class 11 Claims.  Class 11 shall consist of holders of Allowed Secured Claims of the Debtors' Shippers and Warehousemen (who are in possession of Property).  Each holder shall be deemed to be a separate subclass.  Each member of the subclass shall have an Allowed Secured Claim in the amount of the charges due and owing to them (by agreement of the parties or as allowed by Order of the Bankruptcy Court) and such claims shall be paid (at the election of the Debtors) (i) in full (without interest) on the Effective Date or (ii) in 24 equal monthly installments of principal (commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter) with interest at the rate of six percent (6%) per annum.  On the Effective Date any Property then in the possession of a Class 11 holder shall be released to the Reorganized Debtors. Class 11 claims are impaired and entitled to vote.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     Corporate Action. On the Effective Date and automatically and without further action, (i) each existing member (or manager of each operating entity) of the Debtors will be deemed to have resigned, (ii) the new board members/managers of the Reorganized Debtors shall be those identified in the Plan Supplement, and (iii) the Plan Administrator and Reorganized

17

Debtors shall be authorized and empowered to take all such actions and measures necessary to implement and administer the terms and conditions of the Plan. Each Debtors' Operating Agreement will be amended as of the Effective Date to the extent necessary to incorporate the provisions of the Plan and to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code.  The rights and interests of the New LLC Interests shall be governed by and controlled pursuant to the terms and conditions of the Reorganized Debtors' Operating Agreements, which shall be included in and filed with the Plan Supplement.

5.2    Liquidation Trust. On the Effective Date the Debtors shall execute and deliver the Plan Administration Agreement, which shall create a trust, convey all Avoidance Actions to the Trust, appoint the Plan Administrator, provide for the acceptance of the Reserves provided for in the Plan, and set forth the terms and conditions for distributions from such Reserves.

From and after the Effective Date, the Liquidation Trust and the Plan Administrator shall hold and administer the (i) Class 5 Pool Escrow; (ii) Plan Expense Reserve; and (iii) Avoidance Actions.

All of the Reserves shall vest with the Plan Administrator on the Effective Date and any amounts remaining in the Reserves under Section 5.2 after distribution to Class 5 Creditors shall be donated to a charity of choice at the election of the Plan Administrator.

5.3    Plan Administrator. On or before the Effective Date, the Plan Funders, with the consent of the Debtors shall appoint one Plan Administrator to serve as such pursuant to the Plan Administration Agreement (the "Plan Administration Agreement"). The Plan Administration Agreement is to be attached as an exhibit to the Plan Supplement. The Plan Administrator shall administer the Plan subject to the foregoing duties and powers, which shall include the following:

(a)    To prosecute, compromise or settle objections to Claims and/or Interests (disputed or otherwise) and to make or direct that distributions be made to holders of Allowed Claims;

(b)    To make decisions regarding the retention or engagement of Professionals and to pay, without court order, all reasonable fees and expenses incurred after the Effective Date;

(c)    To make or direct distributions to holders of Allowed Claims and to otherwise implement and administer the Reserves and the Plan;

(d)    To file with the Bankruptcy Court the reports and other documents and to pay any and all fees required by the Plan or otherwise required to close the Chapter 11 Case, including the preparation and filing of a motion for a final decree (subject to the rights of Reorganized Debtors for the case to remain open pending the completion of the prosecution of any Avoidance Actions);

18

(e)    To set off amounts owed to the Debtors against any and all amounts otherwise due to be distributed to the holder of an Allowed Claim under the Plan; and

(f)    To take all other actions not inconsistent with the provisions of the Plan deemed necessary or desirable in connection with administering the Plan.

(g)    To prosecute and settle all Avoidance Actions.

5.4    <u>Exit Financing and Equity Commitments</u>. At any time or before the Effective Date, the DIP Facility and the Arcus Holders DIP Claims may be assigned (in whole or in part at the election of Arcus Funding) to the Plan Funders. The terms and conditions of the Exit Facility shall be as set forth in the Exit Facility Letter, which shall be included in and filed with the Plan Supplement. The material terms of the Exit Facility are described above in the treatment afforded to the Arcus Holders DIP Claims. The principal amount of the Exit Facility upon the Effective Date shall be $25 million plus any and all unpaid interest, costs and fees that accrued prior to the Effective Date. Except as expressly set forth in the Plan, or the Plan Funding Debt Commitment or the Plan Funding Equity Commitments, working capital of the Debtors and Reorganized Debtors together with the proceeds of the Plan Funding Debt Commitment and the Plan Funding Equity Commitments shall be used for general working capital and capital expenditures of the Reorganized Debtors, to fund the Reserves, to pay the Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority claims, and Allowed Other Priority Claims. In consideration for meeting its funding commitments under the Plan Funding Equity Commitments in the aggregate amount of no less than One Million Five Hundred Thousand Dollars ($1,500,000.00) (which will be paid in cash or by way of a conversion of the Arcus Holders DIP Claims assigned to the Plan Funders), each Plan Funder shall receive Pro Rata 100% of the New LLC Interests in the Reorganized Shapes/Arch Holdings L.L.C. that are authorized and issued as of the Effective Date, subject to dilution from time to time upon the implementation of the Management Equity Incentive Plan, (at the election of the Plan Funders) which when fully implemented would result in the Plan Funders holding not less than 95% of the equity interests of the Reorganized Shapes/Arch Holdings L.L.C. outstanding.

In addition, at the election of the Plan Funders, funding for the Reorganized Debtors will also be provided by the CIT-DIP Lenders in accordance with the terms and conditions set forth in the CIT Revolving Lenders Exit Commitment.  CIT's and the CIT-DIP Lenders lien position on the Reorganized Debtors' Property shall be in accordance with the provisions set forth in the CIT Revolving Lenders Exit Commitment and a certain intercreditor agreement to be executed by the parties on or before the Effective Date.

5.5    <u>Alternative Transaction and Break-Up Fee</u>.  Upon the occurrence of an Alternative Transaction Trigger, the New LLC Interests will be subject to a market process (as described in the Disclosure Statement) and ultimately, the New LLC interests may be issued to a party other than Plan Funders.  In the event the Plan Funders are not the successful bidder upon the conclusion of that process then (i) Plan Funders shall receive the Break-Up Fee; and (ii) the Class 5 Pool shall be increased by the amount of at least $500,000.00 (as adjusted higher or lower) pursuant to the terms of the Bid Procedures set forth on Exhibit E to the Disclosure Statement.

19

5.6     Revesting. Except as otherwise provided for in the Plan, the Confirmation Order, Interim Orders and Final Orders, as applicable (including, without limitation, the liens being granted and/or retained by Arcus Funding, CIT and the CIT-DIP Lenders), on the Effective Date, without any further action, each of the Reorganized Debtors will be vested with all of the Property of the Estate (including all Avoidance Actions), free and clear of all Claims, Liens and Interests, and shall have all of the powers of a limited liability company under applicable law. As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire and dispose of property and settle and compromise claims or interests without the supervision of the Bankruptcy Court or Plan Administrator, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.7     Transfer of Real Estate.  On the Effective Date, (a) Reorganized Shapes L.L.C. may (at its election but subject to the terms of the CIT Revolving Lenders Exit Commitment and the Class 9 Real Estate Taxes to the extent not satisfied) either retain all real estate or (i) convey the Shapes Real Estate to Shapes Realty New Jersey L.L.C., (ii) convey the Delair Real Estate to Delair Realty New Jersey L.L.C. (or Shapes Realty New Jersey LLC); and (iii) convey the Ultra Real Estate to Ultra Realty New Jersey L.L.C.; and (b) Reorganized Accu-Weld L.L.C. may (at its election but subject to the terms of the CIT Revolving Lenders Exit Commitment and the Class 9 Real Estate Taxes to the extent not satisfied) either retain all real estate or convey the Accu-Weld Real Estate to Accu-Weld Realty Pennsylvania L.L.C., free and clear of all liens, claims and encumbrances other than the Class 10 Real Estate Claims.

5.8     Permitted Investments. Cash held by the Plan Administrator, in any accounts or otherwise shall be invested in U.S. government backed securities or mutual funds investing in such securities.

## ARTICLE VI

## RELEASES

6.1     Application for Approval of Settlement.  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan constitutes an application for approval of a compromise and settlement of any and all claims, suits and causes of action of (a) the Debtors, the Estate, of their respective successors or assigns, including, without limitation, the Liquidation Trust, and any Person or Entity claiming a right in a derivative capacity on their behalf, and (b) any holder of a Claim classified under "Class 5 General Unsecured Claims" who submits a Ballot consenting to release the parties identified below by not checking the appropriate box on the Ballot to opt out of such Optional Release against the Arcus Holders, the Plan Funders and the Debtors' members, managers and officers, and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants, as set forth more fully below.

6.2     **General Release.  On the Effective Date, (i) the Debtors, the Estates, and their respective successors or assigns, including, without limitation, the Liquidation Trust, and any Person or Entity claiming a right in a derivative capacity on their behalf (the "Debtors Claimants") are deemed to, with respect to any and all derivative claims, whether**

20

or not asserted, and (ii) the Debtors Claimants and any holder of a Claim classified under "Class 5 General Unsecured Claims" (and together with the Debtors Claimants, the "Releasors"), hereby unconditionally and irrevocably release the Arcus Holders, Arcus Funding, the Plan Funders, CIT, the CIT-DIP Lenders and the Debtors' directors, managers and board observers, and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (collectively, the "Released Parties"), as set forth more fully below, from any and all direct, indirect or derivative claims, obligations, suits, judgments, Liens, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place from the beginning of the world to the Effective Date arising from or relating in any way, directly or indirectly, to the Debtors, its Properties, assets, operations or liabilities, the Chapter 11 Case, the Plan, or the Disclosure Statement; *provided however*, that the Releasors shall not be deemed to have released any rights to enforce the terms of the Plan or their rights to distributions thereunder.  The Releasors hereby waive any rights or benefits under California Civil Code Section 1542, which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with Debtors and any rights or benefits under similar laws. The Confirmation Order shall specifically provide for the foregoing releases.**

6.3     Debtors Injunction. On the Effective Date, the Debtors Claimants respecting the claims released above, and the Releasors shall be permanently enjoined from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind, asserting any setoff, right of subrogation, contribution, indemnification or recoupment of any kind, directly or indirectly, or proceeding in any manner in any place inconsistent with the releases granted to the Released Parties pursuant to the Plan. The Confirmation Order shall specifically provide for such injunction.

6.4     Release Consideration. The consideration the Plan Funders shall provide, or have provided, in exchange for the releases described in the Plan and the receipt of the New LLC Interests, includes the following (collectively, the "Plan Funders Consideration"):

(a)     The Plan Funders, as part of the Plan Funding Equity Commitments and not in addition thereto, shall contribute Cash in an amount necessary to ensure that the holders of Allowed Administrative, Priority Tax and Fee Claims and Allowed Claims in Classes 1, 3, 5, 8, 9, 10 and 11 receive the distributions required under the Plan (the "Plan Funders Cash Contribution"); and

21

(b)     The Plan Funders, as part of the Plan Funding Debt Commitments and not in addition thereto, shall provide financing under the terms of the Exit Facility in the principal amount of up to $25 million, plus accrued interest, costs and fees (including the obligations of the Debtors under the DIP Facility prior to the Effective Date), and extend the term thereof to following the Effective Date as set forth in the Plan Supplement.

6.5     No Admissions. The releases and injunctions granted in favor of the Released Parties are integral parts of the Plan and are necessary to confirm the Plan. The releases contained in Section 6.2 above and Section 11.7 below shall survive confirmation of the Plan under an Alternative Transaction.  The Plan Funder Individual Release Consideration constitutes the consideration for the releases from the Third Party Claimants. Because all elements of the Plan Funders Consideration will result in distributions to creditors of the Debtors, the entire Plan Funders Consideration constitutes the consideration for the releases from the Debtors Claimants and Releasors. The fact that the Plan Funders are providing the Plan Funders Consideration in return for the releases shall not be construed as an admission or evidence that the Releasors have valid claims against the Arcus Holders, or any managers or officers of Debtors, affiliates of the Arcus Holders, or any board observers affiliated with any Arcus Holders, or any of the other Released Parties.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN.

7.1     Distributions for Claims Allowed as of the Effective Date. Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable. Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

7.2     Delivery of Distributions. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Reorganized Debtors or its agents, unless the Debtors or the Plan Administrator, as applicable, have been notified in writing of a change of address, including by the filing of a proof of claim or Administrative Claim request that contains an address for a holder of a Claim different from the address for such holder reflected on any Schedule.

7.3     Reserve Accounts. On or before the Effective Date, the Plan Administrator will establish and maintain the following reserve accounts:

(a)     Reserve for Plan Expenses. A reserve in an amount equal to the estimated Plan Expenses (the "Plan Expense Reserve"), which upon the closing of the Chapter 11 Case, the remainder, if any, will be released and distributed

22

to Reorganized Debtors.  Other than the initial funding of the Reserve for Plan Expenses in the amount of $100,000.00 (or with respect to legal fees and other professional fees incurred by Reorganized Debtors' at the request of Plan Funders), Reorganized Debtors shall have no further liability for such expenses.

(b)    Disputed Claims Reserve.  See 7.5 below.

7.4    Reserves for Disputed Administrative, Fee, Priority Tax and Other Priority Claims. On or before the Effective Date, the Reorganized Debtors shall establish and maintain a reserve in an amount equal to all Disputed Administrative, Fee, Priority Tax Claims and Other Priority Claims in an amount equal to what would be distributed to holders of Disputed Administrative, Fee, Priority Tax, and Other Priority Claims if their Disputed Claims have been deemed Allowed Claims on the Effective Date or on the Administrative Claims Bar Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Reorganized Debtors; provided however, that the Reorganized Debtors shall not be required to reserve funds on account of employee Claims for paid time off or vacation benefits of employees whose employment was continued by the Debtors or will be continued by the Reorganized Debtors. With respect to such Disputed Claims, if, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Reorganized Debtors to the Claimant in a manner consistent with distributions to similarly situated Allowed Claims. The balance of such Cash, if any, remaining after all Disputed Administrative, Fee, Priority Tax, and Other Priority Claims have been resolved and distributions made in accordance with the Plan, shall be released and distributed to the Reorganized Debtors. No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order

7.5    Reserves for Disputed General Unsecured Claims.  On or before the Effective Date, the Plan Administrator shall establish and maintain a reserve for all Disputed General Unsecured Claims. For purposes of establishing a reserve for Disputed General Unsecured Claims, Cash will be set aside as soon as practicable after the Effective Date equal to the amount that would have been distributed to the holders of Disputed General Unsecured Claims had their Disputed General Unsecured Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court. With respect to such Disputed General Unsecured Claims, if, when, and to the extent any such Disputed General Unsecured Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Plan Administrator to the Claimant in a manner consistent with distributions to similarly situated Allowed Claims. The balance of such Cash, if any, remaining after all Disputed General Unsecured Claims have been resolved and distributions made in accordance with the Plan, shall be released and re-distributed to holders of Allowed Claims.  No payments or distributions shall be made with respect to a Claim that is a Disputed General Unsecured Claim pending the resolution of the dispute by Final Order. No payments or distributions shall be made with respect to post-Petition Date interest accruing on any Claim other than the Arcus Holders DIP Claims and the CIT-DIP Claim. No payments or distributions shall be made with respect to Allowed Claims in an amount in excess of such Allowed Claims, except that the Class 5 Plan Funder Individual Release Consideration shall be distributed in addition to full payment of such Allowed Claims.

23

7.6    Claims Objection Deadline. Notwithstanding D.N.J. LBR 3007-1, Objections to Claims shall be filed and served upon each affected Creditor no later than ninety (90) days after the Effective Date, provided however, that this deadline may be extended by the Bankruptcy Court upon motion of the Plan Administrator or Reorganized Debtors, with or without notice or hearing. Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of, or other assertion of a Claim filed after the Confirmation Date shall be automatically disallowed as a late filed Claim, without any action by the Plan Administrator or the Reorganized Debtors, unless and until the party filing such Claim obtains the written consent of the Plan Administrator or the Reorganized Debtors, as applicable, or obtains an order of the Bankruptcy Court upon notice to the Plan Administrator and Reorganized Debtors that permits the late filing of the Claim, and the holder of such disallowed Claim shall be forever barred from asserting such Claim against the Liquidation Trust, the Debtors, the Estate or Property, Reorganized Debtors or their property. In the event any proof of claim is permitted to be filed after the Confirmation Date pursuant to an order of the Bankruptcy Court, the Plan Administrator or Reorganized Debtors, as applicable, shall have sixty (60) days from the filing of such proof of claim or order to object to such Claim, which deadline maybe extended by the Bankruptcy Court upon motion of the Plan Administrator with or without notice or a hearing.

7.7    Settlement of Disputed Claims. Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court, except to the extent such approval is not necessary as provided in this section. After the Effective Date, and subject to the terms of this Plan, the Plan Administrator may settle any Disputed Claim where the result of the settlement or compromise is an Allowed Claim in an amount  of $100,000 or less without providing any notice or obtaining an order from the Bankruptcy Court. All proposed settlements of Disputed Claims where the amount to be settled or compromised exceeds $100,000 shall be subject to the approval of the Bankruptcy Court after notice and an opportunity for a hearing.

7.8    Unclaimed Property. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder of an Allowed Claim or Interest entitled thereto, such unclaimed property shall be forfeited by such holder, whereupon all right, title and interest in and to the unclaimed property shall be held in reserve by the Plan Administrator to be distributed Pro Rata to holders of Allowed Claims in such Class in accordance with this Plan, or if all Allowed Claims in such Class have been satisfied or reserved for in accordance with the Plan, then such unclaimed property will be distributed to the Reorganized Shapes/Arch Holdings L.L.C.

7.9    Release and Preservation of Certain Liens.  Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, including, without limitation, the Liens securing the DIP Arcus Facility, the CIT-DIP Loan Facilities, the CIT Revolving Lenders Exit Commitment and the Exit Facility (which shall survive Confirmation and shall remain valid, enforceable and perfected Liens against property of the Reorganized Debtors, respectively) on the Effective Date, all other mortgages, deeds of trust, Liens or other security interests against the Property of the Debtors' estate shall be released, and all the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests shall revert to Reorganized Debtors and their successors and assigns.

24

7.10    Withholding Taxes.  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

7.11    Fractional Cents.  Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down. of such fraction to the nearest whole cent.

7.12    Payments of Less than Twenty-Five Dollars. If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than twenty-five ($25.00) dollars (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Plan Administrator shall not be required to make such payment and such funds shall be otherwise distributed to holders of Allowed Claims in such Class in accordance with the Plan, or if all Allowed Claims in such Class have been satisfied or reserved for in accordance with the Plan, then such excess fractional dollars will be distributed to the Reorganized Debtors.

## ARTICLE VIII

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

8.1    Rejection of All Agreements. Any and all pre-petition leases or executory contracts included on Debtors' Schedule G not previously assumed by the Debtors (and not otherwise previously rejected, the subject of a motion to assume pending on the Confirmation Date or designated on Schedule 8.1 to this Plan, which schedule may be filed and amended at any time up to three days prior to the Confirmation hearing), shall be deemed rejected by the Debtors effective as of the Confirmation Date, but subject to the occurrence of the Effective Date. Any and all pre-petition leases and executory contracts not included on Debtors' Schedule G not previously assumed or rejected by the Debtors, shall be deemed rejected by the Debtors effective as of the Confirmation Date, but subject to the occurrence of the Effective Date.  The Debtors reserve the right to supplement any motion to assume or Schedule 8.1 to include or exclude additional contracts by way of a supplemental notice to parties to pre-petition leases and executory contracts at any time at least one (1) day prior to the confirmation hearing and the Debtors shall file the initial designation of contracts to be assumed, without prejudice, at least two (2) days prior to the deadline to file objections to confirmation of this Plan.  Within ten days after the Effective Date, all cure amounts due and owing under any assumed contracts shall be paid and all cure amounts that are the subject of dispute shall be paid upon further agreement of the parties or upon entry of an order of the Court allowing such cure claims.  No portion of any disputed cure claims shall be paid unless and until the amount of such claim is fixed by agreement of the parties or order of the Court.  Notwithstanding the foregoing, on the Effective Date, all insurance policies (regardless of the inception date of coverage) for any one or more Debtors which provide for any and all claims made or occurred arising from or related to any environmental laws of any Federal, State or local governmental entity or any claim asserted by a non-governmental entity for environmental claims (directly or by way of indemnity and whether under contract or tort law) shall be deemed assumed by Reorganized Debtors.

25

Any motion filed to assume contracts or the Schedule 8.1 shall contain the cure amounts required to be paid upon assumption and all contracting parties shall have ten (10) days from the filing of such motion or schedule within which to object to the stated cure amount or thereafter be deemed to have waived the right to object to the same.

8.2     Claims for Damages. All proofs of claim with respect to Claims arising from the rejection of executory contracts or leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed with the Bankruptcy Court within thirty (30) days after the mailing of notice of Effective Date. All proofs of claim with respect to Claims arising from the rejection of executory contracts shall be treated as Class 5 General Unsecured Claims, as applicable, for purposes of a distribution pursuant to the Plan, unless and until the Person or Entity asserting such Claim obtains an order of the Bankruptcy Court upon notice to the Debtors, that allows the Claims in another Class under the Plan. Unless otherwise permitted by Final Order, any proof of claim that is not filed before the earlier of the Bar Date or the Confirmation Hearing (other than those Claims arising from the rejection of executory contracts or leases which may be filed within thirty (30) days after mailing of the notice of Effective Date as set forth above) shall automatically be disallowed as a late filed Claim, without any action by the Plan Administrator, and the holder of such Claim shall be forever barred from asserting such Claim against the Debtors, the Estate, the Reorganized Debtors or property of Reorganized Debtors.

## ARTICLE IX

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

9.1     Conditions to Confirmation of the Plan.  The Plan shall not be confirmed unless and until the following conditions have been satisfied in full or waived by the Debtors and the Plan Funders:

(a)     The Confirmation Order shall be in form and substance satisfactory to the Debtors, (and CIT-DIP Lenders as required in the CIT Revolving Lenders Exit Commitment) Arcus Holders, Arcus Funding and Plan Funders, which Confirmation Order shall approve all provisions, terms and conditions of the Plan;

(b)     No amendments, modifications, supplements or alterations shall have been made to the Plan or any document delivered in connection therewith, without the express written consent of the Debtors, Arcus Holders, Arcus Funding and Plan Funders (which consent may be granted, withheld, or conditioned in their respective sole discretion and the consent of the CIT-DIP Lenders to the extent the same is material to the CIT-DIP Lenders); and

(c)     Execution of new Collective Bargaining Agreements in form and substance satisfactory to Debtors and Plan Funders.

9.2     Conditions to Effectiveness of the Plan. The Plan shall not become effective unless and until each of the following conditions has been satisfied in full or waived by the Debtors and the Plan Funders:

(a)     The Bankruptcy Court shall have entered the Confirmation Order by May 31, 2008 or June 20, 2008 in the event of the occurrence of an Alternative Transaction (or such other date as agreed to in the sole discretion of the Plan Funders) and such Order shall be in form and substance satisfactory to the Debtors, Arcus Funding, Arcus Holders and Plan Funders;

(b)     All escrow and reserve accounts described in the Plan have been adequately funded; and

(c)     The Confirmation Order shall have become a Final Order and the Effective Date shall be no later than June 10, 2008 (June 30, 2008 in the event of an Alternative Transaction).

(d)     Closing has occurred under the terms of the exit facilities being provided by Arcus Funding and CIT-DIP Lenders and the Plan Funding Equity Commitments have been provided and the aggregate funds available under the same are sufficient to satisfy the cash requirements necessary to fund this Plan in accordance with its terms.

9.3     Waiver of Conditions to Confirmation or Effective Date.  Except as set forth above in Section 9.1 and 9.2 above, with respect to matters pertaining to the CIT-DIP Lenders, the conditions set forth in Article 9.1 and Article 9.2 of this Plan may be waived, in whole or in part, by the Debtors and Plan Funders without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors and Plan Funders in their sole discretions regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors and Plan Funders in their sole discretion).  The failure of the Debtors and Plan Funders to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right which may be asserted at any time.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1     Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Plan Administrator and the Reorganized Debtors, as the case may be, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)     Claims.  To determine the allowance, extent, classification, or priority of Claims against the Debtors upon objection by the Plan Administrator, or

27

any other party in interest including any and all claims asserted under any Collective Bargaining Agreements, as amended;

(b)    Injunction, etc. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Person or Entity;

(c)    Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, and objections thereto, as provided for in the Plan;

(d)    Certain Priority Claims. To determine the allowance, extent and classification of any Priority Tax Claims, Other Priority Claims, Administrative Claims or any request for payment of an Administrative Claim;

(e)    Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and/or Confirmation Order and the making of distributions hereunder and thereunder;

(f)    Executory Contracts and Unexpired Leases.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance and extent of any Claims resulting from the rejection of executory contracts and unexpired leases;

(g)    Actions.  To determine all applications, motions, adversary proceedings (including any Avoidance Actions), contested matters, actions, and any other litigated matters instituted (either before or after the Effective Date) in the Chapter 11 Case by or on behalf of the Debtors or the Plan Administrator;

(h)    General Matters.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code or other applicable law;

(i)    Plan Modification.  To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any

28

inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(j)     Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code including, without limitation, resolve any disputes of a non-Debtor hereunder or the injunction against acts, employment of process or actions against such non-Debtors arising hereunder;

(k)     Protect Property.  To protect the Property of the Debtors and Reorganized Debtors from adverse Claims or Liens or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan or to determine a purchaser's exclusive ownership of claims and causes of actions retained under this Plan;

(l)     Abandonment of Property.  To hear and determine matters pertaining to abandonment of Property of the Estate;

(m)     Implementation of Confirmation Order.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; and

(n)     Final Order.  To enter a final order closing the Chapter 11 Case.

(o)     To determine any tax liability pursuant to Section 505 of the Bankruptcy Code.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1    Pre-Confirmation Modification.  On notice to and opportunity to be heard by the United States Trustee, the Plan may be altered, amended or modified by the Debtors before the Confirmation Date as provided in section 1127 of the Bankruptcy Code; provided, however, that any such amendment or modification of the Plan must be approved in writing by the Plan Funders (and CIT-DIP Lenders to the extent the same is material to the CIT-DIP Lenders).

11.2    Post-Confirmation Immaterial Modification.  With the approval of the Bankruptcy Court and on notice to and an opportunity to be heard by the United States Trustee and without notice to holders of Claims and Interests, the Plan Administrator, may, insofar as it does not materially and adversely affect the interest of holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan; provided, however, that any such amendment or modification of the Plan must be approved in writing by the Plan Funders (and CIT-DIP Lenders to the extent the same is material to the CIT-DIP Lenders).

29

11.3    <u>Post-Confirmation Material Modification</u>.  On notice to and an opportunity to be heard by the United States Trustee, the Plan may be altered or amended after the Confirmation Date by the Reorganized Debtors or the Plan Administrator in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that such alteration or modification is made after a hearing and otherwise meets the requirements of section 1127 of the Bankruptcy Code; provided, however, that any such amendment or modification of the Plan must be approved in writing by the Plan Funders (and CIT-DIP Lenders to the extent the same is material to the CIT-DIP Lenders).

11.4    <u>Withdrawal or Revocation of the Plan</u>.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Effective Date does not occur, then, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, Debtors or any other Person, (ii) prejudice in any manner the rights of Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.  To the extent the Class 3 claim of CIT has been paid in full, in cash (by wire transfer of immediately available funds) on the Effective Date, all references to CIT in this Plan (other than those pertaining to interest and any release, injunctive, exculpation or similar or related provisions) shall be deemed null and void.

11.5    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if due) or by the Plan Administrator when otherwise due out of the Reserves set aside on the Effective Date by the Plan Administrator to fund Plan Expenses.

11.6    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person or Entities.

11.7    **<u>Exculpation</u>.  On the Effective Date, (a) the Debtors, and their direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (solely in their capacities as such) and (b) the CIT-DIP Lenders, CIT, Arcus Funding, Arcus Holders and the Plan Funders and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (solely in their capacities as such) shall be deemed to release each of the other, and by all holders of Claims or Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission occurring solely during the period prior to the Effective Date, generally, including, without limitation, any act or omission occurring during the Chapter 11 Case, the DIP Facility, the Exit Facility, the Plan Funding Debt Commitment, the Plan Funding Equity Commitments, CIT Revolving Loan DIP Agreements, CIT Revolving**

30

Lenders Exit Commitment, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

11.8   **Discharge**.  Except as otherwise provided for in this Plan, the Confirmation Order or any other order of the Bankruptcy Court (including, without limitation, the Interim Orders and Final DIP Orders), in accordance with section 1141(d) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of all debts, Claims against, Liens on, and Interests in the Debtors, their assets and Property, which debts, Claims, Liens and Interests arose at any time before the entry of the Confirmation Order.  The discharge of the Debtors shall be effective as to each Claim and Interest, regardless of whether a proof of Claim or Interest was filed or whether the Claim or Interest was Allowed or whether the holder of the Claim or Interest votes to accept the Plan. On the Effective Date, as to each and every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting such Claim or Interest against the Debtors or Reorganized Debtors or their assets or properties.

11.9   **Confirmation Injunction**. On and after the Confirmation Date, except to enforce the terms and conditions of the Plan before the Bankruptcy Court (or as permitted under the Interim Orders, Final DIP Orders, CIT Revolving Lenders Exit Commitment and Exit Facility) and except to the extent the holders of Additional Environmental Claims are seeking to recover under any and all applicable insurance policies (and in all cases may not assert any Claims against Reorganized Debtors), all Persons or Entities who have held, hold or may hold any Claim against or Interest in the Debtors are, with respect to any such Claim or Interest, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Debtors or Reorganized Debtors or Plan Administrator or the Liquidation Trust or any of their properties, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or Entities and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants, or any property of any of the foregoing (collectively, the "<u>Protected Parties</u>"); (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, against any of the Protected Parties of any judgment, award, decree or order; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the Protected Parties; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to any of the Protected Parties; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.

31

11.10    <u>Preservation of Insurance</u>. This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtors (including, without limitation, their members, managers or officers) or any other person or entity. Likewise, the Plan and Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtors or the carriers.

11.11    <u>Cramdown</u>.  To the extent any Impaired Class of Claims entitled to vote on the Plan votes to reject the Plan, the Debtors reserves the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Class(es).

11.12    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey.

11.13    <u>Notices</u>.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to the Debtors:              Steven Grabell CEO
                                Shapes/Arch Holdings L.L.C.
                                9000 River Road
                                Delair, NJ  08110


with a copy to:                 Cozen O'Connor
                                LibertyView, Suite 300
                                457 Haddonfield Road
                                Cherry Hill, NJ  08002
                                Attention:  Mark E. Felger, Esquire


If to Reorganized Debtors:      Steven Grabell CEO
                                Shapes/Arch Holdings L.L.C.
                                9000 River Road
                                Delair, NJ  08110


with a copy to:                 Cozen O'Connor
                                LibertyView, Suite 300
                                457 Haddonfield Road
                                Cherry Hill, NJ  08002
                                Attention:  Mark E. Felger, Esquire

32

If to Plan Funders:                    Versa Capital Management, Inc.
                                       Cira Centre
                                       2929 Arch Street
                                       Philadelphia, PA  19104
                                       Attention:  Paul Halpern, Partner


with a copy to:                        Blank Rome LLP
                                       Joel C. Shapiro, Esquire
                                       Woodland Falls Corporate Park
                                       200 Lake Drive East, Suite 200
                                       Cherry Hill, NJ  08002


     11.14   <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

     11.15   <u>Section 1146 Exemption</u>.  Pursuant to Bankruptcy Code section 1146(a): (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under, in the furtherance of, or in connection with, the Plan, including, without limitation, the transfers to be made under Section 5.7 above, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, stock purchase agreements, stockholders agreements or stockholders rights agreements; deeds, bills of sale, or transfers of tangible property will not be subject to any stamp tax, or other similar tax or any tax held, to be a stamp tax or other similar tax by applicable law.

     11.16   <u>Severability</u>.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtors' option remain in full force and effect and not be deemed affected. However, the Debtors and the Plan Funders each reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

     11.17   <u>Headings</u>.  The headings used in this Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affect the provisions of the Plan.

CHERRY_HILL\442103\1  220718.000

 11.18 <u>Committee Survival</u>.  The Official Committee of Unsecured Creditors and their respective counsel and professionals shall be deemed terminated ten (10) days following the Effective Date of this Plan (without prejudice for the same to serve in any capacity authorized under the Plan Administration Agreement).

CHERRY_HILL\442103\1  220718.000

## <u>CONFIRMATION REQUEST</u>

The Debtors hereby requests confirmation of the Plan pursuant sections 1129(a) and (b) of the Bankruptcy Code.

DATED:  April 24, 2008                          Respectfully submitted,

Shapes/Arch Holdings L.L.C.

By: _____
Name:
Title:

DATED:  April 24, 2008

Shapes L.L.C.

By: _____
Name:
Title:

DATED:  April 24, 2008

Delair L.L.C.

By: _____
Name:
Title:

DATED:  April 24, 2008

Accu-Weld L.L.C.

By: _____
Name:
Title:

DATED:  April 24, 2008

Ultra L.L.C.

By: _____
Name:
Title:

CHERRY_HILL\442103\1  220718.000

## **SCHEDULE 4.5**

Schedule 4.5

**I.  Aluminum Shapes USEPA Lead Off-Site Environmental Liability CERCLA §106 Sites**

- <u>Ewan Superfund Site, Shamong Township, NJ</u>

    o   National Priorities List Site; EPA ID #NJD980761365
    o   USEPA Estimated Costs:
    o   Aluminum Shapes Estimated Percentage Share of Costs: 2.42% cap
    o   Natural Resource Damages: (complaint filed)[*]

- <u>D'Imperio Superfund Site, Hamilton Township, NJ</u>

    o   National Priorities List Site; EPA ID #NJD980529416
    o   USEPA Estimated Costs:
    o   Aluminum Shapes Estimated Percentage Share of Costs: 1.86% cap
    o   Natural Resource Damages:  (unknown at this time)

- <u>Swope Oil and Chemical Company Superfund Site, Pennsauken Township, NJ</u>

    o   National Priorities List Site;  EPA ID #NJD041743220
    o   USEPA Estimated Costs:
    o   Aluminum Shapes Estimated Percentage Share of Costs:
    o   Natural Resource Damages: (unknown at this time)

---

[*] This claim is a NJDEP Claim.

37

Schedule 4.5

**II. Aluminum Shapes USEPA Lead Off-Site Environmental Liability Non-CERCLA §106 Sites**

- Puchack Wellfield, Pennsauken Township, New Jersey*

  o National Priorities List Site;  EPA ID #NJD981084767
  o USEPA Estimated Costs – $17,000,000.00
  o Aluminum Shapes Estimated Percentage Share of Costs
  o Natural Resource Damages: (unknown at this time)

- Lightman Drum Company Site, Winslow Township, NJ
  o CERCLA ID #02-2000-2034
  o USEPA Estimated Costs:
  o Aluminum Shapes Estimated Percentage Share of Costs: 1.90%
  o Natural Resource Damages: (unknown at this time)

- Chemical Control Corporation, Elizabeth, NJ

  o National Priorities List Site; EPA ID #NJD000607481
  o USEPA Estimated Costs:
  o Aluminum Shapes Estimated Percentage Share of Costs: de minimis contributor; less than .0467% (believe Aluminum Shapes may have previously settled)
  o Natural Resource Damages: (unknown at this time)
  o (Liability may be resolved pursuant to a consent decree or settlement agreement and subject to confirmation)

- Berks Associates/Douglassville Disposal, Douglassville, PA

  o National Priorities List Site; CERCLIS ID #PAD002384865
  o USEPA Estimated Costs:
  o Aluminum Shapes Estimated Percentage Share of Costs: de minimis contributor; 0.15283% of past costs, 0.07803% future costs (Aluminum Shapes may have previously settled for $119,975.98 – awaiting confirmation)
  o Natural Resource Damages: (unknown at this time)
  o (Liability may be resolved pursuant to a consent decree or settlement agreement and subject to confirmation)

*        This site is also subject to NJDEP directives.

Schedule 4.5

**III.    Aluminum Shapes New Jersey Department of Environmental Protection Lead Off-Site Environmental Liabilities**

**- NONE -**

39

Schedule 4.5

## IV.    State Environmental Claims and Environmental Litigation

- 9000 River Road, NJDEP 1992 Directive and Notice to Insurers

  o    Directed Aluminum Shapes to identify and address all sources contributing to chromium contamination in the soil and groundwater at Aluminum Shapes' facility and to prevent migration of chromium contamination.
  o    Aluminum Shapes and NJDEP entered into a Memorandum of Agreement dated June 23, 1993 in which Aluminum Shapes agreed to undertake remedial activities and to pay 80% of the cost of performing those activities.  Remediation at the site is ongoing.

- Harris v. Advanced Supply Process Company, et al.; Superior Court of New Jersey, Camden County, Law Division, Docket No.: L-03815-02

  o    Class action lawsuit in which Aluminum Shapes is identified as a defendant.
  o    Plaintiffs allege that Aluminum Shapes was negligent in the operation of its metal plating business resulting in the discharge of hazardous substances to soil and groundwater.

- Pennsauken Solid Waste Management Authority, et al. v. Ward Sand Material Co., Inc., et al., Superior Court of New Jersey, Camden County, Law Division, Docket No.: L-13345-91

  o    Aluminum Shapes is identified as a defendant.
  o    Plaintiffs allege that defendants are responsible for the surface and groundwater contamination at the Pennsauken Landfill.

- Buzby Brothers Landfill, Voorhees, NJ

  o    Not a National Priorities List Site:  EPA ID #NJD000305524
  o    USEPA Estimated Costs:
  o    Aluminum Shapes Estimated Percentage Share of Costs: de minimis contributor (Aluminum Shapes may have previously settled for $60,000 subject to confirmation)
  o    Natural Resource Damages: (yes, complaint filed)
  o    (Liability may be resolved pursuant to a consent decree or settlement agreement, and subject to confirmation)

40

Schedule 8.1

### **List of Executory Contracts to be Assumed**

1.      To be provided.

41