## State of New Jersey

JON S. CORZINE  
Governor

OFFICE OF THE ATTORNEY GENERAL  
DEPARTMENT OF LAW AND PUBLIC SAFETY  
DIVISION OF LAW  
25 MARKET STREET  
PO BOX 093  
TRENTON, NJ 08625-0093

ANNE MILGRAM  
Attorney General

ROBERT J. GILSON  
Director

April 28, 2008

**Via Electronic Filing**
Honorable Gloria M. Burns, U.S.B.J.
United States Bankruptcy Court
United States Post Office and Courthouse
Post Office Box 2067
Camden, New Jersey 08101-2067

       Re:  In re Shapes/Arch Holdings L.L.C. et al.,
            Case Number 08-14631 (GMB)

Dear Judge Burns:

Please accept this objection submitted on behalf of the State of New Jersey, Department of Environmental Protection ("State" or "Department"), to the characterization of the "Department's claim" as $25,000 in the Motion of Arch Acquisition to Terminate the Debtor's Exclusive Period. At this point, having just heard of the month old bankruptcy for the first time, it is not known if the Department has a claim at all. The Department will search its records for unpaid bills for oversight costs and any other actual "claim" it may have.

However, the debtors are subject to the Industrial Site



Recovery Act ("ISRA"), N.J.S.A.13:1K-6 to -13, at their Camden site and that is not a claim at all, but a nondischargeable environmental obligation.  See Torwico Electronics, Inc. v. State of New Jersey, Department of Environmental Protection and Energy, 8 F.3d 146 (3d Cir. 1993), cert denied 114 S.Ct. 1576 (1994)(finding that obligations under orders or statutes that require performance rather than payment are not "claims" subject to discharge in bankruptcy and that Torwico's obligations to clean up its former site of operations are not only nondischargeable but "run with the waste.").  The debtors are subject to ISRA, a nondischargeable environmental obligation, for which there is no alternate payment remedy and, therefore, does not constitute a claim that can be discharged in bankruptcy.  The debtors must comply with ISRA.  The case law on this subject in the Third, Second, Fifth and Seventh Circuits has confirmed this statement time and time again.

As Your Honor knows, the Environmental Cleanup Responsibility Act ("ECRA"), now the Industrial Site Recovery Act ("ISRA"), a no fault, strict liability statute, was enacted in 1983 for the express purpose of preventing private businesses from forcing the public to bear the expense of cleaning up abandoned industrial sites contaminated with hazardous substances.  In order to achieve this goal, ISRA provides that as a precondition to the

closure, sale, or transfer of an industrial establishment, the owner or operator of the industrial establishment must either submit a cleanup plan to the Department detailing the measures necessary to detoxify the property, or obtain approval from the Department of a "negative declaration" in which the owner or operator certified that there has been no discharge of hazardous substances or wastes or that any such discharge has been cleaned up in accordance with procedures approved by the Department and there remain no hazardous substances or wastes on the property.  N.J.S.A. 13:1K-8.  "Identification of the polluter plays no part in the ECRA process, which imposes a 'self executing duty to remediate.'"  See Superior Air Products Co. v. N.L. Industries, Inc., 216 N.J. Super. 46, 62-65, 522 A.2d 1025, 1034-36 (App. Div. 1987), certif. dismissed, 126 N.J. 308, 598 A.2d 872 (1991).

"Industrial establishments" are those: (1) at which hazardous substances or wastes are present; and (2) which also have a designated reference number as determined by the North American Industry Classification System.  N.J.S.A. 13:1K-8.

Thus, in enacting ISRA, the Legislature recognized that the generation, handling, storage and disposal of hazardous substances and wastes pose an inherent risk of harm, and that the closing of operations and the transfer of real property where hazardous substances were used must be conducted in a rational and

April 28, 2008
Page 4

orderly way so as to mitigate potential risk. N.J.S.A. 13:1K-7 (1983). The Legislature found that the act's imposition of a cleanup plan approval before the transfer or upon the closing of an industrial establishment and the requirement to establish a funding source for the cleanup were in the general public interest by ensuring the discovery of contamination, and by assuring that funding for cleanup is set aside at the time it is available from a transfer or closing, and by assuring that contaminated property is not abandoned to the State for cleanup. N.J.S.A. 13:1K-7 (1993). ISRA is quite unlike other environmental regimes in that it uses market forces to bring about the reversal of environmental pollution. See Dixon Venture v. Dixon Crucible Company, 122 N.J. 228, 584 A.2d 797 (1991). Although ISRA does not impose an independent duty to clean up the property during a period of operation, the owner cannot walk away from the scene after deciding to cease operations without developing and implementing a cleanup plan. Id. Furthermore, ISRA was designed to impose upon both the owner and the operator of an industrial establishment a "self-executing duty to remediate" upon closure, sale or transfer of certain potentially polluted properties. See Superior Air Products Co. v. N.L. Industries, Inc., supra 216 N.J. Super. at 62-65, 522 A.2d 1025, 1034-36.

In order to facilitate the completion of commercial

April 28, 2008
Page 5

transactions, the Department has adopted a practice under which a property owner may proceed with the sale of a site before fulfilling its obligations under ISRA by entering into an Administrative Consent Order or a Remediation Agreement with the Department.  See Dixon Venture, supra, 122 N.J. at 233, 584 A.2d at 800.   Id. See Penn Terra Ltd. v. Dept. of Environmental Resources, 733 F.2d 267, 277 (3d Cir. 1984) (holding that, simply because an injunctive action will require the debtor to expend funds, the action is not one to enforce a money judgment; "in contemporary times, almost everything costs something").

    The debtors have not completed their remediation of their site and is attempting to "dump and run," leaving a contaminated site to the public to remediate.  The State of New Jersey, Department of Environmental Protection, respectfully requests that the Court not let this happen.

                              Respectfully submitted,

                              ANNE MILGRAM
                              ATTORNEY GENERAL OF NEW JERSEY


                        By: /S/Rachel Jeanne Lehr
                              Rachel Jeanne Lehr
                              Deputy Attorney General

Dated: April 28, 2008

April 28, 2008
Page 6