**HALPERIN BATTAGLIA RAICHT, LLP**
555 Madison Avenue, 9th Floor
New York, New York 10022
(212) 765-9100
(212) 765-0964 Facsimile
Alan D. Halperin, Esq.
Donna Lieberman, Esq.

**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street, P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
Ilana Volkov, Esq.
Warren A. Usatine, Esq.

Co-Counsel for the Official
Committee of Unsecured Creditors

| | |
|---|---|
| In the Matter of:<br><br>SHAPES/ARCH HOLDINGS, L.L.C., et al.,<br><br>Debtors. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE GLORIA M. BURNS<br>CASE NO. 08-14631(GMB)<br><br>(Jointly Administered)<br><br>Chapter 11<br><br>**APPLICATION IN SUPPORT OF THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER QUASHING THE SUBPOENA ISSUED BY ARCUS ASI FUNDING, LLC. PURSUANT TO FED. R. BANKR. P. 9016 AND FED. R. CIV. P. 45**<br><br>HEARING DATE AND TIME:<br>May 19, 2008 at 10:00 a.m.<br><br>**ORAL ARGUMENT REQUESTED** |

45765/0001-2605165v2

TO:   HONORABLE GLORIA M. BURNS
      United States Bankruptcy Judge

The Official Committee of Unsecured Creditors (the "Committee") of Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair, L.L.C., Accu-Weld, L.L.C., and Ultra L.L.C., the within debtors and debtors-in-possession (collectively, the "Debtors"), by and through its attorneys, in support of its motion for an Order quashing the Subpoena issued by Versa Capital Management, Inc. ("Versa")/Arcus ASI Funding, LLC ("Arcus") to the Committee (the "Committee Subpoena"), respectfully states as follows:

## I.    INTRODUCTION

1.    On April 23, 2008, at approximately 4:30 p.m., almost one week after the parties attended a hearing before this Court discussing discovery in connection with the Final DIP Hearing (as defined below) and after the parties had agreed on and scheduled depositions of representatives of the Debtors, Phoenix Management Services, Inc. ("Phoenix") and Versa/Arcus, Versa/Arcus served the Committee Subpoena. The motivation for the issuance of the Committee Subpoena is readily transparent, to wit, it is nothing more than a bad faith "tit for tat" attempt to punish the Committee for the subpoena it properly served on Versa/Arcus. The Committee Subpoena serves absolutely no legitimate purpose and illustrates Arcus' frivolous tactics to frustrate the Committee's good faith efforts to protect its constituents and derail the highly prejudicial and defective program concocted by Arcus and the Debtors in these cases.

2.    As this Court is well aware, immediately upon its appointment, the Committee was confronted with the Herculean task of getting up to speed and addressing a bevy of motions and other pleadings that were intended to lock-up these cases, deliver the Debtors' businesses to Arcus without any competitive process and preclude unsecured creditors from any meaningful participation in these cases. Against a stacked deck and well funded adversaries, the Committee

2

has labored mightily to level the playing field and remind the Debtors and Versa/Arcus of their fiduciary responsibilities and the requirements of the Bankruptcy Code.

3.  As these cases started showing signs of shifting towards that more level playing field, Arcus served the Committee Subpoena. As Arcus is well aware, the Committee did not participate in any way in the Arcus negotiations with the Debtors and has no historical knowledge of what transpired – which is precisely why the Committee needs discovery from the Debtors and Arcus. The Committee Subpoena serves no legitimate purpose, reeks of bad faith and, accordingly, should be quashed.

## II.    BACKGROUND

4.  On March 16, 2008 (the "Filing Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). Since the Filing Date, the Debtors have been in possession of their assets and continued in the management of their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.  On March 31, 2008, the Office of the United States Trustee appointed the Committee.

6.  Before the Filing Date, the Debtors became indebted to The CIT Group/Business Credit, Inc., as agent, JP Morgan Chase Bank N.A. and Textron Financial Corporation (collectively, "CIT") pursuant to the terms of a financing agreement dated December 30, 2003, as amended (the "Pre-Petition Financing Agreement"). The Pre-Petition Financing Agreement made available to the Debtors a maximum total credit facility of $75.7 million in the form of revolving loans, term loans and letters of credit.

7.  The Debtors estimate that the principal amount of their pre-petition indebtedness to CIT totals approximately $59.62 million as of the Filing Date. With the filing of the Amended

3

Disclosure Statement, the Debtors now believe that they have approximately $38 million in trade debt ($7 million more than identified in the original Disclosure Statement and, admittedly, exclusive of as yet unliquidated claims which could make the total of Class 5 claims "materially higher").

8. According to the Debtors, before the Filing Date, they encountered a severe liquidity crisis which CIT was unwilling to fund pursuant to an overadvance. As a result, the Debtors turned to Versa, a hedge fund based in Philadelphia and known to the Debtors' management, to discuss Versa's interest in providing financing for the Debtors' business and operations.

9. In exchange for a commitment from Arcus, a Versa affiliate, to lend $25,000,000 to the Debtors during a chapter 11 proceeding, a very small part of which would be converted to equity upon emergence from bankruptcy, Arcus became a manager of Shapes/Arch with 79.9% of the voting rights.

10. On the Filing Date, the Debtors filed various "first day" motions, including a motion to obtain post-petition financing (the "DIP Motion") from CIT in the aggregate principal amount of $60,000,000 ("CIT DIP Facility") and from Arcus in the amount of $25,000,000 (the "Arcus DIP Facility"). Contemporaneously, the Debtors filed a Disclosure Statement and Plan of Reorganization, amended on April 24, 2008, pursuant to which Arcus serves as the plan funder (the "Debtors/Arcus Plan").

11. On March 18, 2008, the Court entered two orders granting interim approval of both the CIT DIP Facility and the Arcus DIP Facility (the "Interim DIP Orders"). Since then, the Court has entered Bridge Orders extending the DIP financing approved in the Interim DIP Orders to the new hearing date of May 1, 2008 (the "Final DIP Hearing").

12. On April 4, 2008, the Committee served a Subpoena on the Debtors pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure requesting the production of documents related primarily to the DIP Motion and the Debtors/Arcus Plan (the "Debtor Subpoena").

13. On April 16, 2008, the Committee filed objections to the entry of final orders approving the CIT DIP Facility and the Arcus DIP Facility (the "DIP Objections"). Additionally, on April 16, 2008, the Committee filed an objection to the Debtor's proposed Disclosure Statement (the "Disclosure Statement Objection," which together with the DIP Objections are referred to collectively as the "Objections").

14. On April 17, 2008, at a hearing before this Court, the issue of discovery was addressed, the parties informed the Court of the depositions and document requests that were planned and the Court established a discovery schedule. At no time during that hearing did Arcus indicate that it intended to issue the Committee Subpoena or otherwise seek discovery from the Committee.

15. On April 18, 2008, in connection with the Final DIP Hearing, the Committee served a subpoena in a bankruptcy proceeding on Versa/Arcus requesting the deposition of Paul Halpern, a Partner at Versa ("Halpern"), and the production of documents (the "Versa Subpoena"). As already noted, prior to the issuance of the Versa Subpoena, Versa/Arcus already had agreed to produce Halpern for a deposition and was well aware of the Committee's desire to obtain documents relating to, <u>inter</u> <u>alia</u>, the DIP Motion and the Debtors/Arcus Plan.

16. As set forth above, on the close of business on April 23, 2008, Arcus served the Committee Subpoena seeking, among other things, documents supporting the Objections. The Committee Subpoena seeks the production of documents by April 28, 2008, at 5:00 p.m. A true copy of the Committee Subpoena is attached as **Exhibit A**.

5

17. The Committee is deposing Steven Grabell of the Debtors on April 28, 2008 and is scheduled to take the depositions of Halpern and Vincent Colistra of Phoenix on April 29, 2008.

18. A hearing on the final approval of the DIP Motion and adequacy of the Debtors' proposed Amended Disclosure Statement is scheduled for May 1, 2008 (the "May 1 Hearing").

### III. RELIEF REQUESTED AND BASIS THERFOR

19. Rule 45(c)(1) of the Federal Rules of Civil Procedure, which is made applicable to this case by Fed. R. Bankr. P. 9016, provides that a person or an attorney "responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing the undue burden or expense subject to that subpoena." Fed. R. Civ. P. 45(c)(1). Moreover, Rule 45(3)(A) provides, in pertinent part, as follows:

> (3) *Quashing or Modifying a Subpoena*.
>
> (A) *When Required*. On timely motion, the issuing court must quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3)(A)(i) & (iv).

20. The Practice Commentaries to Fed. R. Civ. P. 45 warn issuers of subpoenas "that they must be alert at every juncture to use the subpoena reasonably, with the court to determine what's reasonable on a case-by-case basis whenever the issue is brought to the court's attention." See Practice Commentaries C45-22 to Rule 45, 28 U.S.C.A. Rule 45 (Pocket Part 2007).

21. In determining whether a subpoena subjects a person to undue burden, courts will consider "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described

6

and the burden imposed. In re Summit Global Logistics, 2008 WL 1446722 at *3 (Bankr. D.N.J. 2008) (citing Concorde Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996)). Another consideration is the value of the information to the issuing party in comparison to the burden imposed on the subpoenaed party." Summit Global 2008 WL 1446722 at *3 (citing Travelers Indem. Co. v. Metro Life Ins. Co., 228 F.RD. 111, 113 (D. Conn. 2005)).

22. The Practice Commentaries to Rule 45 further note that the "undue burden" standard of Rule 45(c)(3)(A)(iv) is a "catch all category that enables the court to grant the motion to quash or modify in any other situation which it finds, *sui generis*, what it believes to be an 'undue burden' imposed by the subpoena." Practice Commentaries, C45-22. Moreover, if it is apparent that the subpoena has been served to abuse or harass a party, the court has authority to quash the subpoena regardless of the burden imposed. See e.g., In re Blackstone Partners, LP, 2005 WL 156050 *2 (S.D.N.Y. 2005).

23. Despite the fact that the Committee filed the Objections on the morning of April 16, 2008, Arcus inexplicably waited until the end of business on April 23, 2008 to issue the Committee Subpoena and demand the production of documents by April 28, 2008 at 5:00 p.m., only three (3) business days later. No prior notice was provided that the Committee Subpoena was forthcoming. In fact, despite having read the Objections the day before, Arcus made no mention of <u>any</u> desire to seek discovery from the Committee at the April 17th hearing, where counsel to the Committee specifically discussed the issues of discovery from the Debtors and Versa. See April 17, 2008 Transcript of Hearing, page 83, lines 4-6 attached as **Exhibit B**.

24. Rather, Arcus deliberately waited to serve the Committee Subpoena until one (1) week before the May 1 Hearing, knowing full well that the Committee's professionals would be busy (a) reviewing documents produced by the Debtors and Versa, (b) preparing for depositions

7

that were scheduled to be taken by the Committee on April 28th and 29th, (c) reviewing the Debtors' amended Plan and Disclosure Statement filed on April 24, 2008 and (d) preparing for the May 1 Hearing.

25.    The Committee is unable to conceive any relevant or reasonable purpose behind the Committee Subpoena.  The Committee has no special knowledge regarding the Debtors' proposed post-petition financing or the Debtors/Arcus Plan, which were all negotiated and prepared well before the commencement of these cases and the appointment of the Committee.  The Committee has no documents or facts in its possession other than those which are already publicly filed with the Bankruptcy Court or in the Debtors' hands as a result of the Debtors being the recipients of all known expressions of interest from other parties.

26.    The ill-conceived motive behind the late-served Committee Subpoena is unmistakable.  Arcus has sought to intimidate the Committee and obfuscate the record in these cases by initiating a fishing expedition against the Committee with no purpose other than to harass the Committee for filing the Objections and serving the Versa Subpoena, to distract the Committee's attention from preparing for the May 1 Hearing and revealing to the Court how the Debtors and Versa/Arcus plotted to undermine a fair and legitimate Chapter 11 process and increase the financial burdens on these estates.  Indeed, Arcus' scorched earth litigation tactic was underscored by its counsel's April 25, 2008 letter to counsel for the Committee threatening not to produce documents requested in the Versa Subpoena unless the Committee commits to produce documents in response to the Committee Subpoena.  A copy of that letter is attached as **Exhibit C**.  The Court should not countenance Arcus' bad faith and harassing scheme and, instead, should quash the Committee Subpoena.

8

27. On a final note, it is extremely ironic that Arcus wants discovery from the Committee regarding discussions the Committee has had with other interested parties while at the same time (1) giving the Committee a late and deficient response to the Versa Subpoena regarding its negotiations with the Debtors, and (2) promoting a program before the Court, which except for the half-hearted "bone" found in the recent amended Debtors/Arcus Plan, is totally closed to competitive bidding, making the conversations with other suitors irrelevant.

## CONCLUSION

For all the reasons set forth herein, the Committee respectfully requests that the Court quash the Committee Subpoena and grant such other relief as the Court deems just and appropriate under the circumstances.

    Respectfully submitted,

    **HALPERIN BATTAGLIA RAICHT, LLP**
    Co-counsel to the Official Committee of
    Unsecured Creditors

    By: */s/ Alan D. Halperin*
         Alan D. Halperin, Esq.
         Donna H. Lieberman, Esq.

    **COLE, SCHOTZ, MEISEL,**
    **FORMAN & LEONARD, P.A.**
    Co-Counsel to the Official Committee of
    Unsecured Creditors

    By: */s/ Michael D. Sirota*
         Michael D. Sirota
         Ilana Volkov
         Warren A. Usatine

DATED: April 28, 2008

45765/0001-2605165v2