# EXHIBIT D

# SUPPLEMENTAL AGREEMENT BETWEEN THE PARTIES

This AGREEMENT, is made and entered into as of March 16, 2008 by and among Shapes/Arch Holdings L.L.C., a New Jersey limited liability company (the "*Company*"), BEN LLC, a New Jersey limited liability company ("*BLLC*"), Steven Fleisher, Steven Grabell, A. Jerome Grossman and Frank Kessler, each individually and as a Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of BEN LLC dated as of March 16, 2008 (each an "*Existing Holder*" and collectively referred to as the "*Existing Holders*"), and Arcus ASI, Inc., a Delaware corporation ("*Arcus*").

## BACKGROUND

A.  On February 22, 2008, Versa Capital Management, Inc., a Pennsylvania corporation (together with its affiliates, "*Versa*") entered into a Letter of Intent ("*LOI*") with the Company, BLLC and the Existing Holders pursuant to which the parties thereto agreed to certain terms and conditions of a business transaction, the terms of which have changed since the date of such LOI. Arcus is an affiliate of Versa.

B.  Effective as of the date hereof and in connection herewith, BLLC has entered into an Amended and Restated Operating Agreement for the Company (the "*New Company Operating Agreement*"), which among other things, appoints Arcus and BLLC as the managers of the Company on the terms therein (the execution and delivery of the New Company Operating Agreement constituting the "*Transaction*"). The New Company Operating Agreement provides that Arcus shall hold 79.9% of the voting percentage and that BLLC shall hold 20.1% of the voting percentage in connection with the management of the Company.

C.  Following the Transaction, BLLC will continue to own 100% of the membership interests of the Company.

D.  Each of Shapes L.L.C., a New Jersey limited liability company ("*Shapes*"), Delair L.L.C., a New Jersey limited liability company ("*Delair*"), Ultra L.L.C., a New Jersey limited liability company ("*Ultra*"), Accu-Weld L.L.C., a Pennsylvania limited liability company are a wholly-owned subsidiary of the Company (collectively, the "*Subsidiaries*").

E.  In connection with the Transaction, an affiliate of Versa is negotiating to provide a term debt facility to the Company in an amount not less than $15 million, in order to maintain or restore liquidity.

F.  The parties to this Agreement desire to set forth certain rights and obligations herein in consideration for and relating to the Transaction.

## AGREEMENT

NOW THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, intending to be legally bound hereby, the parties hereto agree as follows:

1. **Resignation.** As a condition of the consummation of the Transaction, each of Frank Kessler ("*Kessler*") and A. Jerome Grossman ("*Grossman*") hereby, effective immediately, resign from all of their respective positions (including without limitation as an employee) in the Company and the Subsidiaries.

2. **COBRA Coverage.** Each of Kessler Grossman hereby elect to continue their health insurance coverage pursuant to and in accordance with the Consolidated Omnibus Budget Reconciliation Act of 1986 ("*COBRA*"). Arcus shall pay (or cause the Company to pay) the premiums for such COBRA coverage for each of Kessler and Grossman from the date of such election through December 31, 2008.

3. **Company Vehicles.** Each of Kessler and Grossman has elected to return to the Company each of their respective Company provided automobiles (the "*Company Vehicles*") by delivering to the Company possession of the Company Vehicles and all keys thereto. Arcus shall indemnify Kessler and/or Grossman (or cause the Company to indemnify), respectively, from further financial liability relating to the outstanding obligations under the respective automobile leases for each such Company Vehicle following the date on which the respective Company Vehicles are returned to the Company in accordance with this Section 3.

4. **Fees and Expenses.** Upon delivery of bona fide invoices to Arcus, Arcus shall either pay such invoices directly or reimburse Kessler and Grossman an amount up to $60,000 on account of the fees and expenses that Kessler and Grossman incurred in connection herewith.

5. **Co-Investment Right.** In connection with the transactions contemplated hereby and in consideration for the execution and delivery of the New Company Operating Agreement, BLLC is hereby granted the right to co-invest in up to 10% of all, but not less than all, of the investment by Arcus affiliate, Arcus ASI Funding, LLC ("*Arcus Funding*") in the Company (which right shall be deemed assigned on a pro-rata basis to the members of BLLC (based on their respective percentage interests in BLLC), effective upon the Effective Time), on the same terms and conditions as Arcus Funding, which right shall be exercisable within thirty (30) days after the initial funding/closing by Arcus Funding by providing to Arcus written notice of the election by the electing members of BLLC (collectively, the "Electing Members") to participate and the execution of a subscription agreement, as well as any other documents required by Arcus Funding in connection therewith, by such Electing Members within such 30-day period.

6. **Bankruptcy Matters.**

6.1. The Existing Holders, for themselves and on behalf of the members of BLLC, shall retain any and all unsecured claims against the Company and the Subsidiaries existing prior to the date hereof (the "*Existing Claims*"), except that the Existing Holders will not retain any claims, arising from their respective rights as holders of any direct or indirect equity interest in the Company or of its direct and/or indirect subsidiaries.

6.2. For a period of one (1) year following the date of this Agreement, the Existing Holders, for themselves and on behalf of the members of BLLC, and BLLC shall

2

not, directly or indirectly: (i) support, vote in favor of, or participate in any plan of reorganization or other restructuring relating to any bankruptcy filing by the Company and/or the Subsidiaries (a "*Plan*") that is not supported by Versa or its affiliates, (ii) advocate against any Plan supported by Versa or its affiliates in connection with any bankruptcy filing by the Company and/or the Subsidiaries, or (iii) unless consented to by Arcus in writing, participate in any sale process under Section 363 of the Bankruptcy Code relating to the Company and/or the Subsidiaries.

        6.3.    The Existing Holders, for themselves and on behalf of the members of BLLC, shall not take any action in any bankruptcy, insolvency or other similar judicial proceeding or restructuring relating to the Company and/or the Subsidiaries other than in connection with proving any Existing Claims and defending any and all actions that may be brought against the Existing Holders by third parties.

        6.4.    Each Existing Holder hereby constitutes and appoints Versa, and any affiliate of Versa, as his true and lawful agent and attorney-in-fact of the Existing Holders, with full power of substitution and resubstitution, in whole or in part, in the name of each such Existing Holder, but on behalf of and for the benefit of Versa and its affiliates and its successors and assigns, and grants to Versa an irrevocable proxy to vote or otherwise act with respect to the voting rights of each Existing Holder to the same extent and with the same effect as such Existing Holder might or could do to the extent allowed by applicable law, relating to the approval of any Plan and authorizes Versa to vote, as a proxy for the Existing Holders, in favor of any Plan supported by Versa or its affiliates, provided that such Plan treats any and all Existing Claims held by the Existing Holders no less favorably than similarly situated unsecured claims.

        7.    <u>Representations and Warranties of BLLC and the Existing Holders</u>. BLLC, jointly and severally with the Existing Holders (but severally as between the Existing Holders) represent and warrant that:

        7.1.    Prior to the date hereof, the Existing Holders and the members of BLLC have duly executed and delivered that certain Second Amended and Restated Operating Agreement, dated as of March 16, 2008, attached hereto as Exhibit "A" (the "*New BLLC Operating Agreement*").

        7.2.    The Existing Holders are all of the duly appointed Voting Trustees for the members of BLLC pursuant to the terms of the New BLLC Operating Agreement. The rights and privileges of the membership interest of BLLC are as stated in the New BLLC Operating Agreement, and the New BLLC Operating Agreement has not been amended or revoked and remains in full force and effect. Except for the New BLLC Agreement, BLLC, the Existing Holders and the members of BLLC are not a party or subject to any agreement or understanding, and there is no agreement or understanding between any persons and/or entities, which affects or relates to the voting or giving of written consents with respect to any matter concerning BLLC.

        7.3.    BLLC has the limited liability company power and authority to execute and deliver this Agreement and to consummate the other transactions contemplated

3

hereby. All limited liability company action on the part of the BLLC and its officers, managers and members necessary for the authorization, execution and delivery of this Agreement and any of the other agreements required to be executed in connection therewith and the performance of all obligations of BLLC, hereunder and thereunder, has been taken. The Managers of BLLC are Steven Grabell and Daniel Carpey. The Managers of BLLC have approved this Agreement and the transactions contemplated hereby and such approval is the only vote, approval or consent of BLLC that is necessary to approve and adopt this Agreement and the transactions contemplated hereby.

7.4. The Company has the limited liability company power and authority to execute and deliver this Agreement to consummate the other transactions contemplated hereby. All limited liability company action on the part of the Company and its officers, managers and members necessary for the authorization, execution and delivery of this Agreement and any of the other agreements required to be executed in connection therewith and the performance of all obligations of the Company, hereunder and thereunder, has been taken. The Managers of the Company are Steven Grabell and Steven Fleisher. The Managers of the Company have approved this Agreement and the transactions contemplated hereby and such approval is the only vote, approval or consent of BLLC that is necessary to approve and adopt this Agreement and the transactions contemplated hereby.

7.5. This Agreement has been duly and validly executed and delivered by the Company, BLLC and the Existing Holders, and constitutes a valid and legally binding agreement of the Company, BLLC and each of the Existing Holders, enforceable in accordance with its terms, except to the extent such enforceability may be subject to bankruptcy, insolvency or fraudulent transfer laws, relating to or limiting the enforcement of creditors' rights generally.

8. Representations and Warranties of Arcus. Arcus represents and warrants that:

8.1. Arcus has the corporate power and authority to execute and deliver this Agreement and to consummate the other transactions contemplated hereby. All corporate action on the part of Arcus and its officers, directors and shareholder necessary for the authorization, execution and delivery of this Agreement and any of the other agreements required to be executed in connection therewith and the performance of all obligations of Arcus, hereunder and thereunder, has been taken.

8.2. This Agreement has been duly and validly executed and delivered by Arcus, and constitutes a valid and legally binding agreement of Arcus, enforceable in accordance with its terms, except to the extent such enforceability may be subject to bankruptcy, insolvency or fraudulent transfer laws, relating to or limiting the enforcement of creditors' rights generally.

9. Cooperation on Governmental and Regulatory Matters. Following the date hereof, the Company and the Existing Holders shall cooperate reasonably with each other concerning governmental or regulatory related matters (including tax related matters), including, with respect to any inquiries from governmental or regulatory authorities (including tax authorities), and shall provide access to any books and records relating to any such inquiry.

4

10. <u>Certain Tax Matters</u>. The parties hereto acknowledge that as of the date hereof 100% of the membership interests in the Company are owned by BLLC, and that the Company is an entity disregarded as separate from its owner for federal income tax purposes. It is the intent of the parties hereto for federal income tax purposes that the termination of ownership of 100% of the membership interests in the Company by BLLC followed by the acquisition of 100% of the membership interests in the Company by an affiliate of Arcus pursuant to the joint plan of reorganization filed by the Company and its subsidiaries in the United States Bankruptcy Court for the District of New Jersey constitute a sale or exchange of assets and liabilities of BLLC within the meaning of Section 1001 of the Code. The parties will agree on a purchase price allocation within 60 days after closing of the transaction and shall report and file tax returns (including IRS Form 8594) in all respects and for all purposes consistently with this Section 10 and such allocation.

11. <u>Intended Third-Party Beneficiary</u>. Versa, along with any and all of its affiliates or subsidiaries involved in the Transaction, are intended beneficiaries of all rights of (or otherwise in favor of) the Company, the Subsidiaries and Arcus and its affiliates, and shall have the right to enforce any and all rights contained herein on behalf of itself, Arcus and its affiliates and/or the Company.

12. <u>Further Assurances</u>. The parties shall cooperate reasonably with each other and with their respective representatives in connection with any steps required to be taken as part of their respective obligations under this Agreement, and shall: (i) furnish upon request to each other such further information; (ii) execute and deliver to each other such documents; and (iii) do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement.

13. <u>Enforcement of Agreement</u>. BLLC, the Company, the Existing Holders and Arcus acknowledge and agree that the other parties would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that any breach of this Agreement may not be adequately compensated in all cases by monetary damages alone. Accordingly, in addition to any other right or remedy to which a non-breaching party and its affiliates may be entitled, at law or in equity, such non-breaching party and its affiliates shall be entitled to enforce any provision of this Agreement by a decree of specific performance and to temporary, preliminary and permanent injunctive relief to prevent breaches or threatened breaches of any of the provisions of this Agreement, without posting any bond or other undertaking.

14. <u>Unwind</u>.

14.1. In the event that the an affiliate of Versa does not execute and deliver to the Company a definitive credit agreement providing for a term loan of at least $15,000,000 (the funding of all or a portion of which shall be subject to the conditions in such definitive credit agreement, including without limitation bankruptcy court approval) ("Versa Credit Agreement") on or before the 30th day following the date of this Agreement, upon the written request of a majority of the Existing Holders (provided that such approval shall include at least one of Steven Grabell and Steven Fleisher, and both of Kessler and Grossman), Arcus shall promptly resign as a Manager of the Company (the *"Resignation Option"*).

14.2. Upon an exercise by the Existing Holders of the Resignation Option, as described in Section 14.1 above, (i) the parties hereto agree that obligations hereunder terminate and shall be of no further force or effect and (ii) Kessler and Grossman shall be reappointed to the officer positions they held with the Company and its Subsidiaries, as applicable, prior to the effectiveness of the resignations tendered by Kessler and Grossman in connection herewith.

15. <u>Miscellaneous</u>.

15.1. Arcus may waive any covenant or obligation due to be performed for the benefit of Arcus or its affiliates hereunder, without the consent of any other party; provided that such waiver is in writing and signed by Arcus. Notwithstanding the foregoing, the failure of any party hereto to insist upon strict performance of a covenant hereunder or of any obligation hereunder or to exercise any right or remedy hereunder, regardless of how long such failure shall continue, shall not be a waiver of such party's right to demand strict compliance therewith in the future unless such waiver is in writing, is signed by the party giving the waiver and such future performance is specifically stipulated as being waived. No amendment of any provision of this Agreement shall be valid unless the same be in writing and signed by all parties hereto.

15.2. No party to this Agreement may assign any rights or obligations hereunder without first obtaining the prior written consent all other parties hereto, which may be withheld with or without reason, except that Arcus may assign any of its rights and delegate any of its obligations under this Agreement to any affiliate of Arcus provided such assignee agrees in writing to be bound by the obligations of Arcus under the Agreement. Subject to the preceding sentence, this Agreement will apply to, be binding in all respects upon and inure to the benefit of the successors and permitted assigns of the parties. Nothing expressed or referred to in this Agreement will be construed to give any person other than the parties to this Agreement any legal or equitable right, remedy or claim under or with respect to this Agreement or any provision of this Agreement, except such rights as shall inure to a successor or permitted assignee pursuant to this Section 15.2.

15.3. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

15.4. This Agreement may be executed in one or more counterparts (including by means of facsimile or pdf), each of which shall be deemed an original but all which together shall constitute one and the same instrument.

15.5. This Agreement contains the entire understanding among the parties and supersedes any prior understandings and agreements between them, including without limitation the LOI, respecting the subject matter hereof.

15.6. This Agreement shall be governed and construed in accordance with the domestic laws of the State of New Jersey without giving effect to any choice or conflict

6

of law provision or rule that would cause the application of any laws other than those of the State of New Jersey.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

| ARCUS ASI, INC. | SHAPES/ARCH HOLDINGS L.L.C. |
|---|---|
| By: _/s/ J. Segall_____ | By: _____ |
| Name: | Name: |
| Title: | Title: |

BEN LLC

By: _____
   Name:
   Title:

[SIGNATURE PAGE TO SUPPLEMENTAL AGREEMENT AMONG THE PARTIES]

*EXECUTION COPY*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**ARCUS ASI, INC.**

By: _____
   Name:
   Title:

**SHAPES/ARCH HOLDINGS L.L.C.**

By: _____
   Name: Steven Grabell
   Title: CEO

**BEN LLC**

By: _____
   Name: Steven Grabell
   Title: Manager


[SIGNATURE PAGE TO SUPPLEMENTAL AGREEMENT AMONG THE PARTIES]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**EXISTING HOLDERS:**

*/s/ Frank Kessler*

By:  Frank Kessler, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated March 16, 2008.

By:  Steven Fleisher, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated March 16, 2008.

*/s/ A. Jerome Grossman*

By:  A. Jerome Grossman, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated March 16, 2008.

By:  Steven Grabell, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated March 16, 2008.

ACKNOWLEDGED AND AGREED, for purposes of Section 10 hereof:

VERSA CAPITAL MANAGEMENT, INC.

By: _____
      Name:  Paul Halpern
      Title:   Partner

[SIGNATURE PAGE TO SUPPLEMENTAL AGREEMENT AMONG THE PARTIES]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**EXISTING HOLDERS:**

By: _____
Frank Kessler, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated as of March 16, 2008.

By: _____
Steven Fleisher, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated March 16, 2008.

By: _____
A. Jerome Grossman, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated as of March 16, 2008.

By: _____
Steven Grabell, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated as of March 16, 2008.

ACKNOWLEDGED AND AGREED, for purposes of Section 11 hereof:

**VERSA CAPITAL MANAGEMENT, INC.**

By: _____
    Name: Paul Halpern
    Title: Partner

**[SIGNATURE PAGE TO SUPPLEMENTAL AGREEMENT AMONG THE PARTIES]**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**EXISTING HOLDERS:**

By: _____
Frank Kessler, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated as of March 16, 2008.

By: _____
Steven Fleisher, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated March 16, 2008.

By: _____
A. Jerome Grossman, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated as of March 16, 2008.

By: _____
Steven Grabell, for himself and as Voting Trustee for Linda Fleisher, Cecelia Kessler and Ellen Grossman under that certain Second Amended and Restated Operating Agreement of Ben LLC dated as of March 16, 2008.

ACKNOWLEDGED AND AGREED, for purposes of
Section 11 hereof:

VERSA CAPITAL MANAGEMENT, INC.

By: _____
Name: ~~Paul Halpern~~  GL SEGALL
Title: ~~Partner~~  PRESIDENT

[SIGNATURE PAGE TO SUPPLEMENTAL AGREEMENT AMONG THE PARTIES]

**Exhibit "A"**

**New BLLC Operating Agreement**

*Attached.*

SEE TAB 2

FOR SECOND AMENDED AND RESTATED

OPERATING AGREEMENT OF BLLC