Mark E. Felger Esquire
Jerrold N. Poslusny, Jr., Esquire
Cozen O'Connor
Liberty View, Suite 300
457 Haddonfield Road
Cherry Hill, New Jersey  08002 (856) 910-5000

Attorneys for the Debtor and Debtors-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | : Case No.:  08-14631 (GMB) |
|  | : (Jointly Administered) |
|  | : |
| Shapes/Arch Holdings L.L.C., *et al*. | : Chapter 11 |
|  | : |
| Debtors. | : |
|  | : |

## DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

COZEN O'CONNOR
Mark E. Felger Esquire
Jerrold N. Poslusny, Jr., Esquire
Liberty View, Suite 300
457 Haddonfield Road
Cherry Hill, New Jersey  08002 (856) 910-5000

Attorneys for the Debtor and Debtors-in-Possession

Dated:  May 12, 2008

# TABLE OF CONTENTS

**PAGE**

ARTICLE I DEFINITIONS ................................................................................................ 1
  1.1    Scope of Definitions ................................................................................. 1

ARTICLE II METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND
GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND INTERESTS .......... 11
  2.1    General Rules of Classification ...................................................... 11
  2.2    Classification of Claims and Interests................................................ 11
  2.3    Bar Date for Administrative Claims .................................................. 12
  2.4    Bar Date for Fee Claims .................................................................... 12
  2.5    Intercompany Claims .......................................................................... 12
  2.6    Administrative Consolidation ............................................................ 12

ARTICLE III TREATMENT OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE
PLAN ................................................................................................................................ 13
  3.1    Administrative Claims ........................................................................ 13
  3.2    Fee Claims .......................................................................................... 13
  3.3    Priority Tax Claims ............................................................................ 13
  3.4    Class 1 Other Priority Claims ............................................................ 13
  3.5    Class 2 Secured Real Estate Claims................................................... 13
  3.6    Class 3 Arch Acquisition DIP Claim ................................................ 14
  3.7    Class 4 CIT DIP Claim ...................................................................... 14
  3.8    Class 8 Miscellaneous Secured Claims.............................................. 14
  3.9    Class 12 Interests ............................................................................... 15
  3.10   Reservation of Rights......................................................................... 15

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS IMPAIRED UNDER THE
PLAN ................................................................................................................................ 15
  4.1    Class 5 Claims.................................................................................... 15
  4.2    Class 6 Claims.................................................................................... 15
  4.3    Class 7 Collateralized Insurance Program Claims ............................ 16
  4.4    Class 9 Environmental Claims............................................................ 16
  4.5    Class 10 General Unsecured Claims................................................... 16
  4.6    Class 11 Interests ............................................................................... 16
  4.7    Reservation of Rights......................................................................... 16

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 17
  5.1    Corporate Action ................................................................................ 17
  5.2    Liquidation Trust ............................................................................... 17
  5.3    Class 10 Liquidation Trustee ............................................................ 17
  5.4    Exit Facility........................................................................................ 18
  5.5    Plan Funding Commitment ................................................................ 18
  5.6    Permitted Investments........................................................................ 19

i

5.7     Revesting.................................................................................................... 19
5.8     Transfer of Real Estate.............................................................................. 19
5.9     Reorganized Debtors.................................................................................. 19

ARTICLE VI RELEASES ....................................................................................... 20
6.1     Application for Approval of Settlement .................................................... 20
6.2     General Release ......................................................................................... 20
6.3     Debtors Injunction .................................................................................... 21
6.4     Release Consideration............................................................................... 21
6.5     No Admissions........................................................................................... 21

ARTICLE VII DISTRIBUTIONS UNDER THE PLAN .......................................... 21
7.1     Distributions for Claims Allowed as of the Effective Date ...................... 21
7.2     Distributions for Allowed Class 10 Claims .............................................. 21
7.3     Delivery of Distributions .......................................................................... 22
7.4     Reserve Accounts....................................................................................... 22
7.5     Reserves for Disputed Administrative, Fee, Priority Tax, Other Priority Claims and
        Cure Claims ............................................................................................... 22
7.6     Reserves for Disputed General Unsecured Claims.................................... 22
7.7     Other Distribution Guidelines................................................................... 23
7.8     Claims Objection Deadline ....................................................................... 23
7.9     Settlement of Disputed Claims ................................................................. 23
7.10    Unclaimed Property ................................................................................... 24
7.11    Release and Preservation of Certain Liens ............................................... 24
7.12    Withholding Taxes..................................................................................... 24
7.13    Fractional Cents ........................................................................................ 24
7.14    Payments of Less than Twenty-Five Dollars ........................................... 24

ARTICLE VIII UNEXPIRED LEASES AND EXECUTORY CONTRACTS........................... 25
8.1     Rejection of All Agreements ..................................................................... 25
8.2     Bar Date for Cure Claims ......................................................................... 25
8.3     Insurance Policies ..................................................................................... 25
8.4     Claims for Rejection Damages .................................................................. 25

ARTICLE IX CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ................ 26
9.1     Conditions to Confirmation of the Plan.................................................... 26
9.2     Conditions to Effectiveness of the Plan .................................................... 27
9.3     Waiver of Conditions to Confirmation or Effective Date.......................... 27

ARTICLE X RETENTION OF JURISDICTION ........................................................ 27

ARTICLE XI MISCELLANEOUS PROVISIONS ..................................................... 29
11.1    Pre-Confirmation Modification ................................................................ 29
11.2    Post-Confirmation Immaterial Modification ............................................ 30
11.3    Post-Confirmation Material Modification ................................................. 30
11.4    Withdrawal or Revocation of the Plan....................................................... 30
11.5    Parties shall Use Best Efforts to Effectuate Plan ..................................... 30

11.6    Payment of Statutory Fees ................................................................................ 30
11.7    Successors and Assigns................................................................................... 30
11.8    Exculpation ..................................................................................................... 30
11.9    Discharge ........................................................................................................ 31
11.10   Confirmation Injunction................................................................................. 31
11.11   Preservation of Insurance............................................................................... 32
11.12   Cramdown....................................................................................................... 32
11.13   Governing Law ............................................................................................... 32
11.14   Notices ............................................................................................................ 32
11.15   Saturday, Sunday or Legal Holiday ............................................................... 33
11.16   Section 1146 Exemption ................................................................................ 33
11.17   Severability ..................................................................................................... 34
11.18   Headings .......................................................................................................... 34
11.19   Dissolution and Release of the Committee..................................................... 34

**INTRODUCTION**

Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C., the above-captioned debtors and debtors in possession (collectively "Shapes" or the "Debtors"), hereby propose this Second Amended Joint Chapter 11 Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code.  Reference is made to the Disclosure Statement[1] for risk factors and a summary and analysis of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, those restrictions on modifications set forth in Article XI of this Plan and the written consent of the Plan Funder, the Debtors expressly reserve the right to alter, amend or modify this Plan, one or more times, before its substantial consummation.

**ARTICLE I**

**DEFINITIONS**

1.1     Scope of Definitions.  As used in this Plan, the following terms shall have the respective meanings specified below.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2     "**Accrued**" shall mean an expense incurred but not yet billed for nor paid.

1.3     "**Accu-Weld Real Estate**" shall mean the real estate and fixtures located at 1211 Ford Road, Bensalem, Pennsylvania, which is owned by Accu-Weld L.L.C.

1.4     "**Accu-Weld Realty Pennsylvania, L.L.C.**" shall mean the Pennsylvania limited liability company whose sole member shall be Accu-Weld L.L.C. as set forth in the Operating Agreement contained in the Plan Supplement.

1.5      "**Administrative Claim**" shall mean a Claim under sections 503(b) and 1114(e)(2) of the Bankruptcy Code or determined to be an Allowed Administrative Claim by a Final Order that is entitled to priority under sections 507(a)(1) or 507(b) of the Bankruptcy Code, including any allowed Reclamation Claims or Claims allowed under Section 503(b)(9) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Cases including, without limitation, any actual and necessary expenses of operating the businesses of the Debtors or preserving the estates incurred after the Petition Date, and any and all fees and expenses of Professionals Filed under sections 330, 331 or 503 of the Bankruptcy Code.

1.6     "**Administrative Claims Bar Date**" shall have the meaning set forth in Section 2.3 of the Plan.

---

[1]  All capitalized terms not defined in this introduction shall have the meanings set forth in Article I of this Plan.

1

1.7    "**Allowed Claim**" or "**Allowed [    ] Claim**" shall mean:  (a) any Claim, proof of which is/was Filed with the Bankruptcy Court or the Debtors' court-appointed claims agent on or before the date designated by the Bankruptcy Court as of the last date(s) for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been Filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court (allowing such Claim in whole or in part); (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order or (iii) pursuant to the terms of the Plan; or (c) a request for payment of an Administrative Claim, which is made before the Administrative Claims Bar Date, or otherwise has been deemed timely asserted under applicable law, and is an Administrative Claim as to which no objection to allowance thereof has been Filed within the applicable deadline pursuant to sections 2.3 of the Plan.  Except as otherwise provided herein, in accordance with section 502(d) of the Bankruptcy Code, a Claim held by any party that is subject to an Avoidance Action shall not be an Allowed Claim until such time as a Final Order is entered by the Bankruptcy Court on the Avoidance Action.

1.8    "**Arch Acquisition**" shall mean Arch Acquisition I, LLC and its designees.

1.9    "**Arch Acquisition DIP Agreement**" means the Amended and Restated Debtor in Possession Term Loan Financing Agreement entered into by and between Arch Acquisition and the Debtors dated May 6, 2008, as amended or modified in accordance with its terms.

1.10    "**Arch Acquisition DIP Claim**" shall mean the Allowed Secured Claim of Arch Acquisition arising under the Arch Acquisition DIP Loan.  For purposes of the Plan, the Arch Acquisition DIP Claim shall be deemed an Allowed Secured Claim, not subject to objection, set-off, counterclaim or any other claim of avoidance of any nature.

1.11    "**Arch Acquisition DIP Loan**" means the post-petition term loan facility provided by Arch Acquisition to the Debtors in the initial principal amount of thirty million dollars ($30,000,000.00), as evidenced by the Arch Acquisition DIP Loan Agreement.

1.12    "**Avoidance Actions**" shall mean any and all claims and causes of action of the Debtors, arising under the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549 and 550 thereof, but not including any claim or cause of action against the Professionals or any claims or causes of action released under the terms of this Plan, any Order of the Bankruptcy Court or pursuant to other applicable law or agreement.

1.13    "**Ballot**" shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Allowed Claims in Classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

1.14    "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101, *et seq.*, as in effect on the Petition Date, and as amended effective as of the Petition Date.

1.15    "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of New Jersey (Camden Vicinage) or such other court as may hereafter be granted jurisdiction over the Debtors' Chapter 11 Cases.

1.16    "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure effective August 1, 1996 in accordance with the provisions of 28 U.S.C. § 2075, and the local rules of the Bankruptcy Court, as in effect on the Petition Date, and is amended effective as of the Petition Date.

1.17    "**Bar Date**" shall mean May 15, 2008, the date set by the Bankruptcy Court as the last day to file proofs of Claim.

1.18    "**Ben Interests**" shall mean one hundred percent (100%) of the limited liability company interests of Shapes/Arch Holdings L.L.C. which are owned by Ben LLC.

1.19    "**Business Day**" shall mean any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.20    "**Cash**" shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.21    "**Chapter 11 Cases**" shall mean the above-captioned Chapter 11 cases pending for the Debtors.

1.22    "**CIT**" shall mean The CIT Group/Business Credit, Inc., in its individual capacity and as agent for JP Morgan Chase Bank, N.A. and Textron Financial Corporation.

1.23    "**CIT Lenders**" shall mean CIT, JPMorgan Chase Bank, N.A. and Textron Financial Corporation and any other lenders under the CIT Loan and the CIT DIP Loan.

1.24    "**CIT Loan**" shall mean the term loan, revolver loan and letters of credit from the CIT Lenders in accordance with the terms of certain loan agreements dated December 30, 2003, as amended in the aggregate approximate principal amount of up to seventy five million seven hundred thousand dollars ($75,700,000.00).

1.25    "**CIT DIP Claim**" shall mean the Allowed Secured Claim of the CIT Lenders arising under the CIT Revolving Loan DIP Agreements and including, without limitation, the "Revolving Credit Obligations," as defined in the Interim DIP Orders and Final DIP Orders entered with respect to the CIT Lenders and the CIT DIP Loan.  For purposes of the Plan, the CIT DIP Claim shall be deemed an Allowed Secured Claim, not subject to objection, set-off, counterclaim or any other claim of avoidance of any nature.

1.26    "**CIT DIP Loan**" shall mean the post-petition revolving credit loan facility provided by the CIT Lenders to the Debtors in the principal amount of sixty million dollars ($60,000,000.00) as evidenced by the Debtor in Possession Revolving Credit Financing Agreement entered into by and between the CIT Lenders and the Debtors dated March 18, 2008,

3

as amended and restated from time to time including, without limitation, that certain Amended and Restated Debtor in Possession Revolving Credit Financing Agreement dated May 6, 2008.

1.27    "**CIT Revolving Loan DIP Agreements**" shall mean those certain loan agreements dated (initially dated March 18, 2008, and as amended and restated by that certain Amended and Restated Debtor in Possession Revolving Credit Financing Agreement dated May 6, 2008) between the CIT Lenders and the Debtors which provide for the CIT DIP Loan, as amended, and related agreements, documents, instruments, including, without limitation, the "Financing Agreements," all as amended, restated, modified or supplemented from time to time, and as defined in the Interim DIP Orders and the Final DIP Orders entered with respect to CIT, the CIT Lenders and the CIT DIP Loan.

1.28    "**Claim**" shall mean a claim against any or all the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.29    "**Claims Agent**" shall mean Epiq Bankruptcy Solutions, LLC (formerly known as Bankruptcy Services, LLC) ("Epiq") appointed by the Bankruptcy Court.

1.30    "**Class**" shall mean a category of holders of Claims or Interests, as classified pursuant to Article II of the Plan.

1.31    "**Class 10 Liquidation Trustee**" shall mean the Person designated pursuant to the Plan Administration Agreement to act in accordance with the terms and the authority granted in the Plan Administration Agreement and the Confirmation Order.

1.32    "**Class 10 Pool**" shall mean the sum of five million dollars ($5,000,000.00) to be used to satisfy Allowed Class 10 General Unsecured Claims.

1.33    "**Class 10 Pool Escrow**" shall mean the escrow established by the Plan Funder in the amount of the Class 10 Pool for the purpose of making distributions to and satisfying the Allowed Claims of holders of Allowed Class 10 General Unsecured Claims.

1.34    "**Class 12 Interests**" shall mean one hundred percent (100%) of the Limited Liability Company Interests of Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C. which are owned by Shapes/Arch Holdings L.L.C.

1.35    "**CBA**" or "**Collective Bargaining Agreement**" shall mean any collective bargaining agreement between any Debtor and any of its employees' representative labor organizations as defined by the National Labor Relations Act.

1.36    "**Committee**" shall mean the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee and as reconstituted from time to time and existing as of the Confirmation Date.

1.37    "**Confirmation**" shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.38    "**Confirmation Date**" shall mean the date of entry of an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.39    "**Confirmation Hearing**" shall mean the hearing to confirm the Plan.

1.40    "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.41    "**Creditor**" shall mean any person or entity having a Claim against any or all of the Debtors, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.42    "**Cure Claims**" shall mean Claims based upon a Debtor's default under an executory contract or unexpired lease at the time such contract or lease is assumed by that Debtor under section 365 of the Bankruptcy Code.

1.43    "**Cure Claims Bar Date**" shall have the meaning set forth in Section 8.2 of the Plan.

1.44    "**Debtors**" shall mean Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C.

1.45    "**Debtors-in-Possession**" shall mean the Debtors in the capacity, and with the status and rights, conferred by sections 1107 and 1108 of the Bankruptcy Code.

1.46    "**Debtors Claimants**" shall have the meaning set forth in Section 6.2 of the Plan.

1.47    "**Deficiency Claim**" shall mean, with respect to (a) a pre-petition Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the value of the property owned or held by the Debtors that collateralizes the Claim and (b) an Environmental Claim that is partially covered by insurance or not covered by insurance, the amount by which the Allowed amount of such Claim exceeds the amount of the available insurance coverage, as and to the extent such may be determined by the Bankruptcy Court.

1.48    "**Delair Real Estate**" shall mean the real property and fixtures located at 8600 River Road, Delair, New Jersey which is owned by Shapes L.L.C.

1.49    "**Delair Realty New Jersey L.L.C.**" shall mean the New Jersey limited liability company whose sole member shall be Delair L.L.C. as set forth in the Operating Agreement contained in the Plan Supplement.

1.50    "**Disclosure Statement**" shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.51    "**Disputed Claim**" or "**Disputed [     ] Claim**" shall mean any Claim, including any Administrative Claim, which has not become an Allowed Claim pursuant to the Plan or a Final Order.

1.52    "**Disputed Administrative, Fee, Priority, Tax, Other Priority Claims and Cure Claims Reserve**" shall have the meaning set forth in Section 7.5 of the Plan.

1.53    "**Disputed Claims Reserves**" shall mean the Disputed Administrative, Fee, Priority Tax, Other Priority and Cure Claims Reserve and the Disputed General Unsecured Claims Reserve, collectively.

1.54    "**Disputed General Unsecured Claims Reserve**" shall have the meaning set forth in Section 7.5 of the Plan.

1.55    "**Effective Date**" shall mean the first Business Day following the date on which each of the conditions set forth in Sections 9.1 and 9.2 of the Plan have been satisfied or waived.

1.56    "**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.57    "**Environmental Claim**" shall mean any and all claims of any entity, party or person in any way based upon, resulting from or related to environmental conditions, law, rules, regulations or other matters or impacts to or contamination of environmental media (including groundwater, soil or air), the presence, release or threatened release or migration of or exposure to hazardous materials, substances or wastes, including, without limitation, all claims of the United States Environmental Protection Agency ("EPA") under any 106 orders or otherwise, all claims of the New Jersey Department of Environmental Protection ("NJDEP") and all other claims identified on Schedule 4.5 hereof (including, without limitation, claims with respect to studies, testing or investigatory costs, public or private oversight, operation, maintenance or monitoring costs, cleanup costs, response costs, removal costs, remediation costs, containment costs, restoration costs, corrective action costs, closure costs, reclamation costs, natural resource damages, assessment or restoration costs, property damages, business losses, personal injuries, penalties or fines) and any other claims for fines, penalties liability, damages, losses, liabilities, obligations, judgments, assessments, costs, expenses, contribution or indemnity on account of any of the foregoing claims, that may be, have been or could have been asserted against the Debtors.

1.58    "**Estate**" or "**Estates**" shall mean the estate of each or the estates of all of the Debtors.

1.59    "**Estate Actions**" shall mean all causes of action which belong to the Debtors' Estates, except Avoidance Actions, against insiders and other third parties who are not Released Parties, and excluding any claims or causes of actions released under the terms of this Plan, any Order of the Bankruptcy Court or pursuant to other applicable law or agreement.

1.60    "**Exit Facility**" shall have the meaning set forth in Section 5.4 of the Plan.

1.61    "**Fee Claim**" shall mean a claim under sections 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation and the reasonable out-of-pocket expenses of a Professional with respect to services rendered and reimbursement of the reasonable out-of-pocket expenses of the Committee members incurred in the Chapter 11 Case on or prior to the Effective Date which has been approved by a Final Order (including expenses of the members of the Committee).

1.62    "**Fee Claim Bar Date**" shall have the meaning set forth in section 2.4 of the Plan.

1.63    "**File**", "**Filed**", or "**Filing**" shall mean file, filed or filing with the United States Bankruptcy Court for the District of New Jersey, or with respect to proofs of claim, proofs timely and properly transmitted to Debtors' Claim Agent.

1.64    "**Final DIP Orders**" shall mean the Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and Grant Senior Security Interests and Liens and Super Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c) and (d); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (C) Authorizing Debtors to Enter into Credit Agreements with Arch Acquisition and the CIT Lenders.

1.65    "**Final Order**" shall mean an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding or other review reconsideration or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review reconsideration or rehearing has expired.

1.66    "**Financing Agreements**" shall have the meaning ascribed to such term in the Final DIP Order with respect to the CIT DIP Loan.

1.67    "**General Unsecured Claim**" shall mean any pre-petition, unsecured, non-priority Claim, including, without limitation, any claim for indemnification (other than indemnification claims of Arch Acquisition and the CIT Lenders) against the Debtors, the Estates or the Reorganized Debtors, and any Deficiency Claim.

1.68    "**Impaired**" shall have the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

1.69    "**Intercompany Claims**" shall mean any Claim held by any of the Debtors against another Debtor or Ben LLC or any Claims of Ben LLC against any Debtor.

1.70    "**Interest**" shall mean, with respect to the Debtors, any equity security or any other security or agreement granting rights to convert to, purchase, hold or own any equity security in Debtors as defined in section 101(16) of the Bankruptcy Code.

1.71    "**Interim Orders**" shall mean the interim orders dated March 18, 2008, April 3, 2008, April 10, 2008 and April 23, 2008, May 1, 2008, and all interim orders entered thereafter which approved, on an interim basis, among other things, the CIT DIP Loan.

1.72    "**Liens**" shall mean valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

1.73    "**Liquidation Trust**" shall mean the trust created pursuant to the Plan Administration Agreement.

1.74    "**Miscellaneous Secured Claims**" shall mean any and all Secured Claims, excluding the Secured Real Estate Claims, CIT DIP Claims, Arch Acquisition DIP Claim, Secured Claims of Shippers and Warehousemen, Secured Claims of the holders of purchase money security interests and Secured Claims arising from collateralized insurance programs.

1.75    "**Net Proceeds**" shall mean the cash received from the sale, transfer, or collection of Property or the conversion of such Property to cash in some other manner as contemplated in this Plan, less the reasonable, necessary and customary expenses attributable to such sale, transfer, collection or conversion, recordation and filing fees, property taxes, brokerage fees and commissions, collection costs and attorneys' and other professional fees and expenses.  In determining Net Proceeds, only costs or expenses related to the Property in question shall be charged against the Proceeds of such Property, as and to the extent authorized by the Bankruptcy Court.

1.76    "**New LLC Interests**" shall mean the newly authorized membership interests of Shapes/Arch Holdings L.L.C., issued and distributed to the Plan Funder pursuant to the Plan.

1.77    "**Other Priority Claim**" shall mean any Claim against the Debtors other than an Administrative Claim, Fee Claim or Priority Tax Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.78    "**Operating Agreement**" shall mean the amended and restated Limited Liability Company Operating Agreement for each Debtor that will be set forth in the Plan Supplement.

1.79    "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

1.80    "**Petition Date**" shall mean March 16, 2008, the date upon which the Debtors filed their petitions under Chapter 11 of the Bankruptcy Code.

1.81    "**Plan**" shall mean this Second Amended Joint Chapter 11 Plan of Reorganization, all exhibits hereto and any amendments or modifications hereof.

1.82    "**Plan Administration Agreement**" shall mean the agreement governing, among other things, the distributions to holders of Allowed Claims required by the Plan, which shall be in the form and substance reasonably satisfactory to the Debtors, the Committee and the Plan Funder and substantially in the form contained in the Plan Supplement.

1.83    "**Plan Expenses**" shall mean all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) the Class 10 Liquidation Trustee's costs, expenses and legal fees incurred related to filing and prosecuting objections to Claims, (ii) all fees, costs or expenses of the Class 10

8

Liquidation Trustee incurred pursuant to the Plan Administration Agreement, including, but not limited to any professionals retained by the Class 10 Liquidation Trustee, and (iii) all fees payable pursuant to section 1930 of title 28 of the United States Code.

1.84    "**Plan Expense Reserve**" has the meaning ascribed to such term in Section 7.3(a) of the Plan.

1.85    "**Plan Funder**" shall mean Arch Acquisition or its designee.

1.86    "**Plan Funder Cash Contribution**" shall have the meaning set forth in Section 6.4 of the Plan.

1.87    "**Plan Funder Consideration**" shall have the meaning set forth in Section 6.4 of the Plan.

1.88    "**Plan Funding Commitment**" shall mean the total commitment of up to ninety million dollars ($90,000,000.00) of the Plan Funder, a copy of which shall be annexed to the Plan Supplement, which shall be used to make distributions and fund the Reserves provided for under the Plan and purchase the equity of the Reorganized Debtors.

1.89    "**Plan Supplement**" shall mean the supplemental appendix filed with the Bankruptcy Court prior to the Disclosure Statement hearing that will contain, among other things, Operating Agreement, Plan Administration Agreement, the Plan Funding Commitment and notice of the selection of the Class 10 Liquidation Trustee.

1.90    "**Priority Tax Claim**" shall mean any Claim for taxes against the Debtors entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.91    "**Proceeds**" shall mean the cash received from the sale, transfer, or collection of Property or the conversion of such Property to cash in some other manner as contemplated in this Plan, whether received before or after the Effective Date.

1.92    "**Professionals**" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered to the Debtors prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.93    "**Property**" means all property of the Debtors' Estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtors, or acquired by the Debtors' Estates, as defined in section 541 of the Bankruptcy Code.

1.94    "**Pro Rata**" means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Allowed Claims and Disputed Claims, without duplication, in such Class.

1.95    "**Protected Parties**" shall have the meaning set forth in Section 11.10 of the Plan.

9

1.96  **"PSMI Claims"** shall mean Claims arising from first priority perfected and non-avoidable purchase money security interests in the Debtors' equipment.

1.97  "**Reclamation Claims**" shall have the meaning set forth in Section 546(c)(1) of the Bankruptcy Code.

1.98  "**Rejection Claims Bar Date**" shall have the meaning set forth in Section 8.4 of the Plan.

1.99  **Released Parties**" shall have the meaning set forth in Section 6.2 of the Plan.

1.100  "**Releasors**" shall have the meaning set forth in Section 6.2 of the Plan.

1.101  "**Remaining Assets**" shall mean all assets of the Debtors of any nature whatsoever, including, without limitation, property of the estate pursuant to section 541 of the Bankruptcy Code, claims of right, interests and property, real and personal, tangible, and intangible, excluding the Claims released pursuant to this Plan and/or the Confirmation Order.

1.102  "**Reorganized Debtors**" shall mean Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C. from and after the Effective Date, pursuant to the amended and restated Limited Liability Company Operating Agreements and other governance documents included in the Plan Supplement.

1.103  "**Reserves**" shall mean collectively the Class 10 Pool Escrow, Plan Expense Reserve, and the Disputed Claims Reserves, together with any other escrow, or reserve established and funded on or shortly after the Effective Date.

1.104  "**Reserves Balances**" shall mean the balance of any Reserve after payment of all Allowed Claims or in the case of the Plan Expense Reserve, payment of all expenses, with respect to which such Reserve was specifically established.

1.105  "**Schedules**" shall mean the Debtors' Schedules of Assets and Liabilities Filed pursuant to Bankruptcy Rule 1007 as they may be amended from time to time.

1.106  "**Secured Claim**" shall mean all or a portion of a Claim existing on the Petition Date, as finally allowed and approved by the Bankruptcy Court, to the extent that such debt is not greater than the value of the Property securing such Claim.

1.107  "**Shapes Real Estate**" shall mean the real property and fixtures located at 9000 River Road, Delair, New Jersey which is owned by Shapes L.L.C.

1.108  "**Shapes Realty New Jersey L.L.C.**" shall mean the New Jersey limited liability company whose sole member shall be Shapes L.L.C. as set forth in the Operating Agreement contained in the Plan Supplement.

1.109  "**Ultra Realty New Jersey**" shall mean the New Jersey limited liability company whose sole member shall be Ultra L.L.C. as set forth in the Operating Agreement contained in the Plan Supplement.

1.110    "**Ultra Real Estate**" shall mean the real estate and fixtures located at 1777 Hylton Road, Pennsauken, New Jersey which is owned by Shapes L.L.C.

All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.

Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERAL PROVISIONS AND CLASSIFICATION OF CLAIMS AND INTERESTS

2.1    <u>General Rules of Classification</u>.  As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each Class of Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each Class will receive under the Plan. In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Claims, Allowed Fee Claims and Allowed Priority Tax Claims are not set forth in Classes.

2.2    <u>Classification of Claims and Interests</u>.  The following is the designation of the Classes of Claims and Interests under the Plan:

(a)    Class 1 Claims shall consist of all Other Priority Claims.

(b)    Class 2 Claims shall consist of all Secured Real Estate Claims.

(c)    Class 3 Claims shall consist of the Arch Acquisition DIP Claim.

(d)    Class 4 Claims shall consist of the CIT DIP Claims.

(e)    Class 5 Claims shall consist of all PMSI Claims.

(f)    Class 6 Claims shall consist of the Secured Claims of Warehousemen and Shippers.

(g)    Class 7 Claims shall consist of all Secured Claims arising from Collateralized Insurance Programs.

(h)    Class 8 Claims shall consist of Miscellaneous Secured Claims.

(i)    Class 9 shall consist of Environmental Claims covered by Insurance.

11

(j)     Class 10 Claims shall consist of all General Unsecured Claims.

(k)     Class 11 Interests shall consist of the Ben Interests.

(l)     Class 12 Interests shall consist of all Limited Liability Membership Interests in Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C.

2.3     <u>Bar Date for Administrative Claims</u>.  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Reorganized Debtors and Class 10 Liquidation Trustee, and their respective counsel, no later than thirty (30) days after the Effective Date (the "<u>Administrative Claim Bar Date</u>").  Any Person that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof and no objection to such late or unfiled claim shall be necessary.  Objections to requests for payment of Administrative Claims (except for Fee Claims) must be filed and served on the Reorganized Debtors and Class 10 Liquidation Trustee, and their respective counsel, and the party requesting payment of an Administrative Claim within [thirty days (30)] days after the Administrative Claim Bar Date.

2.4     <u>Bar Date for Fee Claims</u>.  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims incurred through the Effective Date, must be filed and served on the Reorganized Debtors and Class 10 Liquidation Trustee and their respective counsel no later than thirty (30) days after the Effective Date (the "<u>Fee Claim Bar Date</u>").  Any Professional that is required to file and serve a request for payment of a Fee Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Fee Claim or participating in distributions under the Plan on account thereof.  Objections to Fee Claims must be filed and served on the Class 10 Liquidation Trustee, its counsel, and the requesting party by twenty (20) days after the Fee Claim Bar Date.

2.5     <u>Intercompany Claims</u>.  As of the Effective Date, Intercompany Claims shall be extinguished.  No distributions on account of Intercompany Claims will be made, however, Shapes/Arch Holdings L.L.C.  shall retain the right and entitlement to receive final liquidating dividends from its subsidiaries upon the ultimate dissolution of the subsidiaries or after the Plan has been fully consummated.

2.6     <u>Administrative Consolidation</u>.  For purposes of this joint plan and for the administrative convenience of the parties, holders of Claims in each Debtor case shall receive the identical treatment referenced below and each unimpaired class and impaired class shall be deemed to automatically apply in each case as if there were separate plans of reorganization filed in each case (provided that all Class 10 Claimants of all Debtors shall receive their Pro Rata share of the Class 10 Pool Escrow).  Holders of Interests in each case shall be treated as more fully set forth below.  This Plan does not provide for the substantive consolidation of the Debtors following the Effective Date but the holders of Claims in Class 10 shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against or obligations of the

12

consolidated Debtors and shall receive one distribution from the Debtors' Estates in accordance with Section 4.5 hereunder.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

3.1     Administrative Claims.  Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon such other terms as may be agreed upon by the holder of such Allowed Claim, or (b) such lesser amount as the holder of such Allowed Administrative Claim and the Debtors, prior to the Effective Date, and the holder of such Allowed Administrative Claim and the Reorganized Debtors following the Effective Date, might otherwise agree.

3.2     Fee Claims.  Each holder of an Allowed Fee Claim shall receive one hundred percent (100%) of the unpaid amount of such Allowed Fee Claim in Cash on the Effective Date or as soon as practicable after such Fee Claim becomes an Allowed Claim.

3.3     Priority Tax Claims.  Except as provided herein, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Claim and the Debtors prior to the Effective Date, and the holder of such Allowed Claim and the Reorganized Debtors following the Effective Date, might otherwise agree, or (b) (at the election of the Debtors or the Reorganized Debtors) over a period of five (5) years from the Petition Date in equal monthly installments of principal plus interest at the rate of six percent (6%) per annum, provided, however, that the aggregate amount of the Priority Tax Claims are not in excess of eighty four thousand, six hundred sixty seven dollars ($84,667.00).

3.4     Class 1 Other Priority Claims.  Each holder of an Allowed Other Priority Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Claim, or (b) such lesser amount as the holder of such Allowed Other Priority Claim and the Debtors, prior to the Effective Date, and the holder of such Allowed Other Priority Claim and the Reorganized Debtors, following the Effective Date, might otherwise agree, provided, however, that the aggregate amount of the Other Priority Claims are not in excess of two million dollars ($2,000,000.00).  Any Allowed Claims in this Class 1 for paid time off shall be satisfied in the ordinary course of business consistent with the Debtors' employment policies and practices.  The holders of Claims in this Class are not Impaired and, therefore, not entitled to vote.

3.5     Class 2 Secured Real Estate Claims.  This Class shall consist of the holders of Allowed Secured Real Estate tax claims relating to the Delair Real Estate, Accu-Weld Real

13

Estate, Shapes Real Estate and Ultra Real Estate.  Each holder shall be deemed to be a separate subclass.  Each member of the subclass shall have an allowed secured claim in the amount of real estate taxes due and owing as of the Petition Date (including any interest due and owing but excluding any late charges or penalties in the amount as set forth in the Debtors' Schedules and Statement of Financial Affairs), provided, however, that the aggregate amount of the Secured Real Estate Tax Claims are not in excess of one million one hundred eleven thousand eight hundred seventy nine dollars eighty two cents ($1,111,879.82).  At the option of the Plan Funder, upon the Effective Date, either (i) holders of Class 2 Claims shall be paid in full, in Cash, or (ii) the collateral securing such Allowed Secured Real Estate Claim shall be turned over to the holder of such Claim.  The holders of Claims in Class 2 are not Impaired and, therefore, not entitled to vote.

3.6    Class 3 Arch Acquisition DIP Claim.  On the Effective Date, at the election of the Plan Funder, the Arch Acquisition DIP Claim shall be (a) rolled over and the Arch Acquisition DIP Agreement shall be amended and restated as the Exit Facility or (b) repaid in full from the proceeds of the Exit Facility, provided, however, that if for any reason Arch or its designee is not the Plan Funder under a plan of reorganization confirmed by the Court, the Arch Acquisition DIP Claim shall be repaid in full.  The holders of Claims in this Class are not Impaired and, therefore, not entitled to vote.

3.7    Class 4 CIT DIP Claim.  On or before the Effective Date, (i) the CIT DIP Claim shall be paid in cash (by wire transfer of immediately available funds) in full, including, without limitation, all accrued and unpaid interest at the contract rate, and all costs, fees and expenses set forth in the CIT Revolving Loan DIP Agreements and (ii) to the extent that all or any portion of any letters of credit remain outstanding, the Reorganized Debtors shall also post cash collateral with CIT in the amount of 105% of any such amounts with respect to such letters of credit, or such other treatment as is agreed to by CIT and the CIT Lenders.  All terms, provisions, rights and benefits set forth in any or all of the CIT Revolving Loan DIP Agreements, which, by their respective terms, survive the termination of any such CIT Revolving Loan DIP Agreement and/or the payment of all Obligations (as defined in any of the CIT Revolving Loan Agreements), including, without limitation, all such indemnification, hold-harmless, exculpation and similar provisions (including, without limitation, the provisions of Sections 5.3, 7.12, 10.3, 14.7 (a) and 14.13 of the Amended and Restated Debtor-in-Possession Revolving Credit Agreement dated May 6, 2008, as well as any similar provisions in other Financing Agreements) (the "Surviving Provisions"), shall not be discharged, terminated, limited or otherwise affected in a manner adverse to the CIT Lenders, by virtue of or pursuant to the Plan, the Confirmation Order, or otherwise, but rather all such Surviving Provisions shall remain in full force and effect and shall be and remain binding upon and enforceable against the Debtors and the Reorganized Debtors, in the same manner as such Surviving Provisions may be enforced pursuant to the CIT Revolving Loan DIP Agreements.  The holder of Claims in this Class are not Impaired and, therefore, not entitled to vote.

3.8    Class 8 Miscellaneous Secured Claims.  To the extent there are any Allowed Secured Claims in this Class (and excluding any Secured Claims that are subject of a different treatment as provided in a separate Secured Class), each such Claim shall be deemed to be a separate subclass.  At the option of the Debtors prior to the Effective Date and the Reorganized Debtors after the Effective Date, holders of Class 8 Claims shall receive either the return of the

collateral securing such Allowed Secured Claim or the Net Proceeds realized by the Debtors or Reorganized Debtors from the disposition of the collateral securing such Allowed Secured Claim up to the amount of their Secured Claim.  The holders of Claims in this Class are not impaired and, therefore, not entitled to vote.

3.9     Class 12 Interests .  On the Effective Date, all Class 12 Interests shall remain unaffected, valid and binding such that one hundred percent (100%) of the membership interests of Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C. and Ultra L.L.C.  shall continue to be owned by Shapes/Arch Holdings L.L.C.  The holders of Interests in this Class are not Impaired and, therefore, not entitled to vote.

3.10    Reservation of Rights.  Nothing contained herein shall be deemed to limit the right of any party-in-interest to object and seek a reduction to any Administrative Claims (including Fee Claims), Priority Claims, Other Priority Claims, Secured Real Estate Claims and Miscellaneous Secured Claims filed in these Chapter 11 Cases.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

4.1     Class 5 Claims.  This Class shall consist of the PSMI Claims (which shall include lease agreements for equipment which contains a nominal or $1.00 purchase option), provided that the equipment as to which the claimant holds a PMSI Claim is being retained by the Reorganized Debtors, and each such Claim shall be treated as a separate subclass.  Each holder of an Allowed Claim in this Class shall continue to receive the monthly amortized payments set forth in the pre-petition agreements (at the non-default interest rate and without the allowance of any late payments or penalties) with any pre-petition arrearages to be added at the end of the contract and paid in one-lump payment on the thirtieth day following the natural un-accelerated due date under the applicable contract.  Any holder of a purchase money security interest in equipment or a lessor of equipment (whose contract contains a nominal or $1.00 purchase option) who has not properly perfected its interest under the Uniform Commercial Code shall be treated as a Class 10 unsecured creditor.  The Reorganized Debtors shall have the right to prepay the Class 5 Claims in whole or in part without penalty.  The holders of Claims in Class 5 are Impaired and, therefore, entitled to vote.

4.2     Class 6 Claims.  This Class shall consist of holders of Allowed Secured Claims of the Debtors' Shippers and Warehousemen (who are in possession of Property).  Each holder shall be deemed to be a separate subclass.  Each member of the subclass shall have an Allowed Secured Claim in the amount of the charges due and owing to them (by agreement of the parties and with the consent of Arch, or as allowed by Order of the Bankruptcy Court) and such claims shall be paid (at the election of the Debtors) (i) in full (without interest) on the Effective Date or (ii) in twenty four (24) equal monthly installments of principal (commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter) with interest at the rate of six percent (6%) per annum.  On the Effective Date any Property then in the possession of a Class 6 holder shall be released to the Reorganized Debtors. The holders of Claims in Class 6 Claims are Impaired and, therefore, entitled to vote.

15

4.3     Class 7 Collateralized Insurance Program Claims.  This Class shall consist of the Allowed Secured Claims of those entities holding cash deposits or letters of credit which are acting as collateral security for the workers' compensation insurance policies of the Debtors, and each such Claim shall be deemed a separate subclass.  Each holder of a Class 7 Claim shall retain on account of their Allowed Secured Claim the cash deposit or Letter of Credit securing the same; provided, however, that such entities shall, on the Effective Date, return to the Reorganized Debtors all collateral being held in excess of their Allowed Secured Claims (as determined by agreement of the parties and with the consent of Arch, or further Order of the Bankruptcy Court in the event the Debtors or holders of such claims request an estimation of any holders' claims under section 502(c) of the Bankruptcy Code).  The holders of Claims in Class 7 are Impaired and, therefore, entitled to vote.

4.4     Class 9 Environmental Claims.  This Class shall consist of all Environmental Claims exclusive of Deficiency Claims.  On the Effective Date, the EPA shall receive the sum of three hundred thousand dollars ($300,000.00) in full and complete satisfaction of its claims set forth in Section I of Schedule 4.6 attached hereto and the sum of twenty five thousand dollars ($25,000.00) in full and complete satisfaction of its claims set forth in Section II of Schedule 4.6 attached hereto.  The NJDEP shall receive the sum of twenty five thousand dollars ($25,000.00) in full and complete satisfaction of its claims set forth in Section II, III and IV of Schedule 4.6 attached hereto.  Funding for these distributions and other distributions to holders of Claims identified on Schedule 4.6 shall be made solely from proceeds of applicable insurance policies.  Any Deficiency Claims relating to Environmental Claims shall be treated as General Unsecured Class 10 Claims.  The holders of Claims in Class 9 are Impaired and, therefore, entitled to vote.

4.5     Class 10 General Unsecured Claims.  This Class shall consist of General Unsecured Claims.  Unless otherwise agreed to by the holder of an Allowed General Unsecured Claim and the Class 10 Liquidation Trustee, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the sum of the Class 10 Pool Escrow as follows:  (i) on the Effective Date or as soon as practicable thereafter, each such holder shall receive its Pro Rata share of the Class 10 Pool on account of the amount of such Allowed Claim from the Class 10 Pool Escrow; (ii) from time to time each such holder shall receive its Pro Rata share of the Reserves Balances; and (iii) from time to time, each holder shall receive its Pro Rata share of recoveries on account of the Avoidance Actions and Estate Actions.  On the Effective Date, all Class 10 Claims shall be transferred to and assumed by the Liquidation Trust, and the Debtors and their Property, and the Reorganized Debtors and their property shall be free and clear of all Class 10 Claims.  All Deficiency Claims shall be treated as Class 10 General Unsecured Claims.  The holders of Claims in Class 10 are Impaired and, therefore, entitled to vote.

4.6     Class 11 Interests.  This Class shall consist of the Ben Interests.  On the Effective Date, all Class 11 Interests shall be deemed cancelled, relinquished, null and void and of no force and effect.  Accordingly, Class 11 Interests are deemed to reject the Plan and, therefore, are not entitled to vote.

4.7     Reservation of Rights.  Nothing contained herein shall be deemed to limit the right of any party-in-interest to object and seek a reduction to any of the PMSI Claims, Claims of Warehousemen and Shippers, Claims arising from collateral insurance programs, Environmental Claims or General Unsecured Claims (including any claim for indemnification against the

Debtors, the Estates or the Reorganized Debtors and Deficiency Claims), filed in these
Chapter 11 Cases.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

   5.1  <u>Corporate Action</u>.  On the Effective Date and automatically and without further
action, (i) each existing member (or manager of each operating entity) of the Debtors will be
deemed to have resigned, (ii) the new members/managers/officers of the Reorganized Debtors
shall be those identified in the Plan Supplement, and (iii) the Class 10 Liquidation Trustee and
Reorganized Debtors shall be authorized and empowered to take all such actions and measures
necessary to implement and administer the terms and conditions of the Plan.  Each Debtors'
Operating Agreement will be amended as of the Effective Date to the extent necessary to
incorporate the provisions of the Plan and to prohibit the issuance of nonvoting equity securities
as required by section 1123(a)(6) of the Bankruptcy Code.  The rights and interests of the New
LLC Interests shall be governed by and controlled pursuant to the terms and conditions of the
Reorganized Debtors' Operating Agreements, which shall be included in and filed with the Plan
Supplement.

   5.2  <u>Liquidation Trust</u>.  On the Effective Date the Debtors shall execute and deliver
the Plan Administration Agreement, which shall create a trust, convey all Avoidance Actions and
Estate Actions to the Trust, appoint the Class 10 Liquidation Trustee and authorize the Class 10
Liquidation Trustee to bring such actions,, provide for the acceptance of the Avoidance Actions
and Estate Actions, the proceeds thereof, and the Reserves provided for in the Plan, and set forth
the terms and conditions for distributions from such Reserves.

From and after the Effective Date, the Liquidation Trust and the Class 10 Liquidation Trustee
shall hold and administer the Avoidance Actions, the Estate Actions and the Reserves.  All of the
Reserves shall vest with the Class 10 Liquidation Trustee on the Effective Date.

   5.3  <u>Class 10 Liquidation Trustee</u>.  On or before the Confirmation Date, the
Committee, with the consent of the Plan Funder, which consent shall not be unreasonably
withheld, shall appoint one Class 10 Liquidation Trustee to serve as such pursuant to the Plan
Administration Agreement (the "<u>Plan Administration Agreement</u>").  The Class 10 Liquidation
Agreement is to be attached as an exhibit to the Plan Supplement.  The Class 10 Liquidation
Trustee shall administer the Plan subject to the foregoing duties and powers, which shall include
the following:

     (a)  To commence, prosecute, compromise and/or settle the Avoidance
        Actions and Estate Actions, and objections to General Unsecured
        Claims;

     (b)  To make decisions regarding the retention or engagement of
        Professionals relating to the above and to pay, without court order,
        all reasonable fees and expenses of such professionals incurred after
        the Effective Date;

(c)     To make or direct distributions to holders of Allowed Class 10
Claims and to otherwise implement and administer the Reserves and
the Plan with respect to General Unsecured Claims;

(d)     To set off amounts owed to the Debtors against any and all amounts
otherwise due to be distributed to the holder of an Allowed Class 10
Claim under the Plan; and

(e)     To take all other actions not inconsistent with the provisions of the
Plan deemed necessary or desirable in connection with its rights and
duties hereunder and under the Plan Administration Agreement..

5.4     Exit Facility.  Upon the Effective Date, and subject to Section 3.6 of the Plan, the
Plan Funder shall either (a) amend and restate the Arch Acquisition DIP Agreement or (b) enter
into a new loan as part of the Plan Funding Commitment (the "Exit Facility").  The principal
amount of the Exit Facility upon the Effective Date shall be thirty million dollars
($30,000,000.00) plus any and all unpaid interest, costs and fees that accrued prior to the
Effective Date on the Arch DIP Loan, less any amount converted for purposes of the Plan
Funding Commitment.  The Plan Funder's Liens shall not attach to the Reserves, Reserves
Balances or the Avoidance Actions or Estate Actions or proceeds of the same.  The Liens and
property interests of the Plan Funder shall remain perfected from and after the date of the
Confirmation Order without the need of the Plan Funder to take any or further action or file or
record any notes with respect thereto.  The Confirmation Order shall be sufficient and conclusive
notice and evidence of the grant, validity, perfection, and priority of the Plan Funder's Liens
without the necessity of filing or recording the Confirmation Order (other than as docketed in the
Chapter 11 Cases) or any financing statement, mortgage or other instrument or document which
may otherwise be required under the law of any jurisdiction or the taking of any other action to
validate or perfect the Plan Funder's Liens, or to entitle the Plan Funder to the same priorities
granted to the agent under the Arch Acquisition DIP Loan or herein (including, in respect of cash
or deposits or investment property, any requirement that the Plan Funder have possession of or
dominion and control over, any such cash in order to perfect an interest therein); provided that
the Debtors or Reorganized Debtors shall execute and deliver to the Plan Funder and the Plan
Funder may file or record financing statements or other instruments further to evidence or further
to perfect the Plan Funder's Liens authorized, granted and perfected under the Exit Facility and
hereby; and provided further that no such filing or recordation shall be necessary or required in
order to create or perfect any such Lien.

5.5     Plan Funding Commitment.  Except as expressly set forth in the Plan or the Plan
Funding Commitment, working capital of the Debtors and Reorganized Debtors together with
the proceeds of the Plan Funding Commitment shall be used for general working capital and
capital expenditures of the Reorganized Debtors, to fund the Reserves, to pay the Allowed
Administrative Claims, Allowed Fee Claims, Allowed Priority Claims, Allowed Other Priority
Claims and Allowed Cure Claims.  In no event shall the aggregate of the Plan Funding
Commitment be more than **[ninety million dollars ($90,000,000.00)]**, provided, however, that
the Plan Funder, in its sole and absolute discretion, may consent, in writing, to an increase in the
amount of the Plan Funding Commitment.  In consideration for meeting its funding
commitments under the Plan Funding Commitment in the aggregate amount necessary to

18

effectuate the terms of this Plan (which will be paid in cash and/or by way of a conversion of the Arch DIP Claim), the Plan Funder shall receive one hundred percent (100%) of the New LLC Interests in the Reorganized Shapes/Arch Holdings L.L.C. that are authorized and issued as of the Effective Date (the "New LLC Interests").

5.6     Permitted Investments.  Cash held by the Class 10 Liquidation Trustee, in any accounts or otherwise shall be maintained in interest-bearing accounts at institutions on the U.S. Trustee's list of such approved institutions, or invested in U.S. government backed securities or mutual funds investing in such securities.

5.7     Revesting.  Except as otherwise provided for in the Plan or the Confirmation Order, the Final Orders, as applicable (including, without limitation, the liens being granted and/or retained by Arch Acquisition), on the Effective Date, without any further action, each of the Reorganized Debtors will be vested with all of the Property of the Estates, free and clear of all Claims, Liens and Interests, and shall have all of the powers of a limited liability company under applicable law.  As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire and dispose of property and settle and compromise claims or interests without the supervision of the Bankruptcy Court or Class 10 Liquidation Trustee, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.8     Transfer of Real Estate.  On the Effective Date, but subject to the Class 2 Secured Real Estate Claims to the extent not satisfied, (a) Reorganized Shapes L.L.C. may (at its election), either retain all real estate or (i) convey the Shapes Real Estate to Shapes Realty New Jersey L.L.C., (ii) convey the Delair Real Estate to Delair Realty New Jersey L.L.C. (or Shapes Realty New Jersey LLC); and (iii) convey the Ultra Real Estate to Ultra Realty New Jersey L.L.C.; and (b) Reorganized Accu-Weld L.L.C. may (at its election), either retain all real estate or convey the Accu-Weld Real Estate to Accu-Weld Realty Pennsylvania L.L.C., free and clear of all liens, claims and encumbrances other than the Class 2 Secured Real Estate Claims.

5.9     Reorganized Debtors.  From the Effective Date forward, the Reorganized Debtors shall administer the Plan subject to the duties and powers reserved for the Class 10 Liquidation Trustee.  The duties and powers of the Reorganized Debtors with respect to the Plan shall include the following:

(a)     To commence, prosecute, compromise and/or settle objections to Claims other than General Unsecured Claims

(b)      To make or direct that distributions be made pursuant to the Plan, provided, however, that upon fully funding the Reserves, the Reorganized Debtors shall have no further duties to fund or make distributions in connection with Class 10 Claims;

(c)     To make decisions regarding the retention or engagement of Professionals relating to the above and to pay, without court order, all reasonable fees and expenses of such professionals incurred after the Effective Date;

19

(d)     To set off amounts owed to the Debtors against any and all amounts otherwise due to be distributed to the holder of an Allowed Claim under the Plan,  other than General Unsecured Claims;

(e)     To cooperate with the Class 10 Liquidation Trustee and provide any information reasonably requested by the Class 10 Liquidation Trustee in connection with its duties; and

(f)     To take all other actions not inconsistent with the provisions of the Plan that it deems necessary or desirable.

## ARTICLE VI

## RELEASES

6.1     <u>Application for Approval of Settlement</u>.  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan constitutes an application for approval of a compromise and settlement of any and all claims, suits and causes of action of the Debtors, the Estates, or their respective successors or assigns, including, without limitation, the Liquidation Trust, and any Person or Entity claiming a right in a derivative capacity on their behalf in accordance with the terms of the Plan.

**6.2     <u>General Release</u>.  On the Effective Date, (i) the Debtors, the Estates, and their respective successors or assigns, including, without limitation, the Liquidation Trust, the Class 10 Liquidation Trustee, and any Person or Entity claiming a right in a derivative capacity on their behalf and (ii) any holder of a Claim or Interest ((i), (ii) and any holder of a Claim classified under Class 10 General Unsecured Claims, together being the "<u>Releasors</u>") hereby unconditionally and irrevocably release Arch Acquisition, the Plan Funder, the Committee, CIT, and the CIT Lenders, together with each of their respective shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (collectively, the "<u>Released Parties</u>"), as set forth more fully below, from any and all direct, indirect or derivative claims, obligations, suits, judgments, Liens, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place from the beginning of the world to the Effective Date, arising from or relating in any way, directly or indirectly, to the Debtors, their Property, assets, operations or liabilities, the Arch Acquisition DIP Loan, the Arch Acquisition DIP Agreement, the CIT DIP Loan, the CIT Loan, the CIT Revolving Loan DIP Agreements, the Chapter 11 Cases, the Plan, or the Disclosure Statement; <u>provided</u> <u>however,</u> that the Releasors shall not be deemed to have released any rights to enforce the terms of the Plan or their rights to distributions thereunder.  The Releasors hereby waive any rights or benefits under California Civil Code Section 1542, which provides that:**

20

> **A general release does not extend to claims which the creditor
> does not know or suspect to exist in his favor at the time of
> executing the release, which if known by him must have
> materially affected his settlement with Debtors and any rights
> or benefits under similar laws.**

**The Confirmation Order shall specifically provide for the foregoing releases.**

6.3    <u>Debtors Injunction</u>.  On the Effective Date, the Releasors shall be permanently enjoined from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind, asserting any setoff, right of subrogation, contribution, indemnification or recoupment of any kind, directly or indirectly, or proceeding in any manner in any place inconsistent with the releases granted to the Released Parties pursuant to the Plan.  The Confirmation Order shall specifically provide for such injunction.

6.4    <u>Release Consideration</u>.  The consideration the Plan Funder shall provide, or have provided, in exchange for the releases described in the Plan and the receipt of the New LLC Interests, include the following (collectively, the "<u>Plan Funder Consideration</u>"):

(a)    The Exit Facility and Cash required under the Plan Funding Commitment; and

(b)    The sum of three hundred thousand dollars ($300,000) previously paid on behalf of the Estates in accordance with the Final DIP Order.

6.5    <u>No Admissions</u>.  The releases and injunctions granted in favor of the Released Parties are integral parts of the Plan and are necessary to confirm the Plan.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN

7.1    <u>Distributions for Claims Allowed as of the Effective Date</u>.  Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

7.2    <u>Distributions for Allowed Class 10 Claims</u>.  In the event that contracts or leases are rejected pursuant to this Plan, distributions to be made on account of General Unsecured Claims that are Allowed Claims as of the Effective Date shall be made forty-five (45) days after the Effective Date or as soon thereafter as is practicable. If no contracts or leases are rejected pursuant to this Plan, distributions shall be made on the Effective Date or as soon thereafter as is practicable.

7.3     Delivery of Distributions.  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Reorganized Debtors or its agents, unless the Debtors, the Reorganized Debtors or the Class 10 Liquidation Trustee, as applicable, have been notified in writing of a change of address, including by the filing of a proof of claim or Administrative Claim request that contains an address for a holder of a Claim different from the address for such holder reflected on any Schedule.

7.4     Reserve Accounts.  On or shortly after the Effective Date, the Class 10 Liquidation Trustee will establish and maintain the following reserve accounts:

(a)     Reserve for Plan Expenses.  A reserve in an amount equal to the estimated Plan Expenses (the "Plan Expense Reserve"), which upon the closing of the Chapter 11 Cases, the remainder, if any, will be released and distributed to Reorganized Debtors; other than the initial funding of the Plan Expense Reserve in the amount of two hundred thousand ($200,000.00) (or with respect to legal fees and other professional fees incurred by the Reorganized Debtors at the request of the Plan Funder), the Reorganized Debtors shall have no further liability for such expenses, and

(b)     Disputed Claims Reserve for Class 10 Claims.

7.5     Reserves for Disputed Administrative, Fee, Priority Tax, Other Priority Claims and Cure Claims.  On or before the Effective Date, or shortly after the applicable bar date, the Reorganized Debtors shall establish and maintain reserves for all other Disputed Claims in (i) amount equal to what would be distributed to holders of Disputed Administrative, Fee, Priority Tax, Other Priority Tax and Cure Claims in the event that their Disputed Claims were deemed Allowed Claims on the Effective Date, or such applicable bar date, or (ii) such other lesser amount as may be agreed by the parties or approved by the Bankruptcy Court upon motion of the Reorganized Debtors; provided, however, that the Reorganized Debtors shall not be required to reserve funds on account of employee Claims for paid time off or vacation benefits of employees whose employment was continued by the Debtors or will be continued by the Reorganized Debtors (the "Disputed Administrative, Fee, Priority Tax, Other Priority Tax and Cure Claims Reserve").  With respect to such Disputed Claims, if, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Reorganized Debtors to the Claimant in a manner consistent with distributions to similarly situated Allowed Claims.  The balance of such Cash, if any, remaining after all such Disputed Claims, which shall not included Disputed Class 10 General Unsecured Claims, have been resolved and distributions made in accordance with the Plan, shall be released and distributed to the Reorganized Debtors.  No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order.

7.6     Reserves for Disputed General Unsecured Claims.  On or shortly after the Rejection Claims Bar Date, the Class 10 Liquidation Trustee shall establish and maintain a reserve for all Disputed General Unsecured Claims in an amount equal to what would be

distributed to holders of Disputed General Unsecured Claims (the "Disputed General Unsecured Claims Reserve"). For purposes of establishing a reserve for Disputed General Unsecured Claims, Cash will be set aside as soon as practicable after the Effective Date equal to the amount that would have been distributed to the holders of Disputed General Unsecured Claims had their Disputed General Unsecured Claims been deemed Allowed Claims on the Effective Date or (ii) such other lesser amount as may be agreed by the parties or approved by the Bankruptcy Court. With respect to such Disputed General Unsecured Claims, if, when, and to the extent any such Disputed General Unsecured Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefore shall be distributed by the Class 10 Liquidation Trustee to the Claimant in a manner consistent with distributions to similarly situated Allowed Claims. The balance of such Cash, if any, remaining after all Disputed General Unsecured Claims have been resolved and distributions made in accordance with the Plan, shall be released and re-distributed to holders of Allowed Claims. No payments or distributions shall be made with respect to a Claim that is a Disputed General Unsecured Claim pending the resolution of the dispute by Final Order.

7.7    Other Distribution Guidelines. No payments or distributions shall be made with respect to post-Petition Date interest accruing on any Claim other than the Arch Acquisition DIP Claim, CIT DIP Claim and the Allowed Secured Real Estate Tax Claims. No payments or distributions shall be made with respect to Allowed Claims in an amount in excess of such Allowed Claims.

7.8    Claims Objection Deadline. Notwithstanding D.N.J. LBR 3007-1, Objections to Claims shall be filed and served upon each affected Claim holder no later than ninety (90) days after the Effective Date, provided however, that this deadline may be extended by the Bankruptcy Court upon motion of the Class 10 Liquidation Trustee or Reorganized Debtors, with or without notice or hearing. Notwithstanding the foregoing, unless this Plan or order of the Bankruptcy Court specifically provides for a later date, any proof of, or other assertion of a Claim filed after the deadline established for filing Claims of that type shall be automatically disallowed as a late filed Claim, without any action by the Class 10 Liquidation Trustee or the Reorganized Debtors, unless and until the party filing such Claim obtains the written consent of, the Class 10 Liquidation Trustee or the Reorganized Debtors, as applicable, or obtains an order of the Bankruptcy Court upon notice to the Class 10 Liquidation Trustee and Reorganized Debtors that permits the late filing of the Claim. Moreover, the holder of such disallowed, late-filed Claim shall be forever barred from asserting such Claim against the Liquidation Trust, the Debtors, the Estates or its Property, Reorganized Debtors or their property. In the event any proof of claim is permitted to be filed after the Confirmation Date pursuant to an order of the Bankruptcy Court or this Plan, the Class 10 Liquidation Trustee or Reorganized Debtors, as applicable, shall have sixty (60) days from that bar date or the filing of that Claim pursuant to Court order to object to such Claim. The deadline for objecting to such Claims maybe extended by the Bankruptcy Court upon motion of the Class 10 Liquidation Trustee or the Reorganized Debtors with or without notice or a hearing.

7.9    Settlement of Disputed Claims. Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court, except to the extent such approval is not necessary as provided in this section. After the Effective Date, and subject to the terms of this Plan, the Class 10 Liquidation Trustee or the Reorganized

Debtors, as applicable, may settle any Disputed Claim where the result of the settlement or compromise is an Allowed Claim in an amount of one hundred thousand dollars ($100,000.00), or less without providing any notice or obtaining an order from the Bankruptcy Court. All proposed settlements of Disputed Claims where the amount to be settled or compromised exceeds one hundred thousand dollars ($100,000.00) shall be subject to the approval of the Bankruptcy Court after notice and an opportunity for a hearing.

7.10    Unclaimed Property. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder of an Allowed Claim or Interest entitled thereto, such unclaimed property shall be forfeited by such holder, whereupon all right, title and interest in and to the unclaimed property shall (i) with respect to such unclaimed distributions to Allowed Clams in Class 10, be held in reserve by the Class 10 Liquidation Trustee to be distributed Pro Rata to holders of Allowed Claims in Class 10 in accordance with this Plan, and (ii) with respect to other Classes and types of Claims, revert to the Reorganized Debtors.

7.11    Release and Preservation of Certain Liens. Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, including, without limitation, the Liens securing the Exit Facility (which shall survive Confirmation and shall remain valid, enforceable and perfected Liens against property of the Reorganized Debtors, respectively), on the Effective Date and except as expressly set forth in this Plan, all other mortgages, deeds of trust, Liens or other security interests against the Property of the Debtors' estate shall be released, and all the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests shall revert to Reorganized Debtors and their successors and assigns.

7.12    Withholding Taxes. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

7.13    Fractional Cents. Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.14    Payments of Less than Twenty-Five Dollars. If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than twenty five dollars ($25.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Class 10 Liquidation Trustee or the Reorganized Debtors, as applicable, shall not be required to make such payment and such funds shall be otherwise distributed to holders of Allowed Claims in such Class in accordance with the Plan, or if all Allowed Claims in such Class have been satisfied or reserved for in accordance with the Plan, then such excess fractional dollars will be distributed to the Reorganized Debtors.

## ARTICLE VIII

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

8.1     Rejection of All Agreements.  Any and all pre-petition leases or executory
contracts included on Debtors' Schedule G  and not (i) previously assumed by the Debtors or the
subject of a pending motion to assume of the Court pending on the Confirmation Date, (ii)
previously rejected or the subject of a pending motion to reject pending on the Confirmation
Date, or (iii) designated on Schedule 8.1 to this Plan, shall be deemed rejected by the Debtors
effective as of the Confirmation Date, but subject to the occurrence of the Effective Date.
Schedule 8.1 shall be filed at least fifteen (15) days prior to the Confirmation Hearing and served
upon the non-Debtor parties to the contracts and leases, and shall include the Cure Claim that the
Debtors believe will be payable as of the Effective Date for each contract and lease thereon.  The
Debtors shall have the right to modify Schedule 8.1 up to two (2) days prior to the Confirmation
Hearing, by filing a modified schedule with the Bankruptcy Court and serving the modified
Schedule 8.1 upon any counter-party that is added to or deleted from the schedule.

8.2     Bar Date for Cure Claims.  Unless otherwise ordered by the Bankruptcy Court, if
a non-Debtor party to a contract or lease listed on Schedule 8.1 disagrees with the Cure Claim
shown thereon for its contract or lease, a Cure Claim must be filed with the Bankruptcy Court
and served on the Debtors and their counsel so as to be received at least five (5) days prior to the
Confirmation Hearing (the "Cure Claims Bar Date").  Any Person that is a non-Debtor party to a
contract or lease on Schedule 8.1 that fails to timely file and serve a Cure Claim shall be bound
by the amount shown by the Debtors and shall be forever barred, estopped and enjoined from
asserting any other or additional Cure Claim and no objection to a late claim shall be necessary.
Within ten (10) days after the Effective Date, all undisputed Cure Claims due and owing under
any assumed contracts or leases shall be paid, and all Cure Claims that are the subject of dispute
shall be paid upon further agreement of the parties or upon entry of an order of the Court
allowing such Cure Claims.  No portion of any disputed Cure Claims shall be paid unless and
until the amount of such claim is fixed by agreement of the parties or order of the Court.

8.3     Insurance Policies.  Notwithstanding the foregoing, on the Effective Date, all
insurance policies (regardless of the inception date of coverage) for any one or more Debtors
which provide for any and all claims made or occurred arising from or related to any
environmental laws of any Federal, State or local governmental entity or any claim asserted by a
non-governmental entity for environmental claims (directly or by way of indemnity and whether
under contract or tort law) shall be deemed assumed by the Reorganized Debtors.  Any motion
filed to assume contracts or the Schedule 8.1 shall contain the Cure Claims required to be paid
upon assumption and all contracting parties shall have ten (10) days from the filing of the motion
to assume, or in the case of policies included on Schedule 8.1, until the Cure Claims Bar within
which to object to the stated Cure Claims or thereafter be deemed to have waived the right to
object to the same.

8.4     Claims for Rejection Damages.  All proofs of claim with respect to Claims arising
from the rejection of executory contracts or unexpired leases shall, unless another order of the
Bankruptcy Court provides for an earlier date, be filed with the Bankruptcy Court within thirty
(30) days of the date of entry of the Confirmation Order (the "Rejection Damages Bar Date").

All proofs of claim with respect to Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Class 10 General Unsecured Claims for purposes of a distribution pursuant to the Plan, unless and until the Person or Entity asserting such Claim obtains an order of the Bankruptcy Court upon notice to the Debtors or the Reorganized Debtors, as applicable, the Class 10 Liquidation Trustee and their respective counsel, that allows the Claims in another Class under the Plan. Any claim for damages arising from or relating to the rejection of a contract or unexpired lease that is not filed on or before the Rejection Damages Bar Date shall automatically be disallowed as a late filed Claim, without any action by the Reorganized Debtors or the Class 10 Liquidation Trustee, and the holder of such Claim shall be forever barred from asserting such Claim against the Debtors, the Estates, the Reorganized Debtors, the Liquidation Trust or the property of any of the foregoing.

## ARTICLE IX

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

9.1    <u>Conditions to Confirmation of the Plan</u>.  The Plan shall not be confirmed unless and until the following conditions have been satisfied in full or waived by (i) the Debtors, (ii) Arch Acquisition, (iii) where applicable, the CIT Lenders:

(a)    The Confirmation Order shall be in form and substance satisfactory to the Debtors, Arch Acquisition, and the CIT Lenders, which Confirmation Order shall approve all provisions, terms and conditions of the Plan;

(b)    No amendments, modifications, supplements or alterations shall have been made to the Plan or any document delivered in connection therewith, without the express written consent of the Debtors and Arch Acquisition (which consent may be granted, withheld, or conditioned in their respective sole discretion), and the consent of CIT to the extent that the same is material to the CIT Lenders;

(c)    Execution of new Collective Bargaining Agreements in form and substance satisfactory to the Debtors and the Arch Acquisition; and

(d)    The funds available under the Plan Funding Commitment, including the Exit Facility, shall be sufficient to make all distributions and fund the Reserves required under the Plan on the Effective Date.

In the event (i) new Collective Bargaining Agreements in form and substance satisfactory to Arch Acquisition are not fully executed or such condition is not waived by Arch Acquisition prior to June 15, 2008 and (ii) the Debtors and Arch Acquisition, jointly, agree to proceed with a sale under section 363 of the Bankruptcy Code, in lieu of proceeding with the Plan and filing a motion under section 1113, then, in such event, Arch Acquisition agrees to serve as the stalking horse bidder in any expedited sale process under section 363 of the Bankruptcy Code.  The section 363 sale process and the asset purchase agreement shall (i) be on

terms, conditions and a timeline acceptable to Arch Acquisition, (ii) provide for a break-up fee and expense reimbursement to Arch Acquisition in the same amount as that approved in connection with the competitive process for this Plan, and (iii) provide for a purchase price (subject to adjustment based on the change from the Plan process to a section 363 sale) consistent with the Plan Funding Commitment (including the Exit Facility) contained herein. Notwithstanding the foregoing, nothing herein shall obligate Arch Acquisition to provide additional financing or waive any defaults under the Arch Acquisition DIP Agreement in connection with such section 363 sale process.

9.2     Conditions to Effectiveness of the Plan.  The Plan shall not become effective unless and until each of the following conditions has been satisfied in full or waived by (i) the Debtors and (ii) the Plan Funder:

(a)     The Bankruptcy Court shall have entered the Confirmation Order by July 15, 2008 (or such other date as agreed to in the sole discretion of the Plan Funder) and such Order shall be in form and substance satisfactory to the Debtors and the Plan Funder;

(b)     All escrow and reserve accounts described in the Plan have been adequately funded;

(c)     The Confirmation Order shall have become a Final Order; and the Effective Date shall be no later than July 31, 2008; and

(d)     The Plan Funding Commitment has been provided and the aggregate funds under the same are sufficient to satisfy the cash requirements and the Exit Facility necessary to fund this Plan in accordance with its terms.

9.3     Waiver of Conditions to Confirmation or Effective Date.  Except as set forth in Sections 9.1 and 9.2 above with respect to matters pertaining to the CIT Lenders, the conditions set forth in Sections 9.1 and 9.2 of this Plan may be waived, in whole or in part, by (i) the Debtors, and (ii) the Plan Funder without any notice to any other parties in interest (except the Committee) or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors or the Plan Funder in their sole discretions regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtors or the Plan Funder to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right which may be asserted at any time.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1     Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Plan Funder, the Class 10 Liquidation Trustee and

the Reorganized Debtors, as the case may be, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a) <u>Claims</u>.  To determine the allowance, extent, classification, or priority of Claims against the Debtors upon objection by the Class 10 Liquidation Trustee, the Reorganized Debtors or any other party in interest, including any and all claims asserted under any Collective Bargaining Agreements, as amended;

(b) <u>Injunctions, etc.</u>  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Person or Entity;

(c) <u>Professional Fees</u>.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, and objections thereto, as provided for in the Plan;

(d) <u>Dispute Resolution</u>.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and/or Confirmation Order and the making of distributions hereunder and thereunder;

(e) <u>Executory Contracts and Unexpired Leases</u>.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance and extent of any Claims resulting from the assumption or rejection of executory contracts and unexpired leases;

(f) <u>Actions</u>.  To determine all applications, motions, adversary proceedings (including any Avoidance Actions and/or Estate Actions), contested matters, actions, and any other litigated matters instituted (either before or after the Effective Date) in the Chapter 11 Cases by or on behalf of the Debtors or the Class 10 Liquidation Trustee;

(g) <u>General Matters</u>.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as

may be authorized under provisions of the Bankruptcy Code or other applicable law;

(h)    <u>Plan Modification</u>.  To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(i)    <u>Aid Consummation</u>.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code, including, without limitation, resolve any disputes of a non-Debtor hereunder or the injunction against acts, employment of process or actions against such non-Debtor arising hereunder;

(j)    <u>Protect Property</u>.  To protect the Property of the Debtors, the Reorganized Debtors and the Liquidation Trust from adverse Claims or Liens or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan or to determine a purchaser's exclusive ownership of claims and causes of actions retained under this Plan;

(k)    <u>Abandonment of Property</u>.  To hear and determine matters pertaining to abandonment of Property of the Estates;

(l)    <u>Implementation of Confirmation Order</u>.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(m)    <u>Final Order</u>.  To enter a final order closing the Chapter 11 Cases; and

(n)    <u>Tax Liability</u>.  To determine any tax liability pursuant to section 505 of the Bankruptcy Code.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1    <u>Pre-Confirmation Modification</u>.  On notice to and opportunity to be heard by the United States Trustee and the Committee, the Plan may be altered, amended or modified by the Debtors before the Confirmation Date as provided in section 1127 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that any such amendment or modification of the Plan must be approved in writing by Arch Acquisition (and the CIT Lenders to the extent the same is material to the CIT Lenders).

11.2    <u>Post-Confirmation Immaterial Modification</u>.  With the approval of the Bankruptcy Court and on notice to and an opportunity to be heard by the United States Trustee and without notice to holders of Claims and Interests, the Class 10 Liquidation Trustee or the Reorganized Debtors, may, insofar as it does not materially and adversely affect the interest of holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan; <u>provided</u>, <u>however</u>, that any such amendment or modification of the Plan must be approved in writing by the Plan Funder (and the CIT Lenders to the extent the same is material to the CIT Lenders).

11.3    <u>Post-Confirmation Material Modification</u>.  On notice to and an opportunity to be heard by the United States Trustee, the Plan may be altered or amended after the Confirmation Date by the Reorganized Debtors or the Class 10 Liquidation Trustee in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that such alteration or modification is made after a hearing and otherwise meets the requirements of section 1127 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that any such amendment or modification of the Plan must be approved in writing by the Plan Funder (and the CIT Lenders to the extent the same is material to the CIT Lenders).

11.4    <u>Withdrawal or Revocation of the Plan</u>.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date, upon prior notice to the Committee, <u>provided</u>, <u>however</u>, that the Debtors may not revoke or withdraw the Plan without the written consent of Arch Acquisition.  If the Debtors revoke or withdraw the Plan, if Confirmation or the Effective Date does not occur, then, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

11.5    <u>Parties shall Use Best Efforts to Effectuate Plan</u>.  The Debtors, Committee and Arch Acquisition shall use there best efforts to effect the transactions contemplated in this Plan.

11.6    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if due) or by the Reorganized Debtors.

11.7    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person or Entities.

11.8    **<u>Exculpation</u>.  On the Effective Date, CIT, the CIT Lenders, Arch Acquisition and the Plan Funder and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective present and former shareholders, members, managers, general partners, limited partners, officers, directors, employees, agents, representatives, attorneys and advisors or consultants (solely in their capacities as such)**

30

shall be deemed to release each of the other, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission occurring solely during the period prior to the Effective Date, generally, including, without limitation, any act or omission occurring during the Chapter 11 Cases, the Arch Acquisition DIP Loan, the Arch Acquisition DIP Agreement, the Exit Facility, the Plan Funding Commitment, the CIT Loan, the CIT DIP Loan, the CIT Revolving Loan DIP Agreements, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.  Nothing contained herein shall release any party from its obligations under this Plan and related documents.

11.9   **Discharge**.  Except as otherwise provided for in this Plan, the Confirmation Order, or any other order of the Bankruptcy Court (including, without limitation, the Final DIP Orders), in accordance with section 1141(d) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of all debts, Claims against, Liens on, and Interests in the Debtors, their assets and Property, which debts, Claims, Liens and Interests arose at any time before the entry of the Confirmation Order.  The discharge of the Debtors shall be effective as to each Claim and Interest, regardless of whether a proof of Claim or Interest was filed or whether the Claim or Interest was Allowed or whether the holder of the Claim or Interest votes to accept the Plan.  On the Effective Date, as to each and every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting such Claim or Interest against the Debtors or Reorganized Debtors or their assets or properties.

11.10   **Confirmation Injunction**.  On and after the Confirmation Date, except to enforce the terms and conditions of the Plan before the Bankruptcy Court, or as permitted under the Final DIP Orders and Exit Facility, and except to the extent the holders of Environmental Claims are seeking to recover under any and all applicable insurance policies (and in all cases may not assert any Claims against the Reorganized Debtors), all Persons or Entities who have held, hold or may hold any Claim against or Interest in the Debtors are, with respect to any such Claim or Interest, permanently enjoined from and after the Confirmation Date from:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Reorganized Debtors or Class 10 Liquidation Trustee or the Liquidation Trust or any of their properties, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or Entities and all of their respective direct and indirect parents, subsidiaries and affiliates, or any property of any of the foregoing (collectively, the "Protected Parties"); (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, against any of the Protected Parties of any judgment, award, decree or order; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the Protected Parties; (d) asserting any right of setoff, subrogation, or

31

**recoupment of any kind, directly or indirectly, against any obligation due to any of the Protected Parties; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan. Except as otherwise provided in or limited by Article VI of this Plan (including, without limitation, with respect to the Released Parties, any claims or causes of action released under the terms of this Plan, any Order of the Bankruptcy Court or pursuant to other applicable law or agreement), nothing in this section shall preclude the Committee (prior to its termination under Section 11.19 of this Plan) or the Class 10 Liquidation Trustee, as applicable, from asserting or pursuing Estate Actions or Avoidance Actions.**

11.11   <u>Preservation of Insurance</u>.  This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtors or the Reorganized Debtors (including, without limitation, their members, managers or officers) or any other person or entity.  Likewise, the Plan and Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtors or the carriers.

11.12   <u>Cramdown</u>.  To the extent any Impaired Class of Claims entitled to vote on the Plan votes to reject the Plan, the Debtors reserve the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Class(es).

11.13   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey.

11.14   <u>Notices</u>.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to the Debtors:                      Steven Grabell CEO
                                        Shapes/Arch Holdings L.L.C.
                                        9000 River Road
                                        Delair, New Jersey  08110

with a copy to:                         Cozen O'Connor
                                        Liberty View, Suite 300
                                        457 Haddonfield Road
                                        Cherry Hill, New Jersey  08002
                                        Attention:  Mark E. Felger, Esquire

If to Reorganized Debtors:              Steven Grabell CEO
                                        Shapes/Arch Holdings L.L.C.
                                        9000 River Road
                                        Delair, New Jersey  08110

| with a copy to: | Cozen O'Connor |
| | LibertyView, Suite 300 |
| | 457 Haddonfield Road |
| | Cherry Hill, New Jersey  08002 |
| | Attention:  Mark E. Felger, Esquire |

If to Arch Acquisition          Arch Acquisition I, LLC
or the Plan Funder:             c/o HIG Bayside Capital
                                1001 Brickell Bay Drive
                                27th Floor
                                Miami, Florida  33131
                                Attention:  John P. Bolduc

with a copy to:                 Greenberg Traurig, LLP
                                Met Life Building
                                200 Park Avenue
                                New York, New York  10186
                                Attention:  Nancy A. Mitchell, Esq.

If to the Committee             Halperin Battaglia Raicht, LLP
                                555 Madison Avenue, 9th Floor
                                New York, New York  10022
                                (212) 765-9100
                                Attention: Alan D. Halperin, Esq.

                                Cole, Schotz, Meisel,
                                Forman & Leonard, P.A.
                                Court Plaza North
                                25 Main Street, P. O. Box 800
                                Hackensack, New Jersey  07602-0800
                                (201) 489-3000
                                Attention: Michael D. Sirota, Esq.

11.15   Saturday, Sunday or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

11.16   Section 1146 Exemption:  Pursuant to Bankruptcy Code section 1146(a):  (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under, in the furtherance of, or in connection with, the Plan, including, without limitation, the transfers to be made under Section 5.8 above, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, stock purchase

agreements, stockholders agreements or stockholders rights agreements; deeds, bills of sale, or transfers of tangible property will not be subject to any stamp tax, or other similar tax or any tax held, to be a stamp tax or other similar tax by applicable law.

11.17   <u>Severability</u>.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtors' option, remain in full force and effect and not be deemed affected.  However, the Debtors and the Plan Funder each reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.18   <u>Headings</u>.  The headings used in this Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affect the provisions of the Plan.

11.19   <u>Dissolution and Release of the Committee</u>.  Upon ten (10) days after the later of (i) the Effective Date and (ii) the Confirmation Order becoming a Final Order, the Committee will dissolve and the members of the Committee shall be released and discharged from their duties (without prejudice for the same to serve in any capacity authorized under the Plan Administration Agreement).

## <u>CONFIRMATION REQUEST</u>

       The Debtors hereby requests confirmation of the Plan pursuant sections 1129(a) and (b) of the Bankruptcy Code.

DATED:  May 12, 2008

                                    Respectfully submitted,

                                    Shapes/Arch Holdings L.L.C.

                                    By:_____
                                    Name:  Steven Grabell
                                    Title:   CEO

DATED:  May 12, 2008

                                    Shapes L.L.C.

                                    By:_____
                                    Name:
                                    Title:

DATED:  May 12, 2008

                                    Accu Weld L.L.C.

                                    By:_____
                                    Name:
                                    Title:

DATED:  May 12, 2008

                                    Ultra, L.L.C.

                                    By:_____
                                    Name:
                                    Title:

DATED:  May 12, 2008

                                    Delair, L.L.C.

                                    By:_____
                                    Name:
                                    Title:

## **SCHEDULE 4.5**

Schedule 4.5

**I.  Aluminum Shapes USEPA Lead Off-Site Environmental Liability CERCLA §106 Sites**

- <u>Ewan Superfund Site, Shamong Township, NJ</u>

o  National Priorities List Site; EPA ID #NJD98076 1365
- o  USEPA Estimated Costs:
- o  Aluminum Shapes Estimated Percentage Share of Costs: 2.42% cap
- o  Natural Resource Damages: (complaint filed)[*]

- <u>D'Imperio Superfund Site, Hamilton Township, NJ</u>

  - o  National Priorities List Site; EPA ID #NJD980529416
  - o  USEPA Estimated Costs:
  - o  Aluminum Shapes Estimated Percentage Share of Costs: 1.86% cap
  - o  Natural Resource Damages: (unknown at this time)

- <u>Swope Oil and Chemical Company Superfund Site, Pennsauken Township, NJ</u>

  - o  National Priorities List Site; EPA ID #NJD04 1743220
  - o  USEPA Estimated Costs:
  - o  Aluminum Shapes Estimated Percentage Share of Costs:
  - o  Natural Resource Damages: (unknown at this time)

---

[*] This claim is a NJDEP Claim.

Schedule 4.5

**II. Aluminum Shapes USEPA Lead Off-Site Environmental Liability Non-CERCLA §106 Sites**

- <u>Puchack Wellfield, Pennsauken Township, New Jersey</u>*

    o National Priorities List Site; EPA ID #NJD98 1084767
    o USEPA Estimated Costs – $17,000,000.00
    o Aluminum Shapes Estimated Percentage Share of Costs
    o Natural Resource Damages: (unknown at this time)

- <u>Lightman Drum Company Site, Winslow Township, NJ</u>

    o CERCLA ID #02-2000-2034
    o USEPA Estimated Costs:
    o Aluminum Shapes Estimated Percentage Share of Costs: 1.90%
    o Natural Resource Damages: (unknown at this time)

- <u>Chemical Control Corporation, Elizabeth, NJ</u>

    o National Priorities List Site; EPA ID #NJD000607481
    o USEPA Estimated Costs:
    o Aluminum Shapes Estimated Percentage Share of Costs: de minimis contributor; less than .0467% (believe Aluminum Shapes may have previously settled)
    o Natural Resource Damages: (unknown at this time)
    o (Liability may be resolved pursuant to a consent decree or settlement agreement and subject to confirmation)

- <u>Berks Associates/Douglassville Disposal, Douglassville, PA</u>

    o National Priorities List Site; CERCLIS ID #PAD002384865
    o USEPA Estimated Costs:
    o Aluminum Shapes Estimated Percentage Share of Costs: de minimis contributor; 0.15283% of past costs, 0.07803% future costs (Aluminum Shapes may have previously settled for $119,975.98 – awaiting confirmation)
    o Natural Resource Damages: (unknown at this time)
    o (Liability may be resolved pursuant to a consent decree or settlement agreement and subject to confirmation)

* This site is also subject to NJDEP directives.

Schedule 4.5

**III.    Aluminum Shapes New Jersey Department of Environmental Protection Lead Off-Site Environmental Liabilities**

**- NONE -**

Schedule 4.5

**IV.    State Environmental Claims and Environmental Litigation**

- 9000 River Road, NJDEP 1992 Directive and Notice to Insurers

  - Directed Aluminum Shapes to identify and address all sources contributing to chromium contamination in the soil and groundwater at Aluminum Shapes' facility and to prevent migration of chromium contamination.
  - Aluminum Shapes and NJDEP entered into a Memorandum of Agreement dated June 23, 1993 in which Aluminum Shapes agreed to undertake remedial activities and to pay 80% of the cost of performing those activities. Remediation at the site is ongoing.

- Harris v. Advanced Supply Process Company, et al.; Superior Court of New Jersey, Camden County, Law Division, Docket No.: L-03815-02

  - Class action lawsuit in which Aluminum Shapes is identified as a defendant.
  - Plaintiffs allege that Aluminum Shapes was negligent in the operation of its metal plating business resulting in the discharge of hazardous substances to soil and groundwater.

- Pennsauken Solid Waste Management Authority, et al. v. Ward Sand Material Co., Inc., et al., Superior Court of New Jersey, Camden County, Law Division, Docket No.: L-13345-91

  - Aluminum Shapes is identified as a defendant.
  - Plaintiffs allege that defendants are responsible for the surface and groundwater contamination at the Pennsauken Landfill.

- Buzby Brothers Landfill, Voorhees, NJ

  - Not a National Priorities List Site: EPA ID #NJD000305524
  - USEPA Estimated Costs:
  - Aluminum Shapes Estimated Percentage Share of Costs: de minimis contributor (Aluminum Shapes may have previously settled for $60,000 subject to confirmation)
  - Natural Resource Damages: (yes, complaint filed)
  - (Liability may be resolved pursuant to a consent decree or settlement agreement, and subject to confirmation)

Schedule 8.1

**List of Executory Contracts to be Assumed**

1.      To be provided.

*NJ 226,396,125v3*