| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **MARK E. FELGER (MF9985)**<br>**JERROLD N. POSLUSNY, JR. (JP7140)**<br>**COZEN O'CONNOR**<br>LibertyView, Suite 300<br>457 Haddonfield Road<br>Cherry Hill, NJ  08002<br>(856) 910-5000<br>Attorneys for the Debtors | |
| In re:<br><br>SHAPES/ARCH HOLDINGS L.L.C., <u>et al.</u>,<br><br>                Debtors. | Case No. 08-14631 (GMB)<br>(Jointly Administered)<br><br>Judge: Gloria M. Burns<br><br>Chapter: 11 |

|  |
|---|
| Recommended Local Form:    ☑ Followed    ☐ Modified |

### CERTIFICATION OF PROFESSIONAL IN SUPPORT OF
### APPLICATION FOR RETENTION OF PROFESSIONAL

I, J. Scott Victor, being of full age, certify as follows:

1. I am seeking to be retained as sales consultant/investment banker under Sections 327 and 328(a) of the Bankruptcy Code for Shapes/Arch Holdings L.L.C. ("<u>Shapes/Arch</u>"), Shapes L.L.C. ("<u>Shapes</u>"), Delair L.L.C. ("<u>Delair</u>"), Accu-Weld L.L.C. ("<u>Accu-Weld</u>") and Ultra L.L.C. ("<u>Ultra</u>", and with Shapes/Arch, Shapes, Delair and Accu-Weld, collectively, the "<u>Debtors</u>").

2. My professional credentials include:  I received a B.A. from the University of Pennsylvania, and a J.D. from the University of Miami School of Law.  I am a Fellow of the American College of Bankruptcy and a member of the Executive Committee of the Board of Directors of the Turnaround Management Association.  I am also the co-chair of the Investment

Banking Committee of the American Bankruptcy Institute and a member of the Eastern District of Pennsylvania Bankruptcy Conference - Long Range Planning Committee and former member of its Steering Committee. I am also a member of the Association of Insolvency and Restructuring Advisors, Association for Corporate Growth, Philadelphia Bar Association, Pennsylvania Bar Association and American Bar Association.

3. I am the senior managing director and co-head of the Special Situations Group of NatCity Investments, Inc. ("NatCity"), with offices located at 300 Barr Harbor Drive, West Conshohocken, Pennsylvania, 19428.

4. The proposed arrangement for compensation is as follows: Subject to Court approval, NatCity will seek a flat fee of $250,000, plus 5% of the amount by which an Alternative Transaction exceeds the sum of the offer by Arch Acquisition plus the break up fee and expense reimbursement[1] as more fully described in the Engagement Agreement attached hereto.

5. To the best of my knowledge, after reasonable and diligent investigation, my connection with the debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, is as follows:

   None

   ❐ Describe Connection: NatCity is working on other current matters, unrelated to this case, with Debtor's Counsel, Cozen O'Conner, and with Committee Counsel, Cole, Schotz, Meisel, Forman and Leonard.

6. To the best of my knowledge, after reasonable and diligent investigation, the connection of my firm, its members, shareholders, partners, associates, officers and/or employees

---

[1] For example, if the winning bid is $7 million to unsecured creditors from a competing bidder, NatCity would be entitled to a total fee of $275,000 ($250,000 flat fee, plus 5% of $500,000 (the surplus over the initial bid, break-up fee and expense reimbursement)).

2

with the debtor(s), creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, is as follows:

☐ None

☒ Describe Connection: National City Bank ("NCB"), the parent of NatCity, holds a subordinated unsecured claim against the Debtors pursuant to a subordinated note dated December 30, 2003 in the face amount of $1,683,000. NCB was a member of the lender group for the Debtors prior to the current lender group and retained a subordinated claim as part of the refinancing. NCB has agreed to waive its subordinated note upon approval of NatCity's retention herein.

7. To the best of my knowledge, my firm, its members, shareholder, partners, associates, officers and/or employees and I (check all that apply):

☒ do not hold an adverse interest to the estate.

☒ do not represent an adverse interest to the estate.

☒ are disinterested persons under 11 U.S.C. § 101(14).

☒ do not represent or hold any interest adverse to the Debtors or their estates with respect to the matter for which he/she will be retained under 11 U.S.C. § 327(e).

☒ Other; explain: From time to time, NatCity may represent, or may have represented the Debtors' account debtors, creditors or interest holders of the Debtors in matters unrelated either to the Debtors' cases or to those entities' transactions or dealings with the Debtors. NatCity has conducted a thorough conflict check and has determined that no conflict exists. In the event a potential conflict is discovered, this Application will be updated.

8. If the professional is an auctioneer,

A. A surety bond in accordance with D.N.J. LBR 2014-1(B)(2) is attached.

        ❒ Yes    ❒ No

B.    My qualifications and previous experience as an auctioneer include:

C.    Have you or any member of your firm ever been convicted of any criminal offense, other than motor vehicle violations? ❒ Yes    ❒ No

9.    If the professional is an auctioneer, appraiser or realtor, the location and description of the property is as follows:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: May 13, 2008

_____
Signature of Professional

J. Scott Victor
Name of Professional

4

CHERRY_HILL\443283\3 220718.000

**National City**

NatCity Investments, Inc.
Five Tower Bridge, Suite 420
300 Barr Harbor Drive
Locator PA539
West Conshohocken, PA  19428

May 7, 2008

Mr. Steve Grabell
Chief Executive Officer
Shapes / Arch Holdings, LLC
900 River Road
Delair, NJ  08110

Dear Mr. Grabell:

This agreement ("Engagement Agreement") will serve as the contract between Shapes/Arch Holdings, LLC any and all of its subsidiaries (collectively "Shapes" or the "Company") and NatCity Investments, Inc. ("NatCity" or "Advisor") regarding the retention of NatCity as exclusive sale consultant/investment banker to the Company (as contemplated by Order of the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") dated May 6, 2008, to oversee and supervise the sale of all or a substantial part of the Company through its chapter 11 bankruptcy proceeding pending in the.Bankruptcy Court (the "Sale").  This Engagement Agreement shall be effective as of May 7, 2008.

A.  **NatCity's Role**

    1.  **Sale.** NatCity anticipates that our role in connection with a Sale would include the following:

- Develop a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Company immediately upon the commencement of this engagement;

- Supervise the execution of confidentiality agreements for potential buyers;

- Supervise and control due diligence requests and deliverables for all potential buyers;

- Solicit competitive offers from potential buyers;

- Advise and assist the Company in structuring the transaction and negotiating the transaction agreements; and

Mr. Steve Grabell
May 7, 2008
Page 2

- Otherwise assist and advise the Company, its attorneys and accountants, as necessary, through closing on a best efforts basis.

In performing the service described above, the Company agrees to furnish or cause to be furnished to NatCity such information as NatCity reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information"). The Company represents that all Information furnished by it or its agents will be complete and correct in all material respects, to the best of its knowledge, and that until the expiration or termination of NatCity's engagement hereunder, it will advise NatCity immediately of the occurrence of any event or any other change known by it or its agents that results in the Information ceasing to be complete and correct in all material respects. The Company recognizes and confirms that NatCity: (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) does not assume responsibility for accurateness or completeness of the Information and such other information; and (c) will not make an appraisal of any of the assets or liabilities of the Company.

The Company agrees that NatCity shall be the Company's exclusive financial advisor in connection with any Sale Transaction undertaken with respect to the Company during the term of this Engagement Agreement. The Company agrees that during the term of this Engagement Agreement, NatCity shall have the exclusive authority (along with the Company) to initiate and conduct discussions on behalf of the Company and assist and advise the Company in its negotiations with all prospective purchasers and investors. In that regard, the Company agrees to identify to NatCity: (a) all prospective purchasers and investors who have been in contact with the Company prior to the date hereof; and (b) all prospective purchasers and investors who come in contact with the Company during the term of this Engagement Agreement.

NatCity will consult with and advise the Company with respect to the financial aspects of any proposed Sale Transaction, including price, terms and conditions of the Sale Transaction. NatCity will not, however, have any authority to bind the Company or its members to any third party with respect to any proposed Sale Transaction. Likewise, nothing contained herein shall require the Company to accept the terms of any proposal for a Sale Transaction presented by NatCity and the Company shall at all times have the right to reject any proposed Sale Transaction presented by NatCity regardless of the terms proposed, subject to terms and conditions imposed by the Bankruptcy Court and the rights of the Company's Official Committee of Unsecured Creditors (the "Committee"), whatever they may be.

B. **NatCity's Compensation**

As compensation for providing the foregoing services, the Company shall provide to NatCity the following:

{00062572.1 / 0631-001}

Mr. Steve Grabell
May 7, 2008
Page 3

1. <u>Initial Fee</u>. An initial fee (the "Initial Fee") equal to $25,000, due upon Court Approved of this Engagement Agreement.

2. <u>Sale Fee</u>. Upon the consummation of a Sale Transaction (as such term is hereafter defined), the Company shall pay NatCity a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at, and as a condition of, closing of such transaction, equal to $225,000 plus 5% of the amount by which any alternative Sale exceeds the sum of the current offer of Arch Acquisition plus its approval breakup fee and expense reimbursement.

3. In addition to the foregoing fees, whether or not a Sale is consummated and in addition to the fees noted above which may be payable to NatCity hereunder, the Company agrees to reimburse NatCity upon demand for NatCity's reasonable out-of-pocket expenses incurred in connection with the subject matter of this engagement, including, but not limited to travel expenses; provided, however, that the total of such expenses shall be capped at $20,000 absent Debtor and Committee consent.

C. **Definitions**

For the purpose of this Engagement Agreement:

**Sale Transaction** means and includes any transaction involving the sale or transfer, directly or indirectly, of all or a significant portion of the assets or securities of the Company or any other extraordinary corporate transaction involving the Company, whether by way of consolidation, negotiated purchase or any combination of the aforementioned.

**Transaction** shall mean a Sale Transaction as determined above.

**Transaction Fee** shall mean a Sale Fee as determined above.

D. **Term of Engagement**

This Engagement Agreement shall remain in force (the "Engagement Term") until the earlier of (i) closing of a Sale, or (ii) six (6) months from the date of signing this Engagement Agreement and may thereafter be terminated by either party upon thirty (30) days prior written notice to the other; provided, however, that NatCity may terminate this Engagement Agreement by written notice immediately upon the closing of a Sale. Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that: (i) termination of the Engagement Agreement shall not affect NatCity's right to indemnification under the Indemnification paragraph below; (ii) the Company shall remain obligated to reimburse NatCity for any reasonable expenses incurred through the date of the termination of the Engagement Agreement in accordance with the terms of this Engagement Agreement; and (iii) if a Sale is consummated within six (6) months of the termination of this Engagement Agreement, the Company shall remain obligated to pay a Transaction Fee, as calculated above. Sections B, D, E, F, G and H (entitled Compensation, Term of Engagement, Indemnification, Confidentiality, Miscellaneous, and Scope of Duties, respectively) of, and

Mr. Steve Grabell
May 7, 2008
Page 4

Attachments A and B to, this Engagement Agreement shall survive the expiration or termination of this Engagement Agreement indefinitely.

E. **Indemnification**

The Company hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

F. **Miscellaneous**

This Engagement Agreement and its validity, interpretation, performance and enforcement shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of New Jersey without giving effect to principles of conflicts of laws. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties hereto. This Engagement Agreement is subject to approval of the Bankruptcy Court, and cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties, and either approved: (a) by the Committee; or (b) by Order of the Bankruptcy Court. The Company acknowledges and agrees to the terms and conditions set forth in the NatCity special disclosure statement which is attached hereto as Attachment B, which Attachment is incorporated herein and forms an integral part hereof. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns. This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

G. **Scope of Duties**

The Company hereby acknowledges and agrees that: (i) it is a sophisticated business enterprise that has retained NatCity for the limited purposes set forth in this Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature; and (ii) NatCity has not made any warranties or guarantees of any nature with respect to the success or satisfactory conclusion of any Sale Transaction or as to the economic, financial or other results which may be obtained or experienced by the Company as a result thereof. Each of the Company and NatCity disclaim any intention to impose fiduciary duties or obligations on the other by virtue of the engagement contemplated by this Engagement Agreement, and no other person or entity shall have any rights or obligations hereunder except as expressly provided herein. Notwithstanding anything to the contrary in this Engagement Agreement, it is expressly agreed that the Committee is an intended beneficiary of this Engagement Agreement, and shall have full, complete, and unfettered access to NatCity in connection with its role and duties as Debtor's sale consultant/investment banker.

Mr. Steve Grabell
May 7, 2008
Page 5

### H. Other Matters

This Engagement Agreement is subject to approval, and under the jurisdiction, of the Bankruptcy Court.. NatCity's engagement hereunder shall be approved under Sections 327 and 328(a) of the U.S. Bankruptcy Code. Consistent with its other investment banking engagements, NatCity will not be required to maintain time records. NatCity's compensation for it Sale Fee shall be subject to approval by written Application to be filed with the Bankruptcy Court.

The Company agrees that NatCity has the right following the Sale Transaction, to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder.

Upon Bankruptcy Court approval of the retention, NCB, NatCity's parent, will waive its pre-petition subordinated claim against the Company.

This Engagement Agreement may be signed in counterparts. Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties, and either approved by the Committee or by Order of the Bankruptcy Court to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**NATCITY INVESTMENTS, INC.**

By: _____
J. Scott Victor
Senior Managing Director


ACCEPTED:

**SHAPES/ARCH HOLDINGS, LLC**

By: _____    5/13/08 _____
Steve Grabell                                          Date
Chief Executive Officer

Mr. Steve Grabell
May 7, 2008
Page 6

## ATTACHMENT A
## INDEMNIFICATION PROVISIONS

The Company agrees to indemnify, defend and hold harmless NatCity and its affiliates, the respective partners, directors, officers, agents and employees of NatCity and its affiliates and each other person, if any, controlling NatCity or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to NatCity's acting for the Company under the Agreement of which this Attachment A forms a part, including, without limitation, in connection with (i) any act or omission by NatCity related to its engagement as financial advisor/sale consultant/investment banker under the Engagement Agreement or (ii) NatCity's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement. The Company will reimburse the Indemnified Parties for any legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that the Company shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted primarily from NatCity's gross negligence or willful misconduct in the performance of its duties under Agreement. The Company agrees that reliance by NatCity on any publicly-available information, the information supplied by the Company to NatCity in connection with said Agreement or any directions furnished by the Company shall not constitute negligence, bad faith or willful misconduct by NatCity.

In order to provide for just and equitable contribution, if a claim for indemnification is made pursuant to said Agreement but it is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, that such indemnification may not be enforced in such case, the Indemnified Parties, on the one hand, and the Company, on the other hand, shall each contribute to the amount paid or payable as a result of such losses, claims, damages or liabilities in such proportion as is appropriate to reflect the relative fault of the Indemnified Parties, on the one hand, and the Company, on the other hand, and the relative benefits to the Indemnified Parties, on the one hand, and the Company, on the other hand, arising out of the particular matter or transaction which gave rise to such loss, claim, damage, liability or costs, and all other relevant equitable considerations shall also be taken into account. No person found liable for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation. Notwithstanding the foregoing, NatCity shall not be obligated to contribute any amount hereunder that exceeds the amount of fees previously received by NatCity hereunder.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.

Mr. Steve Grabell
May 7, 2008
Page 7

## ATTACHMENT B
## NATCITY INVESTMENTS, INC.
## SPECIAL DISCLOSURE STATEMENT

NatCity Investments, Inc. ("NatCity") is a wholly-owned subsidiary of National City Corporation ("NCC"). NatCity is a broker-dealer registered with the Securities and Exchange Commission and a member of the National Association of Securities Dealers, Inc. and the Securities Investor Protection Corporation.

NCC is also the parent of several banks, including National City Bank. NatCity is not a bank; it is a separate corporate entity from its affiliated bank subsidiaries of NCC. The obligations of NatCity are not obligations of any of its affiliate banks, and none of its affiliated banks are responsible for, or guarantee, the securities sold, offered or recommended by NatCity. Except in certain specified circumstances, securities and other investment products offered, sold or recommended by NatCity are not bank deposits or obligations, and are not insured by the Federal Deposit Insurance Corporation ("FDIC") or any other federal or state agency. NatCity will sell, as agent, banker's acceptances or certificates of deposit issued by its affiliate banks and by unaffiliated third party banks. Any certificates of deposit sold by NatCity are insured by the FDIC only to the extent that the FDIC insures the deposits of the issuing bank.

NatCity's banking affiliates may be lenders to issuers of securities that NatCity underwrites or places, in which case the proceeds of the securities offerings underwritten or placed may be used to repay such loans. Please refer to the relevant offering disclosure documents for a discussion of any such lending arrangement. Brokerage and investment advisory customers of NatCity should be aware that NatCity underwrites and deals in securities, and may buy and sell, as agent or as principal, securities as to which it renders brokerage or investment advisory services. NatCity and its affiliated banks intend to share credit information concerning their respective customers. NatCity's customers will be deemed to have consented to such sharing of information unless an objection to such disclosure is made in writing and delivered to NatCity.