IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN THE MATTER OF:                    )    Bankruptcy No. 08-14631
                                     )
                                     )
                                     )
SHAPES/ARCH HOLDINGS, LLC,           )
et al,                               )    Camden, New Jersey
                                     )    May 1, 2008
                    Debtors.         )    3:43 p.m.


                    TRANSCRIPT OF HEARING
        BEFORE THE HONORABLE GLORIA M. BURNS
            UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:            MARK E. FELGER, ESQUIRE
                            JERROLD N. POSLUSNY, JR., ESQUIRE
                            COZEN O'CONNOR
                            457 Haddonfield Road
                            Liberty View, Suite 300
                            Cherry Hill, NJ   08002

For Shapes, LLC:            KEVIN M. McKENNA, ESQUIRE
                            LATSHA DAVIS YOHE & McKENNA, PC
                            350 Eagleview Boulevard
                            Suite 100
                            Exton, PA   19341

For the United              MITCHELL B. HAUSMAN, ESQUIRE
States Trustee:             UNITED STATES DEPARTMENT OF JUSTICE
                            OFFICE OF THE UNITED STATES TRUSTEE
                            One Newark Center
                            Suite 2100
                            Newark, NJ   07102

For the Creditors'          ALAN D. HALPERIN, ESQUIRE
Committee:                  DONNA H. LIEBERMAN, ESQUIRE
                            HALPERIN, BATTAGLIA RAICHT, LLP
                            555 Madison Avenue
                            Ninth Floor
                            New York, NY   10022

APPEARANCES: (continued)

                              MICHAEL D. SIROTA, ESQUIRE
                              WARREN A. USATINE, ESQUIRE
                              FELICE R. YUDKIN, ESQUIRE
                              COLE SCHOTZ
                              25 Main Street
                              Hackensack, NJ    07601


For Arch Acquisition I:       DIANE E. VUOCOLO, ESQUIRE
                              ALAN J. BRODY, ESQUIRE
                              JOSEPH P. DAVIS, III, ESQUIRE
                              NANCY A. MITCHELL, ESQUIRE
                              GREENBERG TRAURIG
                              200 Park Avenue
                              Florham Park, NJ


For Arcus ASI Funding,        JOEL C. SHAPIRO, ESQUIRE
LLC, Arcus ASI, Inc.,         JOHN E. LUCIAN, ESQUIRE
Versa Capital:                EARL M. FORTE, ESQUIRE
                              SHLOMO TROODLER, ESQUIRE
                              BLANK ROME
                              One Logan Square
                              130 North 18th Street
                              Philadelphia, PA    19103


For Wells Fargo               JOHN R. MORTON, JR., ESQUIRE
Equipment Finance             110 Marter Avenue
and Jaguar Credit:            Suite 301
                              Moorestown, NJ    08057


For Pollution Control         JOSEPH M. GAREMORE, ESQUIRE
Financing Authority           BROWN & CONNERY, LLP
of Camden County:             6 North Broad Street
                              Woodbury, NJ    08096


For Ward Sand &               CAROL R. COBB, ESQUIRE
Materials Company,            GIANSANTE & COBB, LLC
Inc.:                         23 East Main Street
                              Moorestown, NJ    08057


For Sun Capital               BRUCE D. BUECHLER, ESQUIRE
Partners:                     LOWENSTEIN SANDLER, PC
                              65 Livingston Avenue
                              Roseland, NJ    07068

APPEARANCES:    (continued)

| For the CIT Group,<br>JPMorgan and<br>Textron Financial: | PAUL A. PATTERSON, ESQUIRE<br>MICHAEL J. CORDONE, ESQUIRE<br>GARY P. SCHARMETT, ESQUIRE<br>STRADLEY, RONON, STEVENS<br>& YOUNG, LLP<br>2600 One Commerce Square<br>Philadelphia, PA    19103 |
|---|---|
| For Pennsauken<br>Township: | STUART I. SEIDEN, ESQUIRE<br>PARKER McCAY<br>Three Greentree Centre<br>7001 Lincoln Drive West<br>Marlton, NJ    08053 |
| For Avery Dennison,<br>Borden Foods, Crowley<br>Maritime, Garrett-<br>Buchanan, Georgia-<br>Pacific Corp., Sears,<br>the Glidden Company<br>and Septa: | DEBORAH L. SHUFF, ESQUIRE<br>DRINKER BIDDLE & REATH, LLP<br>One Logan Square<br>18th and Cherry Streets<br>Philadelphia, PA    19108 |
| For SL Industries,<br>Inc.: | ROBYN F. POLLACK, ESQUIRE<br>SAUL EWING, LLP<br>Center Square West<br>1500 Market Street<br>38th Floor<br>Philadelphia, PA    19102 |
| For Quick-Way, Inc.: | TOBIN A. BUTLER, ESQUIRE<br>LITCHFIELD CAVO, LLP<br>1800 Chapel Avenue West<br>Suite 360<br>Cherry Hill, NJ    08002 |
| For DeLage Landen<br>Financial Services,<br>Inc.: | WILLIAM E. CALLAHAN, JR., ESQUIRE<br>LeCLAIR RYAN<br>1800 Wachovia Tower<br>Drawer 1200<br>Roanoke, VA    24006<br>(via telephone) |
| Audio Operator: | MARY LAMPONE |

Transcribed by:                    DIANA DOMAN TRANSCRIBING
                                   P.O. Box 129
                                   Gibbsboro, New Jersey  08026-0129
                                   Phone:    (856) 435-7172
                                   Fax:      (856) 435-7124
                                   E-mail:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

# I N D E X

ARGUMENT:                                               PAGE NUMBER

Re:   Progress of discussions

        By Mr. Felger                                              9

        By Mr. Sirota                                             11

        By Mr. Shapiro                                            12

TERMS OF THE SETTLEMENT:                                PAGE NUMBER

        By Mr. Felger                                       17, 22

        By Mr. Shapiro                                      21, 36

        By Mr. Sirota                                           22

        By Mr. Patterson                               24, 25, 38

        By Mr. Forte                                            25

        By Mr. Halperin                                         40

ARGUMENT:                                               PAGE NUMBER

Re:   Confidentiality agreement and access

        to records and the Delair site

        By Mr. Buechler                                     26, 29

        By Mr. Halperin                                         27

Re:   DIP funding

        By Ms. Mitchell                                         33

        By Mr. Davis (proffer)                                  34

        By Mr. Forte                                            35

1        (The following was heard in open court at 3:43 p.m.)

2        THE COURT:  Be seated.

3        MR. FELGER:  Good afternoon, Your Honor.  Mark

4  Felger of Cozen O'Connor on behalf of the debtors.

5        THE COURT:  Good afternoon.  I do have one person on

6  the phone.  Mr. Callahan?

7        MR. CALLAHAN:  Yes.

8        THE COURT:  This is Judge Burns and you're on in the

9  courtroom in the matter of Shapes/Arch Holdings.  Would you

10  put your appearance on the record, please.

11        MR. CALLAHAN:  Yes, ma'am.  My name is William E.

12  Callahan, Jr.  I am counsel for DeLage Landen Financial

13  Services, Inc.

14        THE COURT:  All right.  Please let me know if you

15  have any difficulty in hearing anybody and I will try to get

16  them closer to a microphone.

17        MR. CALLAHAN:  Thank you.

18        THE COURT:  Mr. Felger.

19        MR. FELGER:  Would you like appearances, Your Honor,

20  or --

21        THE COURT:  Yes, please, let's start with that.

22        MR. POSLUSNY:  Good afternoon, Your Honor.  Jerrold

23  Poslusny, Cozen O'Connor, on behalf of the debtors.

24        MR. HALPERIN:  Alan Halperin, Halperin, Battaglia

25  Raicht on behalf of the Committee.

1          MR. SIROTA:  Good afternoon, Judge.  Michael Sirota,

2     Warren Usatine, Cole, Schotz, on behalf of the Committee.

3          MR. HAUSMAN:  Good afternoon, Your Honor.  Mitchell

4     Hausman for the Office of the United States Trustee.

5          THE COURT:  Good afternoon.

6          MS. VUOCOLO:  Good afternoon, Your Honor.  Diane

7     Vuocolo and Alan Brody of Greenberg Traurig for Arch

8     Acquisition I.  I would also like to introduce two of my

9     partners in the courtroom today, Your Honor.  Ms. Mitchell,

10    who's lead bankruptcy counsel in this matter.  Her admission

11    has been already approved for pro hac.

12         THE COURT:  Good afternoon.

13         MS. VUOCOLO:  And Mr. Davis is trial counsel for

14    Arch Acquisition and his application is pending.  Objections

15    were past yesterday, and there were no objections, so an order

16    will be submitted.

17         THE COURT:  Good afternoon.

18         MR. DAVIS:  Thank you, Your Honor.

19         MR. BUECHLER:  Good afternoon, Your Honor.  Bruce

20    Buechler from Lowenstein Sandler on behalf of Sun Capital

21    Partners.

22         THE COURT:  Good afternoon.

23         MR. PATTERSON:  Good afternoon, Your Honor.  Paul

24    Patterson, Stradley, Ronon, Stevens and Young, on behalf of

25    CIT Group Revolving Credit Lenders, JPMorgan and Textron

1  Financial.  Also here with me today is my partner, Michael

2  Cordone who I believe the Court has admitted pro hac vice, as

3  well as my partner, Gary Scharmett.

4        THE COURT:  Good afternoon.

5        MR. SHAPIRO:  Good afternoon, Your Honor.  Joel

6  Shapiro, Earl Forte and John Lucian on behalf of Arcus

7  entities, and I apologize -- we've run out of chairs.  I'm not

8  judging any -- I'm not judging anybody today, Your Honor.

9  That's your job.  Thank you.

10        MR. MORTON:  John Morton for Wells Fargo Equipment

11  Finance and Jaguar Credit.

12        MR. SEIDEN:  Good afternoon, Your Honor.  Stuart

13  Seiden from Parker McCay for Pennsauken Township.

14        THE COURT:  Good afternoon.

15        MR. GAREMORE:  Good afternoon, Your Honor.  Joseph

16  Garemore from the Brown and Connery firm on behalf of the

17  Pollution Control Financing Authority of Camden County.

18        MS. SHUFF:  Deborah Shuff, Drinker Biddle and Reath

19  on behalf of Sears, Georgia-Pacific, the Glidden Company,

20  Avery Dennison, Borden Foods, Crowley Corporation, Garrett-

21  Buchanan and Septa.

22        MS. POLLACK:  Good afternoon, Your Honor.  Robyn

23  Pollack, Saul Ewing, on behalf of SL Industries, Inc.

24        THE COURT:  Mr. Felger.

25        MR. FELGER:  Yes, good afternoon, Your Honor.

1          First of all, I'd like to thank Your Honor for

2     indulging us for the entire day while a lot of parties, a lot

3     of counsel tried to work through a great number of issues,

4     very complicated issues and very serious issues.  We -- we

5     stand here at almost 4:00 this afternoon without a clear

6     direction on how to proceed with the -- with the agenda that's

7     before Your Honor.

8          We appeared this morning, believing that we were

9     likely to go forward with our agenda.  And over the course of

10    the evening and early morning hours, HIG was able to -- or

11    appeared to be able to bridge certain concerns that the

12    debtors had with respect to their competing offer -- competing

13    plan.  I think we may have raised those issues before Your

14    Honor at the last hearing.  Certainly -- well, I'm not sure

15    whether they were -- they were adequately vetted in the papers

16    that have been filed.

17         But the concerns that the debtor had were whether

18    HIG would be able to do the entire DIP that they proposed, the

19    term DIP and the revolver DIP, and if not, whether CIT would

20    remain in the facility through a plan process.  That was a

21    principal concern of ours.

22         Another principal concern we had was -- beared upon

23    certain defaults, certain covenants that were in the DIP, term

24    DIP agreement.  The debtors throughout the case have defaulted

25    under certain covenants and our term lender, Arcus, has waived

1    those defaults.  So we were concerned about bringing a new

2    lender in with those covenants in place with the possibility

3    of additional defaults going forward.

4           A third principal concern was whether HIG had a

5    commitment to do the exit financing and equity commitment

6    proposed under their plan.  And the parties worked literally

7    all night, and what was presented to us at some point this

8    morning, I'm not quite sure when, but it was a package that

9    seemed to ameliorate those concerns for the debtor.  And what

10   we believed we had at that point was a competitive plan that

11   was better than what we had presented and what we were

12   prepared to go forward with today in terms of approving a

13   disclosure statement.

14          Of course, the devil's always in the details, Your

15   Honor, and when we started to work through the issues of

16   transitioning to a process that would install HIG as the term

17   DIP lender and move forward an HIG sponsored plan, numerous

18   issues arose.  And throughout the day, we had fits and starts

19   where we thought we had a deal in place, but any time we

20   seemed to be dangerously close, new issues arose.

21          And, unfortunately, where we are at 4:00 this

22   afternoon is that we haven't been able to close the gap on all

23   of the issues that have been presented by the numerous parties

24   that have been involved in the negotiations throughout the

25   day.  And it's our view that this process could be facilitated

1    if Your Honor would entertain a chambers conference among the

2    principal negotiating parties, the principal interested

3    parties in this matter so that we can frame concerns and --

4    and hopefully obtain some guidance from Your Honor on how to

5    perhaps get to a point where the parties can proceed in an

6    amicable way to keep this business alive beyond -- beyond

7    today.

8         I haven't had a chance to vet that with the

9    principal constituents, but it's the debtors' strong desire to

10   have a chambers conference with Your Honor.

11        THE COURT:  Well, let me see what everybody else has

12   to say.  Mr. Sirota, do you think that would be valuable?

13        MR. SIROTA:  Judge, I think it might be valuable,

14   but I think the record should be more fully developed so Your

15   Honor and the parties that have been participating have a

16   little better visibility as to what's gone on in these last

17   several days and these last several hours.

18        It's not terribly complimentary to the debtor or the

19   process, but I think it's important for the Court to know.  If

20   the Court should elect thereafter that a chambers conference

21   is necessary or suitable, certainly the Committee has no

22   objection to it.

23        THE COURT:  Mr. Hausman, any -- any position on the

24   U.S. Trustee's perspective?

25        MR. HAUSMAN:  Your Honor, I think there should be a

1   little bit more on the record of what's come down and what the

2   issues are before we go into a chambers conference.

3           THE COURT:  Mr. Shapiro?

4           MR. SHAPIRO:  A lot of people are going to say

5   things on the record that you can't take away, and if we're

6   going to do something and try and do it and come up with a

7   salvageable process that works, I just don't agree that laying

8   everything out on the record is necessarily the way to get

9   there.  If we wind up there, that's fine, but we're going to

10  want to have bidders, you're going to want to have a process,

11  and putting it all on the record now I just don't think helps

12  that end for now.

13          THE COURT:  Ms. Vuocolo, Mr. Brody, whoever wants to

14  be heard?  Ms. Mitchell?

15          MS. MITCHELL:  Your Honor, we're happy to

16  participate in a chambers conference.  I think that might be

17  helpful.

18          THE COURT:  Okay.  Anybody else?  Yes.  Mr.

19  Patterson.

20          MR. PATTERSON:  Your Honor, I would agree that a --

21  that a conference I think would be very helpful.  And,

22  respectfully, I do concur with Mr. Shapiro.  I think if the

23  time comes when it's necessary for matters to be put on the

24  record, that can happen.  But I say let's -- let's take a shot

25  at talking about it.

1          THE COURT:  Yes, I -- I don't disagree, Mr. Sirota,

2     that probably that may be where we end up coming, putting

3     everything on the record, but at Mr. Felger's request, I'm

4     willing to hear what the parties have to say and see if maybe

5     we can just get some guidance as to how we're going to proceed

6     with it and then whatever comes on the record comes on the

7     record.

8          But I think it's probably -- Mr. Shapiro's probably

9     -- has a point there that maybe it's a good idea just to have

10    an amicable discussion and see where we go at that point.

11         Mr. Callahan, unfortunately, I don't know that I can

12    have you on in the chambers, but we'll be happy to let you

13    know as soon as we finish if we're going to go back on the

14    record, so you can participate by telephone again.

15         MR. CALLAHAN:  That'll be fine.  My issue is a -- my

16    client's issue is a very narrow one, and I think -- I get the

17    sense from listening to other counsel in the courtroom that

18    they're dealing with much broader and more substantial issues,

19    though.  I'm not happy to not be involved in the chambers

20    conference.

21         THE COURT:  Mr. Callahan, what we'll do is I'll have

22    one of the -- one of the counsel -- yes, Mr. Poslusny?

23         MR. POSLUSNY:  If I can get Mr. Callahan's number

24    where we can contact him, we may be able to work out his

25    issues separately, Your Honor.

1          MR. CALLAHAN:  And that's certainly fine.  I do

2     think it's a relatively simple issue that can be worked out.

3          THE COURT:  Well, I was going to suggest that once

4     we finished, one of the attorneys would get in touch with you

5     and see whether you need to be part of whatever goes on

6     afterwards or not.  Are you in your office, Mr. Callahan?

7          MR. CALLAHAN:  I am.

8          THE COURT:  Do you have any problem with putting

9     that on the record, the number?

10          MR. CALLAHAN:  No, not at all.  My direct dial is

11     540-777-3068.

12          THE COURT:  All right.  Thank you.  I'm going to

13     disconnect now, and Mr. Poslusny will get back to you and you

14     can decide whether you want to be part of anything else if we

15     have further hearings on the record.  Thank you.

16          MR. CALLAHAN:  Okay.  Thank you very much.

17          THE COURT:  Okay.  Just give me a few minutes to get

18     some chairs together and then come down to the second floor.

19     We'll see where we go from there.

20          MR. FELGER:  Thank you, Your Honor.

21          (Recess, 3:56 p.m. to 5:50 p.m.)

22          MR. FELGER:  I apologize, Your Honor.  I'm just a

23     little concerned because we don't have any lawyers from -- for

24     CIT here.

25          THE COURT:  Okay.  Did anybody get in touch with Mr.

1    Callahan?

2            MR. FELGER:  Mr. Poslusny may have, but I don't see

3    him either.

4            THE COURT:  Well, it's 6:00, I don't know if he's

5    there.  So I think we said we would have somebody just get in

6    touch with him about the -- these issues.

7            MR. FELGER:  I believe he had a purchase money

8    security interest issue in terms of whether we were trying to

9    prime his interest and I imagine we will -- we will resolve

10   his issue in the same manner we resolved -- I believe we've

11   resolved Wells Fargo's issue.

12           THE COURT:  If Mr. Callahan has a problem and needs

13   something to be discussed, we could always have a telephone

14   conference or something.

15           MR. FELGER:  We will -- we will certainly speak with

16   him and resolve his issue before we present any order to Your

17   Honor.  I see my colleague, Mr. Poslusny.

18           THE COURT:  Mr. Poslusny, did you talk to Mr.

19   Callahan?

20           MR. POSLUSNY:  I did speak to Mr. Callahan, Your

21   Honor.  I understood he was going to be dialing back in, but

22   his -- his client, DeLage, is a PSMI, a secured party.  We

23   told him that, similar to Wells Fargo, to the extent that he's

24   properly perfected and has an unavoidable lien, et cetera, et

25   cetera, et cetera, we're not looking to prime him.

1    And I believe HIG will agree with that, and CIT I

2  think will agree with that, because I think that's what's

3  already in the DIP loan orders as well as the DIP loan

4  agreements.

5    THE COURT:  Well, did he want to be part of this --

6    MR. POSLUSNY:  I thought he was going to call in,

7  Your Honor, but I told him that I would place it on the

8  record, and if he hasn't called in, I don't know what happened

9  to him.

10    THE COURT:  Mr. Felger, are there still issues

11  outstanding?

12    MR. FELGER:  I don't believe there are issues

13  outstanding.  I think, with Your Honor's assistance, and we

14  all greatly appreciate Your Honor taking the time and

15  indulging us in chambers, because I think it -- it was

16  valuable, and I believe we're here now with an agreement among

17  the parties, although I'm just a little concerned that I don't

18  have CIT's counsel or Versa/Arcus' counsel in the courtroom.

19    MS. MITCHELL:  If I could, Your Honor --

20    THE COURT:  Yes.

21    MS. MITCHELL:  -- Nancy Mitchell on behalf of Arcus.

22  They are actually in the conference room "finishing up" and

23  they will be right in.

24    THE COURT:  So they want us to go ahead?

25    MS. MITCHELL:  I put that all in quotes because

1      we've heard that before.  Let's -- I would think maybe you

2      could go through what you and the Committee had agreed to,

3      Mark, and then go from there.

4                MR. FELGER:  Okay.

5                MR. SIROTA:  I think that -- I'm going to see if I

6      can convince them to come in.

7                MR. FELGER:  Yes.

8                THE COURT:  All right.  Well, why don't I take a

9      five-minute break and try to get everybody in here.  Why don't

10     we do that?  Okay.

11               MR. FELGER:  That would be best.  Thank you, Your

12     Honor.

13               MR. SIROTA:  Thank you, Judge.

14               (Recess, 5:54 p.m. to 6:00 p.m.)

15               THE COURT:  Please be seated.  Okay.  Let's try this

16     again.

17               MR. SHAPIRO:  Sorry, Your Honor.  We were

18     endeavoring in a result of chambers to try and --

19               THE COURT:  I appreciate that.  Mr. Felger, are we

20     ready to go?

21               MR. FELGER:  Yes, we are ready to go.  Good

22     afternoon again, Your Honor.  Mark Felger of Cozen O'Connor

23     for the debtors for the record.  I'm going to try to walk

24     through where we are, what we've achieved and what we -- what

25     we intend to do over the next 24 hours and several days.

1          We're here on two motions, the motion to approve the

2     disclosure statement which we are not going forward with today

3     and a motion to approve the DIP financing motion.  Under that

4     motion, we have two DIP financing facilities, a revolver

5     facility through CIT and presently a term facility through

6     Arcus.

7          Pursuant to the settlement discussions today, what

8     we intend to do going forward is we intend to replace Arcus

9     with HIG -- I mean, I'm sorry -- with HIG in the term

10    facility.  And how we will do -- how we will do that is that

11    we will -- we intend to submit a final order approving the

12    Arcus term financing, hopefully tomorrow, and the loan, the

13    Arcus loan, will be assigned pursuant to an assignment

14    agreement from Arcus to HIG.

15         In addition, tomorrow we will submit a final order

16    approving the CIT revolver facility.  The HIG facility will

17    involve an amendment to the Arcus DIP agreement that contains

18    a number of improvements from the Arcus facility.  And some of

19    those material changes will be a reduction of interest from

20    the applicable margin, a reduction from six percent to four

21    percent.

22         The collateral, in terms of the collateral, the HIG

23    agreement will exclude avoidance actions.  The commitment fee

24    which is the unused line fee, will be reduced from two percent

25    to one and a half percent.  There's an EBITDA convenant that

1    will be eliminated.  There's a limitation on reimbursement of

2    out-of-pocket expenses to those incurred after the entry of

3    the final order.

4            The facility will be increased from 25 million to 30

5    million.  The termination fee of two percent will be

6    eliminated.  There's a material adverse change clause which

7    will be eliminated.  There's a budget variance covenant which

8    will be loosened to allow a variance of 15 percent as opposed

9    to five percent, and there will also be an elimination,

10   consideration of certain line items.

11           The agent facility fee of 40,000 a month and the

12   non-refundable collateral monitoring fee of 40,000 a month

13   will be eliminated under the -- under the amended term DIP

14   agreement.

15           There are a number of other changes as well, but

16   I've -- I believe I've hit -- hit on most of the high points.

17   Someone will correct me if I'm wrong.  So those are the

18   material changes to the -- to the term facility once we effect

19   the assignment of that -- of that loan from Arcus to HIG.

20           The game plan going forward, Your Honor, is to

21   submit, as I indicated, submit the two orders to Your Honor

22   tomorrow.  We will proceed to file a new plan which will

23   install HIG as the plan funder.  We expect to do that early

24   next week.

25           The plan will provide -- it will be essentially the

1   Arcus plan with several improvements, the most material of

2   which is an improvement in the treatment of the class five

3   holders of general unsecured claims and the -- the HIG

4   sponsored plan provides for a $5 million fund to be paid to

5   holders of allowed general unsecured claims.

6        The plan will also provide for a competitive

7   process.  That competitive process will be negotiated among

8   the parties including a sales consultant that the debtors have

9   agreed to retain promptly.  Our hope is to get a sales

10   consultant on board over the next two to three business days

11   and that the -- the proposed process with the -- with the

12   sales consultant and reach an agreement among the major

13   parties on what that process ought to look like and move

14   forward with a motion to approve that process on notice to

15   interested parties.

16        The order that we intend to submit tomorrow, it is

17   intended that we will attach a draft of a plan that will be in

18   substantially final form.

19        In connection with the placement of Arcus with HIG

20   in the -- in the term facility, that agreement was reached

21   among the parties.  And the material terms of that agreement,

22   and the parties will correct me if I miss something, is that

23   $600,000 will be paid to Arcus as a termination fee; $750,000

24   will be paid to Arcus for their legal fees subject to review

25   for reasonableness; a $50,000 fee will be paid to Arcus in

1       connection with the assignment of the loan to HIG.

2              There will be an exchange of mutual releases.  Arcus

3       has agreed to cooperate in the transition of the loan and the

4       plan position to HIG, and Arcus will be resigning as the

5       manager of the debtors.  I believe I've covered the material

6       terms of that agreement, but folks will correct me and

7       embellish, if necessary.

8              MR. SHAPIRO:  Your Honor, I don't mean to interrupt

9       Mr. Felger, but I will on that last point --

10             MR. FELGER:  Okay.

11             MR. SHAPIRO:  -- where we're going to resign as

12      manager.  I've been told by the corporate types that's subject

13      to adjustment because I don't know that the current agreement

14      allows for our resignation.  It may require an assignment of

15      it somewhere or a termination of the first amendment, whatever

16      it is -- the concept is, that at the end of the day, as the

17      manager, we will be gone, I just don't know that it can be

18      accomplished that way.

19             MR. FELGER:  Right.  I might have gotten ahead of

20      myself.  I've had discussions on my end.  Mr. Shapiro's had

21      discussions on his end.  We haven't talked about that as yet,

22      but we will.

23             THE COURT:  The result will be the -- the removal in

24      some way of Arcus in their management position, but you'll, I

25      guess, put together as part of the order that you submit, the

1   way that you're going to take --

2             MR. SHAPIRO:  How we're going to resolve that.

3             MR. FELGER:  Correct.  Correct, Your Honor.  And I

4   guess what I ought to do at this point is cede the podium to

5   folks who would wish to be heard.  I think that covers sort of

6   the high points.  The one thing we will want to do is -- is

7   have HIG represent on the record that they intend to fund

8   subject to the entry of the order tomorrow and that they have

9   the commitments in place to fund the plan that's been

10  negotiated and is in substantially final form at this point.

11            THE COURT:  All right.  Well, let's -- why don't we

12  start with having everybody say what they want to, and then,

13  Mr. Felger, I'll give you an opportunity to call your witness.

14            MR. SIROTA:  Judge, if the Court please, Michael

15  Sirota, Cole Schotz, co-counsel to the Committee.  I'd also

16  like to thank the Court for the time in chambers.  I'm glad I

17  thought of the idea and recommended it to the Court.

18            With respect to Mr. Felger's comments on the

19  settlement, I'd like to add or clarify a few things.  First,

20  all of the settlement terms will be imbedded in this final

21  order.  All of us, of course, reserve our respective rights to

22  make sure it embodies all of the terms of settlement.

23            Secondarily, the Committee, as well as HIG, have

24  already agreed to a sales process.  It's in the plan of

25  reorganization.  The understanding is that the sales

1    consultant will get to weigh in on that and give us his or her

2    advice, understanding that we're not going to hold up the

3    process in moving it along dependent upon the retention of the

4    sales consultant and the time that he or she may need.

5         With respect to the Arcus fee of $50,000 for the

6    assignment, that's an obligation directly of HIG.  It does not

7    come from the estate.  All of the consideration being given to

8    Arcus is conditioned upon their cooperation, that they will

9    facilitate both the financing of this enterprise until the

10   assignment is effectuated to HIG as well as cooperate with HIG

11   in the assignment of their position.

12        With respect to the sales consultant, the Committee,

13   of course, must agree to the person selected together with the

14   debtor.  And we also have to work out how we're going to

15   handle some interim due diligence so that we can get people

16   involved in the process while we're moving some paperwork

17   around.

18        I believe those are the only clarifications I have,

19   although, I'm not sure how we ended up with the CIT/Versa part

20   of the equation.

21        THE COURT:  Mr. Patterson.

22        MR. SIROTA:  Oh, I'm sorry, Judge.  The other part

23   of it is that with respect to -- as part of the component of

24   the settlement with Versa, HIG has agreed to fund $300,000 of

25   additional money.  That will be built into their overbid

1    protection as part of the sale process.

2            THE COURT:  Mr. Patterson, are you ready to address

3    it or are you still waiting for --

4            MR. PATTERSON:  Well, I'm ready -- if your question

5    is can I address it with finality at the moment, Your Honor, I

6    cannot.  I can inform the Court as to where we are at the

7    moment, if you would like that, or if you just want us to --

8            THE COURT:  Well, I just noticed that Mr. Shapiro

9    just stepped out, so I thought maybe we should await his

10   return.

11           MR. PATTERSON:  He did.  His partner is here.  But

12   the long and the short of it is, a few developments happened

13   literally within the last five minutes that have called into

14   question a couple of items that at least we felt were settled

15   based on our discussions with folks.  I hope those can get

16   resolved in a way we can report a resolution to you, but if

17   not, we'll tell you what they are and let Your Honor rule.

18           And I'm sorry, I was actually thinking about the --

19   what we're trying to work out, this last issue.  I take it Mr.

20   Felger did -- did say, subject to having all these issues

21   worked out, we are prepared to submit a final order that has

22   been agreed upon.  Counsel and I -- the few remaining items

23   that were unresolved as of this morning, have been resolved,

24   so I don't think that that part of it will be an impediment.

25   And we are prepared, again subject to working these issues

1    out, to stay in as the DIP financer.

2            THE COURT:  Thank you.

3            MR. PATTERSON:  Thank you, Your Honor.

4            MR. FORTE:  Your Honor, Earl Forte for Arcus.  Mr.

5    Shapiro is currently talking to CIT in the vestibule.  The

6    only point I wanted to make was at this stage right now, the

7    releases that we are giving to CIT do not include -- they come

8    up through now.

9            They will not include anything under the March 18th,

10   2008, commitment letter.  Parties' rights are preserved to

11   that, and we're not intending to release CIT from any

12   obligations under that.  I just wanted to make that point for

13   the record, and we'll see what Mr. Shapiro says when he's

14   done.  Thank you.

15           MR. PATTERSON:  Your Honor, and for the record, I

16   think counsel has just highlighted what is the issue

17   obviously.  We are satisfied with the release between and

18   among the parties.  Our view is it does include the exit

19   commitment that is attached to the plan supplement that was

20   filed.  That is the issue that we're discussing.

21           THE COURT:  Well, hopefully, you can resolve it, or

22   I'll have to get involved with that, and we'll see where that

23   leaves us when we finish everything else.

24           MR. SIROTA:  Judge, we're not quite sure what that

25   means, but the Committee's reserving its rights to the extent

1    that it in any event involves or implicates the sale process.

2          MR. BUECHLER:  Your Honor, on a separate issue, I'd

3    like to raise it now on behalf of Sun Capital --

4          THE COURT:  Would you come up to the microphone.

5          COURTROOM DEPUTY:  And please make your appearance,

6    please.  Thank you.

7          MR. BUECHLER:  Bruce Buechler from Lowenstein

8    Sandler on behalf of Sun Capital Partners.  We represent a

9    potential bidder who has expressed an interest both prior to

10   the petition date and since the Chapter 11 petitions were

11   filed with an interest in bidding, and to date, we have not

12   been presented with a confidentiality agreement despite asking

13   or access.

14          And I don't know if you want to try and deal,

15   because the issue we're told is that we'll get a

16   confidentiality agreement soon.  We'll get access to the

17   financial data which is great.  The other aspect that we need

18   is the ability to get access to a site visit at the Delair

19   plant facility which the debtor has said no to.

20          And we may not resolve that issue tonight, but we

21   want the Court to be aware that Sun Capital is committed that

22   if we get our due diligence, the financial and other data

23   we've asked for, which the debtor knows what it is, and access

24   to the facility, within seven days we can respond to them and

25   tell them whether we are going to move forward with an offer

1    and what the terms are as a competing bidder or not.

2         The debtor has to date said no to that access, and

3    if we can resolve that this evening with Your Court's -- with

4    Your Honor's assistance, great.  If you want to put that off

5    for another date until they get us the confidentiality

6    agreement, but we'd like to move forward sooner than later and

7    feel that we've been stymied in even getting the proposed

8    confidentiality agreement.

9         THE COURT:  Well, I would say that I do recognize

10   that a lot of things have been going on, but that should be

11   resolved.  Your issue should be resolved now based on what --

12   everything else being resolved.  Mr. Halperin.

13        MR. HALPERIN:  Yes, Your Honor.  As the Court is

14   aware, that was a concern for the Committee and something that

15   we had been addressing.  And that will be resolved we believe

16   through the process.  There is now going to be a sale

17   facilitator, whatever title we're going to call this person,

18   that is going to run that process to make sure that

19   appropriate materials, information, et cetera, are given.

20   I've had conversations with Mr. Buechler --

21        THE COURT:  And there will be an opportunity for

22   that information to be shared and for them to make an offer if

23   they are interested, correct?

24        MR. HALPERIN:  Your Honor, from the Committee's

25   perspective, may the person -- may the person with the largest

1    dumptruck full of cash win.

2              THE COURT:  So --

3              MR. HALPERIN:  Having said that, we do recognize

4    that it is a running business, that we -- now that everybody

5    is pulling in the same direction, we want to make sure that

6    it's done in a coordinated, organized fashion.

7              I'm grateful for Mr. Buechler's appearance here

8    today.  I'm grateful for his client's continued interest.  We

9    do want to work with them.  We said it before; we'll say it

10   now.  There will be a confidentiality agreement forthcoming.

11   There are materials that HIG got.  The agreement now is that

12   those can be started to be disseminated to others.  There are

13   going to be other issues, other requests.  These are the kinds

14   of things we want the sale facilitator in to make sure that we

15   have a third party addressing that, coordinating it, dealing

16   with it and calling balls and strikes.

17             And the answer is yes, it will be dealt with, but I

18   don't think it has to be here today, because I think we don't

19   want to tie that person's hands until we have them in and we

20   know it.  But we certainly want them in and we want them to

21   participate.

22             THE COURT:  And what's been represented to the

23   Court, Mr. Buechler, is there's going to be an opportunity

24   which will give your client sufficient -- there will be

25   sufficient opportunity for your client to get the materials,

1   to review and make a determination, make an offer and have

2   that be considered.

3        MR. BUECHLER:  And the point that I just want to

4   drive home is it's not just access to the financial

5   information and data.  I've spoken to the client today.  What

6   they also want is the site visit which the debtor has so far

7   said no to.  We can deal with the sale facilitator with that

8   hopefully next week.  I just want to alert Your Honor to the

9   fact that that may be an issue, and if so, we'll be back if we

10  want to participate fully in the sale process.

11       THE COURT:  I don't really think it's going to end

12  up being -- to me, everything gets resolved here that's been

13  represented.  I wouldn't think that it'll be a problem, giving

14  you the access that you need.

15       MR. BUECHLER:  Thank you.

16       THE COURT:  Because everybody seems to be in that

17  same general direction.

18       MR. BUECHLER:  Thank you, Judge.

19       THE COURT:  Mr. Felger.

20       MR. FELGER:  I would just add that the debtors have

21  very serious concerns about the site visit, given they are a

22  true competitor with the same customer -- customer base.  So

23  it's a very sensitive, very delicate issue for the debtors.

24  And I think it's -- it's crucial that we allow the sales

25  consultant to come in, understand this, who's been through

1    this before, and can put the right restrictions and parameters

2    on that sort of access.

3              THE COURT:  And that's -- but my understanding of

4    the -- of the big picture is that there's going to be an

5    opportunity for interested parties.  So that if Mr. Buechler

6    can just be a little patient, that should be something that

7    will be able to be resolved.

8              MR. SHAPIRO:  Absolutely.  The Committee wants

9    people participating.  We just want to make sure that we do it

10   right and that, since we've all agreed to this party, and it's

11   someone that everybody is going to be consenting into in terms

12   of HIG, the debtor, the Committee, that it's someone that

13   we're all going to be comfortable with, someone that

14   everybody's comfortable with, the responsible party, and we

15   just want to make sure that that's the person that's directing

16   the --

17             THE COURT:  Okay.

18             MR. HAUSMAN:  Your Honor, Mitchell Hausman from the

19   U.S. Trustee's Office, and I'm just trying to understand the

20   timing of when the order will be submitted and entered.  As

21   you know, tomorrow's the Bench/Bar Conference.  I would like

22   the opportunity to see the order with other people from my

23   office, and -- I heard someone say they had visions of the

24   order being entered tomorrow.  I just wanted to know if that

25   was --

1          THE COURT:  Well, I was going to get into that

2    because I will be at the Bench/Bar Conference, but I'll

3    probably be back in the later afternoon.  I don't know what

4    the -- whether there's a need for it to be entered tomorrow or

5    it can be entered on Monday and made effective as of Friday.

6    I don't know if that's -- how that works with the parties.  If

7    it's necessary, I'll make sure that I see it tomorrow and see

8    if there's issues that -- that are involved.  Mr. Felger.

9          MR. FELGER:  Yeah.  We have some concerns regarding

10   the need to access the term facility tomorrow versus Monday,

11   and we'd certainly -- we're certainly going to endeavor and

12   work as hard as we can get to get that done by tomorrow so we

13   don't have any -- any concerns with respect to operations.

14         THE COURT:  If you get it here tomorrow, I will, you

15   know, try to come back in or get a copy so I can look at it.

16   I mean, generally, the orders that I'm anticipating, it's not

17   going to be something that I can look at on a Blackberry.  I

18   mean, I'm really going to have to go through and check the

19   entire order.  So I need time to do that myself.  That's all

20   I'm saying.

21         MR. BRODY:  Your Honor, our goal is to get a draft

22   out to everybody as early tonight as possible.  I say that --

23   the word early -- with great caveats, to regulate --

24         THE COURT:  Right, in context --

25         MR. BRODY:  -- so that everybody can get their

1  comments in by either late tonight or the first thing tomorrow

2  morning. So at least it's at chambers, and I know there are a

3  lot of people who would like to get the document after

4  everybody's received comments as early as possible. That's

5  what we're endeavoring to do.

6          COURTROOM DEPUTY: May I have your appearance,

7  please?

8          MR. BRODY: Alan Brody, Greenberg, Traurig.

9          MR. SIROTA: Judge, I think -- I think the objective

10  would be to get to you tomorrow sometime a final order, but

11  perhaps what makes the most sense is that we get a bridge

12  order that carries the company until Monday, so that there's

13  no shortage of financing while Your Honor can digest the order

14  and the parties can submit --

15          THE COURT: Is that -- does that work for everybody

16  else? I thought that was --

17          MR. FORTE: Your Honor --

18          THE COURT: -- yes?

19          MR. FORTE: If counsel's thoughts --

20          THE COURT: Can you just come up to the microphone,

21  please.

22          MR. FORTE: Excuse me. I'm sorry, I apologize, Your

23  Honor. Earl Forte. If they're talking our DIP funding till

24  Monday, we haven't agreed to do that.

25          MR. SIROTA: Well, then, we -- we probably don't

1   understand what cooperation means, because I thought that the

2   higher exercise was to facilitate --

3        THE COURT:   I did think -- no, but I did think that

4   there was going to be a one-to-two-day financing --

5        MR. SIROTA:   Right.

6        THE COURT:   -- interim -- I thought that's what was

7   said downstairs, just to carry things until everything got

8   finalized and taken out completely.   Is it --

9        MR. FORTE:   Your Honor, may I -- may I speak to Mr.

10  Shapiro, my partner, for a moment?

11       THE COURT:   Sure.

12       MR. FORTE:   Thank you.   I apologize.

13       THE COURT:   Should we take a little break?   Okay.

14       MS. MITCHELL:   Your Honor, Nancy Mitchell on behalf

15  of Arch Acquisition, HIG Portfolio Company.   I could actually

16  confirm on the record, which I believe Mr. Felger wanted me to

17  do, that HIG does -- is prepared to fund the $25 million --

18       THE COURT:   Well, why don't we do that.

19       MS. MITCHELL:   -- the $25 million DIP facility, you

20  know, 25 under the -- under the order because we have to do a

21  negative notice on the 30.   We're prepared to fund our DIP

22  facility and we have funds available to do that.   As soon as

23  the order is entered, the documents are final, and the

24  conditions which are very limited in our document are met,

25  we're prepared to fund.

1        We also have provided the debtor with a commitment

2   letter for the exit financing in the amount of $90 million,

3   which is available to -- which is available to the debtor and

4   will be available, obviously, subject to the conditions

5   contained therein.

6        I make that representation on the record on behalf

7   of our client.  If you would like us to proffer testimony or

8   put Mr. Ozbolt from HIG on the stand, we'd be happy to do

9   that.

10        THE COURT:  No, Mr. Felger, you don't want that?

11        MR. FELGER:  I expect that it'll be done through a

12   proffer, have Mr. Ozbolt represent that everything that was

13   said by counsel is true and correct.  And unless somebody else

14   wanted to cross, we'd be fine with that.

15        MR. MITCHELL:  All right.  So we'll proffer Mr.

16   Ozbolt.  I'm going to let my colleague, Mr. Davis, do that.

17        MR. DAVIS:  Thank you, Your Honor.

18        HIG, Arch Acquisitions, would proffer the testimony

19   of Sean Ozbolt.  Mr. Ozbolt is here in court with us today.

20   He's up from Miami.  He is a principal at HIG.  He has --

21   would be prepared to testify that HIG has approved the funding

22   in the contemplated DIP that you have heard about today, that

23   he has a commitment to deliver to the Court that that funding

24   will go forward and that those funds are ready to be wired as

25   soon as tomorrow, assuming that all the appropriate orders are

1   finalized and the documentation is ready to go.  And that, as

2   a result, HIG is ready, willing and able to perform its

3   obligations under the agreements before the Court today and

4   the DIP.

5              THE COURT:  Anybody have any reason to question the

6   witness or any questions for Mr. Davis?

7              MR. FORTE:  Your Honor, Earl Forte for Arcus.

8   Because of the issues we have with CIT, we want to make sure

9   we're on the record preserving our rights to call Mr. Ozbolt

10  to the stand to examine him.  That's the only purpose of what

11  I want to say, because we have a shifting situation, we want

12  to reserve our right to examine him and test the bona fides of

13  the commitments he has, particularly from CIT.

14             THE COURT:  You want to do that now?

15             (Pause in proceedings.)

16             MR. SHAPIRO:  Can we impose upon you for a five-

17  minute break?

18             THE COURT:  Just five minutes.

19             MR. SHAPIRO:  I mean, you'll come back in five and I

20  won't leave the room.

21             THE COURT:  Okay.

22             MR. SHAPIRO:  Okay.

23             MR. DAVIS:  Your Honor, may I finish my proffer --

24             MR. SHAPIRO:  I'm sorry.

25             MR. DAVIS:  -- before that happens?

1              THE COURT:  All right.

2              MR. DAVIS:  Thank you.

3              To finish the proffer of Mr. Ozbolt's testimony, he

4    would also testify, were he to be called to the stand, that

5    HIG has issued a commitment to provide the funding necessary

6    for the exit financing as contemplated under the plan or the

7    draft plan that is before the Court and that will ultimately

8    be, we hope, confirmed and the transaction concluded.

9              Thank you, Your Honor.

10             THE COURT:  All right.  Anybody else that wants to

11   be heard before we take the five-minute break?

12             All right.  Five minutes, we'll be back.  Hopefully,

13   we can wrap up these other few things.

14             (Recess, 6:28 p.m. to 6:36 p.m.)

15             THE COURT:  Be seated.

16             MR. SHAPIRO:  Your Honor, in the spirit of

17   cooperation, we have confirmed with the Committee that the

18   debtors advise us that they may need additional advances,

19   unfortunately, for tomorrow until we can get this order

20   entered on Monday.  So we've agreed to advance based on what

21   they're saying under the existing terms and documents and

22   orders not to exceed $300,000 which is what they told us they

23   will need.  And that goes through the end of business on

24   Monday.

25             If we're having a problem and it's not done on

1  Monday, then we may have to do something else, but we're

2  agreeing --

3           THE COURT:   I'll be available on Monday, so --

4           MR. SHAPIRO:   -- in cooperation -- through then.

5  Okay.

6           THE COURT:   -- if there's something that you need

7  the Court for, that's not a problem.   I think that -- that

8  resolves I think many of the issues.   So that gives --

9           MR. SHAPIRO:   Okay.

10          THE COURT:   -- all of you a chance to review all of

11 the terms and conditions --

12          MR. SHAPIRO:   Correct.

13          THE COURT:   -- and finalize everything --

14          MR. SHAPIRO:   Now, with respect to the --

15          THE COURT:   -- and have it signed and be in effect.

16          MR. SHAPIRO:   -- last, hopefully last issue, with

17 CIT, and then counsel can stand up and confirm it, this is

18 what we think we've agreed to.

19          THE COURT:   Okay.

20          MR. SHAPIRO:   With respect to CIT and the Arcus

21 entities, we are entering into mutual releases today which

22 will include any and all alleged claims or whatever under the

23 letter agreement of March 18th, fully released up through

24 today.

25          With respect to after the closing, the letter is --

1  the letter stays there.  They're reserved their rights.  We've

2  reserved our rights.  Nobody's casting aspersions on anybody.

3  We're hoping it's irrelevant and we never have to see any

4  other Judge about it again, but that gets us through today.

5         THE COURT:  Right.  But you're reserving your rights

6  to whatever happens thereafter, right?

7         MR. SHAPIRO:  Correct.

8         MR. PATTERSON:  Your Honor --

9         THE COURT:  Mr. Patterson.

10        MR. PATTERSON:  -- that's correct.  And, again, I --

11  we'll look at the language of the release.  I don't know, is

12  the release going to talk just about the letter or the whole

13  Arcus involvement, Versa involvement?  I thought that's what

14  was contemplated --

15        MR. SHAPIRO:  No, no.  Any --

16        MR. PATTERSON:  Anything.

17        MR. SHAPIRO:  -- anything in this transaction.

18  We're not trying to be cute.  Anything --

19        MR. PATTERSON:  No, no, I know you're not.

20        MR. SHAPIRO:  -- anything in this transaction

21  relating to what we've done up to the date, have a clean

22  slate.  Everybody's fine.

23        MR. PATTERSON:  Yeah.  And we obviously reserve all

24  of our rights as does counsel's client.

25        MR. SHAPIRO:  Okay.

1             MR. PATTERSON:  The one thing I did forget to -- I'm

2     sorry.  Are you done?

3             MR. SHAPIRO:  Yes.

4             MR. PATTERSON:  Okay.

5             MR. SHAPIRO:  Thank you.

6             MR. PATTERSON:  You're welcome.  The one thing I did

7     forget to address, Your Honor, in light of what just happened,

8     our interim financing order, I think number three, expires

9     today.  It sounds like we're bridging through Monday if I'm

10    hearing counsel correctly.  Would Your Honor like another

11    bridge order?  Would you do something -- so ordered from the

12    record, so that you don't have to be bothered?

13            THE COURT:  I'm willing to so order from the record

14    if everybody is okay with that.  It's been represented what

15    the advances will be, that the maximum is $300,000, that it

16    only takes you through, let's say, the end of business on

17    Monday, correct?

18            MR. SHAPIRO:  On Monday, correct.

19            MR. PATTERSON:  Right.

20            THE COURT:  Which -- let's just put a time on it,

21    5:00 p.m. on Monday?

22            MR. SHAPIRO:  Okay.

23            THE COURT:  And absent everything being resolved,

24    which I hope it will be, you can contact me on Monday, and we

25    can have a conference if we need to, or you can renegotiate or

1  whatever you need to do, but I'll look to be getting the order

2  hopefully on Monday which will finalize it and you won't need

3  anything beyond that time.  That's the way I look at it.

4        MR. PATTERSON:  Okay.  So we are so ordered in terms

5  of a further interim extension through Monday.

6        THE COURT:  And I order that that interim extension

7  will extend under the same terms as it was for both CIT and

8  Arcus through 5:00 p.m. on Monday.

9        MR. HALPERIN:  Just that -- yes, sorry, Your Honor

10  -- Alan Halperin on behalf of the Committee.  I think -- well,

11  obviously, to the extent Your Honor needs to take until Monday

12  and the parties need to get it done, the game plan is to get

13  an order to you by tomorrow because the longer this sits out,

14  the more things will start to drift.

15        THE COURT:  That's fine.  If the order is here, I

16  might get a chance to even look at it tomorrow afternoon.  But

17  I'm not anticipating that you will have it here before the

18  afternoon.

19        MR. HALPERIN:  That's -- I would agree with that.

20        MR. SHAPIRO:  I guess, Your Honor --

21        THE COURT:  So if it's here, I will look at it

22  either Friday later or over the weekend, and I expect that by

23  Monday, it should be finalized.  If there's issues that come

24  up, you can call my chambers.  We'll try to do what we have to

25  do to either talk about it on -- tomorrow or Monday.

1          MR. FELGER:  Can we reserve time with Your Honor on

2   Tuesday in case we need to come running back for some

3   assistance?

4          THE COURT:  Well, if you get past Monday, I don't

5   know that you're going to -- how about if I -- how about if we

6   set up a telephone conference for Monday afternoon if you need

7   it.

8          MR. SHAPIRO:  Okay.  Right.  Why don't we do a

9   telephone conference then, say if we'll need it --

10          MR. FELGER:  Right.

11          MR. SHAPIRO:  -- otherwise, we'll be happy -- and

12   maybe she'll have the order.

13          THE COURT:  Right.  If I have the order by then --

14   then we won't need it.  What's -- what do we have on Monday

15   afternoon, Mary?

16          (Pause in proceedings.)

17          THE COURT:  All right.  I have a telephone

18   conference at 2:00 which I don't think will take that long.

19   How about if we say 3:00 on Monday?

20          MR. FELGER:  Terrific.

21          MR. SHAPIRO:  Okay.

22          THE COURT:  It'll be reserved, Mr. Felger, I'll make

23   you responsible to set it up if it becomes necessary to have

24   it.  If I have the order, then --

25          MR. FELGER:  Okay.

1          THE COURT:  -- then you won't need it, and if I have

2    a problem, we've got that time set aside if we need to have a

3    conference with regard to any of the terms that are in there

4    or if there's any questions.

5          MR. FELGER:  Thank you, Your Honor.

6          THE COURT:  All right.  Just one more thing, I have

7    a whole slew of orders shortening time from a variety of

8    people.  What do you want me to do with that in light of

9    what's happened?

10         MR. HALPERIN:  Once the order gets entered, I

11   believe that's going to be resolving those issues.  I think

12   everything's been scheduled for May 9th.  We'd ask you to

13   leave that for now.

14         THE COURT:  Well, it hasn't been schedule yet.  I

15   haven't signed the orders yet.

16         MR. HALPERIN:  Oh, I'm sorry.

17         THE COURT:  But I could sign them and schedule them

18   for the 9th or I could just hold off until Monday?

19         MR. HALPERIN:  Hold off until Monday and hopefully

20   the order will be entered and all these issues will become

21   moot.

22         THE COURT:  Okay.  And then anything that's left, we

23   can always deal with that.

24         MR. BRODY:  Your Honor, this would also include HIG

25   and Arch Acquisition's motion to terminate exclusivity which

1   Your Honor already signed, and that's on for May 9th.

2          THE COURT:  That's already -- I think already on the

3   May 9th.  I'm not doing anything with that, but I was going to

4   -- I was holding these others to see what everybody wanted to

5   do with them once we saw what was happening today.  So I'm

6   just going to wait till Monday.  It may not be necessary to

7   enter those other ones --

8          MR. BRODY:  Or to go forward on them.

9          THE COURT:  -- and your matter may be resolved, too.

10  But for today's purposes, I'm just going to wait on the OSTs.

11         MR. BRODY:  Thank you.

12         THE COURT:  Anything else that anybody else needs to

13  put on the record or bring up to the Court?

14         MR. FELGER:  I think that's all we have, Your Honor.

15         THE COURT:  All right.  I want to thank everybody

16  for the time that was spent today which I know was

17  considerable, and I -- and although I wasn't part of what

18  happened before that, I do recognize that -- that was the --

19  today was the culmination of many, many hours for everybody

20  over the days that preceded today.  And I -- I think, in my

21  estimation, that's how this process works with good lawyers

22  talking to each other and resolving issues and getting matters

23  resolved, and so I thank you all for that service that you

24  performed that led to --

25         MR. SHAPIRO:  Thank you.

1              MR. FELGER:  And sometimes yelling at each other.

2              THE COURT:  And that, too.

3              MR. SIROTA:  But no hitting.

4              THE COURT:  -- which led us to being able to

5       hopefully get a final resolved in this matter.

6              MR. FELGER:  Thank you, Your Honor.

7              MR. SHAPIRO:  Thank you.

8              MR. PATTERSON:  Thank you, Your Honor.

9              (Proceedings concluded at 6:44 p.m.)

10                                * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**C E R T I F I C A T I O N**

I, Lois A. Vitarelli, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*[signature]*                    May 14, 2008

LOIS A. VITARELLI

DIANA DOMAN TRANSCRIBING