| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY | |
| Robyn F. Pollack (RP 8974)<br>SAUL EWING LLP<br>A Delaware Limited Liability Partnership<br>750 College Road East, Suite 100<br>Princeton, NJ 08540-6617<br>(609) 452-3100 (phone)<br>(609) 452-3122 (fax)<br>Attorneys for SL Industries, Inc. | Case No. 08-14631 (GMB) |
| | Judge: Gloria M. Burns |
| In re:<br><br>SHAPES/ARCH HOLDINGS L.L.C., et al.,<br><br>Debtors. | Chapter: 11<br><br>Hearing Date: May 23, 2008 at 10:00 a.m. |

## OBJECTION OF SL INDUSTRIES, INC. TO JOINT DISCLOSURE STATEMENT FOR THE DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION

SL Industries, Inc. ("SL Industries"), by and through its undersigned attorneys, hereby files this objection to the adequacy of the Joint Disclosure Statement for the Debtors' Second Amended Joint Plan of Reorganization (the "Second Amended Disclosure Statement"). In support thereof, SL Industries respectfully represents as follows:

### Background

1. On March 16, 2008 (the "Petition Date"), Shapes/Arch Holdings, L.L.C. and its subsidiaries, Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C. and Ultra L.L.C. (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., (the "Bankruptcy Code"). Since filing their petitions for relief, the Debtors have continued to operate their businesses and have maintained

1072898.2 5/21/08

possession of their assets as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for administrative purposes only.

2. Concurrent with the filing of their bankruptcy petitions, the Debtors filed their Joint Disclosure Statement for the Debtors' Joint Plan of Reorganization (the "Initial Disclosure Statement") and their Joint Plan of Reorganization (the "Initial Plan"). On or about April 14, 2008, SL Industries filed the Objection of SL Industries, Inc. to Joint Disclosure Statement for the Debtors' Joint Plan of Reorganization [DI 152] (the "Initial Objection"). Although the hearing with respect to the Initial Disclosure Statement was adjourned, on or about April 24, 2008, the Debtors filed their Joint Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization and their First Amended Joint Plan of Reorganization.

3. On or about May 12, 2008, the Debtors filed their Second Amended Joint Plan of Reorganization (the "Second Amended Plan") and the Second Amended Disclosure Statement. Although the Debtors have addressed in the Second Amended Disclosure Statement some of the issues raised by SL Industries in the Initial Objection, several significant issues remain. For the reasons set forth below, SL Industries objects to Court approval of the Second Amended Disclosure Statement, which is inadequate and cannot be approved as a matter of law.

### Preliminary Statement

4. On the Petition Date, the Debtors filed their Statements of Financial Affairs (the "Statements") and Summary of Schedules (the "Schedules"). The Schedules list SL Industries as holding an unsecured, non-priority, unliquidated, contingent and disputed claim by virtue of "environmental lawsuits." Schedules, Exhibit F.3. SL Industries expressly reserves all rights regarding the factual and legal accuracy of such characterization and whether some or all

of its present and future rights against the Debtors are "claims" under the Bankruptcy Code. Nothing contained herein shall be construed as a waiver of such rights.

### Objection

**A.** **Legal Standards**

5. Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain "adequate information," which the Bankruptcy Code defines as:

> Information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; . . .

11 U.S.C. § 1125(a)(1). Typically, adequate information includes:

    (a)    the circumstances that gave rise to the filing of the petition;

    (b)    a complete description of the available assets and their value;

    (c)    the anticipated future of the debtor;

    (d)    the source of the information provided in the disclosure statement;

    (e)    a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

    (f)    the condition and performance of the debtor while in Chapter 11;

    (g)    information regarding claims against the estate;

    (h)    a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

(i) the accounting and valuation methods used to produce the financial information in the disclosure statement;

(j) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

(k) a summary of the plan of reorganization;

(l) an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

(m) the collectability of any accounts receivable;

(n) any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

(o) information relevant to the risks being taken by the creditors and interest holders;

(p) the actual or projected value that can be obtained from avoidable transfers;

(q) the existence, likelihood and possible success of non-bankruptcy litigation;

(r) the tax consequences of the plan; and

(s) the relationship of the debtor with affiliates.

15 Collier on Bankruptcy ¶ 1125.02[2].

6. As stated above, although the Debtors have attempted to address some of the issues raised by SL Industries in the Initial Objection, the Second Amended Disclosure Statement still does not satisfy these requirements and cannot be approved as a matter of law.

**B.    Specific Objections**

7. Environmental Claims Classification. The Second Amended Disclosure Statement appears to place the Environmental Protection Agency ("EPA"), the New Jersey Department of Environmental Protection ("NJDEP") and Environmental Claims into Class 9 and provides that funding for the distributions to holders of claims in Class 9 shall be made from

proceeds of applicable insurance. However, Section C of the Second Amended Disclosure Statement provides that "except for Claims of EPA/NJDEP, all other environmental claims (or claims of third parties relating to environmental claims and including those set forth in Sections III and IV of Schedule 4.5 of the Plan) are treated as Class 10 General Unsecured Claims and will be discharged." In addition, the chart included in the Second Amended Disclosure Statement which sets forth the classes, estimated amount of allowed claims and estimated recoveries lists Class 9 as including only claims of the EPA/NJDEP. While it appears that the Debtors intended Class 9 to include Environmental Claims, the Second Amended Disclosure Statement should designate clearly in which class Environmental Claims are included.

8. <u>Treatment of EPA/NJDEP Claims</u>. The Second Amended Disclosure Statement fails to provide adequate information with respect to the Second Amended Plan's proposed treatment of the environmental claims against the Debtors of the EPA and the NJDEP, as well as certain related matters. As stated above, the Second Amended Plan provides for the treatment, as Class 9 Claims, of certain claims of the EPA and the NJDEP. Specifically the Second Amended Plan states that:

> [the] EPA shall receive the sum of $300,000 in full and complete satisfaction of its claims set forth in Section I of Schedule 4.6[1] attached hereto and the sum of $25,000 in full and complete satisfaction of its claims set forth in Section II of Schedule 4.6 attached hereto. The NJDEP shall receive the sum of $25,000 in full and complete satisfaction of its claims set forth in Section II, III and IV of Schedule 4.6 attached hereto. Funding for these distributions and other distributions to holders of [Environmental] Claims identified on Schedule 4.6 shall be made solely from proceeds of applicable insurance policies.
> Second Amended Plan at Section 4.4.

---

[1] While the Second Amended Plan references Schedule 4.6, the Schedule actually attached is titled Schedule 4.5.

The Second Amended Disclosure Statement still does not disclose even the most fundamental information about this proposed treatment – whether it is the result of one or more negotiated settlements with the EPA and/or the NJDEP or, alternatively, has been proposed by the Debtors unilaterally. Obviously, this is a critical distinction. If the proposed treatment is the result of one or more settlements, the Disclosure Statement should disclose (a) the circumstances in which the settlements were reached, (b) the basis for the proposed settlement amounts, and (c) the manner in which the amounts were calculated.

9.  The Second Amended Disclosure Statement also should explain how the funds proposed to be paid to the EPA and the NJDEP under Section 4.4 of the Second Amended Plan are allocated to each of the sites listed on Schedule 4.6 of the Second Amended Plan and the basis for that allocation.

10. Further, the Second Amended Disclosure Statement fails to address adequately certain issues with respect to the Debtors' 9000 River Road site (the "River Road Site"). Specifically, Section C of the Second Amended Disclosure Statement states that "Shapes will continue to perform the obligations set forth in the MOA[2] and the Amendment to the MOA for this facility." Pursuant to the Second Amended Disclosure Statement, these MOA's require the Debtors to conduct investigation, remediation and to cooperate with the State of New Jersey with respect to these actions. Further, in the Second Amended Disclosure Statement, the Debtors estimate that their response costs will range from $1.3 million to $1.8 million, including natural resource damage costs.

11. However, in the discussion of the treatment of Class 9 Environmental Claims, as stated above, the Second Amended Plan provides that "NJDEP shall receive $25,000

---

[2] The MOA refers to a Memorandum of Agreement that was executed between the NJDEP and Shapes L.L.C. on July 1, 1993 and an Amendment to the MOA that was executed on July 7, 2007.

1072898.2 5/21/08

-6-

in full and complete satisfaction of its claims set forth in Sections II, III and IV of Schedule 4.6 attached hereto." The claim with respect to the River Road Site is included in Section IV of Schedule 4.6 of the Second Amended Plan. The Second Amended Disclosure Statement fails to explain adequately how the Debtors intend to meet their continuing obligations to the NJDEP to remediate the River Road Site, which the Debtors estimate to be between $1.3 million and $1.8 million, when it appears that that Debtors intend to pay to the NJDEP some undesignated portion of $25,000 in satisfaction of those obligations. The Second Amended Disclosure Statement must clarify this contradiction and clearly disclose the Debtors' intentions with respect to addressing their contractual and regulatory obligations to remediate the River Road Site.

12.  Environmental Insurance. As noted above, the Second Amended Plan provides for the use of insurance proceeds to fund the proposed distributions to the EPA, the NJDEP and to the holders of [Environmental] Claims identified on Schedule 4.6 of the Second Amended Plan. The Second Amended Disclosure Statement fails to provide adequate information with respect to: (i) the scope of coverage and available amounts of the policies on which the Debtors are relying to fund the Class 9 Environmental Claims; and (ii) the scope of the coverage and amounts of the excess/umbrella coverage referenced in Section C of the Second Amended Disclosure Statement. While the Second Amended Disclosure Statement provides some general information about the policies that will generate such proceeds, the Second Amended Disclosure Statement does not disclose whether the applicable insurers have agreed to make such payments, or the consequences under the Second Amended Plan if such insurers fail or refuse to provide coverage.

13.  More specifically, on or about April 23, 2008, in an effort to obtain the insurance information without resort to formal discovery and litigation, a representative of the

interested parties (which includes SL Industries) involved in the Pennsauken Solid Waste Management Authority *et al.* litigation sent counsel to the Debtors a detailed letter requesting the disclosure of certain specific information with respect to the insurance policies. Upon information and belief, the Debtors have not responded to such letter. A true and correct copy of the letter is attached hereto and incorporated herein as Exhibit "A".

14. <u>EPA Puchack Site</u>. As noted above, Schedule 4.6 of the Second Amended Plan contains a list of various environmental claims and sites. Among these sites is the Puchack Wellfield site, which is located in Pennsauken, New Jersey (the "Puchack Site"). The Second Amended Disclosure Statement states that the Debtors have not been identified by the <u>EPA</u> as a potentially responsible party for this site or for the EPA's proposed chromium remediation. In fact, there has been no EPA directive issued and no complaint has been filed with respect to the Puchack Site against any party, including the Debtors.

15. However, the Second Amended Disclosure Statement as currently drafted seems to suggest that the Debtors were required to pay, or have paid, costs with respect to the Puchack Site pursuant to certain <u>NJDEP</u> Directives (the "NJDEP Puchack Action").[3] The Second Amended Disclosure Statement seems to merge the EPA's interest in the Puchack site with the NJDEP Puchack Action and does not disclose or provide sufficient information with respect to the fact that these are two wholly separate and distinct issues and actions by separate entities.

16. <u>Confirmation Issues</u>. The Second Amended Disclosure Statement fails to provide material information about at least two legal infirmities of the Second Amended Plan

---

[3] Upon information and belief, the NJDEP Puchack Action has been stayed for many years, no remediation has taken place and no payments have been made.

which, if not modified, will prevent confirmation of the Second Amended Plan as a matter of law:

(a) The Second Amended Disclosure Statement discloses that Section 11.10 (Confirmation Injunction) of the Second Amended Plan permits the assertion of Environmental Claims for the purpose of collecting on any and all applicable insurance policies. However, the Second Amended Disclosure Statement fails to disclose that Sections 11.9 (Discharge) and 11.10 of the Second Amended Plan, as currently written, do not permit the assertion of Environmental Claims against the Reorganized Debtors solely for the purpose of recovering any damages from the Debtors' insurers. Applicable law permits suits to be brought post-discharge against debtors to recover from the debtors' insurers, because the suits do not create a personal liability of the debtor. In re Hendrix, 986 F.2d 195, 197 (7th Cir. 1993).

(b) The Second Amended Disclosure Statement fails to disclose that the language of Sections 11.9 and 11.10 of the Second Amended Plan purport to discharge future contribution claims,[4] in violation of the law of the Third Circuit. See In re M. Frenville Co., Inc., 744 F.2d 332, 337 (3d Cir. 1984) ("a claim for contribution or indemnification does not accrue at the time of the commission of the underlying act, but rather at the time of the payment of the judgment flowing from the act."). See also In re Penn Central Transportation Co., 71 F.3d 1113 (3d Cir. 1995); In re Remington Rand Corp., 836 F.2d 825 (3d Cir. 1988); In re Reading Co., 404 F. Supp. 1249 (D.C. Pa 1975). SL Industries, as well as other parties-in-interest, may hold post-confirmation, future contribution or other claims or rights against the Debtors that cannot as a matter of law be discharged by the Second Amended Plan. See Conway v. Mister Softee, Inc.,

---

[4] The Second Amended Disclosure Statement also fails to disclose that the definition of "Environmental Claims" as set forth in the Second Amended Plan is overly broad and violative of applicable law as it includes "any and all claims...resulting from or related to environmental conditions...that may be, have been or could have been asserted against the Debtors."

91 N.J.Super. 179, 219 A.2d 536 (Co.1966) (under New Jersey contribution law, there is prerequisite of payment of judgment before contribution can be sought); see also United States v. Atlantic Research Corp., 127 S.Ct. 2331, 2334, 2337-38, 168 L. Ed.2d 28, 40 (2007) (a private party may not obtain contribution under section 113(f)(1) unless and until it has been sued under section 106 or 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)).

17. Reservation of Rights. SL Industries reserves its rights to raise and be heard with respect to other and further objections to the Disclosure Statement, whether at the scheduled hearing on the Disclosure Statement or otherwise.

## Conclusion

WHEREFORE, for the foregoing reasons, SL Industries respectfully requests that the Court: (i) deny approval of the Disclosure Statement; and (ii) grant such other and further relief as the Court deems necessary and appropriate.

Respectfully submitted,

SAUL EWING LLP

Dated: May 21, 2008          By:
_____s/s_____
Robyn Forman Pollack, Esquire
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7537

*Counsel for SL Industries, Inc.*

1072898.2 5/21/08                                -10-