**LITCHFIELD CAVO LLP**
*An Illinois Limited Liability Partnership*
By:   Kathleen J. Collins, Esquire
        Kelly A. Krail, Esquire
1800 Chapel Avenue West, Suite 360
Cherry Hill, NJ  08002
(856) 854-3636
Attorneys for Creditor Quick-way, Inc.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**(CAMDEN VICINAGE)**

| | |
|---|---|
| In re: | (Hon. Gloria M. Burns) |
| Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C. | Chapter 11 |
| | Lead Case No. 08-14631 (GMB) |
| Debtors | (Jointly Administered) |

**OBJECTION OF QUICK-WAY, INC. TO JOINT DISCLOSURE STATEMENT FOR
THE DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**

TO:    **HONORABLE GLORIA M. BURNS**
         **UNITED STATES BANKRUPTCY JUDGE**

Quick-way, Inc. by and through its attorneys, Litchfield Cavo LLP, by way of Objection to the Joint Disclosure Statement for the Debtors' Second Amended Joint Plan of Reorganization, respectfully states:

**BACKGROUND**

1.        On March 16, 2008 ("the Petition Date"), Shapes/Arch Holdings, L.L.C. and certain of its subsidiaries, Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C. and Ultra L.L.C (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., (the "Bankruptcy Code").  Since filing for bankruptcy, the Debtors have continued in possession of their assets as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      By Order dated March 18, 2008, and by subsequent Order(s) of the Court, the Debtors' respective cases are being jointly administered with Shapes/Arch Holdings L.L.C., bankruptcy as the lead case.

3.      Concurrent with the filing of their bankruptcy petitions, the Debtors filed, *inter alia*, their Statements of Financial Affairs (the "Statements") and Summary of Schedules (the "Schedules").    The Schedules list Quick-way, Inc. as holding unsecured, nonpriority, unliquidated, contingent and disputed Claims by Virtue of "environmental lawsuits." *Schedules*, Exhibit F.3.    Quick-way, Inc. expressly reserves all rights regarding the factual and legal accuracy of such characterization and regarding whether some or all of its present and future rights against the Debtors are appropriately considered "Claims" under the Bankruptcy Code. *See* 11 U.S.C. §101(5) (definition of "claim").    Nothing contained herein shall be construed as a waiver of such rights.

4.      Concurrent with the filing of their bankruptcy petitions, the Debtors filed their Joint Disclosure Statement for the Debtors' Joint Plan of Reorganization (the "Initial Disclosure Statement") and their Joint Plan of Reorganization (the "Initial Plan").    On or about April 14, 2008, Attorneys for Quick-way, Inc. filed an Objection to the Joint Disclosure Statement for the Debtors' Joint Plan of Reorganization [DI 149] (the "Initial Objection").    Although the hearing with respect to the Initial Disclosure Statement was adjourned, on or about April 24, 2008, the Debtors filed their Joint Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization and their First Amended Joint Plan of Reorganization.

5.      Included among the environmental claims is *Pennsauken Solid Waste Mgt. Auth. v. Ward Sand Material Co., Inc., et al.*, N.J. Superior Ct., Camden County, Law Division, Docket L:13345-91, ("Pennsauken Landfill Litigation,").    The Pennsauken Landfill Litigation, which has

been pending for seventeen years, is a cost recovery action under the New Jersey Spill Act Claim that arose as a result of an Administrative Consent Order reached between the owners of the Landfill ("Pennsauken Plaintiffs") and the New Jersey Department of Environmental Protection ("NJDEP"). The Pennsauken Plaintiffs allege that Shapes deposited effluent containing chromium directly into the Landfill and that Shapes generated waste which was disposed of at the Landfill. As a defendant and indispensable party, Shapes may be liable for the remediation costs. The Pennsauken Plaintiffs allege that its damages are approximately $7.7 million.

6. Quick-way, Inc., a co-defendant in the Pennsauken Landfill Litigation, has expended money to remediate the Landfill. Pursuant to an agreement with the Pennsauken Plaintiffs, QWI, as part of the Transporter Liaison Group, has funded integral parts of the remediation process required by the NJDEP. It is undeniable that, under the framework and thrust of Shapes' bankruptcy proceeding and proposed Plan, QWI has a "sufficient stake" in these proceedings that entitles it to participate fully in these bankruptcy proceedings.

7. On or about May 12, 2008, the Debtors filed their Second Amended Joint Plan of Reorganization (the "Second Amended Plan") and the Disclosure Statement. Although the Debtors have addressed in the Disclosure Statement some of the issues raised by Quick-way, Inc. in the Initial Objection, several significant issues remain.

## OBJECTION TO RELIEF REQUESTED AND REASONS THEREFORE

8. Having used and received the benefits of the Pennsauken Landfill and Shapes' insurance policies, Shapes has now concocted new theories of limiting its insurance obligations, thereby limiting its own insurers' obligations and increasing the obligations of other Pennsauken parties:

- The proposed Plan seeks to discharge Shapes for its environmental liability related to the Pennsauken Landfill Litigation.

- The Proposed Plan seeks to assign rights to insurance policies without the consent of the insurers, thereby potentially voiding any coverage.

- The Plan provided incomplete and insufficient information regarding applicable insurance policies.

These issues involve state contract law regarding the insurance policies, as well as New Jersey Spill Act, contribution and indemnification claims. This Court should not decide these disputed issues. This Objection is filed, in part, to ensure that the Plan confirmation process does not in any way prejudice or disadvantage Quick-way, Inc. or other Pennsauken-related parties as to issues that should be decided in a competent forum at another time.

9. Quick-way, Inc. also objects to the Disclosure Statement on the following grounds:

a. The Disclosure Statement fails to identify the insurance policies at issue for each site or litigation. At minimum, the Disclosure Statement should identify: the applicable policies at issue, the available coverage under each policy, whether any reservation of rights have been issues under the applicable policies; whether there has been a buy-back of any policies, whether there are any long-tail policies; whether any insurers of he applicable policies have gone bankrupt; what the Debtor did with any buy-back proceeds; and other potential claims as to the applicable policies and their proceeds.

b. The Disclosure Statement fails to adequately quantify the extent of Shapes' environmental liabilities. Indeed, in Schedule 4.5 to the Second Amended Plan, Shapes does not attempt to value its liability for any of the identified sites or litigations.

c. To the extent that defects in the Second Amended Plan are not corrected, the Second Amended Plan cannot be confirmed.

10. By way of the within Objection, Quick-way, Inc. objects to entry of an order approving the adequacy of the Disclosure Statement. The specific deficiencies are discussed below.

11. "Disclosure is the pivotal concept in reorganization practice under the [bankruptcy] code.'" *Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 507 (D.N.J., 2005) (*quoting* Collier on Bankruptcy ¶ 1125.02). As stated by the Court of Appeals for the

Third Circuit, "[t]he importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by creditors and the court.  Given this reliance, we cannot overemphasize the . . . obligation to provide sufficient data to satisfy the Code standard of adequate information." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp*., 337 F.3d 314, 322, (3d Cir. 2003).  Determination of what constitutes adequate disclosure must be made on a case by case basis, but at a minimum, it must provide creditors with sufficient information to enable them to decide whether they should accept or reject a proposed plan.  *In re Ferretti*, 128 B.R. 16, 18, (Bankr. D.N.H. 1991).

I.     **The Disclosure Statement Does Not Contain Adequate Information Regarding the Classification of Environmental Claims**

12.     The Disclosure Statement appears to place the EPA, the NJDEP and Environmental Claims into Class 9 and provides that funding for the distributions to holders of claims in Class 9 shall be made from proceeds of applicable insurance proceeds.  However, Section VI, C of the Disclosure Statement provides that "except for Claims of EPA/NJDEP, all other environment claims (or claims of third parties relating to environmental claims and including those set forth in Sections III and IV of Schedule 4.5 of the Plan) are treated as Class 10 General Unsecured Claims and will be discharged."  Therefore, the Disclosure Statement inconsistently identifies non-agency environmental claims as both Class 9 and Class 10 Claims. The Disclosure Statement fails to address this inconsistency.

II.     **The Disclosure Statement Does Not Contain Adequate Information Regarding Insurance**.

*The Disclosure Statement Fails to Disclose The Most Basic of Information Regarding the Debtors' Insurance Policies*

13.     The Disclosure Statement contains inadequate disclosure in Section VI, C concerning the Debtors' insurance that may be available to satisfy Claims of Creditors in

accordance with Section 11.10 of the Second Amended Plan.  At a minimum, the Disclosure Statement should include the following information pertaining to each of the Debtors' insurance policies: insured and available/remaining coverage.[1]

14.    The Disclosure Statement fails to clarify whether the Insurers have agreed to pay any funds designated to be paid by the Insurers for environmental liabilities. Failure to obtain the Insurers agreement could act to vitiate the policies.

15.    The Disclosure Statement and Sections 11.9 and 11.10 of the Second Amended Plan improperly suggest that suits post-discharge are not permitted to be brought against the debtors to recover from the debtors' insurers.  The assertion of Claims against the Reorganized Debtors after the Effective Date solely for the purpose of collecting on any available insurance is permitted by applicable law.  *See First Fidelity Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993) ("the protection from liability afforded under the Code does not affect the liability of the debtor's insurers.").  Suits post-discharge are permitted to be brought against the debtors to recover from the debtors' insurers because the suits do not create a personal liability of the debtor.  *In re Hendrix*, 986 F.2d 195, 197 (7th Cir. 1993) ("The discharge had by virtue of 11 U.S.C. § 524(a)(2) the force of an injunction against a suit by any holders of listed debts . . .  to collect those debts . . . . But as to whether such an injunction extends to a suit only nominally against the debtor because the only relief sought is against his insurer, the cases are pretty nearly unanimous that it does not. . . .   The reasoning is that a suit to collect merely the insurance proceeds and not the plaintiff's full damages . . . would not create a 'personal liability of the debtor,' because only the insurance company would be asked to pay anything, and hence such a suit would not infringe the discharge.").

---

[1]    The Disclosure Statement does provide the policy numbers, policy types, and applicable limits, which are also necessary.

**III.**   **The Disclosure Statement Does Not Contain Adequate Information Regarding Future Contribution Claims**

16.   The Disclosure Statement and Sections 11.9 and 11.10 of the Second Amended Plan improperly suggest that future contribution claims against the Debtors are being discharged.[2]  This is contrary to controlling law.  *See e.g. In re M. Frenville Co., Inc.,* 744 F.2d 332, 335, 337 (3d Cir. 1984) ("Only proceedings that could have been commenced or claims that arose before the filing of the bankruptcy petitions are automatically stayed.").  Accordingly, the Disclosure Statement should be amended to make clear that future environment contribution claims against the Debtors are not discharged.

17.   Quick-way, Inc. reserves their rights to raise and be heard with respect to other and further objections to the Disclosure Statement, whether at the scheduled hearing on the Disclosure Statement or otherwise.

**WHEREFORE**, Quick-way, Inc. respectfully requests that this Court enter an order denying approval of the Debtors' Disclosure Statement and granting such other relief as the Court deems just and proper.

Respectfully submitted,

LITCHFIELD CAVO LLP
Attorneys for Creditor Quick-way, Inc.

Dated:  May 21, 2008                   By: /s/ Kathleen J. Collins
                                             Kathleen J. Collins

                                       By: /s/ Kelly A. Krail
                                             Kelly A. Krail

---

[2]   The Second Amended Disclosure Statement also fails to disclose that the definition of "Environmental Claims" as set forth in the Second Amended Plan is overly broad and violative of applicable law as it includes "any and all claims…resulting from or related to environmental conditions…that may be, have been *or could have been* asserted against the Debtors."