**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Attorneys for the Debtors

---

| | |
|---|---|
| In re: | :   UNITED STATES BANKRUPTCY COURT |
| |    FOR THE DISTRICT OF NEW JERSEY |
| SHAPES/ARCH HOLDINGS L.L.C., <u>et</u> | : |
| <u>al.</u>, |    CHAPTER 11 |
| | : |
| Debtors. |    CASE NO. 08-14631 (GMB) |
| | :   (Jointly Administered) |

---

<u>**NOTICE OF FILING OF SUPPLEMENT TO THE DEBTORS' THIRD**</u>
<u>**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**</u>

Pursuant to Section 1.90 of the *Debtors' Third Amended Joint Chapter 11 Plan of*

*Reorganization* [Docket No. 338] (the "<u>Plan</u>")[1], the Debtors hereby submit the following

proposed Plan Supplement documents in substantially final form, attached hereto <u>Exhibits A</u>

through <u>E</u>.

-    <u>**Exhibit A**</u> – Plan Funding Commitment Letter

-    <u>**Exhibit B**</u> – Amended and Restated Operating Agreement of Shapes/Arch Holdings, LLC

-    <u>**Exhibit C**</u> – Designation of Post-Petition Officers

---

[1] All capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Plan.

- **<u>Exhibit D</u>** – Shapes/Arch Holdings, LLC Plan Administration Agreement

- **<u>Exhibit E -</u>** Amended Liquidation Analysis[2]

Dated:  June 13, 2008                              COZEN O'CONNOR


            _____/s/ Jerrold N. Poslusny, Jr._____
Mark E. Felger
Jerrold N. Poslusny, Jr.
Liberty View, Suite 300
457 Haddonfield Road
Cherry Hill, NJ  08002
(856) 910-5000

Counsel to Debtor and Debtor-in-Possession

---

[2] The liquidation analysis has been amended principally to reflect changes as a result of changing from the Arcus sponsored plan to the Arch sponsored plan.

# **EXHIBIT "A"**

Arch Acquisition I, LLC
1001 Brickell Bay Drive, 27th Floor
Miami, Florida 33131

June __, 2008

Shapes/Arch Holdings L.L.C.
Shapes L.L.C.
Ultra L.L.C.
Delair L.L.C.
Accu-Weld L.L.C.
9000 River Road
Delair, New Jersey 08110
Attn: Steven Grabell, Chief Executive Officer

Re:    **Plan Funding Commitment**

Dear Mr. Grabell:

As you are aware, Shapes/Arch Holdings L.L.C., Shapes L.L.C., Ultra L.L.C., Delair L.L.C. and Accu-Weld L.L.C. (collectively, the "Debtors") are debtors and debtors-in-possession in a Chapter 11 case (collectively, the "Case") pending in the United States District Court for the District of New Jersey (the "Bankruptcy Court"). Pursuant to a certain Amended and Restated Debtor in Possession Term Financing Agreement dated May 6, 2008, Arch Acquisition I, LLC ("Arch"), an affiliate of H.I.G. Capital LLC ("HIG"), has provided the Debtors with a post petition term loan facility in the principal amount of thirty million dollars ($30,000,000.00) (the "Arch Acquisition DIP Agreement").

Subject to the terms and conditions set forth in the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization filed with the Bankruptcy Court on May 27, 2008 (the "Plan")[1] in which Arch is the Plan Funder, Arch agrees to (a) provide or arrange for third-party financing on terms acceptable to the reorganized Debtors and Arch subject to the provisions of the Plan and (b) to continue the financing provided under the Arch Acquisition DIP Agreement as an Exit Facility as provided in the Plan (the "Exit Facility"), up to an aggregate amount of ninety-one million five hundred thousand dollars ($91,500,000.00) to fund distributions under the Plan (except for Plan Funding Commitment Excluded Items) (the "Plan Funding Commitment"), provided, that, (i) the cash funded on the Effective Date

---

[1] Unless otherwise defined herein, all capitalized terms shall have the respective meanings ascribed in the Plan.

06/12/2008  01:33    2126988282    SHAPES NEWARK    PAGE  03/04

shall not exceed ninety million dollars ($90,000,000.00) and (ii) Arch is the Plan Funder of the Plan pursuant to a Final Order confirming the Plan. Arch shall either (a) amend and restate the Arch Acquisition DIP Agreement or (b) enter into a new loan for the Exit Facility. HIG hereby represents that it has adequate capital resources available to support the Plan Funding Commitment of Arch outlined above and covenants and commits to make such funds available to support the funding commitment of Arch in connection with the Plan.

Except as expressly set forth in the Plan, working capital of the Debtors and Reorganized Debtors together with the proceeds of the Plan Funding Commitment shall be used for general working capital and capital expenditures of the Reorganized Debtors, to fund on the Effective Date or make provision for payment after the Effective Date of the distributions required under the Plan including, without limitation, the Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Claims, Allowed Other Priority Claims, Allowed Cure Claims up to an aggregate amount of $878,000, Allowed Secured Real Estate Claims, the CIT DIP Claim (which, pursuant to the Plan, shall be paid in full, in cash on or before the Effective Date), the Plan Expense Reserve, and the Class 10 Pool Escrow. In the event that the cash portion of the Plan Funding Commitment is insufficient to fund and pay the Class 10 Pool Escrow on the Effective Date, and the Plan Funder does not agree to increase the cash portion of the Plan Funding Commitment, then the payments on the Effective Date to the Class 10 Pool Escrow will be satisfied by issuance of the Plan Note. In consideration for meeting its funding commitments under the Plan Funding Commitment and otherwise in the aggregate amount necessary to effectuate the terms of this Plan (which will be paid in cash and/or in part by way of a conversion of the Arch Acquisition DIP Claim), the Plan Funder shall receive one hundred percent (100%) of the New LLC Interests in the Reorganized Shapes/Arch Holdings L.L.C. that are authorized and issued as of the Effective Date.

Based upon and subject to the terms and conditions set forth in this commitment letter (the "Commitment Letter") and the terms and conditions provided for in the Arch Acquisition DIP Agreement and the Plan, Arch is pleased to advise you of its commitment to provide the Plan Funding Commitment, including the Exit Facility, up to an aggregate amount of ninety-one million five hundred thousand dollars ($91,500,000.00) as provided for above. Notwithstanding the foregoing, HIG may arrange (or cause Arch to arrange) the Exit Facility and/or the balance of the Plan Funding Commitment from third-party sources acceptable to HIG in its sole discretion.

This Commitment Letter does not set forth all of the terms and conditions of the proposed funding. The additional terms and conditions of the Plan Funding Commitment set forth in the Plan and the Arch Acquisition DIP Agreement are incorporated herein as if set forth at length. The Plan Funding Commitment is further subject to the entry of a Final Order confirming the Plan and all conditions set forth in sections 9.1 and 9.2 of the Plan having been satisfied in full or waived by Arch, in its sole and absolute discretion.

This Commitment is not assignable by you. The Commitment is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or to create any rights in favor of, any person other than the parties hereto and you agree that it does not

create a fiduciary relationship among the parties hereto. Arch may assign its Plan Funding Commitment hereunder to an affiliate or to any third party so long as such party has the financial wherewithal to meet the obligations hereunder. Any such assignment shall release Arch from its commitment hereunder to the extent so assigned.

This Commitment Letter shall remain in effect until 11:59 p.m. (New York City time) on July 15, 2008 at which time it will expire, provided, however, that in the event the Bankruptcy Court enters an order confirming the Plan by such date and time, this Commitment Letter shall remain in effect until 5:00 p.m. (New York City time) on July 31, 2008.

This Commitment Letter (a) supersedes all prior discussions, agreements, commitments, arrangements, negotiations or understandings, whether oral or written, of the parties with respect thereto and (b) shall be governed by the laws of the State of New York. If this Commitment Letter becomes the subject of a dispute, each of the parties hereto waives trial by jury.

Should the terms and conditions of the proposal contained herein meet with your approval, please indicate your acceptance by signing and returning a copy of this Commitment Letter to Arch at the address above.

Very truly yours,

ARCH ACQUISITION I, LLC

By: _____

Name: John P. Bolduc
Title:

Agreed and accepted on this
_____ day of June 2008:

Shapes/Arch Holdings L.L.C.
Shapes L.L.C.
Ultra L.L.C.
Delair L.L.C.
Accu-Weld L.L.C.

By: _____

Name: Steven Grabell
Title:  CEO

NJ 226413188v1

# EXHIBIT "B"

## SHAPES/ARCH HOLDINGS L.L.C.
## AMENDED AND RESTATED OPERATING AGREEMENT

This amended and restated operating agreement of Shapes/Arch Holdings L.L.C., a Delaware limited liability company, is adopted as of the _____ day of July, 2008, by Arch Acquisition I, LLC as the sole Member.

## SECTION 1
## DEFINED TERMS; OPERATION OF COMPANY

1.1    **Defined Terms.** When used in this Agreement, the following capitalized terms shall have the meanings set forth below:

"**Act**" means the New Jersey Limited Liability Company Act.

"**Agreement**" means this limited liability company agreement, as the same may be amended from time to time.

"**Capital Contribution**" means the amount of money and the fair market value of any property contributed to the Company by the Member (net of any liabilities to which such property is subject or that are assumed by the Company in connection with such contribution),

"**Certificate**" means the certificate of formation for the Company, and any amendments thereto.

"**Company**" means the limited liability company formed and operated pursuant to the terms of this Agreement.

"**Manager**" means the Person or Persons designated as the manager in accordance with Section 5.1 of this Agreement.

"**Member**" means the Person listed as the Member in the preamble to this Agreement, and any Person subsequently admitted as a Member in accordance with the terms of this Agreement.

"**Net Cash Flow**" means gross cash proceeds of the Company from all sources other than Capital Contributions, including reductions in Reserves that reduced Net Cash Flow for prior periods, reduced by the portion of such cash proceeds used (i) to pay Company expenses, including debt service, (ii) to acquire capital improvements, and (iii) to fund Reserves.

"**Person**" means any individual or any partnership, corporation, trust, limited liability company or other legal entity.

"**Profits**" and "**Losses**" mean, for each year or other period, an amount equal to the Company's federal taxable income or loss for such year or period, and all corresponding items of income, gain, loss, deduction, and credit.

-1-

"**Reserves**" means amounts set aside to pay future costs or expenses that are anticipated to exceed cash available to pay such costs or expenses when due, as determined in the sole discretion of the Manager.

1.2    **Formation; Name.** The Company was formed under the Act and its members filed or caused to be filed a certificate of formation in accordance with the Act. The Company shall be operated as a limited liability company pursuant to this Agreement and the Act. Whenever the terms of this Agreement conflict with any provision of the Act, the terms of this Agreement shall control except to the extent any provision of the Act cannot be waived or altered by a limited liability company agreement. The Company shall be operated under the name "Shapes/Arch Holdings L.L.C." The Manager or an authorized Person shall file such other certificates and documents as are necessary to qualify the Company to conduct business in any jurisdiction in which the Company conducts business.

1.3    **Registered Agent and Office; Principal Office**. The registered agent and office of the Company required under the Act shall be as designated in the Certificate, and may be changed by the Member in accordance with the Act. The principal business office of the Company shall be located at 9000 River Road, P.O. Box 397, Delair, New Jersey 08110, or such other address as shall be designated by the Manager.

1.4    **Purpose.** The purpose and business of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act. The Company is authorized to do any and all acts and things necessary, appropriate, advisable, incidental to, or convenient for the furtherance and accomplishment of its purposes, and for the protection and benefit of the Company.

1.5    **Term.** The term of the Company shall commence on the date of filing of the Certificate, and the Company shall continue until the Company is terminated in accordance with this Agreement.

## SECTION 2
## CAPITAL CONTRIBUTIONS

2.1    **Capital Contributions**. The capital contributions of the member are as set forth on the books and records of the Company. The Member shall not be obligated to make any additional Capital Contributions to the Company.

## SECTION 3
## DISTRIBUTIONS

3.1    **Distributions of Net Cash Flow.** All Net Cash Flow shall be distributed to the Member at such times and in such amounts as shall be determined by the Manager.

## SECTION 4
## PROFITS AND LOSSES

4.1    **Tax Classification.** The Member intends that the Company be a disregarded entity for federal income tax purposes, in accordance with Treasury Regulation Section

301.7701-3(b)(ii). All of the Profits and Losses of the Company shall be reported by the Member in accordance with such classification.

## SECTION 5
## MANAGEMENT OF COMPANY

5.1    **General Provisions Concerning Management**. Subject to the express limitations contained in this Agreement, the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, the Manager. The Manager shall be Persons appointed by the Member. The Member may remove the Manager at any time, with or without cause. The Manager shall have all of the rights and powers of a manager under the Act. Arch Acquisition I., LLC shall be the Manager.

5.2    **Company Expenses**. All expenses of the Company shall be billed directly to and paid by the Company. The Manager shall be reimbursed for all expenses incurred on behalf of the Company, including travel, telephone, and secretarial costs. The Manager shall be entitled to such compensation for services as the Manager as the Member may determine.

## SECTION 6
## BOOKS AND RECORDS; FINANCIAL MATTERS

6.1    **Books and Records**. The Company books and records shall be maintained at the principal office of the Company. The Company books shall be closed and balanced at the end of each year.

6.2    **Fiscal Year.** The fiscal year of the Company shall end on the same day as the last day of the fiscal year of the Member.

6.3    **Banking**. All funds of the Company shall be deposited in the name of the Company in such checking account or accounts as shall be designated by the Manager. All withdrawals therefrom arc to be made upon checks signed by a Person or Persons authorized by the Manager.

## SECTION 7
## TRANSFERS AND ADMISSIONS

7.1    **Transfers.** The Member may transfer, sell, assign, encumber, or otherwise dispose of all or any portion of the Member's interest in the Company without the consent of any other Person,

7.2    **Admissions.** Any Person may be admitted as an additional or substitute Member with the consent of the Member, on such terms and conditions as shall be determined by the Member.

## SECTION 8
## TERMINATION AND DISSOLUTION

8.1     **Dissolution Events.** The Company shall be terminated and dissolved at such time or upon the happening of such events as shall be determined by the Member.

8.2     **Liquidation.**

8.2.1   **Winding Up.** Upon the dissolution of the Company, the Company's business shall be liquidated in an orderly manner. The Manager shall determine which Company property shall be distributed in-kind and which Company property shall be liquidated. The liquidation of Company property shall be carried out as promptly as is consistent with obtaining the fair value thereof.

8.2.2   **Payments and Distributions.** Company property or the proceeds therefrom, to the extent sufficient therefor, shall be applied and distributed in the following order of priority, with no distribution being made in any category set forth below until each preceding category has been satisfied in full:

(a)     To the payment and discharge of all of the Company's debts and liabilities, and the

(b)     The balance shall be distributed to the Member.

## SECTION 9
## MISCELLANEOUS

9.1     **Successors.** This Agreement shall inure to the benefit of and shall be binding upon all of the parties and their respective heirs, successors and assigns.

9.2     **Applicable Law.** This Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of New Jersey.

9.3     **Amendment.** No change or modification to this Agreement shall be valid unless the same be approved by the Member.

9.4     **Severability.** If any provision of this Agreement or the application thereof to any Person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby but rather shall be enforced to the greatest extent permitted by law.

9.5     **Construction.** When from the context it appears appropriate, each term stated either in the singular or the plural shall include the singular and the plural and pronouns stated either in the masculine, the feminine or the neuter shall include the masculine, the feminine and the neuter.

9.6    **Headings and Captions**. The headings and captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provisions hereof.

**IN WITNESS WHEREOF,** the Member has executed this Operating Agreement of Shapes/Arch Holdings L.L.C. as of the day and year first above written.

**MEMBER:**

ARCH ACQUISITION I, LLC


By:_____
    Name:
    Title:

*226415427 v1*

# EXHIBIT "C"

POST-EFFECTIVE DATE
<u>MANAGER AND OFFICERS</u>

<u>Shapes/Arch Holdings L.L.C. Managers</u>

Arch Acquisition I, LLC

<u>Shapes/Arch Holdings L.L.C. Officers</u>

| | | |
|---|---|---|
| Steven S. Grabell | - | Chief Executive Officer & President |
| Paul Sorensen | - | Chief Financial Officer & Treasurer |
| Steven Fleisher | - | Vice President |

<u>Shapes L.L.C. Officers</u>

| | | |
|---|---|---|
| Steven S. Grabell | - | Chief Executive Officer & President |
| Paul Sorensen- | | Chief Financial Officer & Secretary |
| Steven Fleisher | - | Executive Vice President Manufacturing |

<u>Accu-Weld L.L.C. Officers</u>

| | | |
|---|---|---|
| Donald Williams | - | President |
| Steven S. Grabell | - | Vice President |

<u>Ultra L.L.C. Officers</u>

| | | |
|---|---|---|
| Dan Carpey | - | President |
| Ed Stein | - | Vice President, Secretary & Treasurer |
| Rob Munin | - | Vice President |
| Steven S. Grabell | - | Vice President |

<u>Delair L.L.C. Officers</u>

| | | |
|---|---|---|
| Gerry Herson | - | President |
| Richard Grossman | - | Vice President & Secretary |
| Steven S. Grabell | - | Vice President |
| Paul Sorensen | - | Chief Financial Officer & Treasurer |

# EXHIBIT "D"

# SHAPES/ARCH HOLDINGS L.L.C.
## PLAN ADMINISTRATION AGREEMENT

This Plan Administration Agreement (the "Plan Administration Agreement" or the "Agreement") is made this ____ day of July, 2008, by and among each of (i) Shapes/Arch Holdings, LLC, Shapes, LLC, Delair, LLC, Accu-Weld, LLC and Ultra, LLC, the debtors and reorganized debtors (prior to the Effective Date and after the Effective Date, the "Debtors" or the "Reorganized Debtors", respectively) on behalf of themselves and their Chapter 11 estates, and (ii) Steven Sass, as trustee (in such capacity, the "Class 10 Liquidation Trustee").[1]

## RECITALS

WHEREAS, on March 16, 2008, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, by Order dated May 23, 2008, the Bankruptcy Court approved the Joint Disclosure Statement for the Debtors' Third Amended Joint Plan of Reorganization;

WHEREAS, on May 27, 2008, the Debtors filed the Debtors' Third Amended Joint Plan of Reorganization (the "Plan");

WHEREAS, on July [___], 2008, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. sections 1129(a) and (b), and Fed. R. Bankr. P. 3020, confirming the Debtors' Plan;

WHEREAS, the Plan, as confirmed by the Confirmation Order, provides for, inter alia, the creation of a Liquidation Trust for the benefit of holders of Allowed Class 10 General Unsecured Claims (the "Allowed Class 10 Claims") and the transfer of certain assets to the Liquidation Trust; and

NOW THEREFORE, pursuant to the Plan and the Confirmation Order, and in consideration of the premises and the covenants and agreements set forth therein and herein, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

1.1    Establishment of Liquidation Trust.    Pursuant to the Plan, the Reorganized Debtors and the Plan Funder hereby establish the Liquidation Trust on behalf of the holders of

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Debtors' Third Amended Joint Plan of Reorganization dated May 23, 2008, as amended, and as confirmed and as the same may from time to time be amended (the "Plan"). Terms defined in the Bankruptcy Code and not otherwise specifically defined in the Plan or herein shall, when used herein, have the meanings attributed to them in the Bankruptcy Code.

Allowed Class 10 Claims (whether allowed before, on or after the Effective Date).   The Liquidation Trust shall bear the name "Shapes Liquidation Trust."

   1.2    Purpose of the Liquidation Trust.  This Liquidation Trust is created and organized for the purposes of implementing sections 4.5, 5.2 and 5.3 of the Plan, including but not limited to collecting, holding, liquidating, utilizing and distributing Liquidation Trust Assets (defined below) in accordance with the terms of the Plan, the Confirmation Order and this Agreement, on behalf of and for the sole benefit of the holders of Allowed Class 10 Claims,

   In accordance with such express and limited purposes, as of the Effective Date, the Liquidation Trust is hereby authorized and directed: (i) to take any and all steps necessary to maintain the Liquidation Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulations section 301.7701-4(d); (ii) to take all reasonable and necessary actions to conserve and protect the Liquidation Trust Assets; (iii) to the extent necessary and appropriate, object to Disputed General Unsecured Claims asserted against the Debtors' Estates and the Liquidation Trust; and (iv) to maintain, the Liquidation Trust Assets, and to distribute the Net Proceeds of such to the holders of Allowed Class 10 Claims in accordance with the Plan, in as prompt, efficient and orderly a fashion as possible in accordance with the provisions of the Plan, Confirmation Order and this Agreement.

   1.3    Transfer of Property to the Liquidation Trust.

   (a)    In satisfaction of all Allowed Class 10 Claims, the Debtors, Reorganized Debtors and Plan Funder hereby transfer, assign and deliver, as of the Effective Date, all of their rights, title, and interest in the Liquidation Trust Assets, as defined below, free and clear of any and all liens, claims, interests and/or encumbrances, except as set forth in section 1.5 herein.  To the extent the Debtors hold a privilege, confidentiality right, or other protection, right, or immunity with respect to any assets (or information or documents relating to any assets) that become Liquidation Trust Assets, such privileges, rights, protections, and immunities shall inure to the benefit of the Trust and the Trustee as well, and the mere transfer of such assets shall not vitiate any privilege, right, protection or immunity.  Further, the Class 10 Liquidation Trustee shall not have the right to waive any of the Debtors' or Reorganized Debtors' privileges.

   (b)    The Liquidation Trust Assets shall include the following:

      (i) The Plan Expense Reserve;

      (ii) The Class 10 Pool Escrow;

      (iii) The Plan Note, to the extent issued in accordance with the Plan;

      (iv) Avoidance Actions;

      (v) Estate Actions;

      (vi) any proceeds, interest or earnings on any of the foregoing.

2

(c)     Acceptance of Liquidation Trust Assets.  The Class 10 Liquidation Trustee agrees to accept and hold the Liquidation Trust Assets in trust for the holders of Allowed Class 10 Claims (whether Allowed before, on or after the Effective Date) subject to the terms of the Plan, the Confirmation Order and this Agreement.  At any time after the Effective Date, the Reorganized Debtors and the Plan Funder agree, at the reasonable request of the Class 10 Liquidation Trustee, to execute and deliver any instruments or documents and to take or cause to be taken, all such further action as the Class 10 Liquidation Trustee may reasonably request in order to evidence or effectuate the transfer of the Liquidation Trust Assets to the Liquidation Trust and consummation of the transactions contemplated hereby and by the Plan and otherwise carry out the intent of the parties hereunder and under the Plan.

1.4     Acceptance by Class 10 Liquidation Trustee.  The Class 10 Liquidation Trustee hereby accepts the appointment to serve as Class 10 Liquidation Trustee and agrees to accept the duties of the Class 10 Liquidation Trustee upon such terms and conditions as are set forth herein and under the Plan.

1.5     No Reversion to Reorganized Debtors or Plan Funder.  In no event shall any part of the Liquidation Trust Assets revert or be distributed to any of the Reorganized Debtors or the Plan Funder, unless and except to the extent that there are any funds remaining in the Plan Expense Reserve after termination of the Trust.  Such remaining funds, if any, shall be remitted to the Reorganized Debtors.

1.6     Incidents of Ownership.  The Trust Beneficiaries, as defined below, shall be the sole beneficiaries of the Trust and the Liquidation Trust Assets, and the Class 10 Liquidation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including but not limited to those powers set forth in Article IV hereof.

**ARTICLE II**
**TRUST BENEFICIARIES**

2.1     Trust Beneficiaries.  The Trust Beneficiaries shall be the holders of Allowed Class 10 Claims as defined under the Plan, whether allowed before, on or after the Effective Date.  Each Beneficiary shall be entitled to participate in the rights and benefits due to a Beneficiary hereunder according to the terms of the Plan, the Confirmation Order and this Agreement.  The interest of a Beneficiary hereunder is hereby declared and shall be in all respects personal property.  Except as expressly provided hereunder, a Beneficiary shall have no title to, right to, possession of, management of or control of the Trust or the Liquidation Trust Assets.

2.2     Interest Beneficial Only.  The ownership of a beneficial interest in the Trust shall not entitle any Trust Beneficiary to any title in or to the Liquidation Trust Assets or any right to call for a partition or division of such assets or to require an accounting, except as specifically provided in this Agreement.

2.3     Evidence of Beneficial Interest.  Ownership of a beneficial interest in the Trust shall not be evidenced by any certificate, security or receipt, and the Class 10 Liquidation

3

Trustee shall have the right to rely upon the records of the Debtors' official claims agent, Epiq Bankruptcy Solutions, LLC ("Epiq") , and the Trust's own books and records (after Epiq's services are terminated by Court Order) for purposes of maintaining a record of beneficiaries and their beneficial interests.  The Class 10 Liquidation Trustee shall, upon written request of a holder of a beneficial interest, provide reasonably adequate documentary evidence of such holder's beneficial interest, and the expense of providing such documentation shall be borne by the requesting beneficiary.

2.5    Limited Liability.  No provision of the Plan, the Confirmation Order or this Agreement shall give rise to any liability of any beneficial interest holder solely in its capacity as such.  Beneficial interest holders are deemed to receive the Trust property in accordance with the provisions of the Plan, the Confirmation Order and this Agreement in exchange for their Allowed Class 10 Claims and release thereof, without further obligation or liability of any kind, but subject to the provisions of this Agreement.

## ARTICLE III
## CLASS 10 LIQUIDATION TRUSTEE  - GENERALLY

3.1    Term of Service.  The initial Class 10 Liquidation Trustee shall be selected by the Creditors' Committee with the consent of the Plan Funder, which consent shall not be unreasonably withheld, and any successor Class 10 Liquidation Trustee shall be selected by the Trust Advisory Committee (as defined below), with the consent of the Plan Funder, which consent shall not be unreasonably withheld.  The Class 10 Liquidation Trustee shall serve until the earlier to occur of: (a) the termination of the Liquidation Trust in accordance with Article VIII of this Agreement, or (b) such Class 10 Liquidation Trustee's resignation, death, or removal in accordance with the terms hereof.

3.2    Services.  The Liquidation Trust shall be governed and managed by the Class 10 Liquidation Trustee, subject to and in accordance with the Plan, the Confirmation Order and this Agreement.  The Class 10 Liquidation Trustee shall be entitled to engage in such activities as the Class 10 Liquidation Trustee deems appropriate that are not in conflict with this Agreement or the Plan.  The Class 10 Liquidation Trustee shall devote such time as is necessary to fulfill all of his/her duties as the Class 10 Liquidation Trustee.

3.3    Resignation.  The Class 10 Liquidation Trustee may resign by giving not less than thirty (30) days prior written notice thereof to the Trust Advisory Committee, provided, however, notwithstanding anything to the contrary in this section 3.3, no such resignation shall become effective until a permanent or interim successor Class 10 Liquidation Trustee has been appointed by the Trust Advisory Committee.  Such resignation may become effective prior to the expiration of the thirty (30) day notice period upon the appointment of a permanent or interim successor Class 10 Liquidation Trustee.

3.4    Removal.  The Class 10 Liquidation Trustee may be removed for cause.  For purposes of this section 3.4, "cause" shall mean (a) an act of fraud, embezzlement or theft in connection with the Class 10 Liquidation Trustee's duties or in the course of his/her employment in such capacity, (b) the intentional wrongful damage to property of the Liquidation Trust, (c) the intentional wrongful disclosure of confidential information resulting in material harm to the

Liquidation Trust, (d) gross negligence, bad faith or willful misconduct by the Class 10 Liquidation Trustee in connection with the performance of his/her duties under this Agreement, or (e) intentional and material breach by the Class 10 Liquidation Trustee of the provisions of this Agreement, the Plan, the Confirmation Order, or any order of the Bankruptcy Court.

3.5    Appointment of Successor Class 10 Liquidation Trustee.  In the event of a vacancy by reason of the death, resignation or removal of the Class 10 Liquidation Trustee, the Trust Advisory Committee shall have the right to select a successor to the Class 10 Liquidation Trustee, with the consent of the Plan Funder, which consent shall not be unreasonably withheld, who shall be appointed as the Class 10 Liquidation Trustee of the Liquidation Trust and shall serve in such capacity until termination of the Liquidation Trust in accordance with Article VIII of this Agreement unless replaced in accordance with this section.  Every successor Class 10 Liquidation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Trust Advisory Committee an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Class 10 Liquidation Trustee, without any further act, shall become vested with all the rights, powers, and duties of his or her predecessors; provided, however, that no Class 10 Liquidation Trustee hereunder shall be liable for the acts or omissions of any prior or later Class 10 Liquidation Trustee.

3.6    Trust Continuance.  The death, resignation, or removal of the Class 10 Liquidation Trustee shall not operate to terminate the Liquidation Trust or revoke any existing agency (other than any agency of such Class 10 Liquidation Trustee as the Class 10 Liquidation Trustee) created by this Agreement, or invalidate any action theretofore taken by the Class 10 Liquidation Trustee.  In the event of the resignation or removal of the Class 10 Liquidation Trustee, such Class 10 Liquidation Trustee shall: (a) execute and deliver by the effective date of the resignation or removal such documents, instruments, and other writings as may be reasonably required to effect the termination of the Class 10 Liquidation Trustee's capacity under this Agreement, and (b) assist and cooperate in effecting the assumption of such Class 10 Liquidation Trustee's obligations and functions by the successor Class 10 Liquidation Trustee.  If for any reason the Class 10 Liquidation Trustee fails to execute the documents described in section (a) of the preceding sentence, the Trust Advisory Committee may seek such orders from the Bankruptcy Court as are necessary to effect termination of such Class 10 Liquidation Trustee's capacity under this Agreement.  The successor Class 10 Liquidation Trustee agrees that the provisions of this Agreement and the Plan shall be binding upon and inure to the benefit of the successor Class 10 Liquidation Trustee and all his, her, or its heirs and legal and personal representatives, and authorized successors or assigns.

3.7    Compensation.  The Class 10 Liquidation Trustee shall be compensated on an hourly basis at a rate not to exceed $295 per hour, plus reimbursement of reasonable expenses.  The Class 10 Liquidation Trustee shall be compensated solely from the Plan Expense Reserve and the Liquidation Trust Assets.  The payment of the fees and expenses of the Class 10 Liquidation Trustee shall be made in the ordinary course of business of the Liquidation Trust and shall not be subject to the approval of the Bankruptcy Court.  The fees and expenses of the Class 10 Liquidation Trustee shall be paid solely from the Plan Expense Reserve or the Liquidation Trust Assets within fifteen (15) Business Days after submission of a detailed invoice therefore to the Trust Advisory Committee; provided, however, that if the Trust Advisory Committee objects to any invoice prior to the expiration of the fifteen (15) Business Day period, the disputed

portion of such invoice shall not be paid until the dispute is resolved.  All objections to invoices of the Class 10 Liquidation Trustee must set forth the precise amount objected to.  Any objection that fails to set forth the precise amount objected to shall be disregarded and the full amount of the invoice shall be paid.  The Class 10 Liquidation Trustee or the Trust Advisory Committee may submit any disputes respecting the amount of an invoice to the Bankruptcy Court for a determination.

        3.8    <u>Retention of Persons or Professionals</u>.  The Class 10 Liquidation Trustee, without Bankruptcy Court approval, may retain and compensate such Persons and Professionals as the Class 10 Liquidation Trustee determines in his/her sole discretion, to be necessary to carry out the duties or responsibilities of the Class 10 Liquidation Trustee or to otherwise effect the purposes of the Plan, the Confirmation Order and this Agreement, on terms as the Class 10 Liquidation Trustee deems appropriate.  Professionals that may be retained by the Class 10 Liquidation Trustee may include, without limitation, any Persons and Professionals who represented parties in interest in the Chapter 11 Cases.  The reasonable fees and expenses of the Professionals retained by the Liquidation Trust and/or the Class 10 Liquidation Trustee shall be paid by the Class 10 Liquidation Trustee solely from the Plan Expense Reserve or the Liquidation Trust Assets and the Reorganized Debtors and the Plan Funder shall have no further liability for same, absent a written agreement to the contrary between the Class 10 Liquidation Trustee and the Reorganized Debtors and the Plan Funder.  The fees and expenses of such Professionals shall be paid solely from the Plan Expense Reserve or the Liquidation Trust Assets within fifteen (15) Business Days after submission of a detailed invoice therefore to the Class 10 Liquidation Trustee and the Trust Advisory Committee unless objected to under Section 3.7 hereinabove.

**ARTICLE IV**
**RIGHTS AND POWERS OF THE CLASS 10 LIQUIDATION TRUSTEE**

        4.1    <u>Powers and Authority of the Class 10 Liquidation Trustee</u>.  The Class 10 Liquidation Trustee shall have such rights, powers and privileges as set forth in the Plan and this Agreement and as otherwise provided by applicable law.  Subject to the other provisions of this Agreement, including the provisions relating to the Trust Advisory Committee, the Class 10 Liquidation Trustee shall be expressly authorized to take the following actions, in the Class 10 Liquidation Trustee's good faith judgment, in the best interests of the beneficiaries and to maximize net recoveries therefore;

            (i)     hold, protect, preserve, liquidate and distribute the proceeds of Liquidation Trust Assets in accordance with the terms of the Plan, the Confirmation Order and this Agreement;

            (ii)    establish, hold, administer and distribute (or direct distributions of) funds from the Class 10 Pool Escrow, Plan Expense Reserve, Plan Note and Disputed General Unsecured Claims Reserve in accordance with the Plan, the Confirmation Order and this Agreement;

(iii)  make or direct *pro rata* distributions to holders of Allowed Class 10 Claims from the net proceeds of the Liquidation Trust Assets, consistent with the Plan;

(iv)  set off amounts owed to the Debtors by a holder of an Allowed Class 10 Claim prior to the Petition Date against any amounts otherwise due to be distributed to the holder of that Allowed Class 10 Claim;

(v)  investigate, commence, litigate, settle, compromise or otherwise dispose of objections to alleged Class 10 Claims;

(vi)  investigate, commence, litigate, settle, compromise or otherwise dispose of Estate Actions and Avoidance Actions;

(vii)  hold legal title to and assert all rights arising from the Liquidation Trust Assets, including, without limitation, collecting, and receiving any and all money and other property belonging to the Liquidation Trust;

(viii)  to the extent applicable to perform the duties and responsibilities under this Agreement solely with respect to Liquidation Trust Assets, perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling causes of action, enforcing contracts, and asserting claims, defenses, offsets and privileges solely with respect to Liquidation Trust Assets;

(ix)  protect and enforce rights with respect to the Liquidation Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(x)  obtain insurance coverage with respect to property that is or may become Liquidation Trust Assets, and obtain reasonable insurance coverage with respect to liabilities and obligations as Class 10 Liquidation Trustee under this Agreement (in the form of an errors and omissions policy or otherwise);

(xi)  file, if necessary, any and all tax information returns with respect to the Liquidation Trust and pay taxes, if any, properly payable by the Liquidation Trust, and request any appropriate tax determination with respect to the Liquidation Trust;

(xii)  assert or waive any privilege or defense on behalf of the Liquidation Trust or with respect to the Liquidation Trust Assets provided, however, that the Class 10 Liquidation Trustee shall have no right to waive the attorney client privilege on behalf of the Debtors or the Reorganized Debtors;

(xiii)  retain and compensate such professionals as the Class 10 Liquidation Trustee in his/her sole discretion, may deem necessary or appropriate to assist the Class 10 Liquidation Trustee in carrying out his/her powers and duties under this Agreement.  The Class 10 Liquidation Trustee may commit the Liquidation Trust to and shall pay all such Persons or entities reasonable compensation for services rendered and expenses incurred;

(xiv)  invest any moneys held as part of the Liquidation Trust in accordance with the terms of section 5.6 of the Plan and section 6.13 hereof, limited, however, to such investments that are consistent with the Liquidation Trust's status as a liquidating trust within the meaning of Treasury Regulations section 301.7701(d);

(xv)  have reasonable access, upon reasonable notice and during regular business hours, to the Debtors' Pre-Effective Date books and records and to examine, and if appropriate or desirable, copy the same subject to the execution of a mutually acceptable confidentiality agreement;

(xvi)  execute such documents and prepare and file such reports as the Class 10 Liquidation Trustee deems necessary or desirable, upon the consent of the Reorganized Debtors, including the preparation and filing of a motion for final decree (without prejudice to the rights of Reorganized Debtors to accomplish the same);

(xvii)  Withhold distribution to holders of Class 10 Claims pending receipt of appropriate tax documentation and/or forms necessary to administer the Trust; and

(xviii)  take or refrain from taking any and all actions the Class 10 Liquidation Trustee reasonably deems necessary or desirable for the continuation, protection and maximization of the Liquidation Trust Assets or to carry out the purposes hereof.

As set forth herein, all fees, costs and expenses incurred by the Class 10 Liquidation Trustee relating to any of the foregoing actions shall be funded solely from the Plan Expense Reserves or Liquidation Trust Assets.

4.2  Successors of the Debtors.  The Class 10 Liquidation Trustee and the Liquidation Trust shall be "representative[s] of the estates" under, *inter alia*, section 1123(b)(3) of the Bankruptcy Code solely for purposes of pursuing the Avoidance Actions and the Estate Actions and otherwise pursuing or enforcing rights and claims hereunder and under the Plan after the Effective Date.

4.3  Class 10 Liquidation Trustee Conflicts of Interest.  If the Class 10 Liquidation Trustee determines, in the exercise of the Class 10 Liquidation Trustee's discretion, that it has a material conflict of interest with respect to the settlement of a Claim, or any other matter, the Trust Advisory Committee shall exercise the Class 10 Liquidation Trustee's rights and authorities with respect to such matter.  If neither the Class 10 Liquidation Trustee nor the Trust

8

Advisory Committee is able to act on behalf of the Liquidation Trust with respect to the settlement or Claim or any other matter, the Trust Advisory Committee may request the Bankruptcy Court to approve the Trust Advisory Committee's choice of a designee to act on behalf of the Liquidation Trust solely with respect to such matter, with such designee's authority to act on behalf of the Liquidation Trust to terminate upon the matter's conclusion.

4.4     Fiduciary Capacity.  Every act done, power exercised or obligations assumed by the Class 10 Liquidation Trustee pursuant to the provisions of this Agreement and/or the Plan shall be held to be done, exercised or assumed, as the case may be, by the Class 10 Liquidation Trustee acting in a fiduciary capacity and not otherwise, and every Person contracting or otherwise dealing with the Class 10 Liquidation Trustee shall look only to the Liquidation Trust Assets for payment under such contract or payment of any money that may become due or payable under any obligation arising under this Agreement and/or the Plan, in whole or in part, and the Class 10 Liquidation Trustee shall not be individually liable therefore even though the Class 10 Liquidation Trustee did not exempt himself, herself, or itself from individual liability when entering into any contract, obligation or transaction in connection with or growing out of the Liquidation Trust.

4.5     Exculpation/Indemnification.  The Class 10 Liquidation Trustee and the Class 10 Liquidation Trustee's agents and Professionals, shall not be liable for actions taken or omitted in such capacity, or on behalf of, the Liquidation Trust or the Class 10 Liquidation Trustee, except those acts arising out of their own willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or _ultra vires_ acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of their actions or inactions in such capacities, or on behalf of, the Class 10 Liquidation Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or _ultra vires_ acts.  Any indemnification claim of the Class 10 Liquidation Trustee shall be satisfied first from available proceeds of errors and omissions insurance, which may be obtained by the Class 10 Liquidation Trustee and paid solely from the Plan Expense Reserve or the Liquidation Trust Assets, and then from the Liquidation Trust Assets, and exclusively from those sources.  The Class 10 Liquidation Trustee shall be entitled to rely, in good faith, on the advice of Professionals.

4.6     No Liability for Acts of Successor/Predecessor Class 10 Liquidation Trustee.  A successor Class 10 Liquidation Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Class 10 Liquidation Trustee shall be in any way liable for the acts or omissions of any predecessor Class 10 Liquidation Trustee unless a successor Class 10 Liquidation Trustee expressly assumes such responsibility.

4.7     Insurance.  The Class 10 Liquidation Trustee is authorized to obtain and pay out of the Plan Expense Reserve and/or Liquidation Trust Assets all reasonably necessary insurance coverage for the Liquidation Trust or the Class 10 Liquidation Trustee, as the case may be, which insurance coverage shall include, but not limited to, coverage with respect to: (i) any property that is or may in the future become the property of the Liquidation Trust and (ii) the liabilities, duties and obligations of the Class 10 Liquidation Trustee, in the form of an errors and omissions policy or otherwise, the latter of which insurance coverage may remain in effect for a reasonable period after the termination of this Agreement.

4.8     Reliance by Class 10 Liquidation Trustee.  Except as otherwise provided in the Plan or this Agreement, the Class 10 Liquidation Trustee may rely, and shall be fully protected from liability for acting or refraining from acting, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Class 10 Liquidation Trustee reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies, facsimiles and e-mails to have been sent by the proper party or parties, and the Class 10 Liquidation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Class 10 Liquidation Trustee shall not be liable if the Class 10 Liquidation Trustee acts based on a mistake of fact before having actual knowledge of such fact.  The Class 10 Liquidation Trustee may consult with counsel and other Professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Class 10 Liquidation Trustee.  The Class 10 Liquidation Trustee shall be entitled to rely upon the advice of such Professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The Class 10 Liquidation Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection therewith, and the Class 10 Liquidation Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

## ARTICLE V
## TRUST ADVISORY COMMITTEE

5.1     Formation and Number.  A Trust Advisory Committee (the "Trust Advisory Committee") shall be formed as of the Effective Date.  The Trust Advisory Committee shall be composed of three (3) persons, consisting of three (3) members of the Official Committee of Unsecured Creditors.  The Trust Advisory Committee shall have a chairperson who shall act as the Trust Advisory Committee's liaison with the Class 10 Liquidation Trustee, coordinate and schedule meetings of the Trust Advisory Committee, and handle all administrative matters that come before the Trust Advisory Committee.

5.2     Duties.  The Trust Advisory Committee and its members shall serve in a fiduciary capacity representing all holders of Allowed Class 10 Claims (whether Allowed before, on or after the Effective Date) entitled to distributions from the Liquidating Trust.  Where provided in this Agreement, certain provisions of this Liquidation Trust are subject to the actions of the Trust Advisory Committee.  Meetings of the Trust Advisory Committee may take place in person or by telephone.  Members of the Trust Advisory Committee shall serve without pay, but may be reimbursed for reasonable out of pocket expenses.

5.3     Term of Office.

(a)     Each member of the Trust Advisory Committee shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to section 5.3(b), (iii) his or her removal pursuant to section 5.3(c) or (iv) upon the termination of the Liquidation Trust pursuant to Article VIII hereof.

(b)     Any member of the Trust Advisory Committee may resign at any time by written notice to each of the remaining Trust Advisory Committee members.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given.

(c)     Any member of the Trust Advisory Committee may be removed in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause.  Good cause shall be deemed to include, without limitation, a consistent pattern of neglect and failure to perform or to participate in performing duties of such member hereunder, such as repeated non-attendance at scheduled meetings.  Such removal shall be made by the majority vote of the Class 10 Liquidation Trustee and other members of the Trust Advisory Committee, and shall take effect at such time as the Class 10 Liquidation Trustee and the other members of the Trust Advisory Committee jointly determine.

5.4     Appointment of Successors.  A vacancy in the Trust Advisory Committee, caused by resignation, death, or removal, shall be filled by an individual appointed by the remaining members of the Trust Advisory Committee.

5.5     Liability of the Trust Advisory Committee, Officers and Employees.  No member of the Trust Advisory Committee shall be liable to the Liquidation Trust, to any person holding Allowed Class 10 Claims, or to any other Person except to the extent of such individual's (i) own breach of trust committed in bad faith or (ii) willful misappropriation.  Such protection may, in the discretion of the Class 10 Liquidation Trustee, be extended to the agents, Professionals, advisors, or consultants of the Trust Advisory Committee.

## ARTICLE VI
## DISTRIBUTIONS FROM LIQUIDATION TRUST ASSETS

6.1     Establishment of the Plan Expense Reserve, Disputed General Unsecured Claims Reserve and Other Reserves. The Class 10 Liquidation Trustee shall establish on the Liquidation Trust's books and records accounts representing segregated accounts for each of the Plan Expense Reserve and the Disputed General Unsecured Claims Reserve.  It is expressly understood that the establishment of such accounts by the Class 10 Liquidation Trustee or his/her agents, is solely for administrative convenience, and that amounts allocable to such accounts need not and will not be segregated from, and may be commingled with the Liquidation Trust Assets, including, without limitation, all Cash held by the Liquidation Trust; provided, however, that each such account shall be limited to the funding amount provided from the Reorganized Debtors and the Plan Funder under the Plan and the Confirmation Order and any interest or other earnings thereon, and to the extent applicable, the net proceeds of the Avoidance Actions and Estate Actions.

6.2     The Plan Expense Reserve.  On or before the Effective Date, the Plan Funder or the Reorganized Debtors shall deposit $200,000 with the Class 10 Liquidation Trustee to be used to pay Plan Expenses (as defined in Section 1.83 of the Plan) in accordance with the Plan and this Agreement.  Upon termination of the Trust, any balance remaining in the Expense Reserve will be paid to the Reorganized Debtors in accordance with the Plan.

11

6.3    <u>Payment of Plan Expenses</u>.  The Class 10 Liquidation Trustee shall pay from the Plan Expense Reserve, and if such Reserve is insufficient, from the proceeds of the Liquidation Trust Assets, all Plan Expenses, including, without limitation, the Trust's portion of U.S. Trustee Fees, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges and expenses incurred in connection with or arising out of the execution or administration of the Trust and the Liquidation Trust Assets, and such other payments and disbursements as are provided for in this Agreement or which may be reasonably determined by the Class 10 Liquidation Trustee to be proper charges against the Liquidation Trust and the Liquidation Trust Assets, and the Class 10 Liquidation Trustee, in his/her reasonable discretion and business judgment, may determine to be necessary or advisable to meet or satisfy unascertained, unliquidated or contingent liabilities of the Liquidation Trust.  The Class 10 Liquidation Trustee shall make all such payments without application or order of the Bankruptcy Court.

6.4    <u>Class 10 Pool.</u>  On or as soon as practicable after the Effective Date, the Plan Funder or the Reorganized Debtors shall transfer the Class 10 Pool Escrow and the Plan Note, to the extent issued to the Class 10 Liquidation Trustee in accordance with the Plan and this Agreement, to fund the Class 10 Pool.

6.5    <u>Class 10 Pool Escrow and Disputed General Unsecured Claims Reserve.</u>  The Class 10 Liquidation Trustee shall establish and maintain the Class 10 Pool Escrow and the Disputed General Unsecured Claims Reserve from the Class 10 Pool. The Class 10 Pool Escrow and the Disputed General Unsecured Claims Reserve may be increased as and to the extent net proceeds from the Estate Actions and the Avoidance Actions are realized.   The Class 10 Liquidation Trustee shall hold in the Disputed General Unsecured Claims Reserve Cash in an aggregate amount sufficient to pay each holder of a Disputed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such Disputed Claim had been an Allowed Claim on the Effective Date, or such other lesser amount as may be agreed by the Class 10 Liquidation Trustee and the claimant or approved by the Bankruptcy Court.  With respect to such Disputed Claims, if, when and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant potion of the Cash held in reserve thereto shall be distributed by the Class 10 Liquidation Trustee to the Claimant in a manner consistent with distributions on account of other Allowed Class 10 Claims. Distributions shall be made to the extent the Class 10 Liquidation Trustee determines that, after establishing appropriate reserves, there is sufficient cash to warrant a distribution, and shall be made semi-annually.  The balance of such Cash, if any, remaining after all such Class 10 Disputed Claims have been resolved and distributions made in accordance with the Plan, shall become part of the Class 10 Pool Escrow and distributed in accordance with this Agreement, the Plan and the Confirmation Order.

6.6    <u>No Distribution Pending Allowance</u>.  Notwithstanding any other provision of the Plan, the Confirmation Order or this Agreement, no Cash or other property shall be distributed on account of any Disputed Class 10 Claim, unless and until such Disputed Claim becomes an Allowed Claim by agreement or Final Order.   Any allowance of Claims pursuant to the provisions of the Plan or an order of the Bankruptcy Court shall not prejudice the rights of the Trust to pursue the Avoidance Actions, the Estate Actions or objections to General Unsecured Claims pursuant to section 502(d) of the Bankruptcy Code, against the holders of such Allowed Class 10 Claims.

6.7    <u>Resolution of Disputed Claims</u>.  On and after the Effective Date, the Liquidation Trust shall be vested with the exclusive authority to bring, prosecute and dispose of any objections to Disputed Class 10 Claims for the benefit of the Estates and the Liquidation Trust. The Liquidation Trust shall have the right to file and/or prosecute objections to Disputed Class 10 Claims and shall serve a copy of each objection it files upon the Trust Advisory Committee and the holder of the Claim to which the objection is made as soon as practicable but in no event later than ninety (90) days after the Effective Date; <u>provided,</u> <u>however</u>, pursuant to section 7.8 of the Plan that this deadline may be extended by the Bankruptcy Court upon the motion of the Class 10 Liquidation Trustee or the Reorganized Debtors, with or without notice or hearing. Notwithstanding the foregoing, (i) the Class 10 Liquidation Trustee shall not be required to file an objection to any Claims listed in the Schedules as disputed, contingent, unliquidated or undetermined and for which no Proofs of Claim were timely Filed and such Claims shall be barred and disallowed in their entirety; and (ii) unless an order of the Bankruptcy Court specifically provides for a later date, any proof of, or other assertion of, a Claim filed after the deadline established for filing Claims of that type shall be automatically disallowed as a late filed Claim, without any action by the Class 10 Liquidation Trustee, unless and until the party filing such Claim obtains the written consent of the Class 10 Liquidation Trustee or an order of the Bankruptcy Court upon notice to the Class 10 Liquidation Trustee and the Reorganized Debtors that permits the late filing of the Claim, otherwise the holder of such disallowed claim shall be forever barred from asserting such Claim against the Liquidation Trust and the Liquidation Trust Assets.  In the event any proof of claim is permitted to be filed after the Confirmation Date pursuant to an order of the Bankruptcy Court, the Class 10 Liquidation Trustee shall have sixty (60) days from the filing of such proof of claim or entry of such order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Class 10 Liquidation Trustee or the Reorganized Debtors with or without notice or a hearing.

6.8    <u>Settlement of Disputed Claims</u>.  The Class 10 Liquidation Trustee shall have the right to settle any alleged Disputed Class 10 Claim without obtaining prior Bankruptcy Court approval when the result of the settlement or compromise is an Allowed Class 10 Claim for an amount not in excess of $100,000.  A proposed settlement of a Disputed Class 10 Claim where the settlement or compromise results in an Allowed Claim in an amount in excess of $100,000 must be approved by the Bankruptcy Court after notice and a hearing in accordance with Fed. R. Bankr. P. 9019.

6.9    <u>Distributions to Holders of Allowed Claims</u>.

(a)    <u>Distributions to Holders of Allowed Class 10 Claims</u>.  Subject to the reserve requirements set forth in this Agreement and the Plan, (i) as soon as practicable after the Effective Date, the Class 10 Liquidation Trustee shall distribute to each holder of an Allowed Class 10 Claim its Pro Rata share of the Class 10 Pool Escrow; and (ii) from time to time after the Effective Date, in the Class 10 Liquidation Trustee's sole discretion following the Effective Date of the Plan**,** the Class 10 Liquidation Trustee shall distribute to each holder of an Allowed Class 10 Claim its Pro Rata share of the Reserves Balance.  No distribution of fractions of cents shall be required and the Class 10 Liquidation Trustee shall round down to the nearest whole cent when calculating distributions.

(b)      <u>Payments Limited to Liquidation Trust Assets</u>.  All payments to be made to the holders of Allowed Class 10 Claims on account of their Allowed General Unsecured Claims shall be made exclusively from the proceeds of Liquidation Trust Assets and only to the extent that the Class 10 Liquidation Trustee has sufficient funds and reserves to make such payments in accordance with the Plan and this Agreement.  Holders of Allowed Class 10 Claims shall have recourse only against Liquidation Trust Assets.

(c)      <u>Time Bar to Cash Payments</u>.  All uncashed distributions to Allowed Class 10 Claims shall be handled in accordance with this Article.  Checks issued by the Liquidation Trust shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  The holder of the Allowed Class 10 Claim to whom such check originally was issued shall make a written request for re-issuance of any cheek to the Liquidation Trust.  Any request for reissuance shall be made on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check.  After such date, all funds held on account of such voided check shall revest in the Liquidation Trust and shall be held in reserve by the Class 10 Liquidation Trustee to be distributed to the other holders of Allowed Class 10 Claims Pro Rata by modifying the ratio by eliminating the Allowed Class 10 Claim of such holder that timely failed to negotiate the check or timely request that the check be reissued.

6.10   <u>Withholding and Reporting Requirements</u>.  The Class 10 Liquidation Trustee shall, to the extent required under applicable laws, comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority in connection with any distributions made for or on behalf of holders of Allowed Class 10 Claims, and is authorized, but not obligated, to withhold and deduct appropriately from distributions under the Plan for such Claims.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

6.11   <u>Management of Liquidation Trust Assets</u>.  The Class 10 Liquidation Trustee shall take all steps necessary to liquidate all of the Liquidation Trust Assets and distribute the proceeds in accordance with this Agreement and the Plan.  Except as otherwise expressly provided in the Plan, Confirmation Order or this Agreement, the Class 10 Liquidation Trustee shall be empowered to liquidate and reduce to Cash, or abandon, the Liquidation Trust Assets on such terms and for such consideration as the Class 10 Liquidation Trustee deems reasonable and in the best interest of the holders of Allowed Class 10 Claims, without further application to, or order of, the Bankruptcy Court under any provision of the Bankruptcy Code (including, without limitation, section 363 thereof) or otherwise.

6.12   <u>Investment of Cash</u>.  The Class 10 Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in interest-bearing accounts at institutions on the U.S. Class 10 Liquidation Trustee's list of such approved institutions, or invested in U.S. Government backed securities or mutual funds investing in such securities or certificates of deposit or money market accounts; <u>provided, however</u>, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service Guidelines, rulings or other controlling authorities.

6.13   <u>No Bond</u>.  The Class 10 Liquidation Trustee may serve without a bond.

6.14    <u>Transactions with Related Persons</u>.  Notwithstanding any other provisions of this Agreement, the Class 10 Liquidation Trustee shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of the Liquidation Trust Assets to, or contract with, (a) any relative, employee, or agent (acting in their individual capacities) of the Class 10 Liquidation Trustee, or (b) any Person of which any employee or agent of the Class 10 Liquidation Trustee is an affiliate by reason of being a trustee, director, officer, partner, or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares, or other equity interest of such persons unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Bankruptcy Court and the Bankruptcy Court determines that the terms of such transaction are fair and reasonable to the Liquidation Trust and no less favorable to the Liquidation Trust than terms available for a comparable transaction with unrelated persons.

6.15    <u>Books and Records</u>.  The Class 10 Liquidation Trustee shall maintain, in respect of the Liquidation Trust, books and records relating to the Liquidation Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidation Trust in accordance with generally accepted accounting principles and for such period of time as may be necessary to enable the Class 10 Liquidation Trustee to make full and proper reports in respect thereof.  Except as expressly provided in the Plan and this Agreement, nothing in the Plan or this Agreement is intended to require the Class 10 Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets.

6.16    <u>Reports</u>.  Until the termination of the Liquidation Trust, the Class 10 Liquidation Trustee shall provide semi-annual reports to the Trust Advisory Committee setting forth in reasonable detail the expenses paid, Liquidation Trust Assets received and distributions made out of the Liquidation Trust, and any distribution made out of the Reserves during the prior six months.

6.17    <u>Closing of the Chapter 11 Case</u>.  Upon the consent of the Reorganized Debtors, which consent shall not be unreasonably withheld, the Class 10 Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules when (i) all Disputed Class 10 Claims have been resolved, (ii) all Liquidation Trust Assets have been liquidated or abandoned, (iii) all distributions required to be made by the Class 10 Liquidation Trustee under the Plan and all distributions required to be made under this Agreement have been made, and (iv) all duties and obligations of the Class 10 Liquidation Trustee under the Plan and this Agreement have been fulfilled; or after consultation with the Trust Advisory Committee, when the Class 10 Liquidation Trustee otherwise deems appropriate.

# ARTICLE VII
## FEDERAL INCOME TAX TREATMENT OF LIQUIDATION TRUST

7.1    <u>Liquidation Trust Assets Treated as Owned by Beneficiaries of the Liquidation Trust</u>.  For all federal income tax purposes, all parties (including without limitation the Debtors, the Reorganized Debtors, the Plan Funder, the Class 10 Liquidation Trustee and the beneficiaries

15

under the Liquidation Trust) shall treat the transfer of the Liquidation Trust Assets to the Liquidation Trust for the benefit of the holders of such Allowed Class 10 Claims, whether Allowed prior to, on or after the Effective Date, as (A) a transfer of the Liquidation Trust Assets directly to the holders of such Claims in satisfaction of such Claims (other than to the extent allocable to Disputed Claims) followed by (B) the transfer by such holders to the Liquidation Trust of the Liquidation Trust Assets in exchange for beneficial interests in the Liquidation Trust. Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and the owners of their respective shares of the Liquidation Trust Assets.

       7.2    <u>Tax Reporting</u>.

       (a)    The Class 10 Liquidation Trustee shall file returns for the Liquidation Trust as a grantor trustee pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this section 7.2. The Class 10 Liquidation Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of the items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated (subject to section 7.2(c) hereof, related to Disputed Class 10 Claims) to the holders of Allowed Class 10 Claims in accordance with their relative beneficial interests in the Liquidation Trust.

       (b)    Subject to definitive guidance from the Internal Revenue Service, or a court of competent jurisdiction to the contrary (including the receipt by the Class 10 Liquidation Trustee of a private letter ruling if the Class 10 Liquidation Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Class 10 Liquidation Trustee), the Class 10 Liquidation Trustee shall (i) treat any Liquidation Trust Assets allocable to, or retained on account of Disputed Class 10 Claims as held by one or more discrete trusts for federal income tax purposes (the <u>Disputed General Unsecured Claims Reserve</u>), consisting of separate and independent shares to be established in respect of each Disputed General Unsecured Claim, in accordance with the trust provisions of the Tax Code (section 641 et seq.), (ii) treat as taxable income or loss of the Disputed General Unsecured Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidation Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Disputed General Unsecured Claims Reserve any increased amounts distributed by the Liquidation Trust as a result of any Claim resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Disputed General Unsecured Claims Reserve determined in accordance with the provisions hereof and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes.

       (c)    The Class 10 Liquidation Trustee shall be responsible for payments, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust or the Liquidation Trust Assets, including the Disputed General Unsecured Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed General Unsecured Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable

income arising from the assets allocable to, or retained on account of, Disputed Class 10 Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Class 10 Claims or (ii) to the extent such Disputed Class 10 Claims have subsequently been resolved, deducted from any amounts distributable by the Class 10 Liquidation Trustee as a result of the resolution of such Disputed Class 10 Claims.

## ARTICLE VIII
## TERMINATION OF TRUST

8.1     <u>Termination of Liquidation Trust</u>.  The Class 10 Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as: (a) all Disputed Class 10 Claims have been resolved; (b) all Liquidation Trust Assets have been liquidated or abandoned, including Estate Actions and Avoidance Actions; (c) all distributions required to be made by the Class 10 Liquidation Trustee under the Plan and Confirmation Order and all distributions required to be made under this Agreement have been made; (d) all duties and obligations of the Class 10 Liquidation Trustee under the Plan and this Agreement have been fulfilled; and (e) a Final Decree closing the Chapter 11 Case has been entered.

8.2     <u>Maximum Terms</u>.  The term of the Liquidation Trust shall, in no event, be terminated later than the fifth (5th) anniversary of the Effective Date (the "<u>Initial Liquidation Trust Term</u>") if not otherwise terminated pursuant to section 8.1 hereof; <u>provided</u>, <u>however</u>, that the Class 10 Liquidation Trustee may extend the term of the Liquidation Trust for additional one (1) year periods by filing a notice of the Class 10 Liquidation Trustee's intent to extend the term of the Liquidation Trust with the Bankruptcy Court and obtaining the approval of the Bankruptcy Court (upon a determination that such extension is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets) within three (3) months of the beginning of the applicable term extension; <u>provided</u>, <u>however</u>, that there shall be no extension of the Trust's duration absent a favorable letter ruling from the Internal Revenue Service that any extensions would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes.  Notwithstanding the foregoing, after the termination of the Trust, the Class 10 Liquidation Trustee shall have the power to exercise all the powers, authorities and discretions herein conferred for the sole purpose of liquidating and winding up the affairs of the Trust.  At the Class 10 Liquidation Trustee's discretion, the Class 10 Liquidation Trustee may dispose of al books and records pertaining to the Trust and its administration any time after 2 years after the distribution of all of the assets of the Trust.

8.3     <u>Discharge of the Class 10 Liquidation Trustee</u>.  Upon the termination of the Liquidation Trust pursuant to sections 8.1 or 8.2 hereof, and completion of any residual tasks as set forth in section 8.2, the Class 10 Liquidation Trustee shall have no further duties or obligations hereunder, or under the Plan, except as required by this Agreement or applicable concerning the termination of a trust.  Upon a motion by the Class 10 Liquidation Trustee, the Bankruptcy Court may enter an order relieving the Class 10 Liquidation Trustee of any further duties, discharging and releasing the Class 10 Liquidation Trustee.

# ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.1    <u>Amendments</u>.  This Agreement may be modified supplemented or amended with the consent of the Class 10 Liquidation Trustee and the all members of the Trust Advisory Committee; provided, however, that any change or amendment to this Agreement that is inconsistent with the terms of the Plan or the Confirmation Order cannot be made without the approval of the Bankruptcy Court, upon prior notice to the Reorganized Debtors.

9.2    <u>Waiver</u>.  No failure by the Class 10 Liquidation Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder shall preclude any further exercise thereof or of any other right, power or privilege.

9.3    <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

9.4    <u>Relationship to the Plan</u>.  In the event that any provision of this Agreement is found to be inconsistent with provisions of the Plan or the Confirmation Order, the provisions of the Plan and the Confirmation Order shall control.

9.5    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law thereof.

9.6    <u>Retention of Jurisdiction</u>.    Notwithstanding any other provision of this Agreement, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over this Liquidation Trust after the Effective Date to resolve any and all controversies, suits and issues that may arise in connection with the Liquidation Trust, including without limitation, this Agreement, or any Person's obligations incurred in connection herewith, including without limitation, acts against the Class 10 Liquidation Trustee or any Professional retained by the Class 10 Liquidation Trustee or Liquidation Trust.

9.7    <u>Waiver of Jury Trial</u>.  Each party to this Agreement hereby irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or the transactions contemplated hereby.

9.8    <u>Severability</u>.  In the event that any provisions of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

9.9    <u>Notices</u>.    All notices, requests, demands consents and other communication hereunder shall be deemed to have been duly given to a Person, if in writing and delivered

personally or by facsimile or nationally recognized overnight delivery service or mailed by first class mail, postage pre-paid, to the following addresses:

If to the Reorganized Debtors:

      Steven Grabell CEO
      Shapes/Arch Holdings, L.L.C.
      9000 River Road
      Delair, NJ  08110

with a copy to:

      Mark E. Felger, Esquire
      Cozen O'Connor
      1201 North Market Street
      Suite 1400
      Wilmington, DE  19801

If to the Plan Funder after to the Effective Date:

      Arch Acquisition I, LLC
      c/o 1416 Bayside Capital
      1001 Bricked Bay Drive
      37th Floor
      Miami, FL  33131
      ATTN:  John P. Boldor

with a copy to:

      Greenberg Traurig, LLP
      Met Life Building
      200 Park Avenue
      New York, NY  10186
      ATTN:  Nancy A. Mitchell, Esquire

If to the Liquidation Trust:

[       ]

with a copy to:

[       ]

19

If to a member of the Trust Advisory Committee, to the address shown on the attached schedule for such member.

Changes of address, if any, shall be provided to the Class 10 Liquidation Trustee in writing.

9.10    Cooperation.    The Reorganized Debtors shall turn over or otherwise make available to the Class 10 Liquidation Trustee, at no cost to the Reorganized Debtors and subject to the execution of a mutually acceptable confidentiality agreement, all books and records reasonably required by the Class 10 Liquidation Trustee to carry out his/her duties hereunder, and agree to otherwise reasonably cooperate with the Class 10 Liquidation Trustee in the fulfillment of his/her duties hereunder.

9.11    Entire Agreement.    This Agreement, the Plan and the Confirmation Order constitute the entire agreement of the parties and there are no representations, warranties, covenants or obligations except as set forth herein or therein.  This Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

9.12    Counterparts.    This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers, all as of the date first above written.

DATED:

Shapes/Arch Holdings L.L.C.

By:    _____
Name:
Title:

Shapes L.L.C.

By:    _____
Name:
Title:

Delair L.L.C.

By: _____
Name:
Title:

Accu-Weld L.L.C.


By: _____
Name:
Title:

Ultra L.L.C.


By: _____
Name:
Title:

Class 10 Liquidation Trustee


By: _____
Name:
Title:

# EXHIBIT "E"

**Shapes/Arch Holdings, LLC**
**Liquidation Analysis - Exhibit 1**
**Estimated Liquidation Proceeds**
**June 6, 2008**

| | | Month 1 Aug-08 | Month 2 Sep-08 | Month 3 Oct-08 | Month 4 Nov-08 | Month 5 Dec-08 | Month 6 Jan-09 | Month 7 Feb-09 | Month 8 Mar-09 | Month 9 Apr-09 | Month 10 May-09 | Month 11 Jun-09 | Month 12 Jul-09 | Month 13 Aug-09 | Month 14 Sep-09 | Month 15 Oct-09 | Month 16 Nov-09 | Month 17 Dec-09 | Month 18 Jan-10 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) | **Sources** | | | | | | | | | | | | | | | | | | | |
| a) | Collection of A/R | | | | | | | | | | | | | | | | | | | |
| | Shapes | 3,469,457 | 2,602,093 | 867,364 | 867,364 | 867,364 | 867,364 | 867,364 | 867,364 | - | - | - | - | - | - | - | - | - | - | 11,275,735 |
| | Delair | 1,947,289 | 1,460,467 | 486,822 | 486,822 | 486,822 | 486,822 | 486,822 | 486,822 | - | - | - | - | - | - | - | - | - | - | 6,328,689 |
| | Accu-Weld | 481,526 | 160,509 | 160,509 | 160,509 | 160,509 | 160,509 | 160,509 | 160,509 | - | - | - | - | - | - | - | - | - | - | 1,605,085 |
| | Ultra | 1,227,873 | 920,905 | 306,968 | 306,968 | 306,968 | 306,968 | 306,968 | 306,968 | - | - | - | - | - | - | - | - | - | - | 3,990,588 |
| | Total | 7,126,145 | 5,143,973 | 1,821,663 | 1,821,663 | 1,821,663 | 1,821,663 | 1,821,663 | 1,821,663 | - | - | - | - | - | - | - | - | - | - | 23,200,098 |
| b) | Sale of Inventory | | | | | | | | | | | | | | | | | | | |
| | Shapes | 9,830,805 | 2,457,701 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 12,288,506 |
| | Delair | 2,260,251 | 2,260,251 | - | - | 1,130,126 | - | - | - | - | - | - | - | - | - | - | - | - | - | 5,650,628 |
| | Accu-Weld | 323,794 | 485,692 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 809,486 |
| | Ultra | - | - | - | 9,577,444 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 9,577,444 |
| | Total | 12,414,850 | 5,203,644 | - | 9,577,444 | 1,130,126 | - | - | - | - | - | - | - | - | - | - | - | - | - | 28,326,063 |
| c) | Sale of Machinery & Equipment | - | - | - | - | 142,020 | - | 1,175,295 | 472,095 | 4,051,500 | - | - | - | - | - | - | - | - | - | 5,840,910 |
| d) | Sale of Real Estate | - | - | - | - | - | - | - | - | 2,542,500 | 2,520,000 | - | - | - | - | - | - | - | 13,720,000 | 18,782,500 |
| e) | Other Assets | | | | | | | | | | | | | | | | | | | |
| | Return of Post-Petition Security Deposits | | | | | | | | | | | | | | | | | | 1,055,000 | 1,055,000 |
| | Excess of L/C over Reserve - Workmans Comp | | | | | | | | | | | | | | | | | | 1,400,000 | 1,400,000 |
| | Recovery of Avoidance Actions          5.0% | | | | | | | | | | | | | | | | | | 2,540,650 | 2,540,650 |
| | Total Estimated Gross Liquidation Proceeds | 19,540,995 | 10,347,617 | 1,821,663 | 11,399,107 | 3,093,809 | 1,821,663 | 2,996,958 | 2,293,758 | 6,594,000 | 2,520,000 | - | - | - | - | - | - | - | 18,715,650 | 81,145,221 |

**Shapes/Arch Holdings, LLC**
**Liquidation Analysis - Exhibit 1**
**Estimated Liquidation Proceeds**
**June 6, 2008**

| | Month 1 Aug-08 | Month 2 Sep-08 | Month 3 Oct-08 | Month 4 Nov-08 | Month 5 Dec-08 | Month 6 Jan-09 | Month 7 Feb-09 | Month 8 Mar-09 | Month 9 Apr-09 | Month 10 May-09 | Month 11 Jun-09 | Month 12 Jul-09 | Month 13 Aug-09 | Month 14 Sep-09 | Month 15 Oct-09 | Month 16 Nov-09 | Month 17 Dec-09 | Month 18 Jan-10 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2) Uses** | | | | | | | | | | | | | | | | | | | |
| a) Priority and Administrative | | | | | | | | | | | | | | | | | | | |
| Chapter 7 Trustee & Professionals | 50,000 | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 2,459,357 | 2,984,357 |
| Chapter 11 Non-Professionals | 550,000 | | | | | | | | | | | | | | | | | | 550,000 |
| Chapter 11 Priority Claims | 884,000 | | | | | | | | | | | | | | | | | | 884,000 |
| Chapter 11 Administrative Claims | 80,000 | | | | | | | | 74,794 | | | | | | | | | 673,145 | 827,939 |
| Subtotal | 1,564,000 | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 25,000 | 25,000 | 99,794 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 3,132,502 | 5,246,296 |
| b) Estimated Wind Down Costs | | | | | | | | | | | | | | | | | | | |
| Shapes | 675,168 | 209,508 | 151,248 | 375,748 | 150,748 | 150,748 | 375,748 | 150,748 | 250,748 | 475,748 | 233,548 | 233,548 | 458,548 | 224,948 | 224,948 | 449,948 | 224,948 | 224,948 | 5,241,544 |
| Delair | 171,760 | 100,060 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 367,820 |
| Accu-Weld | 197,080 | 103,220 | 40,760 | 19,760 | 19,760 | 39,760 | 19,760 | 19,760 | 39,760 | 19,760 | | | | | | | | | 519,380 |
| Ultra | 386,240 | 70,780 | 53,160 | 8,660 | 8,660 | 8,660 | 8,660 | 8,660 | 8,660 | | | | | | | | | | 562,140 |
| Total Wind Down Costs | 1,430,248 | 483,568 | 251,168 | 410,168 | 185,168 | 205,168 | 410,168 | 185,168 | 305,168 | 501,508 | 239,548 | 239,548 | 464,548 | 230,948 | 230,948 | 455,948 | 230,948 | 230,948 | 6,690,884 |
| c) Other | | | | | | | | | | | | | | | | | | | |
| Collection Agency 15.00% | | | 273,249 | 273,249 | 273,249 | 273,249 | 273,249 | 273,249 | - | | | | | | | | | | 1,639,497 |
| Inventory Liquidator (Fee & Exp) 5.75% | | | | 550,703 | 64,982 | | | | | | | | | | | | | | 615,685 |
| M&E Liquidator 15.00% | | | | | 21,303 | | 176,294 | 70,814 | 607,725 | | | | | | | | | | 876,136 |
| Reserve for M&E Removal | | | | | | | 75,000 | | 250,000 | | | | | | | | | | 325,000 |
| Real Estate Broker 6.00% | | | | | | | | | 152,550 | 151,200 | | | | | | | | 823,200 | 1,126,950 |
| Total Other | - | - | 273,249 | 823,953 | 359,535 | 273,249 | 524,544 | 344,064 | 1,010,275 | 151,200 | - | - | - | - | - | - | - | 823,200 | 4,583,269 |
| **Net Proceeds from Liquidation** | 16,546,747 | 9,814,049 | 1,247,246 | 10,114,987 | 2,524,106 | 1,318,246 | 2,037,247 | 1,739,527 | 5,178,763 | 1,842,292 | (264,548) | (264,548) | (489,548) | (255,948) | (255,948) | (480,948) | (255,948) | 14,529,000 | 64,624,772 |
| **3) Maintain Cash Balance** | | | | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | - | 2,500,000 | 2,505,208 | 2,510,428 | 2,515,658 | 2,520,899 | 2,526,150 | 2,531,413 | 2,536,687 | 2,541,972 | 2,547,268 | 2,288,026 | 2,028,245 | 1,542,923 | 1,290,189 | 1,036,929 | 558,141 | 303,356 | - |
| Plus: Additions | 2,500,000 | | | | | | | | | | | | | | | | | | 2,500,000 |
| Plus: Interest on Cash Balance 2.50% | | 5,208 | 5,219 | 5,230 | 5,241 | 5,252 | 5,263 | 5,274 | 5,285 | 5,296 | 5,307 | 4,767 | 4,226 | 3,214 | 2,688 | 2,160 | 1,163 | 632 | 71,424 |
| Less: Use of Cash Balance | | | | | | | | | | | (264,548) | (264,548) | (489,548) | (255,948) | (255,948) | (480,948) | (255,948) | (303,988) | (2,267,436) |
| Less: Return of Cash Balance | | | | | | | | | | | | | | | | | | (303,988) | (303,988) |
| Ending Cash Balance | 2,500,000 | 2,505,208 | 2,510,428 | 2,515,658 | 2,520,899 | 2,526,150 | 2,531,413 | 2,536,687 | 2,541,972 | 2,547,268 | 2,288,026 | 2,028,245 | 1,542,923 | 1,290,189 | 1,036,929 | 558,141 | 303,356 | - | (0) |
| **4) Secured Debt Rollforward** | | | | | | | | | | | | | | | | | | | |
| Beginning of Month | 74,514,294 | 68,028,386 | 58,716,304 | 57,902,313 | 48,228,325 | 46,073,835 | 45,109,308 | 43,418,663 | 42,013,264 | 37,158,257 | 35,603,898 | 35,880,361 | 36,158,865 | 36,439,423 | 36,722,051 | 37,006,765 | 37,293,580 | 37,582,511 | 74,514,294 |
| Plus: Draw Under Ultra L/C's | 3,000,000 | | | | | | | | | | | | | | | | | | 3,000,000 |
| Plus: Draw Under Worker Comp - Prior | 1,855,000 | | | | | | | | | | | | | | | | | | 1,855,000 |
| Plus: Draw Under Worker Comp - Sentry | 2,138,531 | | | | | | | | | | | | | | | | | | 2,138,531 |
| Plus: Interest - Blended Rate 6.85% | 425,634 | 388,586 | 335,394 | 330,745 | 275,486 | 263,179 | 257,670 | 248,012 | 239,985 | 212,252 | 203,374 | 204,953 | 206,544 | 208,146 | 209,761 | 211,387 | 213,025 | 214,676 | 4,648,807 |
| Plus: Additional Interest - Default Rate 2.00% | 124,190 | 113,381 | 97,861 | 96,504 | 80,381 | 76,790 | 75,182 | 72,364 | 70,022 | 61,930 | 59,340 | 59,801 | 60,265 | 60,732 | 61,203 | 61,678 | 62,156 | 62,638 | 1,356,417 |
| Plus: Letter of Credit Fee | 17,484 | | | | | | | | | | | | | | | | | | 17,484 |
| Plus: Fees - Arch | - | | | | | | | | | | | | | | | | | | |
| Plus: Fees - CIT | | | | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 206,250 |
| Less: Return of Cash Balance | | | | | | | | | | | | | | | | | | (303,988) | (303,988) |
| Less: Paydown (net of additions to cash) | (14,046,747) | (9,814,049) | (1,247,246) | (10,114,987) | (2,524,106) | (1,318,246) | (2,037,247) | (1,739,527) | (5,178,763) | (1,842,292) | | | | | | | | (14,529,000) | (64,392,208) |
| End of Month | 68,028,386 | 58,716,304 | 57,902,313 | 48,228,325 | 46,073,835 | 45,109,308 | 43,418,663 | 42,013,264 | 37,158,257 | 35,603,898 | 35,880,361 | 36,158,865 | 36,439,423 | 36,722,051 | 37,006,765 | 37,293,580 | 37,582,511 | 23,040,586 | 23,040,586 |
| **5) Shortfall to Secured Creditors** | | | | | | | | | | | | | | | | | | | 23,040,586 |
| **6) Remaining Chapter 11 Priority Claims** | | | | | | | | | | | | | | | | | | | |
| 503(b)(9) Claims | | | | | | | | | | | | | | | | | | 2,513,606 | 2,513,606 |
| Accrued PTO | | | | | | | | | | | | | | | | | | 1,659,164 | 1,659,164 |
| Employer Taxes on Accrued PTO 10.50% | | | | | | | | | | | | | | | | | | 174,212 | 174,212 |
| Total | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 4,346,982 | 4,346,982 |
| **7) Shortfall BEFORE Unsecured Creditors** | | | | | | | | | | | | | | | | | | | 27,387,568 |

**Shapes/Arch Holdings, LLC**
**Liquidation Analysis - Exhibit 2**
**Proceeds Comparison**
**June 6, 2008**

| Accounts Receivable | Estimated Book Value 8/3/2008 | Estimated Borrowing Base Avail. 8/3/2008 | Estimated Gross Liquidation Proceeds 8/3/2008 | Estimated Proceeds as a % of BV | Estimated Proceeds as a % of Bbase |
|---|---|---|---|---|---|
| Shapes | 17,621,321 | 13,987,513 | 11,275,735 | 64.0% | 80.6% |
| Delair | 9,954,655 | 8,288,052 | 6,328,689 | 63.6% | 76.4% |
| Accu-Weld | 4,246,310 | 2,780,359 | 1,605,085 | 37.8% | 57.7% |
| Ultra | 6,491,703 | 4,971,471 | 3,990,588 | 61.5% | 80.3% |
| Total | 38,313,988 | 30,027,396 | 23,200,098 | 60.6% | 77.3% |

| Inventory | Estimated Book Value 4/30/2008 | Estimated Borrowing Base Avail. 4/30/2008 | Estimated Book Value 8/3/2008 | Estimated Borrowing Base Avail. 8/3/2008 | Estimated Gross Liquidation Proceeds 8/3/2008 | Estimated Proceeds as a % of BV | Estimated Proceeds as a % of Bbase |
|---|---|---|---|---|---|---|---|
| Shapes | 13,046,000 | 8,312,000 | 14,763,876 | 9,406,510 | 12,288,506 | 83.2% | 130.6% |
| Delair | 12,500,000 | 6,382,000 | 10,045,272 | 5,128,714 | 5,650,628 | 56.3% | 110.2% |
| Accu-Weld | 2,640,000 | 520,000 | 2,927,857 | 576,699 | 809,486 | 27.6% | 140.4% |
| Ultra | 15,698,000 | 8,211,000 | 16,741,359 | 8,756,740 | 9,577,444 | 57.2% | 109.4% |
| Total | 43,884,000 | 23,425,000 | 44,478,364 | 23,868,663 | 28,326,063 | 63.7% | 118.7% |

| Machinery & Equipment | 2/2007 Appraisal Orderly Liquidation Value | 12/17/2007 Appraisal Orderly Liquidation Value | 12/17/2007 Appraisal Forced Liquidation Value | Estimated Gross Liquidation Proceeds | Forced as a % of Orderly | Estimated Proceeds as a % of Forced |
|---|---|---|---|---|---|---|
| Shapes | 9,035,000 | 8,823,250 | 4,625,275 | 3,700,220 | 52.4% | 80.0% |
| Shapes - Tools and Dies | N/A | N/A | N/A | 351,280 | N/A | N/A |
| Delair | 700,000 | 681,875 | 524,550 | 472,095 | 76.9% | 90.0% |
| Accu-Weld | 1,903,000 | 1,814,075 | 1,382,700 | 1,175,295 | 76.2% | 85.0% |
| Ultra | 206,000 | 204,425 | 157,800 | 142,020 | 77.2% | 90.0% |
| Total | 11,844,000 | 11,523,625 | 6,690,325 | 5,840,910 | 58.1% | 87.3% |

| Real Estate | 2/2005 Appraisal Market Value | 9/28/2007 Appraisal Market Value | 9/28/2007 Appraisal Liquidation Value | Estimated Gross Liquidation Proceeds | Liq. Value as a % of Market | Estimated Proceeds as a % of Liq. Value |
|---|---|---|---|---|---|---|
| Shapes | 9,770,000 | 12,550,000 | 9,425,000 | 7,540,000 | 75.1% | 80.0% |
| Delair | 7,900,000 | 10,300,000 | 7,725,000 | 6,180,000 | 75.0% | 80.0% |
| Accu-Weld | 3,300,000 | 3,725,000 | 2,800,000 | 2,520,000 | 75.2% | 90.0% |
| Ultra | 3,600,000 | 3,775,000 | 2,825,000 | 2,542,500 | 74.8% | 90.0% |
| Total | 24,570,000 | 30,350,000 | 22,775,000 | 18,782,500 | 75.0% | 82.5% |

# Shapes/Arch Holdings, LLC
# Liquidation Analysis
# Assumptions
# June 6, 2008

## Introduction

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired Allowed Claim or Equity Interest either (a) accept the plan of reorganization (the "Plan") or (b) receive or retain under such Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

The purpose of the Liquidation Analysis that follows (the "Liquidation Analysis") is to provide information in order for the Bankruptcy Court to determine that the Plan satisfies this requirement. The Liquidation Analysis was prepared to assist the Bankruptcy Court in making this determination and should not be used for any other purpose.

We have identified the general assumptions that were used in preparing the Liquidation Analysis, which assumes that this bankruptcy case is converted to a Chapter 7 proceeding on the Effective Date, and that a Chapter 7 Trustee is charged with reducing to cash any and all assets of the Debtors and making distributions to the holders of Allowed Claims (and Equity Interests) in accordance with the distributive provisions of Section 726 of the Bankruptcy Code.

Conversion of the Debtors' cases to cases under Chapter 7 of the Bankruptcy Code would likely result in additional costs to the estates. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee as well as professionals retained by the trustee, asset disposition expenses (including broker fees and other commissions), personnel costs, and costs and expenses associated with preserving and protecting the Debtors' assets during the liquidation period.

The Liquidation Analysis is limited to presenting information provided by management and does not include an independent evaluation for the underlying assumptions. The Liquidation Analysis has not been examined or reviewed by independent accountants in accordance with standards promulgated by the American Instituted of Certified Public Accountants. The estimates and assumptions, although considered reasonable by management, are inherently subject to significant uncertainties and contingencies beyond the control of management. Accordingly, there can be no assurance that the results shown would be realized if the Debtors were liquidated, and actual results in such case could vary materially from those presented. If actual results are different from those shown, or if the assumptions used in formulating the Liquidation Analysis were not realized, then distributions to and recoveries by holders of Allowed Claims (and Equity Interests) could be materially affected.

The Liquidation Analysis does not include liabilities that may arise as a result of litigation, tax assessments, or other potential claims.  The Liquidation Analysis does include an estimate of recoveries from potential avoidance actions. For the foregoing reasons and others, the Liquidation Analysis is not necessarily indicative of the values that may be realized in an actual liquidation, which values could vary materially from the estimates provided herein.

The Liquidation Analysis, which was prepared by the Debtors in consultation with their restructuring and legal advisers, is based upon a number of estimates and assumptions that, although developed and considered reasonable by management, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and management. The Liquidation Analysis is based upon assumptions with regard to liquidation decisions that would be made by the Trustee (not management) and that are subject to change. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized by the Debtors were they, in fact, to undergo such a liquidation.

**General Assumptions**

1) The Liquidation Analysis is based upon an estimate of the proceeds that would be realized, and expenses that would be incurred, by the Debtors in the event that the Debtors' assets are liquidated under Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is based upon projected balance sheets as of August 3, 2008, and further assumes that the Debtor's operate in a "business as usual" environment (as depicted in the Weekly cash flow forecast that was updated as of May 8, 2008 (the "Updated DIP Forecast") until August 3, 2008 (the "Shut Down Date"), at which point all of the employees are released.  We have assumed that the Chapter 7 activities commence on August 4, 2008 (the "Conversion Date").

2) The Chapter 7 liquidation period is assumed to last eighteen months following the appointment or election of a Chapter 7 trustee. It is assumed that none of the Debtors businesses will take receipt of any product and that the Debtors will not convert any raw materials or work-in process into finished goods.

3) Aside from the maintenance of a minimum cash balance, all distributions will be made as and when proceeds from the disposition of assets and collection of receivables are received.  Projected recoveries have not been discounted to reflect the present value of distributions.

4) The Liquidation Analysis does not assume the sale of the Debtors' assets or any portion thereof on a going concern basis. As a result, the values reflected in the Liquidation Analysis are not indicative of the values that might be received were the Debtors to sell any of their assets as a going concern separately or as a whole.  The values reflected in the Liquidation Analysis are based solely on the assumption that the Debtors pursue a pure liquidation under chapter 7 of the Bankruptcy Code.

5) Contingent Liability - This analysis does not include the possibility of liability under the WARN Act for 60 working days of wages totaling $9.7 million.  In the event of a liquidation, the Debtors may be faced with WARN liability unless the exposure can be ameliorated in whole or in part through an advance notice to employees or an exemption under the WARN statute.  This liability would be treated as an administrative expense claim against the estates.

6) The Debtors have prepared this analysis assuming that all Chapter 7 and Chapter 11 administrative expense and pre-petition priority claims will be paid in full as part of the liquidation of the Debtors' assets.  It is very possible that certain Chapter 7 administrative expenses, the Chapter 11 administrative expenses that are not included in a carve-out from the Lenders' collateral, and the pre-petition priority claims will not be paid ahead of payment on the Lenders' secured claims.  In this event, the remaining balance due to the Lenders may be several million dollars lower than projected, and these administrative and priority claims would not be paid, leaving administratively insolvent estates.

**Specific Assumptions/Footnotes**

1) Sources
   a) Collection of A/R – we assumed that the Trustee will hire former employees at each of the Debtors in August and September to pursue collection of outstanding accounts receivable.  At the end of August, any remaining open accounts receivable will be provided to a collection agency, which will be compensated at an assumed rate of 15%.  We have assumed a 6 month process to collect remaining A/R.  We estimated collection amounts based on a percentage of eligible A/R (65% for all Debtors' except Accu-Weld, for which we assumed 50%), and ineligible A/R (32.5% for all Debtors' except Accu-Weld, for which we assumed 12.5%).


   b) Sale of inventory – we assumed that all sales were for cash and that the buyer would be responsible for freight, which has historically been paid by the Debtors' and ranges from 3-5% of revenue.  We further assumed that the Trustee will hire former employees to assist with the sales and pick/pack efforts.
      i. Shapes - We assumed that the inventory will all be sold by the end of September and that the sale will generate proceeds equal to 83% of book value and 131% of borrowing base availability.
      ii. Delair - We assumed that virtually all of the finished goods inventory will be sold by the end of September and that the remaining component parts would be sold at auction at the end of December.  We assumed that the sale of inventory will generate proceeds equal to 56% of book value and 110% of borrowing base availability.
      iii. Accu-Weld - We assumed that all of the inventory, the vast majority of which is raw materials or work in process, will be sold by the end of September and that the sale will generate proceeds equal to 28% of book value and 140% of borrowing base availability.
      iv. Ultra - We assumed that all of the inventory would be sold at an auction at the end of November and that the auction will generate proceeds equal to 57% of book value and 109% of borrowing base availability.


   c) Sale of Machinery & Equipment – we used the Forced Liquidation Values in the December 17, 2007 Appraisal performed by Dovebid Valuation Services ("DVS") as our starting point, and incorporated an additional across-the-board discount of 10% to reflect the i) passage of time since the M&E Appraisal Date; ii) deterioration of the economy since the M&E Appraisal Date; iii) deterioration of the credit markets since the M&E Appraisal Date; and iv) the possibility that the DVS Liquidation Value did not necessarily reflect the fact that the facilities would be completely shut down and operated by a Chapter 7 Trustee.  We incorporated an additional 10% discount for Shapes based on the general state of the extrusion market, and the small number of potential purchasers, and an additional 5% discount for Accu-Weld to reflect the general over-capacity in the replacement window market.  Finally, we assumed a 5% recovery on the net book value of

Shapes' tools and dies, as these were not considered as art of Dovebids' appraisal. We assumed that the auctions would occur as follows:

| Entity | Month of Auction |
|---|---|
| Shapes | April, 2009 |
| Delair | March, 2009 |
| Accu-Weld | February, 2009 |
| Ultra | December, 2008 |

d) Sale of Real Estate - we used the Liquidation Values in the September 28, 2007 Appraisal performed by Cushman & Wakefield ("C&W") as our starting point, and incorporated an additional across-the-board discount of 10% to reflect the i) passage of time since the RE Appraisal Date; ii) deterioration of the economy since the RE Appraisal Date; iii) deterioration of the credit markets since the RE Appraisal Date; and iv) the possibility that C&W's Liquidation Value did not necessarily reflect the fact that the facilities would be completely shut down and operated by a Chapter 7 Trustee.  We incorporated an additional 10% discount for Shapes and Delair to reflect the limited alternative uses of this single parcel of land as well as the environmental issues that are present.  We assumed that the RE would be sold as follows:

| Entity | Month of Sale |
|---|---|
| Shapes | January, 2010 |
| Delair | January, 2010 |
| Accu-Weld | May, 2009 |
| Ultra | April, 2009 |

e) Other Assets
   i. Return of security deposits reflects the post-petition utility deposits that were incorporated into the DIP Forecast.  We have assumed that these deposits are returned at the end of the liquidation period.
   ii. Excess of L/C over Reserve for Workman's Compensation tail coverage represents the excess of the letters of credit issued to Argonaut and Royal over their established reserves as of 12/31/07.  Royal provided coverage from 5/2001 through 4/2004 and has 4 open claims, while Argonaut provided coverage from 5/2004 thru 4/2006 and has 8 open claims.  No additional claims will be filed.  We have assumed that the beneficiaries will draw on the L/C's shortly after the Conversion Date and have incorporated the return of this excess collateral, which we have estimated at $1.4 million, to the estate in January 2010.
   iii. Recovery of avoidance actions – the Debtors have estimated that they made $50,813,000 in payments in the 90 days prior to filing for bankruptcy protection.  We have estimated that the Chapter 7 Trustee will be successful in

recovering 5% of this amount, or $2,540,650, which we have assumed will be collected in January 2010.

2) Uses
   a) Priority and Administrative
     i. Chapter 7 Trustee and Professionals – incorporates a fees equal to 3.0% of gross proceeds from liquidation – payable at the end of the liquidation process, as well as $550,000 in fees to professionals hired by the Chapter 7 Trustee, which would be payable monthly.
     ii. Chapter 7 – Non Professionals – reflects $550,000 that will be owed to utilities as of the Shut Down Date.
     iii. Chapter 11 Priority Claims – includes accrued but unpaid payroll of $800,000 representing one week for union employees and one week for non-union employees, plus employer payroll taxes of 10.5%.  WARN ACT obligations (60 work days or 12 weeks of payroll, which equates to $9.7 million) have *not* been incorporated into this analysis.
     iv. Chapter 11 Administrative Claims – includes accrued but unpaid sales and use tax of $80,000 (the same amount as existed as of the Filing Date); and $748k in unpaid pre-petition real estate taxes which are paid in conjunction with the sale of the real estate (April 2009 and January 2010).

   b) Wind Down Costs
     i. Includes estimated costs associated with personnel, shipping supplies, equipment rental, cleaning, telephone, utilities, insurance, real estate taxes, and security for each entity.
     ii. Includes $1,350,000 in estimated environmental remediation expenses at Shapes and an additional $1,000,000 of expenses at Shapes relating to the restoration of the Shapes building to a saleable state after the M&E auction.

   c) Other
     i. Collection Agency fee – we assumed that all open A/R would be turned over to a collection agency at the end of September, that the agency would collect the remaining A/R over a 6 month period, and that the agency would earn a fee equal to 15% of what they collect;
     ii. Inventory liquidator fee – we incorporated a fee of 5% of the gross proceeds, plus an additional 75 basis points for expenses, relating to the auctions at Ultra (in November) and Delair (in December);
     iii. M&E Liquidator fee – we incorporated a fee of 10% of the gross proceeds, plus an additional 5% for expenses, relating to the auctions of M&E at each entity;
     iv. Reserve for M&E removal – we assumed that some of the M&E would not be sold at auction, and incorporated a removal reserve of $250,000 at Shapes and $75,000 at Accu-Weld;
     v. Real estate broker - we incorporated a fee of 6% of the gross proceeds realized from the sale of real estate.

3) Maintain Cash Balance
   a) Because there are months in which the estimated liquidation expenses exceed the estimated liquidation proceeds, we have incorporated a provision for establishing an interest-bearing bank account, which is used to pay for expenses in months 11 thru 17.
   b) Excess balances are used to repay secured debt at the end of the liquidation period.

4) Secured Debt Rollforward
   a) Beginning secured debt is derived from the estimated 8/03/08 balance in the DIP Forecast, as follows:

| Type of Debt | Amount |
|---|---|
| CIT Bank Group - Revolver | $46,981,171 |
| Arch Term Loan | 27,533,122 |
| Total Secured Debt | $74,514,294 |

   b) Draw under Letters of Credit – we have assumed that all letters would be immediately drawn upon, thereby increasing the CIT loan outstanding in July.
   c) Interest – we calculated the blended interest rate on the CIT Bank Group debt and Arch Term loan as of 8/03/08 (assuming the letters of credit were fully drawn) and calculated a weighted average cost of secured debt of 6.85%.  We assumed this blended rate for the entire liquidation period which further assumes that the CIT Bank Group and Arch are paid down at the same proportional rate.  We did not attempt to estimate the manner in which liquidation proceeds would be applied to the individual debt instruments.
   d) Additional Interest – Default Rate – we incorporated additional interest expense relating to the default rate of interest, which is an additional 2% under both loans.
   e) Letter of Credit Fee – we assumed that any outstanding letters of credit would accrue fees at the annual rate of 3.00%, which is the stated rate in the CIT loan documents.
   f) Fees – CIT – incorporated at $13,750 per month per the terms of their Agent's Fee Letter.
   g) Return of Cash Balance – incorporates the return of excess cash balances in the bank account at the end of the liquidation period as described above.
   h) Paydown – for modeling purposes, we assumed that the Net Proceeds from Liquidation in every month (in excess of the amounts deposited into the bank account as described above) would be used to reduce the Secured Debt.

5) Shortfall to Secured Creditors – net proceeds from liquidation have been estimated at

$64.6 million, which will result in a shortfall of $23.0 million to the secured creditors. In addition, there is an additional $4.4 million of priority payments (503(b)(9) claims and accrued vacation and sick time) that would be paid before any distribution to the unsecured creditors, resulting in a total shortfall of $27.4 million.  Accordingly, there would be no distribution to unsecured creditors.

### Comparison with Balance Sheet and Borrowing Base

Exhibit 2 compares various appraisal values with the estimated 8/03/08 book values, the estimated 8/03/08 borrowing base amounts, and the estimated liquidation values.