**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Attorneys for the Debtors

|  |  |
|---|---|
| In re: | : UNITED STATES BANKRUPTCY COURT |
| SHAPES/ARCH HOLDINGS L.L.C., et al., | : FOR THE DISTRICT OF NEW JERSEY |
|  | : CHAPTER 11 |
| Debtors. | : CASE NO. 08-14631 (GMB) |

**DEBTORS' OBJECTION TO ADMINISTRATIVE CLAIMS OF
TEAMSTERS LOCAL 837 PENSION FUND SEEKING
RECLASSIFICATION AS GENERAL UNSECURED CLAIM
AND EXPUNGEMENT OF DUPLICATE PROOF OF CLAIM**

Shapes/Arch Holdings L.L.C. and its related debtor entities (collectively, the "Debtors"),[1] the debtors and debtors-in-possession, hereby submit this objection (the "Objection"), pursuant to 11 U.S.C. §§ 105, 502(b) and 503 and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Procedure"), seeking an Order reclassifying the Teamsters Local 837 Pension Fund ("Local 837 Pension Plan") proof of claim from administrative to general unsecured and expunging the duplicate claim. In support of the Objection, the Debtors respectfully represent as follows:

---

[1] In addition to Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), the following entities, all of which are wholly owned subsidiaries of Shapes/Arch, also filed petitions on the Petition Date (defined below): Shapes L.L.C. ("Shapes"); Delair L.L.C. ("Delair"); Accu-Weld L.L.C. ("Accu-Weld"); and Ultra L.L.C. ("Ultra").

1

## BACKGROUND

### General

1.  On March 16, 2008 (the "Petition Date"), the Debtors filed their respective petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.  These cases are being jointly administered pursuant to this Court's Order of March 18, 2008 under the lead debtor "Shapes/Arch Holdings L.L.C."

3.  No trustee or examiner has been appointed in these cases.

4.  An official committee of unsecured creditors (the "Committee") was appointed on March 31, 2008, and has been active in these cases since that time.

5.  The Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.  Shapes/Arch is a holding company that owns each of the four operating companies - Shapes, Delair, Accu-Weld and Ultra. The Debtors have over 1000 employees, approximately 70% of whom are members of either Local 837, or the United Independent Union.

**Schedules And Proofs Of Claim**

7. On the Petition Date the Debtors filed their Statements of Financial Affairs, Schedules of Assets and Liabilities and Schedule of Executory Contracts and Unexpired Leases (the "Bankruptcy Materials".)

8. Pursuant to this Court's order, dated March 18, 2008, the Debtors retained Epiq Bankruptcy Solutions, L.L.C. (the "Claims Agent") as their official claims and noticing agent.

9. On March 18, 2008, this Court entered an order pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3) establishing the deadline for proofs of claim and approving the form and manner of notice thereof [Dkt. No. 35] (the "Bar Date Order").

10. Pursuant to the Bar Date Order, the deadline for all persons and entities to file proofs of claim against the Debtors for claims that arose on or prior to the Petition Date was May 15, 2008.

11. On May 19, 2008, the Debtors filed a motion to establish a bar date of June 30, 2008 for all administrative expense claims that accrued or arose on or prior to June 15, 2008.

12. On May 28, 2008, the Court entered an Order fixing an administrative claim bar date of June 30, 2008 for claims arising on or prior to June 15, 2008 (the "Administrative Claim Bar Date").

**Approval of the Disclosure Statement and Bidding Procedures**

13. On May 12 and 13, 2008, respectively, the Debtors filed their Second Amended Joint Plan (the "Second Amended Plan") and disclosure statement. Although the Debtors, Arch Acquisition I, LLC ("Arch") and the Committee had not agreed on all of the terms of the Second Amended Plan, it was filed in order to avoid a default under the terms of the Arch Amended DIP Agreement. The Second Amended Plan provided for a competitive process by which third parties would have an opportunity to conduct due diligence and participate in an auction to purchase the equity interests in Shapes/Arch (and thus obtain ownership of the equity interests in all of the Debtors) prior to the confirmation hearing.

14. On May 12, 2008, the Debtors filed a motion for approval of bid procedures (the "Bid Procedures Motion") to: (a) control the method by which potentially interested bidders would be able to obtain due diligence, (b) provide the procedures for parties submitting competing bids to follow, and (c) schedule and provide procedures for an auction, if qualified bids are submitted.

15. On May 20, 2008, the Court granted the Bid Procedures Motion, which required all competing bids to be submitted no later than June 25, 2008, and scheduled an auction for June 27, 2008, if qualified bids are submitted.

16. On May 23, 2008, the Court approved the disclosure statement (the "Disclosure Statement") in support of the Debtors' Third Amended Joint Plan (the "Third Amended Plan"). The Third Amended Plan was filed after the Debtors, Arch and the Committee had resolved the issues that had been outstanding at the time the Second

Amended Plan was filed. A hearing to consider confirmation of the Third Amended Plan is scheduled for July 8, 2008.

17. Confirmation of the Plan is expressly conditioned upon the execution of new collection bargaining agreements with the Debtors' unions that are acceptable to Arch.

**Collective Bargaining Agreements and the Administrative Claim of Local 837**

18. At the time the Third Amended Plan was filed, the Debtors were party to the following collective bargaining agreements (each a "CBA"): (a) one CBA between Shapes and Delair, on the one hand, and Local 837 on the other hand; (b) one CBA between Ultra and Local 837; and (c) three CBAs between Accu-Weld and the United Independent Union ("UIU") each covering separate groups of employees. *See*, Third Amended Plan Section VII, sub-part G, para. 2.

19. Under the CBAs, the Debtors are required to make contributions on behalf of their employees to multi-employer defined benefit pension plans. Shapes, Delair and Ultra contribute to the Local 837 Pension Plan, while Accu-Weld contributes to the United Independent Union Pension Fund Trust .

20. On or about June 23, 2008, after extensive negotiations with Local 837 and UIU over a period of several weeks, the Debtors executed new CBAs which replace

5

the current CBAs described in the Third Amended Plan. The agreements executed on or about June 23, 2008 are collectively referred to as the "Replacement Agreements."[2]

21. Pursuant to the Replacement Agreements, the current CBAs will terminate and the Debtors will permanently cease to have any obligation to contribute to either of the two multi-employer defined benefit pension plans. As a result, complete withdrawals from the two pension plans will occur on June 30, 2008, upon termination of the current CBAs. Since the Replacement CBAs do not provide for any further contributions to the pension plans, withdrawal liability under Section 4203 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1381, will be triggered.

22. On or about June 19, 2008, prior to the execution of the Replacement Agreements, Local 837 filed its proof of claim #774 asserting that the Debtors cessation of participation in the Local 837 Pension Plan would trigger the imposition of withdrawal liability pursuant to ERISA and that a portion of that withdrawal liability may be an administrative expense. On or about June 23, 2008, Local 837 filed a duplicate proof of claim #778 within which it asserted the same claim that was set forth in proof of claim #774.

**RELIEF REQUESTED**

23. By this Objection, the Debtors seek an order of this Court, pursuant to 11 U.S.C. §§ 105, 502(b) and 503, and Fed. R. Bankr P. 3007, reclassifying the administrative status of the Local 837 Pension Plan's proof of claim to the status of a general unsecured claim and expunging their duplicate proof of claim.

---

[2] The Debtor is party to the following Replacement CBAs: (a) one CBA between Shapes and Delair and Local 837; (b) one CBA between Ultra and Local 837; and (c) two CBAs between Accu-Weld and UIU (replacing the current CBAs between those parties).

6

**BASIS FOR RELIEF REQUESTED**

24. The Debtors and their advisors have reviewed the Local 837 Pension Plan's proof of claim. Based upon such review, the Debtors have determined that the Local 837 Pension Plan's proof of claim was filed with an incorrect priority status (and likely in an incorrect amount). That is, the Local 837 Pension Plan's proof of claim asserts status as an "administrative" claim under Sections 507(a)(1) and 503(b) of the Bankruptcy Code on account of post-petition costs and fees which are not allowable as a matter of law.

25. Although the Local 837 Pension Plan asserts in its proof of claim that withdrawal liability is entitled to treatment as an administrative expense, the weight of authority indicates that withdrawal liability claims that arise after the petition date, and relate to labor provided by a debtor's employees prior to the bankruptcy filing, are not entitled to administrative treatment and, instead, are treated as general unsecured claims.

26. The Second Circuit, in Trustees of the Amalgamated Insurance Fund v. McFarlin's Inc., 789 F.2d 98 (2d Cir. 1986), held that the withdrawal liability claim at issue could not qualify as an administrative expense because it was not incurred for the benefit of the estate's creditors. Id. at 103-04. The Court in McFarlin observed that the claim was calculated based upon the withdrawing employer's contributions to the fund for the period that preceded the bankruptcy filing. Id. at 103. Thus, the consideration supporting the withdrawal liability claim was the work of the employees during that pre-bankruptcy period. In other words, the consideration was not furnished for the benefit of the debtor-in-possession or for the continuation of the debtor's business after it filed for

bankruptcy. Id. The Second Circuit stated that its holding "finds support in decisions uniformly rejecting the argument that withdrawal liability is entitled to priority as an administrative expense..." Id. at 104.

27.  The Tenth Circuit, in In re Bayly Corporation, 163 F.3d 1205 (10th Cir. 1998), adopted the McFarlin court's reasoning in support of its holding denying administrative expense priority for Pension Benefit Guarantee Corporation's ("PBGC") claim for termination liability. In Bayly, the Tenth Circuit analogized the PBGC's claims to withdrawal liability claims that are asserted by multi-employer pension plans and observed that courts have uniformly concluded that withdrawal liability based on benefits earned as a result of pre-petition labor constitute a pre-petition contingent liability. As such, withdrawal liability claims are denied priority treatment even though the withdrawal occurred post-petition. Id. at 1209. The Bayly Court stated that the same logic was applicable to the PBGC's claims and held that such claims were not entitled to administrative priority. Id. at 1210.

28.  The Bayly court stated further that simply because the PBGC's contingent claim became liquidated by virtue of the post-petition termination, the claim would not be elevated to the status of an administrative claim. The court explained that the PBGC's right to payment of unfunded benefit liabilities at plan termination constituted:

> a classic example of a contingent claim - one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event. If the extrinsic event occurs post-petition, the contingent claim simply becomes a liquidated one; it, however, is not thereby elevated to the status of a post-petition claim. Here, the extrinsic event was plan termination, which simply fixed [debtor's] liability to PBGC.

8

Id. at 1210, 1211.

29.     Courts within the Third Circuit have also concluded that withdrawal liability claims triggered by a post-petition withdrawal from a pension plan constitute general unsecured claims.  The Bankruptcy Court for the District of New Jersey, in In re Brinke Transportation, Inc., 1989 WL 233147 (Bankr. D.N.J. 1989), cited McFarlin in support of its holding that all claims for withdrawal liability constitute pre-petition general unsecured claims.  Id. at *5, 6.  The Bankruptcy Court observed that because withdrawal liability is calculated based upon the employer's past, pre-petition contributions, the subject claim did not warrant administrative priority status.  Also, decisions from the Bankruptcy Court for the Eastern District of Pennsylvania concur with this result.  See In re Great Northeastern Lumber & Millwork Corp., 64 B.R. 426, 428 (Bankr. E.D.Pa. 1986) (applying the general rule that withdrawal liability is not an administrative expense unless it is attributable to wages earned after the bankruptcy filing); In re Malone, 74 B.R. 315, 322 (Bankr. E.D.Pa. 1987) (denying administrative treatment for withdrawal liability claim and citing McFarlin for the proposition that a debt is not an administrative expense simply because the right to payment arises after the bankruptcy filing).

30.     The Debtors acknowledge that there is a minority view, taken by some courts that are not binding precedent on this Court, that a claim for withdrawal liability may be afforded administrative status, but only as to that portion of the claim attributable to the post-petition period.  See In re Cott Corp., 47 B.R. 487, 494-95 (Bankr. D.Conn. 1984) (noting that the claim can be divided into two parts based upon the pre-petition and post-petition periods); In re Sunarhauserman, Inc., 184 B.R. 279, 283 (Bankr. N.D. Ohio

9

1995) (affording administrative treatment to post-petition portion of the withdrawal liability claim).

31. As the majority of courts (including two Courts of Appeal) have indicated, withdrawal liability claims that arise after the petition date, and relate to labor provided by a debtor's employees prior to the bankruptcy filing, are not entitled to administrative treatment and should be treated as general unsecured claims. However, should this Court adopt the minority view and pro-rate withdrawal liability, the post-petition amount eligible for administrative status would be *de minimus* given that the Debtors, in this case, will have withdrawn from the Local 837 Pension Plan approximately three and one half months after the Petition Date, while they have been contributing to the Local 837 Pension Plan for at least 25 years. As such, if an allocation were performed as the Courts adopting the minority view suggest, then the amount entitled to administrative expense status would be a very small fraction of the total obligation – likely less than one percent (1%) of the claim.

32. For the foregoing reasons, Local 837 Pension Plan's proof of claim asserts a priority status to which it is not entitled. Therefore, pursuant to Sections 105, 502(b)(1) and 503 of the Bankruptcy Code and applicable case law, the Court should reclassify the asserted "administrative" status of this claim to "general unsecured" and direct the Claims Agent to modify the Claims Registry accordingly.

## **Duplicate Claim**

33. Pursuant to Bankruptcy Rule 3007(d)(1), the Debtors hereby object to the duplicate claim identified as claim no. 778 on the claims register.

34. If this duplicate claim is not formally expunged or disallowed, the potential exists for double recovery by the Local 837 Pension Plan.  The elimination of this duplicate claim will streamline the claims process and enable the Debtors to maintain a more accurate claims register.

35. Accordingly, the Debtors request that the Court enter an order expunging and disallowing the duplicate proof of claim by the Local 837 Pension Plan identified on the claims register as claim no. 778.

## **RESERVATION**

36. The Debtors expressly reserve and preserve the right to file later objections to the Local 837 Pension Plan's "Remaining Claim," as to the amount (which the Debtors anticipate disputing at a later time) and/or allowability of the claim on any grounds that bankruptcy or non-bankruptcy law permits.  Separate notice and hearing will be scheduled for any such objection.

## NOTICE

37. Notice of this Motion has been provided to: (a) counsel for CIT, (b) counsel for Arch, (c) the Office of the United States Trustee, (d) counsel for the Teamsters Local 837 Pension Fund at the address specified on the Proof of Claim, and (e) all parties on the Master Service List.  In light of the nature of the relief requested herein, the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court approve an order granting the relief requested and such other and further relief as is just and proper.

Dated:  June 27, 2008                                    COZEN O'CONNOR

                                                                     By:    */s/ Jerrold N. Poslusny, Jr.*
                                                                          Mark E. Felger
                                                                          Jerrold N. Poslusny, Jr.

                                                                      Attorneys for the Debtors