**Joseph G. Gibbons, Esquire**
**WHITE AND WILLIAMS LLP**
**1800 One Liberty Place**
**Philadelphia, PA  19103-7395**
**Telephone (215) 864-7000**
**Telecopier (215) 864-7123**

**Attorneys for Century Indemnity Company**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re | Chapter 11 |
| SHAPES/ARCH HOLDINGS L.L.C., *et al.*, | Case No.: 08-14631(GMB) |
| Debtors. |  |

**OBJECTION OF CENTURY INDEMNITY COMPANY TO DEBTORS'**
**THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

Century Indemnity Company, on its own behalf and as successor to CCI Insurance Company, as successor to Insurance Company of North America, (and possibly other ACE USA-related companies) ("Century") by its attorneys, objects to Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan") filed by Shapes/Arch Holdings L.L.C. and its affiliated debtors and debtors-in-possession (collectively, "Debtors"), as follows:[1]

**Introduction**

1. Century issued certain insurance policies (collectively, the "Policies") to one or more Debtors.  In connection with the Policies, Century may have also entered into one or more related agreements with one or more Debtors (together with the Policies, collectively, the

---

[1] All capitalized terms not otherwise defined in these Objections refer to terms as defined in the Plan.

"Insurance Agreements"). The Insurance Agreements are executory contracts within the meaning of section 365 of the Bankruptcy Code. Century holds contingent and unliquidated claims arising from the continuing obligations due under the Insurance Agreements. The Insurance Agreements impose certain continuing obligations on Debtors. Under the terms of the Insurance Agreements, Century may have various rights to payment on account of any unpaid premium payments, deductibles, self-insured retentions, claim service costs and fees, and other expenses and/or monetary obligations that are, or may become, due. Century may also have rights to receive performance, and assert defenses, setoffs and/or recoupments arising from, related to, or in connection with, the Insurance Agreements.

2. Although the Plan appears to rely on the availability of insurance coverage to satisfy certain Claims, it fails to provide acceptable treatment of the Insurance Agreements and/or the various Claims of Century. Although the Plan provides that certain insurance policies will be "Assumed" by Reorganized Debtors, the Plan does not expressly require Debtors to assume the Insurance Agreements as executory contracts under section 365 of the Bankruptcy Code or provide that the terms and conditions of the Insurance Agreements will otherwise remain in full force and effect, unmodified and unimpaired by the Plan.

3. Other provisions of the Plan unfairly prejudice Century's rights under the Insurance Agreements including:

(a) The carve-out contained in the Confirmation Injunction grants a blanket exemption to Environmental Claims which would potentially require Century to defend Shapes at a trial scheduled to start on September 2, 2008 without the assistance of and expert of the benefit of expert reports;

(b) The definition of Environmental Claims which Debtors' insurers are required to defend in the tort system under the Plan potentially includes claims that have been or should have been disallowed by the Bankruptcy Court;

(c) The Plan purports to require insurers to pay settlements negotiated by Debtors without the consent and approval of insurers; and

(d) The Plan does not purport to assume all insurance policies issued to Debtors but only those policies that provide coverage for Environmental Claims so that, this Court's approval of the assumption is tantamount to an adjudication of a non-core insurance coverage dispute.

4. The Plan is unconfirmable because (a) it is unfeasible because its treatment of the Insurance Agreements will void any available coverage for payment of otherwise covered Allowed Claims; and (b) it fails to satisfy other requirements for confirmation under section 1129 of the Bankruptcy Code because (i) it purports to assume the benefits of the Insurance Agreements without complying with section 365 of the Bankruptcy Code; and (ii) it is not fair and equitable with respect to Century or other insurers.

## Objections To Confirmation Of Plan

5. The Plan must satisfy all the requirements of section 1129 of the Bankruptcy Code in order to be confirmable. *See* 11 U.S.C. § 1129. For the reasons set forth below, the Plan fails to satisfy the requirements of section 1129 and, accordingly, should not be confirmed.

**A.    The Plan Is Not Feasible Because Its Treatment Of The Insurance Agreements Will Void Any Otherwise Available Coverage**

6. A bankruptcy court cannot alter or enlarge an insurer's contractual obligations. *See In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997) ("[T]he estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy."); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.), cert. denied, 469 U.S. 982 (1984) (the Bankruptcy Code is not intended to expand debtor's rights against others more than they exist at the commencement of the case).

7. To the extent the Plan relies on the existence of insurance coverage to pay otherwise covered Claims including Environmental Claims, it is not feasible because its inadequate treatment of the Insurance Agreements will void any otherwise available coverage

-3-

and, accordingly, the Plan will not satisfy the feasibility requirement for confirmation set forth in section 1129(a)(11) of the Bankruptcy Code.

8. The Plan's treatment of the Insurance Agreements ensures that any insurance coverage otherwise available thereunder to pay otherwise covered Claims will not be available because the Plan violates Century's contractual rights ("Contractual Rights"), and purports to release Debtors' reciprocal contractual obligations ("Contractual Obligations"), under the Insurance Agreements. For any coverage under the Insurance Agreements to be even potentially available, Debtors and Reorganized Debtors must honor Century's Contractual Rights as well as their own Contractual Obligations.

### 1. The Plan Will Vitiate Coverage Because It Does Not Require Debtors To Comply With The Requirements Of 11 USC § 365

9. As a condition of receiving the benefit of the executory Insurance Agreements, Debtors *must* assume the Insurance Agreements and comply with the requirements of section 365(b) of the Bankruptcy Code by, among other things, curing all existing defaults and providing Century with adequate assurance of future performance. 11 U.S.C. § 365(b). This will require, without limitation:

(a) relief from the confirmation injunction, Plan at § 11.10, to permit setoff and/or recoupment of any claims of Century under the Insurance Agreements arising either pre- or post-Effective Date;

(b) performance by Debtors and/or Reorganized Debtors (or any other entity seeking coverage under the Insurance Agreements) of all of the insured's continuing post-Effective Date duties and obligations under the Insurance Agreements. This includes, without limitation, all monetary obligations as well as any share of costs for defense of otherwise covered

Claims allocable to Debtors and/or Reorganized Debtors under applicable non-bankruptcy law; and

(c) a means for satisfaction of any of Century's continuing rights to payment and/or performance under the Insurance Agreements as Administrative Claims.

10. Pursuant to Section 8.3 of the Plan, the Reorganized Debtors intend to assume all insurance policies "which provide for any and all Claims made or occurred arising from or related to any environmental laws of any federal, state or local governmental entity or any claim asserted by a non-governmental entity for environmental claims." The Plan also includes a "Preservation of Insurance" provision which provides that the Plan "shall not diminish or impair the enforceability of any insurance policy, right, or claim that may cover Claims against the Debtors or the Reorganized Debtors" and that "the Plan and Confirmation Order shall not impair any insurance carriers' rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtors or the carriers." Notwithstanding these provisions, the Plan contains several provisions which violate the rights of Century under the Insurance Agreements and/or purport to relieve Debtors and the Reorganized Debtors from their continuing obligations under the Insurance Agreements.

11. Moreover, it appears that the Reorganized Debtors intend to assume only those Insurance Agreements that provide coverage for environmental liabilities of the Debtors and reject any Insurance Agreements that provide no such coverage. *See* Plan at § 8.3. Unless and until the scope of coverage provided by a particular Insurance Agreement is determined, it in unclear to the Reorganized Debtors, Century and the world whether such agreements will be assumed in connection with confirmation f the Plan.

-5-

12. Even with respect to those Insurance Agreements that are assumed, the Plan appears to only assume the benefits of coverage under such Insurance Agreements and attempts to avoid the reciprocal obligations that accompany those benefits. *See* Plan at §§ 4.4; 11.11. A debtor, however, cannot assume the benefits of an executory contract without also assuming its reciprocal obligations under that same contract. *In re Texaco, Inc.*, 254 B.R. 536, 560 (Bankr. S.D.N.Y. 2000); *J. Leland Byrd v. Gardinier, Inc. (In re Gardinier, Inc.)*, 831 F.2d 974, 975 (11th Cir. 1987). Unless and until Debtors conclusively identify which Insurance agreements will be assumed and satisfy the conditions to assumption required under section 365(b) of the Bankruptcy Code, the executory Insurance Agreements cannot be assumed and, accordingly, to the extent the Plan relies upon the existence of coverage under the Insurance Agreements, the Plan is neither feasible nor confirmable.

13. Moreover, as a matter of applicable non-bankruptcy law, the Plan's inadequate treatment of the Insurance Agreements excuses Century from any further obligations to provide coverage or render other performance to Debtors and/or Reorganized Debtors (or any other entity) under the Insurance Agreements. To the extent that coverage under the Insurance Agreements purports to be the means for payment of otherwise covered Environmental Claims, the failure of the Plan to require assumption of all such policies and to provide for adequate treatment, of Insurance Agreements renders the Plan unfeasible and, accordingly, unconfirmable.

    **2.** **The Plan Will Vitiate Coverage By Violating Century's Right To Control And/Or Associate In The Defense, Investigation And Settlement Of Otherwise Covered Claims**

14. Under the Insurance Agreements and applicable non-bankruptcy law, Century has rights to control and/or associate in the defense, investigation, and settlement of claims to which the insurance applies. The Plan, however, contemplates violating these Contractual Rights by completely excluding Century from the Claims resolution process. *See* Plan at §§ 4.4 (requiring

-6-

insurers to pay specified amounts to USEPA and NJDEP); § 7.9; 11.06 (the Reorganized Debtors shall have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims). As such, the Plan's violation of these fundamental Contractual Rights will vitiate any otherwise available coverage for otherwise covered Claims.

15. Moreover, and similarly essential to any availability of insurance coverage, under the Plan, Century will have no opportunity to exercise their statutory rights under section 502(a) of the Bankruptcy Code to prosecute objections to the allowance of unmeritorious Claims which are independent of their Contractual Rights. *See* 11 U.S.C. § 502(a); *In re Keck, Mahin & Cate*, 241 B.R. 583, 596 (Bankr. N.D. Ill. 1999); *In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D. Mo. 1992). While the Plan permits any party in interest to object to claims filed in these Bankruptcy cases, a specific carve-out contained in the Confirmation Injunction purports to permit holders of Environmental Claims who never filed a claim in this case or whose Claim has been disallowed to pursue claims against Debtors in the tort system and recover policy proceeds from Debtors' insurers, including Century. Because the Plan limits the Century's ability to prosecute such objections to unmeritorious Claims (especially if Century is willing to assume the responsibility for prosecuting such objections itself), Debtors will be vitiating coverage by violating Century's Contractual Rights.

### 3. The Environmental Claim Carve-Out Is Unfairly Prejudicial To Century

16. Section 1.56 of the Plan defines "Environmental Claim" as:

> Any and all *claims* of any entity, party or person in any way based upon, resulting from or related to environmental conditions, laws, rules, regulations or other matters or impacts to or contamination of environmental media (including ground water, soil or air), the presence, release or threatened release or migration of or exposure to hazardous materials, substances or wastes, including, without limitation

-7-

\* \* \*

> that may be, have been or could have been asserted against the Debtors.

*See* Plan at Section 1.56 (emphasis added).

17.     The effect of this recent revision to the Plan is that, in addition to Claims that had been filed against Debtors in these bankruptcy cases, this broad definition includes claims held against Debtors but (a) which were not filed by the Bar Date established for the filing of Proofs of Claim in these bankruptcy cases ("Unfiled Claims"); (b) which are subject to a pending objection filed by the Debtor or any other party-in-interest in these bankruptcy cases ("Disputed Claims"); and (c) had been filed against Debtors and disallowed by an Order of this Bankruptcy Court ("Disallowed Claims").  In addition, the definition of "Environmental Claims" includes claims for environmental related damages which are not covered by any insurance policy.

18.     The "Confirmation Injunction" contained in Section 11.10 of the Plan contains carve-out language exempting all "Environmental Claims" from the operation of the discharge injunction imposed by 11 U.S.C. § 524(a)(2) without first requiring holders of such claims to seek an order modifying Confirmation Injunction.  Because the Confirmation Injunction carve-out makes no distinction between insured environmental claims and uninsured environmental claims or Allowed Claims and Unfiled, Disallowed or Disputed Claims, any claimant whose claim would otherwise be barred by applicable bankruptcy and non-bankruptcy law would not be precluded from bringing an action against Debtors in state or Federal court.

19.     Even if the carve-out to the Confirmation Injunction is limited to pending Disputed environmental claims against Debtors, the terms of the carve-out are prejudicial to Century and Debtors' other insurers.  Among the cases pending against the Debtors on the Petition Date that their insurers were defending in state court is the litigation related to the

-8-

Pennsauken Sanitary Landfill (the "Pennsauken Litigation").  On the Petition Date, Shapes L.L.C. ("Shapes") was a member of a joint defense group (the "JDG") that had agreed to share the expense of hiring and obtaining reports from environmental and other experts.  Shortly after the Petition Date, Shapes was purportedly "voted out" of the JDG group by the other members of the group.  Thereafter the JDG filed expert reports that either did not include Shapes as a member or named Shapes as a member but indicated that the rest of the group had determined to oust Shapes.  In any event, Shapes was precluded from providing input for and commenting on the versions of the expert reports that were eventually filed on behalf of the JDG.  In addition, as a result of the automatic stay, Shapes has not participated in certain depositions and other discovery proceedings related to the Pennsauken Litigation.

20.    The trial Court in the Pennsauken Litigation has scheduled the trial to begin on September 2, 2008.  Based upon the terms of Confirmation Injunction and the Environmental Claim carve-out, Shapes' insurers, including Century, could be required to defend Shapes in the Pennsauken Litigation without any expert witnesses, any expert reports and having missed the last critical months of discovery and pre-trial motions practice.  Moreover, it is possible that some of the expert reports that were filed on behalf of the JDG and nominally on behalf of Shapes were modified before they were filed in ways that are prejudicial to Shapes' interests in the Pennsauken Litigation.

21.    Debtors cannot interfere with Century's Contractual Rights and/or statutory rights to participate in the defense of unmeritorious Claims without jeopardizing otherwise available insurance coverage.  Accordingly, to the extent that the Plan relies upon the existence of such coverage to pay Environmental Claims, it is unfeasible and unconfirmable.

-9-

### 4. The Plan Will Vitiate Coverage By Violating Debtors' *Continuing* Duty To Cooperate With Century In The Defense And Investigation Of Disputed Claims

22. Debtors have an affirmative, continuing duty to cooperate with their insurers in the defense and investigation of all otherwise covered Disputed Claims. The Plan, however, contemplates violating this Contractual Obligation. Such a violation would vitiate any otherwise available insurance coverage for otherwise covered Claims to the extent they become Allowed Claims. *See* 14 Couch on Ins. § 199:13 (2003) ("As a general rule, an insured's breach of a cooperation clause precludes coverage and releases the insurer from its responsibilities…").

23. The Plan contains no requirement that Debtors and/or Reorganized Debtors (or any other entity claiming a right to coverage post-Effective Date) satisfy the Debtors' various continuing post-Effective Date duties and obligations under the Insurance Agreements, most importantly, the duty of cooperation. The duty of cooperation under the Insurance Agreements requires, without limitation, providing records, testimony and other assistance to cooperate with Century in the defense of any otherwise covered Claims. Instead of requiring their cooperation, the Plan grants Debtors and Reorganized Debtors unbridled discretion to settle otherwise covered Claims including Environmental Claims. See Plan at §§ 5.9; 7.9. As such, the Plan breaches the duty of cooperation because it fails to obligate any entity to cooperate with Century in the defense of otherwise covered Claims. Any such post-Effective Date breach of the duty of cooperation by Debtors and/or Reorganized Debtors will void any otherwise available coverage under the Insurance Agreements as a matter of applicable non-bankruptcy law.

24. Because the Plan appears to disregard Debtors' and/or Reorganized Debtors' post-Effective Date duties of cooperation and other continuing Contractual Obligations to Century, the Plan ensures that any otherwise available insurance coverage will be vitiated.

### 5. The Plan Will Vitiate Coverage By Violating Century's Rights To Require Performance Of Debtors' Other Contractual Obligations

25. To the extent specific Insurance Agreements are not identified and assumed as executory contracts under Section 365, the Plan also leaves unresolved whether Debtors or Reorganized Debtors (or any other entity) will be obligated to satisfy all other continuing post-Effective Date duties and obligations under the Insurance Agreements, many of which are also conditions to Century providing any available coverage. These other continuing duties and obligations include, without limitation: (i) the duties to provide notice of Claims, to assist in enforcing any rights of contribution or indemnity, and to refrain from making voluntary payments or assuming obligations; (ii) the duties to timely and fully satisfy all of the continuing payment obligations including, without limitation, payment of any deductible amounts and/or self-insured retentions; and (iii) the performance of all other obligations of the insured under the Insurance Agreements. Because the Plan appears to disregard the need to satisfy the continuing post-Effective Date duties and obligations, any otherwise available coverage under the Insurance Agreements may be voided as a matter of applicable non-bankruptcy law.

26. Indeed, the discharge, release and injunction contained in the Plan purport to materially impair Century's Contractual Rights including, without limitation, any (i) rights of subrogation, contribution and setoff; (ii) rights to require the insured to pay any deductibles and self-insured retentions; (iii) rights to require the insured to pay its allocable share of defense costs; and (iv) rights to enforce any performance of Debtors' other continuing Contractual Obligations. In this respect, the Plan unfairly purports to make Century and other insurers potentially liable to provide the full amount of insurance coverage, while extinguishing their ability to enforce their reciprocal Contractual Rights and providing a blanket exemption from the Confirmation Injunction to holders of Environmental Claims. *See* Plan at §§ 11.9; 11.10.

27.    Notwithstanding what the Plan, at §§ 11.9 and 11.10, purports to do, a bankruptcy court cannot alter or enlarge an insurer's contractual obligations. *See In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997) ("[T]he estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy."); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.), cert. denied, 469 U.S. 982 (1984) (the Bankruptcy Code is not intended to expand debtor's rights against others more than they exist at the commencement of the case). As a matter of applicable non-bankruptcy law, such treatment will excuse Century and other insurers from any obligations to provide coverage. *See* 14 Couch on Ins. § 199:13 (2003). Because the Plan's treatment of the Insurance Agreements violates Century's Contractual Rights, it jeopardizes any otherwise available insurance coverage necessary to pay otherwise covered Allowed Claims including Environmental Claims, rendering it unfeasible and, therefore, unconfirmable.

    **B.**    **The Plan Is Unconfirmable Because It Fails To Satisfy Minimum Requirements For Confirmation Under Section 1129 Of The Bankruptcy Code**

28.    In addition to the foregoing fatal flaws, the Plan is unconfirmable because it fails to satisfy the following minimum requirements for confirmation under section 1129 of the Bankruptcy Code.

    **1.**    **The Plan Fails To Comply With 11 U.S.C. § 1129(a)(1) Because It Purports To Assume The Insurance Agreements Without Compliance With 11 U.S.C. § 365(b)**

29.    The Plan improperly proposes to re-write the terms of the Insurance Agreements. A debtor "cannot unilaterally impose coverage terms on [the insurers] …" *Certain Underwriters at Lloyd's, London v. McDermott Int'l Inc.*, 2002 U.S. Dist. Lexis 874,*32 (E.D. La. 2002); *Amatex*, 97 B.R. at 221 ("[W]e do not believe that our equitable powers under [11 U.S.C.] sec. 105(a) or otherwise, can stretch so far as to alter contractual rights established

-12-

under state law in a manner not expressly authorized by the Bankruptcy Code…"); *In re Ames Dept. Stores, Inc.,* 1995 WL 311764 (S.D.N.Y. May 18, 1995) (bankruptcy court does not have the authority to rewrite the terms of an insurance policy and impose requirements upon the insurer which were not part of the parties' bargains). A contract of insurance cannot be modified without the consent of all parties. *See J.M.P.H. Wetherell v. Sentry Reinsurance, Inc.,* 743 F.Supp. 1157, 1170 (E.D. Pa. 1990); *Murray v. John Hancock Mut. Life Ins. Co.,* 165 Pa. Super. 514, 516, 69 A.2d 182, 183 (1949).

30. To the extent that the Plan does not treat the Insurance Agreements as executory contracts and condition their assumption upon compliance with all the requirements of section 365(b) of the Bankruptcy Code and/or otherwise require Debtors and/or Reorganized Debtors to assume all post-Effective Date Contractual Obligations thereunder, it impermissibly attempts to unilaterally modify their terms and conditions in a manner that would substantially prejudice Century's Contractual Rights, claims and defenses under the Insurance Agreements.

31. Nothing in the Bankruptcy Code authorizes the derogation, diminution or impairment of Century's Contractual Rights, claims and defenses under the Insurance Agreements or the creation of any rights of action that do not otherwise exist under applicable non-bankruptcy law. Moreover, neither the Plan nor the Confirmation Order may create any direct rights of action against Century's that do not otherwise exist under applicable non-bankruptcy law.

### 2. The Plan Is Not Fair And Equitable With Respect To Century.

32. Century is entitled to adequate protection, and fair and equitable treatment of its rights under, and interests in, the Insurance Agreements. Because of its failure to do so, the Plan does not satisfy section 1129(b) of the Bankruptcy Code with respect to Century.

-13-

33. Despite Section 11.11 (Preservation of Insurance), the Plan purports to require insurers to fund settlements negotiated by the Debtor with the United States Environmental Protection Agency ("USEPA") and the New Jersey Department of Environmental Protection ("NJDEP") without the consent or approval of the insurers. Under the Insurance Agreements, Century is not required to provide indemnity for any claim unless the claim has been finally adjudicated or settled with the consent of Century. Century was not contacted and did not consent to the settlement set forth in Section 4.4 of the Plan.

34. Like Section 4.4, Plan Sections 5.9 (Reorganized Debtors authorized to unilaterally prosecute, compromise and/or settle objections to Claims) and Section 7.9 (Class 10 Liquidation Trustee or Reorganized Debtor may settle any disputed Claim for $100,000.00 or less without notice or obtaining an order from the Bankruptcy Court) purport to allow Reorganized Debtors to settle claims, including Environmental Claims for which insurance coverage may be sought, without first providing any insurers with notice of such pending settlements or providing insurers with an opportunity to defend such claims or consent to such settlements.

35. Finally, the provision of the Plan which provides for the assumption of insurance policies by the Reorganized Debtor requires the determination that the policies provide coverage for "environmental claims" as a condition precedent to assumption. In the absence of an agreement between insurers and Reorganized Debtors that certain policies provide coverage for environmental claims, the adjudication of the existence and extent of insurance coverage under the policies for any specific claim must be the subject of a separate non-core adversary proceeding adjudicated by the U.S. District Court. *See Beard v. Braunstein*, 914 F.2d 434, 445

(3d Cir. 1990). Absent an agreement or such final adjudication, the identification of policies assumed under the Plan cannot be definitely established.

36. Requiring Century to defend and indemnify Debtors and Reorganized Debtors for Environmental Claims without expressly identifying all of the Insurance Agreements as being assumed under section 365 of the Bankruptcy Code unfairly prejudices Century and impermissibly re-writes the terms of the Insurance Agreements. As a result, the Plan - which purports to provide such treatment of Century's rights - cannot be confirmed. *See In re Ames Dept. Stores, Inc., supra.*

37. Moreover, the discharge, release and injunction contained in the Plan appear to impermissibly impair Century's rights to enforce satisfaction of Debtors' and/or Reorganized Debtors' continuing post-Effective Date Contractual Obligations under the Insurance Agreements, as well as any possible rights of set-off, recoupment and subrogation. *See* Plan at §§ 11.9; 11.10. In this respect, the Plan is not fair and equitable to, and unfairly discriminates against, Century because it makes Century potentially liable to provide coverage and render other performance under the Insurance Agreements while depriving it of its corresponding ability to exercise its rights, and enforce its remedies, thereunder.

38. The Plan also violates the jurisdictional limitations of 28 U.S.C. § 157 because it improperly attempts to confer jurisdiction upon the Bankruptcy Court for non-core adversary proceedings and other matters that may involve adjudication of Century's rights and obligations under the Insurance Agreements. *See* Plan at § 10.1(f). Moreover, the Plan impermissibly purports to deprive Century of the right to have any disputes regarding its rights under the Insurance Agreements resolved by arbitration, if appropriate. To the extent that the Plan contemplates that the proceeds of the Insurance Agreements will be a source for payment of

Case 08-14631-GMB    Doc 435    Filed 06/30/08    Entered 06/30/08 14:25:26    Desc Main
            Document      Page 16 of 18

otherwise covered Claims, neither the Plan nor the Confirmation Order may adjudicate the existence or extent of coverage under the Insurance Agreements or coverage for any particular Claim.  *See Beard v. Braunstein*, 914 F.2d at 445 (holding that an action "involving pre-petition contracts, allegedly breached both before and after the filing of a petition, is entirely a non-core matter"); *In the Matter of United States Brass Corp.*, 110 F.3d 1261, 1268-69 (7th Cir. 1997) (holding that an action between a debtor and its insurer to resolve a coverage dispute is non-core); *Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 107 B.R. 856, 863 (E.D. Pa. 1989) (determining that an adversary proceeding seeking declaratory relief concerning insurance coverage for asbestos-related claims is a non-core matter), *aff'd*, 908 F.2d 961 (3d Cir. 1990); *Sullivan v. Maryland Cas. Co. (In re Ramex, Int'l, Inc.)*, 91 B.R. 313, 315 (Bankr. E.D. Pa. 1988) (stating that a "cause of action for declaratory judgment under a policy of insurance issued to the debtor pre-petition is not a core proceeding").

39.     To the extent that the Plan contemplates that the proceeds of the Insurance Agreements will be a source for payment of otherwise covered Allowed Claims, neither the Plan nor the Confirmation Order may adjudicate the existence or extent of coverage under the Insurance Agreements or coverage for any particular Claim.

### Reservation Of Rights

40.     Century expressly reserves, and does not waive, all of its rights, defenses, limitations and/or exclusions in connection with the Contractual Rights, Contractual Obligations, applicable law or otherwise.  Century further reserves all rights to assert any and all such rights, defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the interpretation of Contractual Rights and Contractual Obligations adjudicated by arbitration, to the extent applicable, or by the United States District Court).  Nothing contained in these

Objections shall be deemed to expand any coverage that may otherwise be available under any Insurance Agreements or any rights to payment under settlements.

41. Century further reserves all of its rights to raise the issues contained in these Objections and any other related issues in any procedurally-appropriate contested matter and/or adversary proceeding including, without limitation, a separate adversary proceeding requesting any declaratory and/or injunctive relief with respect to any Contractual Rights that may be adversely affected by confirmation of the Plan.

42. Century further reserves all of its rights to object to any claim for coverage under any Insurance Agreements, to seek declaratory and/or injunctive relief to the extent that treatment of Contractual Rights, Contractual Obligations and/or confirmation of the Plan violates any terms or conditions of any Insurance Agreements and/or settlements or gives rise to any defenses on behalf of Century.

43. Nothing in these Objections shall be construed as an acknowledgment that any Insurance Agreements cover or otherwise apply to any claims, losses or damages on account of any Claims or otherwise, or that any such claims or causes of action are eligible for payment. Century reserves the right to seek an adjudication that Debtors and/or Reorganized Debtors, individually or collectively, have waived or forfeited any available coverage under the Insurance Agreements.

44. Century reserves all of its rights to object to any Claim and/or consent to any settlement of any Claim by Debtors and/or Reorganized Debtors.

45. Finally, Century reserves its right to amend, modify or supplement these Objections in response to, or as a result of any discovery being conducted in connection with confirmation of the Plan and/or any submission in connection with the Plan or this reorganization

PHLDMS1 4451022v.3

case filed by any party-in-interest.  Century also reserves the right to adopt any other objections to confirmation of the Plan filed by any party.

## Conclusion

46.    For the reasons set forth above, the Plan is unconfirmable because it does not meet the minimum requirements for confirmation under 11 U.S.C. § 1129.

Dated: June 30, 2008

/s/  Joseph G. Gibbons_____
Joseph G. Gibbons
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
Telephone (215) 864-7000
Telecopier (215) 864-7123

Attorneys for Century Indemnity Company