**LITCHFIELD CAVO LLP**
*An Illinois Limited Liability Partnership*
By:  Kathleen J. Collins, Esquire
     Kelly A. Krail, Esquire
1800 Chapel Avenue West, Suite 360
Cherry Hill, NJ  08002
(856) 854-3636
Attorneys for Creditor Quick-way, Inc.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY  (CAMDEN)

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| SHAPES/ARCH HOLDINGS, L.L.C., | ) | |
| *et al,* | ) | Case No. 08-14631 (GMB) |
| | ) | |
| Debtors. | ) | Hearing Date: July 8, 2008 |
| | ) | 10:00 a.m. |

---

### QUICK-WAY, INC. OBJECTION TO DEBTORS MOTION TO DISALLOW CLAIMS FOR CONTRIBUTION AND IN THE ALTERNATIVE TO ESTIMATE CLAIMS

Creditor Quick-way, Inc. ("Quick-way"), by and through its undersigned counsel, hereby objects to Shapes/Arch Holdings L.L.C. and its related debtor entities (collectively, the "Debtors"),[1] the debtors and debtors-in-possession's motion to disallow Quick-way, Inc.'s proof of claim ("the Motion").  In opposition to the Motion, Quick-way, Inc. represents as follows:

#### BACKGROUND

1. On March 16, 2008, the Debtors filed their respective petitions for relief under Chapter 11 of the Bankruptcy Code.  These cases are being jointly administered pursuant to this Court's Order of March 18, 2008 under the lead debtor Shapes/Arch Holdings, L.L.C.

---

[1]  In addition to Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), the following entities, all of which are wholly owned subsidiaries of Shapes/Arch, also filed petitions pursuant to Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"):  Shapes L.L.C. ("Shapes"), Delair L..C. ("Delair"), Accu-Weld L.L.C. ("Accu-Weld") and Ultra L.L.C. ("Ultra").

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession. This Court has not appointed a trustee or examiner.

3. This Court has jurisdiction over Debtors' Motion pursuant to 28 U.S.C. §1334. Venue is proper in this Court pursuant to 28 U.S.C.§§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## THE PENNSAUKEN LITIGATION

4. In 1991, Pennsauken Township, Pennsauken Solid Waste Management Authority and the Pollution Control Financing Authority of Camden County (hereinafter "Pennsauken Plaintiffs") filed an action in the Superior Court of New Jersey, Law Division against various transporters, generators, municipalities and other parties potentially responsible for the contamination of a landfill site located in the Township of Pennsauken (the "Landfill"). The action is captioned at *Pennsauken Solid Waste Mgt. Auth. v. James D. Morrissey, Inc., et al.*, Docket No. L-13395-91 (the "Pennsauken Litigation").

5. The Pennsauken Plaintiffs assert claims under the New Jersey Spill Act (the "Spill Act"), N.J.S.A. 58:10-23.11 *et seq.* in the Pennsauken Litigation. Specifically, Pennsauken Plaintiffs seek the recovery of costs it has incurred and will incur in the future for the remediation of the Landfill.

6. Pennsauken Plaintiffs also have brought several common law causes of action in the Pennsauken Litigation, including negligence, nuisance, misrepresentation, creation of an abnormally dangerous activity and gross negligence. Pennsauken Plaintiffs' alleged damages are approximately $77,871,002.43.

7. The Debtors own and operate a manufacturing facility that is adjacent to the Landfill. The Debtors also disposed of waste containing hazardous substances at the Landfill during the relevant time period in the Pennsauken Litigation. The Debtors are both an on-site and off-site contributor to the hazardous substances at the Landfill and therefore are liable for their allocable share of the costs of the Site's remediation.

8. Quick-way, Inc. also is a direct defendant in the Pennsauken Litigation and has cross-claims against the Debtors under the New Jersey Spill Act.

9. Pursuant to an Administrative Consent Order entered into with the New Jersey Department of Environmental Protection ("NJDEP"), the Pennsauken plaintiffs have undertaken remedial investigative studies and efforts at the Landfill. And, pursuant to an agreement with the Pennsauken Litigation plaintiffs, the Transporter Liaison Group (which includes Quick-way, Inc.) has performed NJDEP ordered remedial studies at the site. Quick-way, Inc. therefore has expended funds to remediate the Landfill. (*See* attached Exhibit A, May 15, 2008 correspondence from Sandford Schmidt to Liaison Counsel listing the Transporters' damages.)

10. Expert discovery is ongoing in the Pennsauken Litigation. Expert reports are still being issued and expert depositions will commence shortly. Therefore, there remains time for Aluminum Shapes to serve expert reports should the stay be lifted. A trial is scheduled to commence on September 2, 2008.

11. In 2004, another Direct Defendant, DeSoto, Inc., filed for bankruptcy in the United States Federal District Court, Eastern District of Wisconsin captioned *FV Steel and Wire Company, et al*., Docket No. Case No. 04-22421-SVK ("*FV Steel* Matter"). A number of Pennsauken Litigation defendants, including Quick-way, filed proofs of claims in the *FV Steel*

Matter. In order to resolve their differences with respect to the FV Steel's Second, Third, Fourth and Fifth Omnibus Objections without further legal proceedings or expense, the parties were negotiating to disallow the Pennsauken Litigation claims and replace those claims with two replacement claims (the "Replacement Claims") held by the Pollution Control Finance Authority of Camden County, as the representative of the Pennsauken Environmental Claimants. In the interim, a 2004 hearing was scheduled. As a result, the Pennsauken Plaintiffs and FV Steel agreed to resolve all of the claims for $750,000. (See attached Exhibit B, Certification of Kathleen J. Collins, Esquire.)

## QUICK-WAY INC.'S PROOF OF CLAIM

12. On May 14, 2008 Quick-way, Inc. filed a timely proof of claim against the Debtors. A true and correct copy of the proof of claim is attached as Exhibit C.

13. In its proof of claim, Quick-way, Inc. seeks reimbursement of the funds it has expended as a member of the transporter liaison group to remediate the Landfill. Quick-way, Inc. also asserted a claim for at least a portion of the past and future remediation costs, which are currently estimated to be $77,871,002.43.

## LEGAL ARGUMENT

14. Debtors contend that Quick-way, Inc.'s claim should be disallowed pursuant to Section 502(e)(1) of the Bankruptcy Code because it is a contingent claim for reimbursement or contribution upon which Quick-way, Inc. and the Debtors are jointly liable to a third party. On the contrary, at least a portion of Quick-way, Inc.'s claim seeks reimbursement of funds it has *actually* expended and will *actually* expend to remediate the Landfill.

15. To the extent that Quick-way, Inc. is seeking reimbursement of funds it has or will personally expend, this Court should not disallow the claim. For example, the court in *Matter of Harvard Indus., Inc.,* 138 B.R. 10 (Bankr. D. Del. 1992), did not disallow a proof of claim under Section 502(e)(1)(B) that was filed by a landfill owner where the owner has remediated the site. The court reasoned that a claim which sought reimbursement of funds it had expended or would expend to remediate the site was not contingent within the meaning of Section 502(e)(1)(B). Similarly, the court in *In re Allegheny Int'l, Inc.,* 126 B.R. 919 (W.D. Pa.), *aff'd,* 950 F.2d 721 (3d Cir. 1991), found that a claim seeking reimbursement of funds expended by the claimant and not a governmental agency was not disallowable under Section 502(e)(1)(B).

16. The Environmental claim of Quick-way should not be expunged because 1) it is more than merely a contingent claim for reimbursement and contribution, and 2) the Court is bound to utilize its inherent equitable power to construct a creative resolution to insure that the Debtor assume responsibility for its environmental liability at the Pennsauken landfill.

17. A Sixth Circuit opinion makes it readily apparent that claims such as those being asserted in this action call upon the court to utilize its equitable powers and construct a "creative resolution" to insure that the Debtor assume responsibility for its environmental liability such as that at the Pennsauken landfill site. *See Norpak Corp. v. Eagle-Picher Ind., Inc.,* 235 B.R. 876 (6th Cir. 1999). In the *Norpak* case, a Chapter 11 Debtor attempted to resist a claim for contribution or indemnification related to its environmental practices relying on 502 (e)(1)(B). Following a determination by the bankruptcy court that 502 (e)1)(B) prevented a claim for contribution under the Comprehensive Environmental Response, Compensational Liability Act, 42 U.S.C. 9601, et seq., the bankruptcy panel for the Sixth Circuit remanded the case insisting

that the bankruptcy court use its equitable powers to construct a "creative" resolution to insure that the Debtor assume responsibility for its environmental liability.

18. Given the rational of the *Norpak* decision, it is clear that this Court must attempt to fashion some relief for the claimant herein, especially in light of the potential for Debtor to shoulder a significant portion of the liability associated with their waste, should the Pennsauken Plaintiff prevail in its claim.

## RESERVATION

19. Quick-way, Inc. reserves its right to supplement its response on any additional ground.

WHEREFORE, Quick-way, Inc. respectfully requests that this Court deny Debtors' Motion to Disallow its Proof of Claim and grant such other and further relief as is just and proper.

Dated: July 1, 2008                     LITCHFIELD CAVO LLP
                                        *An Illinois Limited Liability Partnership*


                                        *Kathleen J Collins*
                                        Kathleen J. Collins, Esquire
                                        Attorneys for Creditor Quick-way, Inc.

6