U.S. BANKRUPTCY COURT
FILED
CAMDEN, NJ

08 JUL -2 PM 3: 16

JAMES J. WALDRON

BY:_____
DEPUTY CLERK

John Sullivan
POST & SCHELL PC
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 587-1000

Mark D. Plevin
Matthew W. Cheney
Kelly R. Cusick
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Attorneys for Liberty Mutual Insurance Company and
Wausau Underwriters Insurance Company

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| SHAPES/ARCH HOLDINGS L.L.C., *et al.*, | Case No. 08-14631 (GMB) |
| Debtors. | Hon. Gloria M. Burns |

### MOTION BY LIBERTY MUTUAL INSURANCE COMPANY AND WAUSAU UNDERWRITERS INSURANCE COMPANY TO QUASH RULE 2004 SUBPOENAS FOR DOCUMENTS

Liberty Mutual Insurance Company and Wausau Underwriters Insurance Company (collectively, "Liberty Mutual"), parties in interest, hereby move, pursuant to D.N.J. LBR 2004-1(d) and Fed. R. Bankr. P. 9016, to quash subpoenas for documents issued by "Pennsauken Landfill Litigation-related creditors" to (a) Liberty Mutual Insurance Company and (b) Wausau Business Insurance Company. The subpoenas should be quashed because they were not properly served, they set the document production for less than 14 days, they are not timely confirmation-related discovery, and the discovery requests are not relevant or reasonable.

## FACTUAL BACKGROUND

On March 16, 2008, Debtors'[1] each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On the same date, Debtors also filed a disclosure statement and plan of reorganization.

On May 23, 2008, the Court approved the disclosure statement for Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). The order approving the disclosure statement set the confirmation hearing for July 8, 2008.

Under the Plan, Debtors propose a separate class for "Environmental Claims," which will be paid, if at all, from available insurance proceeds.[2] Liberty Mutual issued certain liability insurance policies to one or more Debtors.[3] Coverage under Liberty Mutual's policies is, to the extent available, subject to the terms, conditions, limitations, and exclusions set forth in and/or incorporated into each policy and applicable non-bankruptcy law.

On June 19, 2008, an attorney at the firm of Brown & Connery, LLP issued subpoenas for documents to a number of insurers, including Liberty Mutual. Attached as Exhibit A are the cover letter with the two subpoenas issued to Liberty Mutual Insurance Company and Wausau Business Insurance Company.

The return date on the subpoenas is July 3, 2008 at 10:00 a.m. at the Westmont, NJ offices of Brown & Connery, LLP.

---

[1] The Debtors include Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., Ultra L.L.C.

[2] *See* Plan § 4.4, Dkt. No. 338. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan and related Plan documents.

[3] *See* Joint Disclosure Statement For the Debtors' Third Amended Joint Plan of Reorganization § VI(c), Dkt. No. 339.

According to the cover letter for the subpoenas, counsel seeks "on behalf of the Pennsauken Landfill Litigation-related creditors" to obtain "policy information for Aluminum Shapes from 1970 to 1994." From the list of matters requested in Exhibit A of the subpoenas, however, the subpoenas request more than basic policy information.

It is unclear on whose behalf counsel issued the subpoenas. Brown & Connery, LLP entered its appearance in these bankruptcy proceedings solely on behalf of Pollution Control Financing Authority of Camden County on April 7, 2008.[4]

Liberty Mutual's counsel, who also has appeared in these bankruptcy proceedings, was not contacted by Brown & Connery, LLP either before or after the subpoenas were issued.

From the cover letter, it appears that the subpoenas were sent to the Office of Legislative & Regulatory Affairs, New Jersey Department of Banking and Insurance via Federal Express (the "Insurance Commissioner").[5] On information and belief, Liberty Mutual has not yet received the subpoenas from the Insurance Commissioner.

Debtors' defense counsel in the Pennsauken landfill litigation received a copy of the cover letter and the subpoenas on June 23, 2008, which is how Liberty Mutual learned of the existence of the subpoenas.

---

[4]   *See* Notice of Appearance and Demand for Service of Papers, Dkt. No. 120.

[5]   *See* Exhibit A (cover letter for subpoenas, which references delivery via Federal Express).

## ARGUMENT

### A.   The subpoenas have not been properly served.

In an attempt to effectuate service of the subpoenas, Brown & Connery, LLP sent the subpoenas to the Insurance Commissioner. Although, the Insurance Commissioner is authorized to accept initial service of process on behalf of all foreign insurers, such as Liberty Mutual, admitted in the State of New Jersey, it is not authorized to accept any court documents other than initial service of process, such as subpoenas.[6] The Insurance Commissioner's lack of authority to accept service of subpoenas is plainly stated on the website maintained by the Insurance Commissioner.[7] Accordingly, the subpoenas have not been properly served and should be quashed.[8]

---

[6]   *See* N.J.S.A. 17:32-2c (West 2008) (the commissioner is only authorized to accept "original process in any action or legal proceeding").

[7]   *See* http://www.state.nj.us/dobi/servproc.htm ("**Please Note** - The Commissioner is **not** authorized to accept the following: Any court documents other than initial service of process, such as subpoenas, motions, etc.") (emphasis in original).

[8]   Arguably, the subpoenas also were not properly issued because Liberty Mutual cannot determine to what party(ies) it was to respond. According to the cover letter for the subpoenas, Brown & Connery, LLP represents more than one party. However, Brown & Connery, LLP only noticed its appearance in these bankruptcy proceedings on behalf of Pollution Control Financing Authority of Camden County and it has not filed a statement under Bankruptcy Rule 2019. It would be unfair and prejudicial to compel Liberty Mutual to respond to subpoenas without disclosing to Liberty Mutual who the discovery parties are and providing Liberty Mutual an opportunity to consider whether, given such information, other objections should be raised to the subpoenas.

In addition, the subpoena issued for Wausau Business Insurance Company names the wrong party. Wausau Underwriters Insurance Company was the Wausau entity that issued policies for Debtors.

**B.     The subpoenas are improper because they set the document production for less than 14 days after purported service in violation of D.N.J. LBR 2004-1(c).**

Local Rule 2004-1(c) provides that any subpoena served without filing a motion or obtaining an order from the Court "shall not set the examination or document production for less than 14 days after service of the subpoena except by agreement of the deponent."[9] Even if the subpoenas were properly served on Liberty Mutual on June 20, 2008, which they were not, they demanded the production of documents on July 3, 2008. The response time under the subpoenas was 13 days. Liberty Mutual does not consent to a shortened response time. Accordingly, for this reason alone, the Court should grant the Motion and quash the subpoenas.

**C.     The subpoenas were issued on the eve of the confirmation hearing and, therefore, are not timely.**

The subpoenas were issued on June 19, 2008, with a return date of July 3, 2008, only two business days before the scheduled confirmation hearing and after the deadline for filing objections to the Plan. Given that Debtors filed a plan of reorganization in March 2008 and that the Court approved the disclosure statement for the Plan in May 2008, the discovering party(ies) had ample time to serve confirmation-related discovery. The issuance of subpoenas on the eve of the confirmation hearing is not appropriate. The subpoenas should be quashed as untimely.[10]

The discovery party(ies) will not be prejudiced if the subpoenas are quashed. The requested information is not relevant to either establishing the claim(s) of the discovery

---

[9]     D.N.J. LBR 2004-1(c).

[10]    *Cf.* Sinkow v. Latimer (In re Latimer), 82 B.R. 354, 357 (Bankr. E.D.Pa. 1988) (disagreement recognized on other grounds) (noting an earlier decision in the bankruptcy case denying a last minute motion for a 2004 exam).

party(ies) in the bankruptcy or the confirmation process. Moreover, the issues of whether and to what extent insurance coverage may exist to pay Environmental Claims after Debtors' liability has been established will be raised in future claims objection proceedings and/or coverage-related litigation. Liberty Mutual (and the other insurers) should not be subjected to a fishing expedition regarding coverage when these issues will be the subject of future litigation.[11]

### D. Liberty Mutual should not be required to produce the documents/information requested because the 2004 discovery requests are not relevant or reasonable.

Even if the subpoenas are reissued and properly served, the requested discovery is objectionable.[12] The timing of the subpoenas, the form of the discovery requests and the scope of the discovery requested suggest that the subpoenas were not served for a proper purpose.[13]

---

[11] *See cf.* In re 2435 Plainview Avenue, Inc. v. Township of Scotch Plains (In re 2435 Plainview Avenue, Inc.), 223 B.R. 440, 455-56 (Bankr. D.N.J. 1998) (acknowledging that a majority of courts will not permit allow a 2004 exam when doing so will avoid the procedural safeguards of the rules of civil procedure governing discovery in pending litigation).

[12] Liberty Mutual reserves the right to interpose supplemental objections to the requested discovery. Nothing herein is or should be construed as a waiver of any or all of Liberty Mutual's rights to object to the specific discovery requests attached to the subpoenas. For the avoidance of doubt, Liberty Mutual objects generally to the subpoenas to the extent: (a) they seek to impose any obligation beyond that which is required by the applicable rules of procedure; (b) they seek documents/information protected by the attorney-client privilege, work product doctrine or any other applicable privilege, doctrine or protection; (c) they are overly broad, unduly burdensome and seek documents/information that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence; (d) they are vague or ambiguous or fail to describe the documents/information sought with sufficient particularity; (e) they seek confidential documents/information; and (f) they seek documents/information available as a matter of public record, in the possession of the requesting party(ies) or third parties, or not within Liberty Mutual's possession, custody or control.

[13] To the extent the subpoenas are not quashed based on the foregoing arguments, Liberty Mutual reserves the right to submit further briefing and evidence to demonstrate that good cause does not exist to require Liberty Mutual to respond to the discovery and/or that, if any such discovery is to be had, an appropriate protective order should be issued.

Bankruptcy Rule 2004 authorizes a party in interest to examine any entity relating to the acts, conduct, property, liabilities, and financial condition of the debtor or any matter that may affect the administration of the estate or debtor's right to a discharge. Although the permissible scope of a Rule 2004 examination is broad, it is not without limitation. For example, a Rule 2004 examination must be "both relevant and reasonable," "may not be used to annoy, embarrass, or oppress the party being examined,"[14] and should not be overly disruptive or costly.[15] There are also subject matter limitations. The rule is designed to allow "the court to gain a clear picture of the condition and the whereabouts of the bankrupt's estate"[16] by permitting parties to inquire "into the debtor's acts, conduct or financial affairs so as to discover the existence and location of assets of the estate."[17]

A party seeking to conduct a Rule 2004 examination has the burden of showing good cause for the examination it seeks.[18] Generally, good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner undue hardship or injustice.[19]

---

[14] In re Symington, 209 B.R. 678, 684-85 (Bankr. D. Md. 1997). See also Northmount Assocs. v. W & S Invs., Inc. (In re W & S Invs., Inc.), 1993 WL 18272 at *2 (9th Cir. Jan. 28, 1993).

[15] In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994); In re Express One Int'l, 217 B.R. 215, 217 (E.D. Tex. 1998).

[16] In re Int'l Fibercom, Inc., 283 B.R. 290, 292 (D. Ariz. 2002), quoting Moore v. Lang (In re Lang), 107 B.R. 130, 132 (Bankr. N.D. Ohio 1989). See also W & S Invs., Inc., 1993 WL 18272 at *2.

[17] Symington, 209 B.R. at 690 n.14. See also W & S Invs., Inc., 1993 WL 18272 at *2; In re Dinubilo, 177 B.R. 932, 936 n.6, 941, 943 (E.D. Cal. 1993).

[18] Eagle-Picher, 169 B.R. at 134; Express One, 217 B.R. at 217.

[19] Id.; Dinubilo, 177 B.R. at 943.

Furthermore, if the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied.[20]

Here, counsel for "the Pennsauken Landfill Litigation-related creditors" states that they seek to obtain "policy information for Aluminum Shapes from 1970 to 1994." On their face, the subpoenas request only the production, inspection and copying of documents. If the discovery was as limited as the cover letter suggests, the subpoenas might be satisfied by the production of copies of the insurance policies either by Debtors or their insurers. But the scope of the subpoenas seeks documents/information well-beyond basic policy information. Moreover, Exhibit A to the subpoenas asks questions and is not in the form of a request for documents.

The substance of the discovery requests also are objectionable. By way of example and subject to its reservations of rights, Liberty Mutual provides the following cursory response to the specific items listed in Exhibit A to the subpoenas:

1.    Identify all insurance policies for the Relevant Time Period, including but not limited to:

\*\*\*

    f.    Whether and to what extent each policy has been eroded;
    g.    Which carriers have provided coverage for the Pennsauken Landfill Litigation;
    h.    Identify each carriers' [sic] individual percentage of total coverage for the Pennsauken Landfill Litigation; and . . . .[21]

As an initial matter, Liberty Mutual objects to the request because the meaning of the term "Relevant Time Period" is not included in the subpoenas. Indeed, there are no instructions or definitions included with the subpoenas. Liberty Mutual further objects to this

---

20    Eagle-Picher, 169 B.R. at 134; Express One, 217 B.R. at 217.

21    See Exhibit A (Subpoenas and Exhibits A thereto).

request because it is in the form of a question. Moreover, the request seeks information that depends on the resolution of legal issues. For example, the extent of any policy erosion implicates issues with respect to occurrence (and potentially other) limits on coverage under the policies. The issue of "what is an occurrence" is a legal question that has not been determined. Similarly, issues of coverage and each carrier's allocation are legal matters that cannot be determined until after Debtors' liability has been established.[22] Thus, Liberty Mutual is unable and may not be compelled to produce documents in response to the request.[23] In addition, the request is not relevant to either establishing the claim(s) of the discovering party(ies) in the bankruptcy or the confirmation process.

> 2. Whether any of the carriers identified in Question 1.g. have provided defense and/or indemnification under a Reservation of Rights. If so, please provide a copy of the Reservation of Rights Letter.[24]

Liberty Mutual objects to this request because the meanings of the terms "Reservation of Rights" and "Reservation of Rights Letter" are not included in the subpoenas. Liberty Mutual further objects to this request because it is in the form of a question. Indeed, the form of the request confirms that this subpoena for documents asks questions, which is not appropriate. Notwithstanding the foregoing, Liberty Mutual further objects to the request because it appears to be seeking confidential communications between the insurers and their

---

[22] *See, e.g.*, Carter-Wallace, Inc. v. Admiral Insurance Co., 712 A.2d 1116 (N.J. 1998) (addressing issues concerning the division of coverage liability after the insured suffered a loss).

[23] To the extent the discovering party(ies) seek documents relating to any agreements between an insurer and its insured or among insurers with respect to coverage issues, those documents (if any) relate to the defense of the Pennsauken litigation or other proceedings and are protected from disclosure by the work product doctrine and other applicable privileges. In addition, the information requested is not relevant to the discovery party(ies) claim(s) in the bankruptcy and may also be confidential.

[24] *See* Exhibit A (Subpoenas and Exhibits A thereto).

insured, which also are not relevant to either establishing the claim(s) of the discovering party(ies) in the bankruptcy or the confirmation process. In addition, such communications relate to the Pennsauken litigation or other proceedings and are protected from disclosure by the work product doctrine and other applicable privileges.

    3.    Whether any carriers identified in Question 1.g. have gone bankrupt. If so:

        a.    Identify the carrier and level of insurance;
        b.    Identify the state Guarantee Fund responsible for the policies; and
        c.    If such carriers were primary, whether any of the umbrella or excess carriers have agreed to drop-down.

    4.    Whether any policies identified in Question 1 have been the subject of a buy back. If so:

        a.    Provide the date, terms and Agreement for the buy back; and
        b.    Were any of the funds from the buy back placed in escrow.
            i.    Identify the current amount in escrow; and
            ii.    If not, what was done with the funds from the buy back.[25]

Liberty Mutual objects to these requests because they are in the form of questions. Liberty Mutual further objects to these requests because they seek information either available from other persons or entities, publicly available, or not in Liberty Mutual's possession. Question 3 also improperly seeks information related to allocation and coverage issues, which are legal issues that have not been determined. As for Question 4, without waiving any of its rights or any objections to the subpoenas, Liberty Mutual states that none of its policies insuring Debtors are the subject of any buy back agreements.

    5.    Whether Aluminum Shapes, Inc. was self-insured or had Self-Insured Retentions ("SIR") at any time during the Relevant Time Period. If so:

        a.    Identify the time period such was in existence;
        b.    Identify the SIR limits and any policies related to the SIR; and

---

[25] *Id.*

  c. Whether any funds were placed into an account for payment of claims under the self-insured periods or SIRS. If so:
   i. Do these accounts still exist; and
   ii. How much money is currently in these funds.[26]

Liberty Mutual objects to this request because the meanings of the terms "Self-Insured Retentions" and "Relevant Time Period" are not included in the subpoenas. Liberty Mutual further objects to this request because it is in the form of a question. Liberty Mutual further objects to this request because it seeks information either available from other persons or entities, publicly available, or not in Liberty Mutual's possession. If Debtors were self-insured, they as the policyholders may have this information. Other than the terms of the policies themselves, the insurers would not have information concerning any self-insured retentions by Debtors.

 6. To what extent, if any, are there other claims against the policies identified in Quest [sic] 1.g. If such claims exist:

  a. Identify the other claims;
  b. Identify the potential value of such claims; and
  c. Identify whether the carriers have agreed to defend and/or indemnify Aluminum Shapes, Inc. in relation to those claims and whether such is under a reservation of rights.[27]

Liberty Mutual objects to this request because it is in the form of a question. Liberty Mutual further objects to these requests because they seek information either available from other persons or entities, publicly available, or not in Liberty Mutual's possession. Notwithstanding the foregoing, Liberty Mutual further objects to the request because it appears to be seeking confidential communications between the insurers and their insured, which also

---

[26] *Id.*

[27] *Id.*

are not relevant to either establishing the claim(s) of the discovering party(ies) in the bankruptcy or the confirmation process. In addition, to the extent any such communications relate to an agreement to defend and/or indemnify an insured with respect to any claims, such information is protected from disclosure by the work product doctrine and other applicable privileges.

> 7. Are there any agreements between Aluminum Shapes, Inc. and its carriers related to the defense, indemnification and/or potential allocation for Aluminum Shapes, Inc. in the Pennsauken Landfill Litigation regarding its carriers continuing to defend and/or indemnify Aluminum shapes' [sic] despite the Chapter 11 filing. If so:
>
>    a. Identify the carriers; and
>    b. Provide copies of said agreements.[28]

Liberty Mutual objects to this request because the meaning of the term "Pennsauken Landfill Litigation" is not included in the subpoenas. Liberty Mutual further objects to this request because it is in the form of a question. Liberty Mutual further objects to this request because it seeks information either available from other persons or entities, or not in Liberty Mutual's possession. The discovery party(ies) know that they are not entitled to obtain information about how Debtors and its insurers are defending the Pennsauken litigation. Such information is protected from disclosure by the work product doctrine and other applicable privileges.

The foregoing reflects the unreasonable nature of the specific discovery requested. In light of the other issues with the subpoenas, the Court should quash the subpoenas.

---

[28] *Id.*

## CONCLUSION

For the foregoing reasons and such additional reasons as Liberty Mutual may identify in the future, the Court should quash the subpoenas.

\*\*\*    Signature Page to Follow    \*\*\*

Respectfully submitted,

Dated: July 2, 2008

BY: *[signature]*
John C. Sullivan
POST & SCHELL, P.C.
Four Penn Center – 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103
Phone: (215) 587-1000

Mark D. Plevin
Matthew W. Cheney
Kelly R. Cusick
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2500

Attorneys for Liberty Mutual
Insurance Company and Wausau
Underwriters Insurance
Company