U.S. BANKRUPTCY COURT
FILED
CAMDEN. NJ

08 JUL -2 PM 3: 15

JAMES J. WALDRON

BY:_____ul
DEPUTY CLERK

John Sullivan
POST & SCHELL PC
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 587-1000

Mark D. Plevin
Matthew W. Cheney
Kelly R. Cusick
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Attorneys for Liberty Mutual Insurance Company and
Wausau Underwriters Insurance Company

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| SHAPES/ARCH HOLDINGS L.L.C., *et al.*, | Case No. 08-14631 (GMB) |
| Debtors. | Hon. Gloria M. Burns |

## OBJECTIONS BY LIBERTY MUTUAL INSURANCE COMPANY AND WAUSAU UNDERWRITERS INSURANCE COMPANY TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

Liberty Mutual Insurance Company and Wausau Underwriters Insurance

Company (collectively, "Liberty Mutual"), parties in interest, hereby object to Debtors' Third

Amended Joint Chapter 11 Plan of Reorganization (the "Plan"), Dkt. No. 338.[1]  The Plan, as

drafted, cannot be confirmed because it fails to comply with the Bankruptcy Code and

---

[1]    This objection is filed on July 2, 2008, with the consent of the Debtors, who agreed to extend the deadline for Liberty Mutual to object to the Plan from June 30, 2008 to July 2, 2008.

69

applicable law.  Left unchanged, the Plan impairs the contractual rights of Debtors'[2] insurers,

including Liberty Mutual.  For example, the Plan alters Liberty Mutual's rights to: (i) participate

in and/or control the defense and settlement of claims that they will be asked to pay and (ii)

receive the cooperation and assistance of the insured in defense and settlement efforts.  Because

the Plan that does not require compliance with Debtors' obligations under Liberty Mutual

policies, it expressly breaches the terms of the policies which embody state-law created contract

rights.  As a result, the Plan does not satisfy the confirmation requirements set forth in Sections

1129(a)(1), (a)(3), (a)(7) and (a)(11) of the Bankruptcy Code.[3]

Liberty Mutual proposed revisions to the Plan to Debtors, which provide clarity

to the Plan and make it insurance neutral.[4]  Such language is commonly used (and is required) in

bankruptcy cases where insurance rights are critical to Plan implementation to protect the

insurers' rights and to comply with Section 1129 of the Bankruptcy Code.[5]  Unless the Plan is

revised in a manner similar to that proposed by Liberty Mutual, the Plan cannot be confirmed

pursuant to Section 1129 of the Bankruptcy Code.

---

[2]     The Debtors include Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., Ultra L.L.C.

[3]     All statutory references are to the Bankruptcy Code, 11 U.S.C., unless otherwise stated.

[4]     A copy of the proposed revisions to the plan is attached as Exhibit A for informational purposes.  The highlighting reflects the proposed revisions to existing provisions of the Plan.  The proposed revisions are not binding on Liberty Mutual (or the other insurers) and Liberty Mutual reserves the right to propose additional revisions to the Plan and to edit, revise, add to and/or delete from the proposed revisions attached hereto.  Liberty Mutual reserves all of its rights, remedies, claims and defenses.

[5]     See e.g. In re Combustion Engineering, Inc., 391 F.3d 190, 217-19 (3d Cir. 2004) (recognizing that to comply with insurers' contractual rights, broad insurance neutrality language must be incorporated in the Plan; limited protections are insufficient).

## BACKGROUND

Liberty Mutual issued certain liability insurance policies to one or more Debtors.[6] Coverage under Liberty Mutual's policies is, to the extent available, subject to the terms, conditions, limitations, and exclusions set forth in and/or incorporated into each policy and applicable non-bankruptcy law. Liberty Mutual's policies provide, *inter alia*, that Liberty Mutual may participate in and/or control the administration and defense of claims that it may be asked to pay, participate in negotiations and settlement discussions, consent to settlements which it may be asked to pay, dispute in court any underlying claims it thinks are invalid, and receive the assistance and cooperation of Debtors in the defense and settlement of potentially covered claims. In its present form, the Plan does not expressly protect these contractual obligations.

Moreover, although the Plan requires insurance policies, including those issued by Liberty Mutual, to fund certain Environmental Claims,[7] the Plan does not (i) provide a mechanism to deal with disputed Environmental Claims, (ii) require the Reorganized Debtors to work with Liberty Mutual in claims resolution, or (iii) address how it will be determined which Environmental Claims will be funded by insurance proceeds.

---

[6] *See* Joint Disclosure Statement For the Debtors' Third Amended Joint Plan of Reorganization, Dkt. No. 339, at § VI (c).

[7] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan and related Plan documents.

## ARGUMENT[8]

I. **THE PLAN IMPAIRS LIBERTY MUTUAL'S CONTRACTUAL RIGHTS UNDER STATE LAW AND THEREFORE CANNOT BE CONFIRMED PURSUANT TO SECTION 1129(A)(3) OF THE BANKRUPTCY CODE**

Section 1129(a)(3) of the Bankruptcy Code provides that a bankruptcy court may confirm a plan "only if …[t]he plan has been proposed in good faith and not by any means forbidden by law."[9] The Plan, as drafted, does not satisfy this confirmation requirement because it attempts to retain the benefits of the Liberty Mutual policies without complying with Debtor's corresponding obligations thereunder. In so doing, the Plan violates state law.[10] In addition, for a reorganization plan to be confirmed, it must be imbued with fairness.[11] The Plan does not satisfy this requirement either because it fails to adequately protect insurers' rights. Unless the Plan is modified and becomes insurance neutral, the Plan is not confirmable.

---

[8] Liberty Mutual reserves the right to supplement this objection by identifying and asserting additional arguments in opposition to confirmation of the Plan. Liberty Mutual also reserves the right to join in, and incorporate as its own, any objections to confirmation of the Plan filed by any other person or entity, including those arguments and objections raised by other insurers.

[9] 11 U.S.C. § 1129(a)(3).

[10] It is well-established precedent that the Bankruptcy Code does not expand a debtor's rights under a contract beyond what they were at the commencement of a case. *See, e.g.,* Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir.), *cert. denied,* 469 U.S. 982 (1984). Indeed, a debtor's rights under a contract are "subject to all valid claims, liens and equities." Zartman v. First Nat'l Bank of Waterloo, N.Y., 216 U.S. 134, 135, 30 S. Ct. 368, 369 (1910). *See also* Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 492-93 (3d Cir. 1997) (holding (i) property interests of a bankruptcy estate are "subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law"; (ii) "nonbankruptcy law defines the nature, scope and extent of the property rights that come into the hands of the bankruptcy estate"; and (iii) " the trustee does not have greater rights in the property of the estate than the debtor had before filing for bankruptcy.").

[11] Am. United Mut. Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 146, 61 S. Ct. 157, 162 (1940); *see also* ACandS, Inc., 311 B.R. 36, 43 (Bankr. D. Del. 2004) (rejecting a plan because, *inter alia,* it was not imbued with fairness).

A.    **The Plan impairs Liberty Mutual's right to participate in and/or control the defense and settlement of Environmental Claims and to assert any applicable coverage defenses**

Pre-petition, Liberty Mutual exercised its rights under its policies or applicable non-bankruptcy law to control the defense and settlement of Environmental Claims, to assert coverage defenses, and to fund certain payments. In so doing, Liberty Mutual fulfilled its obligations to Debtors under its policies. As a consequence, Liberty Mutual is entitled to insist on strict compliance by Debtors with all of the terms and conditions of the Liberty Mutual policies. Those rights, however, are impaired by the Plan.

The Plan provides that the funding of Class 9 Environmental Claims "shall be made solely from proceeds of applicable insurance policies" and that all other Environmental Claims will constitute Deficiency Claims, which will be treated as Class 10 General Unsecured Claims.[12] The Plan is silent, however, as to the insurers' participation in the defense of Environmental Claims and whether insurers, including Liberty Mutual, will be involved in the claims resolution process. Furthermore, the Plan does not recognize insurers' right to assert applicable coverage defenses to any claim. The Plan also fails to describe which parties will litigate whether an Environmental Claim is covered by insurance, in which forum such litigation will occur, or which party(ies) will select the forum.

An insurer can avoid or reduce liability under its policies in two ways: first, by avoiding or reducing the imposition of liability on its insured in the first instance by controlling the defense and settlement of claims against the insured; and second, by raising any applicable defenses to coverage after an insured's liability has been determined and the insurer is asked to

---

[12]    *See* Plan § 4.4.

pay the claim.  If there are no applicable defenses to coverage with respect to a particular claim,

controlling the defense and settlement of claims becomes the only way that an insurer can avoid

payment.

The right to argue, following the liquidation of a claim or upon a final judgment

obtained without Liberty Mutual's involvement, that that claim is not covered under a particular

policy is not coextensive with the right to avoid or limit liability in the first instance.[13]  By failing

to provide the mechanics of how it will be determined whether an Environmental Claim will be

funded by insurance proceeds, the Plan might permit Debtors' liability for Environmental

Claims to be determined without Liberty Mutual's involvement or participation and, perhaps,

without being defended at all, after which such claims will be foisted upon Liberty Mutual.[14]

Accordingly, the Plan cannot be confirmed insofar as it fails to require compliance with Liberty

Mutual's policy rights.

**B.      The Plan does not require the cooperation and assistance of the
         Reorganized Debtors in defending and settling Environmental Claims**

Liberty Mutual's policies contain covenants and restrictions intended to protect

its rights, including the insured's duty to cooperate with Liberty Mutual in connection with the

---

[13]      *See, e.g.*, Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm. (In re Congoleum
Corp.), 321 B.R. 147, 159 (D.N.J. 2005) ("Appellants' arguments that 'the Plan does nothing to
directly affect the liability of the Debtors' insurers' and that the 'insurers are peripheral parties
because insurance coverage issues will be resolved in another case and another forum,' however, are
conclusory and fail to address the [ ] reasons why the Plan does, directly and indirectly, affect the
Insurers' interests in ways that are not coextensive with their ability to participate in coverage
litigation").

[14]      Liberty Mutual's rights are further impaired by the Plan insofar as it requires Liberty Mutual
to expend significant legal fees and expenses as a result of repeatedly being sued by, and litigating
with, holders of liquidated Environmental Claims over the scope and extent of coverage available
under the Liberty Mutual policies for a particular claim.  Outside bankruptcy, Liberty Mutual could
resolve its contractual disputes directly with Debtors, the other party to the insurance contracts.

- 6 -

defense and settlement of claims for which the insured seeks coverage under the policies.

Duties of assistance and cooperation include, without limitation, (i) attending depositions and

other claim-related proceedings such as pretrial conferences, hearings, and trials, (ii) providing

information relevant to a claim and making reasonable attempts to obtain the cooperation of

employees and others with knowledge of facts concerning the claim,  and (iii) signing required

documents, such as interrogatory answers, affidavits, or settlement agreements.[15]

      The Plan does not recognize the duty to cooperate, let alone ensure that it will be

honored.  The Plan also fails to address whether any party (and which party) will continue to

cooperate with Liberty Mutual in the defense and settlement of claims.  Again, Liberty Mutual's

policies embody state law-created contract rights.  Confirming the Plan, as currently drafted,

would violate state law governing the rights and obligations of parties to a valid and legally

enforceable contract.  Moreover, the Plan's attempt to procure the benefits of Liberty Mutual's

policies without complying with Debtors' corresponding obligations thereunder is contrary to

well-established precedent that the Bankruptcy Code does not expand a debtor's rights under a

contract beyond what they were at the commencement of a case.[16]

## II.   DEBTORS MAY NOT ASSUME THE RIGHTS AND BENEFITS OF THE POLICIES WITHOUT ALSO ASSUMING THE CORRESPONDING OBLIGATIONS AND RESPONSIBILITIES UNDER THE POLICIES

      Under the Plan, the Reorganized Debtors will assume all insurance policies which

allegedly provide coverage for Environmental Claims.[17]  It is well-settled that an executory

---

[15]    Jeffrey W. Stempel, STEMPEL ON INSURANCE CONTRACTS § 9.02[A] (3d ed. 2007 supp.); 14 COUCH on Ins.§ 199:30 (2003).

[16]    *See, e.g.*, Integrated Solutions, 124 F.3d at 492-92; Moody, 734 F.2d at 1213.

[17]    *See* Plan § 8.3.

contract must be assumed in its entirety under Section 365(b).[18] Although counsel for Debtors

have indicated via telephone that Debtors do not intend to violate this principle, the Plan is

silent regarding whether the Reorganized Debtors will be bound by the obligations of the

insurance policies.

   To the extent the Plan does not require Debtors to satisfy the requirements of

Section 365(b) with respect to the assumption of insurance policies, the Plan improperly

attempts to modify the policies.[19] An insurance contract cannot be modified without the

consent of all parties.[20] Similarly, Debtors "cannot unilaterally impose coverage terms on [the

insurers] . . . ."[21] The Plan should be modified to make it clear that the Reorganized Debtors

shall be required to comply with the terms of Liberty Mutual's policies.

**III. THE PLAN CANNOT BE CONFIRMED BECAUSE IT IMPAIRS INSURERS' RIGHTS AND BREACHES THE POLICIES, THEREBY VOIDING ANY OTHERWISE AVAILABLE COVERAGE**

   The Plan relies on the proceeds of applicable insurance policies to fund any

---

[18] *See e.g.,* In re CellNet Data Systems, Inc., 327 F.3d 242, 247 (3rd. Cir. 2003) ("Under the Bankruptcy Code, a trustee may elect to reject or assume its obligations under an executory contract. This election is an all-or-nothing proposition – either the whole contract is assumed or the entire contract is rejected"); *see also* Cinicola v. Scharffenberger, 248 F.3d 110, 119 (3rd Cir. 2001) ("If the trustee meets the assumption requirements under § 365, it must assume the executory contract entirely").

[19] In such event, the Plan is not confirmable under Section 1129(a)(1) because it does not comply with Section 365. 11 U.S.C. § 1129(a)(1) (to be confirmable a plan must comply with the applicable provisions of the Bankruptcy Code).

[20] *See, e.g.,* J.M.P.H. Wetherell v. Sentry Reinsurance, Inc., 743 F. Supp. 1157, 1170 (E.D. Pa. 1990).

[21] Certain Underwriters at Lloyd's, London v. McDermott Int'l, Inc., 2002 U.S. Dist. LEXIS 874, *32 (E.D. La. 2002); Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.), 97 B.R. 220, 221 and 225-26 ("we do not believe that our equitable powers, under sec. 105(a) or otherwise, can stretch so far as to alter contractual rights established under state law in a manner not expressly authorized by the Bankruptcy Code") (relying on Southern Ry. V. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985)).

distributions to Class 9 Environmental Claims.[22]  However, as explained above, the Plan, as

drafted, impairs insurers' rights and provides for inadequate treatment of the insurance policies,

which would breach the policies and violate applicable non-bankruptcy law.  As a result, any

otherwise available coverage for Environmental Claims would be vitiated by the Plan.[23]

Unless the Plan is modified to protect any available insurance coverage, the Plan

eviscerates the source of funding for an entire class of claims, which causes the Plan to fail to

satisfy several confirmation requirements.  First, the Plan is not feasible as required by Section

1129(a)(11) because the proposed funding for an entire class of claims is speculative and

illusory.[24]  Second, the Plan is not in the best interests of creditors as required by Section

1129(a)(7).[25]  Third, by breaching the policies and violating the insurers' rights, the Plan causes a

default that results in inadequate means for implementing the plan.[26]  As a result, the Plan is not

confirmable because it does not comply with other applicable provisions of the Bankruptcy

---

[22]    *See* Plan § 4.4 (funding of Class 9 Environmental Claims "shall be made solely from proceeds of applicable insurance policies").

[23]    *See, e.g.*, 14 Couch on Ins. § 199:13 (2003) ("As a general rule, an insured's breach of a cooperation clause precludes coverage and releases the insurer from its responsibilities").

[24]    "'The purposes of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.'"  Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.), 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy ¶ 1129-02[11] at 1129-34 (15th ed. 1984)).  "The debtor must offer more than speculation about the source of funding for the plan."  Crestar Bank v. Walker (In re Walker), 165 B.R. 994 (E.D. Va. 1994) (quoting In re Briscoe Enters., Ltd., 138 B.R. 795, 807 (N.D. Tex. 1992)).

[25]    In a liquidation, a Chapter 7 trustee presumably would take steps to preserve any available insurance coverage.

[26]    *See* 11 U.S.C. § 1123(a)(5) (requiring a plan to provide adequate means for the plan's implementation, including curing any default).  "The absence of an adequate means of implementation demonstrates a lack of good faith under section 1129(a)(3), thereby precluding confirmation of the plan of reorganization."  7 Collier on Bankr. ¶ 1123.01[5] at 1123-11 (15th ed. rev. 2005) (citing Crestar Bank v. Walker (In re Walker), 165 B.R. 994 (E.D. Va. 1994)).

Code as required by Section 1129(a)(1).[27]

## IV.    Liberty Mutual has proposed revisions to the Plan

Liberty Mutual is not trying to be a spoiler.  It proposed the attached language to Debtors to resolve the Plan's deficiencies.  If such language or similar language is incorporated into the Plan, the revised Plan would comply with Debtors' contractual obligations under the policies and satisfy the requirements of Sections 365 and 1129.  Without such language, however, the Plan is not confirmable because it is not insurance neutral and it is not imbued with fairness with respect to its treatment of insurers' rights.[28]  The Plan's failure to require compliance with Debtors' obligations under Liberty Mutual's policies expressly breaches the terms of the Liberty Mutual policies, which embody state-law created contract rights. Consequently, confirming the Plan without the additional neutrality language would violate state law governing the rights and obligations of parties to a valid and legally enforceable contract.

---

[27]     In addition to failing to satisfy Section 1123(a)(5), as indicated above, the Plan also fails to satisfy Section 365 of the Bankruptcy Code.

[28]     *See* Combustion Engineering, 391 F.3d at 217-19 (requiring broad insurance neutrality provisions); and ACandS, 311 B.R. at 43 (rejecting a plan found not to be imbued with fairness).

- 10 -

## CONCLUSION

Liberty Mutual's proposed revisions to the Plan should be incorporated into the Plan. Otherwise, the Plan is not confirmable and confirmation of the Plan as it is currently drafted should be denied.

[signature page follows]

Respectfully submitted,

Dated:  July 2, 2008

BY

John C. Sullivan
POST & SCHELL, P.C.
Four Penn Center – 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA  19103
Phone:  (215) 587-1000

Mark D. Plevin
Matthew W. Cheney
Kelly R. Cusick
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
Phone:  (202) 624-2500

Attorneys for Liberty Mutual
Insurance Company and Wausau
Underwriters Insurance
Company



**POST & SCHELL** PC
ATTORNEYS AT LAW

U.S. BANKRUPTCY COURT
FILED
CAMDEN, NJ

08 JUL -2 PM 3: 14

JAMES J. WALDRON

BY:_____
DEPUTY CLERK

Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
215-587-1000 Main
215-587-1444 Fax
www.postschell.com

_____

John C. Sullivan

jsullivan@postschell.com
215-587-1487 Direct
215-320-4773 Fax
File No. 137205

July 2, 2008

<u>VIA HAND DELIVERY</u>

Office of the Clerk
U.S. Bankruptcy Court for the District of New Jersey
U.S. Post Office and Courthouse
401 Market Street - Second Floor
Camden, NJ 08101

**RE:**   **In re: Shapes/Arch Holdings, L.L.C., et al.**
         **Chapter 11, Case No. 08-14631 (GMB), Hon. Gloria M. Burns**

Dear Sir/Madam:

Enclosed please find the original and one copy of the Objections by Liberty Mutual Insurance Company and Wausau Underwriters Insurance Company to Debtors' Third Amended Joint Chapter 11 Plan of Reorganization, a Certificate of Non-Compliance Regarding CM/ECF Filing and a CD containing same in PDF format. Please file the original and return a time-stamped copy of same to the undersigned in the enclosed, self-addressed, stamped envelope.

Thank you for your attention to this matter.

Very truly yours,

John C. Sullivan
JCS/rlb
Enclosures
cc:   Mark E. Felger, Esquire
      Jerrold N. Poslusny, Jr., Esquire
      Nancy A. Mitchell, Esquire
      Alan J. Brody, Esquire
      Alan Halperin, Esquire
      Michael D. Sirota, Esquire
      Paul A. Patterson, Esquire
      Donald F. MacMaster

ALLENTOWN   HARRISBURG   LANCASTER   PHILADELPHIA   PITTSBURGH   PRINCETON   WASHINGTON, D.C.
A PENNSYLVANIA PROFESSIONAL CORPORATION