MARK E. FELGER (MF9985)
JERROLD N. POSLUSNY, JR. (JP7140)
COZEN O'CONNOR
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Attorneys for the Debtors

| | |
|---|---|
| In re:<br>SHAPES/ARCH HOLDINGS L.L.C., et al.,<br>Debtors. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>CHAPTER 11<br>CASE NO. 08-14631 (GMB) |

## DECLARATION OF STEVEN GRABELL IN SUPPORT OF CONFIRMATION OF THE DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION

State of New Jersey    )
                       ) SS
County of Camden       )

Steven Grabell, being duly sworn, hereby declares and certifies under penalty of perjury:

1. I am the Chief Executive Officer ("CEO") of Shapes/Arch Holdings L.L.C.[1] and Shapes, and Vice President of Delair, Accu-Weld and Ultra. I am authorized to make this certification on behalf all of the debtor entities (collectively the "Debtors").

2. I have been the CEO of Shapes/Arch and Shapes for over seven years.

3. This certification is made in support of confirmation of the Debtors' Third Amended Joint Plan of Reorganization (as may be amended or modified, the "Plan").[2] I

---

[1] In addition to Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), the following entities, all of which are wholly owned subsidiaries of Shapes/Arch, also filed petitions on the Petition Date (defined below): Shapes L.L.C. ("Shapes"); Delair L.L.C. ("Delair"); Accu-Weld L.L.C. ("Accu-Weld"); and Ultra L.L.C. ("Ultra").

CHERRY_HILL\449377\5

participated in the negotiation and preparation of the Plan and Disclosure Statement and have reviewed the Plan and Disclosure Statement prior to making this Declaration. Therefore, I am fully familiar with both documents. Except as otherwise indicated, all of the facts set forth herein are based upon my personal experience and knowledge of the Debtors' operations. If I were called to testify, I could and would testify to the facts set forth herein.

## Background

4. On March 16, 2008 (the "Petition Date"), the Debtors filed their respective petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

5. These cases are being jointly administered pursuant to this Court's Order of March 18, 2008 under the lead debtor "Shapes/Arch Holdings L.L.C."

6. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

7. No trustee or examiner has been appointed in these cases.

8. An official committee of unsecured creditors (the "Committee") was appointed on March 31, 2008, and has been active in these cases since that time.

9. Shapes/Arch is a holding company that owns each of the four operating companies - Shapes, Delair, Accu-Weld and Ultra.

10. Shapes is the largest operating Debtor with 2007 revenue over $179 million and approximately 600 employees. Shapes is a leading producer of custom aluminum extrusions for

---

[2] Unless otherwise defined herein, all capitalized terms shall have the same meanings ascribed to them in the Plan.

CHERRY_HILL\449377\5

2

a variety of industries, including road and rail transportation and commercial and residential construction.

11. Delair manufactures maintenance free aluminum fence systems for residential and commercial use, and manufactures America's most recognized brand of above-ground pools. Both product lines are sold through dealers, distributors and major retailers throughout the United States. Delair operates from a 350,000 square foot facility adjacent to Shapes in Delair, New Jersey. Delair's proximity to Shapes provides a competitive advantage because Delair purchases approximately 70% of its product line from Shapes.

12. Accu-Weld is a vertically integrated manufacturer of made-to-order vinyl replacement windows and steel doors. Accu-Weld's products are sold to installers, dealers and home improvement retailers throughout the Northeastern, Mid-Atlantic and Midwestern United States. Accu-Weld operates out of a 100,000 square foot facility in Bensalem, Pennsylvania.

13. Ultra is one of the leading suppliers of value branded hardware products in the United States, including locksets, door and window hardware and other decorative hardware. Ultra has over 8,000 products sourced primarily from China. Ultra's products are sold to home improvement and hardware retailers, hardware cooperatives and distributors, home builders and window and door manufacturers. Ultra operates from a 75,000 square foot distribution facility in Pennsauken, New Jersey, with two million cubic feet of storage space.

14. Pursuant to an order of the Court, May 15, 2008, was established as the last date for filing pre-petition claims against the Debtors.

15. Pursuant to a separate order of the Court, June 30, 2008 was established as the last date for filing administrative claims that accrued prior to June 15, 2008.

## Disclosure Statement and Voting Procedures

16. On May 23, 2008, the Court approved the Disclosure Statement and scheduled deadlines for the Debtors to serve the Disclosure Statement and Plan upon all parties; for parties to vote on the Plan; and for parties to file objections to the plan (the "Disclosure Statement Order").

17. The Disclosure Statement Order also scheduled a confirmation hearing for July 8, 2008 at 10:00 a.m.(which hearing has been adjourned to July 15, 2008 at 1:00 p.m.); the deadline for parties to cast ballots; and the deadline for parties to file objections to confirmation.

18. As further set forth in the Declaration of Daniel C. McElhinney (the "McElhinney Declaration") of Epiq Bankruptcy Solutions, LLC ("Epiq"), the Debtors' Court-approved claims and balloting agent, notice of the Confirmation Hearing and the other deadlines was served on all parties in interest (several thousand entities) as required in the Disclosure Statement Order.

19. In addition to mailing notice of the Confirmation Hearing and various deadlines, the Disclosure Statement Order required the Debtors to publish notice of the Confirmation Hearing (the "Publication Notice") in The Philadelphia Inquirer, The Courier Post, and the The Wall Street Journal (Global Circulation), at the earliest practicable time. The Debtors' counsel has filed a certification that the Publication Notice was published in the above newspapers on June 2, June 3 and June 3, respectively.

20. Moreover, as set forth in the McElhinney Declaration, copies of the Disclosure Statement were sent to all creditors along with a ballot(s) in the appropriate class(es) for creditors to cast their vote(s) to accept or reject the Plan.

21. The McElhinney Declaration sets forth Epiq's methods for receiving, recording and tabulating votes. Based upon discussions with counsel, I understand that Epiq's procedures were appropriate and reasonable.

**Confirmation Requirements**

22. The Plan is dated and identifies the Debtors as the proponents.

23. Articles II, III, and IV of the Plan set forth the method of classification of claims, the treatment of unimpaired classes, and the treatment of impaired classes under the Plan. The Plan places similarly situated Claims and Interests in the same classes and provides for the same treatment for each Claim or Interest within a particular class with the exception of the Environmental Protection Agency and the New Jersey Department of Environmental Protection in Class 9.

24. Article V of the Plan provides for the means for implementation of the Plan, including: (a) funding from Arch Acquisition; (b) distribution mechanisms and procedures; (c) provisions for the assumption or rejection of executory contracts and unexpired leases; (d) appointment of the Class 10 Liquidation Trustee to make distributions, object to Claims, pursue Avoidance Actions and other litigation for the benefit of Class 10 Creditors; and (e) the post-confirmation retention of jurisdiction by this Court as necessary in connection with the implementation and consummation of the Plan. I believe, after consultation with bankruptcy counsel, that the means of implementation contained in the Plan is reasonable, and will enable the Reorganized Debtors and the Class 10 Liquidation Trustee to satisfy their obligations under the Plan.

25. After consultation with bankruptcy counsel, I believe that the Plan, and the Debtors as proponents of the Plan, have complied with the requirements of the Bankruptcy Code.

26. The Plan was proposed in good faith and not by any means forbidden by law. The Plan was proposed after substantial arm's length negotiations between and among the Debtors, Arch Acquisition, CIT, and the Committee. The Plan provides for the issuance of new membership interests in Shapes/Arch to Arch Acquisition in exchange for Arch Acquisition's $90 million Plan Funding Commitment, including the $30 million Exit Facility. The Plan was subject to higher and better bids under a Court approved competitive process, and although numerous parties conducted due diligence, no competing bids were submitted.

27. All agreements by the Debtors to retain Professionals to provide services to the Debtors in or in connection with the Chapter 11 Cases have been disclosed to the Court in applications to retain those Professionals. Pursuant to the Plan, the Court will retain jurisdiction to hear and determine all Fee Claims.

28. The Debtors have included a Schedule as an Exhibit to the Plan Supplement that identifies the individuals that will serve as managers or officers after confirmation of the Plan. I am not aware of any decision by Arch Acquisition, as the owner of the Reorganized Debtors from and after the Effective Date, to compensate any manager or officer at a level that is different from their current compensation level. As set forth in the Plan and Disclosure Statement, Arch Acquisition has agreed to pay up to $250,000 in the aggregate in management bonuses to certain critical (non-owner) employees after the Effective Date.

29. There are no governmental regulatory commissions with jurisdiction over the rates charged by the Debtors after confirmation.

30. As indicated in the McElhinney Declaration, impaired Classes 5, 6, and 10 voted in favor of confirmation of the Plan. The only impaired Classes to not vote in favor of the Plan are Classes 7 and 9. No conforming ballots were cast in Class 9. One vote was cast in Class 7

rejecting the Plan. After consultation with counsel, I understand that the rejecting ballot in Class 7 will be withdrawn.

31. The remaining Classes are either not impaired by (Classes 1 through 4, 8 and 12), or are deemed to reject (Class 11), the Plan.

32. With regard to Class 7, the Plan provides that each holder of a Claim in this Class will receive or retain on account of its Claim, property of a value as of the Effective Date of the Plan, equal to the allowed amount of its Claim.

33. With regard to Class 9, the membership interest of the owner of the Debtors, Ben LLC, is being cancelled and, as such, Ben LLC is not receiving or retaining any property on account of such interest.

34. The Debtors may owe fees to the United States Trustee under 28 U.S.C. § 1930. Pursuant to the Plan, those fees will be paid as and when due. The Debtors' projections show that the Debtors or the Reorganized Debtors, as the case may be, will have sufficient funds to pay those fees in full.

35. After consultation with bankruptcy counsel, I am not aware of any obligation to pay any "retiree benefits," as that term is defined in Section 1114 of the Bankruptcy Code. In the event that any of the Debtors' should have an obligation to pay "retiree benefits" as of the confirmation date, the Plan will not cause the termination of such "retiree benefits."

36. Based on all of the facts set forth in this declaration and after consultation with bankruptcy counsel, I believe that the Plan satisfies the requirements for confirmation of a plan as set forth in the Bankruptcy Code. Therefore, I respectfully request that the Court confirm the Plan.

I hereby declare under penalty of perjury this ___ day of July 2008 , that the foregoing is true and correct to the best of my knowledge, information and belief.

_____
Steven Grabell

Sworn and Subscribed to
before me this  14
day of July 2008.

_____
DEBBIE REYES
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires August 5, 2009

8

CHERRY_HILL\449377\5