**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Attorneys for the Debtors

| | |
|---|---|
| In re: | : UNITED STATES BANKRUPTCY COURT |
| SHAPES/ARCH HOLDINGS L.L.C., et al., | : FOR THE DISTRICT OF NEW JERSEY |
| | : CHAPTER 11 |
| | : |
| Debtors. | : CASE NO. 08-14631 (GMB) |

**MODIFICATION TO THE DEBTORS'**
**THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

The above-captioned Debtors hereby modify their Third Amended Plan of Reorganization as follows:

1.  Section 1.43 is hereby modified as follows:

    "**Debtors**" shall mean Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C. through the Effective Date.

2.  Section 1.45 is hereby modified as follows:

    "**Deficiency Claim**" shall mean, with respect to (a) a pre-petition Claim that is partially secured, the amount by which the Allowed amount of such Claim exceeds the value of the property owned or held by the Debtors (or a secured creditor) that collateralizes the Claim, and (b) an Environmental Claim ~~that is partially covered by insurance or not covered by insurance~~, the amount by which the Allowed amount of such Claim exceeds the amount of ~~the available insurance coverage, as and to the extent such may be determined by the Bankruptcy Court.~~ any payment made to the Creditor from the proceeds of applicable insurance policies with respect to such Claim.

3.  Section 1.56 is hereby modified as follows:

    "**Environmental Claim**" shall mean any and all ~~claims~~ Claims of any entity, party or person in any way based upon, resulting from or related to environmental conditions, law, rules, regulations or other matters or impacts to or contamination of environmental media

(including groundwater, soil or air), the presence, release or threatened release or migration of or exposure to hazardous materials, substances or wastes, property damage, bodily injury and personal injury including, without limitation, all ~~claims~~Claims of the United States Environmental Protection Agency ("EPA") ~~under any 106 orders or otherwise~~, all ~~claims~~ Claims of the New Jersey Department of Environmental Protection ("NJDEP") or any other person identified on Schedule 4.4 hereof and all other ~~claims~~Claims identified on Schedule 4.4 hereof (including, without limitation, ~~claims~~Claims with respect to studies, testing or investigatory costs, public or private oversight, operation, maintenance or monitoring costs, cleanup costs, response costs, removal costs, remediation costs, containment costs, restoration costs, corrective action costs, closure costs, reclamation costs, natural resource damages, assessment or restoration costs, property damages, business losses, personal injuries, penalties or fines) and any other ~~claims~~Claims for fines, penalties ~~liability~~, damages, losses, liabilities, obligations, judgments, assessments, costs, expenses, contribution or indemnity on account of any of the foregoing ~~claims, that may be, have been or could have been asserted against the Debtors~~Claims.

  4.  Section 3.5 is hereby modified as follows:

    <u>Class 2 Secured Real Estate Claims</u>.  This Class shall consist of the holders of Allowed ~~Secured Real Estate tax claims~~ Claims for real estate taxes and sewer charges relating to the Delair Real Estate, Accu-Weld Real Estate, Shapes Real Estate and Ultra Real Estate.  Each holder shall be deemed to be a separate subclass.  Each member of the subclass shall have an ~~allowed secured claim~~ Allowed Secured Claim in the amount of real estate taxes and sewer charges due and owing as of the Petition Date (including any interest due and owing but excluding any late charges or penalties in the amount as set forth in the Debtors' Schedules and Statement of Financial Affairs), provided, however, that the aggregate amount of the ~~Secured Real Estate tax claims~~ Allowed Class 2 Claims are not in excess of one million one hundred eleven thousand eight hundred seventy nine dollars eighty two cents ($1,111,879.82).  At the option of the Plan Funder, upon the Effective Date, either (i) holders of Class 2 Claims shall be paid in full, in Cash, or (ii) the collateral securing such Allowed Secured ~~Real Estate~~ Claim shall be turned over to the holder of such Claim.  The holders of Claims in Class 2 are not Impaired and, therefore, not entitled to vote.

  5.  Section 4.3 is hereby modified as follows:

    <u>Class 7 Collateralized Insurance Program Claims.</u>  This Class shall consist of the Allowed Secured Claims of those entities holding cash deposits or letters of credit which are acting as collateral security for the workers' compensation insurance policies of the Debtors, each such Claim shall be deemed a separate subclass.  Each holder of a Class 7 Claim shall retain on account of its Allowed Secured Claim the cash deposit or Letter of Credit securing the same; provided, however, that such entities shall, ~~on~~ as soon as practicable after the Effective Date, return to the Reorganized Debtors all collateral being held in excess of its Allowed Secured Claims ~~(~~as determined by agreement of the parties and with the consent of Arch Acquisition, or further Order of the Bankruptcy Court in the event the Debtors or holders of such claims request an estimation of any holders' claims under section 502(c) of the Bankruptcy Code~~)~~.  The holders of Claims in this Class are Impaired and, therefore, entitled to vote.

6. Section 4.4 is hereby modified as follows:

To the extent there are any Allowed Environmental Claims remaining after the consummation of the Debtors' settlements with the EPA, the NJDEP and the Pollution Control Financing Authority of Camden County and the Pennsauken Solid Waste Management Authority, Township of Pennsauken (the "Pennsauken Landfill Plaintiffs"), this Class shall consist of all Environmental Claims, exclusive of Deficiency Claims. Any Deficiency Claims relating to Environmental Claims shall be treated as General Unsecured Class 10 Claims, unless, after notice and hearing, they are entitled to administrative expense priority under Section 503(b) of the Bankruptcy Code.

The holders of Claims in this Class are Impaired and are, therefore, entitled to vote. Funding for distributions to holders of Environmental Claims identified on Schedule 4.4, including, without limitation, the Environmental Claims of the EPA, NJDEP and Pennsauken Landfill Plaintiffs described in the next paragraphs, exclusive of Deficiency Claims, shall be made solely from proceeds of applicable insurance policies. Any right to recover or pursue recovery on an Environmental Claim from proceeds of applicable insurance policies, other than those Environmental Claims that are settled as described hereinbelow, shall be subject to all coverage and other defenses, available at law or in equity asserted by the Debtors' insurers. The insurers shall have complete and exclusive authority to determine, on behalf of the Debtors or Reorganized Debtors, upon notice and opportunity to be heard, the court in which the Debtors or Reorganized Debtors will seek to have any Environmental Claim litigated. Any payments by insurers on account of Environmental Claims shall be made (i) in connection with any settlement of an Environmental Claim at such time and in such manner as agreed to among the settling parties and their insurers or (ii) at such time and in such manner as is ordered by the court with jurisdiction over the Environmental Claim and in which the merits of such Environmental Claim has been litigated. To the extent applicable, and except with respect to the settlements set forth hereinbelow, the amount payable on an Environmental Claim shall be reduced by the amount of any deductible, self-insured retention, retrospective premium, or similar contractual undertaking that any of the Debtors or the Reorganized Debtors would be obligated to pay under the pertinent policy(ies) and policy-related contracts and applicable non-bankruptcy law, but for applicable bankruptcy law. In no event shall any insurer be obligated to pay more on any Environmental Claim than would otherwise be required under the pertinent policy(ies).

The EPA or its designees shall receive a total of Eight Hundred Eleven Thousand Nine Hundred Twenty Four Dollars ($811,924) in full and complete satisfaction of its Claims under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §9601 et. seq., set forth in Sections I and II of Schedule 4.4 attached hereto except with respect to the Pucheck Wellfield Superfund site (the "EPA Actions"), which amount shall be allocated amongst some or all of the Superfund sites identified in Sections I and II of Schedule 4.4 in accordance with the settlement agreement expected to be entered into by EPA and the Debtors. Payment of the $811,924 shall be made on the later of (a) the Effective Date, and (b) thirty (30) days after the Court's approval of the settlement agreement from the proceeds of applicable insurance policies. Nothing in this Plan shall discharge or enjoin any liability of the Debtors, or Reorganized Debtors, as the case may be, to the EPA arising after the Effective Date or that is not a claim within the meaning of Section 101(5) of the Bankruptcy Code. Nothing in this Plan shall discharge or enjoin any liability to the EPA under applicable environmental laws that any

Reorganized Debtor or other Person or Entity may have as the owner or operator of real property on or after the Effective Date. If the settlement with the EPA is not consummated, any claim held by the EPA shall be determined and treated as a Class 9 Claim with any deficiency treated as a Deficiency Claim, unless, after notice and hearing, such Claim is entitled to administrative expense priority under Section 503(b) of the Bankruptcy Code. With respect to the Puchack Wellfield Superfund site, the EPA is treating this site as a discharged site and covenanting to sue the Debtors with respect to this site, but the EPA is not providing contribution protection with respect to this site.

The NJDEP shall receive the sum of fifty thousand dollars ($50,000) in full and complete satisfaction of any and all claims related to sites set forth in Sections I, II, and IV of Schedule 4.4 attached hereto, except the sites identified as Berks Associates and 9000 River Road (collectively, the "NJDEP Actions" and together with the EPA Actions, the "Government Actions"), which amount the NJDEP shall allocate accordingly in accordance with the Consent Decree entered into by NJDEP and the Debtors. Payment of the $50,000 shall be made from the proceeds of applicable insurance policies on the later of (a) the Effective Date, and (b) thirty (30) days after the Court's approval of the Consent Decree. With respect to the site identified as 9000 River Road, (i) the Debtors and the Reorganized Debtors shall continue to perform their obligations under the Memorandum of Agreement with NJDEP dated July 1, 1993, as amended (the "MOA"), with funding for the Debtors' performance under the MOA provided by the Debtors' insurers to the extent of policy limits under applicable insurance policies, and (ii) the NJDEP's claim for natural resources damages as set forth in its proof of claim shall be treated in accordance with the Consent Decree and this section 4.4 of the Plan.

The Pennsauken Landfill Plaintiffs shall receive the sum of Four Hundred Fifty Thousand Dollars ($450,000) and the Debtors shall address hexavalent chromium issues with respect to Pennsauken Landfill MW6 in full and complete satisfaction of the Pennsauken Landfill Plaintiffs' Claims against the Debtors, including all Claims raised in the litigation referenced on page 24 of the Disclosure Statement (the "Pennsauken Litigation"). The Pennsauken Landfill Plaintiffs shall provide the Debtors with contribution protection, defense and indemnification for all Claims brought against the Debtors in the Pennsauken Litigation, and shall indemnify, defend and release the Debtors from any contribution or other Claims based on allegations that the Debtors' waste or other materials were deposited or disposed of at or transported to the Pennsauken Landfill or that the Pennsauken Landfill or its contents contaminated the Puchack Wellfield Superfund site. The Pennsauken Landfill Plaintiffs shall, among other things, reduce, offset, eliminate, abandon or forego whatever verdict, recovery, allocation or any assignment or judgment of liability it receives in the Pennsauken Litigation, however measured, that is attributable, allocated, assigned and/or adjudged to the Debtors which could be used in any way to support any claims, third-party claims or cross-claims for claims for contribution and indemnification against the Debtors from any other entity whatsoever and/or past, present or future party to the Pennsauken Litigation, all as more fully set forth in the settlement agreement executed by the Pennsauken Landfill Plaintiffs and the Debtors. Payment of the $450,000 shall be made from the proceeds of applicable insurance policies on the later of (a) the Effective Date, and (b) thirty (30) days after Court approval of the settlement agreement.

In exchange for, and expressly conditioned upon, the payments by the Debtors' insurers as set forth above in connection with the settlements of the Environmental Claims held by the

EPA, the NJDEP, and the Pennsauken Landfill Plaintiffs, including, without limitation, funding the Debtors' obligations under the MOA to the extent of policy limits under applicable insurance policies, the Debtors shall release and forever discharge the insurers from (i) any insurance claim arising from the Environmental Claims which are expressly released in the settlement agreement with the EPA, the Consent Decree with the NJDEP and the settlement agreement and general liability release with the Pennsauken Landfill Plaintiffs, and (ii) any and all claims, actions, causes of action, rights, liabilities, obligations, and demands of every kind and nature for damages of any kind including punitive, or other legal, statutory, or equitable relief arising out of any acts or omissions related to the insurers' handling or investigation of such settled Claims, including, but not limited to, acts or omissions allegedly related to unfair defense or settlement practices, breach of fiduciary duty, fraud, bad faith, breach of contract, breach of duty, malicious prosecution, sanctions, insurance or other statutory or regulatory violation, or punitive or exemplary, consequential or extra-contractual damages of any type for the handling of such settled Claims.  To the extent that any Claim against the Debtors or their successors is not released in the foregoing agreements, whether it be environmental or not, such Claim is expressly excluded from the foregoing release contained in clause (i) above.  The release of the insurers is expressly limited to the extent of the Debtors' release from liability set forth in the settlement agreements and Consent Decree identified in this paragraph.  The Debtors' release is expressly subject to the mutual release of the Debtors by the insurers from any and all claims and causes any of the insurers may have against any of the Debtors relating to the settled Claims.

Notwithstanding anything else to the contrary in the Plan, the Disclosure Statement, any Plan-related document, the Confirmation Order and/or any findings of fact or conclusions of law with respect to the Confirmation of the Plan, each and every Person (including, but not limited to, all other defendants in any suit, litigation or other proceeding related to the Government Actions or the Pennsauken Litigation) is hereby permanently enjoined, barred and restrained from instituting, prosecuting or litigating in any manner any claim or action for contribution against the Debtors and the Reorganized Debtors, together with such parties' successors, assigns and insurers, based upon liability or responsibility, or asserted or potential liability or responsibility, either directly or indirectly of the Debtors or Reorganized Debtors arising from or related to the Claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the Government Actions or the Pennsauken Litigation, or any other action brought or that might be brought by, through, on behalf of, for the benefit of the EPA, the NJDEP, the Pennsauken Landfill Plaintiffs or any of them (whether arising under federal law, state or foreign law, and regardless of where asserted) relating to the Government Actions or the Pennsauken Litigation.  Any Person so enjoined, barred and restrained is hereby entitled to a settlement and/or judgment credit in accordance with any applicable statutory or common law rule.  This provision shall not be considered, or be deemed in any way, to be a determination or concession by the EPA, the NJDEP or the Pennsauken Landfill Plaintiffs as to whether any defendants or potentially responsible parties, other than the Debtors or the Reorganized Debtors, are subject to joint and several liability in the Government Actions or the Pennsauken Litigation, as to which law is applicable in any manner in the Government Actions or the Pennsauken Litigation, or as to whether any particular loss allocation or comparative responsibility statute or common law rule is applicable in any manner in the Government Actions or the Pennsauken Litigation.  Nothing contained herein shall limit the rights of any remaining defendants or potentially responsible parties to obtain discovery from the Debtors or the Reorganized Debtors (except in the Pennsauken Litigation), develop evidence in discovery

(except in the Pennsauken Litigation) and/or present evidence or arguments at trial to support a judgment reduction credit that reflects a proportionate share of responsibility, if any, allocable to the Debtors or the Reorganized Debtors (subject to the EPA's right to argue that any credit is limited to the amount actually paid under applicable law and recognizing that the Debtors and the Reorganized Debtors have no obligation to pay anything in excess of the amounts set forth in the settlements referenced hereinabove).  This Plan also shall not otherwise limit the rights of any remaining defendant or potentially responsible party to defend the Government Actions or the Pennsauken Litigation and to assert any substantive or procedural rights provided by applicable law against parties other than the Debtors and the Reorganized Debtors.

       7.       Section 7.4(a) is hereby modified as follows:

       (a)       <u>Reserve for Plan Expenses</u>.  A reserve in an amount equal to the estimated Plan Expenses (the "<u>Plan Expense Reserve</u>"), which upon ~~the closing~~ termination of the ~~Chapter 11 Cases~~ Liquidation Trust, the remainder, if any, will be released and distributed to Reorganized Debtors; other than the initial funding of the Plan Expense Reserve in the amount of two hundred thousand ($200,000.00) (or with respect to legal fees and other professional fees incurred by the Reorganized Debtors at the request of the Plan Funder), the Reorganized Debtors shall have no further liability for such expenses, and

       8.       Section 8.3 is hereby modified as follows:

       <u>Insurance Policies</u>.  Notwithstanding the foregoing, on the Effective Date, all insurance policies (regardless of the inception date of coverage) ~~for~~ providing coverage for claims against any one or more Debtors ~~which provide for any and~~ including, without limitation, all Claims made or occurred arising from or related to any environmental laws of any Federal, State or local governmental entity or any ~~claim~~ Claim asserted by a non-governmental entity for ~~environmental claims~~ Environmental Claims (directly or by way of indemnity and whether under contract or tort law) shall be deemed assumed by the Reorganized Debtors.  Upon assumption of the insurance policies, the Reorganized Debtors (i) shall be bound by all obligations of an insured, whether provided in the policies, applicable law or otherwise, including, but not limited to, the obligations to provide notice and to cooperate with the insurers in the defense and settlement of otherwise covered claims against Debtors, and (ii) shall be entitled to all rights to which the Debtors are entitled under the insurance policies, applicable law or otherwise.  Any motion filed to assume contracts or the Schedule 8.1 shall contain the Cure Claims required to be paid upon assumption and all contracting parties shall have ten (10) days from the filing of the motion to assume, or in the case of policies included on Schedule 8.1, until the Cure Claims Bar Date within which to object to the stated Cure Claims or thereafter be deemed to have waived the right to object to the same.

       9.       Section 9.2(c) is hereby modified as follows:

       (c)       The Confirmation Order shall have become a Final Order; and the Effective Date shall be no later than <u>August 4</u>, 2008; and

10. Section 10.1 is hereby modified as follows:

(a) Claims.  To hear and determine the allowance, extent, classification, or priority of Claims, including Environmental Claims, against the Debtors upon objection, application, motion or complaint filed by the Class 10 Liquidation Trustee, the Reorganized Debtors or any other party in interest (including any insurer), including any and all claims asserted under any Collective Bargaining Agreements, as amended;

(f) Actions.  To hear and determine all applications, motions, adversary proceedings (including any Avoidance Actions and/or Estate Actions), contested matters, actions, and any other litigated matters instituted (either before or after the Effective Date) in the Chapter 11 Cases by or on behalf of the Debtors (including litigation by insurers on behalf of the Debtors, which relate to Environmental Claims) or the Class 10 Liquidation Trustee; provided, however, that (i) nothing in the Plan, the Disclosure Statement, any Plan-related document, the Confirmation Order, and/or any findings of fact or conclusions of law with respect to Confirmation of the Plan shall preclude any insurer from seeking to withdraw the reference or obtain an adjudication by a U.S. District Court of any non-core matters, including but not limited to, issues relating to the existence or extent of insurance coverage, and (ii) any and all rights of insurers are hereby reserved with respect to any Environmental Claims other than such Claims that are expressly settled through the Consent Decrees and settlement agreement referenced in Section 4.4 of this Plan;

11. Section 11.9 is hereby modified as follows:

**Discharge.  Except as otherwise provided for in this Plan, the Confirmation Order, or any other order of the Bankruptcy Court (including, without limitation, the Final DIP Orders), in accordance with section 1141(d) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of all debts, Claims against, Liens on, and Interests in the Debtors, their assets and Property, which debts, Claims, Liens and Interests arose at any time before the ~~entry of the Confirmation Order~~ Effective Date.  The discharge of the Debtors shall be effective as to each Claim and Interest, regardless of whether a proof of Claim or Interest was filed or whether the Claim or Interest was Allowed or whether the holder of the Claim or Interest votes to accept the Plan.  On the Effective Date, as to each and every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting such Claim or Interest against the Debtors or Reorganized Debtors or their assets or properties.**

12. Section 11.10 is hereby modified as follows:

**Confirmation Injunction.** With respect to any Claim against or Interest in any of the Debtors that arose at any time prior to the Effective Date, on **and after the Effective Date, except to enforce the terms and conditions of the Plan before the Bankruptcy Court, or as permitted under the Final DIP Orders and Exit Facility, and except to the extent the holders of Environmental Claims are seeking to recover under any and all applicable insurance policies (and in all cases may not assert any Claims against the Reorganized Debtors but may**, subject to first obtaining relief from the injunction set forth hereinbelow, **name them nominally for purposes of seeking recovery solely against applicable insurance coverage)**, **all Persons or Entities** who have held, hold or may hold any Claim against or Interest in the Debtors are, with respect to any such Claim or Interest, are **permanently enjoined from and after the Effective Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Reorganized Debtors or Class 10 Liquidation Trustee or the Liquidation Trust or any of their properties, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or Entities and all of their respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective** shareholders, **members, managers, general partners, limited partners officers, directors, employees, agents, representatives, attorneys and advisors or consultants or any property of any of the foregoing (collectively, the "Protected Parties"); (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, against any of the Protected Parties of any judgment, award, decree or order; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the Protected Parties; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to any of the Protected Parties; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan. Nothing in this section shall preclude CIT or the CIT Lenders from asserting and enforcing any rights, defenses or claims available to them** under the Plan or otherwise (including, without limitation, Section 3.7 hereof)**, or preclude the Committee or the Class 10 Liquidation Trustee, as applicable, from asserting Avoidance Actions or Estate Actions or continuing to pursue Avoidance Actions or Estate Actions commenced by the Committee prior to its termination under Section 11.19 of the Plan.** In the unlikely event that there are any remaining Environmental Claims after consummation of the settlements with the EPA, the NJDEP and the Pennsauken Landfill Plaintiffs (other than the NJDEP's proof of claim with respect to the 9000 River Road site) or in the event that any of the contemplated settlements with the EPA, the NJDEP or the Pennsauken Landfill Plaintiffs are not consummated, any and each holder of such Environmental Claim is stayed from commencing or continuing any action or proceeding with respect to a Claim in a forum other than the Bankruptcy Court. However, after the passage of ninety (90) days from and after the Effective Date, any holder of an Environmental Claim may file a motion with the Bankruptcy Court seeking to commence or continue any action or proceeding in a forum

**other than the Bankruptcy Court with respect to a Claim to recover solely under any and all applicable insurance policies.**

      13.     Section 11.11 is hereby modified as follows:

         <u>Preservation of Insurance</u>.  ~~This~~ **The Plan, the Disclosure Statement, any Plan-related document, the Confirmation Order, and/or any findings of fact or conclusions of law with respect to Confirmation of the** Plan shall not diminish or impair ~~the enforceability of~~ any **rights, claims, or defenses under any** insurance ~~policy, right or claim~~ **policies or under applicable non-bankruptcy law** that may cover Claims against the Debtors or the Reorganized Debtors (including, without limitation, their members, managers or officers) or any other person or entity. Likewise, the Plan ~~and Confirmation Order shall not impair any insurance carrier's~~**, the Disclosure Statement, any Plan-related document, the Confirmation Order, and/or any findings of fact or conclusions of law with respect to Confirmation of the Plan shall not in any way operate to, or have the effect of, impairing the insurers' legal, equitable or contractual** rights, claims, defenses or disputes under any policy **or under applicable non-bankruptcy law** and shall not act to increase or extend any rights **or obligations** of the Debtors or the ~~carriers~~ **insurers in any respect.  Except with respect to the settlements set forth in Section 4.4 of the Plan and approved in the Confirmation Order, no insurer shall be bound in any current or future litigation concerning an Environmental Claim or an insurance policy by any factual findings or conclusions of law issued in connection with Confirmation of the Plan (including on appeal or in any subsequent proceeding necessary to effectuate the Plan), and no such findings of fact or conclusions of law shall have any res judicata or collateral estoppel effect on any claim, defense, right, offset or counterclaim that has been asserted or that may be asserted in any current or subsequent litigation concerning an Environmental Claim or an insurance policy.**

      14.     Attached hereto is a Supplement to Schedule 4.4 of the Plan with updated information with respect to each site.

The Debtors submit that the forgoing modifications are non-material in nature and, with respect to many of the changes, are designed to provide clarity and eliminate the potential for confusion in the implementation of the Plan and/or resolve objections to confirmation of the

Plan.  As such, the Debtors submit that no additional notice or re-solicitation is necessary with respect to the modifications contained herein.

                                      Respectfully submitted,

Dated:  July 21, 2008                  COZEN O'CONNOR

                                      By:  /s/ Jerrold N. Poslusny
                                              Mark E. Felger
                                              Jerrold N. Poslusny, Jr.

                                      Attorneys for the Debtors

**SUPPLEMENT TO SCHEDULE 4.4\***

**SUPPLEMENT TO SCHEDULE 4.4\***

**I. Aluminum Shapes USEPA Lead Off-Site Environmental Liability CERCLA § 106 Sites**

**Ewan Superfund Site, Shamong Township, New Jersey**

- National Priorities List Site: EPA ID #NJD98076 1365.
- Aluminum Shapes is a low percentage/volume PRP.
- An Amended Complaint for Natural Resource Damages was filed against 22 parties.
- There are a number of PRP's who have been addressing site remediation.

**D'Imperio Superfund Site, Hamilton Township, New Jersey**

- National Priorities List Site: EPA ID # NJD980529416.
- Aluminum Shapes is a low percentage/volume PRP.
- There are a number of PRP's who have been addressing site remediation.
- The claim for Natural Resource Damages was settled with the NJDEP.

**Swope Oil and Chemical Company Superfund Site, Pennsauken, New Jersey**

- National Priorities List Site: EPA ID #NJD04 1743220.
- Aluminum Shapes is a low percentage/volume PRP.
- There are a number of participating and cooperating PRP's whom have addressed site remediation.

\* All of the information in this Schedule is based upon the Debtors' present knowledge.

1

**SUPPLEMENT TO SCHEDULE 4.4\***

**II.    Aluminum Shapes USEPA Lead Off-Site Environmental Liability Non-CERCLA § 106**

**Puchack Wellfield, Pennsauken Township, New Jersey**
   (This Site is also subject to NJDEP Directives)

- ☐ National Priorities List Site:  EPA ID #NJD98 1084767.
- ☐ USEPA Estimated Costs - $17,600,000.00.
- ☐ EPA has issued a Record of Decision against another unrelated entity for chromium remediation using an in-situ geochemical fixation technology.

**Lightman Drum Company Site, Winslow Township, New Jersey**

- ☐ CERCLA ID #02-2000-2034.
- ☐ There are approximately 30 PRP's who been participating in addressing site remediation issues.
- ☐ Aluminum Shapes has denied any liability at the site and has its defenses.

**Chemical Control Corporation, Elizabeth, New Jersey**

- ☐ National Priorities List Site:  EPA ID # NJD000607481.
- ☐ Aluminum Shapes was a *de minimis* contributor.
- ☐ Liability with the EPA was resolved pursuant to a consent decree.

**Berks Associates/Douglassville Disposal, Douglassville, Pennsylvania**

- ☐ National Priorities List Site:  CERCLIS ID #PAD002384865.
- ☐ There is no NJDEP claim as this site is located in Pennsylvania.

2

**SUPPLEMENT TO SCHEDULE 4.4\***

**III.    Aluminum Shapes New Jersey Department of Environmental Protection Lead Off-Site Environmental Liabilities**

**-NONE-**

3

**SUPPLEMENT TO SCHEDULE 4.4\***

### IV. State Environmental Claims and Environmental Litigation

**9000 River Road, NJDEP 1992 Directive and Notice to Insurers**

- ☐ NJDEP issued an Approval Letter for the 60 Day Work Plan.

**Harris v. Advanced Supply Process Company, et al., Superior Court of New Jersey, Camden County, Law Division, Docket No.: L-03815-02**

- ☐ Class Certification was denied.
- ☐ The Court granted Summary Judgment to Aluminum Shapes and other defendants.
- ☐ Aluminum Shapes was dismissed from the case.
- ☐ This case is currently on appeal before the Appellate Division.

**Pennsauken Solid Waste Management Authority, et al. v. Ward Sand Material Co., Inc. et. al. Superior Court of New Jersey, Camden County, Law Division, Docket No.: L-13345-91**

- ☐ Plaintiffs allege that defendants are responsible for the surface and groundwater contamination at the Pennsauken Landfill.
- ☐ There are over 200 parties in the case, including the former owner of the landfill, haulers and generators.
- ☐ Landfill leachate has been detected on the property of Aluminum Shapes.
- ☐ Aluminum Shapes has a counterclaim against the Plaintiffs.

**Buzby Brothers Landfill, Voorhees, New Jersey**

- ☐ Not a National Priorities List Site: EPA ID #NJD00305524.
- ☐ Aluminum Shapes settled for $40,000.00.

4