HARRIS BEACH PLLC
ONE PARK PLACE, 4TH FLOOR
300 SOUTH STATE STREET
SYRACUSE, NEW YORK 13202
(315) 423-7100

and

HARRIS BEACH PLLC
100 WALL STREET
NEW YORK, NEW YORK 10005
(212) 687-0100
Attorneys for Caldwell Manufacturing Co.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
IN RE:

SHAPES/ARCH HOLDINGS, L.L.C. et al.,

Debtors.

Chapter 11
Case No. 08-14631(GMB)

### NOTICE OF MOTION OF CALDWELL MANUFACTURING CO. FOR LEAVE TO FILE LATE 503(b)(9) ADMINISTRATIVE CLAIM

PLEASE TAKE NOTICE that on the 29th day of September, 2008 at 10:00 a.m., Caldwell Manufacturing Co. ("Caldwell"), by and through its undersigned counsel, shall apply to the Honorable Gloria M. Burns, United State Bankruptcy Judge, at the United States Bankruptcy Court, 400 Cooper Street, Courtroom 4C, Camden, NJ 08101, for an order authorizing Caldwell to file an Administrative Claim.

PLEASE TAKE FURTHER NOTICE that any responsive pleadings shall be filed no later than September 22, 2008, with the Clerk of the United States Bankruptcy Court, 401 Market Street, Camden, NJ 08101, with copies served simultaneously therewith upon: the United States Trustee's Office, One Newark Center, Suite 2100, Newark, New Jersey 07102; and Counsel for

Movants, Harris Beach PLLC, Attention: Eric Lindenman, Esq., 100 Wall Street, New York, New York 10005, and all other parties requesting notice in this proceeding.

PLEASE TAKE FURTHER NOTICE, in the event that no objection or other responsive pleading is filed to this Motion, the Motion shall be deemed uncontested on the return date and the relief sought herein may be granted in the Court's discretion.

Dated: August 26, 2008
New York, New York

**HARRIS BEACH PLLC**

By: */s/ Eric H. Lindenmn*
Eric H. Lindenman, Esq.
100 Wall Street
New York, NY 10005
Telephone: (212) 687-0100
Facsimile: (212) 687-0659
Email: elindenman@harrisbeach.com

HARRIS BEACH PLLC
ONE PARK PLACE, 4^(TH) FLOOR
300 SOUTH STATE STREET
SYRACUSE, NEW YORK 13202
(315) 423-7100

and

HARRIS BEACH PLLC
100 WALL STREET
NEW YORK, NEW YORK 10005
(212) 687-0100
Attorneys for Caldwell Manufacturing Co.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
IN RE:

      SHAPES/ARCH HOLDINGS, L.L.C. et al.,

                       Debtors.

Chapter 11
Case No. 08-14631(GMB)

## MOTION OF CALDWELL MANUFACTURING CO.
## FOR LEAVE TO FILE LATE 503(b)(9) ADMINISTRATIVE CLAIM

Caldwell Manufacturing Co. ("Caldwell"), by and through its undersigned counsel, files this Motion for Leave to File Late 503(b)(9) Claim (the "Motion"), and respectfully states as follows:

### FACTUAL BACKGROUND

1.     On March 16, 2008 (the "Petition Date"), Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-Weld L.L.C., and Ultra L.L.C. (collectively, the "Debtors") filed their respective petitions for bankruptcy relief (the "Bankruptcy Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). The Bankruptcy Cases are being jointly administered pursuant to the Order of this Court dated on or about March 16, 2008.

2. The Debtors manufacture and distribute various aluminum and vinyl products. In particular, Accu-Weld L.L.C. ("Accu-Weld") designs, manufactures and distributes high quality made-to-order vinyl, residential windows and steel entry doors.

3. Caldwell provides sash balances to window manufacturers, and specifically to Accu-Weld. These supplies are necessary to the Debtors' production of it products, and have been since before the Petition Date.

4. During the 20-day period immediately preceding the Petition Date, Caldwell supplied the Debtors with approximately $20,301.62 worth of goods in the ordinary course of the Debtors' businesses.

5. It should be noted that Caldwell timely filed a claim for these goods sold at claim no. 229 filed on April 17, 2008 so that the Debtors are fully aware of the existence of this Claim. Attached hereto as Exhibit "A" is a copy of the filed proof of claim with the invoices reflecting the sale of those goods and specifically denotes that two of the three invoices listed in the supporting documentation are identified as administrative expense claims. Clearly the Debtors had notice of the Administrative Claim.

6. The Debtors did not pay Caldwell for the goods delivered to and used by the Debtors.

7. The Bankruptcy Cases progressed at a very rapid fashion with a Disclosure Statement being approved by Order entered May 23, 2008 and a Plan of Reorganization being confirmed by Order entered July 24, 2008.

8. After the Disclosure Statement was approved, and in connection with the solicitation of the Plan, according to the Affidavit of Service dated June 4, 2008, the Debtors served nine (9) documents on Caldwell, including a **"Notice of Deadline to File Requests for**

2

**Allowance of Administrative Expense Claims Incurred Between March 16, 2008 Through and Including June 15, 2008"** (the "Bar Date Notice"), as well as a the Plan and Disclosure Statement, both of which are fairly voluminous documents. A copy of the Bar Date Notice is attached hereto as Exhibit "B".

9. The title of the Bar Date Notice indicates that the claims to be filed are only those incurred between March 16, 2008 and June 15, 2008. Further, page 2 of the Bar Date Notice provides the time frames within which the claims have arisen which states as follows:

> Pursuant to the Administrative Expense Bar Date Order, all persons or entities who asserts a claim for the actual, necessary costs and expenses of preserving the estates allowable under 11 U.S.C. §503 (including for the avoidance of doubt, the claims under §503(b)(9)), arising between **March 16, 2008 through and including June 15, 2008** . . . .

Bar Date Notice, p. 2 (emphasis added).

10. The Bar Date Notice does not conspicuously make reference to 503(b)(9) administrative claims that arose **prior to** the Petition Date. In fact, other than a footnote at the end of the sentence quoted above, there are no other references to 503(b)(9).

11. A plain reading of the Bar Date Notice by a creditor, who is unfamiliar with the Bankruptcy Code and has no independent knowledge of the definition of 503(b)(9), will not be alerted to the fact that its Administrative Expense Claim which arose prior to the Petition Date, was included in this Bar Date Notice.

12. Counsel was not consulted on this matter until after the June 30, 2008 Bar Date had passed and only shortly before the Plan was confirmed.

13. It was only when counsel began preparing a Motion for Allowance of an Administrative Claim under 503(b)(9), and a review of the Bankruptcy Case docket had been undertaken that the Administrative Expense Bar Date was discovered. Immediately thereafter,

3

counsel for Caldwell contacted Caldwell and advised them of the situation. Shortly thereafter, Caldwell requested the filing of the present Motion.

## II. RELIEF REQUESTED

14. By this Motion, Caldwell seeks leave to file a late 503(b)(9) administrative claim and submits that cause exists for such relief. The failure to file a timely 503(b)(9) administrative claim is an act of excusable neglect and in applying the standards set forth by the United States Supreme Court in Pioneer Investment Services v. Brunswick Assoc., 507 U.S. 380, 113 S. Ct. 1489, 123 L.Ed.2d 74 (1993), it is clear that cause for leave to file such a claim under rule 9006(b)(1) exists.

## III. BASIS FOR RELIEF REQUESTED

15. The rule authorizing Bankruptcy Courts to accept late filings where failure to act is a result of "excusable neglect", contemplates that courts are permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond party's control. Pioneer, 507 U.S. 380, 389 (1993); Fed. R. Bankr. P. 9006(b)(1).

16. The history of the bankruptcy rules supports this equitable measure. Pioneer, 507 U.S. at 389.

> Rule 9006(b) is derived from Rule 906(b) of the former bankruptcy rules, which governed bankruptcy proceedings under the former Bankruptcy Act. Like Rule 9006(b)(1), former Rule 906(b) permitted courts to accept late filings "where the failure to act was the result of excusable neglect." The forerunner of Rule 3003(c), which now establishes the requirements for filing claims in Chapter 11 cases, was former Rule 10-401(b), which established the filing requirements for proofs of claim in reorganization cases under Chapter X of the former Act, Chapter 11's predecessor. The Advisory Committee's Notes accompanying that former Rule make clear that courts were entrusted

4

>with the authority under Rules 10-401(b) and 906(b) to accept tardy filings "in accordance with the equities of the situation".
>
>If the court has fixed a bar date for the filing of proofs of claim, it may still enlarge that time within the provisions of Bankruptcy Rule 906(b) which is made applicable in this subdivision. **This policy is in accord with Chapter X generally which is to preserve rather than to forfeit rights.**

Id. at 389-90 (emphasis added).

17. In Pioneer, the Supreme Court analyzed the elements necessary for "excusable neglect" and recognized that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by *inadvertence, mistake, or carelessness*, as well as by intervening circumstances beyond the party's control." Pioneer, 507 U.S. at 388 (emphasis added). Consequently, the determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395.

18. Factors to be considered in concluding whether a claimant should be permitted to file a late proof of claim include: (i) the danger of prejudice to the debtor, (ii) the length of delay and its potential impact on judicial proceedings, (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith. Id. at 395.[1]

---

[1] In developing these factors, Supreme Court looked to the analysis utilized by the Court of Appeals for the Sixth Circuit which adopted a test originally delineated in In re Dix, 95 B.R. 134, 138 (9th Cir. BAP 1988). The Dix test calls for a court to evaluate the late-filer's conduct using the following factors:
   1. whether granting the delay will prejudice the debtor;
   2. the length of the delay and its impact on efficient court administration;
   3. whether the delay was beyond the reasonable control of the person whose duty it was to perform;
   4. whether the creditor acted in good faith; and
   5. whether clients should be penalized for their counsel's mistake or neglect.

Pioneer, 507 U.S. at 385 citing Dix, 95 B.R. 134, 138.

19. The Pioneer bankruptcy court, in applying the Dix factors, found many of the Dix factors were satisfied: (a) no prejudice would result from the late filings, (b) the 20 day delay in filing the proof of claim would have no adverse impact on efficient court administration, and (c) the creditor and its counsel acted in good faith. Pioneer, 507 U.S. at 386.

20. The Court of Appeals for the Sixth Circuit in Pioneer also found it significant that the bar date notice was ambiguous, which supported its holding that excusable neglect existed. Id. at 386-387.

21. The Supreme Court ultimately affirmed the decision of the Court of Appeals,[2] discounting the purported culpability of the creditor's counsel and focusing more on the fact that the bar date notice was inconspicuous, there was no bad faith and no evidence of prejudice to the debtor or to the judicial administration of the case. Id. at 398.

22. Application of the Pioneer factors in the present matter favors granting Caldwell leave to file a late 503(b)(9) administrative claim.

23. A finding of excusable neglect is based on equity and depends on the particular circumstances and facts of the case. In re Garden Ridge Corp., 348 B.R. 642, 645 (Bankr. D. Del. 2006).

a. **Allowing Caldwell's Claim will not Prejudice the Debtors.**

24. No prejudice will result from allowing Caldwell to file its 503(b)(9) administrative claim.

---

[2] However, the Supreme Court disagreed with the Court of Appeals suggestion that a client is not accountable for the acts or omissions of its counsel. Pioneer, 507 U.S. at 396.

25. The United States Court of Appeals for the Third Circuit has held that "prejudice" for the purpose of determining whether excusable neglect exists, cannot be "imagined or hypothetical." In re O'Brien Envir. Energy, Inc., 188 F.3d 116, 128 (3d Cir. 1999).

26. In the present matter, no harm will result by allowing Caldwell to have its timely filed claim be deemed a timely filed 503(b)(9) claim. The Debtors clearly were aware of the possibility of the claim in light of the fact that they served Caldwell with the Bar Date Notice and the Debtors accepted and used (and possibly sold) the goods shipped by Caldwell during the reclamation period. O'Brien, 188 F.3d at 128 (finding no prejudice to the debtor under the excusable neglect standard where debtor was aware of claim). Moreover, Caldwell had filed its claim and had specifically designated $21,301.62 of its claim as administrative expenses.

27. Further, the mere filing of the claim does not give rise to its allowance, and, in fact, the Debtors and other parties in interest would still be able to object to the allowance of Caldwell's 503(b)(9) administrative claim. Likewise, allowing Caldwell to file its claim will have little adverse impact on the judicial administration of the Bankruptcy Cases. Even allowance and "payment of this claim would not jeopardize the success of the reorganization." O'Brien, 188 F.3d at 128.[3]

---

[3] The Debtors are also not prejudiced by the fact they may not have set aside funds to pay Caldwell's claim. As the Third Circuit declared in O'Brien, "We believe that Pioneer requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue. Otherwise, "virtually all late filings would be condemned by this factor." Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co.), 166 B.R. 799, 802 (S.D.N.Y. 1994) (holding that the depletion of resources otherwise available for timely filed claims is not prejudice)." O'Brien, 188 F.3d at 126.

b. **The Short Delay in Filing Caldwell's Claim will not Adversely Impact the Efficient Administration of the Bankruptcy Cases.**

28. Caldwell only recently became aware that the Administrative Expense 503(b)(9) claim in the Bar Date Notice was less than two (2) months ago. Such a short delay in filing its claim certainly would not adversely impact the efficient administration of the Bankruptcy Cases.

29. The Third Circuit Court of Appeals found in O'Brien that a two month delay did not bar granting leave to file a late claim in that case despite the fact that a plan had been confirmed and went effective during the intervening period. See O'Brien, 188 F.3d at 130. The O'Brien court noted that urgency created by the Debtors' time line is not an exigency that should be given great significance. See id. The Third Circuit Court of Appeals added "although it is proper to consider the delay's effect on the judicial proceedings, Pioneer teaches that we should consider the length of the delay in absolute terms...." Id.; In re Chemetron Corp., 72 F.3d 341, 350 (3rd Cir. 1995) (remanding to determine excusable neglect where motion to file late claim was filed two years after plan was confirmed). In fact, claims filed much later than two months after the bar date have been allowed. See, e.g., In re FLYi, Inc., 2008 WL 170555, at *4 (Bankr. D.Del. Jan. 16, 2008) (allowing late filed claim 18 months after bar date); In re Inacom Corp., 2004 WL 2283599, at *6 (D.Del. Oct. 4, 2004) (allowing a claim nine months after confirmation where there was no effect on administration of the bankruptcy case).

30. Under the circumstances in these Bankruptcy Cases, the delay in filing the 503(b)(9) administrative claim should not bar Caldwell from asserting its rights.

c. **The Fact that the Delay was within the Reasonable Control of Caldewell is not Determinative.**

31. While the delay associated with the 503(b)(9) claim is due in part to a lack of close examination by Caldwell of the entire Bar Date Notice, the concept of excusable neglect

8

clearly anticipates this type of error. O'Brien, 188 F.3d at 128. Moreover, as held by the United States Supreme Court, excusable neglect is not limited to those cases where the party seeking relief is without fault. Id. (citing Pioneer, 507 U.S. at 388).

32. As in Pioneer and O'Brien, in the current matter, the delay in filing a claim arises from the creditor's lack of adequate notice of a deadline, O'Brien, 188 F.3d at 129, and as in Pioneer, the notice of the bar date for 503(b)(9) administrative claims was not clear and conspicuous. In the present matter, the 503(b)(9) bar date was not identified in the Bar Date Notice except in a parenthetical and a footnote reference. Whereas, the remainder of the Bar Date Notice advised that all creditors with administrative claims, i.e. those arising between March 16, 2008 and June 15, 2008 were advised to file claims. There is nothing in the Bar Date Notice that clearly states that 503(b)(9) claims are those reclamation claims arising 20 days prior to the Petition Date and that they were included in the Administrative Expense Bar Date.

33. The fact that the delay was arguably within the reasonable control of Caldwell does not bar the relief sought in this Motion under the circumstances surrounding this matter.

**d.    Caldwell is Acting in Good Faith.**

34. None of the circumstances surrounding this matter connote bad faith. Caldwell supplied the goods to the Debtors within the 20-day reclamation period immediately before the bankruptcy case and Caldwell simply seeks an opportunity to assert its right to repayment. The rules governing extensions and late filings were drafted "to preserve rather than forfeit rights." Pioneer, 507 U.S. at 389. Caldewell promptly advised its counsel to seek leave to file a late claim upon its discovery that the 503(b)(9) administrative claims were included in the Bar Date Notice and has taken reasonable steps to preserve its rights in a prompt manner. Caldwell is acting in good faith.

9

### e. The Debtors' Inconspicuous Bar Date Notice Renders Excusable Neglect on Caldwell's Part.

35. "Even creditors who have knowledge of a [bankruptcy case] have the right to assume that they will receive **reasonable** notice of relevant dates before their claims are barred." In re Dartmoor Homes, Inc., 175 B.R. 659, 670 (Bankr. N.D. Ill. 1994) (quoting City of New York v. New York, N.H. & H.R.R., 344 U.S. 293, 297 (1953)) (emphasis added). Here, Caldwell did not receive such reasonable notice of the bar date.

36. In determining whether any neglect on Caldwell's part is "excusable," this Court must consider the Debtors' role in contributing to the oversight. See O'Brien, 188 F.3d at 128-29 (examination of debtor's role in the mishap is essential to determination of whether neglect is excusable); see also Chemtron, 72 F.3d at 350 (3d Cir. 1995)(remanding issue of analysis of excusable neglect under Pioneer to bankruptcy court when finding that bankruptcy court and district failed to adequately consider, inter alia, debtor's role in contributing to delay).

37. Although "a bar date in a bankruptcy case **should** be prominently announced," Pioneer, 507 U.S. at 398 (emphasis added), the Bar Date Notice was unclear and ambiguous. There is no description or definition of a 503(b)(9) claim that would permit a creditor to conclude that it should file a claim. Specifically, Administrative Expense Claims were defined as "claims arising between March 16, 2008 and June 15, 2008.

38. Providing notice of a bar date for a claim that arose pre-petition in a definition of claims that arose post-petition with specific dates as a reference is, at best, inadequate notice, particularly when addressed to and reviewed by non-attorneys. The inadequacy of such notice is compounded by the complete lack of any other reference to section 503(b)(9) claims (or even a clear explanation of such claims).

39. The deficient Bar Date Notice should not foreclose Caldwell's ability to assert its 503(b)(9) claims (notwithstanding the single 503(b)(9) bar date reference on page 2, footnote 1 of the Bar Date Notice). Such a result would be inequitable under these circumstances and unfairly punish Caldwell for the misunderstanding attendant with the Bar Date Notice.

## IV. CONCLUSION

40. As a general principle, there is no disparate treatment between different types of section 503(b) administrative claims, yet in the present matter, the holders of 503(b)(9) claims have been treated differently. While other administrative claimants have been able to rely on the clear definition of administrative claims expressly set out in the Bar Date Notice, section 503(b)(9) claimants were required to consult counsel and/or attempt to discern the meaning of a 503(b)(9) claim and whether or how it differed from other administrative claims that arose after the Petition Date. Caldwell submits that notice of a bar date for a claim that is not included in the definition or title of the Bar Date Notice is far from reasonable notice. For the foregoing reasons, Caldwell submits that cause exists for it to file a late 503(b)(9) claim.

**WHEREFORE**, Caldwell Manufacturing Co. respectfully requests that this Court enter an Order (i) granting the Motion; (ii) permitting Caldwell Manufacturing Co. to file its 503(b)(9) claim; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: August 26, 2008
      New York, New York    **HARRIS BEACH PLLC**

      By:   *Eric H. Lindenman*
            Eric H. Lindenman, Esq.
            100 Wall Street
            New York, New York 10005
            212.687.0100 main
            212.687.0659 facsimile
            Email: elindenman@harrisbeach.com

11