MARK E. FELGER (MF9985)
JERROLD N. POSLUSNY, JR. (JP7140)
COZEN O'CONNOR
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Attorneys for the Debtors

| In re: | : UNITED STATES BANKRUPTCY COURT |
|---|---|
|  | : FOR THE DISTRICT OF NEW JERSEY |
| SHAPES/ARCH HOLDINGS L.L.C., et al., | : CHAPTER 11 |
|  | : |
| Debtors. | : CASE NO. 08-14631 (GMB) |

Hearing Date: September 30, 2008 at 2:00 p.m.

## EXHIBIT "C" – NARRATIVE OF SERVICES RENDERED

TO:   HONORABLE GLORIA M. BURNS
       UNITED STATES BANKRUPTCY JUDGE

1.   Your Applicant is a shareholder of the firm of Phoenix Management Services, Inc. ("Phoenix") and is familiar with the facts contained in this Narrative.

2.   This Narrative relates to services provided to the above-captioned Debtors from March 16, 2008 through August 8, 2008 (the "Fee Application Period").

3.   On March 16, 2008 (the "Petition Date"), Shapes/Arch Holdings L.L.C. and its related debtor entities (collectively the "Debtors")[1] filed their respective petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

---

[1] In addition to Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), the following entities, all of which are wholly owned subsidiaries of Shapes/Arch, also filed petitions on the Petition Date (defined below): Shapes L.L.C. ("Shapes"); Delair L.L.C. ("Delair"); Accu-Weld L.L.C. ("Accu-Weld"); and Ultra L.L.C. ("Ultra").

WILMINGTON\80372\3  220718.000
CHERRY_HILL\464727\1  226314.000

4. On July 22, 2008, this Court confirmed the Debtors' Third Amended Joint Plan of Reorganized, as modified (the "Plan"), and the Plan became effective on August 8, 2008.

5. The Plan provides for the reorganization of the Debtors through a combined debt and equity infusion by the plan sponsor, Arch Acquisition I, LLC ("Arch Acquisition"). Under the Plan, creditors holding allowed secured claims and allowed priority claims and claimants holding allowed administrative expense claims have been paid in full. Creditors holding allowed general unsecured claims will receive their pro rata share of a $5,000,000 fund created on the Effective Date, plus any net proceeds generated from the pursuit of Avoidance Actions and Estate Actions by the Class 10 Liquidating Trustee.

6. By all accounts, these cases were active, fluid, intense, complex, hard fought, and ultimately quite successful.

7. The following is a summary of the more significant activities performed by Phoenix during the Final Fee Period:

- During the weeks leading up to the filing of these cases, Phoenix assisted with the preparation of the Schedules and SOFAs; assisted with the development of the weekly cash flow budget for each Debtor; and assisted with monitoring availability under its bank loans with the CIT agented lender group (the "Lender Group");

- Developed, updated, and maintained weekly rollforwards of the 13-week budget and produced weekly scorecards comparing actual versus forecasted results;

- Developed a detailed and comprehensive liquidation analysis that conclusively demonstrated a shortfall to secured creditors in the event of a liquidation;

- Provided comments to counsel with regard to the terms of two DIP financing agreements and a plan of reorganization with Arcus, the initial plan funder, and the Lender Group; and provided comments to approximately 15 first day motions that were filed on the first day of the cases and heard and approved on the third day of the cases;

WILMINGTON\80372\3 220718.000
CHERRY_HILL\464727\1 226314.000

- Consulted with and advised the Debtors' managers and officers on various operational, financial and management issues during the cases;

- Interacted almost daily with the financial advisor to the Creditors' Committee with respect to all proposed actions of the Debtors, including weekly budgets and scorecards, claims filings, and due diligence performed by Arch Acquisition and other 3rd parties;

- Worked with the Debtors' bankruptcy counsel with respect to restructuring and financing issues;

- Reviewed and provided comments to counsel on virtually all of the documents filed and/or provided by Arcus and Arch Acquisition in connection with their roles as term DIP lenders and plan funders and in connection with the acrimonious transition from Arcus to Arch Acquisition as term DIP lenders and plan sponsor; interacted almost daily with representatives of Arch Acquisition and its financial advisor with regard to funding, operating and financial performance, and due diligence requests;

- Interacted with the Lender Group with regard to availability issues, forecasted cash flow, weekly scorecards and other funding and availability issues;

- Performed exhaustive, detailed review of all administrative and priority claims; coordinated review and research by debtors; provided information to counsel to object to duplicate and disputed administrative and priority claims;

- Created the schedule of contracts for each Debtor along with contract cure amounts;

- Reviewed and assisted with the preparation of various plans of reorganization and disclosure statements;

- Developed and updated the sources and uses of funds at emergence and assisted with the negotiation regarding the Emergence Funding Cap;

- Interacted with the Debtors' sales consultant; provided due diligence materials and information to potential bidders in connection with the competitive plan process;

- Assisted with the preparation of motions, responsive pleadings and attended meetings with interested parties and numerous hearings; and

- Assisted in the negotiation and ultimate confirmation of the Plan with the support of the Committee and the Lender Group, resolving numerous objections to confirmation raised by various interested parties, which provides for full

3

payment to all secured, administrative and priority creditors and a minimum fund of $5,000,000 for holders of general unsecured claims.

8. Phoenix believes that its services (i) contributed to and were necessary to achieve the successful outcome of these cases, and (ii) were delivered in an effective, efficient manner with a conscious effort at all times to avoid duplication of effort and to utilize the most appropriate professionals and para-professionals for each particular task.

I certify that the foregoing statements made by me are true. I am aware that if any are willfully false, I am subject to punishment.

Dated: September 2, 2008

By: _____
Michael E. Jacoby