UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE: )
)
)         Bankruptcy Action
)         08-14631-GMB
SHAPES/ARCH HOLDINGS, )
L.L.C., )
)         Chapter 11
            Debtors, )      Camden, New Jersey
)         May 6, 2008
)         10:47 a.m.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE GLORIA M. BURNS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Shapes/Arch Holdings:   JERROLD N. POSLUSNY, JR., ESQUIRE
                            MARK FELGER, ESQUIRE
                            (Via Telephone)
                            Cozen, O'Connor
                            Liberty View, Suite 300
                            457 Haddonfield Road
                            Cherry Hill, NJ 08002

For Arch Acquisition I:     ALAN J. BRODY, ESQUIRE
                            NANCY MITCHELL, ESQUIRE
                            (Via Telephone)
                            Greenberg Traurig, LLP
                            200 Park Avenue
                            Florham Park, New Jersey 07932

For U.S. Trustee:           MARTHA HILDABRANDT, ESQUIRE
                            (Via Telephone)
                            Office of the United States Trustee
                            One Newark Center
                            Suite 2100
                            Newark, New Jersey 07102

For Pennsauken Township:    STUART SEIDEN, ESQUIRE
                            Parker, McCay
                            Three Greentree Center
                            7001 Lincoln Drive West
                            Marlton, New Jersey 08053

BY: JAMES J. WALDRON
DEPUTY CLERK
08 SEP -3 AM 9:29
U.S BANKRUPTCY COURT
FILED
CAMDEN, NJ

(Appearances Continued)

For CIT Group:                  GARY SCHARMETT, ESQUIRE
                                PAUL PATTERSON, ESQUIRE
                                (Via Telephone)
                                Stradley, Ronon, Stevens & Young
                                2600 Commerce Square
                                Philadelphia, Pennsylvania 19103

For Arcus ASI Funding:          JOEL C. SHAPIRO, ESQUIRE
                                (Via Telephone)
                                Blank Rome Comisky and McCauley
                                One Logan Square
                                Philadelphia, Pennsylvania 19103

                                ELANA BOURKOFF, ESQUIRE
                                MARK HALPERIN, ESQUIRE
                                (Via Telephone)
                                Cole, Schotz, Meisel, Forman &
                                Leonard
                                Court Plaza North
                                25 Main Street
                                Hackensack, New Jersey 07602

Audio Operator:                 Mary Lampone

Transcribed by:                 DIANA DOMAN TRANSCRIBING
                                P.O. Box 129
                                Gibbsboro, New Jersey  08026-129
                                PHONE:  (856)435-7172
                                FAX:    (856) 435-7124
                                Email:  Dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

Page 3

1          (Call to the Order of the Court)

2          THE COURT:  Please be seated.  I guess you're the

3     only one who wanted to be here today.

4          MR. SEIDEN:  I actually didn't even know that it was

5     -- that they were doing it by phone.  But I talked to one of

6     the guys, so it seems like everything's okay.

7          THE COURT:  Okay.  Mary, are you ready?

8          MS. LAMPONE:  Yes.

9          THE COURT:  Hello?  Hello?

10          MR. FELGER:  Hello, Your Honor.  Mark Felger of

11     Cosen, O'Connor on behalf of the debtors.

12          THE COURT:  All right.  Why don't we have everybody

13     else put their appearance on.

14          MR. SCHARMETT:  Gary Scharmett and Paul Patterson on

15     behalf of CIT and the bank group, Chase and Textron.

16          MR. BRODY:  Good morning, Your Honor.  Alan Brody and

17     Nancy Mitchell on behalf of Arch Acquisition.

18          MS. HILDABRANDT:  And Martha Hildabrandt on behalf of

19     the United States Trustee.

20          MS. BOURKOFF:  Good morning, Your Honor, Elana

21     Bourkoff -- excuse me, Cole, Schotz, Meisel, Forman & Leonard,

22     on behalf of the Committee.  And Mr. Halperin's going to come

23     on in just a second.

24          MR. POSLUSNY:  Good morning, Your Honor.  Jerrold

25     Poslusny, Cozen, O'Connor, on behalf of debtors.

Colloquy                                          Page 4

1           THE COURT:  Anybody else?

2           MR. SHAPIRO:  Joel Shapiro from Blank, Rome, on

3      behalf of the Arcus entity.

4           THE COURT:  Anybody else?  All right.  Just for the

5      record, counsel for Pennsauken Township just happens to be here

6      in Court.  Do you want to put your appearance on the record,

7      please?

8           MR. SEIDEN:  Yes, Your Honor.  Stuart Seiden from

9      Parker, McCay, for Pennsauken Township.

10          THE COURT:  All right.  Mr. Felger?

11          MR. FELGER:  Yes.  Thank you, Your Honor.  Thank you,

12     again, for accommodating the parties this morning.  Your

13     indulgence is for the parties have borne fruit.

14          I believe we're here to report that we've resolved

15     all of the remaining issues with respect to the debtors DIP

16     financing motion.

17          As Your Honor will recall, Your Honor entertained a

18     chambers conference with the parties yesterday, during which

19     the parties indicated that the parties were working all weekend

20     to deal with the issues, and there were literally dozens of

21     issues that had to be worked through.  And as of yesterday,

22     when we got together with Your Honor, we had just 4 or 5 issues

23     left to bridge.  Your Honor assisted us with Your Honor's

24     thoughts yesterday, and the parties continued to work yesterday

25     afternoon, and evening, and this morning.  And as we arrived to

Colloquy                                          Page 5

1    our respective offices this morning, we had just two issues

2    that remained.  And with Your Honor's indulgences over the past

3    hour or so, I believe we've been able to bridge those last two

4    issues, and we're now at a point to move forward and submit a

5    revised form of order on what I'm calling the Arcus/Arch term

6    DIP financing agreement.

7         Your Honor received -- I believe Your Honor received

8    2 orders from us this morning.  One is the CIT order that had

9    two attached -- two attachments, exhibit 1 being the DIP

10   agreement, exhibit 2 being the defined terms for the papers.

11        I believe that order, and I'm sure if I'm wrong folks

12   will chime in.  I believe that order is, indeed, final and

13   everybody -- all the parties are fine with having that order

14   entered and submitted.

15        The second order that we submitted to Your Honor this

16   morning, the Arcus/Arch order, will need to be revised to

17   reflect the additional accommodations this morning by the

18   parties.  And that order had three exhibits.  An assignment

19   agreement, the DIP agreement, and the latest version of the

20   plan.  And the DIP agreement, which is Exhibit 2, had three

21   exhibits.  Exhibit A, the note, Exhibit B the budget, and

22   Exhibit C the competitive process.

23        We need to make changes to the order, the assignment

24   agreement, which is exhibit 1, and the note and the budget,

25   which are exhibits A and B to the DIP agreement.  And we're

Colloquy                                      Page 6

1    hopeful that we'll be able to do that over the course of the

2    next -- and I guess I'm being optimistic, over the next 30

3    minutes or so, so that we can submit a revised form of order

4    that's acceptable to the parties.

5           I'm not sure if the parties want to set out how the

6    four or five issues that we had open yesterday were resolved,

7    or if Your Honor wants to hear how they were resolved.   But I

8    would note that I believe there is still one issue that's

9    unresolved.

10          And that's a result of the -- of how one of the

11   issues was resolved by the parties.   And that is that, in

12   consideration of Blank, Rome agreeing to further reduce their

13   legal fees, there was an agreement by the parties that there

14   wouldn't be a reasonableness review of those fees.

15          And I don't believe the U.S. Trustee has been in that

16   loop, and has weighed in on whether they -- whether the U.S.

17   Trustee would have an issue with that resolution by the

18   parties.

19          MR. HALPERIN:   Your Honor, if I could add just one

20   thing to that?   This is Alan Halperin.   The agreement was that

21   it wouldn't be reviewed by the Committee for reasonableness,

22   but first it has indicated, and I can understand the concern,

23   that they don't want to have another bite taken at the apple by

24   somebody else.

25          Hence that's why there's an issue with the U.S.

Colloquy                                          Page 7

1   Trustee.

2           MR. FELGER:  Thank you, Alan.

3           MR. SHAPIRO:  There is, Your Honor.  Joel Shapiro.

4   Our concept was, one of the issues was the fees.  And the

5   Committee and I personally spoke this morning.  And in an

6   effort to bridge the gap, so that we can all come to you this

7   morning and pass the time consensually, I offered to further

8   reduce my cap, which was set at 750, the fees are over eight,

9   and I said I would agree to reduce it to 675.

10          The additional consideration for doing all that, then

11  allowed the Committee to look at the package of my client's

12  fees and what the estate was paying for mine, but I was and am

13  willing to do that.  The concept being that that is a global

14  resolution of the remaining issues.

15          And we would hope that the U.S. Trustee, in light of

16  the global resolution of the indemnities, the global resolution

17  of the insiders now be given opt in time periods as the Judge

18  directed, that all of the other things that we've done, and

19  literally, my firm, for whatever it's worth, bridging the gap

20  for my client, but that I am finished with the review process

21  and the reduction process as part of this.

22          And would ask that the Court and the form of order be

23  submitted says that the fees of Arcus, including their counsel,

24  are all approved as reasonable and we're done.

25          So we have made another 10 percent reduction off of

Colloquy                                          Page 8

1       it, and that would be our request, that, hopefully, everybody's

2       okay with.

3               THE COURT:  Ms. Hildabrandt?

4               MS. HILDABRANDT:  Yes, thank you, Your Honor.   In

5       light of the particular circumstances of the case, what I

6       propose is there will be an 80 percent payout.   We would like a

7       review period.   It does not have to be 30 days.   And we can

8       communicate with the parties.

9               My thought was more like 10 days, upon receipt of the

10      documents.   Certainly, subject to attorney/client privilege,

11      and we could work that out.   We do not want to stop this

12      progress.   We understand all that needs to be done.

13              But to completely waive it without a opportunity to

14      review, I'm not in a position to accept that.   But certainly an

15      80 percent payout, with 20 percent in escrow, subject to our

16      review at an expedited period.

17              MR. SHAPIRO:  Your Honor, I'm not --

18              THE COURT:  Well -- I understand what you said, Mr.

19      Shapiro.   I think, Ms. Hildabrandt, what Mr. Shapiro is saying,

20      is that the offer is to reduce their fees approximately, what

21      would you say, about 20 percent, 25 percent, off of what

22      they --

23              MR. SHAPIRO:  No, I capped them already --

24              THE COURT:  Right.

25              MR. SHAPIRO:  -- at the 750.  My fees are over

Colloquy                                    Page 9

1     800,000.

2              THE COURT:  Right.

3              MR. SHAPIRO:  I'm taking --

4              THE COURT:  So you're agreeing to take like a 25

5     percent deduction.  Right?

6              MR. SHAPIRO:  That's correct, Your Honor.

7              THE COURT:  I'm just ball parking.  And in return for

8     that --

9              MR. SHAPIRO:  The redaction and review of all the

10    invoices and have that process, that's done.  Part of my

11    consideration, I'm asking the U.S. Trustee, as part of that

12    process of reviewing the fees and expenses of a lender who are

13    not professionals of the estate, I'm not even sure Chapter 3 of

14    your trustee manual requires you to review non-professional

15    fees.

16             But putting that aside, and I'm begging the Court to

17    get this done, this is the last issue, we are finished.  And as

18    part of the global release and compromise, to approve it.

19             MS. BOURKOFF:  Your Honor, this is Elana Bourkoff.

20    Can I shed light on the resolution --

21             THE COURT:  Sure.

22             MS. BOURKOFF:  -- as to five issues that were

23    outlined so cogently by Ms. Mitchell yesterday.  And this,

24    hopefully, will give Ms. Hildabrandt some additional comfort

25    that there has been extensive and good faith negotiations over

Colloquy                          Page 10

1    these issues.

2            And, hopefully, as I said, that will give her comfort

3    that this issue on Mr. Shapiro's fees should go away?

4            THE COURT:  I'd be happy to hear that, Ms. Bourkoff.

5            MS. BOURKOFF:  Okay.  All right.  So --

6            THE COURT:  Just, before you start Ms. Bourkoff, I

7    just want to say that, yesterday's conference was considered

8    just a settlement conference.  It was not on the record.

9    Today's hearing, I am on the record.

10           And I think that's what everybody intended.  So I

11   just want everybody to know that as we go forward.  Is that --

12           MS. BOURKOFF:  Okay.  Thank you, Your Honor.  So I

13   will go into some detail, then, so that the record is clear and

14   complete on these handful of issues that remain from yesterday.

15           And I am going to go in the order that Ms. Mitchell

16   raised them yesterday.  So, the first issue was, in fact, this

17   issue that we just talked about, which was the ability for the

18   Committee and the U.S. Trustee to review Blank, Rome's fees for

19   reasonableness.  As Mr. Shapiro had just mentioned, we were

20   told in Court last week, and obviously the fees are much higher

21   now than they were last week, that at that time Blank, Rome's

22   fees were approximately $800,000.

23           Blank, Rome had agreed, and Versa had agreed to

24   reduce those fees and cap them at $750,000.  After we were in

25   Court last week, we -- it was brought to our attention that

1    there were some additional fees that Mr. Shapiro's client had

2    apparently incurred in the approximate amount of $95,000,

3    which, at the time, he was not aware of and, therefore, none of

4    the other parties were aware of.

5         And up until this morning, basically, the Committee

6    continued to object to those fees, because it was our

7    understanding that the 750 was "all in."  Based on Mr.

8    Shapiro's -- and one other issue yesterday, Your Honor, came to

9    our attention, as well, that there was an $80,000 fee that

10   Arcus was charging to the estate for the monitoring and

11   collateral fees that had accrued and were payable on May 1st

12   under their loan documents.

13        And obviously approved by the interim order of this

14   Court, which the Committee was just alerted to yesterday, and

15   also objected to them.

16        So in consideration for the Committee's agreement to

17   allow those fees to get paid, as well as the other concessions

18   that the parties have made, Mr. Shapiro graciously agreed to

19   cap his fees to $675,000, and without any review by the

20   Committee and, hopefully, by the U.S. Trustee.

21        The second issue that remained outstanding yesterday

22   was that Arcus had asked for releases from everybody involved

23   in this case, including the debtor's managers, members,

24   etcetera.  That, as of yesterday, was not willing to have those

25   releases be mutual.

Colloquy                              Page 12

1      Not only to the managers, but also to the debtors and

2    their estate.  That issue also has been resolved and,

3    basically, the revised form of order is going to reflect that,

4    for the next 20 business day period, the parties will try to

5    negotiate mutual releases to resolve that issue.

6          I don't recall the section of the order that that's

7    reflected in, but that's where it is.  As well, Arcus also

8    agreed to assign, as part of the assignment of the loan to

9    Arch, any and all claims that Arcus might have against the

10   debtors and their estate.

11         The third issue that we talked about yesterday, which

12   continued to be negotiated up until, you know, literally the

13   Court jumped on the call, was this indemnity issue.  And,

14   basically, we had extensive discussion yesterday in the off the

15   record conference as to the extent of the indemnification

16   approved in the interim DIP order, and whether Arcus was

17   entitled, (a) to the protections of that -- of that approval,

18   as well as additional protections that Arcus had requested.

19         And the parties have extensively negotiated the

20   indemnification provision.  And I am just waiting for some

21   revised language.  But basically what that provision is going

22   to say, is that Arcus continues to be protected by the loan

23   documents that it entered into with the debtor and the interim

24   order, as well as, I guess, some additional protections

25   reflected in what's now going to be section 4.5.7 of the order.

1     Conceptually speaking, Your Honor, the following

2     concepts have been agreed to.  First of all, the Arcus

3     indemnification does not kick in until and unless there's

4     either a demand made by -- to Arcus for a claim, or a lawsuit

5     actually filed.

6     And, you know, as we envisioned -- the only potential

7     that we envision happening here, Your Honor, and it shouldn't

8     be a surprise to you, is, obviously, given that the estate have

9     released Arcus, is the only potential we see Arcus coming back

10    into the case, is if the estate, through the debtor's managers,

11    members, whatever, and somehow they tried to implead Arcus.

12    That is the only scenario we really envision, at this

13    time.  And so the only time that we actually see the

14    indemnification play in, is if Arcus, as I said, is either

15    served with a third party complaint, or served with discovery

16    in connection with a complaint that might be filed, or somehow

17    receive some other demand.

18    There's no other time during the case that the

19    indemnification would actually become applicable.  For example,

20    Your Honor, if Arcus is monitoring the case, including the plan

21    of reorganization, to make sure that it's indemnification

22    rights are protected, or if somehow files some protective proof

23    of claim, or requests for an administrative claim, and there is

24    discovery or litigation over such a claim.

25    That's the first thing.  The second thing, and Arcus

Colloquy                         Page 14

1   has agreed to this, is that the damages claims, whatever losses

2   that Arcus might incur, including any legal fees that it might

3   incur on a going forward basis in connection with the

4   indemnification, would only get paid upon entry of an order

5   approving and allowing such a claim.

6        In other words, typically, Your Honor, there are

7   indemnification provisions where the party entitled to the

8   indemnification gets paid for its legal fees on an ongoing

9   basis.   That is not going to be the case here.   It's all

10  subject to approval by this Court and any Court of, you know,

11  higher competent jurisdiction.

12       The indemnity is not secured by any collateral.

13  That's another concession that has been made and confirmed in

14  this order.   And the fact that, notwithstanding the release

15  that has been granted by the debtors and their estates and the

16  Committee to Arcus, in the event that Arcus -- in the event

17  that Arcus comes in and has to defend itself, and has to raise

18  issues that, you know, in defense of the indemnification,

19  notwithstanding the release, the Creditors Committee, the

20  debtors, their estates and any assignees are entitled to defend

21  such an indemnity claim, notwithstanding the release.

22       I think the only other thing that I have to say is

23  that there is actually an exclusion for an indemnification

24  claim for gross negligence or willful misconduct.

25       THE COURT:  All right.  Can I ask you a question, Ms.

Colloquy                                    Page 15

1   Bourkoff?

2           MS. BOURKOFF:  Sure.

3           THE COURT:  Based on what you've indicated, and I

4   appreciate greatly the time and effort that's been put into

5   this by the Committee and all the other parties, are you and

6   Mr. Halperin and the Committee satisfied that, if we cap the

7   fees of Mr. Shapiro's firm at $675,000, that that is a

8   substantial discount from what you would expect that his fees

9   would be, based on the time that's been spent on this matter,

10  and you've been involved in that?

11          MS. BOURKOFF:  You know, everything -- the

12  concessions that have been made in the last day, in the last 24

13  hours, Your Honor, have been difficult for the Committee, and,

14  you know, are not coming unreluctantly.

15          But I think as part of the overall deal, and to get

16  this thing done, and to get this company funded, I believe

17  there's a payroll that has to get funded today, we are

18  satisfied that there's no more that can be done in connection

19  with the parties negotiations at, frankly, the twenty-fifth

20  hour of, you know, of resolution.

21          So it's reluctant, but we are satisfied and we have

22  approval from the Committee, that those fees should get

23  approved and should not be reviewed any further.

24          And, frankly, I just think that, as Mr. Shapiro said,

25  it's just going to create additional fees, and it's just not

Colloquy                                    Page 16

1    going to let this thing, you know, die the best that it should

2    die today.

3            THE COURT:  All right.  Ms. Hildabrandt.

4            MS. HILDABRANDT:  Yes, thanks, Your Honor.  Well I

5    appreciate the presentation by the Committee, and certainly in

6    deference to their position, I will concede our position on the

7    review period.  With the reservation, Your Honor, of course,

8    it's a unique situation, and of course the U.S. Trustee feels

9    that we do have authority to review such fees as expenses.  But

10   certainly, let's get this payroll met, and I appreciate all the

11   work the Committee has done.

12           THE COURT:  And I appreciate, Ms. Hildabrandt, your

13   understanding of the situation here.  I don't think this is the

14   usual case, and there's been an amazing amount of work done by

15   all the parties.  I do appreciate Mr. Shapiro's efforts towards

16   finalizing this.  And I'm -- I have concerns.  I think the

17   Committee has concerns.

18           And we recognize, of course, that you, on behalf of

19   the United States Trustee, would have concerns about fees.

20   It's part of the job that we do.  But I think it's been

21   represented very clearly by Ms. Bourkoff, that this is part of

22   a global resolution that will, in the opinion of the Committee,

23   and I believe the other parties to the case, unless somebody

24   wants to tell me otherwise, believes that this will be cost

25   saving to the estate, rather than trying to go to make a deal

Colloquy                                   Page 17

1    go that's not going to go.

2          It just -- in the Court's understanding, if this

3    resolution doesn't work, the cost to the estate, in light of

4    the funding needs, and all of the other issues, and all of the

5    funds that have been expended, working towards this end, would

6    be negatively impacted in a dramatic fashion.  And for that

7    reason, I believe that, from the Court's perspective, the Court

8    will accept the representations of the Committee and the other

9    parties to the case, that this is all in the best interests of

10   the estate, and part of an active negotiation, which benefits

11   the estate.

12         And I appreciate the U.S. Trustee taking the position

13   that they would not go forward, because I know it's an

14   important issue for you, Ms. Hildabrandt.  But I appreciate

15   that you understand the magnitude of this issue, vis-a-vis all

16   the issues that are involved in this case.

17         MS. HILDABRANDT:  Thanks.

18         THE COURT:  So, therefore, Mr. Felger, I guess if --

19   I'm to sure, I guess you will be submitting the documents?  I

20   do have -- from what you're telling me, and I want to hear from

21   everybody else, the order that you submitted with regard to the

22   CIT Group financing, is that in final version right now?

23         MR. FELGER:  That is my understanding, Your Honor.

24   if anybody disagrees, they can certainly chime in.

25         MR. PATTERSON:  Your Honor, it's Paul Patterson,

Colloquy                                      Page 18

1    counsel for CIT.  I think we believe it is all in final form

2    and ready to go.

3         THE COURT:  Okay.  Then I will look at that first,

4    while I await Mr. Felger's submission of the order regarding

5    Arcus.

6         MR. FELGER:  Your Honor, with respect to the Arcus

7    order, I just want to note that we need a hearing date.

8    There's a blank in section -- I believe it's section 1.3.4 for

9    a hearing.  In 1.3.3, I believe, we've inserted an objection

10   date of May 12th, for objections to the change that we've made

11   to the term financing agreement, increasing the amount of that

12   financing from 25 million to 30 million.

13        We thought that was a material change, or arguably a

14   material change that folks ought to get notice of and a

15   opportunity to object, if they thought it was objectionable.

16   So we inserted a provision in the order for objections, and we

17   also have a blank for a date of a hearing to deal with any

18   objections that are filed.

19        And my thought is that we should pick a date that

20   would be acceptable, to have the disclosure statements hearing,

21   as well as the hearing on the motion that we intend to file

22   over the next couple of days to approve the competitive plan

23   process.

24        THE COURT:  When would you --

25        MR. FELGER:  I believe the parties have been looking

Colloquy                                    Page 19

1     at having a hearing on or before May 20th for the disclosure

2     statement hearing and the competitive process motion.  I'm not

3     sure if the twentieth works for Your Honor.

4          THE COURT:  Well let me just say this, I could --if

5     you could guarantee me that it will not exceed 2 hours, I could

6     do it in the morning.  My son graduates from college that

7     afternoon, so I'm going to leave by noon.

8          So if you tell me you can do it in the morning, I

9     don't have anything else that morning.  So I could do it and I

10    could do it like 9:30, 10:00, but I need to be done by noon.

11    So if 2 hours is enough, we can do it that day.  Other than

12    that, I can't do it then.

13         MR. HALPERIN:  If it could be earlier, Your Honor,

14    because knowing this crew, I'd be hesitant to guarantee that.

15    It's too important an issue to --

16         MR. FELGER:  Yeah.  How does the nineteenth -- the

17    afternoon of the nineteenth look, Your Honor?

18         MR. HALPERIN:  The nineteenth doesn't work for me.

19         THE COURT:  All right.  That's out.

20         MS. BOURKOFF:  That's all right, I can handle it.  If

21    we have to.  I don't want to mess up Her Honor's schedule on

22    the twentieth.

23         MR. HALPERIN:  I mean, can I make a suggestion?  Why

24    don't we see where we are at this meeting, and (inaudible)

25         THE COURT:  I can't -- is that --

Colloquy                              Page 20

1        MR. FELGER:  We can't hear you, Alan.

2        MR. HALPERIN:  I apologize.  Why don't we see where

3    we are later this week?  We can tentatively schedule the

4    nineteenth.  But to the extent it looks like we're going to be

5    able to be in a position to have it a little earlier, we can

6    try and do it, in fact, earlier.

7        Because this is just corrections and amendments to

8    the earlier thing, and it's already been noticed up to the

9    world.

10       Everybody knows it's coming now, because the

11   modifications and the deal were in Court the last time.

12       MR. FELGER:  Right.  Your Honor, that's correct.  It

13   would be, obviously, we typically need a 25 day notice for the

14   disclosure statement hearing.  But as Your Honor's aware, we

15   were at a disclosure statement hearing last week, and our sense

16   is that this disclosure statement isn't going to be materially

17   different from the disclosure statement that we had before Your

18   Honor not too long ago.

19       So we're hopeful that Your Honor would be comfortable

20   reducing that 25 day notice period to what may be approximately

21   a week here.

22       THE COURT:  Well let me ask you this.  Are you -- are

23   you filing a new plan and disclosure statement, is that part of

24   this -- these documents, too?

25       MR. FELGER:  Yes, the -- what we're contemplating is

Colloquy                                    Page 21

1     filing an amended plan and an amended disclosure statement, as

2     well as a motion to approve the competitive plan process, on or

3     before Monday the twelfth.

4            I mean, I think we're all hopeful we can get

5     everything by Friday, but that's an optimistic view.

6            So I would think that either by Friday, or more

7     likely Monday, we'll have those papers filed with Your Honor.

8            THE COURT:  Well you'll need to file an application

9     to shorten time on the notice for the disclosure statement,

10    just to be certain.  Because it is a new disclosure statement,

11    and there are changes.  I don't know if they're material or

12    not, but there are changes in your disclosure statement, based

13    on who was funding the amounts and so on.

14           MR. FELGER:  Correct.  And we'll need an application

15    to shorten on the bid -- on the procedures motion, as well.

16           THE COURT:  All right.  Well just submit all of that

17    together.  I'm thinking perhaps, maybe move it to a little

18    later, and then if you need -- if something is an issue that

19    you need the Court's intervention, perhaps we can have a

20    telephone conference or something in advance of the hearing

21    date and move it maybe out to the twenty-third.

22           MR. HALPERIN:  Your Honor, this is Alan Halperin.

23    Obviously, we'll do whatever the Court decides is appropriate.

24    The concern from the Committees' perspective is that the

25    marketing process can't formally kick in until we have bid

Colloquy                                Page 22

1    procedures approved.

2           So every day that we kick it out, is that much less

3    time for us to actually market the business, and, hopefully,

4    get competitive bidding going.

5           THE COURT:  All right.  Well how about if we do the

6    bid procedures, then, on the nineteenth, but we hold off on the

7    disclosure statement for like another week, to give every -- I

8    mean, that -- would that hold you up, as well?

9           MR. HALPERIN:  Um --

10          THE COURT:  Or if we get the bid procedures in, in

11   place, we can go from there on that.

12          MS. BOURKOFF:  If bid procedures are approved on the

13   nineteenth, I would be fine with going to the twenty-third on

14   the disclosure statement hearing, if that works for Your Honor.

15          THE COURT:  How does that work for everybody else?

16          MR. FELGER:  Your Honor, that's fine for the debtors.

17   I would suggest we put bid procedures and the hearing on any

18   objections to the increase of the term loan amount on for the

19   nineteenth, and then the disclosure statement, perhaps, on the

20   twenty-third.

21          THE COURT:  That would work for me.

22          Anybody have any objection to that?

23          MS. BOURKOFF:  Nope.  We're fine.

24          MR. HALPERIN:  Sounds good.  9:30, Your Honor?

25          THE COURT:  Excuse me?  Time?

Colloquy                                    Page 23

1          MR. HALPERIN:   9:30?

2          THE COURT:   On the nineteenth, we're going to do it

3     at 2:00.

4          MR. HALPERIN:   Okay.

5          MS. BOURKOFF: Yea.

6          THE COURT:   Because I have my regular motion list in

7     the morning.  So we'll do it at 2:00.  And on the twenty-third

8     we'll do it at 10:00.

9          MS. BOURKOFF:   Okay.

10          THE COURT:   And you an incorporate that, Mr. Felger,

11     in your applications to shorten time, when you submit them,

12     hopefully, by Friday.  If not, I'll look at them Monday.

13          MS. BOURKOFF:   Your Honor, this is Elena Bourkoff.   I

14     have a question of Mr. Felger.  We're going to be -- Your

15     Honor, I think, is aware that we're going to be retaining a

16     third party consultant to assist us with the competitive

17     process and marketing, etcetera.  And I believe Mr. Felger's

18     going to be filing retention papers --

19          MR. FELGER:   Yes.

20          MS. BOURKOFF:   -- to retain NatCity Investments to do

21     that.  And I believe, under the new federal rule, there's a

22     20-day notice period for such a retention application.  And

23     we're wondering whether Mr. Felger would be inclined to submit

24     an application to shorten time, given the, we believe that

25     cause exists here to, you know, to shorten the notice period on

1    his -- on NatCity's retention.

2           THE COURT:  I'm not sure if you --

3           MS. BOURKOFF:  And if the Court would be inclined to

4    consider such an application.

5           THE COURT:  I'm not sure if you need the 20-day

6    period, if it's not at the beginning of the case.

7           MR. FELGER:  Yeah, I think that's a first day

8    requirement.

9           MS. BOURKOFF:  Oh, is that right?  Okay.  Great.

10           UNIDENTIFIED COUNSEL:  Yeah, I agree, Elana that --

11           MR. FELGER:  I think we're good.

12           UNIDENTIFIED COUNSEL:  Yeah.

13           MS. BOURKOFF:  Okay.  Fine.

14           MR. FELGER:  I do agree with you that cause would --

15    that cause would exist to shorten and we do --

16           MS. BOURKOFF:  Okay.

17           MR. FELGER:  -- and we will probably file an

18    application to shorten, so that we can get that application to

19    retain NatCity considered as soon as possible, because we

20    really need to get Mr. Victor up and running.

21           THE COURT:  My normal process, if it's not in the

22    first 20 days, would be 5 business days.

23           MS. BOURKOFF:  Okay.

24           THE COURT:  If you think that's too short, then put

25    something in your application.  But it would be -- if you

Colloquy                                    Page 25

1      submitted it by Friday, by the next Friday that order would be

2      able to be entered.  So the sooner you submit it, it would take

3      approximately a week, in my normal process, as long as it's not

4      in the first 20 days.

5               So if, you know, the sooner you get that in, the

6      sooner we can it will get entered.

7               MR. FELGER:  Okay.

8               MS. BOURKOFF:  I have three other, sort of cleanup

9      matters, Your Honor.

10              It's Elana Bourkoff speaking.

11              THE COURT:  Yes.

12              MS. BOURKOFF:  The first is to tell Your Honor that

13     there is, as Mr. Felger noted, a budget that's going to be

14     attached to the Arch DIP order.

15              It's our understanding that this is sort of a

16     preliminary budget and that HIG, or I should say Arch, the

17     Committee and the debtors and CIT are going to be further

18     refining that budget.

19              And I'm not sure whether Your Honor would like to

20     have that revised, refined budget filed with the Court, or not.

21     So we would need some sort of guidance from Your Honor on that.

22              Secondly, there is one business point left on the CIT

23     and the Arch loan agreement.  It relates to a financial

24     covenant, and the parties are still negotiating that.  We don't

25     believe that any amendment to the documents that would be made

Colloquy                                    Page 26

1   would be adverse to the estate.

2           In fact, we're trying to make it beneficial to the

3   estate.  So I don't believe that any amendments have to be

4   filed with the Court.  But, again, Your Honor, we would look

5   for advice, or guidance from you on that.

6           And, thirdly is, there was, I think, a whole bunch of

7   motions that have been filed with the Court.  Some of which, or

8   at least one of which I know is on for this Thursday, and some

9   of which were filed with applications to shorten time that are

10  still extant.

11          And so I'm wondering whether the parties think that

12  it would be a good idea, and the Court would think it would be

13  a good idea to simply carry those motions to that May 19th

14  return date that Your Honor just gave us.

15          THE COURT:  All right.  Let me start with the -- you

16  asked about the revised budget and some other revisions to the

17  agreement.

18          If you don't think they're material, they materially

19  change the order that the Court enters, I'm not sure that you

20  need to file them.

21          I'll leave that up to, you know, counsel for the

22  Committee and the other parties.  If you want the Court to

23  approve it as an amendment to the original order that's

24  consensual and you want to submit it that way, I'm more than

25  willing to review it, and unless I have any questions, I would

1    enter an order approving it.

2          If you don't think it changes what's already been

3    approved, then I really will leave that up to you.

4          MR. FELGER:  I believe the order addresses the

5    budget, indicating that there's a budget attached and there

6    will be an amended budget agreed to by, I believe, May 9th.

7    And I just -- I forget, and I've seen too many versions of this

8    order, whether it says that that budget will be filed with the

9    Court, or not.

10         I don't know if anybody has a better handle on that.

11         MR. BRODY:  Hi.  This is Alan Brody from -- for Arch

12   Acquisitions, Your Honor.  The date of May 9th is in the order.

13   I do not believe that it says that it has to be filed.

14         THE COURT:  All right.  Well, as I said, I'll leave

15   that up to the parties.  If you think that changes the order

16   that I'm going to enter today, then -- and you think it needs

17   to be set forth on the record, then do that.

18         If you don't think it changes anything that the

19   order's fine like it is, you know, I'll leave that up to the

20   parties to say.

21         You know, it might, depending on what you end up

22   working out with it, if you wanted to be clear and document it

23   on the record what the budget is, in case there's an issue

24   later, then you can submit some consensual order as amending

25   and submitting the budget.

Colloquy                              Page 28

1          But if you don't think that it really changes much of

2      what there is, then you might not need to do that.  So I'll

3      leave that up to you, really.

4          I have hearings scheduled for May 9th that involve

5      the appointments of fees, exclusivity termination and so on.  I

6      don't have a problem with putting -- with adjourning those, if

7      that's what the parties want, until sometime after this

8      process.  And we can talk about what's a good date.

9          MR. FELGER:  We talked about that a little bit before

10     Your Honor got on the call.  And I'm not sure if the Committee

11     was on, at that point.  We talked with Ms. Hildabrandt and HIG,

12     and I think what we talked about was that HIG was prepared to

13     withdraw their motion.

14         But my understanding is, what the U.S. Trustee and

15     the Committee would like to do, is adjourn out their motions

16     into perhaps mid or late June.  Extend out the response dates

17     to a week before the hearing.  And then we revisit and see

18     where we are, at that point.

19         Hopefully, if we have a disclosure statement

20     approved, and we're in a solicitation process, those motions

21     would then be withdrawn.

22         MS. HILDABRANDT:  This is Martha Hildabrandt, Your

23     Honor.  That's correct.  We thought -- well, from my

24     perspective in looking at the calendar, we'd be comfortable

25     with a June 23rd return date, and a response time of June 16th

Colloquy                                Page 29

1    for the U.S. Trustee's motion for a trustee.

2         MR. HALPERIN:  Your Honor, this is Alan Halperin, on

3    behalf of the Committee.  I suppose, you know, I'm not looking

4    to throw water on a happy occasion.  Hopefully, everybody

5    continues to stay on board.  I would suggest that, while we're

6    okay, I guess, kicking to the twenty-third, my preference would

7    probably be to kick to a shorter period, and then kick again as

8    we get closer.

9         Just because, we're not where we need to be yet, and

10   I'm a firm believer in Murphy's law, that if I were to kick it

11   to the twenty-third, that I might, in fact, need to shorten it,

12   although I'm hopeful that everything is going to be consensual

13   going forward.

14        THE COURT:  All right.  Let me -- how about if we put

15   it down, I have a Chapter 11 day on May 28th.

16        MR. HALPERIN:  That's fine, Your Honor.  My hope is

17   that it will, in fact, ultimately have to be further adjourned

18   once we get there.  I just -- I'd like to keep everybody

19   focused and, hopefully, it's a non-event.

20        THE COURT:  Okay.  We could put it on for May 28th at

21   eleven.

22        MR. HALPERIN:  That's fine.

23        THE COURT:  And then, hopefully, by that point,

24   everything's resolved and it will be withdrawn.

25        Now, Mr. Brody, are you going to withdraw your motion

Colloquy                                          Page 30

1    -- the motion on behalf of your client?

2              MR. BRODY:  Your Honor, once the order is signed, we

3    will withdraw our motion.

4              THE COURT:  All right.  Well for today's purposes,

5    I'll adjourn that with the Trustee's and the Committee's --

6              MR. BRODY:  Thank you.

7              THE COURT:  -- to the twenty-eighth.  And then, if

8    you would just submit, once you're satisfied, submit a

9    withdrawal and we'll mark it as withdrawn.

10             MR. BRODY:  Thank you, Your Honor.

11             MR. PATTERSON:  And, Your Honor, Paul Patterson, CIT.

12             THE COURT:  Yes.

13             MR. PATTERSON:  Just for clarity's sake, so responses

14   will be due to those motions, then, on or before May 21, is

15   that correct?

16             THE COURT:  Yes.  Responses by May 21st.

17             MR. PATTERSON:  Thank you.

18             MS. BOURKOFF:  Thank you, Your Honor.

19             THE COURT:  All right.  Mr. Seiden is here in Court

20   he has -- he wants to say something on behalf of Pennsauken

21   Township.

22             MR. SEIDEN:  I had, Your Honor, as I said, we

23   represent Pennsauken Township.  And we're really here just for

24   the limited purpose of the priority of the taxes.

25             I spoke to Alan Brody earlier today.  He advised me

Colloquy                                    Page 31

1   that we retain priority, insomuch as we prove valid liens and

2   we will be paid if we prove we have valid liens.

3           So I'm satisfied.  Unless anybody else has a

4   different -- thinks there's a different version out there,

5   that's the way I read it.

6           UNIDENTIFIED COUNSEL:  Your Honor, under the plan

7   that's attached to the DIP order itself, with respect to the

8   treatment of Pennsauken, he is correct.

9           MR. PATTERSON:  Your Honor, on behalf of CIT I can

10  confirm, we added a new paragraph 8(c) that makes it clear we

11  do not prime a valid pre-petition liens that are not avoidable.

12  So I think that covers counsel's concern.

13          The other thing I would ask, briefly, kind of in the

14  housekeeping area, just for the record.  Hopefully, this will

15  not be necessary, because it sounds like Your Honor is going to

16  enter both of the orders today.

17          But as Your Honor may recall, the interim order that

18  our group is currently financing under expired yesterday.  I

19  have included a provision in the order that, hopefully, Your

20  Honor will enter today, referencing that you have so ordered a

21  further extension of the interim order through today, if that's

22  necessary.

23          So if the Court and parties have no objection, I

24  would ask that that so ordered extension be made a part of the

25  record today.

Colloquy                                    Page 32

1          THE COURT:  Any objection by anybody?

2          All right.  I don't hear any.  I would so order that,

3     if there's a need to extend the interim order until the actual

4     entry of these additional orders, that that would be part of

5     the terms and conditions of the interim order that has been

6     extended through yesterday afternoon, and it would cover

7     whatever would need to come up in the interim, until these

8     final orders are entered.

9          MR. PATTERSON:  Thank you.

10          MS. MITCHELL:  Your Honor, Nancy Mitchell, on behalf

11     of Arch.  What bank -- we need to fund, I believe, payroll

12     today.  So we can't fund under the old Arcus documents, or our

13     new documents, until those orders are actually entered.

14     Reasonably critical that we get them entered early.

15          And since we haven't given you one of them, I know

16     that puts pressure on you.  But we can only fund up until sort

17     of mid-afternoon.

18          THE COURT:  All right.  I'm going to do the CIT order

19     as soon as we finish today.  I don't know when I'll have the

20     Arcus order.  I would suggest that, if you don't think it's

21     going to be done in time, perhaps you can talk to Mr. Shapiro

22     about having his client fund and be repaid as soon as that

23     happens, something like that, on an interim basis.  I don't

24     have a problem with that.

25          If it's going to need to be funded by Arch, the new

Colloquy                                    Page 33

1    company, I'll do it as quickly as I can, but I know you still

2    have to put this together into a form of order and get it to

3    me.  So --

4            MS. MITCHELL:  Yeah, I would just say, I think it is

5    unlikely that Mr. Shapiro's client's going to be prepared to

6    fund anymore.

7            THE COURT:  All right.  Well all I'm saying is I --

8            UNIDENTIFIED COUNSEL:  Thank you, Ms. Mitchell.

9            Your Honor, we have circulated while we have been

10   speaking with Your Honor, a form of order that we hope embodies

11   the Committee's requests and the other considerations given by

12   all the parties.  I would encourage everybody to review it

13   promptly, as we took this time to do that.  And I'm hopeful

14   that, you know, everybody should stay together after this call

15   and let's get the order to you in the next hour.

16           MS. MITCHELL:  And, Your Honor, I was really more

17   focused on -- I don't know the docketing process.  Sometimes,

18   from the time that the order is signed by Your Honor until the

19   time it's actually entered on the docket, there is some sort of

20   delay.

21           I just wanted to make sure that, as soon as you had

22   signed it, there was some way for us to know that it was

23   entered, so we could all move forward.  And I don't know the

24   process in New Jersey.

25           THE COURT:  Well as soon as I enter it, my courtroom

Colloquy                          Page 34

1     deputy will make sure it gets docketed.  It's electronic, so it

2     doesn't really take all that long.  And he'll be happy to

3     e-mail a copy to the parties of the signed order, as well, so

4     you'll have, as well as getting it from the docket, in case

5     there's some kind of electronic issue, he also said he'll send

6     an e-mail out to the parties with a copy of the orders.

7              MS. MITCHELL:  Thank you so much.

8              UNIDENTIFIED COUNSEL:  Thank you, Your Honor.

9              THE COURT:  All right.  And so I will look for the

10    orders and I will get them done as soon as I have time to read

11    them, once they come in.

12             MR. FELGER:  Thank you, Your Honor.

13             MR. SHAPIRO:  Your Honor, this is Joel Shapiro.  I

14    just wanted to thank everybody on this call.  This will

15    probably be my last call with the group.  And I also wanted to

16    thank Your Honor.  I think last week and yesterday was very

17    helpful.

18             THE COURT:  Well I, you know, I've already said

19    yesterday when we were not on the record, and I also said back

20    when we had the hearing last week, that I appreciate all the

21    work of all of the parties.  I know it's been extensive, time

22    consuming.  It's -- it's gratifying to the Court when attorneys

23    do their job so well and work so well together.

24             And I'm not saying that -- everybody had their

25    position and represented their client's interests in resolving

Colloquy                                      Page 35

1    it, but in the Court's estimation, everybody was guided by

2    trying to do what was best for the estate, as well.  So I'm

3    thanking all the parties for their work.  All right.  And I

4    will look for the orders.  Thank you.

5         (Court adjourned)

6                        * * * * *

7                   C E R T I F I C A T I O N

8    I, Josette Jones, court approved transcriber, certify that the

9    foregoing is a correct transcript from the official electronic

10   sound recording of the proceedings in the above-entitled

11   matter.

12

13   ----_josette_jones_----------        --09/02/08-------

14   JOSETTE JONES                          DATE

15   DOMAN TRANSCRIBING AND RECORDING

16   SERVICES