IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SHAPES/ARCH HOLDINGS L.L.C., et al.[1] | : | Case No. 08-14631 (GMB) |
| | : | (Jointly Administered) |
| | : | |
| | : | Judge: Gloria M. Burns |
| Debtors. | : | |

**FIRST AND FINAL FEE APPLICATION OF NATCITY INVESTMENTS, INC.
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF EXPENSES INCURRED AS SALES CONSULTANT/INVESTMENT
BANKER TO THE DEBTORS FOR THE PERIOD
MAY 7, 2008 THROUGH AUGUST 8, 2008**

TO:   HONORABLE GLORIA M. BURNS
UNITED STATES BANKRUPTCY JUDGE

Pursuant to Sections 327 and 328(a) of the United States Bankruptcy Code §§

101, *et seq.* (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), NatCity Investments, Inc. ("NatCity") hereby files

this First and Final Fee Application for Allowance of Compensation and Reimbursement

of Expenses as Sales Consultant/Investment Banker to Shapes/Arch Holdings L.L.C., the

above captioned debtors (the "Debtors"), for the period from May 7, 2008 through

August 8, 2008 (the "First and Final Fee Application"). By this First and Final Fee

Application, NatCity seeks a total of $250,000 in compensation for its Sale Fee, plus

$3,878.94 for reimbursement of actual and necessary expenses for the period May 7,

2008 through August 8, 2008. NatCity received its Initial Fee of $25,000 upon Court

approval of NatCity's retention as Sales Consultant/Investment Banker to the Debtors

dated May 7, 2008 and received its Sale Fee of $225,000 after the closing on the Sale on

---

In addition to Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), the following entities, all of which are wholly owned subsidiaries of Shapes/Arch, also filed petitions on the Petition Date (defined below): Shapes L.L.C. ("Shapes"); Delair L.L.C. ("Delair"); Accu-Weld L.L.C. ("Accu-Weld"); and Ultra L.L.C. ("Ultra").

August 8, 2008 along with its expenses of $3,878.94. In support of this First and Final
Fee Application, NatCity respectfully represents as follows:

## BACKGROUND

1.      On March 16, 2008 (the "Petition Date"), the Debtors filed their
petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy
Code").

2.      The Debtors operated their businesses and managed their
properties as debtors-in-possession pursuant to 11 U.S.C §§ 1107 (a) and 1108.

3.      No trustee or examiner was appointed in these cases.

4.      An official committee of unsecured creditors (the "Committee")
was appointed on March 31, 2008 and was actively involved in the cases.

5.      On May 7, 2008, the Debtors retained NatCity as Sales
Consultant/Investment Banker to the Debtors. A true and correct copy of the May 7,
2008 Engagement Agreement is attached hereto and incorporated herein as Exhibit A.

6.      By Application dated May 13, 2008, the Debtors requested the
Court's authorization to retain and employ, nunc pro tunc to May 7, 2008, NatCity as the
exclusive Sales Consultant/Investment Banker to the Debtors, under Sections 327 and
328(a) of the Bankruptcy Code in the sale of the Debtors' business and assets in this case
(the "Retention Application"). A true and correct copy of the May 13, 2008 Retention
Application is attached hereto and incorporated herein as Exhibit B.

7.      NatCity was retained pursuant to the competitive plan process
agreed to by the Debtors, the Committee and other parties-in-interest, and approved by

the Court as part of the Final Order Authorizing Debtors to obtain Post-Petition

Financing and Grant Security Interest and Superpriority Administrative Expense Status,

entered on May 6, 2008, whereby the Debtors agreed to retain a Sales

Consultant/Investment Banker to develop, manage and oversee the competitive plan

process in order to maximize recovery for the estates.

   8. NatCity is a disinterested person under 11 U.S.C. § 101(14) and

does not represent or hold any interest adverse to the Debtors or the estates with respect

to the matter NatCity was retained under 11 U.S.C § 327(e).

   9. By Order dated May 21, 2008, this Court approved NatCity's

retention and employment as exclusive Sales Consultant/Investment Banker to the

Debtors (the "Retention Order"). A true and correct copy of the Retention Order is

attached hereto and incorporated herein as Exhibit C.

### JURISDICTION AND VENUE

   10. The Court has jurisdiction over this matter pursuant to 28 U.S.C.

§157 and §1334. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B). The statutory

predicates for the relief sought herein are Sections 105, 327 (a), 328 (a), 330 and 331 of

the Bankruptcy Code.

### PROFESSIONAL SERVICES RENDERED

   11. NatCity commenced a sale process for the Debtors' assets on May

7, 2008. The services rendered by NatCity during the First and Final Fee Application in

connection with these efforts included:

   a. Identifying potential strategic and financial acquirors;

b.  Contacting numerous strategic and financial buyers regarding a potential
acquisition of the Debtors' assets;

c.  Negotiating confidentiality agreements ("CAs") with potential acquirors;

d.  Preparing a sale offering memorandum (the "Confidential Information
Memorandum") for potential buyers that described the salient operational
and financial characteristics of the Debtors;

e.  Reviewing, maintaining and distributing data for the due diligence efforts
of potential acquirors;

f.  Preparing analyses for potential acquirors;

g.  Working with each potential acquiror to satisfy information and diligence
requests and serving as a conduit for management;

h.  Hosting numerous conference calls and in-person meetings with the
Debtor and management to discuss and evaluate the sale process;

i.  Assisting counsel at the sale hearing approving the sale of substantially all
of the Debtors' assets.

12.    In connection with the sale process for the Debtors' assets, NatCity
was in contact with more than 175 potential buyers of which 19 potential buyers signed
CAs and subsequently received a packet of confidential information detailing the
Debtors' Operating Businesses ("Operating Businesses").

## SUMMARY OF SERVICES

13.    No auction was held for the Debtors' Assets as no Qualifying Bids
were submitted. The Sale/Plan Confirmation Hearing was held July 22, 2008. The

stalking horse, H.I.G. Capital, through its portfolio company Signature Aluminum, was approved at the Sale/ Plan Confirmation Hearing.

14. The closing on the sale of substantially all of the Debtors' assets to H.I.G./Signature Aluminum was August 8, 2008.

15. In sum, NatCity's efforts during the First and Final Fee Application culminated in the successful sale of all of the Debtors' assets to H.I.G./Signature Aluminum producing proceeds to the estate of $91,500,000.

16. The NatCity professionals that worked full time on this assignment were:

J. Scott Victor – Senior Managing Director

Michael J. Gorman – Associate

Michael I. Eisner – Analyst

## EXPENSES INCURRED

17. A summary of actual and necessary expenses in the sum of $3,878.94 incurred by NatCity for the First and Final Fee Application is attached hereto and made a part hereof as Exhibit D and incorporated herein by reference.

18. NatCity submits that these expenses are actual, necessary, and reasonable.

## RELIEF REQUESTED

19. NatCity believes that, to the best of its knowledge, the compensation and reimbursement requested herein comports with the standards set forth under Sections 328(a) and 330 of the Bankruptcy Code.

20.    Accordingly, NatCity seeks allowance pursuant to Sections 328 (a), 330 and 331 of the Bankruptcy Code of the sum of $250,000, as its Sale Fee related to the closing of the Shapes/Arch Holdings transaction and $3,878.94 in expenses for the First and Final Fee Application, which were paid to NatCity after closing on the Sale. In accordance with the Engagement Agreement (Exhibit A), the Sale Fee is calculated based on a sale transaction ("Sale Transaction") equal to the greater of a flat fee of $250,000 or $250,000 plus 5% of the amount by which any alternative Sale exceeds the sum of the stalking horse offer. As such, NatCity seeks approval of its payment of fees in the sum of $250,000 and $3,878.94 in reimbursable expenses for the First and Final Fee Application.

**WHEREFORE**, NatCity respectfully requests that it be awarded the sum of $250,000 as its Sale Fee plus $3,878.94 in reimbursable expenses for the period May 7, 2008 through August 8, 2008, that the Court grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: August 28, 2008                            NATCITY INVESTMENTS, INC.


By: _____
      J. Scott Victor
      Senior Managing Director
      Co-Head Special Situations Group
      Five Tower Bridge
      300 Barr Harbor Drive
      Suite 420
      West Conshohocken, PA 19428
      (610) 940-5802

Submitted by,

COZEN O'CONNOR


By: /s/ Jerrold N. Poslusny, Jr.
      Mark E. Felger
      Jerrold N. Poslusny, Jr.

      Attorneys for the Debtors

# Exhibit A

**National City.**

NatCity Investments, Inc.
Five Tower Bridge, Suite 420
300 Barr Harbor Drive
Locator PA539
West Conshohocken, PA 19428

May 7, 2008

Mr. Steve Grabell
Chief Executive Officer
Shapes / Arch Holdings, LLC
900 River Road
Delair, NJ 08110

Dear Mr. Grabell:

This agreement ("Engagement Agreement") will serve as the contract between Shapes/Arch Holdings, LLC any and all of its subsidiaries (collectively "Shapes" or the "Company") and NatCity Investments, Inc. ("NatCity" or "Advisor") regarding the retention of NatCity as exclusive sale consultant/investment banker to the Company (as contemplated by Order of the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") dated May 6, 2008, to oversee and supervise the sale of all or a substantial part of the Company through its chapter 11 bankruptcy proceeding pending in the.Bankruptcy Court (the "Sale"). This Engagement Agreement shall be effective as of May 7, 2008.

A.    **NatCity's Role**

    1.    **Sale.** NatCity anticipates that our role in connection with a Sale would include the following:

- Develop a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Company immediately upon the commencement of this engagement;

- Supervise the execution of confidentiality agreements for potential buyers;

- Supervise and control due diligence requests and deliverables for all potential buyers;

- Solicit competitive offers from potential buyers;

- Advise and assist the Company in structuring the transaction and negotiating the transaction agreements; and

Mr. Steve Grabell
May 7, 2008
Page 2

  • Otherwise assist and advise the Company, its attorneys and
    accountants, as necessary, through closing on a best efforts basis.

In performing the service described above, the Company agrees to furnish or
cause to be furnished to NatCity such information as NatCity reasonably
believes appropriate to the execution of its engagement hereunder (all such
information so furnished being the "Information"). The Company represents
that all Information furnished by it or its agents will be complete and correct
in all material respects, to the best of its knowledge, and that until the
expiration or termination of NatCity's engagement hereunder, it will advise
NatCity immediately of the occurrence of any event or any other change
known by it or its agents that results in the Information ceasing to be
complete and correct in all material respects. The Company recognizes and
confirms that NatCity: (a) will use and rely primarily on the Information and
on information available from generally recognized public sources in
performing the services contemplated hereby without having independently
verified any of the same; (b) does not assume responsibility for accurateness
or completeness of the Information and such other information; and (c) will
not make an appraisal of any of the assets or liabilities of the Company.

The Company agrees that NatCity shall be the Company's exclusive financial
advisor in connection with any Sale Transaction undertaken with respect to
the Company during the term of this Engagement Agreement. The Company
agrees that during the term of this Engagement Agreement, NatCity shall
have the exclusive authority (along with the Company) to initiate and conduct
discussions on behalf of the Company and assist and advise the Company in
its negotiations with all prospective purchasers and investors. In that regard,
the Company agrees to identify to NatCity: (a) all prospective purchasers
and investors who have been in contact with the Company prior to the date
hereof; and (b) all prospective purchasers and investors who come in contact
with the Company during the term of this Engagement Agreement.

NatCity will consult with and advise the Company with respect to the financial
aspects of any proposed Sale Transaction, including price, terms and
conditions of the Sale Transaction. NatCity will not, however, have any
authority to bind the Company or its members to any third party with respect
to any proposed Sale Transaction. Likewise, nothing contained herein shall
require the Company to accept the terms of any proposal for a Sale
Transaction presented by NatCity and the Company shall at all times have
the right to reject any proposed Sale Transaction presented by NatCity
regardless of the terms proposed, subject to terms and conditions imposed
by the Bankruptcy Court and the rights of the Company's Official
Committee of Unsecured Creditors (the "Committee"), whatever they may
be.

B.  **NatCity's Compensation**

As compensation for providing the foregoing services, the Company shall provide
to NatCity the following:

Mr. Steve Grabell
May 7, 2008
Page 3

1.    Initial Fee.  An initial fee (the "Initial Fee") equal to $25,000, due upon Court Approved of this Engagement Agreement.

2.    Sale Fee.  Upon the consummation of a Sale Transaction (as such term is hereafter defined), the Company shall pay NatCity a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at, and as a condition of, closing of such transaction, equal to $225,000 plus 5% of the amount by which any alternative Sale exceeds the sum of the current offer of Arch Acquisition plus its approval breakup fee and expense reimbursement.

3.    In addition to the foregoing fees, whether or not a Sale is consummated and in addition to the fees noted above which may be payable to NatCity hereunder, the Company agrees to reimburse NatCity upon demand for NatCity's reasonable out-of-pocket expenses incurred in connection with the subject matter of this engagement, including, but not limited to travel expenses; provided, however, that the total of such expenses shall be capped at $20,000 absent Debtor and Committee consent.

C.    **Definitions**

For the purpose of this Engagement Agreement:

**Sale Transaction** means and includes any transaction involving the sale or transfer, directly or indirectly, of all or a significant portion of the assets or securities of the Company or any other extraordinary corporate transaction involving the Company, whether by way of consolidation, negotiated purchase or any combination of the aforementioned.

**Transaction** shall mean a Sale Transaction as determined above.

**Transaction Fee** shall mean a Sale Fee as determined above.

D.    **Term of Engagement**

This Engagement Agreement shall remain in force (the "Engagement Term") until the earlier of (i) closing of a Sale, or (ii) six (6) months from the date of signing this Engagement Agreement and may thereafter be terminated by either party upon thirty (30) days prior written notice to the other; provided, however, that NatCity may terminate this Engagement Agreement by written notice immediately upon the closing of a Sale.  Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that:  (i) termination of the Engagement Agreement shall not affect NatCity's right to indemnification under the Indemnification paragraph below; (ii) the Company shall remain obligated to reimburse NatCity for any reasonable expenses incurred through the date of the termination of the Engagement Agreement in accordance with the terms of this Engagement Agreement; and (iii) if a Sale is consummated within six (6) months of the termination of this Engagement Agreement, the Company shall remain obligated to pay a Transaction Fee, as calculated above.  Sections B, D, E, F, G and H (entitled Compensation, Term of Engagement, Indemnification, Confidentiality, Miscellaneous, and Scope of Duties, respectively) of, and

Mr. Steve Grabell
May 7, 2008
Page 4

Attachments A and B to, this Engagement Agreement shall survive the expiration
or termination of this Engagement Agreement indefinitely.

E.    **Indemnification**

The Company hereby acknowledges and agrees to the indemnification
arrangements between the parties hereto as described on Attachment A hereto,
which Attachment is incorporated herein and forms an integral part hereof.

F.    **Miscellaneous**

This Engagement Agreement and its validity, interpretation, performance and
enforcement shall be governed by and construed, interpreted and enforced in
accordance with the laws of the State of New Jersey without giving effect to
principles of conflicts of laws. This Engagement Agreement sets forth the entire
understanding of the parties relating to the subject matter hereof and supersedes
and cancels any prior communications, understandings and agreements between
the parties hereto. This Engagement Agreement is subject to approval of the
Bankruptcy Court, and cannot be modified or changed, nor can any of its
provisions be waived, except by written agreement signed by both parties,and
either approved: (a) by the Committee; or (b) by Order of the Bankruptcy Court.
The Company acknowledges and agrees to the terms and conditions set forth in
the NatCity special disclosure statement which is attached hereto as Attachment
B, which Attachment is incorporated herein and forms an integral part hereof. The
benefits of this Engagement Agreement shall inure to the respective successors
and assigns of the parties hereto and of the Indemnified Parties and their
respective successors, assigns and representatives, and the obligations and
liabilities assumed in this Engagement Agreement by the parties hereto shall be
binding upon their respective successors and assigns.   This Engagement
Agreement may be executed in any number of counterparts, which counterparts,
taken together, shall constitute one and the same Engagement Agreement.

G.    **Scope of Duties**

The Company hereby acknowledges and agrees that:  (i) it is a sophisticated
business enterprise that has retained NatCity for the limited purposes set forth in
this Engagement Agreement and that the rights and obligations of the parties
hereto are contractual in nature; and (ii) NatCity has not made any warranties or
guarantees of any nature with respect to the success or satisfactory conclusion of
any Sale Transaction or as to the economic, financial or other results which may
be obtained or experienced by the Company as a result thereof.  Each of the
Company and NatCity disclaim any intention to impose fiduciary duties or
obligations on the other by virtue of the engagement contemplated by this
Engagement Agreement, and no other person or entity shall have any rights or
obligations hereunder except as expressly provided herein.   Notwithstanding
anything to the contrary in this Engagement Agreement, it is expressly agreed that
the Committee is an intended beneficiary of this Engagement Agreement, and
shall have full, complete, and unfettered access to NatCity in connection with its
role and duties as Debtor's sale consultant/investment banker.

Mr. Steve Grabell
May 7, 2008
Page 5

## H.   Other Matters

This Engagement Agreement is subject to approval, and under the jurisdiction, of the Bankruptcy Court.. NatCity's engagement hereunder shall be approved under Sections 327 and 328(a) of the U.S. Bankruptcy Code. Consistent with its other investment banking engagements, NatCity will not be required to maintain time records. NatCity's compensation for it Sale Fee shall be subject to approval by written Application to be filed with the Bankruptcy Court.

The Company agrees that NatCity has the right following the Sale Transaction, to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder

Upon Bankruptcy Court approval of the retention, NCB, NatCity's parent, will waive its pre-petition subordinated claim against the Company.

This Engagement Agreement may be signed in counterparts. Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties, and either approved by the Committee or by Order of the Bankruptcy Court to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**NATCITY INVESTMENTS, INC.**

By:

_____
J. Scott Victor
Senior Managing Director

ACCEPTED:

**SHAPES/ARCH HOLDINGS, LLC**

By:

_____
Steve Grabell
Chief Executive Officer

_____
Date   5/13/08

{00062572.1 / 0631-001}

Mr. Steve Grabell
May 7, 2008
Page 6

## ATTACHMENT A
## INDEMNIFICATION PROVISIONS

The Company agrees to indemnify, defend and hold harmless NatCity and its affiliates, the respective partners, directors, officers, agents and employees of NatCity and its affiliates and each other person, if any, controlling NatCity or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to NatCity's acting for the Company under the Agreement of which this Attachment A forms a part, including, without limitation, in connection with (i) any act or omission by NatCity related to its engagement as financial advisor/sale consultant/investment banker under the Engagement Agreement or (ii) NatCity's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement.   The Company will reimburse the Indemnified Parties for any legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that the Company shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted primarily from NatCity's gross negligence or willful misconduct in the performance of its duties under Agreement.   The Company agrees that reliance by NatCity on any publicly-available information, the information supplied by the Company to NatCity in connection with said Agreement or any directions furnished by the Company shall not constitute negligence, bad faith or willful misconduct by NatCity.

In order to provide for just and equitable contribution, if a claim for indemnification is made pursuant to said Agreement but it is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, that such indemnification may not be enforced in such case, the Indemnified Parties, on the one hand, and the Company, on the other hand, shall each contribute to the amount paid or payable as a result of such losses, claims, damages or liabilities in such proportion as is appropriate to reflect the relative fault of the Indemnified Parties, on the one hand, and the Company, on the other hand, and the relative benefits to the Indemnified Parties, on the one hand, and the Company, on the other hand, arising out of the particular matter or transaction which gave rise to such loss, claim, damage, liability or costs, and all other relevant equitable considerations shall also be taken into account.   No person found liable for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.   Notwithstanding the foregoing, NatCity shall not be obligated to contribute any amount hereunder that exceeds the amount of fees previously received by NatCity hereunder.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.

Mr. Steve Grabell
May 7, 2008
Page 7

### ATTACHMENT B
### NATCITY INVESTMENTS, INC.
### SPECIAL DISCLOSURE STATEMENT

NatCity Investments, Inc. ("NatCity") is a wholly-owned subsidiary of National City Corporation ("NCC"). NatCity is a broker-dealer registered with the Securities and Exchange Commission and a member of the National Association of Securities Dealers, Inc. and the Securities Investor Protection Corporation.

NCC is also the parent of several banks, including National City Bank. NatCity is not a bank; it is a separate corporate entity from its affiliated bank subsidiaries of NCC. The obligations of NatCity are not obligations of any of its affiliate banks, and none of its affiliated banks are responsible for, or guarantee, the securities sold, offered or recommended by NatCity. Except in certain specified circumstances, securities and other investment products offered, sold or recommended by NatCity are not bank deposits or obligations, and are not insured by the Federal Deposit Insurance Corporation ("FDIC") or any other federal or state agency. NatCity will sell, as agent, banker's acceptances or certificates of deposit issued by its affiliate banks and by unaffiliated third party banks. Any certificates of deposit sold by NatCity are insured by the FDIC only to the extent that the FDIC insures the deposits of the issuing bank.

NatCity's banking affiliates may be lenders to issuers of securities that NatCity underwrites or places, in which case the proceeds of the securities offerings underwritten or placed may be used to repay such loans. Please refer to the relevant offering disclosure documents for a discussion of any such lending arrangement. Brokerage and investment advisory customers of NatCity should be aware that NatCity underwrites and deals in securities, and may buy and sell, as agent or as principal, securities as to which it renders brokerage or investment advisory services. NatCity and its affiliated banks intend to share credit information concerning their respective customers. NatCity's customers will be deemed to have consented to such sharing of information unless an objection to such disclosure is made in writing and delivered to NatCity.

# Exhibit B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
Attorneys for the Debtors

| In re: | Case No. 08-14631(GMB) |
| | (Jointly Administered) |
| SHAPES/ARCH HOLDINGS L.L.C., et al., | |
| | Judge: Gloria M. Burns |
| Debtors. | |
| | Chapter: 11 |

Recommended Local Form:          ☑ Followed          ☐ Modified

### APPLICATION FOR RETENTION OF NATCITY INVESTMENTS, INC. AS SALES CONSULTANT/INVESTMENT BANKER FOR THE DEBTORS PURSUANT TO SECTIONS 327 AND 328(a), EFFECTIVE AS OF MAY 7, 2008

1.     The applicants, Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), Shapes L.L.C.

("Shapes"), Delair L.L.C. ("Delair"), Accu-Weld L.L.C. ("Accu-Weld") and Ultra L.L.C.

("Ultra", and with Shapes/Arch, Shapes, Delair and Accu-Weld, collectively, the "Debtors"), by

and through Steven Grabell, CEO of Shapes/Arch and Shapes, are the

☐ Trustee:          ☐ Chap. 7          ☐ Chap. 11          ☐ Chap. 13

☑ Debtors:          ☑ Chap. 11          ☐ Chap. 13

☐ Official Committee of _____

2.     The Applicants seek to retain the following professional, NatCity Investments,

Inc. ("NatCity"), under Sections 327 and 328(a) of the Bankruptcy Code, effective as of May 7,

2008, to serve as:

CHERRY_HILL\42990\3 220718.000

☐ Attorney for: ☐ Trustee ☐ Debtors-in-Possession

☐ Official Committee of _____

☐ Accountant for: ☐ Trustee ☐ Debtor-in-Possession

☐ Official Committee of _____

☑ Other Professional:

☐ Realtor ☐ Appraiser ☐ Special Counsel

☐ Auctioneer ☑ Other (specify): sales consultant/investment banker to the Debtors

3.      The employment of the professional is necessary because: On March 16, 2008, the Debtors filed their petitions for relief under Chapter 11, of the Bankruptcy Code. Moreover, pursuant to the competitive plan process agreed to by the Debtors, the Committee and other parties-in-interest, and approved by the Court as part of the Final Order Authorizing Debtors to Obtain Post-Petition Financing and Grant Security Interest and Superpriority Administrative Expense Status, entered on May 6, 2008, the Debtors agreed to retain a sales consultant/investment banker to develop, manage and oversee the competitive plan process in order to maximize recovery for the estates. The Debtors believe that the retention of NatCity, as their sales consultant/investment banker, is necessary to enable the Debtors to execute faithfully their duties and responsibilities in these cases.

4.      The professional has been selected because: of NatCity's extensive experience and expertise in advising troubled companies in connection with the sale of their businesses and related issues and its experience and expertise in representing companies in Chapter 11 proceedings, workouts and restructurings.

5.      The professional services to be rendered to the Debtors are as follows:

(a)     Develop a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the company immediately upon the commencement of this engagement;

2

    (b)    Supervise the execution of confidentiality agreements for potential buyers;

    (c)    Supervise and control due diligence requests and deliverables for all
potential buyers;

    (d)    Solicit competitive offers from potential buyers;

    (e)    Advice and assist and advise the company in structuring the transaction
and negotiating the transaction agreements; and

    (f)    Otherwise assist the company, its attorneys and accountants, as necessary,
through closing on a best efforts basis.

The proposed arrangement for compensation is as follows: Subject to Court approval, NatCity
will be paid a flat fee of $250,000, plus 5% of the amount by which an Alternative Transaction
exceeds the sum of the offer by Arch Acquisition plus the break up fee and expense
reimbursement,[1] as more fully described in the Engagement Agreement attached to the
Certification of J. Scott Victor.

    6.    To the best of the applicants' knowledge, the professional's connection with the
debtors, creditors, any other party in interest, their respective attorneys and accountants, the
United States Trustee, or any person employed in the office of the United States Trustee, is as
follows:

    ☐ None

    ☑ Describe connection: Please see the Certification of J. Scott Victor submitted in
support of this Application.

    7.    To the best of the applicant's knowledge, the professional (check all that apply):

    ☑ does not hold an adverse interest to the estate.

    ☑ does not represent an adverse interest to the estate.

    ☑ is a disinterested person under 11 U.S.C. § 101(14).

---

[1] For example, if the winning bid is $7 million to unsecured creditors from a competing bidder,
NatCity would be entitled to a total fee of $275,000 ($250,000 flat fee, plus 5% of $500,000 (the
surplus over the initial bid, break-up fee and expense reimbursement)).

☑ does not represent or hold any interest adverse to the debtors or the estates with respect to the matter for which he/she will be retained under 11 U.S.C. § 327(e).

☑ Other; explain: From time to time, NatCity may represent, or may have represented the Debtors' account debtors, creditors or interest holders of the Debtors in matters unrelated either to the Debtors' cases or to those entities' transactions or dealings with the Debtors. In addition, NatCity is working on other current matters, unrelated to this case, with Debtor's Counsel, Cozen O'Conner, and with Committee Counsel, Cole, Schotz, Meisel, Forman and Leonard. NatCity has conducted a thorough conflict check and has determined that no conflict exists, as more fully described in the Certification of J. Scott Victor, submitted in support of this Application. In the event a potential conflict is discovered, this Application will be updated.

8.     National City Bank ("NCB"), the parent of NatCity, holds a subordinated unsecured claim against the Debtors pursuant to a subordinated note dated December 30, 2003 in the face amount of $1,683,000. NCB was a member of the lender group for the Debtors prior to the current lender group and retained a subordinated claim as part of the refinancing. NCB has agreed to waive its subordinated note upon approval of NatCity's retention herein.

9.     If the professional is an auctioneer, appraiser or realtor, the location and description of the property is as follows: N/A

WHEREFORE, the applicants respectfully request authorization to employ the professional to render services in accordance with this application, with compensation to be paid as an administrative expense in the amounts set forth in this application effective as of May 7, 2008.

Date:   May 13, 2008

Signature of Applicant

Steven Grabell
Name of Applicant

4

# Exhibit C

> UNITED STATES BANKRUPTCY COURT
> DISTRICT OF NEW JERSEY
>
> MARK E. FELGER (MF9985)
> JERROLD N. POSLUSNY, JR. (JP7140)
> COZEN O'CONNOR
> LibertyView, Suite 300
> 457 Haddonfield Road
> Cherry Hill, NJ 08002
> (856) 910-5000
> Attorneys for the Debtors

Order Filed on
5/21/2008
by Clerk U.S. Bankruptcy
Court District of New Jersey

In re:

SHAPES/ARCH HOLDINGS L.L.C., et al.,

      Debtors.

Case No. 08-14631 (GMB)
(Jointly Administered)

Judge: Gloria M. Burns

Chapter: 11

---

Recommended Local Form:       ☐ Followed      ☑ Modified

---

### ORDER AUTHORIZING RETENTION OF NATCITY INVESTMENTS, INC. AS SALES CONSULTANT/INVESTMENT BANKER FOR THE DEBTORS

The relief set forth on the following pages, numbered two (2) through three (3) is hereby
**ORDERED.**

**DATED: 5/21/2008**

Honorable Gloria M Burns
United States Bankruptcy Court Judge

Page 2

Shapes/Arch Holdings L.L.C., et al.

Case No: 08-14631(GMB)

Order Authorizing Retention of NatCity Investments, Inc. as Sales Consultant/Investment Banker for the Debtors

---

In re:        Shapes/Arch Holdings L.L.C., et al.
Case No.:     08-14631 (GMB)
Applicant:    Shapes/Arch Holdings L.L.C., et al.

    ☐ Trustee:          ☐ Chap. 7         ☐ Chap. 11        ☐ Chap. 13

    ☑ Debtors:          ☑ Chap. 11        ☐ Chap. 13

    ☐ Official Committee of _____

Name of Professional:      NatCity Investments, Inc.
Address of Professional:   300 Barr Harbor Drive
                    West Conshohocken, PA  19428

    ☐ Attorney for:     ☐ Trustee         ☐ Debtors-in-Possession

                    ☐ Official Committee of _____

    ☐ Accountant for:   ☐ Trustee         ☐ Debtor-in-Possession

                    ☐ Official Committee of _____

    ☑ Other Professional:

                    ☐ Realtor     ☐ Appraiser       ☐ Special Counsel

                    ☐ Auctioneer ☑ Other (specify):sales consultant/investment
banker to the Debtors

---

Upon the applicants' request for authorization to retain the professional named above,

It is hereby ORDERED as follows:

1.      The applicants, Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C.,

Accu-Weld L.L.C. and Ultra L.L.C., are authorized to retain the above party in the professional

capacity noted.

2.      Compensation shall be paid in such amounts as set forth in the application.

*Approved by Judge Gloria M. Burns May  21, 2008*

Page 3

Shapes/Arch Holdings L.L.C., et al.

Case No: 08-14631(GMB)

Order Authorizing Retention of NatCity Investments, Inc. as Sales Consultant/Investment Banker for the Debtors

---

3.      The effective date of the retention is May 7, 2008.

4.      The indemnification provision contained in the Engagement Letter is subject to

the following terms and conditions:

> if, before the entry of an order closing these Chapter 11 cases,
> NatCity believes that it is entitled to the payment of any amounts
> from the Debtors' estates on account of the indemnification,
> contribution and/or reimbursement obligations under the
> Engagement Letter including, without limitation, the advancement
> of defense costs, NatCity must file an application therefor in, and
> with, the Court, and the Debtors may not pay any such amounts to
> NatCity before the entry of an order by the Court approving
> payment. The United States Trustee, the Debtors, the Official
> Committee of Unsecured Creditors, and any other creditors or
> parties-in-interest shall retain the right to object to whether the
> amount requested is consistent with the indemnity provision in the
> Engagement Letter, as modified by any order of the Court, and the
> amount actually requested is a reasonable amount under the
> circumstances of the case giving rise to the indemnity claim.

CHERRY_HILL\44330102 220718.000

*Approved by Judge Gloria M. Burns May  21, 2008*

# Exhibit D

**Arch Holdings**

Expenses:

| | |
|---|---|
| Data Base Fee: | $2,500.00 |
| Conference Calls: | $916.79 |
| Transportation: | $268.73 |
| Meals: | $193.42 |
| **Total** | **$3,878.94** |