**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Attorneys for the Debtors

| | |
|---|---|
| In re: | : UNITED STATES BANKRUPTCY COURT |
| | : FOR THE DISTRICT OF NEW JERSEY |
| SHAPES/ARCH HOLDINGS L.L.C., et al., | : CHAPTER 11 |
| | : |
| Debtors. | : CASE NO. 08-14631 (GMB) |

**Hearing Date:  October 20, 2008**
**at 10:00 a.m.**

## DEBTORS' AMENDED[1] MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 9019(b) AUTHORIZING AND APPROVING A SETTLEMENT WITH THE ENVIRONMENTAL PROTECTION AGENCY

Shapes/Arch Holdings L.L.C. and its related debtor entities (collectively the "Debtors"),[2]

the reorganized debtors, hereby move (the "Motion") for entry of an order pursuant to 11 U.S.C.

§ 105(a) and Fed. R. Bankr. P. 9019(b) authorizing the Debtors to enter into a settlement

agreement with the Environmental Protection Agency (the "EPA") and approving the settlement

agreement in the form attached hereto as Exhibit "A", (the "EPA Settlement Agreement").  In

support of the Motion, the Debtors respectfully represent as follows:

---

[1] The only changes to the Motion are to paragraphs 20 and 22 and to insert a new paragraph (paragraph 31).
[2] In addition to Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), the following entities, all of which are wholly owned subsidiaries of Shapes/Arch, also filed petitions on the Petition Date (defined below):  Shapes L.L.C. ("Shapes"); Delair L.L.C. ("Delair"); Accu-Weld L.L.C. ("Accu-Weld"); and Ultra L.L.C. ("Ultra").

## BACKGROUND

### A. General

1.      On March 16, 2008 (the "Petition Date"), the Debtors filed their respective petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

2.      These cases are being jointly administered pursuant to this Court's Order of March 18, 2008 under the lead debtor "Shapes/Arch Holdings L.L.C."

3.      No trustee or examiner has been appointed in these cases.

4.      An official committee of unsecured creditors (the "Committee") was appointed on March 31, 2008, and was active in these cases through the Effective Date (defined below).

5.      The Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      Shapes/Arch is a holding company that owns each of the four operating companies - Shapes, Delair, Accu-Weld and Ultra.  The Debtors' predecessor was established in New Jersey in 1952 to produce aluminum windows.  By 1959, the business had expanded and began focusing on producing aluminum extrusions.  The Debtors have consistently expanded their businesses over the years by investing in new facilities and technology and by establishing new product lines.  The Debtors have over 1000 employees, approximately 70% of whom are members of either the International Brotherhood of Teamsters Local 837, or the United Independent Union.

WILMINGTON\80372\4  101386.000

7.      Shapes is the largest operating Debtor with 2007 revenue over $179 million and over 600 employees.  Shapes is a leading producer of custom aluminum extrusions for a variety of industries, including road and rail transportation and commercial and residential construction.  Shapes has been recognized in the "Guinness Book of World Records" for the largest free standing aluminum structure ever created in connection with the restoration of the Statue of Liberty.  Shapes also provided the aluminum scaffolding used in connection with the restoration of the Washington Monument.

8.      Delair manufactures maintenance free aluminum fence systems for residential and commercial use, and manufactures America's most recognized brand of above-ground pools.  Both product lines are sold through dealers, distributors and major retailers throughout the United States.  Delair operates from a 350,000 square foot facility adjacent to Shapes in Delair, New Jersey.

9.      Accu-Weld is a vertically integrated manufacturer of made-to-order vinyl replacement windows and steel doors.  Accu-Weld's products are sold to installers, dealers and home improvement retailers throughout the Northeastern, Mid-Atlantic and Midwestern United States.  Accu-Weld operates out of a 100,000 square foot facility in Bensalem, Pennsylvania.

10.      Ultra is one of the leading suppliers of value branded hardware products in the United States, including locksets, door and window hardware and other decorative hardware.  Ultra has over 8,000 products sourced primarily from China.  Ultra operates from a 75,000 square foot distribution facility in Pennsauken, New Jersey, with two million cubic feet of storage space.

WILMINGTON\80372\4  101386.000

B.  Confirmation of the Debtors' Joint Plan

11.    On May 23, 2008, the Court approved the disclosure statement (the "Disclosure Statement") in support of the Debtors' Third Amended Joint Plan (the "Third Amended Plan"). The Third Amended Plan was filed after the Debtors, Arch Acquisition I, LLC and the Committee resolved certain plan funding issues that had been outstanding at the time the Second Amended Plan was filed.

12.    On July 22, 2008, the Court entered an Order confirming the Debtors' Third Amended Plan, as modified on July 21, 2008.  The Third Amended Plan became effective on August 8, 2008 (the "Effective Date").

**Relief Requested**

13.    By this Motion, the Debtors seek an order of this Court authorizing the Debtors to enter into a settlement agreement with the EPA, and approving the Settlement Agreement.

A.  The Environmental Claims

14.    Numerous environmental claims have been asserted against the Debtors in these Chapter 11 cases arising out of or in connection with the real estate owned by Shapes and Shapes' or Shapes' predecessors operations.  A schedule of the sites from which the claims arise (with a summary of the claims) is attached as Exhibit "B" (which exhibit is attached to the Plan as Schedule 4.4) (collectively, the "Environmental Claims").  A more fulsome explanation of the sites giving rise to the Environmental Claims is set forth on pages 19-26 of the Disclosure Statement.

15.    The Debtors are also one of over two hundred parties involved in environmental litigation arising out of the "Pennsauken Landfill" (one of the sites identified on Exhibit "B"), in

4

which the Plaintiffs are seeking contribution for pollution and natural resources damage to the

Pennsauken Landfill (the "Pennsauken Litigation").  The overwhelming majority of the

Environmental Claims filed against the Debtors are by co-defendants in the Pennsauken

Litigation seeking contribution.

16.    For several weeks prior to the confirmation hearing, the Debtors were engaged in

negotiations with the EPA, the New Jersey Department of Environmental Protection ("NJDEP")

and the Plaintiffs in the Pennsauken Litigation ("Pennsauken Plaintiffs") in an effort to

definitively resolve all Environmental Claims against the Debtors and their estates.  With the

settlement with the EPA, the Debtors have now reached a definitive settlement with each of the

EPA, the NJDEP and the Pennsauken Plaintiffs.  The Debtors believe that the combination of

these three settlements and the releases and contribution protection provided thereunder will

definitively resolve all Environmental Claims asserted against the Debtors and their estates (with

the exception of an alleged natural resources damage claim asserted by NJDEP with respect to

the Debtors' 9000 River Road site).  The Debtors' insurers participated in these negotiations and

approved each of the settlements and the settlements will be funded by the proceeds of the

Debtors' insurance policies.

### B.  The EPA Settlement

17.    The Debtors' Third Amended Plan prior to its modification on July 21, 2008,

provided for the payment of $325,000 to the EPA in full satisfaction and release of all

Environmental Claims held by the EPA against the Debtors.  This payment was the proposed

treatment of the EPA's Claims prior to the Debtors' negotiations with the EPA.

18.    The EPA filed a proof of claim related to the Swope Oil and Chemical Company

site located in Pennsauken, New Jersey ("Swope") on May 15, 2008 in the amount of $18.8

million.  Also, the EPA has asserted that it has the right to file additional claims until September 12, 2008, with respect to all of the sites listed on parts I and II of Exhibit "B".

19.     Beginning in June, the Debtors and the EPA entered into negotiations in an effort to settle the EPA's Environmental Claims against the Debtors and reach an agreement as to the treatment of the EPA's Environmental Claims under the Third Amended Plan.  The negotiations culminated in the parties reaching an agreement in principle just prior to the confirmation hearing on July 22, 2008, at which time the parties reported the agreement in principle to the Court and advised the Court that the agreement remained subject to documentation, the passage of a public comment period and subsequent Court approval.

20.     The Debtors and the EPA have agreed that the Debtors shall pay the amount of $811,924 to the EPA in full and complete satisfaction of EPA's claims under Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607, related to the sites referenced in parts I and II of Exhibit "B," except for the Puchack Wellfield Superfund site in Pennsauken, New Jersey. Specifically, the Claims being settled are all Claims of EPA under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, relating to the following sites:  Swope; the D'Imperio site in Hamilton, New Jersey ("D'Imperio"); the Ewan site in Shamong, New Jersey ("Ewan"); the Lightman Drum Company site in Winslow, New Jersey ("Lightman"); the Chemical Control Corporation site in Elizabeth, New Jersey ("Chemical Control"); and the Berks Associates and Douglassville Disposal site in Douglassville, Pennsylvania ("Douglassville") (collectively, the "Liquidated Sites").

21.     With regard to the Liquidated Sites, the Debtors will be entitled to and will be receiving contribution protection to the fullest extent possible under applicable law and a covenant not to sue from the EPA.  Further, the groups of potentially responsible parties (the "PRP Groups") have informed the Debtors that they do not object to, and in fact support, the EPA Settlement Agreement as it pertains to the D'Imperio, Ewan and Lightman sites.

22.     The Puchack Wellfield Superfund site will be treated as a discharged site (any Environmental Claims arising from the pre-petition acts, omissions or conduct of the Debtors will be discharged), but the Debtors will not receive the benefit of a covenant not to sue or contribution protection from the EPA with respect to this site.

23.     The EPA Settlement Agreement was approved by the Debtors' insurers and the insurers have agreed to provide the payment(s) required under the EPA Settlement Agreement under the Debtors' applicable insurance policies.

24.     The complete terms and conditions of the EPA settlement are more fully set forth in the EPA Settlement Agreement, attached hereto as Exhibit "A" and incorporated herein by reference.

**Basis for Relief Requested**

25.     This Court has the authority to grant the relief requested in this Motion pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order. . .that is necessary or appropriate to carry out the provisions of this title."  Authorizing the Debtors to enter into the Settlement Agreement is beneficial to the Debtors' and their creditors, as it provides a mechanism by which the Debtors can settle, to the fullest extent possible, together with the settlements with the NJDEP and the Pennsauken Plaintiffs approved through the Order

confirming the Debtors' Third Amended Plan, substantially all of the Environmental Claims against them, and ensure that Environmental Claims will be paid by insurance so distributions to general unsecured creditors will not be reduced by deficiency claims held by parties to any litigation related to the Environmental Claims.

26.     Bankruptcy Rule 9019 provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" In re Martin, 91 F. 3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). The approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Nutraquest, Inc., 434 F.3d 639, 645 (3d Cir. 2006).

27.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D.Del. 1998) (quoting Louise's, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. Martin, 91 F.3d at 393. In striking this balance, the court should consider the following factors:

(i)     The probability of success in the litigation;

(ii)    The complexity, expense and likely duration of the litigation;

(iii)   The possibilities of collecting on any judgment which might be obtained;

(iv)    All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and

(v)    Whether the proposed compromise is fair and equitable to the debtors, their creditors, and other parties in interest.

Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  See also Martin, 91 F.3d at 393.[3]  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer Ferry, 390 U.S. at 425.  The TMT Trailer Ferry rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved, rather, the Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'"  10 Collier on Bankruptcy ¶ 9019.2, 9019-4 (15th ed.) (quoting In re Drexel Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991)).  See also In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983).

28.    When considering the merits of the EPA Settlement Agreement, the Debtors focused on:  (i) the expenses that could be incurred in litigating all of the issues presented at each site and the proofs of claim filed by each of the claimants related to each site; (ii) the potential cost and risk of proceeding to seek confirmation of the Third Amended Plan and estimating the EPA's Environmental Claims without an agreement in principle in place with the EPA; (iii) the probability of success in litigating the EPA's Environmental Claims and seeking confirmation of the Third Amended Plan without the agreement in principle in place; (iv) the fairness of the proposed Settlement Agreement to all the parties in interest and the value of finality with respect to EPA's Environmental Claims against the Debtors; (v) the fact that the EPA's Environmental Claims will be satisfied in full by proceeds of applicable insurance policies and the insurers support the settlement; and (vi) the fact that the settlement along with the settlements with the

---

[3] Although the Settlements in these Chapter 11 cases are settlements of claims against the Debtors, the TMT Trailer Ferry factors are nevertheless appropriate factors for the Court to consider.  See Nutraquest, 434 F.3d at 644.

NJDEP and the Pennsauken Plaintiffs will minimize (or eliminate) the prospect of any deficiency

claims falling into Class 10 and diluting the recovery for holders of general unsecured claims.

Accordingly, the Debtors submit that the EPA Settlement Agreement meets the standards set

forth in <u>TMT Trailer Ferry</u>, and should be approved by the Court.

29.     The Debtors believe that the EPA Settlement Agreement reflects a fair and

equitable settlement of the dispute(s) between the Debtors and the EPA, and that the EPA

Settlement Agreement ought to be approved by the Court because it is in the best interests of the

Debtors, their creditors and their estates.

## <u>Notice</u>

30.     Notice of this Motion has been provided to: (a) counsel for CIT, (b) counsel for

Arch, (c) the Office of the United States Trustee, (d) the Internal Revenue Service, (e) the New

Jersey Attorney General, (f) the Commonwealth of Pennsylvania Department of Revenue, (g)

counsel to the Committee, (h) the EPA, (i) the Department of Justice, (j) the Debtors' insurers;

and (k) all parties on the Master Service List.  In light of the nature of the relief requested herein,

the Debtors submit that no further notice is necessary.

31.     This Settlement Agreement will be subject to a 30-day public comment period,

running from publication of a notice of the Settlement Agreement in the Federal Register.  After

the 30-day public comment period has expired, the United States will file with the Court any

comments received concerning the Settlement Agreement, as well as the United States' response

to those comments, and will inform the Court that it supports the motion seeking entry of the

Settlement Agreement unless comments have been submitted indicating that the Settlement

Agreement is inappropriate, inadequate, or improper.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein, including approval of the EPA Settlement Agreement in the form attached hereto as Exhibit "A", and grant such other and further relief as is just and proper.

Dated: September 11, 2008          COZEN O'CONNOR

                                   By: ___*/s/ Jerrold N. Poslusny, Jr.*___
                                       Mark E. Felger
                                       Jerrold N. Poslusny, Jr.

                                       Attorneys for the Debtors

WILMINGTON\80372\4  101386.000

EXHIBIT "A"

Mark E. Felger (MF9985)
Jerrold N. Poslusny (JP7140)
Cozen O'Conner
Liberty View, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Attorneys for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Case No. 08-14631 (GMB) |
|  | (Jointly Administered) |
| Shapes/Arch Holdings L.L.C., et al. |  |
|  | Chapter 11 |
| Debtors |  |

## SETTLEMENT AGREEMENT

## I.  BACKGROUND

WHEREAS,  Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair L.L.C., Accu-

Weld L.L.C., and Ultra L.L.C. (the "Debtors"), filed with the United States Bankruptcy

Court for the District of New Jersey ("Bankruptcy Court")  voluntary petitions for relief

under Title 11 of the United States Code ("Bankruptcy Code") on March 16, 2008

("Petition Date");

WHEREAS, these matters have been consolidated for procedural purposes and

are being administered jointly as Case No. 08-14631(GMB);

WHEREAS, the United States, on behalf of the United States Environmental

Protection Agency ("EPA"), contends that Shapes L.L.C. ("Shapes"), one of the Debtors,

is liable under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., for response costs incurred and to be incurred by the United States in the course of responding to releases and threats of releases of hazardous substances into the environment at the Liquidated Sites (as defined hereinbelow);

WHEREAS, the United States, on behalf of EPA, has filed a proof of claim against Shapes with respect to the Swope Oil Superfund Site located in Pennsauken, New Jersey ("Swope Oil Site"), which alleges that Shapes is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with respect to the Swope Oil Site and sets forth a claim in the amount of $18.8 million, a portion of which was filed as a protective claim;

WHEREAS, Shapes would dispute the United States' contentions and, but for this Settlement Agreement, would object in whole or in part to the United States' proof of claim;

WHEREAS, the United States takes the position that, in view of Section 502(b)(9) of the Bankruptcy Code, 11 U.S.C. § 502(b)(9), it may file additional proofs of claim in this proceeding at any time on or before September 12, 2008;

WHEREAS, Shapes and EPA wish to resolve their differences with respect to the Liquidated Sites and deal with other issues relating to environmental matters as provided herein;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, including, without limitation, the covenants not to sue set forth in Paragraphs 10, 12, and 16, subject to the provisions of Paragraphs 20-22, intending to be

legally bound hereby, the Debtors and the United States hereby agree to the terms and provisions of this Settlement Agreement;

WHEREAS, settlement of the matters governed by this Settlement Agreement is in the public interest and an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or any adjudication on any issue of fact or law, and upon the consent and agreement of the parties to this Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

## II.    DEFINITIONS

1.    Unless otherwise expressly provided herein, terms used in this Settlement Agreement that are defined in CERCLA or its regulations or in the Bankruptcy Code shall have the meaning assigned to them in CERCLA, its regulations, or the Bankruptcy Code.  Whenever terms listed below are used in this Settlement Agreement, the following definitions shall apply:

a.    "Bankruptcy Court" or the "Court" refers to the United States Bankruptcy Court for the District of New Jersey where the Bankruptcy Cases are currently pending.

b.    "Bankruptcy Cases" shall mean the Chapter 11 bankruptcy cases captioned In re Shapes/Arch Holdings L.L.C. et al., Case No. 08-14631 (GMB) (Bankr. D.N.J.).

c.    "CERCLA" means the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as now in effect or hereafter amended.

3

d.     "Claims" has the meaning provided in Section 101(5) of the

Bankruptcy Code.

e.     "Debtors" shall mean Shapes L.L.C., Delair L.L.C., Accu-Weld

L.L.C., and Ultra L.L.C. as debtors, debtors-in-possession, or in a new or reorganized

form as a result of the Bankruptcy Cases.

f.     "Discharged Site" shall mean the Puchack Wellfield Superfund Site

located in Pennsauken Township, NJ, including all areas of the Puchack Wellfield Site

defined by EPA for purposes of the NPL, including any later expansion of the Puchack

Wellfield Site as may be determined by EPA.

f.     "EPA" means the United States Environmental Protection Agency

or any legal successor thereto.

g.     "Effective Date" means the date on which this Settlement

Agreement is approved by the Bankruptcy Court.

h.     "Liquidated Sites" means the following six sites:

i.  Swope Oil Superfund Site, Pennsauken Township, NJ;

ii.  Ewan Superfund Site, Shamong Township, NJ;

iii.  D'Imperio Superfund Site, Hamilton Township, NJ;

iv.  Lightman Drum Company Site, Elizabeth, NJ;

v.  Chemical Control Corporation Site, Elizabeth, NJ; and

vi.  Berks Associates/Douglasville Disposal Site, Douglasville, PA.

A "Liquidated Site" delineated above shall be construed to include (i) for those sites now

or hereafter included on the NPL, all areas of a site as defined by EPA for purposes of the

NPL, including any later expansion of such site as may be determined by EPA, or (ii) for

those sites not included on the NPL, all areas affected or potentially affected by the

release or threatened release of hazardous substances.

        i.        "NPL" means the National Priorities List, 40 C.F.R. Part 300.

        j.        "Plan of Reorganization" or "Plan" means any plan of

reorganization that is confirmed and becomes effective in the Bankruptcy Cases.

        k.        "Prepetition" refers to the time period on or prior to the date of the

commencement of the Bankruptcy Cases.

        l.        "Postpetition" refers to the time period from and after the

commencement of the Bankruptcy Cases.

        m.        "United States" means the United States of America, including all

of its agencies, departments and instrumentalities.

### III.    JURISDICTION

2.      The Court has jurisdiction over the subject matter hereof pursuant to 28

U.S.C. §§ 157 and 1334, and 42 U.S.C. §§ 9607 and 9613(b).

### IV.    PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.      This Settlement Agreement applies to, is binding upon, and shall inure to

the benefit of the United States, the Debtors, and the Debtors' legal successors and

assigns, and any trustee, examiner or receiver appointed in the Bankruptcy Cases.

### V.    TREATMENT OF LIQUIDATED SITES

4.      In settlement and satisfaction of the Claims of EPA under CERCLA with

respect to the Liquidated Sites, Debtors shall make the payments set forth below

("Payment Amounts") to EPA, totaling $811,924, within 30 days of the Effective Date.

EPA shall receive no distributions from the Debtors with respect to the Debtors'

liabilities and obligations under CERCLA for the Liquidated Sites other than as set forth in this Settlement Agreement.

a.    With respect to the Swope Oil Superfund Site located in Pennsauken Township, NJ, Debtors shall pay the United States on behalf of EPA $375,000 in full;

b.    With respect to the Ewan Superfund Site located in Shamong Township, NJ, Debtors shall pay the United States on behalf of EPA $62,418 in full;

c.    With respect to the D'Imperio Superfund Site located in Hamilton Township, NJ, Debtors shall pay the United States on behalf of EPA $149,506 in full;

d.    With respect to the Lightman Drum Company Site located in Winslow Township, NJ, Debtors shall pay the United States on behalf of EPA $225,000 in full;

e.    With respect to the Chemical Control Corporation Site located in Elizabeth, N.J., Debtors shall pay the United States on behalf of EPA zero dollars;

f.    With respect to the Berks Associates/Douglassville Disposal Site, located in Douglasville, PA, Debtors shall pay the United States on behalf of EPA zero dollars.

5.    The Payment Amount for each Liquidated Site set forth in Paragraphs 4.a-4.d shall be deposited in the EPA Hazardous Substance Superfund or, in EPA's sole discretion, some or all of the Payment Amounts may be placed in a Special Account for the Liquidated Sites set forth in Paragraphs 4.a-4.d within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Swope Oil Superfund Site, the Ewan Superfund Site, the D'Imperio

6

Superfund Site, and/or the Lightman Drum Company Site, respectively.  Pursuant to

Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), the Payment Amount for each

Liquidated Site shall reduce the potential liability of other potentially responsible parties

at that Liquidated Site by the amount of the Payment Amount.

## VI.  **TREATMENT OF PAYMENT AMOUNTS**

6.      The Payment Amounts do not constitute, nor shall they be construed as,

forfeitures, fines or penalties (or payments in lieu thereof), and nothing herein is

intended, or shall be construed, as an admission by Debtors of any facts or any violation

of law.  Notwithstanding the foregoing, Debtors agree to comply with all terms of this

Settlement Agreement upon the Effective Date.

7.      Proof of Claim No. 644 shall be deemed satisfied in full in accordance

with the terms of this Settlement Agreement.  EPA shall be deemed to have filed a proof

of claim for other matters addressed in this Settlement Agreement, which proof of claim

shall be deemed satisfied in full in accordance with the terms of this Settlement

Agreement.

## VII.  **DISTRIBUTION INSTRUCTIONS**

8.      Distributions to the United States shall be made by FedWire Electronic

Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in

accordance with current electronic funds transfer procedures.  Payment shall be made in

accordance with instructions provided to the Debtors by the Financial Litigation Unit of

the United States Attorney's Office for the District of New Jersey and shall reference the

Civil Action Number 08-14631(GMB) and DOJ File Number 90-11-3-09456.  The

Debtors shall transmit written confirmation of such payments to the United States at the addresses specified in Paragraph 19.

## VIII.  TREATMENT OF DISCHARGED SITE

9.    With respect to the Discharged Site, all liabilities and obligations of the Debtors to EPA under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, arising from Prepetition acts, omissions or conduct of the Debtors including, without limitation, the Prepetition generation, transportation, disposal or release of hazardous wastes or materials or the Prepetition ownership or operation of hazardous waste facilities, shall be discharged under Section 1141 of the Code by the confirmation of a Plan of Reorganization, and the EPA shall receive no distributions in the Chapter 11 Cases with respect to such liabilities and obligations.

## IX.    COVENANTS NOT TO SUE AND RESERVATION OF RIGHTS

10.    In consideration of all of the foregoing, including, without limitation, the payments that will be made pursuant to the terms of this Settlement Agreement, and except as specifically provided in Paragraphs 14 through 15, EPA covenants not to file a civil action or to take any administrative or other action against Debtors pursuant to Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607, with respect to each of the Liquidated Sites.  These covenants not to sue shall take effect when all of the payments required by Paragraph 4 have been made.

11.    This Settlement Agreement in no way impairs the scope and effect of the Debtors' discharge under Section 1141 of the Bankruptcy Code as to any third parties or as to any Claims that are not addressed by this Settlement Agreement.

8

12.    Without in any way limiting the covenant not to sue (and the reservations thereto) set forth in Paragraph 10 and notwithstanding any other provision of this Settlement Agreement, such covenant not to sue shall also apply to the Debtors' successors and assigns, managers, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, manager, officer, director, employee, or trustee of any Debtor is based solely on its status as and in its capacity as a successor or assign, manager, officer, director, employee, or trustee of that Debtor.

13.    The covenants not to sue contained in Paragraphs 10 and 12 of this Settlement Agreement extend only to the Debtors and the persons described in Paragraphs 10 and 12 above and do not extend to any other person.

14.    The covenants not to sue contained in Paragraphs 10 and 12 of this Settlement Agreement shall not apply to nor affect any action based on (i) a failure to meet a requirement of this Settlement Agreement; (ii) criminal liability; and (iii) conduct of the Debtors at any Liquidated Site occurring after the date of lodging of this Settlement Agreement which would give rise to liability under 42 U.S.C. §§ 9606 and 9607(a)(1)-(4).

15.    Nothing in this Settlement Agreement shall be deemed to limit the authority of the United States to take response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the United States pursuant to that authority.  Nothing in this Settlement Agreement shall be deemed to limit the information gathering authority of the United States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal or state law or

regulation, or to excuse the Debtors from any disclosure or notification requirements imposed by CERCLA, the Resource Conservation and Recovery Act, or any other applicable federal or state law or regulation.

16.    The Debtors hereby covenant not to sue and agree not to assert or pursue any claims or causes of action against the United States with respect to the Liquidated Sites including, but not limited to, any direct or indirect claim for reimbursement from the Hazardous Substances Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through Sections 106(b)(2), 111, 112, 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9611, 9612, 9613, or any other provision of law; any claim against the United States, including any department, agency or instrumentality of the United States, under Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613 related to the Liquidated Sites; or any claims arising out of response activities at the Liquidated Sites. Nothing in this Settlement Agreement shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, 40 C.F.R. § 300.700(d).

## X.    CONTRIBUTION PROTECTION

17.    The Debtors are entitled to protection from contribution actions as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for the "matters addressed" by this Settlement Agreement.  The "matters addressed" by this Settlement Agreement shall include all response actions taken or to be taken and all response costs incurred or to be incurred by the United States or any other person (except for the states of New Jersey and Pennsylvania) with respect to the Liquidated Sites.

18.     The Debtors agree that with respect to any suit for contribution brought against any of them after the Effective Date for matters related to this Settlement Agreement, they will notify the United States within fifteen business days of service of the complaint upon them.  In addition, in connection with such suit, the Debtors shall notify the United States within fifteen business days of service or receipt of any Motion for Summary Judgment and within fifteen business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Section IX (Covenants not to Sue and Reservation of Rights)).

## XI.    NOTICES AND SUBMISSIONS

19.     Whenever, under the terms of this Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below via U.S. mail, unless those individuals or their successors give notice of a change of address to the other parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Except as otherwise provided in this Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any written notice requirement in the Settlement Agreement with respect to the United States, and the Debtors, respectively.

As to the United States:

Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
1425 New York Ave.  N.W.
Washington, D.C. 20005
Ref. DOJ File No. 90-11-3-09456

Donald G. Frankel
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Suite 616
One Gateway Center
Newton, MA 02458

Michael J. van Itallie
Assistant Regional Counsel
EPA Region 2
290 Broadway
New York, NY 10007-1866

New Jersey Remediation Branch
Emergency and Remedial Response Division
EPA Region 2
290 Broadway
New York, NY 10007-1866
Attention: Branch Chief

Richard Rice
26 West Martin Luther King Drive
Cincinnati Finance Center, MS: NWD
Cincinnati, OH 45268

As to the Debtors:

Steven Grabell, Esquire
Chief Executive Officer
9000 River Road
Delair, NJ  08110

Mark E. Felger, Esquire
Jerrold N. Poslusny, Jr., Esquire
Cozen O'Connor
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ  08002

## XII.    <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

20.    This Settlement Agreement shall be subject to approval of the Bankruptcy
Court.  The Debtors shall promptly seek approval of this Settlement Agreement under
Bankruptcy Rule 9019 or other applicable provisions of the Bankruptcy Code.  The
hearing on Debtors' request for such approval shall not be held until the United States
informs the Bankruptcy Court of any public comments on the Settlement Agreement and
the United States' responses to those comments.

21.    This Settlement Agreement shall be lodged with the Bankruptcy Court for
public notice and comment for a period not less than ten days.  After the conclusion of
the public comment period, the United States will file with the Bankruptcy Court any
comments received, as well as the United States' responses to the comments, and at that
time, if appropriate, the Bankruptcy Court will be requested by motion of the United
States to approve the Settlement Agreement.  The United States reserves the right to
withdraw or withhold its consent if the comments regarding the Settlement Agreement
disclose facts or considerations indicating that the Settlement Agreement is not in the
public interest.

22.    If for any reason (i) the Settlement Agreement is withdrawn by the United
States as provided in Paragraph 21, (ii) the Settlement Agreement is not approved, or (iii)
the Bankruptcy Cases are dismissed or converted to cases under Chapter 7 of the
Bankruptcy Code before the effective date of a Plan of Reorganization: (a) this
Settlement Agreement shall be null and void and the parties shall not be bound hereunder
or under any documents executed in connection herewith; (b) the parties shall have no
liability to one another arising out of or in connection with this Settlement Agreement or

under any documents executed in connection herewith; (c) this Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value, and it shall be as if they had never been executed; and (d) this Settlement Agreement, any statements made in connection with settlement discussions, and any documents prepared in connection herewith may not be used as evidence in any litigation between the parties.

## XIII.   AMENDMENTS/INTEGRATION AND COUNTERPARTS

23. This Settlement Agreement and any other documents to be executed in connection herewith shall constitute the sole and complete agreement of the parties hereto with respect to the matters addressed herein.  This Settlement Agreement may not be amended except by a writing signed by all parties to this Settlement Agreement.

24. This Settlement Agreement may be executed in counterparts each of which shall constitute an original and all of which shall constitute one and the same agreement.

## XIV.   RETENTION OF JURISDICTION

25. The Court (or, upon withdrawal of the Court's reference, the U.S. District Court of the District of New Jersey) shall retain jurisdiction over the subject matter of this Settlement Agreement and the parties hereto for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR THE UNITED STATES OF AMERICA:

Date: _4 September 2008_ By: _____

Ronald J. Tenpas
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

Date: _9/5/08_ By: _____

Donald G. Frankel
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Suite 616
One Gateway Center
Newton, MA 02458

FOR THE UNITED STATES ENVIRONMENTAL PORTECTION AGENCY:

Date: _8/21/08_ By: _____

George Pavlou
Acting Director
Emergency and Remedial Response
   Division
EPA Region 2
290 Broadway
New York, NY 10007-1866

Date: _8/12/08_ By: _____

Michael J. van Itallie
Assistant Regional Counsel
EPA Region 2
290 Broadway
New York, NY 10007-1866

FOR THE SHAPES/ARCH HOLDINGS L.L.C.:

Date: _____8/19/08_____          By: _____
                                        Steven Gralell, CEO

FOR SHAPES L.L.C.:

Date: ___8/18/08___         By: _____

Steven Grabell, CEO

FOR DELAIR L.L.C.:

Date: _____8/18/08_____          By: _____
                                      Steven Grabell, VP

18

FOR ACCU-WELD L.L.C.:

Date: _____8/13/08_____        By: _____

Steven Gresell, VP

19

FOR ULTRA L.L.C.:

Date: _____8/18/08_____          By: _____

Steven Grobell, VP.

EXHIBIT "B"

**SUPPLEMENT TO SCHEDULE 4.4\***

**SUPPLEMENT TO SCHEDULE 4.4\***

**I.  Aluminum Shapes USEPA Lead Off-Site Environmental Liability CERCLA § 106 Sites**

**Ewan Superfund Site, Shamong Township, New Jersey**

  ☐ National Priorities List Site: EPA ID #NJD98076 1365.
  ☐ Aluminum Shapes is a low percentage/volume PRP.
  ☐ An Amended Complaint for Natural Resource Damages was filed against 22 parties.
  ☐ There are a number of PRP's who have been addressing site remediation.

**D'Imperio Superfund Site, Hamilton Township, New Jersey**

  ☐ National Priorities List Site:  EPA ID # NJD980529416.
  ☐ Aluminum Shapes is a low percentage/volume PRP.
  ☐ There are a number of PRP's who have been addressing site remediation.
  ☐ The claim for Natural Resource Damages was settled with the NJDEP.

**Swope Oil and Chemical Company Superfund Site, Pennsauken, New Jersey**

  ☐ National Priorities List Site:  EPA ID #NJD04 1743220.
  ☐ Aluminum Shapes is a low percentage/volume PRP.
  ☐ There are a number of participating and cooperating PRP's whom have addressed site remediation.

\*  All of the information in this Schedule is based upon the Debtors' present knowledge.

**SUPPLEMENT TO SCHEDULE 4.4\***

## II.    Aluminum Shapes USEPA Lead Off-Site Environmental Liability Non-CERCLA § 106

### Puchack Wellfield, Pennsauken Township, New Jersey
(This Site is also subject to NJDEP Directives)

- ☐ National Priorities List Site:  EPA ID #NJD98 1084767.
- ☐ USEPA Estimated Costs - $17,600,000.00.
- ☐ EPA has issued a Record of Decision against another unrelated entity for chromium remediation using an in-situ geochemical fixation technology.

### Lightman Drum Company Site, Winslow Township, New Jersey

- ☐ CERCLA ID #02-2000-2034.
- ☐ There are approximately 30 PRP's who been participating in addressing site remediation issues.
- ☐ Aluminum Shapes has denied any liability at the site and has its defenses.

### Chemical Control Corporation, Elizabeth, New Jersey

- ☐ National Priorities List Site:  EPA ID # NJD000607481.
- ☐ Aluminum Shapes was a *de minimis* contributor.
- ☐ Liability with the EPA was resolved pursuant to a consent decree.

### Berks Associates/Douglassville Disposal, Douglassville, Pennsylvania

- ☐ National Priorities List Site:  CERCLIS ID #PAD002384865.
- ☐ There is no NJDEP claim as this site is located in Pennsylvania.

## SUPPLEMENT TO SCHEDULE 4.4*

**III.    Aluminum Shapes New Jersey Department of Environmental Protection Lead Off-Site Environmental Liabilities**

**-NONE-**

**SUPPLEMENT TO SCHEDULE 4.4\***

### IV.      State Environmental Claims and Environmental Litigation

### 9000 River Road, NJDEP 1992 Directive and Notice to Insurers

☐   NJDEP issued an Approval Letter for the 60 Day Work Plan.

### Harris v. Advanced Supply Process Company, et al., Superior Court of New Jersey, Camden County, Law Division, Docket No.:  L-03815-02

☐   Class Certification was denied.
☐   The Court granted Summary Judgment to Aluminum Shapes and other defendants.
☐   Aluminum Shapes was dismissed from the case.
☐   This case is currently on appeal before the Appellate Division.

### Pennsauken Solid Waste Management Authority, et al. v. Ward Sand Material Co., Inc. et. al. Superior Court of New Jersey, Camden County, Law Division, Docket No.: L-13345-91

☐   Plaintiffs allege that defendants are responsible for the surface and groundwater contamination at the Pennsauken Landfill.
☐   There are over 200 parties in the case, including the former owner of the landfill, haulers and generators.
☐   Landfill leachate has been detected on the property of Aluminum Shapes.
☐   Aluminum Shapes has a counterclaim against the Plaintiffs.

### Buzby Brothers Landfill, Voorhees, New Jersey

☐   Not a National Priorities List Site:  EPA ID #NJD00305524.
☐   Aluminum Shapes settled for $40,000.00.