**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
Bruce Buechler, Esq. (BB 0324)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400
*Attorneys for Euler Hermes ACI*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SHAPES/ARCH HOLDINGS L.L.C., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-14631 (GMB)<br><br>Jointly Administered<br><br>Hearing Date:  September 22, 2008 at 10:00 a.m.<br><br>Oral Argument Requested |

**EULER HERMES ACI'S OPPOSITION**
**TO DEBTORS' OBJECTION SEEKING TO RECLASSIFY THE**
**ADMINISTRATIVE CLAIM OF EULER HERMES ACI, AS ASSIGNEE**
**OF RUSAL AMERICA CORP., TO A GENERAL UNSECURED CLAIM**

Euler Hermes ACI ("Euler"), as assignee of Rusal America Corp. ("Rusal"), a creditor of the above-captioned debtors (the "Debtors"), by and through its undersigned attorneys, hereby submits this opposition (the "Opposition") to the Debtors' objection (the "Objection") seeking to reclassify the administrative claim of Euler, as assignee of Rusal, to a general unsecured claim.  In support of this Opposition, Euler respectfully states as follows:

1.      Pursuant to 11 U.S.C. § 503(b)(9), Euler holds a valid administrative claim in the amount of $959,059.54 for goods shipped, delivered and received by the Debtors in the 20 days prior to the commencement of their bankruptcy cases (the "Section 503(b)(9) Claim").  The Debtors do not otherwise dispute the legal validity or amount of Euler's Section 503(b)(9) Claim, but instead contend that the invoices underlying such claim were paid by the

Debtors in full prior to the commencement of the Debtors' bankruptcy cases on March 16, 2008

(the "Petition Date").  Opposition at ¶ 17-18.

2.       As the sole basis for this contention, the Debtors rely on inconspicuous

notations made in the "Remark" section of certain wire transfer transaction detail reports

apparently sent to the Debtors' bank, J.P. Morgan Chase (the "Detail Reports", annexed as

Exhibit "B" to the Debtors' Objection), which purportedly evidence the Debtors' direction to

Rusal to apply the subject wire transfer payments to the particular invoices that form the basis of

Euler's Section 503(b)(9) Claim.[1]   However, this alleged direction regarding the application of

payments was, at best, made to J.P. Morgan Chase, the Debtors' bank, and was never made to

Rusal prior to or at the time of Rusal's receipt of the payments.

3.       Furthermore, as set forth in the Certification of Richard Kellner, Rusal's

CEO, submitted herewith (the "Kellner Cert."), any notation on the Detail Reports would not be

binding on Rusal under the terms of the Addendum to the sales contract between the Debtors and

Rusal (the "Addendum", attached to the Kellner Cert. as Exhibit "A").  Kellner Cert. at ¶ 3.  The

section of the Addendum titled "Remittances" specifically provides as follows:

> No receiving agency or depository has authority to settle claims for
> Seller or to accept payment tendered as payment in full.
> Therefore, Buyer agrees that notwithstanding any endorsements or
> other legend appearing on Buyer's checks, drafts or other orders for
> payment of money, they do not because of such endorsement or
> legend, or otherwise, constitute payment in full or settlement of
> account.

Therefore, under the express terms of the parties' sales contract, any notation by the Debtors in

the Detail Reports with respect to allocation of payments would not be binding on Rusal even if

Rusal's bank, Wachovia Bank, could be said to have received the Debtors' purported directions.

---

[1] Notwithstanding the Debtors' assertion to the contrary, see Objection at ¶ 25, the first of the five Detail Reports
submitted by the Debtors contains no "Remark" section and no notation with respect to the intended application of
the subject payment.  See Exhibit "B" to the Objection.  The Debtors further erroneously allege that the total amount
of the wire transfers at issue equals the exact amount of Euler's administrative claim.  In fact, there is a $29.65
difference ($959,059.54 claim amount minus $959,029.89 wire transfer total).

4.      As set forth in detail in the Kellner Cert., Rusal never received a copy of the Detail Reports from the Debtors at all and did not even have access to the Detail Reports either prior to or contemporaneously with receiving the subject wire transfer payments.  Kellner Cert. at ¶ 2.  Rather, the Detail Reports were apparently sent by the Debtors to their bank, J.P. Morgan Chase, to initiate the wire transfer of funds to Rusal's bank, Wachovia Bank.  Id. Furthermore, prior to the Petition Date and separate and apart from the language in the Addendum to the sales contract, Rusal never received any notice from the Debtors or their agents directing that any monies received by Rusal for payment of outstanding invoices be applied to any particular invoices prior to Rusal's receipt of the funds.  Id.  Thus, in the absence of any specific direction from the Debtors to the contrary, Rusal was entitled to, and did in fact, apply the subject wire transfer payments received from the Debtors to Rusal's oldest open invoices consistent with Rusal's ordinary course of business in dealing with the Debtors over the course of five-plus years.  Id.  at ¶ 7.  Rusal never credited the wire transfers in question to the goods shipped, delivered and received by the Debtors in the 20 days prior to the Petition Date. Id. Thus, Rusal was never paid for such goods which form the basis of the Section 503(b)(9) Claim. Id.

5.      While the Debtors rely on New Jersey law in support of their Objection, the Addendum provides that the sales contract is to be governed by and construed under the laws of the State of New York.  See Addendum, attached to the Kellner Cert. as Exhibit "A".  Thus, Euler submits that New York law is applicable here.[2]

---

[2] New Jersey law on the issues discussed herein appears to be substantially the same as the law of New York.  Under New Jersey law, "a creditor who is owed more than one debt by a debtor may apply the payments to the debtor's account in any manner it chooses so long as the debtor has not issued specific directions to the contrary."  Craft v. Stevenson Lumber Yard, Inc., 179 N.J. 56, 72, 843 A.2d 1076, 1085 (2004) (citing United Orient Bank v. Lee, 208 N.J. Super. 69, 72 n.1, 504 A.2d 1215, 1217 (App. Div. 1986).  See also Borough of Totowa v. Am. Sur. Co. of N.Y., 39 N.J. 332, 338, 188 A.2d 586, 589-90 (1963) ("A debtor may direct to which of several debts his payment shall be applied, and if the debtor does not manifest to his creditor his intention thus to apply, the creditor may apply it to his own advantage, such as to an unsecured debt rather than a secured one or to the oldest item.").  To the extent this Court determines that New Jersey law applies to the issues raised herein, Euler reserves the right to supplement this Opposition as necessary.

6.      Under New York law, "[it] is a well-settled principle that a debtor owing on more than one obligation to another has the right to direct the creditor in the application of funds in reduction of any one or more of the debts." Central Nat'l Bank v. Paton, 109 Misc.2d 42, 43 (N.Y. Sup. Ct. 1981).  However, "where there is no direction as to the application of the funds and no agreement or understanding in that regard, **the payments may be applied as the creditor elects.**" Id. at 44 (citation omitted) (emphasis added).  "In order for the debtor to avail himself of the right to direct application of the funds in payment of an obligation, **such advice must be given before or at the time of the payment, or the right is lost,** in that the money then becomes the property of the creditor." Id. (citing 43 NY Jur, Payment, § 61) (emphasis added). See also In re Applied Logic Corp., 576 F.2d 952, 965 (2d Cir. 1978) ("[The debtor] … did not manifest an intention as to how the funds were to be applied. In such a situation, Professor Williston noted, the 'creditor is allowed to make the appropriation in the way most advantageous for himself without regard to the interests of the debtor …'") (citing 15 Williston, Contracts § 1796 (3d ed. 1972)); Snide v. Larrow, 62 N.Y.2d 633, 634 (1984) ("The general rule is that the debtor may direct the application of his payments, but if he fails to do so, then the creditor is permitted to apply the payments as he sees fit.") (citations omitted); Comparato v. Wegman, 272 A.D.2d 907 (N.Y. App. Div. 4th Dep't 2000) ("Where a debt is composed of several items, absent a direction by the debtor, the creditor may apply a voluntary payment by the debtor "as it sees fit and to its best advantage".); Wilcox Press v. John-Sandy, 216 A.D.2d 727, 728 (N.Y. App. Div. 3d Dep't 1995) ("[I]t is well-established law that, when a debtor owes more that one debt to a creditor and, as in this case, fails to direct the manner in which the payments are to be applied, the creditor may apply the payments between or among the debts as it wishes.") (citations omitted).

7.      As the court noted in Central Nat'l Bank v. Paton, supra, under New York law, a debtor's direction as to how a payment should be applied "must be given before or at the time of the payment, or the right is lost".  109 Misc.2d 42 at 44.  Consistent with this principle,

the Restatement (Second) of Contracts § 258 (1981), provides that a direction made by an obligor regarding application of a particular payment must be made to the obligee "at or before the time of performance", and not thereafter:

> (1) Except as stated in Subsection (2), as between two or more contractual duties owed by an obligor to the same obligee, a performance is applied according to a direction made by the obligor to the obligee **at or before the time of performance**.

> (2) If the obligor is under a duty to a third person to devote a performance to the discharge of a particular duty that the obligor owes to the obligee and the obligee knows or has reason to know this, the obligor's performance is applied to that duty.

Restatement (Second) of Contracts § 258 (1981) (emphasis added).

8.     Here, assuming, arguendo, that the Detail Reports sent to J.P. Morgan Chase (the Debtors' bank) could somehow constitute notice to Rusal of the Debtors' alleged direction regarding application of the subject wire transfer payments, such notice was not made "at or before the time of performance", and is thus ineffective.  Indeed, the Debtors never provided Rusal with the Detail Reports, which could only be accessed by Rusal via Wachovia Bank subsequent to Rusal's receipt of the payment in its bank account.  See Kellner Cert. at ¶ 2. Thus, upon receipt of the payments, Rusal, consistent with the sales contract and its understanding with the Debtors, was free to apply them to the oldest open invoices on its books for goods sold to the Debtors.  Id. at ¶ 7.

9.     In In re Cornell, 219 B.R. 682 (Bankr. E.D. Pa. 1998), the bankruptcy court was faced with an issue that bears substantial similarity to the case *sub judice*.  In Cornell, a chapter 11 case, the debtor and a certain cement masons union (the "Union") were parties to collective bargaining agreements (the "Agreements") pursuant to which the debtor was required to pay monthly contributions to various funds (the "Funds") for employees covered under the Agreements.  The Funds filed a proof of claim, classified as a priority unsecured claim under 11

U.S.C. § 507(a)(4),[3] for contributions due the Funds arising from services rendered by employees covered by the Agreements within the 180 days prior to the debtor's bankruptcy filing.   The debtor objected to the amount of the Union's proof of claim entitled to priority treatment, arguing that the Funds wrongfully allocated certain pre-petition payments made by the debtor to contribution assessments due for periods prior to the 180-day priority period.  Id. at 685.  Applying Pennsylvania law (similar to the law of New York discussed herein), the Court rejected the debtor's argument and held that since there was no evidence of a specific allocation of the payments by the debtor, the Union was "entitled to allocate them as it did, *i.e.*, to the earliest, pre- 180-day period Assessments delinquencies." Id. at 686.

10.    Here, as in Cornell, since the Debtors failed to specifically direct Rusal to allocate the subject wire transfer payments to particular open invoices prior to or at the time of Rusal's receipt of the funds, Rusal was entitled to allocate them to the oldest open invoices on its books for goods sold to the Debtors.   The Debtors' attempt to allocate these payments to particular invoices at this juncture is impermissible and must not be allowed.   Accordingly, Euler respectfully submits that the Debtors' Objection to its Section 503(b)(9) Claim seeking to reclassify it as a general unsecured claim must be denied.

*[Remainder of Page Intentionally Left Blank]*

---

[3] This subsection, renumbered as 11 U.S.C. § 507(a)(5) under the BAPCPA amendments to the Bankruptcy Code, governs the priority status granted to allowed unsecured claims for contributions to an employee benefit plan.

WHEREFORE, Euler Hermes ACI respectfully requests that the Court deny the Debtors' Objection to its Section 503(b)(9) Claim, direct the Debtors to immediately pay Euler's Section 503(b)(9) Claim, and grant Euler such other and further relief as the Court deems just and proper.

Dated:  September 12, 2008                    Respectfully submitted,

                                         /s/ Bruce Buechler

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
Bruce Buechler, Esq. (BB 0324)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400
*Attorneys for Euler Hermes ACI*