**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
Bruce Buechler, Esq. (BB 0324)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400
*Attorneys for Euler Hermes ACI*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| SHAPES/ARCH HOLDINGS L.L.C., et al., | Case No. 08-14631 (GMB) |
| Debtors. | Jointly Administered |
| | Hearing Date: September 22, 2008 at 10:00 a.m. |
| | Oral Argument Requested |

**CERTIFICATION OF RICHARD KELLNER IN OPPOSITION TO DEBTORS' OBJECTION SEEKING TO RECLASSIFY THE ADMINISTRATIVE CLAIM OF EULER HERMES ACI, AS ASSIGNEE OF RUSAL AMERICA CORP., TO GENERAL UNSECURED CLAIM**

Richard Kellner, pursuant to 28 U.S.C. Section 1746, certifies as follows:

1. I am the Chief Operating Officer of Rusal America Corp. ("Rusal"). I am authorized to submit this Certification in Opposition to the Debtors' Objection to Reclassify the Administrative Claim of Euler Hermes ACI ("Euler"), as assignee of Rusal, to a general unsecured claim.

2. Prior to the commencement of the Debtors' bankruptcy cases on March 16, 2008, Rusal never received any notice from the Debtors or their agents directing that payments received by Rusal be applied to any particular invoices prior to or at the time of receiving the payments. The wire transfer transaction detail reports annexed as Exhibit "B" to the Debtors'

22047/2
09/11/2008 9506471.4

Objection were apparently sent by the Debtors to their bank, J.P. Morgan Chase, to initiate the wire transfer of funds to Rusal's bank, Wachovia Bank. Rusal never received a copy of such transaction detail reports directly from the Debtors or prior to or at the time of receiving the payments. Subsequent to Rusal's receipt of the payments in its bank account at Wachovia Bank, Rusal could access these transaction reports via Wachovia Bank. Rusal may have reviewed some of the transaction reports, but always after its receipt of the funds and never in the context of directing payments to certain invoices. Indeed, as set forth above, the transaction detail reports for the wire transfers were not provided to Rusal by the Debtors with any mention of how the payments should be applied. Further, not all of the transaction detail reports have comments in the remarks section.

3. Attached hereto as Exhibit A is a true and correct copy of an Addendum to the sales contract between the Debtors ("Buyer") and Rusal ("Seller"). It should be noted that the section of the Addendum titled "Remittances" specifically provides as follows: "No receiving agency or depository has authority to settle claims for Seller or to accept payment tendered as payment in full. Therefore, Buyer agrees that notwithstanding any endorsements or other legend appearing on Buyer's checks, drafts or other orders for payment of money, they do not because of such endorsement or legend, or otherwise, constitute payment in full or settlement of account." Therefore, any notation on the transaction detail reports, even if it had been received by Rusal, would not be binding.

4. Rusal has been doing business with the Debtors for over five years. The Debtors have had intermittent financial difficulties involving cash flow or liquidity problems. In each instance, Rusal advised the Debtors that all payments received would have to be applied to the oldest invoices or else the Debtors' account would be past due and Rusal would have to

terminate the shipment of new goods.

5. On March 10, 2008, within the twenty (20) days prior to the Debtors' current bankruptcy filing, I had a telephone conversation with Paul Sorenson, the CFO for the Debtors. Mr. Sorensen was quite candid about the severity of the Debtors' liquidity crisis but provided no indication there was a solvency issue. During that call, I advised Mr. Sorensen that Rusal could only apply payments received to the oldest open/unpaid invoices, and not to current invoices, or the Debtors' account would become past due, and Rusal would have to terminate shipment of new goods. Mr. Sorensen acknowledged this during the telephone call.

6. All invoices sent to the Debtors by Rusal during the twenty (20) days prior to the commencement of their bankruptcy cases reflected payment due dates consistent with the credit terms granted under the contract. Prior to the July 21, 2008 objection filed with the Court, the Debtors never objected to any of these invoices or the payment terms.

7. When Rusal received the wire transfers in question prior to the Debtors' bankruptcy filing, consistent with Rusal's ordinary course of business in dealing with the Debtors over five-plus years and the understanding communicated to Mr. Sorenson on March 10, all monies received were applied to the oldest invoice. Thus, Rusal properly never credited the wire transfers in question to the goods shipped, delivered and received by the Debtors during the 20 days prior to the commencement of their bankruptcy cases. Thus, Rusal was never paid for the goods shipped and delivered by it and received by the Debtors during the 20 days before the bankruptcy filing.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and information.

Dated: September 11, 2008

_____
Richard Kellner

-3-