**MARK E. FELGER (MF9985)**
**JERROLD N. POSLUSNY, JR. (JP7140)**
**COZEN O'CONNOR**
A Pennsylvania Professional Corporation
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
(856) 910-5075 (fax)

Attorneys for the Debtors

| | |
|---|---|
| In re: | UNITED STATES BANKRUPTCY COURT |
| SHAPES/ARCH HOLDINGS L.L.C., et al., | FOR THE DISTRICT OF NEW JERSEY |
| | CHAPTER 11 |
| Debtors. | CASE NO. 08-14631 (GMB) |
| | **Hearing Date:  December 22, 2008** |
| | **at 10:00 a.m.** |

### DEBTORS' OBJECTION SEEKING ORDER TO PARTIALLY RECLASSIFY ADMINISTRATIVE CLAIM OF PERFECT TRADE TO GENERAL UNSECURED CLAIM

Shapes/Arch Holdings L.L.C. and its related debtor entities (collectively, the "Debtors"),[1] the reorganized debtors, hereby submit this objection (the "Objection"), pursuant to 11 U.S.C. §§ 105, 502(b) and 503(b)(9), seeking an Order partially reclassifying the Section 503(b)(9) administrative claim of Perfect Trade ("Perfect Trade") to general unsecured status.  In support of the Objection, the Debtors respectfully represent as follows:

---

[1] In addition to Shapes/Arch Holdings L.L.C. ("Shapes/Arch"), the following entities, all of which are wholly owned subsidiaries of Shapes/Arch, also filed petitions on the Petition Date (defined below):  Shapes L.L.C. ("Shapes"); Delair L.L.C. ("Delair"); Accu-Weld L.L.C. ("Accu-Weld"); and Ultra L.L.C. ("Ultra").

1

## BACKGROUND

### General

1. On March 16, 2008 (the "Petition Date"), the Debtors filed their respective petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

2. These cases are being jointly administered pursuant to this Court's Order of March 18, 2008 under the lead debtor "Shapes/Arch Holdings L.L.C."

3. No trustee or examiner has been appointed in these cases.

4. An official committee of unsecured creditors (the "Committee") was appointed on March 31, 2008, and was active in these cases through the Effective Date (defined below).

5. The Court confirmed (the "Confirmation Order") the Debtors' Third Amended Joint Plan of Reorganization (the "Third Amended Plan") effective as of July 22, 2008. The Third Amended Plan became effective on August 8, 2008 (the "Effective Date").

6. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### Schedules And Proofs Of Claim

7. On the Petition Date the Debtors filed their Statements of Financial Affairs, Schedules of Assets and Liabilities and Schedule of Executory Contracts and Unexpired Leases (the "Bankruptcy Schedules").

8. Pursuant to this Court's order, dated March 18, 2008, the Debtors retained Epiq Bankruptcy Solutions, L.L.C. (the "Claims Agent") as their official claims and noticing agent.

9. On March 18, 2008, this Court entered an order pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3) establishing the deadline for proofs of claim and approving the form and manner of notice thereof [Dkt. No. 35] (the "Bar Date Order").

10. Pursuant to the Bar Date Order, the deadline for all persons and entities to file proofs of claim against the Debtors for claims that arose on or prior to the Petition Date was May 15, 2008.

11. On May 19, 2008, the Debtors filed a motion to set a bar date for filing administrative expense claims (the "Administrative Claim Bar Date Motion") that arose on or prior to June 15, 2008 including, without limitation, claims allegedly entitled to administrative expense treatment under Section 503(b)(9) of the Bankruptcy Code.

12. On May 28, 2008, the Court entered an Order granting the Administrative Claim Bar Date Motion and fixed June 30, 2008 as the deadline to file, inter alia, claims pursuant to Section 503(b)(9) of the Bankruptcy Code.

**Administrative Claim of Perfect Trade**

13. On or about June 19, 2008, Perfect Trade filed proof of claim no. 772 seeking an administrative claim in the amount of $273,108.42 for goods allegedly received by Ultra within twenty (20) days prior to the Petition Date for which Ultra had not made payment (the "Alleged Section 503(b)(9) Claim"). The Alleged Section 503(b)(9) Claim seeks payment for the following invoices: (i) invoice no. 2008D5015J in the amount of $42,485.10; (ii) invoice no. 2008D5019J in the amount of $57,374.02; (iii) invoice no. 2008D5020J in the amount of $38,873.60; (iv) invoice no. 2008D5021J in the amount of $29,765.42; (v) invoice no. 2008D5025J in the amount of $12,044.95; (vi) invoice no. 2008D5026J in the amount of $50,632.09; and (vii) invoice no. 2008D5030J in the amount of $41,933.24. The Debtors object

3

to the alleged administrative status of invoice no. 2008D5015J in the amount of $42,485.10 and invoice no. 2008D5021J in the amount of $29,765.42 (the "Disputed Invoices"), because the Debtors' books and records show that these goods were delivered more than twenty days prior to the Petition Date. The Debtors have already paid Perfect Trade on account of the undisputed portion of the Alleged Section 503(b)(9) Claim.

## RELIEF REQUESTED

14. By this Objection, Debtors seek entry of an order, pursuant to 11 U.S.C. §§ 105 and 503 partially reclassifying the Alleged Section 503(b)(9) Claim, as identified on Exhibit "A", so that the Disputed Invoices are treated as a general unsecured claim.

## BASIS FOR RELIEF REQUESTED

15. Based upon the Debtors' review of the Alleged Section 503(b)(9) Claim, they have determined that the Alleged Section 503(b)(9) Claim asserts an incorrect priority status because the goods provided pursuant to the Disputed Invoices were received by Ultra prior to the twenty (20) day period immediately preceding the Petition Date.

### Shipment History and Customary Practice

16. The goods related to the Disputed Invoices were shipped directly from Perfect Trade to Grainger Global Sourcing ("GGS"), the international procurement organization of W.W. Grainger, Inc.

17. In situations where goods are shipped directly to GGS, Perfect Trade would notify Ultra that the goods had been shipped by forwarding shipping documents. At that point, Ultra would book the goods as inventory and simultaneously book those same goods as being sold to GGS.

18. Goods are "received" for the purposes of Section 503(b)(9) when the debtor takes physical possession of them. See <u>In re Marin Motor Oil, Inc.</u>, 740 F.2d 220, 225-226 (3d Cir. 1984) (applying the Uniform Commercial Code definition of "receipt" to reclamation claims). Because the two shipments in question, were shipped directly from Perfect Trade to GGS, they should be deemed received by the Debtors at the moment they were in GGS's possession at its warehouse in Kansas City, Missouri. Ultra's books and records indicate that the goods were received by GGS on February 15, 2008, more than twenty (20) days prior to the Petition Date.

### Perfect Trade's Alleged Section 503(b)(9) Administrative Claim

19. Section 503(b)(9) of the Bankruptcy Code provides in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> \* \* \*
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

20. The Alleged Section 503(b)(9) Claim asserts that the Disputed Invoices were issued for goods received by Ultra within twenty (20) days prior to the Petition Date and, therefore, Perfect Trade is entitled to administrative priority pursuant to Section 503(b)(9) of the Bankruptcy Code. However, as discussed above, the goods were received on February 15, 2008.

21. Therefore, Perfect Trade is not entitled to an administrative claim for the Disputed Invoices pursuant to Section 503(b)(9) of the Bankruptcy Code and that portion of the Alleged

5

Section 503(b)(9) Claim should be reclassified as a general unsecured claim in the amount of $72,250.52.

## RESERVATION

22. The Debtors hereby reserve the right to object to Perfect Trade's unsecured non-priority claim(s) on any grounds at a later date. Separate notice and hearing will be scheduled for any such objections.

## NOTICE

23. Notice of this Motion has been provided to: (a) counsel for CIT, (b) counsel for Arch, (c) the Office of the United States Trustee, (d) Perfect Trade at the address specified on the Alleged Section 503(b)(9) Claim, and (e) all parties on the Master Service List. In light of the nature of the relief requested herein, the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court approve an order granting the relief requested and such other and further relief as is just and proper.

Dated: November 21, 2008     COZEN O'CONNOR

By: __/s/ Jerrold N. Poslusny, Jr.__
Mark E. Felger
Jerrold N. Poslusny, Jr.

Attorneys for the Debtors

6

## **VERIFICATION**

Richard Mackessy certifies and states as follows:

1. I am the Interim Chief Financial Officer of the Reorganized Debtors[2], and I am fully authorized to make this Verification on all of the Debtors' behalf.

2. I have read the foregoing Objection and I hereby certify and verify that all of the statements contained therein are true.

3. I hereby verify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me is willfully false, I am subject to punishment.

_____
Richard Mackessy

Dated: November ___, 2008

---

[2] Unless otherwise defined capitalized terms shall have the same meaning ascribed to them in the Motion.

| Name/Address of Claimant | Claims Asserted with Incorrect Administrative Status | | | | Modified Claim | |
|---|---|---|---|---|---|---|
| | Claim Number | Debtor | Claim Amount | Claim Type | Claim Amount | Claim Type |
| Perfect Trade c/o Changqing Li Rm. 903, Bldg. A, Huahong Mansion No. 238 Tian Mu Shan Road Hangzhou, China | 772 | Ultra LLC | - | UNS | 72,250.52 | UNS |
| | | | 273,108.42 | ADM | 200,857.90 | ADM |
| | | | 273,108.42 | TOT | 273,108.42 | TOT |

ADM  Administrative
UNS  General Unsecured Non-Priority
TOT  Total