# EXHIBIT "A"

**U.S. Bankruptcy Court**

**District of New Jersey**

Notice of Electronic Claims Filing

The following transaction was received from Kurtzman, Jeffrey on 5/15/2008 at 10:36 AM EDT

| | |
|---|---|
| **Case Name:** | Shapes L.L.C. |
| **Case Number:** | <u>08-14632-GMB</u> |
| **Creditor Name:** | Ultra, LLC<br>c/o Jeffrey Kurtzman, Esquire<br>Klehr, Harrison, Harvey, Branzburg & Ell<br>260 S. Broad Street<br>Philadelphia, PA 19102 |
| **Claim Number:** | <u>5</u>   <u>Claims Register</u> |
| **Total Amount Claimed:** | $16373.48 |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**h:\ScanOutput\UltraPOC.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1002741850 [Date=5/15/2008] [FileNumber=18480409-
0] [037323c503e5a8d713eaf1296333052e3f07b46517498f62f6bf0b2cbacf11f49e
4c76ca7e83f40c225dd0aedcb2088666d96b259f3d264ddc8a9a3ab46c519b]]

<u>File another claim</u>

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ~~Exhibit A~~ P...

| | **PROOF OF CLAIM** |
|---|---|

| In Re: | Chapter 11 |
|---|---|
| Shapes/Arch Holdings LLC et al. | Case No. 08-14631 through 08-14635 |
| Debtors. | (GMB) |

| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
|---|---|
| ULTRA, LLC | 08-14632 |

**NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.**

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Eric S. Laboz
1283 Club House Road
Gladwyne, PA  19035

Telephone number:    (610) 660-5200    Email Address: elaboz@comcast.net

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
   (*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:                Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 16,373.48*

   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete Item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

2. **Basis for Claim:** severance benefits
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have schedules account as: _____
      (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:   ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   Describe: _____

   Value of Property: $_____    Annual Interest Rate _____%

   Amount of arrearage and other charges as of time case filed included in secured claim, if any:

   $_____    Basis for perfection: _____

   **Amount of Secured Claim:** $_____    **Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☒ Wages, salaries or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

   **Amount entitled to priority:**

   $_____

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)

   **DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**

   If the documents are not available, please explain:

**FOR COURT USE ONLY**

| Date: | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| May 14, 2008 | *Eric Laboz by JK with permission* |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

*This claim is entitled to priority to the extent of $10,950.00 pursuant to Sections 503 and 507 of the Bankruptcy Code.

## Calculation of Amounts Due Under Severance Agreement

1.      Under Section 2.(b), the debtor is obligated to pay the claimant $785.00 per month for a period of five months from March through July, 2008, for a subtotal of $3,925.00.

2.      Under Section 2.(c), the debtor is obligated to pay the claimant $938.72 per month for a period of nine months from April through December, 2008, for a subtotal of $8,448.48.

3.      Under Section 2.(b), the claimant incurred and paid $4,000.00 to the vehicle lessor on account of excess mileage, for which he is entitled to reimbursement by the debtor.

4.      Of the $16,373.48 due and owing by the debtor to the claimant, $10,950.00 is entitled to priority under 11 U.S.C. § 507(a).  In addition, to the extent that the debtor's payment obligations under the Severance Agreement arose post-petition, the claims resulting from the debtor's failure to satisfy such obligations are entitled to administrative priority under 11 U.S.C. §§ 503(b) and 507(a)(2).  See, Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205 (3d Cir. 2001).



Hylton Road, Pennsauken, NJ 08110 USA  Phone: 856.663.5050  Fax: 856.663.0794

September 26, 2007

Eric Laboz
1283 Club House Road
Gladwyne, PA 19035

        Re:    Severance Agreement and General Release

Dear Eric:

On behalf of Ultra, LLC. (the "Company"), it is our desire to resolve cooperatively your separation of employment which became effective on September 21, 2007. Toward this end, we propose the following Severance Agreement, which includes a General Release.

The terms and conditions set forth in Paragraph 1 below will apply regardless of whether you decide to sign this Severance Agreement and General Release. However, you will not be eligible to receive the payments set forth in Paragraph 2 below unless you sign and do not revoke this Severance Agreement and General Release. (Please see Paragraph 17 below for what it means to revoke this Severance Agreement and General Release.)

You may consider for twenty-one (21) days whether you wish to sign this Severance Agreement and General Release. You are encouraged to review the proposed Severance Agreement and General Release ("Agreement") with your attorney.

1.    General Terms of Termination. As noted above, whether or not you sign this Agreement:

(a)    Your last day of employment was September 21, 2007. You will be paid for all time worked up to and including the cessation of your employment. As you are not eligible for any bonus programs, you will not receive any bonus payments (prorated or otherwise).

(b)    As you have utilized all of your vacation time accrued to date, you are not eligible to cash out any accrued but unused portion of such benefit.

(c)    Your eligibility to participate in Company sponsored health insurance, including medical, dental and prescription, as an employee of the Company ended September 21, 2007. However, you are eligible to continue to participate in this insurance in accordance with a federal law called the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), subject to COBRA's terms, conditions and restrictions.

If you decide not to sign this Agreement, you will be responsible for paying the entire cost of this insurance. However, if you sign and do not revoke this Severance Agreement, the Company will pay a portion of this cost, as described below in Paragraph 2(c).

(d)     Your eligibility to participate in the Company sponsored group life insurance coverage ceased effective September 21, 2007.

(e)     You are required to comply with Paragraphs 6 below.

2.     <u>Severance</u>. If you sign this Agreement, agreeing to be bound by the General Release in Paragraph 3 below and the other terms and conditions of this Agreement described below, the Company will do the following:

(a)     Pay you the gross amount of Twenty Thousand Dollars ($20,000.00), less withholding of all applicable federal, state and local taxes. The severance payment will be paid to you within 10 business days following the expiration of the Revocation Period set forth in Paragraph 17 below;

(b)     The Company will pay its current portion of your monthly automobile lease payment ($785.00) through July 1, 2008, as if you were still employed by the Company, provided that you: (1) secure and provide proof of the required automobile insurance for the vehicle, at your sole expense, on or before October 17, 2007; and (2) cooperate with the Company in its efforts to remove itself from the current automobile lease and have the vehicle lease placed solely in your name, or otherwise provide such assurances reasonably acceptable to the Company that the Company shall have no further liability or obligation with respect to the vehicle other than as expressly provided herein. In addition, if you elect to receive this benefit and satisfy the conditions set forth herein, the Company will pay up to an additional Four Thousand Dollars ($4,000.00) towards any charges and fees arising out of such lease at its conclusion. Any remaining charges and fees, including, without limitation, excess mileage, will be your sole responsibility; and

(c)     The Company will pay its current portion of the monthly premium for your continued participation in the Company's group health plan (medical, prescription and dental) pursuant to COBRA through December 31, 2008, as if you were still employed by the Company, provided that: (i) you are eligible for and elect to receive COBRA coverage; and (ii) you pay the remaining portion of the premium on a timely basis. Thereafter, your continued participation in the Company's group health plan pursuant to COBRA shall be at your sole expense, provided that you are eligible for and elect to receive such coverage.

You will not be eligible for the payments described in this Paragraph 2 if you revoke this Agreement on a timely basis in accordance with Paragraph 17 below. You also will not be eligible for the payments described in this Paragraph 2 until: (i) the Company has received an executed copy of this Agreement; and (ii) you have returned all Company property and documents in accordance with Paragraph 6 below.

3.     <u>General Release</u>.

(a)     In exchange for the Company's payment described in Paragraph 2, you release and forever discharge, to the maximum extent permitted by law, the Company and each of the other "Releasees" as defined below, from any and all claims, causes of action, complaints, lawsuits or liabilities of any kind (collectively "Claims") as described below which you, your heirs, agents, administrators or executors have or may have against the Company or any of the other Releasees.

(b)     By agreeing to this General Release, you are waiving, to the maximum extent permitted by law, any and all Claims which you have or may have against the Company or any of the other Releasees arising out of or relating to any conduct, matter, event or omission existing or occurring before you sign this Agreement arising with respect to your employment with the Company, or your termination of employment, including but not limited to the following:

(i)     any Claims having anything to do with your employment with the Company and/or any of its parent, subsidiary, related and/or affiliated companies;

(ii)     any Claims having anything to do with the termination of your employment with the Company and/or any of its parent, subsidiary, related and/or affiliated companies;

(iii)     any Claims for unpaid or withheld wages, severance, benefits, bonuses, commissions and/or other compensation of any kind;

(iv)     any Claims for reimbursement of expenses of any kind;

(v)     any Claims for attorneys' fees or costs;

(vi)     any Claims under the Employee Retirement Income Security Act ("ERISA");

(vii)     **any Claims of discrimination and/or harassment based on age, sex, race, religion, color, creed, disability, handicap, citizenship, national origin, ancestry, sexual orientation, or any other factor protected by Federal, State or Local law as enacted or amended (such as the Age Discrimination in Employment Act, 29 U.S.C. §621 et. seq., Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Equal Pay Act, the Pennsylvania Human Relations Act and the New Jersey Law Against Discrimination) and any Claims for retaliation under any of the foregoing laws;**

(viii)     any Claims regarding leaves of absence;

(ix)     any Claims under the Sarbanes-Oxley Act;

(x)     any Claims for violation of public policy;

(xi)     any whistleblower or retaliation Claims including, but, not limited to, claims under New Jersey's Conscientious Employee Protection Act (CEPA);

(xii)    any Claims for emotional distress or pain and suffering; and/or

(xiii)    any other statutory, regulatory, common law or other Claims of any kind, including, but not limited to, Claims for breach of contract, libel, slander, fraud, wrongful discharge, promissory estoppel, equitable estoppel and misrepresentation.

(c)    The term "Releasees" includes: the Company and any parent, subsidiary, related or affiliated companies, and each of their past and present employees, officers, managers, attorneys, owners, members, insurers, benefit plan fiduciaries and agents, and all of their respective successors and assigns.

(d)    It is important that you understand that this General Release includes all Claims known or unknown by you, those that you may have already asserted or raised as well as those that you have never asserted or raised.

4.    <u>Non-Released Claims</u>.  The General Release in Paragraph 3 above does <u>not</u> apply to:

(a)    Any Claims for vested benefits under the Company's 401(k) Profit Sharing Plan;

(b)    Any Claims to require the Company to honor its commitments set forth in this Agreement;

(c)    Any Claims to interpret or to determine the scope, meaning or effect of this Agreement;

(d)    Any Claims arising out of any conduct, matter, event or omission existing or occurring after you have signed this Agreement.

Further, the General Release does not prevent you from contacting or filing a charge with any federal, state or local government agency or commission.  However, the General Release does prevent you, to the maximum extent permitted by law, from obtaining any monetary or other personal relief for any of the Claims you have released in Paragraph 3.

5.    <u>Adequacy of Consideration</u>.  You acknowledge and agree that the Company's payment under Paragraph 2 above:

(a)    Is not required by any policy, plan or prior agreement;

(b)    Constitutes adequate consideration to support your General Release in Paragraph 3 above; and

(c)    Fully compensates you for the Claims you are releasing.

For purposes of this paragraph, "consideration" means something of value to which you are not already entitled.

6.    <u>Company Property and Documents</u>.  Regardless of whether you sign this Agreement, and as a condition of receiving the payment set forth in Paragraph 2 above, you must return to Ed Stein, the Company Vice President of Finance, <u>retaining no copies,</u> all Company property, keys, automobiles (if you do not sign, or if you revoke this Agreement), documents (hard copy or electronic), forms, correspondence, lap top computers, computer programs, cell phones, blackberries, memos, disks, DVDs, etc.  If you sign this Agreement (and do not revoke it), the Company will, as an additional benefit, return the lap top computer to you (in its as is where as condition) once it has cleared all Company information from the computer.

7.    <u>Confidentiality of this Agreement</u>.  You agree that, at all times, the existence, terms and conditions of this Agreement will be kept secret and confidential and will not be disclosed voluntarily to any third party, except:  (i) to your spouse, if applicable, (ii) to the extent required by law; (iii) in connection with any Claim to enforce, interpret or determine the scope, meaning, or effect of the Agreement; or (iv) to obtain confidential legal, tax or financial advice with respect thereto.

8.    <u>Non-Disparagement</u>.  You agree that you will not make any negative comments or disparaging remarks, in writing, orally or electronically, about the Company or any other Releasee (as defined above) and their respective products and services.  However, nothing in this Agreement is intended to or shall be interpreted to restrict your right and/or obligation: (i) to testify truthfully in any forum; or (ii) to contact, cooperate with or provide information to any government agency or commission.  Similarly, the Company's executive officers, during their employment with the Company, will not make any negative comments or disparaging remarks, in writing, orally or electronically, about you.  However, nothing in this Agreement is intended to or shall be interpreted to restrict any of the Company's executive officers' rights and/or obligations:  (i) to testify truthfully in any forum; or (ii) to contact, cooperate with or provide information to any government agency or commission.

9.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey.

10.    <u>Statement of Non-Admission</u>.  Nothing in this Agreement is intended as or shall be construed as an admission or concession of liability or wrongdoing by the Company or any other Releasee as defined above.  Rather, the proposed Agreement is being offered for the sole purpose of settling cooperatively and amicably any and all possible disputes between the parties.

11.    <u>Interpretation of Agreement</u>.  Nothing in this Agreement is intended to violate any law or shall be interpreted to violate any law.  If any paragraph or part or subpart of any paragraph in this Agreement or the application thereof is construed to be overbroad and/or unenforceable, then the court making such determination shall have the authority to narrow the paragraph or part or subpart of the paragraph as necessary to make it enforceable and the paragraph or part or subpart of the paragraph shall then be enforceable in its/their narrowed form.  Moreover, each paragraph or part or subpart of each paragraph in this Agreement is independent of and severable (separate) from each other.  In the event that any paragraph or part or subpart of any paragraph in this Agreement is determined to be legally invalid or unenforceable by a court and is not modified by a court to be enforceable, the affected paragraph or part or subpart of such

paragraph shall be stricken from the Agreement, and the remaining paragraphs or parts or subparts of such paragraphs of this Agreement shall remain in full, force and effect.

12.    Entire Agreement.  This Agreement constitutes the entire agreement between the parties and supersedes any and all prior representations, agreements, written or oral, expressed or implied between you and Ultra, LLC.  This Agreement does not alter, affect, amend, supersede, or in any other way influence any of the terms, conditions, and/or restrictions set forth in the Amended and Restated Operating Agreement of Ben LLC.  Further, this Agreement does not alter, amend or modify any other common law duties or obligations which you owe the Company as a result of your employment, including, but not limited to, your continuing duty of loyalty and obligation to maintain confidential information.

13.    Acknowledgment.  You acknowledge and agree that, subsequent to the termination of your employment, you shall not be eligible for any payments from the Company or Company-paid benefits, except as expressly set forth in this Agreement.  You also acknowledge and agree that you have been paid for all time worked and have received all other compensation owed to you, except for any payments owed to you pursuant to Paragraph 1 which shall be paid to you regardless of whether you sign this Agreement.

14.    Headings.  The headings contained in this Agreement are for convenience of reference only and are not intended, and shall not be construed, to modify, define, limit, or expand the intent of the parties as expressed in this Agreement, and they shall not affect the meaning or interpretation of this Agreement.

15.    Days.  All references to a number of days throughout this Agreement refer to calendar days.

16.    Representations.  You agree and represent that:

(a)    You have read carefully the terms of this Agreement, including the General Release;

(b)    You have had an opportunity to and have been encouraged to review this Agreement, including the General Release, with an attorney;

(c)    You understand the meaning and effect of the terms of this Agreement, including the General Release;

(d)    You were given twenty-one (21) days to determine whether you wished to sign this Agreement, including the General Release;

(e)    Your decision to sign this Agreement, including the General Release, is of your own free and voluntary act without compulsion of any kind;

(f)    No promise or inducement not expressed in this Agreement has been made to you; and

(g)    You have adequate information to make a knowing and voluntary waiver.

17.    <u>Revocation Period</u>.  If you sign this Agreement, you will retain the right to revoke it for seven (7) days ("Revocation Period").  If you revoke this Agreement, you are indicating that you have changed your mind and do not want to be legally bound by this Agreement.  The Agreement shall not be effective until after the Revocation Period has expired without your having revoked it.  To revoke this Agreement, you must send a certified letter to the attention of Daniel Carpey, at the following address:  Ultra LLC, 1777 Hylton Road, Pennsauken, NJ 08110.  The letter must be post-marked within seven (7) days of your execution of this Agreement.  If the seventh day is a Sunday or federal holiday, then the letter must be post-marked on the following business day.  If you revoke this Agreement on a timely basis, you shall not be eligible for the payments set forth in Paragraph 2.

18.    <u>Offer Expiration Date</u>.  As noted above, you have twenty-one (21) days to decide whether you wish to sign this Agreement.  If you do not sign this Agreement on or before October 17, 2007, then this offer is withdrawn and you will not be eligible for the payments set forth in Paragraph 2 above.

*    *    *

Eric Laboz
September 26, 2007
Page 8


        If you agree with the all of the terms of this Agreement, please sign below, indicating that
you understand, agree with and intend to be legally bound by this Agreement, including the
General Release, and return the signed Agreement to me.

        We wish you the best in the future.

                                        ULTRA, LLC


                                        By:
                                        Daniel Carpey
                                        *President*


UNDERSTOOD AND AGREED,
INTENDING TO BE LEGALLY BOUND:

_____
Eric Laboz

        10 / 16 / 2007
_____
Date


_____
Witness

PHL:5549063.1                           - 8 -

# NOTICE OF DEFAULT AND RIGHT TO CURE - NEW JERSEY

## VW Credit Leasing, Ltd.

Notice Date: April 16, 2008

10/08/07 15:00    0000018 20080414 DO816102 RTCLNJ  1 OZ DOM DO8161O000* 157882 VW

ERIC  LABOZ
1283 CLUBHOUSE  RD
GLADWYNE PA  19035-1003

*(handwritten)* P.O. BOX 17497
BALTIMORE, MD.
21297—
    1497

You are in default of your Lease Agreement for the following property:

Customer:        Ultra Hardware Products
                 Eric  Laboz
Account #:       834405626
Vehicle:         2004 PHAETON V8
VIN:             WVWAF63D148011214

*(handwritten)* MARCH 10TH  785.
APRIL 10TH  785.
~~INTEREST~~ MAY 10TH — 785.

Your default consists of a failure to make a payment.

Correction of the Default:

       Before May 1, 2008, pay the AMOUNT NOW DUE of $1,620.00.  *(handwritten)* $1,645.00

**You have the right to cure your default and re-instate the Lease Agreement if you make the required payment by the date as stated.**  The AMOUNT NOW DUE includes all past due periodic payments, late fees, repossession costs and other amounts due under the Lease Agreement.  If you do not correct your default by the date stated above, we may exercise our rights against you under the law, including the right to repossess the property.  However, we will not repossess it until after **fifteen (15)** days have passed from the Notice Date above.

If we repossess the property, you have certain rights under the law.  If the property is repossessed, you may be liable for charges as detailed in the Lease Agreement.  We will provide you with any notices required by law.

If you have questions, write or telephone us promptly at the number or address below.  Payment can be made to **VW Credit, Inc.** at the address listed below.

Creditor:        VW Credit, Inc.
                 P.O. Box 7532
                 Libertyville, IL 60048-7532
                 (800) 428-6050   *(handwritten)* 800-428-3032

· **NOTICE TO DEBTORS IN BANKRUPTCY:**  If you have filed for bankruptcy, this notice is for **"Informational Purposes Only"**, and not an attempt at debt collection.  Those discharged under bankruptcy will not be held liable for any deficiency balance after sale of the vehicle.



RTC NJ L 37 (0907)

VW Credit, Inc. (d.b.a. Volkswagen Credit, Audi Financial Services, and Bentley Financial Services) is a servicer for VW Credit Leasing, Ltd.

# Volkswagen Credit

**Payment Address Only:**
VOLKSWAGEN CREDIT
P.O. BOX 17497
BALTIMORE, MD 21297-1497
See reverse side for correspondence address

**Customer Care Phone Number 1-800-428-4034**

01/2008 15:30    0004667 20080423 DDD841102 INV STMT 1 OZ DOM DDD8410000* 157692 VW VE



ULTRA HARDWARE PRODUCTS
1283 CLUBHOUSE RD.
GLADWYNE PA 19035-1003

| Account Statement | |
|---|---|
| **TOTAL AMOUNT DUE:** | **$2,405.00** |
| **ACCOUNT NUMBER:** | **834405626** |
| **PAYMENT DUE DATE:** | **May 10, 2008** |
| Past Due: | $1,570.00 |
| Base Monthly Payment: | $785.00 |
| Late Charges: | $50.00 |

## Customer Information

| | |
|---|---|
| Statement Date: | April 22, 2008 |
| **Account Number:** | **834405626** |
| Borrower: | Ultra Hardware Products |
| Co-Borrower: | Eric Laboz |
| Vehicle: | 2004 VOLKSWAGEN |
| VIN: | WVWAF63D148011214 |
| Vehicle Garaging Address: | 1777 HYLTON RD |
| | PENNSAUKEN, NJ 08110 |

## Account Summary

| | |
|---|---|
| Last Payment Received: | February 29, 2008 |
| Amount: | $785.00 |
| Payments Made: | 45 |
| Payments Remaining: | 3 |

## Important Messages

Your account is maturing soon. If you are not transferring the license plates to a new vehicle or to your name, please be sure to return your plates to the proper state authority of motor vehicles.

Activate a VW Visa® and fuel up on us. Learn how to get your $50 Shell Gift Card and Volkswagen Rewards at vwvisacard.com.



Hylton Road, Pennsauken, NJ 08110 USA  Phone: 856.663.5050  Fax: 856.663.0794

September 26, 2007

Eric Laboz
1283 Club House Road
Gladwyne, PA 19035

Re:    Severance Agreement and General Release

Dear Eric:

On behalf of Ultra, LLC. (the "Company"), it is our desire to resolve cooperatively your separation of employment which became effective on September 21, 2007.  Toward this end, we propose the following Severance Agreement, which includes a General Release.

The terms and conditions set forth in Paragraph 1 below will apply regardless of whether you decide to sign this Severance Agreement and General Release.  However, you will not be eligible to receive the payments set forth in Paragraph 2 below unless you sign and do not revoke this Severance Agreement and General Release.  (Please see Paragraph 17 below for what it means to revoke this Severance Agreement and General Release.)

You may consider for twenty-one (21) days whether you wish to sign this Severance Agreement and General Release.  You are encouraged to review the proposed Severance Agreement and General Release ("Agreement") with your attorney.

1.    General Terms of Termination. As noted above, whether or not you sign this Agreement:

(a)    Your last day of employment was September 21, 2007.  You will be paid for all time worked up to and including the cessation of your employment.  As you are not eligible for any bonus programs, you will not receive any bonus payments (prorated or otherwise).

(b)    As you have utilized all of your vacation time accrued to date, you are not eligible to cash out any accrued but unused portion of such benefit.

(c)    Your eligibility to participate in Company sponsored health insurance, including medical, dental and prescription, as an employee of the Company ended September 21, 2007.  However, you are eligible to continue to participate in this insurance in accordance with a federal law called the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), subject to COBRA's terms, conditions and restrictions.

PHL:5549063.1

If you decide not to sign this Agreement, you will be responsible for paying the entire cost of this insurance. However, if you sign and do not revoke this Severance Agreement, the Company will pay a portion of this cost, as described below in Paragraph 2(c).

(d)    Your eligibility to participate in the Company sponsored group life insurance coverage ceased effective September 21, 2007.

(e)    You are required to comply with Paragraphs 6 below.

2.    Severance. If you sign this Agreement, agreeing to be bound by the General Release in Paragraph 3 below and the other terms and conditions of this Agreement described below, the Company will do the following:

(a)    Pay you the gross amount of Twenty Thousand Dollars ($20,000.00), less withholding of all applicable federal, state and local taxes. The severance payment will be paid to you within 10 business days following the expiration of the Revocation Period set forth in Paragraph 17 below;

(b)    The Company will pay its current portion of your monthly automobile lease payment ($785.00) through July 1, 2008, as if you were still employed by the Company, provided that you: (1) secure and provide proof of the required automobile insurance for the vehicle, at your sole expense, on or before October 17, 2007; and (2) cooperate with the Company in its efforts to remove itself from the current automobile lease and have the vehicle lease placed solely in your name, or otherwise provide such assurances reasonably acceptable to the Company that the Company shall have no further liability or obligation with respect to the vehicle other than as expressly provided herein. In addition, if you elect to receive this benefit and satisfy the conditions set forth herein, the Company will pay up to an additional Four Thousand Dollars ($4,000.00) towards any charges and fees arising out of such lease at its conclusion. Any remaining charges and fees, including, without limitation, excess mileage, will be your sole responsibility; and

(c)    The Company will pay its current portion of the monthly premium for your continued participation in the Company's group health plan (medical, prescription and dental) pursuant to COBRA through December 31, 2008, as if you were still employed by the Company, provided that: (i) you are eligible for and elect to receive COBRA coverage; and (ii) you pay the remaining portion of the premium on a timely basis. Thereafter, your continued participation in the Company's group health plan pursuant to COBRA shall be at your sole expense, provided that you are eligible for and elect to receive such coverage.

You will not be eligible for the payments described in this Paragraph 2 if you revoke this Agreement on a timely basis in accordance with Paragraph 17 below. You also will not be eligible for the payments described in this Paragraph 2 until: (i) the Company has received an executed copy of this Agreement; and (ii) you have returned all Company property and documents in accordance with Paragraph 6 below.

3.    General Release.

(a)    In exchange for the Company's payment described in Paragraph 2, you release and forever discharge, to the maximum extent permitted by law, the Company and each of the other "Releasees" as defined below, from any and all claims, causes of action, complaints, lawsuits or liabilities of any kind (collectively "Claims") as described below which you, your heirs, agents, administrators or executors have or may have against the Company or any of the other Releasees.

(b)    By agreeing to this General Release, you are waiving, to the maximum extent permitted by law, any and all Claims which you have or may have against the Company or any of the other Releasees arising out of or relating to any conduct, matter, event or omission existing or occurring before you sign this Agreement arising with respect to your employment with the Company, or your termination of employment, including but not limited to the following:

(i)    any Claims having anything to do with your employment with the Company and/or any of its parent, subsidiary, related and/or affiliated companies;

(ii)    any Claims having anything to do with the termination of your employment with the Company and/or any of its parent, subsidiary, related and/or affiliated companies;

(iii)    any Claims for unpaid or withheld wages, severance, benefits, bonuses, commissions and/or other compensation of any kind;

(iv)    any Claims for reimbursement of expenses of any kind;

(v)    any Claims for attorneys' fees or costs;

(vi)    any Claims under the Employee Retirement Income Security Act ("ERISA");

(vii)    **any Claims of discrimination and/or harassment based on age, sex, race, religion, color, creed, disability, handicap, citizenship, national origin, ancestry, sexual orientation, or any other factor protected by Federal, State or Local law as enacted or amended (such as the Age Discrimination in Employment Act, 29 U.S.C. §621 et. seq., Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Equal Pay Act, the Pennsylvania Human Relations Act and the New Jersey Law Against Discrimination) and any Claims for retaliation under any of the foregoing laws;**

(viii)    any Claims regarding leaves of absence;

(ix)    any Claims under the Sarbanes-Oxley Act;

(x)    any Claims for violation of public policy;

(xi)    any whistleblower or retaliation Claims including, but, not limited to, claims under New Jersey's Conscientious Employee Protection Act (CEPA);

(xii)    any Claims for emotional distress or pain and suffering; and/or

(xiii)    any other statutory, regulatory, common law or other Claims of any kind, including, but not limited to, Claims for breach of contract, libel, slander, fraud, wrongful discharge, promissory estoppel, equitable estoppel and misrepresentation.

(c)    The term "Releasees" includes:  the Company and any parent, subsidiary, related or affiliated companies, and each of their past and present employees, officers, managers, attorneys, owners, members, insurers, benefit plan fiduciaries and agents, and all of their respective successors and assigns.

(d)    It is important that you understand that this General Release includes all Claims known or unknown by you, those that you may have already asserted or raised as well as those that you have never asserted or raised.

4.    <u>Non-Released Claims</u>.  The General Release in Paragraph 3 above does <u>not</u> apply to:

(a)    Any Claims for vested benefits under the Company's 401(k) Profit Sharing Plan;

(b)    Any Claims to require the Company to honor its commitments set forth in this Agreement;

(c)    Any Claims to interpret or to determine the scope, meaning or effect of this Agreement;

(d)    Any Claims arising out of any conduct, matter, event or omission existing or occurring after you have signed this Agreement.

Further, the General Release does not prevent you from contacting or filing a charge with any federal, state or local government agency or commission.  However, the General Release does prevent you, to the maximum extent permitted by law, from obtaining any monetary or other personal relief for any of the Claims you have released in Paragraph 3.

5.    <u>Adequacy of Consideration</u>.  You acknowledge and agree that the Company's payment under Paragraph 2 above:

(a)    Is not required by any policy, plan or prior agreement;

(b)    Constitutes adequate consideration to support your General Release in Paragraph 3 above; and

(c)    Fully compensates you for the Claims you are releasing.

For purposes of this paragraph, "consideration" means something of value to which you are not already entitled.

6.      Company Property and Documents.  Regardless of whether you sign this Agreement, and as a condition of receiving the payment set forth in Paragraph 2 above, you must return to Ed Stein, the Company Vice President of Finance, retaining no copies, all Company property, keys, automobiles (if you do not sign, or if you revoke this Agreement), documents (hard copy or electronic), forms, correspondence, lap top computers, computer programs, cell phones, blackberries, memos, disks, DVDs, etc.  If you sign this Agreement (and do not revoke it), the Company will, as an additional benefit, return the lap top computer to you (in its as is where as condition) once it has cleared all Company information from the computer.

7.      Confidentiality of this Agreement.  You agree that, at all times, the existence, terms and conditions of this Agreement will be kept secret and confidential and will not be disclosed voluntarily to any third party, except:  (i) to your spouse, if applicable, (ii) to the extent required by law; (iii) in connection with any Claim to enforce, interpret or determine the scope, meaning, or effect of the Agreement; or (iv) to obtain confidential legal, tax or financial advice with respect thereto.

8.      Non-Disparagement.  You agree that you will not make any negative comments or disparaging remarks, in writing, orally or electronically, about the Company or any other Releasee (as defined above) and their respective products and services.  However, nothing in this Agreement is intended to or shall be interpreted to restrict your right and/or obligation:  (i) to testify truthfully in any forum; or (ii) to contact, cooperate with or provide information to any government agency or commission.  Similarly, the Company's executive officers, during their employment with the Company, will not make any negative comments or disparaging remarks, in writing, orally or electronically, about you.  However, nothing in this Agreement is intended to or shall be interpreted to restrict any of the Company's executive officers' rights and/or obligations:  (i) to testify truthfully in any forum; or (ii) to contact, cooperate with or provide information to any government agency or commission.

9.      Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey.

10.     Statement of Non-Admission.  Nothing in this Agreement is intended as or shall be construed as an admission or concession of liability or wrongdoing by the Company or any other Releasee as defined above.  Rather, the proposed Agreement is being offered for the sole purpose of settling cooperatively and amicably any and all possible disputes between the parties.

11.     Interpretation of Agreement.  Nothing in this Agreement is intended to violate any law or shall be interpreted to violate any law.  If any paragraph or part or subpart of any paragraph in this Agreement or the application thereof is construed to be overbroad and/or unenforceable, then the court making such determination shall have the authority to narrow the paragraph or part or subpart of the paragraph as necessary to make it enforceable and the paragraph or part or subpart of the paragraph shall then be enforceable in its/their narrowed form. Moreover, each paragraph or part or subpart of each paragraph in this Agreement is independent of and severable (separate) from each other.  In the event that any paragraph or part or subpart of any paragraph in this Agreement is determined to be legally invalid or unenforceable by a court and is not modified by a court to be enforceable, the affected paragraph or part or subpart of such

paragraph shall be stricken from the Agreement, and the remaining paragraphs or parts or subparts of such paragraphs of this Agreement shall remain in full, force and effect.

      12.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties and supersedes any and all prior representations, agreements, written or oral, expressed or implied between you and Ultra, LLC.  This Agreement does not alter, affect, amend, supersede, or in any other way influence any of the terms, conditions, and/or restrictions set forth in the Amended and Restated Operating Agreement of Ben LLC.  Further, this Agreement does not alter, amend or modify any other common law duties or obligations which you owe the Company as a result of your employment, including, but not limited to, your continuing duty of loyalty and obligation to maintain confidential information.

      13.    <u>Acknowledgment</u>.  You acknowledge and agree that, subsequent to the termination of your employment, you shall not be eligible for any payments from the Company or Company-paid benefits, except as expressly set forth in this Agreement.  You also acknowledge and agree that you have been paid for all time worked and have received all other compensation owed to you, except for any payments owed to you pursuant to Paragraph 1 which shall be paid to you regardless of whether you sign this Agreement.

      14.    <u>Headings</u>.  The headings contained in this Agreement are for convenience of reference only and are not intended, and shall not be construed, to modify, define, limit, or expand the intent of the parties as expressed in this Agreement, and they shall not affect the meaning or interpretation of this Agreement.

      15.    <u>Days</u>.  All references to a number of days throughout this Agreement refer to calendar days.

      16.    <u>Representations</u>.  You agree and represent that:

      (a)    You have read carefully the terms of this Agreement, including the General Release;

      (b)    You have had an opportunity to and have been encouraged to review this Agreement, including the General Release, with an attorney;

      (c)    You understand the meaning and effect of the terms of this Agreement, including the General Release;

      (d)    You were given twenty-one (21) days to determine whether you wished to sign this Agreement, including the General Release;

      (e)    Your decision to sign this Agreement, including the General Release, is of your own free and voluntary act without compulsion of any kind;

      (f)    No promise or inducement not expressed in this Agreement has been made to you; and

      (g)    You have adequate information to make a knowing and voluntary waiver.

17.    <u>Revocation Period</u>.  If you sign this Agreement, you will retain the right to revoke it for seven (7) days ("Revocation Period").  If you revoke this Agreement, you are indicating that you have changed your mind and do not want to be legally bound by this Agreement.  The Agreement shall not be effective until after the Revocation Period has expired without your having revoked it.  To revoke this Agreement, you must send a certified letter to the attention of Daniel Carpey, at the following address:  Ultra LLC, 1777 Hylton Road, Pennsauken, NJ 08110.  The letter must be post-marked within seven (7) days of your execution of this Agreement.  If the seventh day is a Sunday or federal holiday, then the letter must be post-marked on the following business day.  If you revoke this Agreement on a timely basis, you shall not be eligible for the payments set forth in Paragraph 2.

18.    <u>Offer Expiration Date</u>.  As noted above, you have twenty-one (21) days to decide whether you wish to sign this Agreement.  If you do not sign this Agreement on or before October 17, 2007, then this offer is withdrawn and you will not be eligible for the payments set forth in Paragraph 2 above.

*    *    *

Eric Laboz
September 26, 2007
Page 8


    If you agree with the all of the terms of this Agreement, please sign below, indicating that you understand, agree with and intend to be legally bound by this Agreement, including the General Release, and return the signed Agreement to me.

    We wish you the best in the future.

ULTRA, LLC

By:
Daniel Carpey
*President*


UNDERSTOOD AND AGREED,
INTENDING TO BE LEGALLY BOUND:

_____
Eric Laboz


_____
Date


_____
Witness