ASHELY M. CHAN
JAMES M. MATOUR
HANGLEY ARONCHICK
SEGAL & PUDLIN
20 Brace Road
Cherry Hill, NJ 08034-2634
Telephone: (856) 616-2100
Facsimile: (856) 616-2170

*Attorneys for Steven Grabell*

|  |  |
|---|---|
| In re: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| SHAPES/ARCH HOLDINGS L.L.C., et al. | CHAPTER 11 |
|  | CASE NO. 08-14631 (GMB) |
| Debtors. |  |

## SUPPLEMENTAL MEMORANDUM OF STEVEN GRABELL
## SUR REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE

Steven Grabell, through his undersigned counsel, respectfully submits this Supplemental Memorandum to address the argument advanced by the Reorganized Debtor[1] ("Objector") in its Objection to Mr. Grabell's request for payment of an administrative expense to the effect that it was time barred by the order fixing an initial administrative claims bar date.[2]

### Introduction

As discussed below, Mr. Grabell's request for payment of the post-petition bonus to which he became entitled as a result of the August 8, 2008 transfer of the ownership of the Debtor was filed prior to the September 8, 2008 bar date established by the plan confirmation order. Contrary to the Objector's argument, the earlier bar date of June 30, 2008, was

---

[1] The Objection was filed in the name of the Reorganized Debtor by counsel for the Plan Funder and new owner of the Debtor, Arch Acquisition, an affiliate of HIG Capital. In light of the fact that HIG is solely responsible for the payment of administrative expenses, without diminishing the distributions to creditors, HIG is the only party with an economic interest in this dispute. The Debtor's estate will not be affected by the outcome.

[2] This memorandum does not address the Objector's alternative argument that Mr. Grabell failed to make sufficient disclosure of his claim, on which the Court expressed the intention to receive additional evidence.

inapplicable because it applied only to claims arising on or before June 15, 2008, at which time Mr. Grabell's claim had not yet arisen.

## Background

Mr. Grabell's administrative claim is based on his Deferred Compensation Agreement with Shapes/Aluminum Holdings., LLC, dated as of January 1, 2005 ("Agreement"). A copy of the Agreement, which was attached to Mr. Grabell's Request for Payment of Administrative Expense, is attached hereto as Exhibit A.[3] The Agreement provides for the payment to Mr. Grabell of deferred compensation in the amount of $780,000 ("Bonus"). The Bonus is in addition to deferred compensation of $1,220,000 which (as the Agreement recites) was fully earned under prior agreements.

The Bonus became payable upon the occurrence of any one of the events listed in Paragraph 2 of the Agreement, including his death or disability or the sale of the ownership or assets of the Debtor ("Trigger Event"). Even if Mr. Grabell voluntarily resigned, he was entitled to receive a portion of the Bonus, which portion increased monthly over a period of 70 months under Paragraph 1 of the Agreement. In essence, Mr. Grabell's absolute right to the bonus vested over a period of 70 months at the rate of $11,142.86 per month ($780,000 divided by 70).

This case was filed on March 16, 2008, which was 38 months prior to the end of the 70 month term. The amount of the Bonus that had not yet fully vested was $780,000 multiplied by 38/79, or $356,571. The amount of the Bonus that vested pre-petition was $423,429. Consequently, if Mr. Grabell had resigned a week after the filing date, he would have had a pre-petition unsecured claim of $1,635,000 and no claim for an administrative expense. Mr. Grabell concedes that portion of his deferred compensation that vested prior to the petition date is a general unsecured claim.

## Bar Dates and Claim Submissions

Bar Dates

The Court has entered three orders in this case fixing claims filing deadlines:
(1) an Order dated March 18, 2008, fixing May 15, 2008 as the bar date for pre-petition proof of claim;
(2) an order dated May 28, 2008 ("First Admin Bar Order") fixing June 30, 2008 ("Initial Admin Bar Date") as the bar date for filing administrative expense claims *arising between March 16, 2008 through and including June 15, 2008*, a copy of which is attached as Exhibit B; and

---

[3] The 2005 Agreement amended prior Deferred Compensation agreements referenced therein. The Reorganized Debtor's argument that Mr. Grabell's administrative claim filing was deficient fro not including the prior agreements is incorrect because the claim is based exclusively on the 2005 Agreement.

(3) the Order dated July 22, 2008 confirming the Debtors' Third Amended Plan, fixing the 30th day following the Effective Date of the Plan as the bar date for filing claims for administrative expenses arising between June 16, 2008 and the Effective Date. The Effective Date occurred on August 8, 2008. Consequently, the deadline for filing requests for administrative expenses arising after June 15, 2008 was September 8, 2008[4] ("Final Admin Bar Date"). As the Objector correctly states in the Objection, Mr. Grabell's Request for Payment was filed on September 5, 2008, one business day prior to the Final Admin Bar Date.

Grabell Filings

On May 15, 2008, Mr. Grabell filed his Proof of Claim, a copy of which is attached to the Objection as Exhibit A and to this Memorandum as Exhibit C. Contrary to the Objector's assertions in its Objection and during the hearing on this matter, the Proof of Claim made clear reference on its face to the one-page Exhibit A detailing Mr. Grabell's claim and specifically including the fact that up to $356,571 would be entitled to administrative expense status. Especially in light of the Proof of Claim form prescribed by the Bankruptcy Rules, Mr. Grabell could not, at that juncture, have lodged his potential administrative claim more completely.

As the Objector asserts, Mr. Grabell did not submit a request for payment of administrative expense prior to the Initial Admin Bar Date. Contrary to the Objector's position, however, Mr. Grabell had no need or ability to file a request for payment by that date because he had no right to payment at that time.[5]

On August 8, 2008, a Trigger Event occurred in that the Debtor was sold. Under the Agreement, the Bonus then became payable in full. It was not until August 8, 2008, that Mr. Grabell's right to payment of an administrative expense arose. On September 5, 2008, prior to the Final Admin Bar Date, Mr. Grabell filed his Request for Payment of Administrative Expense.

In short, Mr. Grabell took timely and appropriate action in filing both his pre-petition and administrative claims with the court.

---

[4] The 30th day after the Effective Date, September 7, 2008 was a Sunday; therefore, pursuant to Bankruptcy Rule 9006(a) the deadline was the next business day, Monday, September 8, 2008.

[5] At most, it might be argued that Mr. Grabell could have filed a request for payment of administrative expense for $33,429, representing the three months of compensation that vested between the filing date and June 15, but this amount was not then payable and would not become payable until a Trigger Event or Mr. Grabell's resignation.

3

Discussion

The Objector argues that Mr. Grabell had an obligation to file his request for payment of administrative expense by the Initial Admin Bar Date of June 30. By its terms, the Initial Admin Bar Order fixing that date applied only to administrative expenses arising between the petition date of March 16, 2008 and June 15, 2008. Consequently, the Objector must be arguing that Mr. Grabell's right to an administrative expense arose during that time period.

Such was clearly not the case. As of June 30, the Initial Admin Bar Date, Mr. Grabell was owed no administrative expense. The Debtor in Possession had paid Mr. Grabell, along with all of its other employees, all the compensation which was due and payable. The Agreement – which was duly listed in the Debtor's schedules as an executory contract -- had not yet been assumed or rejected. No Trigger Event had occurred. Mr. Grabell had not resigned. He was not yet entitled to the Bonus.

The only thing Mr. Grabell had as of June 15 was a future expectation, contingent upon his continued employment and the occurrence of a Trigger Event.[6] The Initial Admin Bar Order did not reference contingent, potential or future expenses. Its simple language addressed expenses that had already arisen. There is no reason to stretch its meaning to include claims that were dependent on future activity (including continued employment and the occurrence of a Trigger Event). If the meaning of the Order were stretched that far, by the same logic, raw material vendors would have had to file requests for payment of administrative expenses under any purchase orders that were open as of June 15, 2008, even though the goods had not yet been, and were not yet required to be, delivered. That obviously makes no sense.

It is also important to note that Mr. Grabell's claim is based on an executory contract that had not been assumed or rejected as of the Initial Admin Bar Date. It was not rejected until the Effective Date, August 8, 2008. Had the Agreement been assumed, Mr. Grabell would have had no claim at all for any administrative expense and his deferred compensation would have become an obligation of the Reorganized Debtor. Consequently, rejection of the Agreement was another contingency to his entitlement to an administrative expense.

---

[6] The existence of that contingency was duly noted in the Exhibit to Mr. Grabell's Proof of Claim in the exhibit referred to on the face of the claim.

Conclusion

For all of the foregoing reasons, Mr. Grabell's Request for payment of Administrative Expense was timely filed and the court should proceed with the remaining issues raised by the Objector.

Dated: December 19, 2008

**HANGLEY ARONCHICK SEGAL & PUDLIN**

By: ____/s/ Ashely M. Chan____
Ashely M. Chan
James M. Matour

*Attorneys for Steven Grabell*