Kevin M. McKenna, Esquire I.D. No.: 47986
Latsha Davis Yohe & McKenna, P.C.
350 Eagleview Boulevard, Suite 100
Exton, PA 19341
(610) 524-8454
kmckenna@ldylaw.com

Attorneys for the Debtors

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | |
| | CHAPTER 11 |
| SHAPES/ARCH HOLDINGS, LLC, et al., | |
| Debtors | CASE NO. 08-14631 |

### DEBTORS' INTERROGATORIES DIRECTED TO NEW JERSEY
### DEPARTMENT OF ENVIRONMENTAL PROTECTION

You are hereby requested under Rule 9014(c) and 7033 of the Federal Rules of Bankruptcy Procedure and Rule 33(b) of the Federal Rules of Civil Procedure to answer separately and full, in writing, and under oath, within thirty (30) days after service hereof, the Interrogatories in the numbered paragraphs set forth below.

# SECTION I
# DEFINITIONS

As used herein the following terms shall have the following meanings.

A. The term "person," as used herein, means any natural person, partnership, corporation, or other business entity and all present and former officers, directors, agents, employees, attorneys, and others acting or purporting to act on behalf of such natural person, partnership, corporation, or other business entity.

B. The term "document," as used herein, means the original and all copies of any written, printed, typed, or other graphic matter of any kind or nature and any other tangible thing in your custody or control, including but not limited to:

1. All contracts, agreements, letter agreements, representations, warranties, certificates, and opinions;

2. All letters or other forms of correspondence or communication including electronic mail, instant messaging, envelopes and notes, telegrams, cables, telex messages, telexes and messages, including reports, notes, notations, and memoranda of or relating to telephone conversations or conferences;

3. All memoranda, reports, test results, financial statements or reports, notes, scripts, transcripts, tabulations, studies, analyses, evaluations, projections, work papers, corporate records or copies thereof, expressions or statements of policies, lists, questionnaires, surveys, charts, graphs, summaries, extracts, statistical statements or records, compilations and opinions or reports of consultants;

4. All desk calendars, appointment books, and diaries;

5. All minutes, records, or transcripts of meetings and conferences and lists of persons attending meetings or conferences;

6. All reports and summaries of interviews or negotiations;

7. All books, articles, press releases, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, instructions, and manuals;

8. All motion pictures and photographs (whether developed or undeveloped), tape recordings, microfilms, phonographs, tapes or other records, punch cards, magnetic tapes, discs, data cells, drums, print-outs, and other data compilations from which information can be obtained; and

9. Drafts of any documents, revisions of any draft documents, and original or preliminary notes.

C. The term "communication," as used herein, means all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, letters, correspondence, notes, telegrams, telexes, advertisements, or any other form of written or verbal exchange.

D. The term "identify," when used with respect to a document, means to state the date, author, addressee, type of document (e.g., "letter"); to identify its last known custodian and location; and to state the exhibit number of the document if it has been marked during the course of a court proceeding.

E. The term "identify," when used with respect to an individual, means to give the person's full name, all known aliases, present or last known business and home addresses and telephone numbers, present position or business affiliation, and whether the NJDEP intends to call that person to testify at trial.

F. The term "identify," when used with respect to any other "person," means to give the person's official, legal and formal name or the name under which the person acts or conducts business, the address and telephone number of the person's place of business, or home, and the identity of the person's manager or equivalent supervisor.

G. The term "relate(s) to," as used herein, means constitute(s), refer(s), concern(s), pertain(s) to, or in any way logically or factually connect(s) with the matter described in the interrogatory.

3

H.    The term "unqualified negative" as used herein, means a denial, a refusal, a 'no' answer, or a rejection which is not limited, modified, or amended in any form.

I.    The term "employee(s)" as used herein, means any and all corporate officers, partners, appointed agents, servants, workmen and/or employees acting within their express and/or implied authorization, permission and/or consent and whether or not within the course and scope of said agency and/or employment.

J.    The term "you", "your", "corporation", "company" or "partnership" used herein, refers to the entity and also to all of the employee(s) thereof as defined in section "I" above.

K.    "NJDEP" shall mean the New Jersey Department of Environmental Protection, its predecessor and successor agencies.

L.    "NHR" shall mean the New Jersey Department of Natural and Historical Resources, its predecessor and successor agencies.

M.    "ONRR" shall mean the New Jersey Office of Natural Resource Restoration, its predecessor and successor agencies.

N.    "Natural Resources" shall mean all land, fish, shellfish, wildlife, biota, air, waters and other such resources owned, managed, held in trust or otherwise controlled by the State.

O.    "Natural Resource Damages" or "NRD" as used in these interrogatories are those damages for injuries to Natural Resources defined under the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq., the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., the Oil Pollution Act, 33 U.S.C. §§2701 et seq., the Clean Water Act, 33 U.S.C. §§ 1251 et seq., the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., and include:

(1)    The costs of assessing injury to Natural Resources and natural resource services, the NJDEP's Office of Natural Resource Restoration's oversight costs determined pursuant to N.J.A.C. 7:26C-93, attorney's fees, consultants' and expert's fees, other litigation costs, and interest; and

4

    (2) The compensation for restoration of, the lost value of, injury to, or destruction of Natural Resources and natural resource services.

 P. "ASI" shall mean Aluminum Shapes, LLC, its predecessors and successor entities located at 9000 River Road, Delair, Camden County, New Jersey.

 Q. "ASI Site" shall mean the real property located at 9000 River Road, Delair, Camden County, New Jersey.

 R. The term "Site" refers to the area or exact plot of ground of the referenced entity, comprising the real property owned, leased or otherwise.

 S. The phrase "other NRD Sites" refers to any Site, other than the ASI Site, for which the NJDEP has asserted, filed and/or settled a claim for Natural Resource Damages.

 T. The term "concerning" shall mean referring, relating, analyzing, discussing, describing, considering, constituting, modifying, amending, confirming, endorsing, evidencing, pertaining, representing, supporting, qualifying, terminating, revoking, canceling, negating or listing, unless qualified by a word of limitation.

 U. The term "formula" shall mean the equation, method, technique, principle procedure, theorem, mathematical statement, approach, design, plan, theory, system, tactic, mechanism and/or any other calculation used in the determination of the amount of acreage, and the dollar per acre value of land, the NJDEP asserts requires protection in order to mitigate the alleged groundwater impact, or any other NRD, at the respective Site

 V. The phrase "ASI Site Formula" shall mean the equation, method, technique, principle procedure, theorem, mathematical statement, approach, design, plan, theory, system, tactic, mechanism and/or any other calculation used in the determination of the amount of acreage, and the dollar per acre value of land, the NJDEP asserts requires protection in order to mitigate the alleged groundwater impact, or any other NRD, at the ASI Site.

 W. The phrase "Groundwater Injury Calculation" refers the calculations used to derive a dollar value for injuries to ground water resources of the State of New Jersey where the resulting dollar value will provide the scope of a restoration project.

X. The term "contractor" shall mean a person or entity who performs services for the NJDEP who is not an employee of the NJDEP, whether or not officially deemed an independent contractor, general contractor or sub-contractor.

Y. The term "agent" shall mean a person or entity who is authorized to act for the NJDEP through employment, by contract or apparent authority, express authority, limited authority, implied authority or general authority.

Z. The term "consultant" shall mean a person or entity who provides subject matter expertise on technical, functional, scientific and/or business topics before, during or after development and/or implementation and/or facilitates organizational change, including analysis and/or selection of packaged or custom software, developing proposals for consulting services and/or management and/or implementation of projects for the NJDEP.

AA. The term "aquifer" shall mean the Potomac-Raritan-Magothy Aquifer System.

BB. The term "expert" shall mean an individual with special skills, knowledge and/or abilities in a particular filed that would be qualified as an expert by knowledge, skill, experience, training, or education as defined by The Federal Rules of Evidence 702 and by the New Jersey Rules of Evidence 702.

## SECTION II
## INSTRUCTIONS

A. The person answering these interrogatories shall designate which of such information is not within his or her personal knowledge, and as to that information, shall state the name and address of every person from whom it was received, or, if the source of the information is documentary, shall identify the document(s) including the location thereof.

B. Should you be unable to answer any interrogatory in full, answer it to the extent possible and explain your inability to answer the remainder of said interrogatory.

C. Unless otherwise indicated, the time period to which these Requests are directed is from on or about January 1, 1986.

D. A specific response must be made to each individual question.

E.   Respond to all questions in the space provided; however, if additional space is necessary, complete your answer on separate sheets as needed and identify such responses accordingly.

F.   Identify each answer with the number of the question to which it is addressed unless instructed otherwise.

G.   In answering each question identify all contributing sources of information.

H.   For each document produced in response to any question, indicate on the document, or in some other reasonable manner, the number of the question to which it responds.

I.   If you are unable to answer any question in a detailed and complete manner or if you are unable to provide any of the information or documents requested (other than by reason of assertion or a claim of privilege, or protection of trial preparation materials), indicate the reason for your inability to do so. If you have reason to believe there may be an individual who may be able to provide a more detailed or complete response to any question or who may be able to provide the documents requested, identify such person.

J.   If anything is redacted from a document produced in response to any question (other than by reason of assertion or a claim of privilege, or protection of trial preparation materials), state the reason for the redaction and the subject matter of the redaction.

K.   Where documents are requested but are not available, state the reason(s) for their unavailability (other than by reason of assertion or a claim of privilege, or protection of trial preparation materials). However, to the best of your ability, identify any such document by stating its author, date, subject matter and location.

## SECTION III
## INTERROGATORIES

1. Identify all NJDEP, ONRR, and NHR employees, contractors, experts and/or agents that participated in the process of generating, refining or otherwise producing the ASI Site Formula, used in the determination of acreage the NJDEP asserts requires protection in order to mitigate the alleged groundwater impact or any other NRD at the ASI Site including:

    a. Their area of expertise and type of formal training;

    b. Their formal job title; and

    c. The date the person began employment with the NJDEP.

2. With respect to those individuals identified in Interrogatory 1 above, identify all other NRD Sites the individual participated in the process of generating, refining or otherwise producing the formula used at the particular site including:

    a. The name of the facility and physical address;

    b. The name of the owner and operator of the facility;

    c. The lot and block of the location of the real property;

    d. The total acreage of the property and the areal extent of the contamination; and

    e. The formula, equation, method, tabulation or exercise used to determine the amount of acreage and monetary value necessary to compensate the public for the damage to natural resources at the site.

3. Identify all persons who are likely to have personal knowledge of any fact alleged in the NJDEP bankruptcy filings in this Court for CASE NO. 08-14631, including but not limited to the NJDEP Proof of Claim, the NJDEP Response to Debtors' Objection to NJDEP Proof of Claim including the subject matter of the personal knowledge possessed by each such person.

4. Identify all individuals, including expert witnesses that the NJDEP intends to call to testify at trial, including the subject matter upon which the person intends to testify and the substance of expert findings and opinions.

5. Identify the criteria relied upon when selecting properties whose sales price was used as data for the formula used in the determination of the dollar per acre value of land the NJDEP asserts requires protection in order to mitigate the alleged groundwater impact, and any other NRD at the ASI Site including any properties in Pennsauken and/or Southern New Jersey.

6. Identify the source of the property value data used by NJDEP and/or ONRR and/or NHR in their formula, used in the determination of the dollar per acre value of land requiring protection in order to mitigate the alleged groundwater impact at the ASI site.

7. With respect to each and every previous and current iteration of the formula referenced in Interrogatory 6, identify:

    a. all documents used, involved, consulted or otherwise relied on in the process of generating, refining or otherwise producing the formula;

    b. the identity of all persons responsible for any and all changes, alterations, variations, adjustments, refinements, conversions, corrections, or revisions made to the formula; and

    c. all other NRD Sites where any previous or current iteration has been utilized, including the name of the facility and physical address, the owner and operator of the facility, lot and block of the location of the real property and the total acreage of the property and the areal extent of the contamination.

8. Identify the reasons and rationale for use of the ASI Site Formula instead of the Groundwater Injury Calculation identified by ONRR on the NJDEP website found at http://www.nj.gov/dep/nrr/nri/gw_injury_calc_200305.pdf

9. Provide a list of previous settlements, outstanding settlements and abandoned settlements where Groundwater Injury Calculation, identified

9

in Interrogatory 8 above, was used including the name of the facility and physical address, the owner and operator of the facility, lot and block of the location of the real property, the total acreage of the property and the areal extent of the contamination.

10. Provide a list of previous settlements, outstanding settlements and abandoned settlements where the ASI Site Formula was used including the name of the facility and physical address, the owner and operator of the facility, lot and block of the location of the real property, the total acreage of the property and the areal extent of the contamination.

11. For each answer to the Debtors' Requests for Admissions Directed to New Jersey Department of Environmental Protection that is anything other than an unqualified admission, please describe in detail the factual basis for any denials or qualifications.

12. Identify the government agencies, acting as natural resource trustees for damage assessment purposes, which relied upon the use of a three percent (3%) discount rate as applied in the ASI Site Formula.

13. Identify and explain the application, use or method of a three percent discount (3%) rate employed by any and all government agencies acting as natural resource trustees for damage assessment purposes.

14. Identify the source of the "annual recharge rate," as used in the ASI Site Formula.

Respectfully submitted,

LATSHA DAVIS YOHE & McKENNA, P.C.

Dated: July 13, 2009        By: _____
                                Kevin M. McKenna

Kevin M. McKenna, Esquire I.D. No.: 47986
Latsha Davis Yohe & McKenna, P.C.
350 Eagleview Boulevard, Suite 100
Exton, PA 19341
(610) 524-8454 Telephone
KMcKenna@ldylaw.com

Attorneys for the Debtors

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | CHAPTER 11 |
| SHAPES/ARCH HOLDINGS, LLC, et al., | CASE NO. 08-14631 (GMB) |
| Debtors | Hearing Date: |

### CERTIFICATE OF SERVICE

I, Kevin McKenna, do hereby swear that true and correct copies of the **DEBTORS' INTERROGATORIES DIRECTED TO THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION** have been served on the 13th day of July, 2009 upon the following via Federal Express and Electronic Mail:

Richard Engel, Chief, Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, NJ
New Jersey Department of
Environmental Protection

LATSHA DAVIS YOHE & McKENNA, P.C.

By: _____
Kevin McKenna
Attorney for the Debtors

DATED: July 13, 2009

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
PO Box 093
Trenton, NJ 08625-0093
Attorney for Department of
    Environmental Protection

By: Rachel Jeanne Lehr
    Deputy Attorney General
    (609)984-5016

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re Shapes/Arch Holdings L.L.C. et al., | : | Chapter 11 |
|  | : | Case No. 08-14631 (GMB) |
| Debtors. | : | Honorable Gloria M. Burns |

Plaintiff New Jersey Department of Environmental Protection through their undersigned counsel, hereby responds to defendants Shapes/Arch Holdings, L.L.C.'s First Set Of Interrogatories.

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiffs

By: *(signature)*
Rachel Jeanne Lehr
Deputy Attorney General

Dated: November 12, 2009

PLAINTIFFS' GENERAL OBJECTIONS TO, AND RESERVATIONS CONCERNING, DEFENDANT Shapes Arch's INITIAL INTERROGATORIES

Plaintiff New Jersey Department of Environmental Protection ("the Plaintiff"), through counsel, asserts the following general objections to and reservations concerning, defendants Initial Interrogatories.

1. The Plaintiff objects to any specific interrogatory to the extent that it seeks any document or other information that is not relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

2. The Plaintiff objects to any specific interrogatory to the extent that it is vague, ambiguous, overbroad, unintelligible or unduly burdensome so as to render it impossible for the Plaintiffs to respond in a reasonable manner or amount of time.

3. The Plaintiff objects to any specific interrogatory to the extent that it seeks documents or other information from third parties. The Plaintiffs will respond to such an interrogatory only to the extent that any requested document or information exists and is within the Plaintiffs' possession or control.

4. The Plaintiff objects to any specific interrogatory to the extent that it seeks to impose obligations greater than those imposed by the Federal Rules of Civil Procedure.

5. The Plaintiff objects to any specific interrogatory to the extent that it seeks any document or other information that is protected from discovery by the attorney-client privilege, the deliberative process privilege, and/or the work-product doctrine. In responding, the Plaintiffs will withhold all information that is privileged or otherwise protected from discovery.

6. The Plaintiff objects to any specific interrogatory to the extent that it seeks the production of "all" or "any and all" documents or other information because such an interrogatory is vague, unduly burdensome and overbroad. The Plaintiffs will respond to such an interrogatory to the extent a reasonable search of the Plaintiffs' records provides the documents or other information the Defendants requests.

7. The Plaintiffs reserve their right to supplement and otherwise amend their response to any specific interrogatory.

Case 08-14631-GMB    Doc 956-3    Filed 04/09/10    Entered 04/13/10 16:05:35    Desc
Exhibits I & J    Page 14 of 20

PLAINTIFFS' RESPONSES AND SPECIFIC OBJECTIONS
TO DEFENDANT'S FIRST SET OF INTERROGATORIES

The Plaintiff offers the following responses to the Defendants' Initial Interrogatories:

1. - 4. Premature; to be provided by expert testimony.

5. The DEP obtained data on 331 sales of undeveloped (vacant) land in Water Supply Planning Area 17 between 2004 and 2008.

6. The source of the property value data was obtained from a public New Jersey Tax records search website, http://tax1.co.monmouth.nj.us.

7a) and b) Deliberative, work product

7c) See General Objection number 2. Overly broad, burdensome

8. The Ground Water Injury Calculation on the NJDEP's website is used to monetize ground water injuries in cases where the responsible parties settle natural resource injury liabilities on a voluntary basis.

9. See General Objection number 2. Overly broad, burdensome.

10. See General Objection number 2. Overly broad, burdensome.

11.

12. To be provided during expert testimony.

13. To be provided during expert testimony.

14. The recharge rate the Department used is the regional average of recharge rates in the individual watershed management areas comprising the region.

## REQUEST FOR ADMISSIONS

1. Denied

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. While ETRA is in agreement that no further ecological investigation is warranted at this time the reasoning posited in this paragraph is incorrect. It is important to note that the primary ground water flow direction at Aluminum Shapes Incorporated (hereinafter ASI) is to the south; however, the flow direction will vary dependent on season variation and the operation status of the adjacent well fields. Depending on ground water flow direction and seasonal elevations surface water may be impacted by ASI site ground water.

8. Denied. The chromium contaminated in ground water has not been vertically or horizontally delineated. Ultimately, unperturbed by the aforementioned production well action, the ground water will discharge to the river.

9. Denied. This statement is incorrect. Depending on the River Stage (i.e. drought and depleted flow condition) or activities of the Morris Well Field, which is located west of the ASI site, the Delaware River surface water elevation may be lower than ground water elevation conditions.

10. Denied. This statement is incorrect. Soil contamination has not been delineated because an *Ad Hoc* impact to ground water number has not been determined and approved for site related chromium. Horizontal and vertical ground water contamination delineation by chromium has not been complete.

11. Admitted. This is correct as expressed.

- 4 -

12. Admitted. NJDEP has not requested or recommended a Tier II ecological evaluation, at this time.

13. Denied. This statement is incorrect, for delineation is incomplete. Moreover, the plume's relationship to the nearby wellfield is one of the reason's for the subsequent 60-day RI. Further, reference to the former 100 ppb Chromium Ground Water Quality Standard (hereinafter GWQS) is irrelevant. Since a Remedial Action Work Plan was not approved at that time, nor has yet to be approved, any reference to delineation must refer to the present GWQS of 70 ppb.

14. Neither admitted nor denied. This statement is irrelevant because of the reasoning provided in Paragraph # 13.

15. Denied. The 2004 reference data is incorrect; A summary report and proposed work plan for additional site investigation dated July 5, 2005, entitled: "*Supplemental Chromium Remedial Investigation Report*" was submitted to the NJDEP in August 2005, and has been reviewed. There is also a pejorative implication in the statement "the NJDEP lacks data…that defines the extent of chromium impacted ground water of the perched and regional PRM Aquifer system". The Department lacks the data because ASI has not completed their required chromium ground water delineation.

16. Denied. There was a BEE included in the Supplemental Chromium Remedial Investigation Report.

17. Admitted.

18. Admitted.

19. Denied. This statement is not accurate; Various Public supply wells had been taken off line due to, *inter alia*, chromium contamination. N.B.: the interruption in amount and quality of water since 1986 needs to be supplied from other sources.

20. Denied. The calculation identified on the ONRR's webpage is used as a cash settlement tool for responsible parties who voluntarily approach the Department to settle their natural resource injury liabilities regardless of the Department oversight mechanism under which a site is being remediated.

- 5 -

21. - 23.  See calculation of the formula used for Arch Shapes NRD, filed with the court and attached hereto.

24. The Groundwater Injury Calculation referenced is not a promulgated regulation but is used as a monetary settlement tool in cases where responsible parties voluntarily approach the Department to settle natural resource injury liabilities.

**Note:**  Admissions 25 - 65 all concern settlements reached before 2001-2002, when the Department's policy was to exclude the on-site portions of plumes from its assessment of natural resource damages.  That policy was changed around 2002, when injury assessments included both on-site and off-site impacts. In the case of Aluminum Shapes, the Department has based its assessment of injuries to ground water only on the on-site plume because delineation of off-site impacts has not been conducted by the RP.
26, 29, 32, 34, 37, 41, 44, 47, 50, 53, 56, 58, 61, 63, 65. Admitted.

25, 27, 28, 30, 31, 33, 35, 36, 38, 39, 40, 42, 43, 45, 46, 48, 49, 51, 52, 54, 55, 57, 59, 60, 62, and 64 - Neither admitted nor denied.  DEP objects to this request because it is overbroad, unduly burdensome, vague, and ambiguous so as to render it impossible for the State to respond in a reasonable manner or amount of time.  In addition, the documents defendants request are irrelevant to this matter.

69. Denied; see response to 20.

70. Neither admitted nor denied, but the Department has the option of using a watershed-based or regional recharge rate and in this case used a regional recharge rate.

71. Denied.  The 8.93 gallons per square feet per year is a typographical error; the recharge rate actually used in the calculation was 10.57 gallons per square feet per year.

72. See responses to 70. and 71.

73. Admitted.

74. Admitted; see 70.

75. See 71.

- 6 -

76. Denied. The Department used a regional recharge rate.

77. Denied; see 71.

78. DEP objects to this request because it is overbroad, unduly burdensome, vague, and ambiguous so as to render it impossible for the State to respond in a reasonable manner or amount of time.

79. Neither admitted nor denied; too vague.

80. Neither admitted nor denied; too vague.

81. Neither admitted nor denied.

84. Deny, as a general statement this is too general a statement to be correct. Moreover, the contaminant of interest is not in molecular form. Hexavalent chromium exists commonly as one of two principal ionic species. [ $CrO_4]^{-2}$, referred to as the chromate anion, or $[Cr_2O_7]^{-2}$, referred to as the dichromate anion.

   85. Deny, from a chemical perspective this statement is not correct. The above mentioned complex anions are obligately accompanied by a cationic species. All ionic compounds undergo some degree of dissociation , the dissociated anions can them recombine with other cations in the porous media, which can differ substantively in water solubility from the parent compound. These newly formed compounds then may undergo dissociation , to a degree specific to the compound formed. Since the contaminant reacts with the porous media in a dynamic way, the plume size is not well correlated with the amount of contaminant ions affecting the aquifer.

   86. Deny, this statement is not correct from a physico-chemical perspective regarding both areal and concentration. Contaminants interact with the porous media, and there is an equilibrium between the two, and there is an exchange with the surrounding ground water. Once some contaminant is removed from the ground water milieu, more contaminant that was bound to the porous media may be released to the ground water.

83. Admitted; ASI failed to delineate off-site plume extent and so the areal extent of groundwater injury used was limited to the extent of the site.

87 - 92. Neither admitted nor denied.

93. Admitted.

94. Denied; there are many variables affecting the amount of time for contaminated groundwater to attain groundwater quality standards under active remediation.

95, 96, 97. Neither admit nor deny; the relevance of this admission to this matter could not be determined.

98 - 103. Denied; too broad; too vague; not specific enough.

104. Denied; "chromium contamination in the ground water above predischarge conditions" and duration of injury are two different issues (concentration vs. duration) and so they cannot be consistent.

105. Neither admitted nor denied.

106. Neither admitted nor denied.

107. Denied. This is an incorrect statement. The source of the chromium contamination at ASI was chromic acid which has the chemical structure $H_2CrO_4$. As explained in Paragraph 85, the anion $CrO_4^{-2}$, is one of the chemical forms of hexavalent chromium. This material was used in excess to attack the aluminum surface so that the aluminum would hold paint. Chromic acid permeated the concrete and entered the subsurface. Thus the source material, as it enters the ground water is hexavalent chromium. There are chemical analyses which can distinguish between the three forms of chromium stated in this Paragraph, but we know that the starting material was a hexavalent species.

108. Cannot admit nor deny; too vague and incomprehensible as written.

109-111. Denied.

- 8 -

112. Neither admitted nor denied. Expert testimony needed for this.

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Rachel Jeanne Lehr
Rachel Jeanne Lehr
Deputy Attorney General

Dated: November 13, 2009

- 9 -