**HALPERIN BATTAGLIA RAICHT, LLP**
555 Madison Avenue, 9th Floor
New York, New York  10022
(212) 765-9100
(212) 765-0964 Facsimile
Donna Lieberman, Esq.
Carrie E. Mitchell, Esq.

**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536  Facsimile
Ilana Volkov, Esq.
Felice R. Yudkin, Esq.

Co-Counsel for Plaintiff, The Class 10 Liquidation Trust

|  |  |
|---|---|
|  | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE GLORIA M. BURNS<br>CASE NO. 08-14631 (GMB) |
|  | Chapter 11<br>(Jointly Administered) |
| In re:<br><br>SHAPES/ARCH HOLDINGS L.L.C., *et al*.,<br><br>Reorganized Debtors. | **THE CLASS 10 LIQUIDATION TRUST'S FIFTH OMNIBUS OBJECTION TO CLAIMS (Claim Numbers: 81, 541, 597, 663, 699, 772, 719, 742. 743, 749, 742, 743, 744, 749, 757, 828, 901, 904, 905, 906)**<br><br>**HEARING DATE AND TIME:**<br>**July 26, 2010 at 10:00 a.m.**<br><br>**ORAL ARGUMENT REQUESTED** |

TO THE HONORABLE GLORIA M. BURNS
UNITED STATES BANKRUPTCY JUDGE

      The Class 10 Liquidation Trust (the "Trust"), established upon the Effective Date (as

defined below) of the Third Amended Joint Plan of Reorganization (together with all

amendments, exhibits, and modifications, the "Plan") of Shapes/Arch Holdings, L.L.C., et al., the above-captioned reorganized debtors (the "Debtors"), makes this motion (this "Motion") pursuant to §105(a) and 502(b) of Title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order disallowing certain claims listed on **Exhibits A, B** and **C**, annexed hereto and made a part hereof.  In support of this Motion, the Trust respectfully represents as follows:

**Background**

1.  The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on March 16, 2008 (the "Petition Date").  The cases were jointly administered pursuant to this Court's Order dated March 18, 2008.

2.  The Debtors managed their affairs as debtors-in-possession pursuant to §§ 1108 and 1109 of the Bankruptcy Code until the Effective Date of the Plan (as defined below), and after the Effective Date, as reorganized debtors.

3.  The Debtors' Plan was confirmed by Order of this Court dated July 24, 2008 and became effective on August 8, 2008 (the "Effective Date").  On the Effective Date of the Plan, the Trust came into existence, and pursuant to Sections 4.5, 5.2 and 5.3 of the Plan and Article IV of the Plan Administration Agreement (an exhibit to the Plan), the Trust, by its Trustee, Steven D. Sass, was empowered to, among other things, review and file objections to unsecured claims.

4.  The Plan established a deadline of ninety days after the Effective Date, or November 6, 2008, for the filing of objections to claims.  It further provided that the Court could extend that deadline (with or without notice), upon the request of the Debtors or the Trust.  The

2

deadline for the filing objections to claims has been extended several times, and is now April 30, 2010 (the "Claims Objection Deadline").

### The Claims Process

5. On the Petition Date, the Debtors filed their Statements of Financial Affairs, Schedules of Assets and Liabilities and Schedule of Executory Contracts and Unexpired Leases. Shortly thereafter, the Debtors were authorized to retain Epiq Bankruptcy Solutions, L.L.C. ("Epiq") to serve as claims agent in these cases and maintain the official claims register and notice lists.

6. On March 18, 2008, this Court entered an Order pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3) establishing the deadline for the filing of proofs of claim evidencing pre-petition claims. Pursuant to the terms of that Order, the deadline for all persons and entities to file proofs of claim against the Debtors for claims that arose on or prior to the Petition Date was May 15, 2008 (the "Bar Date").

7. In addition, pursuant to section 8.4 of the Plan, a deadline was established for the filing of claims arising from the rejection of executory contracts and unexpired leases. The deadline for filing such claims was thirty days after the mailing of the notice of the Effective Date, unless an earlier deadline had been set by prior order of the Court.

8. The notice of Effective Date, which included a notice of the bar date for filing rejection damage claims, was mailed on August 11, 2008, and it notified all parties in interest that the deadline for filing rejection damage claims was September 11, 2008 (the "Rejection Bar Date"). That notice was also filed with the Court. [D.N. 588]

9. As this Court is aware, the Trust has spent considerable time reviewing the more than 1,500 unsecured claims which have been filed in these cases and is close to the conclusion of the claims objection process. As set forth in the declaration of Lynn K. Smalley, which is

3

attached hereto as **Exhibit D**, in anticipation of the deadline for filing objections to claims, the Trust obtained updated copies of the official claims register from Epiq on March 29, 2010 and again on April 26, 2010, and undertook a final review of the unsecured claims.

 **(a)** <u>**Late-Filed Claims**</u>

 10. The Trust's review disclosed that numerous claims had been filed after both the Bar Date and the Rejection Date had passed, without the consent of the Trust or any order of this Court authorizing such late filings. The Trust's professionals reviewed the late claims to determine if any of the claims amended timely filed claims or were in fact administrative rather than unsecured claims, and perhaps had been incorrectly classified. Upon completing that review, Trust professionals prepared Exhibit A, which identifies claims that the Trust has determined are unauthorized, late-filed general unsecured claims (the "<u>Late Claims</u>").

 **(b)** <u>**Duplicative Claims**</u>

 11. During the recent review of the claims register, the Trust identified unsecured claims which appeared to be duplicative of other filed, unsecured claims. Trust representatives reviewed each pair of claims carefully, to confirm that the claimant and amount shown on the claims matched, and that any documentation provided by the claimant supported the assumption that the claims evidenced the same obligation. Smalley Declaration, paragraph 6. Exhibit B to this Motion identifies the duplicative claims (the "<u>Duplicative Claims</u>"), as well as the surviving claim of each of the claimants. (The surviving claims are unaffected by this Motion.)

 **(c)** <u>**Books and Records Objection**</u>

 12. Finally, the Trust's review of the claims register uncovered three sets of claims as to which there is confusion that needs to be addressed– the claims of Pennsauken Township, those of Perfect Trade, and the claim of Raggedy, Inc., d/b/a/ Handyman Connection of Middle

4

Tennessee, Window Depot USA ("Raggedy") all identified in **Exhibit C** (the "Incorrect Claims").

13. The claims of Pennsauken Township are for taxes, and appear as two scheduled claims, one secured and one unsecured, and each in the amount of $747,938.71, and filed claims 541 and 597, each of which is asserted as a secured claim in the amount of $837,905.30. Claim 597 has already been expunged.[1]

14. It appears that Pennsauken Township filed two secured claims that the superseded the secured *and* the unsecured claims scheduled by the Debtors. However, in an excess of caution and to insure that there is no suggestion that Pennsauken Township has an unsecured claim in these cases, the Trust objects to the scheduled unsecured claim (recorded as scheduled claim 632007160) and seeks to have it disallowed and expunged.

15. Likewise, there are multiple claims reflected on the claims register for Perfect Trade Development Co. The Debtors' schedules initially showed an unsecured claim of $433,628.49. In June of 2008, Perfect Trade filed two administrative claims, which were recorded as claims 771, in the amount of $14,914.35 (for goods received by the Debtors after the Petition Date) and 772, in the amount of $273,108.42 (for goods received by the Debtors within twenty days prior to the Petition Date).

16. The Debtors objected to claim 772, and by Order dated December 24, 2008, this Court partially reclassified that claim. The Court's Order recognized an administrative claim of $200,857.90 and an unsecured claim of $72,250.52, but specifically reserved the rights of the Trust to further object to the claim. In addition, the Trust objected to Perfect Trade's scheduled

---

[1] The official claims register also shows two administrative claims, which are not within the purview of the Trust, and are not addressed here.

claim of $433,628.49, and by Order dated February 20, 2009, the scheduled claim was reduced to $229,167.52.

17. The Trust objects to that portion of claim 772 that has been reclassified as an unsecured claim in the amount of $72,250.52, as it believes that Perfect Trade now has general unsecured claims of $229,167.52, as reflected in the revised schedules, and administrative claims of more than $200,000.00. These amounts, when combined, are consistent with the amounts initially scheduled by the Debtors for this creditor.

18. Finally, on May 15, 2008, Raggedy filed proof of claim 663 against Accu-Weld for what appears to be a warranty claim. As set forth in the Smalley Declaration, the dollar amount asserted in the Raggedy proof of claim is not reflected in the Debtors' updated books and records. Further, the dollar amount asserted on the proof of claim is not supported by any documentation.

**Relief Requested**

19. By this Motion, the Trust seeks entry of an order expunging and disallowing the Late Claims, the Duplicative Claims and the Incorrect Claims (together, the "Disputed Claims").

20. The disallowance of the Late Claims is authorized by the Plan, which provides in relevant part:

> "…unless this Plan or an order of the Bankruptcy Court specifically provides for a later date, any proof of, or other assertion of a Claim filed after the deadline established for filing Claims of that type shall be automatically disallowed as a late filed Claim, without any action by the Class 10 Liquidation Trustee or the Reorganized Debtors, unless and until the party filing such Claim obtains the written consent of, the Class 10 Liquidation Trustee or the Reorganized Debtors, as applicable, or obtains an order of the Bankruptcy Court upon notice to the Class 10 Liquidation Trustee and Reorganized Debtors that permits the late filing of the Claim. Moreover, the holder of such disallowed, late-filed Claim shall be forever barred from asserting such Claim

6

>against the Liquidation Trust, the Debtors, the Estates or their
>Property, Reorganized Debtors or their Property.

Plan, section 7.8. The Plan defines a "Claim" by referring to section 101(5) of the Bankruptcy Code. Plan, section 1.27.

21. Consistent with the terms of the Plan, the notice of Effective Date likewise states that any person or entity that fails to file and serve a rejection damage claim on or before September 11, 2008 "**SHALL BE FOREVER BARRED AND ESTOPPED AND ENJOINED** from asserting a Claim against any of the Debtors, the Reorganized Debtors or the Debtors' estates[.]" (*emphasis in original*).

22. Likewise, the Trust's objections to the Duplicative Claims identified on Exhibit B are warranted, based upon a review of the claims and a comparison of those claims to other claims filed by the same claimants, in the same amounts and on the same bases. The Trust believes that this is simply a "housekeeping" matter, to insure that the claims register does not reflect the same claim more than once.

23. Finally, as set forth above, the intent of the objection to the scheduled, unsecured claim of Pennsauken Township and the $72,250.52 unsecured claim of Perfect Trade is to correct any confusion in the claims register. The claims of Pennsauken Township appear to be properly addressed as secured claims, and in fact, the two proofs of claim filed by Pennsauken Township, which presumably supersede the two scheduled claims, asserted secured claims.

24. Similarly, the Trust seeks an Order disallowing the unsecured portion of claim 772, as it believes that the proper amount of Perfect Trade's unsecured claim is $229,167.52 and not $72,250.52. Absent the relief requested, the filed unsecured claim (as reclassified by prior Court Order) will be deemed to supersede the scheduled unsecured claim, resulting in a lower claim for Perfect Trade.

25.     Finally, the Trust seeks to expunge proof of claim 663 filed by Raggedy, as it is not reflected in the Debtors' updated books and records and is not supported by any documentation.

26.     For the foregoing reasons, the Trust seeks the entry of an order (i) expunging and disallowing the Late Claims and the Incorrect Claims in their entirety, (ii) disallowing the scheduled unsecured claim of Pennsauken Township, and (iii) disallowing the unsecured portion of Perfect Trade's claim 772.[2]  The Trust respectfully submits that the relief requested is not only warranted, but largely in the nature of "housekeeping."  The entry of the proposed order will make the claims register clearer, and eliminate any confusion.

## Reservation of Rights

27.     Notwithstanding the Claims Objection Deadline, the Trust expressly reserves the right to object to the Late Claims, the Duplicative Claims and the Incorrect Claims on additional or alternative grounds on a later date, should such objections prove necessary.

## Notice

28.     Notice of this Motion has been served upon (i) all of the holders of Disputed Claims, (ii) their counsel, if any, (iii) counsel to the Debtors, and (iv) the United States Trustee.  The Trust submits that such notice is sufficient under the circumstances.

29.     No previous request for the relief sought herein has been made to this or any other court.

---

[2] The Trust notes that certain of the claimants identified in Exhibit A hold scheduled claims which are unaffected by the relief sought in this Motion, while all of the claimants in Exhibit B will have surviving claims.

8

45765/0003-6495617v1

### Waiver of Memorandum of Law

30. It is requested that the Court waive and dispense with the requirement that any motion filed shall have an accompanying memorandum of law. The Motion does not raise any novel issue of law. Accordingly, it is submitted that a waiver of the requirement is appropriate under the circumstances.

**WHEREFORE**, the Trustee respectfully requests that an order be entered, substantially in the form annexed hereto as **Exhibit E**, granting the Motion in its entirety, and granting to the Trust such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    COLE SCHOTZ MEISEL FORMAN
    &  LEONARD, P.A.

    By:   */s/ Ilana Volkov*
        Ilana Volkov
        Felice R. Yudkin
    Court Plaza North
    25 Main Street
    P.O. Box 800
    Hackensack, NJ 07602-0800
    Telephone (201) 489-3000

    -and-

    HALPERIN BATTAGLIA RAICHT, LLP
    Donna H. Lieberman, Esq.
    Carrie E. Mitchell, Esq.
    555 Madison Avenue, 9th Floor
    New York, New York 10022
    Telephone (212) 765-9100

    Co-Counsel for the Class 10 Liquidation Trust

Dated: April 30, 2010

45765/0003-6495617v1