# EXHIBIT D

**HALPERIN BATTAGLIA RAICHT, LLP**
555 Madison Avenue, 9th Floor
New York, New York  10022
(212) 765-9100
(212) 765-0964 Facsimile
Donna Lieberman, Esq.
Carrie E. Mitchell, Esq.

**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536  Facsimile
Ilana Volkov, Esq.
Felice R. Yudkin, Esq.

Co-Counsel for Plaintiff, The Class 10 Liquidation Trust

| | |
|---|---|
| In re:<br><br>SHAPES/ARCH HOLDINGS L.L.C., *et al.*,<br><br>Reorganized Debtors. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE GLORIA M. BURNS<br>CASE NO. 08-14631 (GMB)<br><br>Chapter 11<br>(Jointly Administered)<br><br>**DECLARATION OF LYNN K. SMALLEY**<br>**IN SUPPORT OF CLASS 10**<br>**LIQUIDATION TRUST'S FIFTH**<br>**OMNIBUS OBJECTION TO CLAIMS** |

This declaration is made pursuant to 28 U.S.C. § 1746 by Lynn K. Smalley, as follows:

1. I am a senior consultant to the Trustee of the Class 10 Liquidation Trust (the "Trust") in the cases of the above-captioned reorganized debtors (the "Debtors"). I have reviewed the attached motion (the "Motion") and exhibits A,B and C to that Motion, and submit this declaration in connection with the relief sought. All of the statements made in this declaration are based upon my firsthand knowledge, unless otherwise stated.

45765/0003-6496394v1

2. In connection with my work for the Trust, I obtained a complete copy of the claims register as of March 29, 2010 from Epiq Systems, the official claims agent in these cases, and later obtained the claims register of April 26, 2010. I reviewed the claims registers as part of a final review of unsecured claims, to determine, among other things, if any unsecured claims had been filed after the deadlines for filing claims established by the Court in these cases. I was aware that the "bar date" for filing general unsecured claims was May 15, 2008 and the "bar date" for claims relating to the rejection of contracts and leases was September 11, 2008.

3. During my review, I identified a number of apparently late filed claims. I then did a more in-depth review of those claims, looking at the proofs of claims and any supporting documentation to determine the nature of the claim and if it was correctly recorded as an unsecured claim, and then reviewing the claims register to see if the late claim might be an amendment of an earlier filed claim.

4. Upon completing this review, I prepared a schedule of those claims which were filed after May 15, 2008 the "bar date" for general unsecured claims and September 11, 2008 the "bar date" for claims related to rejection of contracts and leases and appeared to assert wholly new pre-petition unsecured claims. **Exhibit A** to the Motion is true and complete copy of that schedule.

5. I also reviewed the Trust's records and conferred with the trustee, and determined that the Trust had not consented to the late filing of any unsecured claims. Moreover, I am not aware of any Court order authorizing the late filings reflected in **Exhibit A**.

6. In addition, I reviewed the claims registers to identify claims that appeared to be duplicates of other claims, in that the matching claims referenced the same claimant and claim amount, and if detail was provided, appeared to have the same basis. Based upon that review, I

2

prepared a schedule of duplicative claims which identified both the claims to be disallowed and the surviving claims. **Exhibit B** to the Motion is true and complete copy of that schedule.

7. I also conducted a more general review of the April 26, 2010 claims register, to see if there were any other entries that were confusing or otherwise a cause for concern. I noted that Pennsauken Township had two scheduled claims which were apparently superseded by two filed claims. Both of the scheduled claims were in precisely the same amount, and both of the filed claims were also in precisely the same (somewhat higher) amount.

8. One of the scheduled claims has previously been expunged, leaving a scheduled unsecured claim of $747,938.71. Likewise, one of the filed claims has been expunged, leaving a filed secured claim of $837,905.30. It appears that the remaining scheduled claim should be removed from the claims register, as it was superseded by a filed claim. I also identified an issue with respect to Perfect Trade Development Co. There appeared to be a scheduled unsecured claim in a significantly higher amount than the unsecured component of claim 772. (Claim 772 includes a sizeable allowed administrative claim as well.) Upon closer review, it appeared to me that the scheduled unsecured claim was the correct one, as that claim together with the allowed administrative claims (which related to goods received by the Debtors from twenty days prior to the bankruptcy filing until after the filing) was very close to matching the original amount of the claim scheduled by the Debtors for Perfect Trade. I do not believe that the smaller unsecured claim should be treated as the superseding claim.

9. Finally, I identified an issue with respect to Raggedy, Inc., d/b/a/ Handyman Connection of Middle Tennessee, Window Depot USA ("Raggedy"). Raggedy filed proof of claim 663 against Accu-Weld for what appeared to be a warranty claim. I reviewed the Debtors' updated books and records, and I discovered that Raggedy's claim was not reflected in the

3

Debtors' updated books and records. I undertook to review proof of claim 663 filed by Raggedy and discovered that Raggedy did not include any documentation to support the amount listed in their proof of claim. I do not believe that claim 663 is properly documented and do not believe it should treated as a general unsecured claim.

                                    */s/ Lynn K. Smalley*
                                    LYNN K. SMALLEY

DATED: Ellicott City, Maryland
           April 30, 2010