U.S. BANKRUPTCY COURT
FILED
CAMDEN, NJ

2011 JUL 29  AM 10: 16

JAMES J WALDRON

BY: _____
     DEPUTY CLERK

Kevin M. McKenna (KM4502)
Timothy W. Garvey (TG9134)
LATSHA, DAVIS & McKENNA, P.C.
3000 Atrium Way, Suite 251
Mt. Laurel, NJ  08054
(856) 231-5351
kmckenna@ldylaw.com
tgarvey@ldylaw.com

Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : CHAPTER 11 |
| | : |
| SHAPES/ARCH HOLDINGS, LLC, et al | : CASE NO. 08-14631 (GMB) |
| | : (Jointly Administered) |
| Debtors | : |
| | : Claim No.: 603 |
| | : |
| | : Hearing Date: August 23, 2011 |

## DEBTOR'S MOTION FOR AN ORDER PURUSANT TO 11 U.S.C. SECTON 105(a) AND FED. R. BANKR.P.9010(B) AUTHORIZING AND APPROVING A SETTLEMENT OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION'S CLAIMS FOR NATURAL RESOURCE DAMAGES RELATED TO THE 9000 RIVER ROAD SITE

Shapes/Arch Holdings LLC and its related debtor entities
(collectively the "Debtors"), the reorganized Debtors, hereby
move (the "Motion") for entry of an order pursuant to 11 U.S.C.
Section 105(a) and Fed. R. Bankr. P. 9019(b) authorizing the
Debtors to enter into a settlement agreement with the New Jersey
Department of Environmental Protection (the "NJDEP") and

approving the settlement agreement in the form attached hereto as Exhibit "A", (the "NJDEP Consent Order"). In support of the motion, the Debtors respectfully represent as follows:

## BACKGROUND

### A. General

1.   On March 16, 2008 (the "Petition Date"), the Debtors filed their respective petitions for relief under Chapter 11, Title 11 of the United Stets Code (the "Bankruptcy Code").

2.   These cases are being jointly administered pursuant to this Court's order of March 18, 2008 under the lead debtor "Shapes/Arch Holdings, LLC".

3.   An official committee of unsecured creditors (the "Committee") was appointed on March 31, 2008 and was active in these cases through the Effective Date (defined below).

4.   The Court has jurisdiction of this motion pursuant to 28 U.S. C. Section 1334. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper pursuant to 28 U.S.C. Section s 1408 and 1409.

5.    Shapes/Arch Holdings, LLC is a holding company that owns the two operating companies: Shapes and Delair.

6.    Shapes is the largest operating debtor and is a leading producer of custom aluminum extrusions for a variety of industries, including road and rail transportation and commercial and residential construction.

7.    Delair manufactures maintenance free aluminum fence systems for residential and commercial use.

### B.    Confirmation of the Debtors Joint Plain

8.    On May 23, 2008 the Court approved the disclosure statement (the "Disclosure Statement") in support of the Debtors' third amended joint plan (the "Third Amended Plan").    The Third Amended Plan was filed after the Debtors, Arch Acquisition I, LLC and the Committee resolved certain plan funding issues that had been outstanding at the time the Second Amended Plan was filed.

9.    On July 22, 2008 the Court entered an order confirming the
Debtors' Third Amended Plan, as modified on July 21, 2008.   The
Third Amended Plan became effective on August 8, 2008.

## Relief Requested

10.   By this motion, the Debtors seek an order of the Court
authorizing the Debtors to enter into a settlement agreement
with the NJDEP and approving the settlement agreement.

### A.   The Environmental Claims

11.   Numerous environmental claims were asserted against the
Debtors in these Chapter 11 cases arising out of or in
connection with the real estate owned by Shapes and or the
operations of Shapes' predecessors.   A schedule of the sites
from which these claims arose was attached to the Plan as
Schedule 4.4 (collectively the "Environmental Claims").   A more
detailed description of the Environmental Claims is set forth in
the Disclosure Statement at pgs. 19-26.

12.   The Debtors resolved most of the Environmental Claims as
part of the Plan and the Plan Modification of July 21, 2008,
including the NJDEP's claims for Natural Resource Damages

4

related to all Environmental Claims except the 9000 River Road

Site. The NJDEP claims for Natural Resource Damages related to

other sites were referred to as the "NJDEP Sites" in the Plan

and the Plan Modification of July 21, 2008.  The Debtors settled

the Environmental Claims of the United States Environmental

Protection Agency in October 2008.

The plan left open the NJDEP claim that is the subject of

the current settlement.

13.  The present settlement will resolve all Environmental

Claims of all parties with the exception of the claims related

to NJDEP administered clean up and remediation work at the 9000

River Road Site.

### B.  The NJDEP Settlement for Natural Resource Damages
### Related to the 9000 River Road Site

14.  On May 14, 2008 the NJDEP filed a proof of claim in the

amount of $7,061,600.00 against the Debtors for Natural Resource

Damages ("NRD") related to contamination at or emanating from

the site defined as the 9000 River Road Site (Claim 603).  This

proof of claim was in all material ways the same type of NRD

claim as those related to the NJDEP Sites and resolved in the

Plan.

15.   Pursuant to the Plan, the NJDEP's claim for NRD related to
the 9000 River Road Site is listed as an Environmental Claim in
Schedule 4.4 of the Plan.

16.   The Plan classifies all Environmental Claims listed in
Schedule 4.4 as Class 9 Environmental Claims.

17.   The NJDEP and Debtors resolved all Class 9 Environmental
Claims in the Plan, including the NJDEP's claims for NRD at the
NJDEP Sites, with the exception of the NJDEP's administration of
the clean up and remediation work at the 9000 River Road Site
and the NJDEP's NRD from the 9000 River Road Site.

18.   The NJDEP's claim against Debtors for NRD at or emanating
from the 9000 River Road Site was treated as a contested claim
for a variety of reasons including the validity and amount of
the NJDEP's estimated claim.

19.   During the proceedings involving the NJDEP's claim for NRD
related to the 9000 River Road Site, the NJDEP and Debtors
reached an agreement regarding the resolution of this claim.

20.  On May 3, 2010 the NJDEP advised Debtors and the Court that
the NJDEP would resolve its NRD claims related to the 9000 River
Road site for a payment of $50,000 and the same terms as those
provided at the NJDEP Sites.

21.  Attached hereto as Exhibit A is a Consent Order in
accordance with the terms of the Plan, the Plan Modification of
July 21, 2008 and the Consent Order for the NJDEP Sites which
sets forth the terms of the settlement of the NJDEP claim
against Debtors for NRD at or emanating from the 9000 River Road
Site.

22.  The NJDEP settlement proposal was accepted by the Debtors'
insurers and the insurers have agreed to provide the payments
required under the NJDEP settlement agreement under the Debtors'
applicable insurance policies.

23.  The complete terms and conditions of the present settlement
are more fully set forth in the Consent Order attached hereto as
Exhibit A, fully executed by all parties and incorporated herein
by reference herein.

## BASIS FOR RELIEF REQUESTED

24.  This Court has the authority to grant the relief requested
in this motion pursuant to Section 105 of the Bankruptcy Code
and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code
provides that "[t]he court may issue any order . . . that is
necessary or appropriate to carry out the provisions of this
title."  Authorizing the Debtors to enter into the settlement
agreement is beneficial to the Debtors and their creditors as it
provides a mechanism by which the Debtors can settle, to the
fullest extent possible virtually all of the Environmental
Claims through the Plan.  This will provide that the
Environmental Claims, including the one that is the subject of
this settlement, will be paid by insurance. Distributions to
unsecured creditors will not be reduced by deficiency claims
held by parties to litigation related to the Environmental
Claims.

25.  Bankruptcy Rule 9019 provides in pertinent part that "[o]n
motion by the trustee and after notice and a hearing, the court
may approve a compromise or settlement."  Fed. R. Bankr. P.
9019.  Under this authority, the Third Circuit has emphasized
that "to minimize litigation and expedite the administration of

a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'"
In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier
on Bankruptcy Section 9019.03[1] (15th ed. 1993).  The approval of
a proposed compromise and settlement is committed to the sound
discretion of the bankruptcy court.   In re Nutraquest, Inc., 434
F.3d 639, 645 (3d Cir. 2006).

26.   Before approving a settlement under Bankruptcy Rule 9019, a
court must determine whether "the compromise is fair,
reasonable, and in the interests of the estate."   In re Marvel
Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998)
(quoting Louise's, 211 B.R. at 801).   To reach such a
determination, the court must assess the value of the claim that
is being settled and balance it against the value to the estate
of the approval of the settlement, Martin, 91 F.3d at 393.   In
striking this balance, the court should consider the following
factors:

> (i)    The probability of success in the litigation;
>
> (ii)   The complexity, expense and likely duration of
>        the litigation;
>
> (iii)  The possibilities of collecting on any judgment
>        which might be obtained;

    (iv)    All other factors relevant to making a full and
fair assessment of the wisdom of the proposed
compromise; and

    (v)    Whether the proposed compromise is fair and
equitable to the Debtors, their creditors and
other parties in interest.


Protective Comm. For Indep. Stockholders of TMT Trailer Ferry,
Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  See also Martin,
91 F.3d at 393.  Basic to the process of evaluating proposed
settlements is "the need to compare the terms of the compromise
with the likely rewards of litigation." TMT Trailer Ferry, 390
U.S. at 425.  The TMT Trailer Ferry rule does not require the
Court to hold a full evidentiary hearing before a compromise can
be approved.  Rather, the Court's obligation is "to canvass the
issues and see whether the settlement 'falls below the lowest
point in a range of reasonableness.'"  10 Collier on Bankruptcy
Section 9010.2, 9019-4(15th ed.)(quoting In re Drexel Lambert
Group, Inc., 134 B.R. 493)(Bankr. S.D.N.Y.1991)).  See also W.T.
Grant Co., 699 F.2d 599, 608 (2d Cir. 1983).


27.  When considering the merits of the present settlement, the
Debtors focused on:  (i) the expenses that could be incurred in

litigating all of the issues presented (ii) the benefits of

achieving a full and final settlement of this claim in

accordance with terms of similar claims settled as part of the

Plan (iii) the potential probability of success in litigation of

the present claim  (iv) the fairness of the proposed settlement

to all the parties in interest (v) the fact that the NJDEP's

present claim will be paid through insurance and(vi) the fact

that this settlement will minimize the risk of any deficiency

claims falling into Class 10 and reducing the recovery for

holders of general unsecured claims.  For the foregoing reasons,

Debtors respectfully submits that this settlement of the NJDEP's

claim for Natural Resource Damages related to contamination at

or emanating from the 9000 River Road Site is in the best

interests of all concerned and should be approved by the Court.

### Notice

28.  Notice of this motion has been provided to :  (a) counsel

for CIT, (b) counsel for Arch, (c) the Office of the United

States Trustee, (d) the Internal Revenue Service, (e) the New

Jersey Attorney General, (f) the Commonwealth of Pennsylvania

Department of Revenue, (g) counsel to the Committee, (h) the

NJDEP, (i) the United States Department of Justice, (j) Debtors'
insurers and (k) all parties on the Master Service List.   In
light of the nature of the relief requested herein, the Debtors
submit that no further notice is necessary pursuant to the
Application to Limit Notice submitted concurrently herewith.

WHEREFORE, the Debtors respectfully request that the Court grant
the relief requested herein, including approval of the Consent
Order settling the NJDEP claim for Natural Resource Damages
related to the 9000 River Road Site in the form attached as
Exhibit A and grant such further and additional relief as
appropriate.

                        Respectfully submitted,
                        LATSHA, DAVIS & McKENNA, P.C.


          By:           _____
                        Kevin M. McKenna (KM4502)
                        Timothy W. Garvey (TG9134)
                        Attorney for Debtors



Dated: _____

**EXHIBIT A**

Kevin M. McKenna (KM4502)
Timothy W. Garvey (TG9134)
LATSHA, DAVIS, YOHE & McKENNA, P.C.
3000 Atrium Way, Suite 251
Mt. Laurel, NJ  08054
(856) 231-5351
kmckenna@ldylaw.com
tgarvey@ldylaw.com

Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | CHAPTER 11 |
|  | : |  |
| SHAPES / ARCH HOLDING, LLC, et al | : | CASE NO. 08-14631 (GMB) |
|  | : | (Jointly Administered) |
| Debtors | : |  |
|  | : | Claim No.: 603 |
|  | : |  |
|  | : | Hearing Date: |

## CONSENT ORDER SETTLING NEW JERSEY
## DEPARTMENT OF ENVIRONMENTAL PROTECTION'S CLAIM FOR NATURAL RESOURCE
## DAMAGES ARISING FROM THE 9000 RIVER ROAD SITE

The relief set forth on the following pages, numbered two (2) through
_____, is hereby **ORDERED**.

DATED: _____          _____
                                    Honorable Gloria M. Burns
                                    United States Bankruptcy Court

7034205v.3

This matter was opened to the Court by Attorney General of New Jersey, Richard F. Engel, Deputy Attorney General, appearing as attorneys for New Jersey Department of Environmental Protection and Administrator of the New Jersey Spill Compensation Fund, (the "DEP"), and Kevin M. McKenna, Esq. appearing as attorneys for defendants and Debtors-in-possession, Shapes/Arch Holding L.L.C., Shapes L.L.C., Delair L.L.C., (the "Debtors", and with the DEP, the "Parties"); and the Parties having amicably resolved their disputes:

## I.    BACKGROUND

A.    Pursuant to Title 11 of the United States Code (the "Bankruptcy Code"), the Debtors filed their Third Amended Joint Plan of Reorganization dated May 23, 2008 as modified by the Plan Modification dated July 21, 2008 and as may be further amended or modified (the "Plan") with the United States Bankruptcy Court for the District of New Jersey (Camden Vicinage) (the "Bankruptcy Court"). The Plan was confirmed by the Court on July 24, 2008.

B.    Under the Plan, Claims against and Interests in the Debtors are divided into Classes that will receive the distribution and recoveries, if any, as set forth in the Plan. The Plan classifies all environmental claims, which are identified in Schedule 4.4 of the Plan, as Class 9 Environmental Claims. With regard to the DEP, the Plan provides for the settlement of DEP claims for Natural Resource Damages at various sites, (the "DEP Sites") but specifically excepts the DEP claim (Claim No. 603) for Natural Resource Damages at the 9000 River Road Site (the "9000 River Road Site NRD Claim"). Under the Plan, the DEP claim for Natural Resource Damages at the 9000 River Road Site is a disputed Class 9 Environmental Claim.

C.    DEP filed a Proof of Claim on May 14, 2008 for Natural Resource Damages related to the 9000 River Road Site (Claim No. 603), which included the 9000 River Road Site NRD Claim. The DEP's Proof of Claim includes claims for payment of compensation for damage to, or the loss of, Natural Resources, including costs and reasonable assessment costs it has incurred, or will incur, for the restoration and replacement, where practicable, of any natural resource damaged or destroyed by the discharges of Hazardous Substances at or migrating from the 9000 River Road Site (as defined herein), as well as any other items of Natural Resource Damages as set forth in the definitions contained in this Consent Order, the Plan and the Plan modification. The Debtors' right to contest the amount or validity of this Claim was expressly reserved and preserved.

D.    The Parties have agreed to resolve the 9000 River Road Site NRD Claim pursuant to an agreement whereby DEP shall receive the sum of Fifty Thousand Dollars ("$50,000.00") in full and complete satisfaction of all Natural Resource Damages claims as set forth above related to the Discharge of Hazardous Substances at or migrating from the 9000 River Road Site in accordance with the terms provided in the Plan for the settlement of the Natural Resources Damages claims at the DEP Sites. The Parties specifically incorporate by reference herein all of the terms of the settlement of the Natural Resources Damages claims related to the DEP Sites in the Plan, including the July 21, 2008 Modification, as applicable and binding with regard to the 9000 River Road Site NRD claim.

E.    The DEP and the Debtors previously resolved the Debtors' liability for any and all costs the DEP has incurred and/or will incur in connection with the DEP Sites as defined in the Plan, and for Natural Resource Damages claims for any Natural Resources of this State that have been, or may be, injured as a result of any Discharge of Hazardous Substances at or migrating from the DEP Sites, pursuant to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58: 10-23.11 to - 23.24 (the "Spill Act") and any other applicable State or Federal Statute or common law.

F.    Notwithstanding the above, with respect to Debtor Shapes L.L.C.'s 9000 River Road Site, which is identified in Schedule 4.4 of the Plan, this Consent Order shall not release Shapes, LLC, from any obligation to Remediate chromium contamination in the soil and groundwater at the 9000 River Road Site.

G.    By entering into this Consent Order, the Debtors do not admit any liability in connection with Natural Resource Damages related to any Discharge of Hazardous Substances at or migrating from the 9000 River Road Site.

H.    Sampling results from remedial investigations at the 9000 River Road Site have revealed the presence of various Hazardous Substances in the soils and ground water at the 9000 River Road Site.

I.    Ground water is a "natural resource" of the State as defined in N.J.S.A. 58:10-23.11b, which the DEP alleges has been injured as a result of the Discharge of Hazardous Substances at the 9000 River Road Site.

J.    The DEP maintains that it has incurred, and will continue to incur, costs and Natural Resources Damages, including lost value and reasonable assessment costs, for any Natural Resource as defined in N.J.S.A. 58:10-23.11b of this State that have been, or may be, injured as a result of the Discharge of Hazardous Substances at or migrating from the 9000 River Road Site.

3

7034205v.3

K.   The DEP maintains that the costs and Natural Resource Damages the DEP has incurred, and will incur, for the 9000 River Road Site are "Cleanup and Removal Costs" within the meaning of N.J.S.A. 58:10-23.11b and are not dischargeable in bankruptcy. The Debtors dispute this claim and believe that all Natural Resource Damages claims, both asserted and unasserted by the DEP, are dischargeable in bankruptcy and can be administered only in accordance with the Plan, as described in Paragraph C herein.

L.   Prompt settlement with the Debtors is practicable and in the public interest. Pursuant to the terms of this Consent Order, the Debtors are making cash payments to resolve civil liability thereby reducing litigation relating to the 9000 River Road Site. This settlement reduces transaction costs, provides the DEP with reimbursement for past costs, and furthermore, provides funds for Natural Resource Damages and future cleanups at the 9000 River Road Site. Additionally, a settlement simplifies remaining administrative and judicial enforcement activities concerning the 9000 River Road Site by eliminating a category of claim from further consideration with respect to the 9000 River Road Site.

M.   The Parties to this Consent Order recognize, and the Bankruptcy Court by entering this Consent Order finds, that the Parties have negotiated this Consent Order in good faith, that the implementation of this Consent Order will avoid continued, prolonged and complicated litigation among the Parties, and that this Consent Order is fair, reasonable, and in the public interest. The Parties further recognize and the Court finds that the payment of the Settlement Amount (defined below) pursuant to Paragraph 5 below adequately and equitably resolves Debtors' alleged share of National Resource Damages associated with the 9000 River Road Site.

**THEREFORE**, with the consent of the Parties, it is hereby **ORDERED and ADJUDGED**:


## II.   <u>JURISDICTION</u>


1.   The Bankruptcy Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 157 (b)(2). The Bankruptcy Court also has personal jurisdiction over the Parties solely for the purposes of this Consent Order. The Parties waive all objections and defenses they may have to jurisdiction of the Court. The Parties shall not challenge the Bankruptcy Court's jurisdiction to enforce this Consent Order.

7034205v.3

### III. **PARTIES BOUND**

2.    Unless otherwise expressly provided this Consent Order applies to and is binding upon the DEP and the Debtors.

### IV.    **DEFINITIONS**

3.    Unless otherwise expressly provided, capitalized terms used in this Consent Order that are defined in the Spill Act or in the regulations promulgated under the Spill Act, shall have their statutory meaning. Whenever the terms listed below are used in this Consent Order, the following definitions shall apply:

"Administrator" shall mean the Administrator of the New Jersey Spill Compensation Fund, who is appointed pursuant to N.J.S.A. 58:10-23.11j.

"Cleanup and Removal Costs" shall mean all direct and indirect costs DEP has incurred or may incur in connection with the 9000 River Road Site, including but not limited to any cleanup and removal costs and all costs of response under the Water Pollution Control Act, N.J.S.A.58:10A-1 et.seq., the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601 et. seq., the Oil Pollution Act, 33 U.S.C. §§ 2701 et. seq., the Clean Water Act. 33 U.S.C. §§ 1251 et. seq., the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et. seq., or any other state or federal common law, statute or regulation.

"Consent Order" shall mean this Consent Order.

"Day" shall mean a calendar day unless expressly stated to be a working day.

"Working Day" shall mean a day other than a Saturday, Sunday, or State holiday. In computing time under this Consent Order, where the last day would fall on a Saturday, Sunday, or State holiday, time shall run until the close of business of the next Working Day.

"DEP Sites" shall mean those Sites set forth in Schedule 4.4 to the Plan and all other areas where any Hazardous Substances discharged at the DEP Sites, or emanated or migrated from the sites, have or will become located, with the exception of the Berks Associates and 9000 River Road Sites.

"9000 River Road Site" shall mean that Site set forth in Schedule 4.4 to the Plan and all other areas where any Hazardous Substances that

5

were Discharged at the site, or emanated or migrated from that site, have or will become located.

"DEP" shall mean the New Jersey Department of Environmental Protection and any successor department or agency of the State.

"Discharge" or "Discharged" shall have the same meaning ascribed to those terms in N.J.S.A. 58:10-23.11b.

"Effective Date" shall mean the date upon which this Consent Order becomes approved by the Bankruptcy Court and becomes a final, non-appealable, Order.

"Epiq" shall mean Epiq Bankruptcy Solutions, LLC, the Debtor's Bankruptcy Court approved claims agent, whose address is FDR Station, P.O. Box 5112, New York, NY 10150-5112.

"Future Cleanup and Removal Costs" shall mean all Cleanup and Removal Costs, including, direct and indirect costs, the DEP incurs after the Effective Date of this Consent Order, in connection with the 9000 River Road Site.

"Hazardous Substance" shall have the same meaning ascribed to that term in N.J.S.A. 58:10-23.11b.

"Interest" shall mean interest at the rate established by R. 4:42 of the then current edition of the New Jersey Court Rules.

"Natural Resources" as used in this Consent Order includes all land, fish, shellfish, wildlife, biota, air, waters and other such resources owned, managed, held in trust or otherwise controlled by the State.

"Natural Resource Damages" shall mean all claims arising from Discharges of Hazardous Substances at or migrating from the 9000 River Road Site that are based upon any event or any conduct, action or inaction on behalf of any Debtor that occurred prior to the effective date of this Consent Order (each an "Existing Event"), and that are recoverable by the DEP as Natural Resource Damages for injuries to Natural Resources under the Water Pollution Control Act, N.J.S.A. 58:10A-1 et.seq., the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§9601 et. seq., the Oil Pollution Act, 33 U.S.C. §§ 2701 et. seq., the Clean Water Act, 33 U.S.C. §§ 1251 et. seq., the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et. seq. or any other state of federal common law, statute, or regulation include:

    a.    The costs of assessing injury to Natural Resources and Natural Resource Services, the DEP's Office of Natural Resource Restoration's oversight costs determined pursuant to N.J.A.C. 7:26C-9.3, attorney's fees, consultants' and experts' fees, other

7034205v.3

litigation costs, and Interest, incurred as a result of any
Existing Event; and

b.    The payment of compensation for damage to, or loss of, Natural
Resources, including the lost value, use, services or benefit of,
or injury to, or destruction of, Natural Resources and Natural
Resource Services; Natural Resource Damages do not include, however
compliance with any statutory or regulatory requirement that is not
within this definition of Natural Resource Damages.

"Paragraph" shall mean a portion of this Consent Order identified
by an Arabic numeral or an upper case letter.

"Parties" shall mean the DEP and the Debtors.

"Past Cleanup and Removal Costs" shall mean all Cleanup and Removal
Costs, including direct and indirect costs incurred by the DEP on or
before the Effective Date of this Consent Order in connection with the
9000 River Road Site.

"Released Parties" shall mean the Debtors, Accu Weld, LLC, Ultra
Hardware Product, LLC, together with their respective managers, members,
officers, directors, employees, predecessors (including Aluminum Shapes,
Inc.) parents (including Ben L.L.C.), successors, subsidiaries, legal
counsel, insurance carriers (including Century Indemnity Company, as
successor to CCI Insurance Company, as successor to Insurance Company of
North America, New Jersey Property-Liability Insurance Guaranty
Association, Reliance Insurance Company in Liquidation, Liberty Mutual
Insurance Company, Wausau Underwriters Insurance Company, and
Pennsylvania Manufacturers Association Insurance Company, Pennsylvania
Manufacturers Indemnity Company, and Pennsylvania Manufacturers'
International LTD), assigns, Debtors in bankruptcy, reorganized Debtors,
Liquidation Trustee or receiver appointed pursuant to a proceeding in
law or equity ("Related Entity"), and the managers, members, officers,
directors, employees, predecessors (including Aluminum Shapes, Inc.),
parents (including Ben L.L.C.), successors, subsidiaries, legal counsel,
insurance carriers, assigns, Debtors in bankruptcy, or receiver
appointed pursuant to at proceeding in law or equity of any Related
Entity, but only to the extent that the alleged liability arising out of
or in connection with the 9000 River Road Site of any such persons
and/or entities is based on their status and in their capacity as
persons and/or entities related to a Related Entity and not to the
extent that the alleged liability arose independently of their status
and in their capacity as persons and/or entities related to a Related
Entity of the Debtors; provided, however, that the inclusion of any
person and/or entity within the definition of "Released Parties" is
intended only to protect such persons and entities and is not and shall
not be construed as an admission of liability, and does not otherwise

create or establish any such person's or entity's liability, with
respect to the 9000 River Road Site.

"Remediation" or "Remediate" shall mean, as more particularly
defined in the "Spill Act," all necessary actions to investigate and
clean up or respond to any known, suspected, or threatened discharge,
including, as necessary, the preliminary assessment, site investigation,
remedial investigation, and remedial action, provided, however, that
"Remediation" or "Remediate" shall not include the payment of
compensation for damage to, or loss of, natural resources.

"Section" shall mean a portion of this Consent Order identified by
a roman numeral.

"Spill Act" shall mean the New Jersey Spill Compensation and
Control Act, N.J.S.A. 58:10-23.11 to -23.24.

"Spill Fund" shall mean the New Jersey Spill Compensation Fund
established pursuant to N.J.S.A. 58:10-23.11i.

"State" shall mean the State of New Jersey.

## V.   PARTIES'S OBJECTIVES

4.   The Parties' objectives in entering into this Consent Order
are:

    a.   To reach a full and final settlement among the
Parties with respect to DEP's claims against the Debtors for
Natural Resource Damages related to the Discharge of Hazardous
Substances at or migrating from the 9000 River Road Site that
allows the Debtors to provide valuable consideration to the
DEP to fully and finally resolve the Debtors' alleged civil
liability for Natural Resource Damages.

    b.   To protect public health and safety and the
environment by the Debtors agreeing to reimburse the DEP for
an appropriate and equitable share of Natural Resource Damages
in an amount that is reasonably related to Debtors' alleged
involvement in and potential liability associated with any
Natural Resource Damages caused by Discharges of Hazardous
Substances at, or migrating from, the 9000 River Road Site, in
return for the DEP agreeing to resolve all their claims
against the Debtors related thereto.

    c.   To confer contribution protection to the Released
Parties to the fullest extent permitted by law under N.J.S.A.
58:10-23.11f(b) and 42 U.S.C. Sections 9607 and 9613(f)(2),

8

including without limitation for any and all claims seeking the recovery of Natural Resource Damages, Remediation costs and Clean Up and Removal Costs in connection with, arising from, or in any way related to the 9000 River Road Site, no matter by whom asserted, whether sounding in the Spill Act or CERCLA, in contract or tort law, or in any other statutory or common law cause or action.

## VI.   THE DEBTORS' COMMITMENTS

5.    The Parties agree that the DEP's Proof of Claim (Claim No. 603) regarding, *inter alia*, the DEP's 9000 River Road Site NRD Claim as described herein shall be deemed amended and allowed in the aggregate amount of Fifty-Thousand Dollars ($50,000.00) (the "Settlement Amount"). Upon 30 days from the Effective Date, the Debtors shall cause a distribution to be made on account of the Settlement Amount subject to this Consent Order and in accordance with the procedures for payment of claims under the Plan.

6.    Debtor Shapes LLC shall pay the distribution described in Paragraph 5 above by check made payable to the "Treasurer, State of New Jersey." The Debtors shall mail or otherwise deliver the payment to the address set forth in the Amended Proof of Claim.

## VII. DEP'S COVENANTS

7.    In consideration of the payment the Debtors are making pursuant to Paragraph 5 above, and except as otherwise provided in Paragraphs 12 through 14 below, the DEP covenants not to further sue or to take any administrative action against or assert any further claims against any one or more of the Released Parties seeking reimbursement or compensation for damages to, or loss of, any Natural Resources, or for any Natural Resource Damages incurred by the United States and/or the State of New Jersey.

8.    In further consideration of the payment the Debtors are making pursuant to paragraph 5 above, and except as otherwise provided in paragraph 12 through 14 below, the DEP fully and forever releases, covenants not to sue, and agrees not to otherwise take administrative action against or assert any further claims against any one or more of the Released Parties, for any and all of the DEP's causes of actions for Natural Resource Damages.

7034205v.3

9.   The covenants contained in Paragraphs 7 and 8, above, and the release and covenant contained in Paragraph 8, above, shall take effect on the Effective Date.

10.   The covenants contained in Paragraph 7 and 8, above, are further conditioned upon the Debtors' satisfactory performance of their obligations under this Consent Order, and extend only to the Released Parties and not to any other person.

11.   The release contained in Paragraph 8, above, extends only to the Released Parties and not to any other person.

### VIII.      DEP'S RESERVATIONS

12.   Notwithstanding any other provision of this Consent Order, the DEP reserves, and this Consent Order is without prejudice to, the DEP's right to sue or take administrative action to pursue the Debtors for any injuries to any Natural Resources, including ground water, should the Debtors fail to comply with the terms of this Consent Order.

13.   Notwithstanding any other provision of this Consent Order, the DEP retains all authority, and reserves all rights, to undertake any Remediation authorized by law concerning the 9000 River Road Site without costs or liability to the Debtors.

14.   The covenant and release contained in Paragraphs 7 and 8, above, do not pertain to any matters other than those expressly stated.

### IX.   THE DEBTORS' COVENANTS

15.   The Debtors covenant not to oppose entry of this Consent Order by the Bankruptcy Court, or to challenge any provision of this Consent Order, unless the DEP notifies the Debtors, in writing, that it no longer supports entry of the Consent Order.

16.   The Debtors further covenant, subject to Paragraph 19, below, not to sue or assert any claim or cause of action against the State (with the exception of claims to enforce the terms of this Consent Order), including any department, agency or instrumentality of the State, concerning the 9000 River Road Site.  This covenant shall include the following:

> a.   any direct or indirect claim for reimbursement from the Spill Fund concerning the 9000 River Road Site;

10

b.    any claim for fees or damages related to the litigation
of the within matter; and

c.    any claim or cause of action concerning the Remediation
of the 9000 River Road Site, including the DEP's selection,
performance or oversight of the Remediation, or the DEP's
approval of the plans for the Remediation, as long as DEP, its
employees, agents and representatives, including contractors
and subcontractors, are acting within the scope of their
authority pursuant to the Spill Act and other applicable laws
and regulations.

## X.    THE DEBTORS' RESERVATIONS

17.    The Debtors reserve, and this Consent Order is without
prejudice to, claims against the State, subject to the New Jersey Tort
Claims Act, N.J.S.A. 59:1-1 to -12-3; the New Jersey Contractual
Liability Act, N.J.S.A. 59:13-1 to 13-10; the New Jersey Constitution.
N.J.Const. Art. VIII, §2, ¶2; or any other applicable provision of law,
for money damages for injury or loss of property or personal injury or
death caused by the negligent or wrongful act or omission or any State
employee while acting within the scope of his office or employment under
circumstances where the State, if a private person, would be liable to
the claimant. Any such claim, however, shall not include a claim for any
damages caused, in whole or in part, by the act or omission of any
person, including any contractor, who is not a State employee as that
term is defined in N.J.S.A. 59.1-3; nor shall any such claim include a
claim based on activities relating to the Remediation of the 9000 River
Road Site. The foregoing applies only to claims that the Debtors may
bring pursuant to any statute other than the Spill Act and for which the
waiver of sovereign immunity is found in a statute other than the Spill
Act.

18.    Nothing in this Consent Order shall be deemed to constitute
preauthorization of a claim against the Spill Fund within the meaning of
N.J.S.A. 58:10-23, 11k or N.J.A.C. 7:1J.

## XI.   FINDINGS & NO ADMISSIONS OF LIABILITY

19.    Nothing contained in this Consent Order shall be considered an
admission by the Debtors, or a finding by the DEP, of any fact or of any
wrongdoing or liability on the Debtors' part for anything the DEP has

actual knowledge of having occurred at the 9000 River Road Site as of
the Effective Date of this Consent Order.

## XII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

20.  Nothing in the Consent Order shall be construed to create any
rights in, or grant any cause of action to, any person not a Party (or a
Released Party) to, this Consent Order. The preceding sentence shall not
be construed to waive or nullify any rights that any person not a
signatory to this Consent Order may have under applicable law.

21.  The Debtors expressly reserve all rights, including, but not
limited to, any right to cost recovery, contribution, defenses, claims,
demands, and causes of action that the Debtors may have concerning any
matter, transaction, or occurrence concerning the 9000 River Road Site
against any person not a party to this Consent Order.

22.  The Parties agree, and by entering this Consent Order the
Bankruptcy Court finds, that the Released Parties are entitled, as of
the Effective Date of this Consent Order, to protection from
contribution actions or claims for matters addressed in this Consent
Order to the fullest extent permitted under the law. For the purposes of
this Consent Order, "matters addressed" shall mean Past Cleanup and
Removal Costs, Future Cleanup and Removal Costs, Natural Resource
Damages, Remediation costs and all costs of "response," as that term is
defined by CERCLA § 10 (25), 42 U.S.C. § 9601 (25), and those matters
contained in Section 1, Paragraphs A through N, above, in connection
with, arising from, or in any way related to the 9000 River Road Site,
no matter by whom asserted, whether sounding in the Spill Act or CERCLA,
in contract or tort law, or in any other statutory or common law cause
of action.

23.  The Debtors further agree that with respect to any suit or
claim for contribution they may bring for matters addressed in this
Consent Order, other than those already in this Consent Order, they
shall notify the other Parties, in writing, no later than 60 days before
initiating the suit or claim.

24.  The Debtors also agree that with respect to any suit or claim
for contribution brought against them for matters addressed in this
Consent Order, they will notify the other Parties, in writing, within 20
days of service of the complaint on them, In addition, the Debtors agree
to notify the other Parties, in writing, within 10 days of service or
receipt of any dispositive motion, and within 10 days of receipt of any
order from a court setting the case for trial.

7034205v.3

25.   In any subsequent administrative or judicial proceeding initiated by the DEP for injunctive relief, recovery of costs and damages, or other appropriate relief concerning the 9000 River Road Site, other than a claim for compensation for damages to, or loss of, Natural Resources, the Debtors shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, the Entire Controversy Doctrine or other defenses based upon any contention that the claims the DEP raises in the subsequent proceedings were or should have been brought in this case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants set forth in this Consent Order, including the Debtors' right to assert that any claim for compensation for damages to, or loss of, Natural Resources related to the Discharge of Hazardous Substances at or migrating from the 9000 River Road Site not settled herein is discharged as a result of this bankruptcy proceeding.

## XIII.  GENERAL PROVISIONS

26.   The DEP enters into this Consent Order pursuant to the police powers of the State for the enforcement of the laws of the State and the protection of the public health and safety and the environment.  All obligations imposed upon the Debtors by this Consent Order are continuing regulatory obligations pursuant to these police powers.

27.   The Parties acknowledge and agree that the payments owed or made pursuant to this Consent Order are subject to the payment provisions of Paragraph 5, herein.

## XIV.  ACCESS TO INFORMATION

28.   Upon receipt of a written request by the DEP the Debtors shall submit or make available to the DEP all information the Debtors have concerning the 9000 River Road Site, including technical records and contractual documents.

29.   The Debtors may assert a claim of confidentiality or privilege for any information requested by the DEP pursuant to this Consent Order. The Debtors, however, agree not to assert any privilege or confidentiality claim concerning environmental or technical data related to the 9000 River Road Site conditions, sampling or monitoring.

## XV.  RETENTION OF RECORDS

7034205v.3

30.  The Debtors shall preserve all environmental data and related information, including technical records, in the Debtors' possession or in the possession of its divisions, employees, agents, accountants, contractors, or attorneys, which in any way concern the 9000 River Road Site.

## XVI.  NOTICES AND SUBMISSIONS

31.  Except as otherwise provided in this Consent Order, whenever written notice or other documents are required to be submitted by one Party to another, they shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.

As to the DEP:

Section Chief
Cost Recovery/Natural Resource Damages Section
Department of Law & Public Safety
Division of Law
Richard J. Hughes Justice Complex
P.O. Box 093
Trenton, New Jersey 08625-0093
609-984-4863

With a copy to:

Robert Neilson
Shapes/Arch Holdings LLC
9000 River Road
Delair, NJ 08110
856-317-5304

32.  All submissions shall be considered effective upon receipt, unless otherwise provided in this Consent Order.

33.  The Debtors shall not construe any informal advice, guidance, suggestions, or comments by the DEP, or by persons acting for the DEP,

14

as relieving the Debtors of their obligation to obtain written approvals
or modifications as required by this consent Order.

## XVII.   EFFECTIVE DATE

34.   The Effective Date of this Consent Order shall be the date
upon which this Consent Order becomes approved by the Bankruptcy Court
and becomes a final, non-appealable, Order.

## XVIII.   RETENTION OF JURISDICTION

35.   The Bankruptcy Court retains jurisdiction over both the
subject matter of this Consent Order and the Parties for the duration of
the performance of the terms and provisions of this Consent Order for
the purpose of enabling any of the Parties to apply to the Bankruptcy
Court at any time for such further order, direction, and relief as may
be necessary or appropriate for the construction or modification of this
Consent Order, or to effectuate or enforce compliance with this terms,
or to resolve disputes, including any appeal from an administrative
determination of a dispute between the Parties.   The Parties may modify
this Consent Order, as long as such modifications are agreed to in
writing by the Parties and approved by the Court.

## XIX.   MODIFICATION

36.   This Consent Order represents this entire integrated agreement
between the DEP and the Debtors concerning Natural Resource Damages
issues at the 9000 River Road Site, and supersedes all prior
negotiations, representations or agreements, either written or oral,
unless otherwise specifically provided.

37.   Any notices or other documents specified in this Consent Order
may only be modified by agreement of the Parties.   All such
modifications shall be made in writing.

38.   All notices or other documents the Debtors are required to
submit to the DEP under this Consent Order, if any, shall, upon approval
or modification by the DEP, be enforceable under this Consent Order.
All such approvals or modifications shall be in writing.

39.   In the event the DEP approves or modifies a portion of a
notice or other document the Debtors are required to submit under this

15

Consent Order, if any, the approved or modified portion shall be enforceable under this Consent Order.

40. The Parties expressly acknowledge that the waivers and agreements provided herein shall become effective upon the Effective Date and may not thereafter be rescinded or revoked. Unless and until so approved, this Consent Order shall have no force or effect and nothing contained herein shall be an admission or concession of, or in any way bind any party hereto in connection with, any fact or issue between the Parties.

41. Nothing in this Consent Order shall be deemed to alter the Bankruptcy Court's power to enforce, supervise or approve modifications to this Consent Order.

## XX.   SIGNATORIES/SERVICE

42. Each undersigned representative of a Party to this Consent Order certifies that he or she is authorized to enter into the terms and conditions of this Consent Order, and to execute and legally bind such party to this Consent Order.

43. This Consent Order may be signed and dated in any number of counterparts, each of which shall be an original, and such counterparts shall together be one of the same Consent Order.

44. The Debtors shall identify on the attached signature pages, the name, address and telephone number of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Order. The Debtors agree to accept service in this manner, and to waive the formal service requirements set forth in _____, including service of a summons.

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION

BY: _____
David Sweeney
Assistant Commissioner,
Site Remediation

Dated: 7/5/11

16

NEW JERSEY SPILL COMPENSATION
FUND

BY: _____
ANTHONY J. FARRO
Administrator, New Jersey Spill
Compensation

Dated: 7/5/11

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION

BY: _____
AMY CRADIC
Assistant Commissioner, Natural &
Historic Resources

Dated: 7/8/11

Paula T. Dow
ATTORNEY GENERAL OF NEW JERSEY

BY: _____
RICHARD F. ENGEL
Deputy Attorney General

Dated: 7/11/11

DEBTOR SHAPES/ARCH HOLDINGS
L.L.C.

BY: _____
Robert Neilson
Shapes/Arch Holdings L.L.C.

Dated: 7/19/11

17

7034205v.3

DEBTOR SHAPES L.L.C.

BY: _____
Robert Neilson
Shapes, L.L.C.

Dated: 7/19/11

DEBTOR DELAIR L.L.C.

BY: _____
Robert Neilson
Delair L.L.C.

Dated: 7/16/11

BY: _____
Kevin M. McKenna, Esq.
Timothy W. Garvey, Esq.
Counsel for Debtors

Dated: 7/24/11

Person Authorized to Accept Service on Behalf of

Name: _____

Title: _____

Address: _____

_____

Telephone NO.: _____

18

7034205v.3