**HALPERIN BATTAGLIA RAICHT, LLP**
555 Madison Avenue, 9th Floor
New York, New York  10022
(212) 765-9100
(212) 765-0964 Facsimile
Donna H. Lieberman, Esq.
Carrie E. Mitchell, Esq.
Scott A. Ziluck, Esq.

**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street, P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Ilana Volkov, Esq.
Felice R. Yudkin, Esq.
Co-Counsel to the Class 10 Liquidation Trust

|  |  |
|---|---|
| In the Matter of: | : UNITED STATES BANKRUPTCY COURT |
|  | : FOR THE DISTRICT OF NEW JERSEY |
|  | : HONORABLE GLORIA M. BURNS |
| SHAPES/ARCH HOLDINGS, L.L.C., *et al.*, | : CASE NO. 08-14631(GMB) |
|  | : |
| Debtors. | : (Jointly Administered) |
|  | : |
|  | : Chapter 11 |
|  | : |
|  | **APPLICATION IN SUPPORT OF THE MOTION OF THE CLASS 10 LIQUIDATION TRUST (THE "TRUST") FOR ENTRY OF AN ORDER QUASHING THE RULE 2004 SUBPOENA, NOTICE OF DEPOSITION OF STEVEN D. SASS AND REQUEST FOR PRODUCTION OF DOCUMENTS ISSUED TO THE TRUSTEE, PURSUANT TO FED. R. BANKR. P. 9016 AND FED. R. CIV. P. 45** |
|  | HEARING DATE AND TIME: March 13, 2012, at 10:00 a.m. |

TO:   HONORABLE GLORIA M. BURNS
       United States Bankruptcy Judge

The Class 10 Liquidation Trust (the "Trust") of Shapes/Arch Holdings L.L.C., Shapes L.L.C., Delair, L.L.C., Accu-Weld, L.L.C., and Ultra L.L.C., (collectively, the "Debtors"), by and through its attorneys, in support of its application (the "Application") for an order pursuant to Fed. R. Bankr. P. 9016 and Fed. R. Civ. P. 45, quashing the subpoena (the "Subpoena") issued by A. Jerome Grossman ("Grossman") and Frank Kessler ("Kessler" and together with Grossman, the "Claimants"), through their counsel, to the Class 10 Liquidation Trustee (the "Trustee"), dated February 1, 2012, regarding distributions made pursuant to the Plan (defined herein) to the Claimants on account of their Class 10 claims (the "Distributions"), respectfully states as follows:

## INTRODUCTION

1.  This Application is submitted in support of the Trust's motion for an order quashing the Subpoena issued by the Claimants noticing a deposition and a "Request for Production of Documents" directed to the Trustee for the purpose of seeking information concerning the Distributions.  The issuance of the Subpoena has little to do with obtaining information related to the Distributions under the Plan.  Indeed, the information purported to be sought by the Subpoena has already been provided to Claimants prior to the issuance of the Subpoena.  The Trustee has already provided a detailed statement concerning the Distributions and has offered to provide any additional information reasonably requested by Claimants -- including a sworn statement concerning the Distributions.

2.  With the information in hand, and with the Trustee offering to swear to the same pursuant to an affidavit, one is left to wonder about the true motivations behind the Subpoena. It is perhaps little coincidence, for example, that fulfilling the requirements of the Subpoena would divert the Trustee's attention and resources away from the Trust's claims in a

related adversary proceeding against the Claimants' family members, The Class 10 Liquidation Trust v. Nancy Carpey, et al., Adv. Pro. No. 10-01398 (GMB) (the "Fraudulent Transfer Action"), in which Claimants' counsel also represents the Remaining Defendants (as defined herein).

3. Whatever the true motivations, however, what is clear is that the Claimants' issuance of the Subpoena pursuant to Rule 2004 demanding information that they already have is overreaching and unduly burdensome on the Trust and its Trustee. Use of a Rule 2004 examination is generally a pre-confirmation discovery tool that is rarely appropriately used post-confirmation and only when the value of the information sought outweighs the burden imposed on the subpoenaed party (See ¶ 23, infra). The generally accepted "fishing expedition" standards commonly associated with Rule 2004, do not apply to post-confirmation uses of the rule. Here, the balance of the burdens overwhelmingly favors the Trust where the information sought by the Subpoena has been provided and the Claimants, in fact, have received their Distributions along with a detailed explanation as to how the Distributions comported with the terms of the Plan and the circumstances of the Claimants' claims. Given the foregoing, it is respectfully submitted that duplicative production of documents and a deposition of the Trustee is a waste of the Trust's assets and is being pressed as a litigation strategy rather than for legitimate fact finding purposes. Accordingly, as the Claimants have obtained what they are seeking pursuant to the Subpoena and the Trust and the Class 10 creditors would be prejudiced by the expenditure of its limited resources in responding to the same, it is respectfully submitted that the Subpoena serves no legitimate purpose and should be quashed.

## FACTUAL BACKGROUND

**A.    The Chapter 11 Proceeding**

3

      4.      The Debtors filed voluntary petitions for relief under Chapter 11 of the United States Code, as amended (the "Bankruptcy Code"), on March 16, 2008 (the "Filing Date"). The cases were jointly administered pursuant to this Court's Order dated March 18, 2008. However, on March 30, 2009, the Court entered an Order closing the affiliated Chapter 11 cases: Shapes LLC (case no. 08-14632), Ultra LLC (case no. 08-14633), Delair LLC (case no. 08-14634), and Accu-Weld LLC (case no. 08-14635) and allowing the Chapter 11 case of Shapes/Arch Holdings L.L.C. (case no. 08-14631) to remain open.

      5.      The Debtors' Third Amended Joint Plan of Reorganization (the plan, including amendments, exhibits, and modifications, being the "Plan") was confirmed by Order of this Court dated July 24, 2008 (the "Confirmation Order") and became effective on August 8, 2008 (the "Effective Date").

      6.      On the Effective Date of the Plan, the Class 10 Trust came into existence, and pursuant to Sections 4.5, 5.2 and 5.3 of the Plan and Article IV of the Plan Administration Agreement (an exhibit to the Plan), the Trust, by its Trustee, Steven D. Sass (the "Trustee"), was empowered to, among other things, review and file objections to unsecured claims and bring avoidance actions.

**B.**    **The Claims Process**

      7.      On March 18, 2008, this Court entered an Order pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3) establishing the deadline for the filing of proofs of claim evidencing pre-petition claims (the "Bar Date Order").

      8.      Pursuant to the Bar Date Order, the deadline for all persons and entities to file proofs of claim against the Debtors for claims that arose on or prior to the Filing Date was May 15, 2008 (the "Bar Date").

4

9. The Debtors' schedules showed that Grossman, and Kessler, both insiders of the Debtors, had general unsecured claims against the Debtors in the amounts of $1,512,389.98 (the "Grossman Claim") and $1,512,389.98 (the "Kessler Claim") respectively. Prior to the Bar Date, Grossman filed proof of claim number 598 as a general unsecured claim in the amount of $1,554,931.35 and Kessler filed proof of claim number 600 as a general unsecured claim in the amount of $1,551,110.00.

10. The Plan established a deadline of ninety days after the Effective Date, or November 6, 2008, for the filing of objections to claims. Upon the request of the Debtors or the Liquidation Trust, the Court could extend that deadline to object to claims (with or without notice). The Confirmation Order further provides that the objection deadline could be extended for cause. Section 7.6 of the Plan established that reserve accounts were to be set up for any disputed Class 10 claims, and that the distributions made when disputed Class 10 claims became allowed Class 10 claims should be in a manner consistent with the distributions to similarly situated allowed claimants. The Plan does not contain any provision requiring catch-up distributions for any claims that are resolved after a distribution is made under the Plan.

11. The Debtors and the Trust made a joint motion for a brief extension, from November 6, 2008 through November 28, 2008. That motion was granted by Order dated October 30, 2008. The Trust then made a number of motions for further extensions of the Claims Objection Deadline, and ultimately the Court set April 30, 2010 as the Claims Objection Deadline, as it related to the claims of insiders of the Debtors.

12. Prior to the Claims Objection Deadline, the Trust undertook a complete review of the unsecured claims filed against the Debtors and brought seven claims objections,

objecting to over four hundred claims the Trust believed to be improper, incorrectly classified, duplicative or overstated (the "Unresolved Claims").

        13.     On September 3, 2009 the Trust made an initial distribution of 4% to members of the Trust who held allowed Class 10 claims (the "Initial Distribution"). At that time, the Initial Distribution to some of the Unresolved Claims was withheld as the claims were still subject to unresolved objections or under review. Both the Grossman Claim and the Kessler Claim were part of the claims whose Initial Distributions were withheld because such claims were under review. The Trust ultimately filed an objection to the Grossman Claim, which was later resolved by a stipulation between the parties, a copy of which is attached hereto as **Exhibit A**. The stipulation does not provide for a time by which a distribution on the Grossman Claim should be paid. The Kessler Claim was also reviewed and ultimately allowed after the Initial Distribution was made. There have been no additional distributions to Class 10 creditors other than the Initial Distribution.[1] Thus, the Claimants' claims were treated in the same manner as all other disputed Class 10 claims, and the Claimants' claims were reserved for as required in Section 7.6 of the Debtors' Plan.

        14.     On January 24, 2012, Claimants' counsel emailed Trustee's counsel advising that Grossman had not yet received his Initial Distribution and inquiring as to the status of same. This was the first inquiry from any party purporting to represent Grossman and Kessler concerning the status of their distributions. Upon receipt of the email, Trustee's counsel promptly responded advising that they would look into the matter and provide a response as soon as possible. Trustee's counsel immediately contacted the disbursing agent to inquire as to the

---

[1] The Trust intends to make a second distribution to Class 10 creditors within the next sixty to ninety days.

status of Grossman's Initial Distribution.  On January 25, 2012, the Trust conducted a deposition in the Fraudulent Transfer Action.  At that deposition, Claimants' counsel informed Trustee's counsel that Kessler had also not received a distribution on account of his claim, and asked that Trustee's counsel look into the matter.  Trustee's counsel responded that they would look into the matter and respond as soon as possible.  Upon completion of the deposition, Trustee's counsel immediately contacted the disbursing agent to inquiring as to the status of Kessler's Initial Distribution.

15. On January 31, 2012, Trustee's counsel confirmed that the distributions had not been made and noting that the Claimants both held unsecured claims that were now allowed, the Trust made the Initial Distribution to the Claimants.

16. The Trust only has two open matters that need to be resolved before the Trust can be concluded and the Debtors' cases closed.  First, the Trust must resolve the Fraudulent Transfer Action.  The Trust has settled with six out of the twelve defendants in the Fraudulent Transfer Action recovering approximately $75,000.  However, there are six defendants in the Fraudulent Transfer Action who have not settled (the "<u>Remaining Defendants</u>"), and while the Claimants were not a party to the Fraudulent Transfer Action, the Remaining Defendants are family members of the Claimants.  The second matter involves a final distribution to the Class 10 claimants.

**C.    The Subpoena**

17. On February 1, 2012, at the same time the Trust made the Initial Distribution to the Claimants, their counsel emailed the Subpoena to Trustee's counsel asking whether counsel had authority to accept service on behalf of the Trustee.

18. In an attempt to respond to the issues raised in the Subpoena in a cost-efficient manner, on February 6, 2012 Trustee's counsel advised Claimants' counsel: (a) that the distributions to the Claimants had been made; (b) that she believed the 2004 subpoena was unnecessary and inappropriate, as the Claimants' request for distributions could have, and was, easily and promptly resolved by a simple email communication; and (c) of the basis why the distributions were delayed and offered a sworn statement with the explanation, in addition to any documents that were reasonably related to the request. The Subpoena seeks the production of documents by February 20, 2012, and a deposition which is scheduled for February 23, 2012. A true copy of the Subpoena is attached as **Exhibit B**.

## RELIEF REQUESTED

19. Rule 45(c)(1) of the Fed. R.of Civ.P. made applicable to this case by Fed. R. Bankr. P. 9016, provides, in relevant part, that a person or an attorney "responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing the undue burden or expense subject to that subpoena." Fed. R. Civ. P. 45(c)(1). Moreover, Rule 45(3)(A) provides, in pertinent part, as follows:

> (3) *Quashing or Modifying a Subpoena.*
>
> (A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply; . . .
>
> (iii) requires disclosure of privileged or other protected matter if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3)(A)(i) & (iv).

20.     Once a motion to quash a subpoena is filed, the subpoena's issuer must show good cause for the Rule 2004 examination.  See In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). The filing of a motion to quash a subpoena shall stay the subpoena until the Court rules on the motion.  D.N.J. LBR 2004-1(d).  Once good cause is established, the objecting party must convince the court of the impropriety of the Rule 2004 examination.  See In re Buick, 174 B.R. 299, 304 (Bankr. D. Colo. 1994).  The Practice Commentaries to Fed. R. Civ. P. 45 warn issuers of subpoenas "that they must be alert at every juncture to use the subpoena reasonably, with the court to determine what's reasonable on a case-by-case basis whenever the issue is brought to the court's attention."  See Practice Commentaries C45-22 to Rule 45, 28 U.S.C.A. Rule 45 (Pocket Part 2007).

21.     In determining whether a subpoena subjects a person to undue burden, courts will weigh "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  In re Summit Global Logistics, 2008 WL 1446722 at *3 (Bankr. D.N.J. 2008) (citing Concorde Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996)) See Travelers Indem. Co. v. Metro Life Ins. Co., 228 F.RD. 111, 113 (D. Conn. 2005) ("Another consideration is the value of the information to the issuing party in comparison to the burden imposed on the subpoenaed party.")

22.     The Practice Commentaries to Rule 45 further note that the "undue burden" standard of Rule 45(c)(3)(A)(iv) is a "catch all category that enables the court to grant the motion to quash or modify in any other situation which it finds, *sui generis*, what it believes to be an 'undue burden' imposed by the subpoena." Practice Commentaries, C45-22.  Moreover, if it is apparent that the subpoena has been served to abuse or harass a party, the court has

authority to quash the subpoena regardless of the burden imposed.  See e.g., In re Blackstone Partners, LP, 2005 WL 156050 *2 (S.D.N.Y. 2005).

23. The primary purpose of a 2004 examination is to allow a trustee to discover the whereabouts of a debtor's assets.  Fed. R. Bankr 2004(b).  See e.g. In re Dinubilo, 177 B.R. 932, 940 (E.D.Cal.1993); In re McLaren, 158 B.R. 655, 657 N.D.Ohio 1992. Generally, 2004 examinations are considered a pre-petition discovery tool and are allowed on only a very limited basis post-confirmation.  In re Cinderella Clothing Industries, Inc., 93 B.R. 373, 377 (Bankr.E.D.Pa 1988).  In considering whether a 2004 examination request is proper, a court must balance the cost and disruption to the proposed examinee against the benefit to the examiner, and if the cost outweighs the benefit, the request should be denied.  In re Eagle-Pitcher Industries, Inc., 169 B.R. at 134; In re Express One Int'l, Inc., 217 B.R. 215, 217 (Bankr.E.D.Tex. 1998).

24. The proposed Rule 2004 examination at bar is unnecessary and has no articulable benefit to the Claimant while at the same time, imposing an undue burden on the limited resources of the Trust and the time of the Trustee.  The Claimants' Initial Distribution was withheld because their claims were under review and reserved for in accordance with the Plan as of the date of the Initial Distribution.  Prior to the Claimant's counsel's inquiry only a few weeks ago, the Trustee had received no inquiries concerning an interim distribution being made to the Claimants.  Once Claimants' counsel requested that an interim "catch-up" distribution be made, the Trustee agreed to make the distribution and in fact promptly made the Initial Distributions.

25. Despite Trustee's counsel's attempts to reasonably resolve any questions concerning the timing of the Claimant's Initial Distributions, Claimant's counsel has steadfastly

refused to try and resolve the issue without the significant expenses that would be incurred by the Trustee if he complied with the Subpoena.  Indeed, the costs of such compliance will be borne by the entire Class 10 claimant pool, of which the Claimants are members -- an unnecessary expense given that the Claimants have received their Distributions, been given the information they seek and have been given the opportunity to receive a sworn affidavit with regard to the circumstances of the same.

26. To the extent that the Claimants' Subpoena seeks information concerning the payment of interest on their Distribution, that issue is dealt with in the Plan itself which provides that no interest is to be paid.  It thus strains credibility for the Claimants to argue that a deposition is necessary on such a clearly defined issue.

27. In sum, the proposed Rule 2004 examination serves as a significant distraction for the Trust while it is laboring to resolve the remaining adversary proceeding and close the Debtors' cases.  In fact, the Trust is preparing for court-ordered mediation in the Fraudulent Transfer Action next month and trial scheduled for the Spring.  The burdens of the Subpoena and the related imposition of significant costs and expenses on Trust are not demonstrably outweighed by any benefit that could be obtained by Claimants  Accordingly, the Motion to Quash the Subpoena should be granted pursuant to Fed. R. Bankr. P. 2004 and 9016 and Fed. R. Civ. P. 45.

## **CONCLUSION**

For all the reasons set forth herein, the Trust respectfully requests that the Court quash the Subpoena and grant such other relief as the Court deems just and appropriate under the circumstances.

        COLE, SCHOTZ, MEISEL,
        FORMAN & LEONARD, P.A.


By:   */s/ Felice R. Yudkin*
      Ilana Volkov, Esq.
      Felice R. Yudkin, Esq.
      Court Plaza North
      25 Main Street
      P.O. Box 800
      Hackensack, New Jersey 07602
      Telephone: (201) 489-3000
      Facsimile: (201) 489-1536

-and-

HALPERIN BATTAGLIA RAICHT, LLP
Donna H. Lieberman, Esq.
Carrie E. Mitchell, Esq.
Scott A. Ziluck, Esq.
555 Madison Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 765-9100
Facsimile: (212) 765-0964

Co-Counsel for the Class 10 Liquidation Trust

DATED: February 16, 2012